**SILLS CUMMIS & GROSS P.C.**
S. Jason Teele, Esq. (steele@sillscummis.com)
Daniel J. Harris, Esq. (dharris@sillscummis.com)
Gregory A. Kopacz, Esq. (gkopacz@sillscummis.com)
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)
(973) 643-6500 (Facsimile)

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.* [1] | Case 22-14539- (JKS) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS
TO (I) PAY PRE-PETITION INSURANCE PREMIUMS (II) CONTINUE PRE-
PETITION INSURANCE PROGRAMS AND (III) PAY ALL PRE-PETITION
OBLIGATIONS IN RESPECT THEREOF**

The above-captioned debtors and debtors-in-possession (the "**Debtors**"), submit this motion (the "**Motion**") for entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to (i) pay pre-petition insurance premiums, (ii) continue pre-petition insurance programs, and (iii) pay all pre-petition obligations in respect thereof.  In support of this Motion, the Debtors submit the *Declaration in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"), filed contemporaneously herewith, and respectfully state as follows:

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

## JURISDICTION

1.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334(b) and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).   This matter is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105, 363, and 364 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the applicable Local Rules of the United States Bankruptcy Court of New Jersey (the "**Local Rules**").

## BACKGROUND

4.      On June 7, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").

5.      The Debtors are currently operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No request has been made for the appointment of a trustee or examiner.   No official committee of unsecured creditors has been appointed.

6.      Additional background facts surrounding the commencement of these Chapter 11 Cases are more fully described in the First Day Declaration.

## THE INSURANCE POLICIES AND PAYMENT OBLIGATIONS

7.      In connection with the day-to-day operation of their businesses, the Debtors maintain insurance programs (the "**Insurance Programs**") and related insurance policies (the "**Insurance Policies**") through several different insurance providers (the "**Insurance Providers**").   Attached as **Exhibit B** is a list of the Debtors' Insurance Policies.   In the aggregate, the annual premiums for such policies is approximately $3,170,842.   As of the Petition Date, the Debtors believe they are current in their payment obligations under their

Insurance Policies, but estimate that approximately $268,119 will come due within the first thirty (30) days of these Chapter 11 Cases.

8.    In order to prevent any disruption of the Debtors' Insurance Policies and Insurance Programs and any attendant harm to the Debtors' businesses that such disruption would cause, the Debtors seek authorization to make any premium payments as necessary and to perform any other pre-petition obligations that may be necessary.[2]

9.    The Debtors are not authorized to accelerate payments not otherwise due and payable prior to the final hearing.

## RELIEF REQUESTED

10.    By this Motion, the Debtors seek authority to continue performing their obligations under all the Insurance Programs and pay the necessary premiums that may be due before or after the Petition Date under the Insurance Policies (collectively, the "**Insurance Obligations**").  In view of the importance of maintaining uninterrupted insurance coverage with respect to their business activities and assets, it is in the best interests of their estates and creditors for the Court to authorize the Debtors to honor their Insurance Obligations.  Any other alternative may require a considerably higher cash expenditure to obtain similar insurance coverage or result in the Debtors obtaining insurance coverage on less desirable terms than their current coverage, either of which would be detrimental to the Debtors' restructuring efforts.

## BASIS FOR RELIEF

11.    Maintenance of the Insurance Policies is essential to the continued operation of the Debtors' business and is required under the *United States Trustee's Operating Guidelines*

---

[2]    To implement the relief sought herein, the Debtors request that the order approving this Motion provide that the Debtors' banks and other financial institutions are authorized (i) to receive, process, honor, and pay any and all checks and fund transfer requests evidencing amounts to be paid by the Debtors under that order, whether presented prior to or after the Petition Date, to the extent the Debtors have good funds standing to their credit with such banks or other financial institutions, and (ii) to rely on the representations of the Debtors as to which checks or fund transfer requests are issued or authorized to be paid pursuant to that order without any further inquiry and without liability for following the Debtors' instructions.

-3-

8827352

and applicable state and federal law.

