## Schedule 4

494 SEVENTH STREET CONDOMINIUM
PURCHASE AGREEMENT


AGREEMENT made this  13ᵀᴴ  day of April, 2022, between **Seventh Street Capital 494, LLC** ("SPONSOR") as sponsor of the offering plan and **Sarah Greenberg & Oded Burger** residing at 45 Jenkinstown Road, New Paltz, NY 12561 (the "Purchasers").

UNIT NO. 1

Purchase Price payable as follows:

| | |
|---|---|
| Down payment (herewith) | $  235,000.00 |
| Balance | $2,115,000.00 |
| Total Purchase Price | $2,350,000.00 |

1.    The Plan.  The Purchaser acknowledges having received the Plan at least three (3) full business days prior to the Purchaser's signing this Agreement.  The Purchaser hereby adopts, accepts, and approves the Plan (including, without limitation, the proposed Condominium Documents contained in Part II of the Plan) and agrees to be bound by the terms and conditions thereof, as well as all amendments to, the Plan duly filed by the Sponsor (including without limitation, amendments involving any changes, modifications, or updating of the estimated Common Charges, the estimated real estate taxes to be paid by the Purchaser, and Plan budget). Any such amendments shall not excuse the Purchaser from performing the Purchaser's obligations hereunder, nor shall they entitle the Purchaser to any offset or credit against Purchaser Price.  Any such amendments may be made by the Sponsor without the Purchaser's consent or approval; subject to the Purchaser's right to rescind in the event of a material amendment to the Plan or the Condominium Documents which adversely affects in any material respect the Purchaser's obligations hereunder or under the Plan as more specifically set forth in the Plan.  The Plan is hereby incorporated in this Agreement with the same force and effect as if set forth at length herein.

1

In the event of any inconsistency or conflict between the provisions of this Agreement and those contained in the Plan, the provisions of the Plan shall govern and be binding. The Purchaser acknowledges having had a full opportunity to examine all documents and investigate all statements made herein and in the Plan.

Purchaser has the right to rescind the Purchase agreement and have the full down payment refunded, such right to be exercised not more than seven (7) days after delivering an executed Purchase Agreement, together with the required down payment to Sponsor's attorneys. A Purchaser desiring to rescind must either personally deliver written notice of rescission to the Sponsor or Sponsor's attorneys within the seven (7) day period, or mail a notice of rescission to the Sponsor or Sponsor's attorneys and have the mailing post-marked within the seven (7) day period.

2.      Agreement to Purchase. Purchaser agrees to purchase from Sponsor and Sponsor agrees to sell to Purchaser the Condominium Unit at **494 Seventh Street**, in the Borough of Brooklyn, in the City of New York and County of Kings, State of New York, designated as Unit No. 1, together with a 40% undivided interest in the common elements of the Condominium for the Total Purchase Price shown above.

Purchaser has delivered herewith Purchaser's check for the Down payment as shown above, made payable to "Gabor & Marotta LLC, Attorney Escrow Account", the receipt of which is hereby acknowledged subject to collection. The above-stated Balance shall be payable by certified check of Purchaser or official bank check drawn on a bank which is a member of the New York City Clearing House ("Acceptable Funds") drawn directly to the order of Sponsor, at the Closing of Title as discussed in **Paragraph 3**.

3.      Delivery of the Deed. The Closing of Title will occur on the date and at the time and place

2

in the City of New York as Sponsor will designate to Purchaser on not less than thirty (30) days' prior written notice. Sponsor will have the right, from time to time, to adjourn such date and time for closing on written notice to Purchaser. If adjourned, Sponsor will fix a new date and time for closing and will give Purchaser not less than thirty (30) business days' prior written notice of the new scheduled date and time for closing.  The Closing of Title will occur only after or concurrently with compliance with the prerequisites set forth under " Terms of Sale" in Part I of the Plan. The First Closing, as defined in the Plan, will take place within the time period specified in the section entitled "Effective Date and Closing Date" in Part I of the Plan.  As therein set forth, if the First Closing is adjourned beyond twelve (12) months after the Plan is declared effective, the sole remedy of Purchaser will be to rescind this Agreement and be refunded all down payments, together with any interest thereon, provided that written notice of Purchaser's intention to rescind must be sent before the date of the First Closing.  The risk of loss from fire or other casualty remains with the Sponsor unless and until legal title to the unit has been conveyed to the purchaser.

At Closing Purchaser shall pay Sponsor the Balance due in Acceptable Funds and Sponsor shall deliver to Purchaser the deed to Purchaser's Unit. The deed shall be a bargain and sale deed with covenants against grantor's acts in the form contained in Part II of the Plan. Sponsor and Purchaser shall split the New York State and New York City transfer taxes on such deed and recording charges 50/50. In addition, Purchaser shall sign the power of attorney in favor of the Board of Managers of the Condominium in the form contained in Part II of the Plan.

Purchaser agrees that upon delivery of the deed, Purchaser's present lease, if any, or monthly tenancy of the Unit shall be deemed canceled and terminated as of the date of Closing.

4.    Receipt of Documents. Purchaser acknowledges receipt, at least three (3) full business days prior to the execution of this Agreement, of the proposed Declaration, By-Laws, Schedules,

3

Plans and Exhibits contained in the Offering Plan for **494 Seveneth Street Condominium**, Brooklyn, New York (the "Plan"), as amended, all of which are made part of this Agreement as if they were set forth in full in this Agreement. Purchaser acknowledges that he has read the Plan and agrees to be bound by the Plan.

