## **Schedule 5**

8906941

## 494 SEVENTH STREET CONDOMINIUM
## PURCHASE AGREEMENT

AGREEMENT made this ⟨12ᵗʰ⟩ day of April, 2022, between **Seventh Street Capital 494, LLC** ("SPONSOR") as sponsor of the offering plan and **Alan Zhou and Frances Lee** residing at 245 East 25th Street, Apt. 8L, New York, NY 10010 (the "Purchasers").

UNIT NO. 2

Purchase Price payable as follows:

| | |
|---|---|
| Down payment (herewith) | $  163,050.00 |
| Balance | $1,467,450.00 |
| Total Purchase Price | $1,630,500.00 |

1.    <u>The Plan</u>.  The Purchaser acknowledges having received the Plan at least three (3) full business days prior to the Purchaser's signing this Agreement.  The Purchaser hereby adopts, accepts, and approves the Plan (including, without limitation, the proposed Condominium Documents contained in Part II of the Plan) and agrees to be bound by the terms and conditions thereof, as well as all amendments to, the Plan duly filed by the Sponsor (including without limitation, amendments involving any changes, modifications, or updating of the estimated Common Charges, the estimated real estate taxes to be paid by the Purchaser, and Plan budget). Any such amendments shall not excuse the Purchaser from performing the Purchaser's obligations hereunder, nor shall they entitle the Purchaser to any offset or credit against Purchaser Price.  Any such amendments may be made by the Sponsor without the Purchaser's consent or approval; subject to the Purchaser's right to rescind in the event of a material amendment to the Plan or the Condominium Documents which adversely affects in any material respect the Purchaser's obligations hereunder or under the Plan as more specifically set forth in the Plan.  The Plan is hereby incorporated in this Agreement with the same force and effect as if set forth at length herein.

1

In the event of any inconsistency or conflict between the provisions of this Agreement and those contained in the Plan, the provisions of the Plan shall govern and be binding. The Purchaser acknowledges having had a full opportunity to examine all documents and investigate all statements made herein and in the Plan.

Purchaser has the right to rescind the Purchase agreement and have the full down payment refunded, such right to be exercised not more than seven (7) days after delivering an executed Purchase Agreement, together with the required down payment to Sponsor's attorneys. A Purchaser desiring to rescind must either personally deliver written notice of rescission to the Sponsor or Sponsor's attorneys within the seven (7) day period, or mail a notice of rescission to the Sponsor or Sponsor's attorneys and have the mailing post-marked within the seven (7) day period.

2.     Agreement to Purchase. Purchaser agrees to purchase from Sponsor and Sponsor agrees to sell to Purchaser the Condominium Unit at **494 Seventh Street**, in the Borough of Brooklyn, in the City of New York and County of Kings, State of New York, designated as Unit No. 2, together with a 30% undivided interest in the common elements of the Condominium for the Total Purchase Price shown above.

Purchaser has delivered herewith Purchaser's check for the Down payment as shown above, made payable to "Gabor & Marotta LLC, Attorney Escrow Account", the receipt of which is hereby acknowledged subject to collection. The above-stated Balance shall be payable by certified check of Purchaser or official bank check drawn on a bank which is a member of the New York City Clearing House ("Acceptable Funds") drawn directly to the order of Sponsor, at the Closing of Title as discussed in **Paragraph 3**. Wires shall be accepted for Down payment and Balance.

2

3.      Delivery of the Deed. The Closing of Title will occur on the date and at the time and place in the City of New York as Sponsor will designate to Purchaser on not less than thirty (30) days' prior written notice. Sponsor will have the right, from time to time, to adjourn such date and time for closing on written notice to Purchaser. If adjourned, Sponsor will fix a new date and time for closing and will give Purchaser not less than thirty (30) business days' prior written notice of the new scheduled date and time for closing.  The Closing of Title will occur only after or concurrently with compliance with the prerequisites set forth under " Terms of Sale" in Part I of the Plan. The First Closing, as defined in the Plan, will take place within the time period specified in the section entitled "Effective Date and Closing Date" in Part I of the Plan.  As therein set forth, if the First Closing is adjourned beyond twelve (12) months after the Plan is declared effective, the sole remedy of Purchaser will be to rescind this Agreement and be refunded all down payments, together with any interest thereon, provided that written notice of Purchaser's intention to rescind must be sent before the date of the First Closing.  The risk of loss from fire or other casualty remains with the Sponsor unless and until legal title to the unit has been conveyed to the purchaser.

At Closing Purchaser shall pay Sponsor the Balance due in Acceptable Funds and Sponsor shall deliver to Purchaser the deed to Purchaser's Unit. The deed shall be a bargain and sale deed with covenants against grantor's acts in the form contained in Part II of the Plan. Purchaser shall pay the New York State and New York City transfer taxes on such deed and recording charges. In addition, Purchaser shall sign the power of attorney in favor of the Board of Managers of the Condominium in the form contained in Part II of the Plan.

Purchaser agrees that upon delivery of the deed, Purchaser's present lease, if any, or monthly tenancy of the Unit shall be deemed canceled and terminated as of the date of Closing.

4.      Receipt of Documents. Purchaser acknowledges receipt, at least three (3) full business days prior to the execution of this Agreement, of the proposed Declaration, By-Laws, Schedules, Plans and Exhibits contained in the Offering Plan for **494 Seveneth Street Condominium**, Brooklyn, New York (the "Plan"), as amended, all of which are made part of this Agreement as if they were set forth in full in this Agreement. Purchaser acknowledges that he has read the Plan and agrees to be bound by the Plan.

