**Schedule 7**

8906941

**Pennsylvania Association of Realtors®**    **STANDARD AGREEMENT FOR THE SALE OF NEW CONSTRUCTION**    **ASNC**

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of REALTORS® (PAR).

## PARTIES

**BUYER(S):** Timothy T Nester, Christopher M Eckman

**SELLER(S):** Cherry Street Capital 113-27 LLC

**BUYER'S MAILING ADDRESS:**
517 S Vine St, Denver CO 80209

**SELLER'S MAILING ADDRESS:**

## PROPERTY

Subdivision, Phase, Model: _____
Property Address (including postal city) **124 N CROSKEY ST**    **PHILADELPHIA**    ZIP **19103**
in the municipality of _____, County of **PHILADELPHIA**,
in the School District of **THE SCHOOL DISTRICT OF PHILADELPHIA**, in the Commonwealth of Pennsylvania.
Tax ID #(s) **083108622** and/or
Identification (e.g. Parcel #; Lot, Block; Deed Book, Page, Recording Date): _____

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Buyer is not represented by a broker)**

Broker (Company) **Berkshire Hathaway Fox & Roach - Haverford**
Company License # **61019**
Company Address **338 Lancaster Ave, Haverford, PA 19041**
Company Phone **(610)649-4500**
Company Fax _____
Broker is (check only one):
☒ Buyer Agent (Broker represents Buyer only)
☐ Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) (Name) **Erin Rigo**
                **Robin Gordon**
State License # **RS 342731**
Direct Phone(s) _____
Cell Phone(s) **(267)606-3318**
Email **erin.rigo@foxroach.com**
Licensee(s) is (check only one):
☐ Buyer Agent (all company licensees represent Buyer)
☒ Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer)
☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Seller is not represented by a broker)**

Broker (Company) **Keller Williams Philly**
Company License # _____
Company Address **728 Broad ST S 3, Philadelphia, PA 19146**
Company Phone **(215)607-6007**
Company Fax _____
Broker is (check only one):
☒ Seller Agent (Broker represents Seller only)
☐ Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) (Name) **Jim Onesti**
State License # **RS224457L**
Direct Phone(s) **(215)709-4242**
Cell Phone(s) _____
Email **jonesti@mccannteam.com.**
Licensee(s) is (check only one):
☐ Seller Agent (all company licensees represent Seller)
☒ Seller Agent with Designated Agency (only Licensee(s) named above represent Seller)
☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

**By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.**

Buyer Initials: _TTN_ _CE_    ASNC Page 1 of 12    Seller Initials: _RG_

**COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2020**
rev.5/20; rel.7/20

1. **By this Agreement,** dated **April 26, 2022**_____ ,
Seller hereby agrees to sell and convey to Buyer, who agrees to purchase Property lot of piece of ground ( ☐ check here if lot is not being conveyed) with buildings and improvements to be erected thereon.

2. **PURCHASE PRICE AND DEPOSITS (9-15)**
   (A) Purchase Price $ **$1,800,000.00**_____
   ( **One Million, Eight Hundred Thousand**
   _____ U.S. Dollars), to be accounted for as follows:
   1. Base Price                                              $_____
   2. Lot Premium, if any                                     $_____
   3. Total Options/Extras/Alterations (see attached addendum) $_____
   (B) Purchase Price will be paid by Buyer to Seller as follows:
   1. Initial deposit, within ____ days (5 if not specified) of Execution Date,
      if not included with this Agreement:                    $      **25,000.00**
   2. Additional Deposit within ____ days of the Execution Date of this Agreement: $_____
   3. **Non-refundable deposit (for pre-paid extras, options, alterations, etc.)
      payable directly to seller on or before** _____ $_____
   4. **48 hours after buyer due diligence is completed** _____ $   **$50,000**   )
   5. _____ $_____
   6. _____ $_____
   Remaining balance will be paid at settlement.
   (C) **All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 DAYS of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.**
   (D) Deposits, regardless of the form of payment and the person designated as payee, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____) , who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.