**A.    The Court Should Authorize, But Not Direct, the Debtors to Maintain
the Insurance Policies and Pay All Related Obligations**

12.    Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, a debtor-in-possession is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the fiduciary duties of any debtor-in-possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value."   *Id.*   Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim."  *Id.*  The court in *CoServ* specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . ."  *Id.*

13.    Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur and, subject to notice and a hearing, the Court may allow, as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate."   11 U.S.C. § 503(b)(1)(A).  Section 363(b)(1) of the Bankruptcy Code authorizes a debtor-in-possession "after notice and a hearing" to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  The Debtors submit that the use of estate funds for payment of undisputed pre-petition obligations under the Insurance Policies is authorized by sections 363(b) and 503(b) of the Bankruptcy Code as necessary costs of preserving their estates. Pursuant to section 363(b), a bankruptcy court is empowered to authorize a debtor to expend funds in the bankruptcy court's discretion outside of the ordinary course of the debtor's business. *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 155 (D. Del. 1999) ("Section 363(b) should be interpreted liberally to provide a bankruptcy judge with 'substantial freedom to tailor his orders to meet differing circumstances' and to avoid 'shackling the judge with unnecessarily rigid rules'") (internal citation omitted); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335-36

8827352

(Bankr. D. Del. 1987).   Although section 363(b) does not set forth a standard for determining when it is appropriate to authorize transactions outside of the ordinary course, courts generally grant such relief if a debtor articulates a sound business purpose.   *See Fulton State Bank v. Schipper (In re Schipper)*, 993 F.2d 513, 515 (7th Cir. 1991); *see also Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp.* (*In re Chateaugay Corp.*), 973 F.2d 141, 143, 145 (2d Cir. 1992) (holding that a court may approve an application under section 363(b) upon a showing of a good business reason for the disposition).   In addition, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgement rule on the merits is a near Herculean task.").

14.     The Debtors have compelling business reasons for seeking to maintain their Insurance Policies and pay all premiums, fees and related obligations.   The insurance coverage provided under the Debtors' Insurance Policies is essential for preserving the Debtors' businesses, properties, and assets, and, in many cases, such coverage is required by various regulations, laws, and contracts that govern the Debtors' businesses.   If the Debtors do not continue to perform their obligations under the Insurance Policies, their coverage under the Insurance Policies could lapse.   Disruption of such insurance coverage would expose the Debtors to serious risks, including: (a) the possible incurrence of direct liability for the payment of claims that otherwise would have been payable by the Insurance Providers under the Insurance Policies; (b) the possible incurrence of material costs and other losses that otherwise would have been reimbursed by the Insurance Providers under the Insurance Policies; (c) the possible loss of good-standing certifications to conduct business in the jurisdictions in which they operate; (d) the possible inability to obtain similar types of insurance coverage; and (e) the possible incurrence of higher costs for re-establishing lapsed policies or obtaining new insurance

8827352

coverage.[3]  Any or all of these consequences would cause serious and irreparable harm to the Debtors' businesses and restructuring efforts as, at a minimum, they would expose the Debtors to higher costs and increased risks of loss.  To avoid those consequences, the relief requested herein should be granted.

15.    Consistent with a debtor's fiduciary duties, courts have also authorized payment of pre-petition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. *See, e.g., In re Ionosphere Clubs. Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips. Inc. (In re James A. Phillips, Inc.*), 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).

16.    Further, the use of estate assets to satisfy the Debtors' Insurance Obligations constitutes a use of estate property that should be authorized under section 363(b) of the Bankruptcy Code because a sound business purpose exists for such use.  *See, e.g., Fulton State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Global Crossing Ltd.*, 295 B.R. 726, 742-43 (Bankr. S.D.N.Y. 2003).  The Debtors have determined, in the exercise of their business judgment, that honoring their Insurance Obligations permits the Debtors to operate their businesses in compliance with applicable state and federal law.

17.    In addition, the Court may authorize payment of pre-petition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

---

[3]    Nothing contained herein is intended or should be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim; or (c) an approval or assumption of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

8827352

U.S.C. § 105(a).  Under section 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor's business.  Specifically, the Court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").