5.      In the event of any inconsistency or conflict between the provisions of this Agreement and those contained in the Plan, the provisions of the Plan will govern and be binding.   Purchaser acknowledges having had full opportunity to examine all documents and investigate all statements made herein and in the Plan.

Purchaser acknowledges that except as stated in this Agreement (and as set forth in the Declaration, By-Laws, and Offering Plan), Purchaser has not relied on any representations or other statements of any kind or nature made by Sponsor, its agents or other persons, including but not limited to any representations relating to the description, size or dimensions of the Unit or rooms, and the estimated common charges or other expenses of the Condominium. No person has been authorized to make any representations on behalf of Sponsor. No oral representations or statements will be considered a part of this Agreement. Purchaser agrees (a) to purchase the Unit, without offset or any claim against, or liability of Sponsor, whether or not any layout or dimension of the Unit or any part thereof, or of the Common Elements, as shown on the Floor Plans, is accurate or correct, provided the layouts and dimensions conform substantially to such Floor Plans and (b) that Purchaser will not be relieved of any of Purchaser's obligations hereunder by reason of any minor inaccuracy or error. The provisions of this Paragraph 5 will survive the Closing.

6.      Marketable Title. Sponsor shall convey to Purchaser good and marketable title as Princeton Abstract, Inc., insuring through **Fidelity National Title Insurance Company** or such other title

4

insurance company as Purchaser may select which is a member of the Board of Title Underwriters and licensed to do business in New York State, shall approve and insure for fee title insurance (subject to the terms of the Plan, the Declaration and By-Laws as filed) and free and clear of all liens and encumbrances except the rights of present tenants, if any, as described below, the lien of any mortgage procured by Purchaser, and the title exceptions set forth as "Permitted Encumbrances" in the Plan as filed in the Section of Part I entitled "Closing and Terms of Sale." Any of such title exceptions and or any other title exceptions or objections which have been waived or consented to by Purchaser may for convenience be omitted by Sponsor in the deed to be delivered hereunder, but all of such exceptions shall nevertheless survive delivery of the deed. Fee title insurance may be purchased at Purchaser's option at Purchaser's own cost and expense.

7.      Condition of Unit; Appliances and Equipment. At Closing, the Unit will contain only those fixtures and equipment currently installed therein that are owned by Sponsor. They shall be delivered free and clear of all liens and encumbrances, other than those to which the Unit is subject pursuant to this Agreement. The Unit is being sold unfurnished. Furniture, wall coverings, furnishings, decorations and the like in or about any model unit are for display purposes only and are not included in the sale. Any floor plans or sketches shown to Purchaser are only approximations of the Unit's dimensions and arrangement, and Purchaser should not rely thereon. There will be no modifications or extras unless agreed to in writing by the parties.

        The signing of this Agreement by Purchaser signifies Purchaser's acceptance of the condition of the Unit, and all fixtures, machinery, equipment, furnishings, appliances, installations and other personal property contained therein (hereinafter collectively called "Installations"), in their respective existing conditions, subject to reasonable use, wear and tear and natural

5

deterioration between the date Purchaser signs this Agreement and delivery of the deed to Purchaser. Purchaser acknowledges having read, or having had ample opportunity to read, the Architects Report - Description of Property and Specifications of **Ben Herzog Architect, PC,** set forth in Part II of the Plan, which sets forth a description of the existing physical condition of the Building. Purchaser understands that the Sponsor has no obligation to make any repairs, improvements or decorations in or to the Building, the Unit or the Installations, except as specifically set forth in the Plan and subject to Sponsor's representations in the Plan.

Purchaser will be given a reasonable opportunity to examine the Unit prior to Closing and is advised to make a careful examination at such time.

8.       Effectiveness of Offering Plan. It is agreed that this Purchase Agreement is contingent upon the Plan being declared effective and that the Plan shall not be declared effective except as provided in the Plan.

The Plan may be abandoned by the Sponsor at any time prior to declaring it effective and shall be abandoned and deemed abandoned if it has not been declared effective within the time prescribed by the Plan.   If the Plan is abandoned, does not become effective, or is not consummated for any reason after being declared effective within the time prescribed by the Plan, the following shall apply: This Purchase Agreement shall be deemed canceled and within thirty (30) days thereafter, Purchaser will receive all monies paid hereunder together with interest, if any, earned thereon.   Such monies shall be returned within five (5) days after submission of the abandonment documents required by Title 13 N.Y.C.R.R. Section 20.1(l)(2) or other such documents required by the Attorney General are accepted for filing by the Office of the Attorney General (Notwithstanding the foregoing, Sponsor will retain as liquidated damages as provided in

6

Paragraphs 10 and 12, all down payments [and any interest thereon] of any Purchaser who is then in default hereunder beyond any applicable grace period, or if this Agreement has previously been canceled due to default by Purchaser.). Said funds shall be returned by Certified Mail, Return Receipt Requested. Upon such repayment, Purchaser and Sponsor will have no claim against each other or the Selling Agent in connection with this Agreement or the Plan, and all such parties will be relieved and discharged from all liabilities and obligations hereunder and under the Plan.

9.    Closing Expenses and Adjustments. At the closing of title, Purchaser shall pay the following: (i) any charges for the cost of title examination, cost of fee and/or mortgage title insurance, 50% of New York State Real Property Transfer taxes, mortgage recording taxes, or recording charges for the deed, mortgage documents, and power of attorney in favor of the Board of Managers; (ii) an amount equal to two (2) month's common charges, representing Purchaser's share of initial working capital for the Condominium; and (iii) the closing fees described in Schedule A of the Plan.  Sponsor shall pay Sponsor's attorneys fees.