5.      In the event of any inconsistency or conflict between the provisions of this Agreement and those contained in the Plan, the provisions of the Plan will govern and be binding.  Purchaser acknowledges having had full opportunity to examine all documents and investigate all statements made herein and in the Plan.

Purchaser acknowledges that except as stated in this Agreement (and as set forth in the Declaration, By-Laws, and Offering Plan), Purchaser has not relied on any representations or other statements of any kind or nature made by Sponsor, its agents or other persons, including but not limited to any representations relating to the description, size or dimensions of the Unit or rooms, and the estimated common charges or other expenses of the Condominium. No person has been authorized to make any representations on behalf of Sponsor. No oral representations or statements will be considered a part of this Agreement. Purchaser agrees (a) to purchase the Unit, without offset or any claim against, or liability of Sponsor, whether or not any layout or dimension of the Unit or any part thereof, or of the Common Elements, as shown on the Floor Plans, is accurate or correct, provided the layouts and dimensions conform substantially to such Floor Plans and (b) that Purchaser will not be relieved of any of Purchaser's obligations hereunder by reason of any minor

4

inaccuracy or error. The provisions of this Paragraph 5 will survive the Closing.

6.     <u>Marketable Title</u>. Sponsor shall convey to Purchaser good and marketable title as Princeton Abstract, Inc., insuring through **Fidelity National Title Insurance Company** or such other title insurance company as Purchaser may select which is a member of the Board of Title Underwriters and licensed to do business in New York State, shall approve and insure for fee title insurance (subject to the terms of the Plan, the Declaration and By-Laws as filed) and free and clear of all liens and encumbrances except the rights of present tenants, if any, as described below, the lien of any mortgage procured by Purchaser, and the title exceptions set forth as "Permitted Encumbrances" in the Plan as filed in the Section of Part I entitled "Closing and Terms of Sale." Any of such title exceptions and or any other title exceptions or objections which have been waived or consented to by Purchaser may for convenience be omitted by Sponsor in the deed to be delivered hereunder, but all of such exceptions shall nevertheless survive delivery of the deed. Fee title insurance may be purchased at Purchaser's option at Purchaser's own cost and expense.

7.     <u>Condition of Unit; Appliances and Equipment</u>. At Closing, the Unit will contain only those fixtures and equipment currently installed therein that are owned by Sponsor. They shall be delivered free and clear of all liens and encumbrances, other than those to which the Unit is subject pursuant to this Agreement. The Unit is being sold unfurnished. Furniture, wall coverings, furnishings, decorations and the like in or about any model unit are for display purposes only and are not included in the sale. Any floor plans or sketches shown to Purchaser are only approximations of the Unit's dimensions and arrangement, and Purchaser should not rely thereon. There will be no modifications or extras unless agreed to in writing by the parties.

5

The signing of this Agreement by Purchaser signifies Purchaser's acceptance of the condition of the Unit, and all fixtures, machinery, equipment, furnishings, appliances, installations and other personal property contained therein (hereinafter collectively called "Installations"), in their respective existing conditions, subject to reasonable use, wear and tear and natural deterioration between the date Purchaser signs this Agreement and delivery of the deed to Purchaser. Purchaser acknowledges having read, or having had ample opportunity to read, the Architects Report - Description of Property and Specifications of **Ben Herzog Architect, PC,** set forth in Part II of the Plan, which sets forth a description of the existing physical condition of the Building. Purchaser understands that the Sponsor has no obligation to make any repairs, improvements or decorations in or to the Building, the Unit or the Installations, except as specifically set forth in the Plan and subject to Sponsor's representations in the Plan.

Purchaser will be given a reasonable opportunity to examine the Unit prior to Closing and is advised to make a careful examination at such time.

8.    Effectiveness of Offering Plan. It is agreed that this Purchase Agreement is contingent upon the Plan being declared effective and that the Plan shall not be declared effective except as provided in the Plan.

The Plan may be abandoned by the Sponsor at any time prior to declaring it effective and shall be abandoned and deemed abandoned if it has not been declared effective within the time prescribed by the Plan. If the Plan is abandoned, does not become effective, or is not consummated for any reason after being declared effective within the time prescribed by the Plan, the following shall apply: This Purchase Agreement shall be deemed canceled and within thirty (30) days

6

thereafter, Purchaser will receive all monies paid hereunder together with interest, if any, earned thereon. Such monies shall be returned within five (5) days after submission of the abandonment documents required by Title 13 N.Y.C.R.R. Section 20.1(l)(2) or other such documents required by the Attorney General are accepted for filing by the Office of the Attorney General (Notwithstanding the foregoing, Sponsor will retain as liquidated damages as provided in Paragraphs 10 and 12, all down payments [and any interest thereon] of any Purchaser who is then in default hereunder beyond any applicable grace period, or if this Agreement has previously been canceled due to default by Purchaser.). Said funds shall be returned by Certified Mail, Return Receipt Requested. Upon such repayment, Purchaser and Sponsor will have no claim against each other or the Selling Agent in connection with this Agreement or the Plan, and all such parties will be relieved and discharged from all liabilities and obligations hereunder and under the Plan.