3. **SELLER ASSIST (If Applicable) (2-12)**
   Seller will pay $ _____ or _____ % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.

4. **SETTLEMENT AND POSSESSION (9-15)**
   (A) Settlement Date is _____ **June 16, 2022** _____, or before if Buyer and Seller agree.
   (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.
   (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be pro-rated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here: _____
   _____
   (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
   1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
   2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.
   (E) In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a property at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the property and result in a change in property tax. Following settlement, the Property will be reassessed and Buyer will receive an interim tax bill for the increased taxes due for the current tax period. This interim bill may not be covered by Buyer's tax escrow with the lender, if any.
   (F) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
   _____
   (G) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
   _____
   (H) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement.

5. **DATES/TIME IS OF THE ESSENCE (9-15)**
   (A) Written acceptance of all parties will be on or before: **April 29, 2022**
   (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.
   (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day

Buyer Initials: [TTN] [CE]         ASNC Page 2 of 11         Seller Initials: [KG]

this Agreement was executed and including the last day of the time period. **All changes to this Agreement should be initialed and dated.**

(D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.

(E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

6. **ZONING (9-15)**

Failure of this Agreement to contain the zoning classification (except in cases where the property {and each parcel thereof, if subdividable} is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.

**Zoning Classification, as set forth in the local zoning ordinance: RM 1**

7. **CONSTRUCTION AND PERMITS (9-15)**

(A) **Schedule of Construction**

1. **Commencement Date:** Seller estimates that Seller will commence construction on or about **May 31, 2022**. Seller reserves the right to delay commencement of construction until Buyer has received and signed a valid mortgage commitment in accordance with Paragraph 8.

2. **Completion Date:** Seller estimates completion of construction on or about **June 1, 2022**. Buyer acknowledges that the estimated Completion Date is made by Seller as an accommodation to Buyer to assist Buyer in formulating future plans. If commencement, completion, and/or settlement are delayed due to inclement weather, strikes, delays in issuance of permits, unavailability of labor or materials, or any other reason beyond Seller's control, all times and dates (including settlement date) will be automatically extended accordingly **and time is not deemed to be of the essence.**

3. **Anticipated Settlement:** Settlement will be held on a date which is within **15** days (10 if not specified) after Seller supplies Buyer with a written notice of settlement. However, at the time of settlement the house and premises will have been substantially completed. If the municipality or governmental authority requires a Use & Occupancy permit, Seller will provide one at settlement.

4. **Settlement Deadline:** The previous paragraph notwithstanding. Should Seller be unable to settle on the Property in substantially completed condition for which a Use & Occupancy permit has been issued (where required) on or before **July 15, 2022**, Buyer may terminate this Agreement and all deposit monies including amounts identified in paragraph 2 (B) of this Agreement as non-refundable, will be returned to Buyer according to the terms of paragraph 23 of this Agreement.

(B) **Notices, Assessments and Government Requirements**

1. Seller will be responsible for any notice of improvements or assessments received on or before the date of settlement.
2. All necessary permits will be obtained and paid for by Seller prior to settlement.
3. Seller will comply with all restrictions and requirements imposed by any governmental authorities.
4. Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

(C) **Landscaping and Driveway**

1. Seller will attempt to preserve as many of the existing trees or shrubs as reasonably possible during the construction of the improvements and house on the premises. It is expressly agreed that Seller does not guarantee or warrant the survival of any trees or shrubs existing on the premises prior to construction. Any existing trees or shrubs that may die after settlement are the sole responsibility of Buyer.

2. Seller will be responsible for top soil, rough grade, fine grade, seeding and stabilization unless otherwise stated here: _____

Except as modified by the rules of the Homeowners Association or Condominium Association, if any, any soil washouts from rain or melting snow or burnouts due to droughts after settlement are the sole responsibility of Buyer. Buyer is responsible for watering, fertilizing and reseeding the lawn as necessary after settlement.