18.    The "doctrine of necessity" or the "necessity of payment" rule originated in railway cases and was first articulated by the United States Supreme Court in *Miltenberger v. Logansport, Co.*, 106 U.S. 286 (1882).  The doctrine was expanded to non-railroad debtors in the mid-century. *See Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization case, that the court was not "helpless" to apply the rule to supply-creditors of non-railroad debtors where the alternative was the cessation of operations).  The rationale for the necessity of payment rule−rehabilitation of a debtor in reorganization cases−is "the paramount policy and goal of Chapter 11."  *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176.  Courts have recognized that the "necessity of payment rule" is "well-established in bankruptcy common law." *In re NVR, L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (under Section 105(a), a court "can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor"); *see also In re Motor Coach Indus. Int'l Inc.*, 2009 WL 330993, at *2 n.5 (Bankr. D. Del. Feb. 10, 2009) ("The 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor."); *In re Quality Interiors. Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("A general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment"); *In re Eagle-Picher Indus. Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation" is appropriate); *Mich. Bureau of Workers'*

*Disability Comp. v. Chateaugav Corp. (In re Chateauguay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition worker's compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the Debtor and payment of creditors in full or at least proportionately"); 2 COLLIER ON BANKRUPTCY, 105.01 (16th ed. rev. 2011) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

19.    Courts also have permitted post-petition payment of pre-petition claims pursuant to section 105(a) in other situations, such as if nonpayment of a pre-petition obligation would trigger a withholding of goods or services essential to the debtor's business reorganization plan. *See In re UNR Indus.*, 143 B.R. 516, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay pre-petition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *Ionosphere Clubs*, 98 B.R. at 167-77 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

20.    This flexible approach is particularly critical where a pre-petition creditor provides vital goods or services to a debtor that would be unavailable if such debtor did not satisfy its pre-petition obligations.  In *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court stated it "may exercise its equity powers under §105(a) to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately.'" *Id*.  The court explained that "a *per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id*. at 932.

21.    The Debtors submit that section 363(c) of the Bankruptcy Code provides statutory authority for the Debtors' request (but not direction) to renew or replace Insurance Programs or to enter into new insurance arrangements as may be required as the annual terms of existing

Insurance Programs and arrangements expire, in the ordinary course of business, without further order of the Court.    Section 363(c) provides that a debtor-in-possession may "enter into transactions" in the ordinary course without notice or a hearing.  *See* 11 U.S.C. § 363(c).  In evaluating whether a transaction is in the ordinary course, a court must determine whether it is "of the sort commonly undertaken by companies in [the debtor's] industry" and whether it subjects a hypothetical creditor "to economic risk of a nature different from those he accepted when he decided to extend credit."  *In re Roth Am., Inc.*, 975 F.2d 949, 952–53 (3d Cir. 1992).

22.    It is essential to the continued operation of the Debtors' businesses and reorganization that the Insurance Programs be maintained on an ongoing and uninterrupted basis. Courts in this and other districts have granted similar relief in other chapter 11 cases pursuant to sections 363(b) and (c) of the Bankruptcy Code.  *See, e.g., In re B. Lane, Inc., d/b/a Fashion to Figure, et al.*, Case No. 17-32958 (Bankr. D.N.J. Nov. 15, 2017); *In re Mountain Creek Resort, Inc.*, Case No. 17-19899 (Bankr. D.N.J. Jun. 5, 2017); *In re Kid Brands, Inc.*, Case No. 14-22582 (Bankr. D.N.J. June 20, 2014); *In re Dots, LLC*, Case No. 14-11016 (DHS) (Bankr. D.N.J. Jan 24, 2014); *In re U.S. Concrete, Inc.*, Case No. 10-11407 (PJW) (Bankr. D. Del. Apr. 30, 2010); *In re Smurfit-Stone Container Corporation*, Case No. 09-10235 (BLS) (Bankr. D. Del. Jan. 27, 2009).  Given the crucial nature of the Debtors' various insurance coverage requirements, similar relief is appropriate here.

**B.    The Court Should Authorize and Direct Banks and Other Financial
Institutions to Honor and Pay Checks Issued and Make Other
Transfers in Respect of the Insurance Policies**

23.    The Debtors request that the Court authorize and direct the Debtors' banks and other financial institutions at which the Debtors maintain disbursement accounts, at the Debtors' direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtors in respect of the Insurance Policies.  The Debtors also seek authority to issue new post-petition checks, or effect new electronic fund transfers, on account of such obligations to replace any pre-petition

checks or electronic fund transfer requests that may be lost, dishonored, or rejected as a result of the commencement of these Chapter 11 Cases.