10.    **Purchaser shall pay Mansion Tax and the Supplemental Tax.**

Sponsor and Purchaser will apportion, as of midnight on the day preceding the Closing Date, real estate taxes and/or common charges assessed during the month in which title closes or established as a reserve based upon the fast bill received, and rent and other charges, if any, pursuant to a lease for or tenancy of the Unit. Any errors or omissions in computing apportionments at Closing will be corrected; this provision will survive Closing. In the event Purchaser obtains a mortgage secured by the Unit Purchaser shall pay to the Sponsor a sum equal to the partial mortgage tax credit to which the Purchaser is entitled pursuant to Section 339-ee(2) of the Condominium Act.

7

In the event that on or before the closing the Unit has not been separately assessed for real estate tax purposes prior to the closing of title to the first unit, Sponsor may place in escrow, in the name of the board of managers, an amount equal to the unpaid real estate taxes which will be levied against the parcel for the six month period following the first closing. Alternatively, the sponsor may place in escrow, in the name of the board of managers, an amount equal to the real estate taxes attributable to the unsold units for such six month period and may collect at each unit closing the estimated amount of taxes attributable to such unit for the balance of the six month period. The board of managers will pay the real estate taxes from the escrow account when taxes are due and payable and the funder of the escrow account will be entitled to reimbursement from unit owners to the extent of the actual assessment. No escrow will be required if the condominium by-laws include as part of the common expenses, real estate taxes on the property until the units are separately assessed and after assessment unit owners will be reimbursed for any overpayment of taxes or assessed for an underpayment.

11.   DOWN PAYMENT IN ESCROW.

(a) The law firm of Gabor & Marotta LLC, with an address of 1878 Victory Boulevard, Staten Island, New York 10314, telephone number (718) 390-0555, shall serve as escrow agent ("Escrow Agent") for Sponsor and Purchaser.   Escrow Agent has designated the following attorney to serve as signatory: Daniel C. Marotta, Esq.  All designated signatories are admitted to practice law in the State of New York. Neither the Escrow Agent nor any authorized signatories on the account are the Sponsor, Selling Agent, Managing Agent, or any principal thereof, or have any beneficial interest in any of the foregoing.

(b) Escrow Agent and all authorized signatories hereby submit to the jurisdiction of the State of New York and its Courts for any cause of action arising out of the Purchase Agreement or

otherwise concerning the maintenance or release of the Deposit from escrow.

(c) The Escrow Agent has established the escrow account at Empire State Bank, located at 1361 North Railroad Avenue, Staten Island, in the State of New York ("Bank"), a bank authorized to do business in the State of New York. The escrow account is entitled "Gabor & Marotta LLC Attorney Escrow Account" ("Escrow Account"). The Escrow Account is a non-interest bearing IOLA Account. The Escrow Account is federally insured by the FDIC at the maximum amount of $250,000 per deposit. Any deposit in excess of $250,000 will not be insured, unless Escrow Agent has established multiple accounts on behalf of Purchaser at various institutions.

(d) All deposits received by Purchaser shall be in the form of checks, or wire transfers, and shall be made payable to or endorsed by the Purchaser to the order of Gabor & Marotta LLC, as Escrow Agent.

(e) If applicable, the interest rate for all Deposits made into the Escrow Account shall be the prevailing rate for such accounts. Interest shall begin to accrue upon placing the Deposit into the Escrow Account. All interest earned thereon shall be paid to or credited to the Purchaser at closing. No fees of any kind may be deducted from the Escrow Account, and the Sponsor shall bear all costs associated with the maintenance of the Escrow Account.

(f) Within five (5) business days after the Purchase Agreement has been tendered to Escrow Agent along with the Deposit, the Escrow Agent shall sign the Purchase Agreement and place the Deposit into the Escrow Account. Within (10) business days of placing the deposit in the Escrow Account, Escrow Agent shall provide written notice to Purchaser and Sponsor, confirming the Deposit. The notice shall provide the account number and initial interest rate, if any, to be earned on the Deposit. Any Deposits made for upgrades, extras, or custom work shall be initially deposited in the Escrow Account, and released in accordance to the terms of the Purchase

9

Agreement.

(g) The Escrow Agent is obligated to send notice to the Purchaser once the Deposit is placed in the Escrow Account. If the Purchaser does not receive notice of such deposit within fifteen (15) business days after the tender of the Deposit, he or she may cancel the Purchase Agreement within ninety (90) days after tender of the Purchase Agreement and Deposit to Escrow Agent. Complaints concerning the failure to honor such cancellation requests may be referred to the New York State Department of Law, Real Estate Finance Bureau, 28 Liberty Street, 21st Floor, New York, N.Y. 10005. Rescission shall not be afforded where proof satisfactory to the Attorney General is submitted establishing that the Deposit was timely placed in the Escrow Account in accordance with the New York State department of Law's regulations concerning Deposits and requisite notice was timely mailed to the Purchaser.

(h) All deposits, except for advances made for upgrades, extras, or custom work received in connection with the Purchase Agreement, are and shall continue to be the Purchaser's money, and may not be comingled with any other money or pledged or hypothecated by Sponsor, as per GBL section 352-h.

(i) Under no circumstances shall Sponsor seek or accept release of the Deposit of a defaulting Purchaser until after consummation of the Plan, as evidenced by the acceptance of a post-closing amendment by the New York State Department of Law. Consummation of the Plan does not relieve the Sponsor of its obligations pursuant to GBL sections 352-3(2-b) and 352-h.