9.     Closing Expenses and Adjustments. At the closing of title, Purchaser shall pay the following: (i) any charges for the cost of title examination, cost of fee and/or mortgage title insurance, New York State Real Property Transfer taxes, mortgage recording taxes, or recording charges for the deed, mortgage documents, and power of attorney in favor of the Board of Managers; (ii) an amount equal to two (2) month's common charges, representing Purchaser's share of initial working capital for the Condominium; and (iii) the closing fees described in Schedule A of the Plan. Sponsor shall pay Sponsor's attorneys fees.

10.     **Purchaser shall pay Mansion Tax and the Supplemental Tax.**

Sponsor and Purchaser will apportion, as of midnight on the day preceding the Closing Date, real estate taxes and/or common charges assessed during the month in which title closes or

7

established as a reserve based upon the fast bill received, and rent and other charges, if any, pursuant to a lease for or tenancy of the Unit. Any errors or omissions in computing apportionments at Closing will be corrected; this provision will survive Closing. In the event Purchaser obtains a mortgage secured by the Unit Purchaser shall pay to the Sponsor a sum equal to the partial mortgage tax credit to which the Purchaser is entitled pursuant to Section 339-ee(2) of the Condominium Act.

In the event that on or before the closing the Unit has not been separately assessed for real estate tax purposes prior to the closing of title to the first unit, Sponsor may place in escrow, in the name of the board of managers, an amount equal to the unpaid real estate taxes which will be levied against the parcel for the six month period following the first closing. Alternatively, the sponsor may place in escrow, in the name of the board of managers, an amount equal to the real estate taxes attributable to the unsold units for such six month period and may collect at each unit closing the estimated amount of taxes attributable to such unit for the balance of the six month period. The board of managers will pay the real estate taxes from the escrow account when taxes are due and payable and the funder of the escrow account will be entitled to reimbursement from unit owners to the extent of the actual assessment. No escrow will be required if the condominium by-laws include as part of the common expenses, real estate taxes on the property until the units are separately assessed and after assessment unit owners will be reimbursed for any overpayment of taxes or assessed for an underpayment.

11.    DOWN PAYMENT IN ESCROW.

(a) The law firm of Gabor & Marotta LLC, with an address of 1878 Victory Boulevard, Staten Island, New York 10314, telephone number (718) 390-0555, shall serve as escrow agent

8

("Escrow Agent") for Sponsor and Purchaser. Escrow Agent has designated the following attorney to serve as signatory: Daniel C. Marotta, Esq. All designated signatories are admitted to practice law in the State of New York. Neither the Escrow Agent nor any authorized signatories on the account are the Sponsor, Selling Agent, Managing Agent, or any principal thereof, or have any beneficial interest in any of the foregoing.

(b) Escrow Agent and all authorized signatories hereby submit to the jurisdiction of the State of New York and its Courts for any cause of action arising out of the Purchase Agreement or otherwise concerning the maintenance or release of the Deposit from escrow.

(c) The Escrow Agent has established the escrow account at Empire State Bank, located at 1361 North Railroad Avenue, Staten Island, in the State of New York ("Bank"), a bank authorized to do business in the State of New York. The escrow account is entitled "Gabor & Marotta LLC Attorney Escrow Account" ("Escrow Account"). The Escrow Account is a non-interest bearing IOLA Account. The Escrow Account is federally insured by the FDIC at the maximum amount of $250,000 per deposit. Any deposit in excess of $250,000 will not be insured, unless Escrow Agent has established multiple accounts on behalf of Purchaser at various institutions.

(d) All deposits received by Purchaser shall be in the form of checks, or wire transfers, and shall be made payable to or endorsed by the Purchaser to the order of Gabor & Marotta LLC, as Escrow Agent.

(e) If applicable, the interest rate for all Deposits made into the Escrow Account shall be the prevailing rate for such accounts. Interest shall begin to accrue upon placing the Deposit into the Escrow Account. All interest earned thereon shall be paid to or credited to the Purchaser at closing. No fees of any kind may be deducted from the Escrow Account, and the Sponsor shall bear all costs

9

associated with the maintenance of the Escrow Account.

(f) Within five (5) business days after the Purchase Agreement has been tendered to Escrow Agent along with the Deposit, the Escrow Agent shall sign the Purchase Agreement and place the Deposit into the Escrow Account. Within (10) business days of placing the deposit in the Escrow Account, Escrow Agent shall provide written notice to Purchaser and Sponsor, confirming the Deposit. The notice shall provide the account number and initial interest rate, if any, to be earned on the Deposit. Any Deposits made for upgrades, extras, or custom work shall be initially deposited in the Escrow Account, and released in accordance to the terms of the Purchase Agreement.

(g) The Escrow Agent is obligated to send notice to the Purchaser once the Deposit is placed in the Escrow Account. If the Purchaser does not receive notice of such deposit within fifteen (15) business days after the tender of the Deposit, he or she may cancel the Purchase Agreement within ninety (90) days after tender of the Purchase Agreement and Deposit to Escrow Agent. Complaints concerning the failure to honor such cancellation requests may be referred to the New York State Department of Law, Real Estate Finance Bureau, 28 Liberty Street, 21st Floor, New York, N.Y. 10005. Rescission shall not be afforded where proof satisfactory to the Attorney General is submitted establishing that the Deposit was timely placed in the Escrow Account in accordance with the New York State department of Law's regulations concerning Deposits and requisite notice was timely mailed to the Purchaser.

(h) All deposits, except for advances made for upgrades, extras, or custom work received in connection with the Purchase Agreement, are and shall continue to be the Purchaser's money, and may not be comingled with any other money or pledged or hypothecated by Sponsor, as per GBL

section 352-h.