3. Buyer acknowledges that due to adverse weather conditions and other events beyond Seller's reasonable control, items including the driveway surface, grading and seeding, exterior painting or staining, and exterior concrete surfaces may not be completed at time of settlement. Unless otherwise agreed, no portion of the purchase price or option payments will be placed in an escrow account or withheld from Seller at settlement to compensate for incomplete items. Seller will complete the items within a reasonable time after settlement as weather conditions permit.

4. This paragraph will survive settlement.

(D) **Substitutions**

**BUYER AND SELLER ACKNOWLEDGE THAT THE BUILDINGS AND IMPROVEMENTS ON THE PREMISES WILL BE SUBSTANTIALLY SIMILAR TO THE ESTABLISHED BUILDING SPECIFICATIONS. BUYER ALSO ACKNOWLEDGES THAT SELLER HAS THE RIGHT TO MAKE SUBSTITUTIONS OF MATERIALS OR PRODUCTS OF SUBSTANTIALLY EQUAL OR BETTER QUALITY AT SELLER'S SOLE DISCRETION, WITH NOTICE TO BUYER, AND THAT ACTUAL MATERIALS AND PRODUCTS MAY VARY FROM SAMPLE MATERIALS AND PRODUCTS.**

**Buyer Initials:** TTN CE    ASNC Page 3 of 12    **Seller Initials:** KG

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201    www.lwolf.com    **124 N Croskey St**

8. **MORTGAGE CONTINGENCY (6-20)**

☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency.

☒ ELECTED.

(A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $ **1,440,000.00** | Loan Amount $ |
| Minimum Term **7** years | Minimum term _____ years |
| Type of mortgage **7 year ARM** | Type of mortgage |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed **80.000** % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| Mortgage lender **Citizens Bank Pre Approved, lender is buyer's choice** | Mortgage lender |
| Interest rate **3.750** %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender,** not to exceed a maximum interest rate of **4.000** % | Interest rate _____ %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender,** not to exceed a maximum interest rate of _____ % |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan) excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan) excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

(B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage application(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case no later than **May 20, 2022** .

  1. If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer is obligated to make a good-faith effort to obtain mortgage financing.
  2. Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s):
     a. Does not satisfy the terms of Paragraph 8(A), OR
     b. Contains any condition not specified in this Agreement (e.g., the Buyer must settle on another property, an appraisal must be received by the lender, or the mortgage commitment is not valid through the Settlement Date) that is not satisfied and/or removed in writing by the mortgage lender(s) within **7** DAYS after the date indicated in Paragraph 8(B), or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment).
  3. If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement, all deposit monies will be returned to Buyer according to the terms of Paragraph 23 and this Agreement will be VOID. Buyer will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).

(C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular LTV may be necessary to qualify for certain loans, or buyers might be require to pay additional fees if the LTV exceeds a specific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher or lower than the Purchase Price and/or market price of the property.

(D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s), Buyer will do so at least **15** days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to the Buyer and/or the mortgage lender(s) to make the above mortgage term(s) available to Buyer.

(E) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage application (including payment for and ordering of credit reports without delay, at the time required by lender(s)) for the mortgage terms and to the mortgage lender(s) identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process.

(F) **Buyer will be in default of this agreement if Buyer furnishes false information** to anyone concerning Buyer's financial and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to reject, refuse to approve or issue a mortgage loan commitment.

(G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within **5** DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's expense.

1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and agrees to the RELEASE in Paragraph 25 of this Agreement.
2. If Seller will not make the required repairs, **or if Seller fails to respond within the stated time,** Buyer will, within ____5____ DAYS, notify Seller of Buyer's choice to:
   a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as the Pre-Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreasonable), OR
   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 23 of this Agreement.