**C.   The Debtors Have Satisfied Bankruptcy Rule 6003**

24.     Bankruptcy Rule 6003 provides that to the extent "relief is necessary to avoid immediate and irreparable harm," a Bankruptcy Court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one days after the Petition Date. FED. R. BANKR. P. 6003; *see also In re Quiksilver, Inc.*, 2015 WL 13640498 (Bankr. D. Del. Oct. 28, 2015) (noting that requirements under Bankruptcy Rule 6003 were satisfied where the requested relief was necessary to avoid immediate and irreparable harm).  As described herein, the Debtors are legally and contractually required to maintain many of their Insurance Policies.  In addition, the Insurance Providers' refusal to renew any Insurance Policy as a result of the Debtors' failure to pay any Insurance Obligation could subject the Debtors to substantial liability as well as a potential cessation of operations, to the detriment of all parties-in-interest. Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

<u>**WAIVER OF BANKRUPTCY RULE 6004 (a) AND (h)**</u>

25.     To implement the foregoing immediately, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

<u>**WAIVER OF MEMORANDUM OF LAW**</u>

26.     Because the legal basis upon which the Debtors rely is incorporated herein and the Motion does not raise any novel issues of law, the Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3).

8827352

**RESERVATION OF RIGHTS**

27.     Nothing in this Motion shall be construed as a request for authority to assume any executory contract or unexpired lease under section 365 of the Bankruptcy Code.  As such, the Debtors reserve their right to assume or reject any Insurance Policy in accordance with the applicable provisions of the Bankruptcy Code.

28.     Furthermore, nothing in this Motion shall be construed as impairing the Debtors' right to contest the validity or amount of any Insurance Obligation, and the Debtors reserve the right to contest, on nonbankruptcy grounds or otherwise, any claim of any party, including, without limitation, the Insurance Providers or the Debtors' employees.

**NOTICE**

29.     Notice of this Motion has been given to (i) the Office of the United States Trustee for Region 3; (ii) the Debtors' thirty largest unsecured creditors on a consolidated basis and the Debtors' thirty largest investors on a consolidated basis; (iii) S3 RE Bergenline Funding, LLC, S3 RE 1300 Manhattan Funding LLC and LendingOne LLC; (iv) the U.S. Attorney General; (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission; (vii) the New Jersey Attorney General; (viii) the U.S. Attorney for the District of New Jersey; (ix) the New Jersey Division of Taxation; (x) the New Jersey Bureau of Securities; (xi) the New York Attorney General; (xii) the New York Department of Taxation and Finance; (xiii) the Florida Attorney General; (xiv) the Florida Department of Revenue; (xv) the Illinois Attorney General; (xvi) the Illinois Department of Revenue; (xvii) the Illinois Securities Department; (xviii) the Alabama Attorney General; (xix) the Alabama Department of Revenue; (xx) the Alabama Securities Commission; (xxi) the Insurance Providers; and (xxii) those parties who have filed a notice of appearance and request for service of pleadings in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

8827352

## CONCLUSION

**WHEREFORE,** the Debtors respectfully requests that this Court (a) enter an order substantially in the form attached hereto as **Exhibit A**; and (b) grant the Debtors such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: June 8, 2022 **SILLS CUMMIS & GROSS P.C.**

/s/ S. Jason Teele
S. Jason Teele, Esq.
Daniel Harris, Esq.
Gregory A. Kopacz Esq.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)
(937) 643-6500 (Facsimile)
steele@sillscummis.com
dharris@sillscummis.com
gkopacz@sillscummis.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*

8827352

**<u>EXHIBIT A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**SILLS CUMMIS & GROSS P.C.**
S. Jason Teele, Esq. (steele@sillscummis.com)
Daniel Harris, Esq. (dharris@sillscummis.com)
Gregory Kopacz, Esq. (gkopacz@sillscummis.com)
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)
(973) 643-6500 (Facsimile)
*Proposed Counsel to the Debtor*
*and Debtor-in-Possession*

In re:

NATIONAL REALTY INVESTMENT ADVISORS,
LLC, *et al.*[1]

           Debtors.