(j) The Escrow Agent shall release the Deposit if so directed:

(i) Pursuant to terms and conditions set forth in the Purchase Agreement upon closing of title to the Unit; or

(ii) In a subsequent writing signed by both Sponsor and Purchaser; or

10

(iii) By a final, non-appealable order or judgment of a court.

If the Escrow Agent is not directed to release the Deposit pursuant to paragraphs (i) through (iii) above, and the Escrow Agent receives a request by either party to release the Deposit, then the Escrow Agent must give both the Purchaser and Sponsor prior written notice of not fewer than thirty (30) days before releasing the Deposit. If the Escrow Agent has not received notice of objection to the release of the Deposit prior to the expiration of the thirty (30) day period, the Deposit shall be released and the Escrow Agent shall provide further written notice to both parties informing them of said release. If the Escrow Agent receives a written notice from either party objecting to the release of the Deposit within said thirty (30) day period, the Escrow Agent shall continue to hold the Deposit until otherwise directed pursuant to paragraphs (i) through (iii) above. Notwithstanding the foregoing, the Escrow Agent shall have the right at any time to deposit the Deposit contained in the Escrow Account with the clerk of the county where the unit is located and shall give written notice to both parties of such deposit.

The Sponsor shall not object to the release of the Deposit to:

(i) A Purchaser who timely rescinds in accordance with an offer of rescission contained in the Plan or an Amendment to the Plan; or

(ii) All purchasers after an Amendment abandoning the Plan is accepted for filing by the Department of Law.

The Department of Law may perform random reviews and audits of any records involving the Escrow Account to determine compliance with all applicable statutes and regulations.

(k) Any provision of any Purchase Agreement or separate agreement, whether oral or in writing, by which a Purchaser purports to waive or indemnify any obligation of the Escrow Agent holding any Deposit in trust is absolutely void. The provisions of the Attorney General'

11

regulations and GBL sections 352-e(2-b) and 352-h concerning escrow trust funds shall prevail over any conflicting or inconsistent provisions in the Purchase Agreement, Plan, or any amendment thereto.

(l) Escrow Agent shall maintain the Escrow Account under its direct supervision and control.

(m) A fiduciary relationship shall exist between Escrow Agent, and Purchaser, and Escrow Agent acknowledges its fiduciary and statutory obligations pursuant to GBL sections 352(e)(2-b) and 352(h).

(n) Escrow Agent may rely upon any paper document which may be submitted to it in connection with its duties under this Purchase Agreement and which is believed by Escrow Agent to be genuine and to have been signed and presented by the proper party or parties and shall have no liability or responsibility with respect to the form, execution or validity thereof.

(o) Sponsor agrees that it shall not interfere with Escrow Agent's performance of its fiduciary duties and statutory obligations as set forth in GBL sections 352-(e)(2-b) and 352-(h) and the New York State Department of Law's regulations.

(p) Sponsor shall obtain or cause the selling agent under the Plan to obtain a completed and signed Form W-9 or W-8, as applicable, from Purchaser and deliver such form to Escrow Agent together with the Deposit and this Purchase Agreement.

(q) Prior to release of the Deposit, Escrow Agent's fees and disbursements shall neither be paid by Sponsor from the Deposit nor deducted from the Deposit by any financial institution under any circumstances.

(r) Sponsor agrees to defend, indemnify and hold Escrow Agent harmless from and against all costs, claims, expenses, and damages incurred in connection with and arising out of Escrow

12

Agent's responsibilities arising in connection with this Purchase Agreement or the performance or non-performance of Escrow Agent's duties under this Purchase Agreement, except with respect to actions or omissions taken or suffered by Escrow Agent in bad faith or in willful disregard of the obligations set forth in this Purchase Agreement or involving gross negligence of Escrow Agent. This indemnity includes, without limitation, disbursements and attorney's fees either paid to retain attorneys or representing the hourly billing rates with respect to legal services rendered by Escrow Agent to itself.

12.     Sponsor's Rights in the Event of Purchaser's Default. All sums paid on account of this Agreement and the reasonable expense of the examination of title to the Unit shall constitute liens on the Unit. However, these liens shall not continue after default by Purchaser under this Agreement.

13.     Default. The following shall constitute Events of Default by Purchaser hereunder:

(a) Purchaser's failure to pay the Additional down payment when due or the Balance on the Closing Date designated by Sponsor pursuant to Paragraph 2 hereof;

(b) Purchaser's failure to duly sign and deliver at Closing any document referred to in the Plan which Purchaser is required to sign when Sponsor delivers the deed to the Unit;

(c) The failure to pay, perform or observe any of Purchaser's other obligations hereunder which failure is not fully cured within 15 days following written notice to Purchaser of such default (30 days for failure to close after service of Notice of Closing).

Upon the occurrence of an Event of Default, Sponsor may cancel this Agreement on written notice to Purchaser, and upon the giving of such notice this Agreement shall be and be deemed canceled, Sponsor shall retain, as liquidated damages, all down payments and any interest earned thereon and Purchaser, Sponsor and Selling Agent will be released and discharged of and

13

from all further liability and obligations hereunder and under the Plan. Thereafter, the Unit may be sold to another as though this Agreement had never been made, and without accounting to Purchaser for the proceeds of such sale.

14.     Seller's inability to Deliver Deed - Cancellation of Purchase Agreement. It is understood and agreed that if Sponsor is unable to deliver a deed to the Unit in accordance with this Agreement because of Sponsor's inability to complete the filing of the premises as part of a condominium plan in accordance with the Offering Plan of 494 Seventh Street Condominium, as it may be amended, or if Sponsor abandons the Plan (and Sponsor has the unconditional right to abandon the Plan at any time prior to its effective date), Sponsor shall immediately notify Purchaser in writing and this Agreement will terminate. In that case, Sponsor's sole liability shall be the prompt return to Purchaser (unless Purchaser is then in default or this Agreement has previously been canceled, as provided in Paragraph 6) of the Down Payment together with interest, if any, earned thereon.