(i) Under no circumstances shall Sponsor seek or accept release of the Deposit of a defaulting Purchaser until after consummation of the Plan, as evidenced by the acceptance of a post-closing amendment by the New York State Department of Law. Consummation of the Plan does not relieve the Sponsor of its obligations pursuant to GBL sections 352-3(2-b) and 352-h.

(j) The Escrow Agent shall release the Deposit if so directed:

(i) Pursuant to terms and conditions set forth in the Purchase Agreement upon closing of title to the Unit; or

(ii) In a subsequent writing signed by both Sponsor and Purchaser; or

(iii) By a final, non-appealable order or judgment of a court.

If the Escrow Agent is not directed to release the Deposit pursuant to paragraphs (i) through (iii) above, and the Escrow Agent receives a request by either party to release the Deposit, then the Escrow Agent must give both the Purchaser and Sponsor prior written notice of not fewer than thirty (30) days before releasing the Deposit. If the Escrow Agent has not received notice of objection to the release of the Deposit prior to the expiration of the thirty (30) day period, the Deposit shall be released and the Escrow Agent shall provide further written notice to both parties informing them of said release. If the Escrow Agent receives a written notice from either party objecting to the release of the Deposit within said thirty (30) day period, the Escrow Agent shall continue to hold the Deposit until otherwise directed pursuant to paragraphs (i) through (iii) above. Notwithstanding the foregoing, the Escrow Agent shall have the right at any time to deposit the Deposit contained in the Escrow Account with the clerk of the county where the unit is located and shall give written notice to both parties of such deposit.

11

The Sponsor shall not object to the release of the Deposit to:

(i) A Purchaser who timely rescinds in accordance with an offer of rescission contained in the Plan or an Amendment to the Plan; or

(ii) All purchasers after an Amendment abandoning the Plan is accepted for filing by the Department of Law.

The Department of Law may perform random reviews and audits of any records involving the Escrow Account to determine compliance with all applicable statutes and regulations.

(k) Any provision of any Purchase Agreement or separate agreement, whether oral or in writing, by which a Purchaser purports to waive or indemnify any obligation of the Escrow Agent holding any Deposit in trust is absolutely void. The provisions of the Attorney General' regulations and GBL sections 352-e(2-b) and 352-h concerning escrow trust funds shall prevail over any conflicting or inconsistent provisions in the Purchase Agreement, Plan, or any amendment thereto.

(l) Escrow Agent shall maintain the Escrow Account under its direct supervision and control.

(m) A fiduciary relationship shall exist between Escrow Agent, and Purchaser, and Escrow Agent acknowledges its fiduciary and statutory obligations pursuant to GBL sections 352(e)(2-b) and 352(h).

(n) Escrow Agent may rely upon any paper document which may be submitted to it in connection with its duties under this Purchase Agreement and which is believed by Escrow Agent to be genuine and to have been signed and presented by the proper party or parties and shall have no liability or responsibility with respect to the form, execution or validity thereof.

(o) Sponsor agrees that it shall not interfere with Escrow Agent's performance of its

fiduciary duties and statutory obligations as set forth in GBL sections 352-(e)(2-b) and 352-(h) and the New York State Department of Law's regulations.

(p) Sponsor shall obtain or cause the selling agent under the Plan to obtain a completed and signed Form W-9 or W-8, as applicable, from Purchaser and deliver such form to Escrow Agent together with the Deposit and this Purchase Agreement.

(q) Prior to release of the Deposit, Escrow Agent's fees and disbursements shall neither be paid by Sponsor from the Deposit nor deducted from the Deposit by any financial institution under any circumstances.

(r) Sponsor agrees to defend, indemnify and hold Escrow Agent harmless from and against all costs, claims, expenses, and damages incurred in connection with and arising out of Escrow Agent's responsibilities arising in connection with this Purchase Agreement or the performance or non-performance of Escrow Agent's duties under this Purchase Agreement, except with respect to actions or omissions taken or suffered by Escrow Agent in bad faith or in willful disregard of the obligations set forth in this Purchase Agreement or involving gross negligence of Escrow Agent. This indemnity includes, without limitation, disbursements and attorney's fees either paid to retain attorneys or representing the hourly billing rates with respect to legal services rendered by Escrow Agent to itself.

12.     Sponsor's Rights in the Event of Purchaser's Default. All sums paid on account of this Agreement and the reasonable expense of the examination of title to the Unit shall constitute liens on the Unit. However, these liens shall not continue after default by Purchaser under this Agreement.

13.     Default. The following shall constitute Events of Default by Purchaser hereunder:

13

(a) Purchaser's failure to pay the Additional down payment when due or the Balance on the Closing Date designated by Sponsor pursuant to Paragraph 2 hereof;

(b) Purchaser's failure to duly sign and deliver at Closing any document referred to in the Plan which Purchaser is required to sign when Sponsor delivers the deed to the Unit;

(c) The failure to pay, perform or observe any of Purchaser's other obligations hereunder which failure is not fully cured within 15 days following written notice to Purchaser of such default (30 days for failure to close after service of Notice of Closing).

Upon the occurrence of an Event of Default, Sponsor may cancel this Agreement on written notice to Purchaser, and upon the giving of such notice this Agreement shall be and be deemed canceled, Sponsor shall retain, as liquidated damages, all down payments and any interest earned thereon and Purchaser, Sponsor and Selling Agent will be released and discharged of and from all further liability and obligations hereunder and under the Plan. Thereafter, the Unit may be sold to another as though this Agreement had never been made, and without accounting to Purchaser for the proceeds of such sale.