   **If Buyer fails to respond within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property, make the required repairs/improvements at Buyer's expense and agree to the RELEASE in Paragraph 25 of this Agreement.**

**FHA/VA, IF APPLICABLE**

(I) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $ _____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the Property are acceptable.

**Warning:** Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration Transactions, provides, "Whoever for the purpose of . . . influencing in any way the action of such Department, makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years, or both."

(J) **U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement**
☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that FHA will not perform a home inspection nor guarantee the price or condition of the Property.
☐ Buyer will apply for Section 203(k) financing and this contract is contingent upon mortgage approval (See Paragraph 8(B)) and Buyer's acceptance of additional required repairs as determined by the lender.

(K) **Certification** We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in connection with this transaction is attached to this Agreement.

9. **CHANGE IN BUYER'S FINANCIAL STATUS (6-20)**
   If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the Buyer submitted mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation; entry of a judgment against Buyer. **Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to purchase.**

10. **SELLER REPRESENTATIONS (9-15)**
    (A) **Radon Mitigation** (See Radon Notice below)
    1. Seller represents that the Property does not currently have a radon mitigation system and Seller will not install preparatory work for a radon mitigation system unless otherwise checked below.
       ☐ Seller will install preparatory work for a radon mitigation system.
       ☒ **Seller will install radon mitigation system if testing indicates a level at 4 pCi/L or higher**
       ☐ _____
    2. **Radon Notice:** Radon is a natural, radioactive gas that is produced in the ground by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can increase the risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any person who tests, mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department of Environmental Protection, Bureau of Radiation Protection, Rachel Carson State Office Building, P.O. Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 787-2480, www.depweb.state.pa.us.

    (B) **Status of Water**
    Seller represents that the Property is served by:
    ☒ Public Water ☐ Community Water ☐ On-site Water ☐ None _____

    (C) **Status of Sewer**
    1. Seller represents that the Property is served by:
       ☒ Public Sewer ☐ Community Sewage Disposal System ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
       ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1) ☐ Holding Tank (see Sewage Notice 3)
       ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice, if applicable)
       ☐ None (see Sewage Notice 1) ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
       ☐ _____

Buyer Initials: _TTN_ _CE_    ASNC Page 5 of 12    Seller Initials: _KG_

2. **Notices Pursuant to the Pennsylvania Sewage Facilities Act**

**Notice 1: There is no currently existing community sewage system available for the subject property.** Section 7 of the Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter, repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The local agency charged with administering the Act will be the municipality where the Property is located or that municipality working cooperatively with others.

**Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions of Section 7 of the Pennsylvania Sewage Facilities Act.** (Section 7 provides that a permit may not be required before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.

**Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site.** Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank from the date of its installation or December 14, 1995, whichever is later.

**Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the distance specified by regulation.** The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the horizontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the absorption area shall be 100 feet.

**Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations.** Sewage facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.

(D) **Historic Preservation**

Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____
_____

(E) **Land Use Restrictions**
1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the following Act(s) (see Notices Regarding Land Use Restrictions below):
   - ☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3P.S. §901 et seq.)
   - ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of1974; 72 P.S.§ 5490.1 et seq.)
   - ☐ Open Space Act (Act 442 of 1967; 32P.S. § 5001 et seq.)
   - ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
   - ☐ Other _____

2. **Notices Regarding Land Use Restrictions**
   a. **Pennsylvania Right-To-Farm Act:** The property you are buying may be located in an area where agricultural operations take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.
   b. **Clean and Green Program:** Properties enrolled in the Clean and Green Program receive preferential property tax assessment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that may result in the future as a result of any change in use of the Property or the land from which it is being separated.
   c. **Open Space Act:** This Act enables counties to enter into covenants with owners of land designated as farm, forest, water supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.
   d. **Conservation Reserve (Enhancement) Program:** Properties enrolled in the Conservation Reserve Program or CREP are environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer has been advised of the need to determine the restrictions on development of the Property and the term of any contract now in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

(F) **Real Estate Seller Disclosure Law**
1. Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of