Chapter 11

Case 22-14539- (JKS)

(Joint Administration Requested)

### ORDER AUTHORIZING THE DEBTORS TO (I) PAY PRE-PETITION INSURANCE PREMIUMS (II) CONTINUE PRE-PETITION INSURANCE PROGRAMS AND (III) PAY ALL PRE-PETITION OBLIGATIONS IN RESPECT THEREOF

       The relief set forth on the following pages, numbered two (2) through and including four (4), is hereby **ORDERED**.

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

8827352

Page:      2
Debtor:    National Realty Investment Advisors, LLC, *et al.*
Case:      22-14539
Caption:   Order Authorizing the Debtors to (i) Pay Pre-Petition Insurance Premiums (ii)
           Continue Pre-Petition Insurance Programs and (iii) Pay All Pre-Petition Obligations in
           Respect Thereof

Upon consideration of the motion (the "**Motion**")[2] of the Debtors for entry of an order authorizing the Debtors to (i) pay pre-petition insurance premiums, (ii) continue pre-petition insurance programs, and (iii) pay all pre-petition obligations in respect thereof; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that granting the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; and it appearing that notice of the Motion is sufficient under the circumstances; and any objections to the requested relief having been withdrawn or overruled; and after due deliberation and sufficient cause appearing therefor;

### IT IS HEREBY ORDERED THAT:

1.      The Motion is granted to the extent set forth herein.

2.      The Debtors are authorized, but not directed, to pay in their sole discretion, all Insurance Obligations that (i) were due and payable or related to the period prior to the Petition Date, and (ii) are or become due and payable or are related to the period after the Petition Date.

3.      The Debtors are authorized and empowered to maintain their Insurance Programs without interruption, on the same basis, and in accordance with the same practices and procedures that were in effect prior to the Petition Date.

4.      The Debtors are authorized to renew their Insurance Programs or obtain replacement coverage, as needed, in the ordinary course of business.

---

[2]      Capitalized terms used but not defined shall have the meanings ascribed to them in the Motion.

8827352

Page:      3
Debtor:    National Realty Investment Advisors, LLC, *et al.*
Case:      22-14539
Caption:   Order Authorizing the Debtors to (i) Pay Pre-Petition Insurance Premiums (ii)
           Continue Pre-Petition Insurance Programs and (iii) Pay All Pre-Petition Obligations in
           Respect Thereof

5.     All of the Debtors' banks are authorized and directed to receive, honor, process, and pay, to the extent of funds on deposit, any and all checks or electronic transfers drawn on the Debtors' bank accounts relating to the Insurance Obligations, including those checks or electronic transfers that have not cleared the banks as of the Petition Date.

6.     The Debtors are authorized to replace any pre-petition checks or electronic transfers relating to the Insurance Obligations that may be dishonored or rejected.

7.     The Debtors' banks may rely on the representations of the Debtors as to which checks or electronic transfers are in payment of the Insurance Obligations.

8.     Nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Debtors' Insurance Programs.

9.     To the extent that any Insurance Program or Insurance Policy or any related contract or agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Order nor any payments made in accordance with this Order shall constitute the post-petition assumption of any such Insurance Program, Insurance Policy, contract, or related agreement pursuant to section 365 of the Bankruptcy Code.

11.    The relief granted in this Order is necessary to avoid immediate and irreparable harm to the Debtors and (i) the requirements of Bankruptcy Rule 6003 are deemed satisfied and (ii) the requirements of Bankruptcy Rule 6004(h) are waived

10.    To the extent applicable, the requirements of Bankruptcy Rule 6004(a) are hereby waived.

11.    Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

12.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

8827352

Page:    4
Debtor:    National Realty Investment Advisors, LLC, *et al.*
Case:    22-14539
Caption:    Order Authorizing the Debtors to (i) Pay Pre-Petition Insurance Premiums (ii)
        Continue Pre-Petition Insurance Programs and (iii) Pay All Pre-Petition Obligations in
        Respect Thereof

13.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

14.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

15.    Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

16.    The Debtors shall serve by regular mail a copy of this Order and the Motion on all parties required to receive such service pursuant to D.N.J. LBR 9013-5(f) within two (2) days after entry of this Order.