In accordance with the Section of the Plan entitled "Effective Date", the Sponsor may, at its option, declare the Plan abandoned for any reason whatsoever before it is declared effective provided, however, that within five (5) days after the abandonment documents required by Title 13 N.Y.C.R.R. Section 20.1(l)(2) or other such documents required by the Attorney General are accepted for filing by the Office of the Attorney General, all deposit monies will be returned to purchasers with interest, if any, earned thereon. Said funds shall be returned by Certified Mail, Return Receipt Requested. Once the Plan has been declared effective (or 80% sales level has been reached), it may not be abandoned, except for (i) a defect in title (other than a defect which existed on the date of presentation of the Plan and either is known to the Sponsor or is a matter of public record) which cannot be cured without litigation or cannot be cured for less than 1/2 of 1% of the offering price in the aggregate or (ii) substantial damage or destruction of the Building by fire or other casualty which cannot be cured for less than 1/2 of 1% of the offering price or (iii) the taking

14

of any material portion of the Property by condemnation or eminent domain or (iv) work orders of a mortgagee or violations that cannot be cured for less than 1/2of1% of the offering price.

Abandonment of the Plan will be by either duly filed amendment or notice of abandonment by Form CD-3 or RS-3 or other form then required by the Department of Law submitted promptly after abandonment explaining the reasons for abandonment of the Plan and setting forth the disposition of all purchasers' funds.

15. Recording of Condominium Declaration. The Declaration and By-Laws establishing the Condominium shall be recorded by Sponsor in the Office of the County Clerk, Kings County, prior to the closing of title to the first Unit as set forth in the Plan. Sponsor will file with the Declaration when it is recorded or shall amend the Declaration prior to the closing date and file at such time a verified statement of a registered architect or licensed professional engineer certifying that the floor plans being filed fully and fairly depict the layout, location, Unit designation and approximate dimensions of the Unit. The Declaration and By-Laws, when recorded, shall be substantially in the form of the Declaration and By-Laws set forth in the Plan (subject to Sponsor's right to amend same as therein set forth). Sponsor shall not record the Declaration until the Plan has been declared effective in the manner provided therein, if Sponsor does not record the Declaration within eighteen (18) months after the date of presentation of the Plan, all monies advanced by Purchaser shall be returned promptly thereafter together with interest, if any, earned thereon.

16. Possession, Risk of Loss.

Purchaser will not be entitled to occupy the Unit until the deed is delivered to Purchaser at Closing. Risk of Loss from fire or other casualty remains with the Sponsor unless and until legal title to the unit has been conveyed to the purchaser.

16. Existence of Liens Not Objection to Title. The existence of unpaid taxes or liens of any

15

kind at the time of Closing which are not permitted encumbrances hereunder shall not constitute an objection to title, provided Sponsor shall either deliver to Purchaser at the Closing instruments in recordable form and sufficient to satisfy such liens and encumbrances of record together with the cost of recording or filing said instruments; or provided that Sponsor has made arrangements with the Title Company in advance of Closing, Sponsor will deposit with said company sufficient monies, acceptable to and required by it to insure obtaining and recording of such satisfactions and the issuance of title insurance to Purchaser either free of any such liens and encumbrances, or with insurance against enforcement of same out of the Unit.

Purchaser, if request is made with a reasonable time prior to the Closing, agrees to provide at the Closing separate checks as requested, aggregating the amount of the balance of the Purchase Price, to facilitate the satisfaction of any such lens or encumbrances.

17. Execution of Required Documents, etc. Purchaser agrees to deliver to Sponsor all documents and perform all acts required by Sponsor to carry out the provisions of all applicable laws and regulations. This paragraph shall survive delivery of the deed.

18. Binding Nature of Purchase Agreement, Assignability, Use. Purchaser agrees that this Agreement is binding upon Purchaser, his respective heirs, executors, administrators and permitted assigns. Purchaser hereby represents that the Unit is being purchased for a use permitted by the Declaration and By-Laws.

Purchaser will not record this Agreement and any purported recordation thereof by Purchaser shall constitute an Event of Default. Purchaser does not have the right to assign this Agreement without the prior written consent of Sponsor, and any purported assignment by Purchaser in violation of this Agreement will constitute an Event of Default and will be voidable at the option of Sponsor. Sponsor's refusal to consent to an assignment will not entitle Purchaser to cancel this Agreement or give rise to any claim against Sponsor. In the event that Sponsor consents to an assignment of this Agreement, there will be a fee for legal review of all assignment

16

documents in the amount of $750.

19. <u>Notice</u>. All notices, elections, consents, demands and communications (collectively called "notices" or individually called "notice") shall be delivered personally or given in writing by registered or certified mail, return receipt requested, postage prepaid and, if sent to Purchaser, addressed to Purchaser at Purchaser's address given in the preamble to this Agreement and, if sent to Sponsor, addressed to Sponsor c/o Daniel C. Marotta, Esq., Gabor & Marotta LLC, 1878 Victory Boulevard, Staten Island, New York 10314. Either party may, by written notice to the other, change the address to which notices are to be sent. Unless otherwise provided herein, all notices will be deemed given when personal delivery is effected or when deposited in any branch, station or depository maintained by the U.S. Postal Service in the City and State of New York, except that a notice of change of address will be deemed given when actually received.