14.    Seller's inability to Deliver Deed - Cancellation of Purchase Agreement. It is understood and agreed that if Sponsor is unable to deliver a deed to the Unit in accordance with this Agreement because of Sponsor's inability to complete the filing of the premises as part of a condominium plan in accordance with the Offering Plan of 285 7th Street Condominium, as it may be amended, or if Sponsor abandons the Plan (and Sponsor has the unconditional right to abandon the Plan at any time prior to its effective date), Sponsor shall immediately notify Purchaser in writing and this Agreement will terminate. In that case, Sponsor's sole liability shall be the prompt return to Purchaser (unless Purchaser is then in default or this Agreement has previously been canceled, as provided in Paragraph 6) of the Down Payment together with interest, if any, earned thereon.

14

In accordance with the Section of the Plan entitled "Effective Date", the Sponsor may, at its option, declare the Plan abandoned for any reason whatsoever before it is declared effective provided, however, that within five (5) days after the abandonment documents required by Title 13 N.Y.C.R.R. Section 20.1(l)(2) or other such documents required by the Attorney General are accepted for filing by the Office of the Attorney General, all deposit monies will be returned to purchasers with interest, if any, earned thereon. Said funds shall be returned by Certified Mail, Return Receipt Requested. Once the Plan has been declared effective (or 80% sales level has been reached), it may not be abandoned, except for (i) a defect in title (other than a defect which existed on the date of presentation of the Plan and either is known to the Sponsor or is a matter of public record) which cannot be cured without litigation or cannot be cured for less than 1/2 of 1% of the offering price  in the aggregate or (ii) substantial damage or destruction of the Building by fire or other casualty which cannot be cured for less than 1/2 of 1% of the offering price  or (iii) the taking of any material portion of the Property by condemnation or eminent domain or (iv) work orders of a mortgagee or violations that cannot be cured for less than 1/2of1% of the offering price.

Abandonment of the Plan will be by either duly filed amendment or notice of abandonment by Form CD-3 or RS-3 or other form then required by the Department of Law submitted promptly after abandonment explaining the reasons for abandonment of the Plan and setting forth the disposition of all purchasers' funds.

15. Recording of Condominium Declaration. The Declaration and By-Laws establishing the Condominium shall be recorded by Sponsor in the Office of the County Clerk, Kings County, prior to the closing of title to the first Unit as set forth in the Plan. Sponsor will file with the Declaration when it is recorded or shall amend the Declaration prior to the closing date and file at such time a verified statement of a registered architect or licensed professional engineer certifying that the floor plans being filed fully and fairly depict the layout, location, Unit designation and approximate dimensions of the Unit. The Declaration and By-Laws, when recorded, shall be substantially in the

15

form of the Declaration and By-Laws set forth in the Plan (subject to Sponsor's right to amend same as therein set forth). Sponsor shall not record the Declaration until the Plan has been declared effective in the manner provided therein, if Sponsor does not record the Declaration within eighteen (18) months after the date of presentation of the Plan, all monies advanced by Purchaser shall be returned promptly thereafter together with interest, if any, earned thereon.

16. Possession, Risk of Loss.

Purchaser will not be entitled to occupy the Unit until the deed is delivered to Purchaser at Closing. Risk of Loss from fire or other casualty remains with the Sponsor unless and until legal title to the unit has been conveyed to the purchaser.

16. Existence of Liens Not Objection to Title. The existence of unpaid taxes or liens of any kind at the time of Closing which are not permitted encumbrances hereunder shall not constitute an objection to title, provided Sponsor shall either deliver to Purchaser at the Closing instruments in recordable form and sufficient to satisfy such liens and encumbrances of record together with the cost of recording or filing said instruments; or provided that Sponsor has made arrangements with the Title Company in advance of Closing, Sponsor will deposit with said company sufficient monies, acceptable to and required by it to insure obtaining and recording of such satisfactions and the issuance of title insurance to Purchaser either free of any such liens and encumbrances, or with insurance against enforcement of same out of the Unit.

Purchaser, if request is made with a reasonable time prior to the Closing, agrees to provide at the Closing separate checks as requested, aggregating the amount of the balance of the Purchase Price, to facilitate the satisfaction of any such lens or encumbrances.

17. Execution of Required Documents, etc. Purchaser agrees to deliver to Sponsor all documents and perform all acts required by Sponsor to carry out the provisions of all applicable laws and regulations. This paragraph shall survive delivery of the deed.

16

18. Binding Nature of Purchase Agreement, Assignability, Use. Purchaser agrees that this Agreement is binding upon Purchaser, his respective heirs, executors, administrators and permitted assigns. Purchaser hereby represents that the Unit is being purchased for a use permitted by the Declaration and By-Laws.

Purchaser will not record this Agreement and any purported recordation thereof by Purchaser shall constitute an Event of Default. Purchaser does not have the right to assign this Agreement without the prior written consent of Sponsor, and any purported assignment by Purchaser in violation of this Agreement will constitute an Event of Default and will be voidable at the option of Sponsor. Sponsor's refusal to consent to an assignment will not entitle Purchaser to cancel this Agreement or give rise to any claim against Sponsor. In the event that Sponsor consents to an assignment of this Agreement, there will be a fee for legal review of all assignment documents in the amount of $750.