Buyer Initials: TTN / CE    ASNC Page 6 of 12    Seller Initials: KG

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    124 N Croskey St

319         an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING**
320         **UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures
321         regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale
322         of condominium and cooperative interests.
323     2. Buyer has received the Seller's Property Disclosure Statement before signing this Agreement, if required by law. The Seller's
324         Property Disclosure Law does not require a disclosure form when:
325         1. A one-year written warranty covering the construction will be provided;
326         2. The building will be inspected for compliance with the applicable building code or, if none, a nationally recognized model
327            building code; AND
328         3. A certificate of occupancy or a certificate of code compliance will be issued for the dwelling.
329   (G) **Public and/or Private Assessments**
330     1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____
336     2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____
338  (H) **Highway Occupancy Permit**
339     Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.
340  (I) **Internet of Things (IoT) Devices**
341     1. The presence of smart and green home devices that are capable of connecting to the Internet, directly or indirectly, and the data stored on those various devices make up a digital ecosystem in the Property sometimes referred to as the "Internet of Things (IoT)." Buyer and Seller acknowledge that IoT devices may transmit data to third parties outside of the control of their owner.
344     2. On or before settlement, Seller will make a reasonable effort to clear all data stored on all IoT devices located on the Property and included in the sale. Seller further acknowledges that all personal devices owned by Seller (including but not limited to cellular telephones, personal computers and tablets) having connectivity to any IoT device(s) located on the Property will be disconnected and cleared of relevant data prior to settlement. Further, no attempts will be made after settlement by Seller or anyone on Seller's behalf to access any IoT devices remaining on the Property.
349     3. Following settlement, Buyer will make a reasonable effort to clear all stored data from any IoT device(s) remaining on the Property and to restrict access to said devices by Seller, Seller's agents or any third party to whom Seller may have previously provided access. This includes, but is not limited to, restoring IoT devices to original settings, changing passwords or codes, updating network settings and submitting change of ownership and contact information to device manufacturers and service providers.
354     4. This paragraph will survive settlement.
355 **11. WAIVER OF CONTINGENCIES (9-05)**
356 **If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, Buyer's failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the Property and agrees to the RELEASE in Paragraph 25 of this Agreement.**
360 **12. DUE DILIGENCE/INSPECTIONS (6-20)**
361  (A) Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors. Unless otherwise agreed, only Parties and their real estate licensee(s) may attend any inspections.
364  (B) Seller will have the following utilities turned on for pre-settlement walk-through inspection; Buyer may elect to activate any additional utilities.
366     [X] Natural Gas     [ ] Propane     [ ] Oil     [X] Water
367     [ ] Sewage     [X] Electricity     [X] elevator in service     _____
368  (C) Buyer reserves the right to make two pre-settlement walk-through inspections of the Property when the Property is substantially complete for the limited purpose of determining that the condition of the Property is as required by this Agreement and any addenda. Seller will notify Buyer prior to settlement of the date and time of Buyer's pre-settlement walk-through inspections of the Property. Buyer's right to make these inspections is not waived by any other provision of this Agreement.
372  (D) At a pre-settlement inspection, Buyer and Seller will complete and sign a list of items (punch list) to be completed, modified, or replaced within _____ DAYS (30 if not specified) after settlement. Items that cannot be completed, modified, or replaced within _____ DAYS (30 if not specified) of settlement due to events beyond Seller's reasonable control will be completed by Seller as soon as is reasonably possible, not to exceed _____ DAYS (365 if not specified) after settlement. This paragraph will survive settlement.
376  (E) Buyer's failure to inspect the Property on the dates of the scheduled pre-settlement inspections or Buyer's failure to complete and sign the pre-settlement inspection form constitutes a waiver of Buyer's right to inspect the Property, and Buyer will accept the Property at settlement in its then present condition without obligation of modification or replacement.
379  (F) All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.
380  (G) Seller has the right, upon request, to receive without charge a copy of any inspection report from the party for whom it was prepared.