17.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18.    The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

8827352

**EXHIBIT B**

**Insurance Policies**

| Account | Policy Type (Coverage) | Policy Term | Policy Number | Carrier | Total Annual Premium |
|---|---|---|---|---|---|
| Wright by the Sea 1901 LLC | Builders All Risk | 10/01/2019 - 12/31/2022 | B1263EG0821519 | Lloyd's of London | $   47,345.24 |
| Wright by the Sea 1901 LLC | General Liability | 10/03/2018 - 12/31/2022 | NY18CGL254206IC | Navigators Insurance Company | $   120,334.40 |
| Wright by the Sea 1901 LLC | Flood | 07/17/2021 - 07/17/2022 | 2520029186 | Metropolitan Group Prop & Cas Ins Co | $   23,665.00 |
| Wright by the Sea 1901 LLC | Pollution | 07/24/2021 - 07/24/2022 | IEC1000600 | Ironshore Specialty Insurance | $   33,950.18 |
| Wright by the Sea 1901 LLC | Excess Liability | 10/03/2018 - 12/31/2022 | XOL420006700 | Wilshire Insurance Company | $   355,705.55 |
| Madison Street Capital 931, LLC | General Liability | 04/08/2022 - 04/08/2023 | CL1925236C | United States Liability Insurance Co | $   1,121.30 |
| Madison Street Capital 931, LLC | Excess Liability | 04/08/2022 - 04/08/2023 | XL1594894C | United States Liability Insurance Co | $   2,077.00 |
| Newark Street Capital 511-521 LLC | General Liability | 03/27/2022 - 03/27/2023 | CL1922014C | United States Liability Insurance Co | $   1,432.18 |
| Newark Street Capital 511-521 LLC | Excess Liability | 03/27/2022 - 03/27/2023 | XL1594433C | United States Liability Insurance Co | $   2,044.68 |
| Briny Capital 305, LLC | General Liability | 12/28/2021 - 12/28/2022 | GL1129799 | United States Liability Insurance Co | $   1,723.72 |
| Briny Capital 305, LLC | Excess Liability | 12/28/2021 - 12/28/2022 | XL1622565 | United States Liability Insurance Co | $   2,009.00 |
| National Realty Investment Advisors LLC | Property & Equipment Breakdown | 12/18/2021 - 12/18/2022 | SSP2202669 | Seneca Specialty Insurance Company | $   75,750.14 |

| Account | Policy Type (Coverage) | Policy Term | Policy Number | Carrier | Total Annual Premium |
|---|---|---|---|---|---|
| National Realty Investment Advisors LLC | General Liability | 12/18/2021 - 12/18/2022 | BDG305223101 | Maxum Indemnity Company | $ 9,821.15 |
| National Realty Investment Advisors LLC | Excess Liability | 12/18/2021 - 12/18/2022 | 85550T212ALI | StarStone National Insurance Company | $ 4,185.50 |
| Manhattan Avenue Capital 1300 | Inland Marine | 01/07/2022 - 01/07/2023 | 011781876 | Lexington Insurance Company | $ 128,967.50 |
| Manhattan Avenue Capital 1300 | Builders Risk | 01/11/2022 - 01/11/2025 | IMPE81312400 | Great American Insurance Company | $ 154,058.00 |
| Manhattan Avenue Capital 1300 | General Liability | 10/14/2019 - 4/14/2023 | CE19CGLZ0379WIC | Navigators Insurance Company | $ 133,581.60 |
| Manhattan Avenue Capital 1300 | Excess Liability (Primary) | 10/14/2019 - 4/14/2023 | NY19EXCZ02EWCIC | Navigators Insurance Company | $ 76,213.15 |
| Manhattan Avenue Capital 1300 | Excess Liability (Secondary) | 4/7/2020 - 4/14/2023 | 1000579683201 | Starr Indemnity & Liability Company | $ 146,639.11 |
| Manhattan Avenue Capital 1300 | Pollution | 2/27/2020 – 2/27/2024 | IEC1000Y00 | Ironshore Specialty Insurance Company | $ 10,285.07 |
| Henry Street Capital 506 | General Liability | 3/4/2021 - 3/4/2023 | PSS2101247 | United Specialty Insurance Company | $ 222,981.96 |
| Henry Street Capital 506 | Builders Risk | 2/23/2022 - 08/23/2022 | SRL1162 | Lloyd's of London | $ 34,992.20 |
| Bergenline Capital 4901, LLC | Builders Risk | 1/16/2021 - 1/16/2023 | ICN100065062121 | Starr Indemnity & Liability Company | $ 53,676.00 |
| Bergenline Capital 4901, LLC | General Liability | 7/16/2018 - 7/16/2022 | NYCGL000007925701 | First Mercury Insurance Company | $ 118,762.50 |
| Bergenline Capital 4901, LLC | Excess Liability (Primary) | 7/16/2018 - 7/16/2022 | NYEX000007925801 | First Mercury Insurance Company | $ 58,381.25 |