20. <u>Acceptance of Agreement</u>, If Purchaser was not a bona fide tenant in Occupancy (as defined in the Plan) when the Plan was presented to the tenants in Occupancy, this Agreement shall not be binding on Purchaser or the Sponsor until Purchaser is accepted, by endorsement of this Agreement by the Sponsor, and a fully signed copy of this Agreement is delivered or mailed to Purchaser. If this Agreement is not accepted within twenty (20) days after the date of this Agreement by the delivery or mailing to Purchaser of an endorsed and fully signed copy, this Agreement shall be deemed to be rejected and canceled and Purchaser's deposit shall be refunded within fifteen days.

21. <u>No Discriminatory Inducement</u>. Purchaser represents that he is over eighteen (18) years of age, and the offer for sale of the designated Unit was made in good faith pursuant to the terms set forth in the Plan, without fraud or duress.

22. <u>Broker</u>. Compass and Douglas Elliman, are the only brokers or sales agents with whom

Purchasers have dealt in connection with this transaction. Sponsor agrees to pay any commission due to said brokers.

23. Definitions. The term "Purchaser" shall be read as "Purchasers" if more than one person is a purchaser. In that case Purchaser's obligations shall be considered joint and several. A reference in this Agreement to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, or vice versa, unless the context otherwise requires.

24. Amendments to Offering Plan. Purchaser understands that the Unit being purchased is covered by a new construction Plan and that the Plan may be amended after it has been declared effective, but no such amendment shall increase the sales price of the Unit being purchased hereunder. In the event any amendment the Plan, materially alters the Plan in a manner which adversely affects Purchaser, Purchaser will be afforded a thirty (30) day period within which to rescind the Agreement following delivery to Purchaser of a copy of the Plan amendment. Should Purchaser then elect to rescind, Purchaser will receive his down payment monies, together with interest, if any, earned thereon.

25. Captions. The captions in this Agreement are for convenience only and are not part of the meaning of this Agreement.

26. Severability. If any provision of this Agreement or the Plan is invalid or unenforceable as against any person or under certain circumstances, the remainder of this Agreement or the Plan and the applicability of such provision to other persons or circumstances shall not be affected thereby. Each provision of this Agreement or the Plan, except as otherwise herein or therein provided, will be valid and enforced to the fullest extent permitted by law.

27. Mortgage Tax Credit. In the event a mortgage recording tax credit becomes available pursuant to Section 330-ee(2) of the Condominium Act, such credit shall inure to the benefit of

18

Sponsor. Accordingly, at closing, a Purchaser who elects mortgage financing will be responsible to pay the full amount (but not in excess thereof) of the mortgage recording tax chargeable on the entire amount being financed. Sponsor at closing will be reimbursed by Purchaser to the extent of any mortgage tax credit allowed.

28. Contingent on Financing.

(a) Notwithstanding anything to the contrary in the Offering Plan or this Agreement, the Purchaser may, subject to the terms and conditions of this paragraph 28, elect to cancel this Agreement in the event Purchaser has not, within forty-five (45) days from the date hereof, received from a lending institution a commitment in writing in the usual form of such lending institution for a conventional first mortgage loan in the principal amount of not more than $1,600,000.00 of the Total Purchase Price at the then prevailing rate of interest.

(b) If the Purchaser shall fail to procure the aforementioned commitment on or before the expiration of forty-five (45) days from the date hereof, then and in that event the Purchaser may notify Sponsor to that effect. Such notification shall be accompanied by a statement of the Purchaser stating that Purchaser made application to a lending institution within 10 days of the date hereof and took all other necessary actions as set forth in paragraph 28C below. Such notification shall be sent to Sponsor, c/o Daniel C. Marotta, Esq., Gabor & Marotta, 1878 Victory Boulevard, Staten Island, New York 10314, by certified mail, return receipt requested, not later than five (5) days after such period. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO THE GIVING OF THE FOREGOING WRITTEN NOTICE BY PURCHASER. If the foregoing written notice is not given within such specified time period, this agreement shall remain in full force and effect. Upon receipt of said notice, Sponsor may at its sole option, (i) extend the Purchaser's period to obtain such commitment for a further period of forty-five (45) days or (ii) obtain for Purchaser a mortgage commitment for a loan upon then prevailing terms for similar loans made by New York lending institutions, (including the same interest rate, terms, fees,

19

charges and "points") in which event the mortgage contingency shall be deemed fulfilled. In the event the financing contingency is not met, this Agreement shall be rescinded and all monies heretofore deposited shall be returned to Purchaser unless within forty-five (45) days after receipt of said notice or extension thereof. If Purchaser shall obtain a financing commitment which expires prior to the actual date of the Closing of Title, Purchaser shall make a good faith effort to obtain an extension of the commitment, notwithstanding that Purchaser's lending institution may change the terms of the commitment (including, but not limited to, terms such as the interest rate, term, fees or "points" charged). If Purchaser notifies Sponsor within five (5) days after he has been notified by his lending institution that the commitment will not be extended, then Purchaser shall have the right to rescind the Agreement (and shall have all monies heretofore deposited returned to him) unless within forty-five (45) days after Sponsor is advised of Purchaser's inability to extend the commitment Sponsor elects to obtain for Purchaser a comparable financing commitment (as to interest rates, terms and "points").

(c) The Purchaser agrees to promptly make application to the lending institution as hereinabove described. The Purchaser agrees to promptly furnish and execute any instruments reasonably necessary in connection with such application and to provide the lending institution with all information reasonably required by it. Appraisal fees and any and all costs and charges made by the lending institution shall be the responsibility of the Purchaser and paid by the Purchaser.