19. Notice. All notices, elections, consents, demands and communications (collectively called "notices" or individually called "notice") shall be delivered personally or given in writing by registered or certified mail, return receipt requested, postage prepaid and, if sent to Purchaser, addressed to Purchaser at Purchaser's address given in the preamble to this Agreement and, if sent to Sponsor, addressed to Sponsor c/o Daniel C. Marotta, Esq., Gabor & Marotta LLC, 1878 Victory Boulevard, Staten Island, New York 10314. Either party may, by written notice to the other, change the address to which notices are to be sent. Unless otherwise provided herein, all notices will be deemed given when personal delivery is effected or when deposited in any branch, station or depository maintained by the U.S. Postal Service in the City and State of New York, except that a notice of change of address will be deemed given when actually received.

20. Acceptance of Agreement. If Purchaser was not a bona fide tenant in Occupancy (as defined in the Plan) when the Plan was presented to the tenants in Occupancy, this Agreement shall

17

not be binding on Purchaser or the Sponsor until Purchaser is accepted, by endorsement of this Agreement by the Sponsor, and a fully signed copy of this Agreement is delivered or mailed to Purchaser. If this Agreement is not accepted within twenty (20) days after the date of this Agreement by the delivery or mailing to Purchaser of an endorsed and fully signed copy, this Agreement shall be deemed to be rejected and canceled and Purchaser's deposit shall be refunded within fifteen days.

21. No Discriminatory Inducement. Purchaser represents that he is over eighteen (18) years of age, and the offer for sale of the designated Unit was made in good faith pursuant to the terms set forth in the Plan, without fraud or duress.

22. Broker. Compass and Miriam Izsak Realty LLC, are the only brokers or sales agents with whom Purchasers have dealt in connection with this transaction. Sponsor agrees to pay any commission due to said brokers.

23. Definitions. The term "Purchaser" shall be read as "Purchasers" if more than one person is a purchaser. In that case Purchaser's obligations shall be considered joint and several. A reference in this Agreement to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, or vice versa, unless the context otherwise requires.

24. Amendments to Offering Plan. Purchaser understands that the Unit being purchased is covered by a new construction Plan and that the Plan may be amended after it has been declared effective, but no such amendment shall increase the sales price of the Unit being purchased hereunder. In the event any amendment the Plan, materially alters the Plan in a manner which adversely affects Purchaser, Purchaser will be afforded a thirty (30) day period within which to rescind the Agreement following delivery to Purchaser of a copy of the Plan amendment. Should Purchaser then elect to rescind, Purchaser will receive his down payment monies, together with

interest, if any, earned thereon.

25. <u>Captions</u>. The captions in this Agreement are for convenience only and are not part of the meaning of this Agreement.

26. <u>Severability</u>. If any provision of this Agreement or the Plan is invalid or unenforceable as against any person or under certain circumstances, the remainder of this Agreement or the Plan and the applicability of such provision to other persons or circumstances shall not be affected thereby. Each provision of this Agreement or the Plan, except as otherwise herein or therein provided, will be valid and enforced to the fullest extent permitted by law.

27. <u>Mortgage Tax Credit</u>. In the event a mortgage recording tax credit becomes available pursuant to Section 330-ee(2) of the Condominium Act, such credit shall inure to the benefit of Sponsor. Accordingly, at closing, a Purchaser who elects mortgage financing will be responsible to pay the full amount (but not in excess thereof) of the mortgage recording tax chargeable on the entire amount being financed. Sponsor at closing will be reimbursed by Purchaser to the extent of any mortgage tax credit allowed.

28. <u>Contingent on Financing</u>.

(a) Notwithstanding anything to the contrary in the Offering Plan or this Agreement, the Purchaser may, subject to the terms and conditions of this paragraph 28, elect to cancel this Agreement in the event Purchaser has not, within forty-five (45) days from the date hereof, received from a lending institution a commitment in writing in the usual form of such lending institution for a conventional first mortgage loan in the principal amount of not more than eighty (80%) percent of the Total Purchase Price at the then prevailing rate of interest.

(b) If the Purchaser shall fail to procure the aforementioned commitment on or before the expiration of forty-five (45) days from the date hereof, then and in that event the Purchaser may notify Sponsor to that effect. Such notification shall be accompanied by a statement of the

19

Purchaser stating that Purchaser made application to a lending institution within 10 days of the date hereof and took all other necessary actions as set forth in paragraph 29C below. Such notification shall be sent to Sponsor, c/o Daniel C. Marotta, Esq., Gabor & Marotta, 1878 Victory Boulevard, Staten Island, New York 10314, by certified mail, return receipt requested, not later than five (5) days after such period. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO THE GIVING OF THE FOREGOING WRITTEN NOTICE BY PURCHASER. If the foregoing written notice is not given within such specified time period, this agreement shall remain in full force and effect. Upon receipt of said notice, Sponsor may at its sole option, (i) extend the Purchaser's period to obtain such commitment for a further period of forty-five (45) days or (ii) obtain for Purchaser a mortgage commitment for a loan upon then prevailing terms for similar loans made by New York lending institutions, (including the same interest rate, terms, fees, charges and "points") in which event the mortgage contingency shall be deemed fulfilled. In the event the financing contingency is not met, this Agreement shall be rescinded and all monies heretofore deposited shall be returned to Purchaser unless within forty-five (45) days after receipt of said notice or extension thereof. If Purchaser shall obtain a financing commitment which expires prior to the actual date of the Closing of Title, Purchaser shall make a good faith effort to obtain an extension of the commitment, notwithstanding that Purchaser's lending institution may change the terms of the commitment (including, but not limited to, terms such as the interest rate, term, fees or "points" charged). If Purchaser notifies Sponsor within five (5) days after he has been notified by his lending institution that the commitment will not be extended, then Purchaser shall have the right to rescind the Agreement (and shall have all monies heretofore deposited returned to him) unless within forty-five (45) days after Sponsor is advised of Purchaser's inability to extend the commitment Sponsor elects to obtain for Purchaser a comparable financing commitment (as to interest rates, terms and "points").