381 **Buyer Initials:** _TTN_ _CE_     ASNC Page 7 of 12     **Seller Initials:** _KG_

(H) **Notices Regarding Property & Environmental Inspections**
1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating the surface of a structure where it may cause mold and damage to the building's frame.
2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.
3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsibility to dispose of them properly.
4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop the property would be affected or denied because of its location in a wetlands area.
5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores, pollen and viruses) have been associated with allergic responses.
6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be directed rected to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., 2810A, Washington, D.C. 20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health, Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by calling 1-877-724-3258.

13. **CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATION) PUBLIC OFFERING STATEMENT (1-00)**
    (A) The Property is NOT part of a Condominium or part of a Planned Community unless checked below.
    (B) ☐ CONDOMINIUM
       1. Buyer acknowledges that the Property is a unit of a condominium as defined by the Uniform Condominium Act. Seller is a declarant of the condominium and is required to provide Buyer with a public offering statement.
       2. The delivery of the public offering statement must be made no later than the date the Buyer executes this Agreement. Buyer may cancel this Agreement within fifteen (15) days after receiving the public offering statement and within fifteen (15) days of receipt of any amendment to the Statement that materially and adversely affects Buyer.
    (C) ☒ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION)
       1. Buyer acknowledges that the Property is part of a planned community as defined by the Uniform Planned Community Act. Seller is a declarant of the planned community and is required to provide Buyer with a public offering statement.
       2. The declarant must provide Buyer with a copy of the public offering statement and its amendments no later than the date Buyer executes this Agreement. Buyer may cancel this Agreement within seven (7) days after receiving the public offering statement and within seven (7) days after receiving any amendment to the contract that would materially and adversely affect Buyer.
    _____ **Buyer has received a copy of the public offering statement before signing this Agreement.**

14. **TITLES, SURVEYS AND COSTS (6-20)**
    (A) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular rates, free and clear of all liens, encumbrances, and easements, **excepting however** the following: existing deed restrictions; historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the ground; easements of record; and privileges or rights of public service companies, if any.
    (B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions; Buyer should consult with a title insurance agent about Buyer's options. Buyer agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an owner's title insurance policy.
    (C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.
    (D) Seller has the right, upon request, to receive a free copy of any title abstract for the Property from the party for whom it was prepared.
    (E) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal description of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by the mortgage lender will be obtained and paid for by Buyer.
    (F) If a change in Seller's financial status affects Seller's ability to convey title to the Property on or before the Settlement Date, or any extension thereof, Seller will promptly notify Buyer in writing. A change in financial status includes, but is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all liens and encumbrances against the Property.
    (G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as specified in Paragraph 14(A), Buyer may terminate this Agreement by written notice to Seller, or take such title as Seller can convey. If the title condition precludes Seller from conveying title, Buyer's sole remedy shall be to terminate the Agreement. Upon termination, all deposit monies shall be returned to Buyer according to the terms of Paragraph 23 of this Agreement and Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(E).

(H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation about the status of those rights unless indicated elsewhere in this Agreement.

☐ **Oil, Gas and Mineral Rights Addendum (PAR Form OGM)** is attached to and made part of this agreement.

(I) **COAL NOTICE (Where Applicable)**

THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgment is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision..

(J) This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____

☐ **Private Transfer Fee Addendum (PAR Form PTF)** is attached to and made part of this agreement.

**Notices Regarding Private Transfer Fees:** In Pennsylvania, Private Transfer Fees are defined and regulated in the Private Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obligation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed, the Act gives certain rights and protections to buyers.

**15. MAINTENANCE & RISK OF LOSS (9-15)**

Seller will bear risk of loss from fire or other casualties until time of settlement. In the event of damage by fire or other casualties to any part of the Property included in the sale that is not repaired or replaced prior to settlement (including, but not limited to, structures, grounds, fixtures, appliances and personal property), Buyer will have the option of rescinding this Agreement and promptly receiving all monies paid on account of purchase price or of extending settlement until such time as Seller can deliver the Property in completed condition. Buyer is hereby notified that Buyer may insure Buyer's equitable interest in this Property as of the time of execution of this Agreement.