-6-

8827352

| Account | Policy Type (Coverage) | Policy Term | Policy Number | Carrier | Total Annual Premium |
|---|---|---|---|---|---|
| Bergenline Capital 4901, LLC | Excess Liability (Secondary) | 7/16/2018 - 7/16/2022 | IS18EXC938252IV | Navigators Insurance Company | $    57,239.00 |
| Bergenline Capital 4901, LLC | Excess Liability (Tertiary) | 7/16/2018 - 7/16/2022 | PHUB639161 | Philadelphia Indemnity Insurance Company | $    26,500.00 |
| Bergenline Capital 4901, LLC | Excess Liability (Quaternary) | 10/5/2020 - 7/16/2022 | CX2020031201 | Capitol Specialty Insurance Corporation | $    15,750.00 |
| Bergenline Capital 4901, LLC | Pollution Liability | 7/16/2018 - 7/16/2022 | 03114408 | Allied World Insurance Company | $    9,349.20 |
| 52ND STREET CAPITAL 511-513, LLC | Builders Risk | 4/1/2022 - 10/1/2024 | DPN000009600 | North American Capacity Insurance Co | $    275,545.75 |
| 52nd STREET CAPITAL 511-513, LLC | General Liability | 6/28/2021 - 6/28/2025 | HCG100047901 | Hudson Excess Insurance Company | $    285,246.00 |
| 52nd STREET CAPITAL 511-513, LLC | Excess Liability (Primary) | 6/28/2021 - 6/28/2025 | XSA1205770 | Associated Industries Insurance Co, Inc | $    198,097.20 |
| 52nd STREET CAPITAL 511-513, LLC | Excess Liability (Secondary) | 6/28/2021 - 6/28/2025 | NY21EXCZ07ZYVIC | Navigators Specialty Insurance Company | $    120,535.80 |
| 52nd STREET CAPITAL 511-513, LLC | Pollution Liability | 6/28/2021 - 6/28/2026 | IEC1002Z00 | Ironshore Specialty Insurance Company | $    45,766.35 |
| North Bergen Capital 8709, LLC | General Liability | 4/15/2022 - 4/15/2023 | 3AA558276 | Evanston Insurance Company | $    1,800.00 |
| North Bergen Capital 8709, LLC | Excess Liability | 4/15/2022 - 4/15/2023 | 79272O223ALI | Starstone National Insurance Company | $    4,364.00 |

8827352

| Account | Policy Type (Coverage) | Policy Term | Policy Number | Carrier | Total Annual Premium |
|---|---|---|---|---|---|
| 2044 West First Capital | Commercial Property (Hotel & LRO) | 12/30/21-12/30/22 | PRP004683/2200 | Lloyd's | $    25,175.26 |
| 2044 West First Capital | Excess Liability (Hotel) | 12/30/21-12/30/22 | 73862L210ALI | StarStone National Insurance Company | $    5,252.00 |
| 2044 West First Capital | Excess Liability (Marina) | 12/30/21-12/30/22 | 9CE3110-0 | Markel American Insurance Company | $    9,950.00 |
| 2044 West First Capital | General Liability (Hotel) | 12/30/21-12/30/22 | MP0009006005084 | Mesa Underwriters Specialty Insurance Company | $    8,639.40 |
| 2044 West First Capital | Marine Package (Marina) | 12/30/21-12/30/22 | UM00128334MA21A | XL Specialty Insurance Company | $    10,366.00 |
| 2044 West First Capital | Dock Coverage; Piers and Wharves | 06/3/22- 06/3/23 | 726OM386101 | Argonaut Insurance Company | $    156,000.00 |
| 2044 West First Capital | Cyber Coverage | 3/17/2022-3/17/2023 | C-4LWN-130486-CYBER-2022 | North American Capacity Insurance Company | $    3,273.90 |
| 2044 West First Capital | Pollution Coverage | 02/04/22-02/04/23 | M-17592-22 | State National Insurance Company, Inc | $    1,402.00 |
| 2044 West First Capital | Property (Residential Buidlings) | 4/08/2022-4/8/2023 | FSF16574727 001 | Westchester Surplus Lines Insurance Company | $    3,557.20 |
| FTM Partners Portfolio Hotel.Retail, LLC | Workers Comp | 01/31/22-01/31/23 | WWC3577799 | Per Caparo | $    2,455.00 |
| FTM Partners Porfolio Marina, LLC | Workers Comp | 01/31/22-01/31/23 | WWC3576772 | Per Caparo | $    4,693.00 |