29.    Entire Agreement: Governing Law. This Agreement states the entire understanding between Purchaser and Sponsor, and Sponsor shall not be bound by any oral representations or agreement. This Agreement shall be governed by the laws of the State of New York. This Agreement cannot be changed or any provision waived orally. ANY CHANGE OR ADDITIONAL PROVISIONS OR WAIVERS MUST BE SET FORTH IN A RIDER ATTACHED HERETO OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY BOTH

PARTIES.

30.     Waiver. Purchaser waives any right to trial by jury in any action, proceeding or counterclaim in any way connected with this Agreement or the Plan. The failure of the Sponsor to insist upon a strict performance of any of the terms or conditions of this Agreement shall not be deemed a waiver of any subsequent breach or default in the terms and conditions of this Agreement.

31.     Survival of Seller's and Purchaser's Obligations. The acceptance of a deed to the Unit by Purchaser shall be deemed to evidence full performance by Sponsor of all its obligations hereunder and Sponsor shall have no obligations under this Agreement or the Plan after Sponsor delivers to Purchaser the deed to the Unit unless this Agreement or the Plan specifically gives Sponsor an obligation after that time. All representations made by Purchaser in this Agreement shall expressly survive the closing of title.

32.     Digital, electronic or scanned copies of original handwritten signatures shall be considered valid.   This Agreement may be executed by facsimile or by electronic transmission, and in multiple counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall be deemed an original and shall constitute one and the same agreement.

33.     Escrowee shall be deemed to have accepted the escrow provisions of this Contract even in the absence of its signature on the Contract by depositing the Contract Deposit in its designated bank account.


[THE REST OF THIS PAGE IS INTENTIONALLY LEFT BLANK]


21

PURCHASER: Print name and address and sign below:

Print Name    SARAH GREENBERG          Date    11 April 2022

Address       45 Jenkinstown Road

              New Paltz, NY 12561

Signature     *Sarah Greenberg*


SECOND PURCHASER: Print name and address and sign below:

Print Name    ODED BURGER             Date    11 April 2022

Address       45 Jenkinstown Road

              New Paltz, NY 12561

Signature     *Oded Burger*


ACCEPTED: SPONSOR

BY:    REY ARABATO                     Date    04\13\2022

22

## SPONSOR RIDER TO RESIDENTIAL CONTRACT DATED  APRIL  13 , 2022

SELLERS:            SEVENTH STREET CAPITAL 494, LLC

PURCHASER:       SARAH GREENBERG & ODED BURGER

PREMISES:         494 SEVENTH STREET, APT. 1, BROOKLYN, NEW YORK

32.     If any of the provisions of this RIDER shall conflict with any printed provision of the Contract of Sale, the provisions of this RIDER shall control.

33.     As per the terms of the offering plan, a microwave was to be installed in the kitchen of the above referenced unit as well as a garbage disposal unit.

The undersigned acknowledges that no microwave or garbage disposal unit will be installed in **Unit 1** or any other unit in the building.

Also, for **Unit 1**, Schedule A of the Offering Plan lists 2 bedrooms and 2 baths, but should be corrected to read as 2 bedrooms and 2 ½ baths.

The undersigned consents to the Sponsor filing an Amendment of the Condominium Offering Plan in accordance with the above changes.

35.     This Contract and Rider may be executed by facsimile or by electronic transmission, and in multiple counterparts, all of which together shall be deemed an original and shall constitute one and the same document.

## [SIGNATURE PAGE FOLLOWS]

1

   **IN WITNESS WHEREOF,** this Rider has been duly signed by the parties as of the date of the Contract.

SPONSOR:            PURCHASER:

Seventh Street Capital 494, LLC

By:

Name:

Title:

_Sarah Greenberg_

Sarah Greenberg

_Oded Burger_

Oded Burger

### Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure**

(a)  Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

  (i)  ☐  Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

  _____

  (ii)  ☒  Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b)  Records and reports available to the seller (check (i) or (ii) below):

  (i)  ☐  Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

  _____

  (ii)  ☒  Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment** (initial)

(c)  _____  Purchaser has received copies of all information listed above.

(d)  _____  Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home*.

(e)  Purchaser has (check (i) or (ii) below):

  (i)  ☐  received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

  (ii)  ☐  waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment** (initial)

(f)  _____  Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| Seller *[signature]* | 04/13/2022 | Seller *Oded Burger* | 11 April 2022 |
| Seller | Date | Seller | Date |
| Purchaser *Sarah Greenberg* | 11 April 2022 | Purchaser | Date |
| Purchaser | Date | Purchaser | Date |
| Agent | Date | Agent | Date |

## PURCHASER'S RIDER TO AGREEMENT

**Re:**   **Unit No. 1 ("Unit")**
**Purchaser: Sarah Greenberg and Oded Burger**
**494 Seventh Street Condominium**
**494 7th Street**
**<u>Brooklyn, New York 11215</u>**

      This Rider (the "Rider") amends and modifies that certain Purchase Agreement (the "Agreement") by and between Seventh Street Capital 494 LLC ("Sponsor") and Purchaser with respect to the above referenced Unit in the condominium known as the 494 Seventh Street Condominium located at 494 7th Street, Brooklyn, NY 11215. In case of any inconsistencies between any of the terms and conditions of the Agreement, the Offering Plan and the terms and conditions of this Purchaser's Rider, the terms and conditions of this Purchaser's Rider shall prevail, govern and be binding. All of the paragraphs and provisions contained in this Purchaser's Rider are incorporated into the Agreement and made a part thereof with the same force and effect as if therein originally contained.