(c) The Purchaser agrees to promptly make application to the lending institution as hereinabove described. The Purchaser agrees to promptly furnish and execute any instruments

20

reasonably necessary in connection with such application and to provide the lending institution with all information reasonably required by it. Appraisal fees and any and all costs and charges made by the lending institution shall be the responsibility of the Purchaser and paid by the Purchaser.

29.     Entire Agreement: Governing Law. This Agreement states the entire understanding between Purchaser and Sponsor, and Sponsor shall not be bound by any oral representations or agreement. This Agreement shall be governed by the laws of the State of New York. This Agreement cannot be changed or any provision waived orally. ANY CHANGE OR ADDITIONAL PROVISIONS OR WAIVERS MUST BE SET FORTH IN A RIDER ATTACHED HERETO OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY BOTH PARTIES.

30.     Waiver. Purchaser waives any right to trial by jury in any action, proceeding or counterclaim in any way connected with this Agreement or the Plan. The failure of the Sponsor to insist upon a strict performance of any of the terms or conditions of this Agreement shall not be deemed a waiver of any subsequent breach or default in the terms and conditions of this Agreement.

31.     Survival of Seller's and Purchaser's Obligations. The acceptance of a deed to the Unit by Purchaser shall be deemed to evidence full performance by Sponsor of all its obligations hereunder and Sponsor shall have no obligations under this Agreement or the Plan after Sponsor delivers to Purchaser the deed to the Unit unless this Agreement or the Plan specifically gives Sponsor an obligation after that time. All representations made by Purchaser in this Agreement shall expressly survive the closing of title.

32.     Digital, electronic or scanned copies of original handwritten signatures shall be considered

21

valid. This Agreement may be executed by facsimile or by electronic transmission, and in multiple counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall be deemed an original and shall constitute one and the same agreement.

33.     Escrowee shall be deemed to have accepted the escrow provisions of this Contract even in the absence of its signature on the Contract by depositing the Contract Deposit in its designated bank account.

[THE REST OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

PURCHASER: Print name and address and sign below:

Print Name   ALAN ZHOU            Date    04/11/2022

Address      245 East 25th Street Apt. 8L

             New York, NY 10010

Signature

SECOND PURCHASER: Print name and address and sign below:

Print Name   FRANCES LEE          Date    04/11/2022

Address      245 East 25th Street, Apt. 8L

             New York, NY 10010

Signature

ACCEPTED:  SPONSOR

BY:   REY GRAGATO            Date    04|12|2022

23

## SPONSOR RIDER TO RESIDENTIAL CONTRACT DATED  APRIL        , 2022

SELLERS:          SEVENTH STREET CAPITAL 494, LLC

PURCHASER:     ALAN ZHOU and FRANCES LEE

PREMISES:        494 SEVENTH STREET, APT. 2, BROOKLYN, NEW YORK

32.     If any of the provisions of this RIDER shall conflict with any printed provision of the Contract of Sale, the provisions of this RIDER shall control.

33.     As per the terms of the offering plan, a microwave was to be installed in the kitchen of the above referenced unit as well as a garbage disposal unit.

The undersigned acknowledges that no microwave or garbage disposal unit will be installed in **Unit 2** or any other unit in the building.

Also, for **Unit 1,** Schedule A of the Offering Plan lists 2 bedrooms and 2 baths, but should be corrected to read as 2 bedrooms and 2 ½ baths.

The undersigned consents to the Sponsor filing an Amendment of the Condominium Offering Plan in accordance with the above changes.

35.     This Contract and Rider may be executed by facsimile or by electronic transmission, and in multiple counterparts, all of which together shall be deemed an original and shall constitute one and the same document.

**SPONSOR/SELLER:**                              **PURCHASERS:**

_____                         _____

_____                         _____

I

**SUPPLEMENTAL RIDER TO CONTRACT OF SALE BETWEEN
SEVENTH STREET CAPITAL 494, LLC, AS SPONSOR, AND
ALAN ZHOU AND FRANCES LEE, AS PURCHASER
FOR THE PREMISES LOCATED AT
494 7TH STREET, UNIT 2, BROOKLYN, NY 11215**

**R1**    **CONFLICTS:** Conflicts between the Offering Plan and the Purchase Agreement shall be resolved in favor of the negotiated terms of the Purchase Agreement. In the event of any conflict between the Purchase Agreement and/or Riders thereof and this Supplemental Rider, then the provisions of this Supplemental Rider shall prevail.

**R2**    **CLOSE DATE:** Supplementing and modifying Paragraph 3:

    **a.** Parties acknowledge that Purchaser is obtaining financing for this transaction, and Sponsor shall give no less than ten (10) business days' notice of adjournment. Furthermore, Sponsor shall not serve a Closing Notice within 30 days from the date hereof.

    **b.** Purchasers shall have the right to a thirty (30) day adjournment without the application of any fee, interest payment or other penalty as provided for herein for each Sponsor scheduled Close Date.