**16. WARRANTIES (11-00)**

(A) **Assignment of Manufacturer's Warranties:** Seller hereby assigns to Buyer the manufacturer's warranties on all appliances, equipment, and other consumer products to be installed in or on the Property. Copies of these warranties will be delivered to Buyer. Seller makes no warranties, representations or guarantees with respect to the appliances, equipment and consumer products, and all such warranties, representations and guarantees are hereby disclaimed. The sole remedy of Buyer as to any such items will be to make such claims as are appropriate under the manufacturer's warranties.

(B) **Limited Warranty:** Except as set forth in any new construction warranty that may be provided herewith, **SELLER MAKES NO OTHER REPRESENTATIONS OR WARRANTIES OF ANY NATURE, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THOSE OF WORKMANLIKE CONSTRUCTION, HABITABILITY, DESIGN, CONDITION, QUALITY OR OTHERWISE AS TO THE PROPERTY AND THE RESIDENCE AND OTHER IMPROVEMENTS CONSTRUCTED THEREON, AND SELLER HEREBY EXPRESSLY DISCLAIMS ANY SUCH REPRESENTATIONS OR WARRANTIES.** Buyer hereby acknowledges and accepts such disclaimer and agrees to waive any and all rights Buyer may have by virtue of such representations and warranties. Except for the warranties provided by Seller, Buyer assumes the risk of any and all damage occurring in or appearing on the Property from the date of settlement, regardless of the cause thereof. Buyer's assumption of this risk is partially in consideration of the amount of the purchase price of the Property which is lower than it would be if Seller was to be held responsible for any such risks by virtue of said expressed or implied representations or warranties.

**17. RECORDING (9-05)**

This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

**18. ASSIGNMENT (2-12)**

This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

**19. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**

(A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws of the Common wealth of Pennsylvania.

(B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

**20. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (2-16)**

The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S. real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons purchasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required to

Buyer Initials: _TTN_ _CE_  ASNC Page 9 of 12  Seller Initials: _RG_

withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. taxation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/Buyer you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold, you may be held liable for the tax.

21. **NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (9-15)**

    The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing for community notification of the presence of certain convicted sex offenders. **Buyers are encouraged to contact the municipal police department or the Pennsylvania State Police for information relating to the presence of sex offenders near a particular property, or to check the information on the Pennsylvania State Police Website at www.pameganslaw.state.pa.us.**

22. **REPRESENTATIONS (2-12)**

    (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

    (B) Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an assessment of the plan, drawings, specifications, or such documents as have bearing on the nature and quality of the structures to be built by Seller. Furthermore, Brokers, their licensees, employees, officers, and partners make no representation with respect to permits or such other evidence of government approval for the construction of the structures to be built by Seller, or of the environmental conditions, the permitted uses, the financial condition of Seller, or the conditions existing in the locale where the property is situated nor have they made an inspection of the components, appliances, systems, or consumer products to be installed in or about the Property.

    (C) Any repairs required by this Agreement will be completed in a workmanlike manner.

    (D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

23. **DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-18)**

    (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all deposit monies paid on account of Purchase Price, other than those amounts designated as non-refundable, pursuant to the terms of Paragraph 23(B), and this Agreement will be VOID. Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

    (B) Where Seller terminates this Agreement due to Buyer's default, breach or failure to comply with the obligations contained in this Agreement, or where this Agreement is terminated through no fault of Seller, then Seller has the option of retaining all sums paid by Buyer, including deposit monies designated as non-refundable.