-8-

| Account | Policy Type (Coverage) | Policy Term | Policy Number | Carrier | Total Annual Premium |
|---|---|---|---|---|---|
| South Christopher Columbus Capital 1499, LLC | Vacant land general liability and excess | 09/15/21-09/15/22 | CS17008448-06 | Capitol Specialty | $    1,460.50 |
| 1st Avenue Capital 301, LLC | vacant General Liability | 04/24/22-04/24/23 | 3AA553889 | Evanston | $      603.76 |
| 1st Avenue Capital 301, LLC | Excess Liability | 04/24/22-04/24/23 | EZXS3075308 | Evanston | $    1,207.50 |
| 3rd Street Capital 200-210, LLC | Vacant lot general liability | 11/05/22-11/05/22 | 3AA518750 | Evanston | $    1,008.00 |
| Adam St Capital 6903, LLC | Vacant package | 11/01/21-11/01/22 | Per Caparo | USLI | $    6,557.46 |
| Guttenberg Capital 416-22 69th St, LLC | vacant building general liability | 10/23/21-10/23/22 | PAV0343557 | Global Indemnity | $    1,386.25 |
| Cherry Street Capital 113-27, LLC | Vacant property | Per Caparo | SSP2203140 | Seneca | $   50,626.86 |
| Cherry Street Capital 113-27, LLC | Vacant general liability 9 units | Per Caparo | L 271002541 | Atlantic Casualty | $    4,532.79 |
| Flood policies: 07/18/22-23 per Caparao | Flood | 07/18/21-07/18/22 | 87-06201981-2021 | Assurant, Inc | $      975.00 |
| Flood policies: 07/18/22-23 per Caparao | Flood | 07/18/21-07/18/22 | 87-06201984-2021 | Assurant, Inc | $      975.00 |
| Flood policies: 07/18/22-23 per Caparao | Flood | 07/18/21-07/18/22 | 87-06201988-2021 | Assurant, Inc | $      975.00 |

8827352

| Account | Policy Type (Coverage) | Policy Term | Policy Number | Carrier | Total Annual Premium |
|---|---|---|---|---|---|
| Flood policies: 07/18/22-23 per Caparao | Flood | 07/18/21-07/18/22 | 87-06201992-2021 | Assurant, Inc | $ 975.00 |
| Flood policies: 07/18/22-23 per Caparao | Flood | 07/18/21-07/18/22 | 87-06201997-2021 | Assurant, Inc | $ 975.00 |
| Flood policies: 07/18/22-23 per Caparao | Flood | 07/18/21-07/18/22 | 87-06202001-2021 | Assurant, Inc | $ 975.00 |
| Flood policies: 07/18/22-23 per Caparao | Flood | 07/18/21-07/18/22 | 87-06202003-2021 | Assurant, Inc | $ 975.00 |
| Flood policies: 07/18/22-23 per Caparao | Flood | 07/18/21-07/18/22 | 87-06202010-2021 | Assurant, Inc | $ 1,160.00 |
| Flood policies: 07/18/22-23 per Caparao | Flood | 07/18/21-07/18/22 | 87-06202017-2021 | Assurant, Inc | $ 975.00 |
| National Realty Investment Advisors LLC | Businessowners | 03/23/22-03/23/23 | B 6012054654 | C N A - Continental Casualty Company | $ 1,989.86 |
| National Realty Investment Advisors LLC | Workers Compensation | 03/23/22-03/23/23 | WC 6 12054668 | C N A - National Fire Insurance Company of Hartford | $ 1,849.00 |

-10-

8827352