R1. Sponsor shall not deliver a notice of closing to Purchaser unless and until a Temporary or a Permanent Certificate of Occupancy is issued covering the Unit.

R2. Purchaser shall have the right to rescind this Agreement and receive a refund of the Down payment in the event Sponsor shall fail to close this transaction on or before six (6) months from the date hereof.

R3. Purchaser shall have a right to an adjournment of the Closing not to exceed twenty (20) days, without incurring any penalties or other additional fees and with the adjustments made as of the date of the actual Closing.

R4. Except as otherwise set forth in Sponsor Rider attached hereto, at Closing the Unit will contain only those fixtures and equipment as set forth in the Plan.

R5. Notwithstanding the foregoing, Sponsor and/or Sponsor's agent(s) shall accommodate an initial walkthrough with the Purchaser at least two (2) weeks prior to the scheduled Closing Date and then shall accommodate a final walkthrough with the Purchaser within forty-eight (48) hours of the scheduled Closing Date.

R6. Notwithstanding anything to the contrary stated herein and expressly subject to Sponsor Rider, it shall be a condition of Closing that all of the appliances, and all of the plumbing, heating, air conditioning, electrical and mechanical systems servicing the Unit are fully installed

and are in working order on the date of the Closing except for minor details which can be repaired within thirty (30) days after the Closing (punch list items). Floors shall be leveled and completely finished and installed in accordance with the manufacturer's descriptions and recommendations. Windows and doors shall be fully operable and in working order."

R4.   Paragraph 10 is hereby amended to add the following at the end of the 2nd sentence *"for twelve (12) months"*

R7.   No Additional Down payment is due after Down payment is transmitted upon signing.

R8.   Purchaser shall only be required to perform all acts required by Sponsor to carry out the provisions of all applicable laws and regulations which are *reasonable and customary.*

R9.   All notices may be delivered via overnight courier in addition to the other methods mentioned in paragraphs 19 and 28.

R10.   All notices to Purchaser must also be sent to Rheem Bell & Freeman LLP, Olga Klugina, Esq., 20 West 36th Street, 12th Floor, New York, NY 10018. E-mail address: olga@rbfllp.com"

R11.   If Purchaser shall obtain a financing commitment which expires prior to the actual date of the Closing of title, Purchaser shall make a good faith effort to obtain an extension of said commitment at the same terms, and shall not be required to accept worse loan terms, should the financing commitment expire due to Sponsor's inability to close.

R12   In the event that, at any time on or before the Closing, the lending institution refuses or fails to fund the loan through no fault of Purchaser, Purchaser will have the right to terminate this Agreement and be refunded all monies deposited hereunder, with interest, if any, within five (5) business of delivery of written notice of same to Sponsor.

R13. Purchaser's representations in Paragraphs 18 and 21 shall survive Closing.

R14.   Any errors or omissions in computing apportionments at Closing will be corrected, but no later than twelve (12) months after the Closing.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have executed this Rider as of the date written hereinbelow.

DATE: _____ APRIL 13, 2022 _____
(To be inserted by Sponsor after countersignature by Sponsor)

SPONSOR:

Seventh Street Capital 494 LLC

By: _____
Name: REN GABBAY
Title: PRESIDENT

PURCHASER:

_____ Oded Burger _____
Oded Burger

_____ Sarah Greenberg _____
Sarah Greenberg

## REPAIR RIDER

In connection with the sale of 494 7th Street, Unit 1, Brooklyn, NY ("Unit") by Seventh Street Capital 494, LLC ("Sponsor") to Oded Burger and Sarah Greenberg (collectively "Purchaser") Sponsor hereby agrees, at Sponsor's sole cost and expense and as a condition to Purchaser's obligation to close on the Unit, to perform the following work in the Unit in a workmanlike manner by licensed professionals:

1. Repair the leak, and any damage therefrom, in the waste line under the kitchen sink;
2. Touch up grout and paint near ceiling access hatch in the primary bathroom;
3. Install a door stop in common bath;
4. Install cover for the ventilation fan in the basement;
5. Replace the existing S trap in the sink of the common bathroom with a P trap
6. Install strike plate at the entry door to the utility space in the basement;
7. Repair electrical receptacles at rear of basement which currently do not have power and repair open circuit at GFCI protected receptacle;
8. Repair loose electrical receptacle for HVAC in the basement;
9. Repair non-working switch for HVAC in basement;
10. Repair loose and replace missing electrical receptacles in front utility space;
11. Repair loose wire and light fixture in front utility space;
12. Install missing light fixture for basement steps in front;
13. Repair the small pipe which is currently not connected or not properly positioned above the floor drain where there are 2 PVC pipes for AC condensate drainage in basement;
14. Seal or otherwise repair to prevent water intrusion the old chimneys along right side which currently have loose masonry and opening in front;
15. Repair unfinished entry door for basement at front of the house and replace the top keyed lock on interior of door with lever for safety in the event of a fire;
16. Repair the gap along the bottom of the entry door for roof which currently leaves access for water intrusion and heat loss;
17. Install proper cover for floor drain at base of steps outside;
18. Touch up painting imperfections on door frames through the Unit;
19. Install screens on all windows.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, this Repair Rider has been duly signed by the parties as of April 13 , 2022.

PURCHASER:

_Oded Burger_
Oded Burger

_Sarah Greenberg_
Sarah Greenberg

SPONSOR:

Seventh Street Capital 494, LLC

By: _____

Name: RON GARBATO

Title: PRESIDENT