    **c.** Notwithstanding the foregoing, in the event the Closing does not occur on or before **August 31, 2022** and such delay in Closing is not the fault of Purchaser, then Purchaser shall have the right to cancel this Purchase Agreement and receive the full Purchase Agreement Deposit from Sponsor.

**R3**    **UNIT CONDITION:** Supplementing and modifying Paragraph 7:

    **a.** Subject to the Purchaser's final punchlist, Sponsor agrees that the heating system and fixtures, plumbing system and fixtures, electrical system and fixtures, lighting fixtures remaining in the Unit, windows, doors, electrical outlets, air conditioners, and the Personalty and Property to be transferred to Purchaser hereunder shall be in working order at the time of Closing.

    **b.** Sponsor represents and warrants to best of Sponsor's actual knowledge that there is no history of asbestos, mold, lead based paint, bed-bug, or rodent infestation in the unit. These representations shall survive closing.

    **c.** If there are any requisite warranties or guarantees covering real property, fixtures or appliances covered in the sale, Sponsor shall turn over and assign such to Purchaser at Closing. All representations, warranties and covenants of Sponsor and Purchaser herein shall be true and accurate as of the Closing.

**R4**    **DEFAULT:** Supplementing and modifying Paragraph 13:

    **a.** In the event of any purported default under this Purchase Agreement by Purchaser, Sponsor shall provide Purchaser's counsel with notice of such default and reasonable opportunity to cure same after receipt of such notice

    **b.** Purchaser's liability in the event of Purchaser default shall be limited to the Purchase Agreement Deposit.

**R5**    **FINANCING:** Supplementing and modifying Paragraph 28:

    **a.** Purchaser can apply to any Institutional Lender of Purchaser's choosing. Purchaser's obligation to purchase under this Purchase Agreement is contingent upon issuance of a loan commitment letter by the loan commitment date which is forty-five (45) days from the date hereof. An offer to make a loan conditional upon obtaining an appraisal satisfactory to the institutional lender and shall not become a

loan commitment letter unless and until such condition is met.

    **b.**   In the event that the Lender who has issued a Loan Commitment Letter fails to fund the loan for reasons unrelated to Purchaser, the Purchaser shall have the right to cancel this Contract and receive the prompt return of the downpayment,

**R6**    **NOTICES:** Supplementing Paragraph 19, a copy of any notice sent to Purchaser shall also be sent to Weidenbaum & Harari, LLP, 155 East 44th Street, 19th Floor, New York, NY 10017, New York, New York 10017. Except for notices of default, notices may also be delivered by **email** and shall be deemed delivered as of the date receipt is confirmed by the recipient.

**R7**    **CERTIFICATE OF OCCUPANCY:** Purchaser shall not be required to close unless there is a valid Certificate of Occupancy or Temporary Certificate of Occupancy on the Building and Unit.

**R8**    **ATTORNEYS AS AGENTS:** Notwithstanding anything in the Purchase Agreement to the contrary, Sponsor does hereby appoint Sponsor's Attorney as their agent, and the Purchaser does hereby appoint Purchaser's Attorney as their agent, to (i) execute any and all instruments related solely to extensions of time; and (ii) to give any notice or receive any such notice which the party is required or permitted to give or receive under this Purchase Agreement. Notwithstanding anything in the Purchase Agreement to the contrary, if notice of the name and address of the proposed Lender is required under the mortgage contingency clause of the Purchase Agreement then such notice may be given via email.

**R9**    **DEATH:** This Purchase Agreement shall terminate upon the death of any of the persons comprising Purchaser at the surviving Purchaser's election.

**R10**    **PDF PROVISION:** This Rider and the Purchase Agreement of Sale may be executed by the parties hereto in any number of separate counterparts, each of which shall be an original, and all of which taken together shall be deemed to constitute one and the same instrument. A facsimile signature or PDF signature by any of the parties below shall be deemed binding for all purposes hereof, without necessity of an original signature being thereafter required, with the exception of any original signatures required by the parties required by the Condominium.

**R11**    **REPAIRS TO BE MADE PRIOR TO PUNCHLIST WALKTHROUGH:** Notwithstanding anything to the contrary in the Contract, Riders or Offering Plan and as a closing condition, Sponsor agrees to complete the following repairs prior to the punchlist walkthrough: the HVAC unit shall generate hot air and air conditioning; kitchen cabinets: a) top cabinet doors shall be even, with no scratches, b) the under cabinet lights to the right of the stove will be installed and in working order, c) the kickboard towards the lower-left section of the stove will be tightened and d) the cabinet trim to the right of the dishwasher will be even; the wood flooring throughout the Unit will be touched up and no stains, scuffs or scratches will be present; the hot water heater, dryer and stove will be in working order; the gas will be on; the floor/wall corner moulding to the left of the refrigerator panel shall be sealed; the drainpipe connection of the dishwasher into the kitchen sink's drainpipe exhibited a low loop and will be replaced with a high loop; kitchen countertop will be touched up and no scratches will be present; all toilet seats will be secured; hallway bathroom: paint stains will be removed from the showerhead; vanity drawer platform will be repaired; air handler access panels in the bathrooms will be even and the paint chips repaired; left bedroom entry door to be repaired; doorstoppers to be installed for all closet doors throughout Unit; primary bathroom shower stall to be in working order and outlet in hallway to be repaired and tightened.

[Signature Pages to Follow]

**SPONSOR:**
**SEVENTH STREET CAPITAL 494, LLC**

**PURCHASER(S):**

By: REY GHAGATO

**ALAN ZHOU**

**FRANCES LEE**