    (C) Where Buyer terminates this Agreement due to Seller's default, breach or failure to comply with the obligations contained in this Agreement, then Buyer will be entitled to a return of all deposit monies paid on account of Purchase Price, **including those amounts designated as non-refundable**, pursuant to the terms of Paragraph 23(B), and this Agreement will be VOID.

    (D) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
    1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
    2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.
    3. According to the terms of a final order of court.
    4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 23(E))

    (E) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved **30** 180 days after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the subject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt of Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation or mediation for any portion of the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue litigation even after a distribution is made.

    (F) Buyer and Seller agree that Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 24 or Pennsylvania law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.

    (G) **Unless otherwise checked in Paragraph 23(H)**, upon Buyer default, Seller may elect to retain those sums paid by Buyer, including deposit monies:
    1. On account of purchase price, OR
    2. As monies to be applied to Seller's damages, OR
    3. As liquidated damages for such default.

    (H) [X] **SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.**

Buyer Initials: TTN / CE            ASNC Page 10 of 12            Seller Initials: KG

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201    www.lwolf.com            124 N Croskey St

(I) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 24(F) or (G), Buyer and Seller are released from further liability or obligation and this Agreement is VOID.
(J) Brokers and licensees are not responsible for unpaid deposits.

**24. MEDIATION (7-20)**
Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies, to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation system offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided equally among the parties and will be paid before the mediation conference. Legal proceedings may be initiated prior to the completion of the mediation process to stop any statute of limitations from expiring and for the purpose of indexing a lis pendens by Buyer to prevent the transfer of title to a third party when Buyer is seeking to purchase the Property. The parties agree that all proceedings shall be stayed until the completion of mediation and that a court of competent jurisdiction may award attorneys' fees to the prevailing party should the court find that a party has unreasonably breached this provision or acted in bad faith. This mediation process must be concluded before any party to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.

**25. RELEASE (9-05)**
**Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands,** including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

**26. REAL ESTATE RECOVERY FUND (1-18)**
A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658.

**27. COMMUNICATIONS WITH BUYER AND/OR SELLER (9-15)**
(A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s) and Closing Disclosure(s) upon receipt.
(B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be satisfied by communication/delivery to the Broker for Buyer, if any, **except for documents required to be delivered pursuant to Paragraph 13**. If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller, unless otherwise agreed to by the parties.

**28. HEADINGS (9-15)**
The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

29. **SPECIAL CLAUSES (9-15)**
    (A) **The following are part of this Agreement if checked:**
    - [ ] Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
    - [ ] Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSP-CM)
    - [ ] Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
    - [ ] Settlement of Other Property Contingency Addendum (PAR Form SOP)
    - [ ] Appraisal Contingency Addendum (PAR Form ACA)
    - [X] ADDENDUM/ENDORSEMENT TO AGREEMENT OF SALE

    (B) **The following exhibits are made part of this Agreement if checked:**
    - [ ] Plot Plan of Lot
    - [ ] House Plan/Floor Plan/Elevation
    - [ ] Floor Plan Reversed
    - [ ] Building Specifications
    - [ ] Options/Extras/Alterations
    - [ ] New Construction Warranty
    - [ ] Restrictive Covenants/Deed Restrictions
    - [ ] Standard Features

    (C) **Additional Terms:** Shall any date in this agreement fall on a weekend or holiday it is hereby extended to the next legal business day.

    [Initials: CE  TTN  RG]

Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

**NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all parties, constitutes acceptance by the parties.

[TTN] [CE] Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

[TTN] [CE] Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

[TTN] [CE] Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before signing this Agreement.

BUYER  _Timothy T Nester_  DATE 04/26/22 | 7:59 PM EDT
Timothy T Nester

BUYER  _Christopher M Eckman_  DATE 04/26/22 | 7:57 PM EDT
Christopher M Eckman

BUYER  _____  DATE _____

Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

SELLER  _Rey Grabato_  on behalf of Cherry Street Capital 113-27 LLC  DATE 4/27/2022

SELLER  _____  DATE _____

SELLER  _____  DATE _____