| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>**PORZIO, BROMBERG & NEWMAN, P.C.**<br>100 Southgate Parkway<br>Morristown, New Jersey 07962<br>(973) 538-4006<br>(973) 538-5146 Facsimile<br>Warren J. Martin, Jr. (wjmartin@pbnlaw.com)<br>Kelly D. Curtin (kdcurtin@pbnlaw.com)<br><br>*Counsel to Allen Cvelic* |

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al*.[1]<br>Debtors. | Chapter: 11<br><br>Case No.: 22-14539 (JKS)<br>(Jointly Administered)<br><br>**Hearing Date and Time:**<br>**June 21, 2022 at 2:00 p.m.** |

### ALLEN CVELIC'S LIMTED OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE PRIVATE SALE OF CERTAIN PROPERTIES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, AND GRANTING RELATED RELIEF

Allen Cvelic ("Mr. Cvelic"), by and through his undersigned attorneys, submits this objection ( the "Objection") to Debtors' Motion For Entry Of An Order Authorizing The Private Sale Of Certain Properties Free And Clear Of Liens, Claims, Encumbrances And Interests, And Granting Related Relief [ECF No. 36] (the "Private Sale Motion"), respectfully states as follows:

### PRELIMINARY STATEMENT

The Debtors' bankruptcy cases are in their infancy, with no official committees appointed to represent the interests of unsecured creditors and/or investors. Yet, the Debtors propose an emergency sale of certain valuable real property without providing sufficient information to parties

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

1

6996191

to allow them to conduct even a baseline investigation into the sale process and whether the estates are receiving fair value. Moreover, as further set forth below, the shortened time appears unnecessary for all but one of the proposed sales. Additionally, the proposed sales were not mentioned at the recently conducted first day hearing, are not reflected in the twelve week budget [ECF No. 16], and contradict the Debtors' representation at the hearing that the next significant event in the case would not occur until the second day hearings scheduled for July 19, 2022.

As such, although Mr. Cvelic supports any sale that maximizes value for these estates, Mr. Cvelic is concerned that the proposed emergency process by the Debtors lacks the transparency necessary to demonstrate that the Debtors' have followed applicable procedural requirements and that the sales net fair value for the estates. Accordingly, to ensure proper safeguards, Mr. Cvelic requests that the Court adjourn the hearing on the Private Sale Motion to allow for the formation of an Official Committee to adequately investigate the proposed sales prior to their approval by the Court.

## RELEVANT BACKGROUND

1. On June 7, 2022, National Realty Investment Advisors and its affiliated debtors (the "Debtors") filed voluntary petitions seeking relief pursuant to Chapter 11 of Title 11 of the United States Code initiating the above captioned jointly administered chapter 11 bankruptcy proceedings (the "Chapter 11 Cases"). [ECF No. 1].

2. On June 8, 2022, the Debtors submitted a twelve week budget to the Court (the "Budget") [ECF No. 16]. The Budget, as submitted to the Court by the Debtors, is attached hereto as **Exhibit "A"**.

3. The Budget reflects only one asset sale contemplated in the Budget in the amount of $1,650,000. *See* Exhibit A.

4. On June 9, 2022, the Court conducted the hearings seeking approval of the following First Day Motions: (1) Debtors' Motion for Entry of an Order (A) Directing Joint Administration of Chapter 11 Cases and (B) Granting Related Relief; (2) Application for Designation as Complex Chapter 11 Cases; (3) Debtors' Motion for Entry of Order (I) Granting the Debtors an Extension of Time to File their List of Creditors; (II) Authorizing the Debtors and/or their Agent to (A) Prepare a Consolidated List of Creditors in Lieu of a Mailing List and (B) Mail Initial Notices; and (III) Granting Related Relief; (4) Debtors' Motion for Entry of an Order (A) Extending Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases, Statements of Financial Affairs, and (B) Granting Related Relief; (5) Debtors' Motion for Entry of an Order Authorizing the Debtors to File Under Seal Portions of the Debtors' Consolidated Creditor Matrix Constraining Certain Individual Creditor Information; (6) Debtors' Motion for Entry of Interim and Final Orders Authorizing, but not Directing, the Debtors to (A) Pay Certain Prepetition Wages, Salaries, Reimbursable Employee Expenses and Other Employee Compensation Expenses, and Taxes related thereto, (B) Honor Certain Employee Benefits, (C) Directing the Debtors' Bank to Honor Checks and Transfers of Prepetition Employee Obligations, and (D) Granting Related Relief; (7) Debtors' Motion for Entry of an Order Authorizing the Debtors to (I) Pay Pre-Petition Insurance Premiums (II) Continue Pre-Petition Insurance Programs and (III) Pay All Pre-Petition Obligations in Respect Thereof (the "Wage Motion"); and (8) Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Continue and Maintain their Existing Cash Management System and Bank Accounts; and (II) Continue Using their Existing Business Forms, Checks, and Records (the "Cash Management Motion") (collectively, the "First Day Motions").

6996191

5. In the declaration in support of the First Day Motions (the "First Day Declaration"), the Debtors' Independent Manager declared that "thirty-one (31) Properties are completed (inclusive of those which were assigned by NRIA to the Fund), three (3) Properties are near completion, and sixteen (16) Properties remain to be completed or are otherwise in the planning stage. The Debtors estimate that the aggregate current value of the Properties is at least $225 million, based on property appraisals with valuation dates as of December 31, 2021 (or proxies thereof) authored by industry leaders such as CBRE, Newmark Knight Frank, Colliers, and others. The future stabilized values of the respective Properties exceed $1 billion." [ECF No. 16, ¶ 12].

6. At the hearing on the First Day Motions, the Debtors' counsel previewed that it next anticipated filing a global procedures motion for the go-forward sale of the real properties, a motion to pay trade claims, and that July 19, 2022 was an appropriate next hearing. The United States Trustee, in return, indicated that it hoped to appoint a Committee by the end of June—perhaps based in part on the Debtors' representations that nothing imminent was transpiring in the Chapter 11 Cases.

7. On June 9, 2022, the Court granted the First Day Motions, and entered interim relief for the Wage Motion and the Cash Management Motion.

8. On June 15, 2022, only one week after the hearing on the First Day Motions, the Debtors filed the instant Private Sale Motion, along with an Application to Shorten Time, which was granted setting a hearing date of June 21, 2022 [ECF No. 38 and 40].

9. The Private Sale Motion seeks approval from the Court to sell eight real properties for approximately $20,000,000. The Debtors propose that these real properties will all be sold by the end of August 2022, and most within seventy-two hours of Court approval. The motion does not discuss the Debtors' intended use of the sale proceeds.

10. The below chart summarizes the real properties to be sold, as set forth by the Debtors in the Private Sale Motion [ECF No. 36, ¶9-¶17][2]:

| Property | Date of Contract[3] | Closing Date | Purchase Price | Deadline for Approval or Closing for a Sale |
|---|---|---|---|---|
| 285 7th Street Condominium Unit No. 1 (Brooklyn, NY) | March 17, 2022 [ECF No. 36-2, Page 2] | 72 hours after court approval | $2,250,000.00 | N/A |
| 285 7th Street Condominium Unit No. 2 (Brooklyn, NY) | March 11, 2022 [ECF No. 36-3, Page 2] | 72 hours after court approval | $1,650,000.00 | August 31, 2022 |
| 285 7th Street Condominium Unit No. 3 (Brooklyn, NY) | April 22, 2022 [ECF No. 36-4, Page 2] | 72 hours after court approval | $2,125,000.00 | N/A |
| 494 Seventh Street Condominium Unit No. 1 (Brooklyn, NY) | April 13, 2022 [ECF No. 36-5, Page 2] | June 24, 2022 | $2,350,000.00 | October 13, 2022 |
| 494 Seventh Street Condominium Unit No. 2 (Brooklyn, NY) | April 12, 2022 [ECF No. 36-6, Page 2] | July 13, 2022 | $1,630,500.00 | August 31, 2022 |
| 116 N. Croskey St. (Philadelphia, PA) | May 14, 2022 [ECF No. 36-7, Page 15] | 72 hours after court approval | $1,762,500.00 (this purchaser submitted a notice of termination of sale)—May | N/A |

---

[2] The Private Sale Motion does not explain how the referenced closing dates, or deadlines for approval/closing, were determined. Based on a preliminary review of the sales contracts, it appears that in some of the contracts contain various triggering events that could create certain deadlines. However, whether such triggers occurred, etc. is not disclosed in the Private Sale Motion. For purposes herein, we are referencing the Debtors' conclusory statements in the Private Sale Motion, but even such statements indicate that shortened time is not required for all of these sales.

[3] The dates that the proposed contracts for sale were entered into were taken from the sale agreements that were attached as exhibits to the Private Sale Motion.

| Property | Date of Contract[3] | Closing Date | Purchase Price | Deadline for Approval or Closing for a Sale |
|---|---|---|---|---|
| 124 N. Croskey St. (Philadelphia, PA) | April 27, 2022 [ECF No. 36-8, Page 13] | To be scheduled by the parties prior to July 15, 2022 | $1,800,000.00 | July 15, 2022 |
| Ocean Delray Condominium, Unit #8 (Delray Beach, FL) | April 25, 2022 [ECF No. 36-9, Page 31] | July 5, 2022 | $6,450,000.00 | N/A |

## OBJECTION

11. Mr. Cvelic objects to the Private Sale Motion on two general bases: (1) that the Debtors have not provided sufficient support for their request that the sales be approved on an emergent basis before any Committee has been appointed, and (ii) that the Debtors have not provided sufficient information to support their assertion that the sales are arm's length transactions to good faith purchaser's for fair-value in accordance with applicable Third Circuit precedent. *See In re Abbotts Diaries of Pennsylvania, Inc.*, 788 F.2d 143, 147-50 (3d Cir. 1986).

12. More specifically, the emergent nature of the Private Sale Motion is undermined by the fact that only one of the sale contracts has a sale termination date prior to the July 19th second day hearing scheduled in these cases (i.e., 124 N. Croskey St., Philadelphia, PA, which has a termination date of July 15, 2022), certain contracts do not have clearly specified closing dates, only one of the sales are anticipated in the Debtors' Budget through the end of August 2022, and the Debtors failed to preview the Private Sale Motion when discussing the next steps and scheduling of the second day hearing, even though the sale contracts are all pre-petition contracts for which the Debtors cannot claim ignorance. There is no justification as to why shortened time

6996191

is required here, particularly given that the proposed contracts for sale long pre-exist the Chapter 11 Cases and no Committee has been appointed.

13. The only reason presented by the Debtors to justify the Private Sale Motion being heard on an emergent basis is that one of the contracts has a June 24, 2022 closing date (which is not clearly evidenced as a requirement in the sale contract[4]), and that one purchaser in another contract has submitted a notice of termination, which termination notice was not included in the filing and which termination notice the Debtors state that they are working to consensually resolve the issue. *See Private Sale Motion, Fn. 3*. As such, Mr. Cvelic submits that the Debtors have not demonstrated an actual need for the emergent and drastic relief sought.

14. Just as the timing is not supported by evidence presented by the Debtors, the substance is similarly lacking. In theory, Mr. Cvelic is not opposed to the Debtors monetizing its assets for the benefit of the Debtors' estates so long as the Debtors are receiving fair value and proper process has been followed. However, the Private Sale Motion is deficient as to the necessary disclosure requirements. The Private Sale Motion baldly asserts that the consideration provided by the proposed purchasers is fair and reasonable. *See Private Sale Motion, ¶ 23*. Noticeably absent is a description of the listing price for the real properties being sold, when they were initially listed, how long they have been on the market, whether they had open houses, how many offers were received, market comparisons for similar condo sales in the relevant neighborhood (which can be readily provided by any real estate agent), and an appraisal, or at minimum, a comparative market analysis for the real properties being sold, etc.[5]

---

[4] The referenced sale contract has specified conditions for closing, but does not clearly state a requirement to close by June 24, 2022 [ECF No.36-5, ¶ 3].

[5] The First Day Declaration attributes, in part, the Debtors' financial strain to a preference of insider vendors:
> Among other things, the company's employee headcount was too large, its compensation levels were above market, and its internal process for the selection of contractors was irregular and reflected a preference for entities associated with former insiders and their affiliates. As a result, within the first thirty (30) days of the Casey Group's appointment, Casey Group prioritized tightening up formal and now industry standard

15. Additionally, the First Day Declaration states that the real properties owned by the Debtors had an aggregate current value of $225,000,000, yet there is no discussion in the Private Sale Motion as to how the real properties proposed to be sold fit into the $225,000,000 valuation of the Debtors' real estate portfolio. The Private Sale Motion represents that the real properties being sold are unencumbered, but the Budget does not reflect a $20 million dollar infusion into the estates. While the Budget is consistent with the Debtors' disclosures during the hearing on the First Day Motions, the rushed nature of the sale process and the lack of baseline disclosure raises questions as to whether the estates are receiving adequate compensation through these sales.

16. Accordingly, Mr. Cvelic questions the rush in approval of the Private Sale Motion, particularly when a Committee has not yet been formed to conduct a proper investigation into the fairness and adequacy of the proposed sales. In balancing the equities, the proper course of action would be for the Court to adjourn adjudication of the Private Sale Motion to allow for a Committee to be formed and review the Private Sale Motion to ensure that the proposed purchasers are good faith purchasers for fair fair-value to the estates. *See In re Abbotts Diaries of Pennsylvania, Inc.*, 788 F.2d at 147-50.

17. At present, all that is before the Court is an unexpected and hurried sale process for which the Debtors have not provided adequate disclosure, which belies the purposes of the bankruptcy process and may unfairly prejudice creditors and investors. Ultimately, the proposed sales may be in the best interest of the estates, but parties such as Mr. Cvelic, have a right to be properly represented by a Committee that analyzes the proposed sale after adequate disclosure by

---

accounting practices to ensure the accuracy of the books and records, oversaw reductions in compensation and workforce, and streamlined the contractor selection process.
[ECF No. 16, ¶ 23]. There is insufficient disclosure of the real estate brokers' retention agreements and/or connection to the Debtors. Although the Debtors state "[a]ll of the Properties were marketed for sale by independent third-party brokers/realtors who are unaffiliated with the Debtors" (see Private Sale Motion at ¶7), none of the applicable retention applications have filed with the Court with applicable disclosures—including of compensation sought.

the Debtors. Even if the Debtors are able to articulate sufficient justification for the immediate approval of certain of the sales, approval of the bulk of the sales should be adjourned pending the Debtors' submission of an supplemental pleading that meets the applicable sale standards, and the formation of a Committee.

## RESERVATION OF RIGHTS

18. Mr. Cvelic reserves its rights to amend or supplement this objection to assert additional arguments relating to the relief sought by the Debtors.

## CONCLUSION

19. Based on the foregoing, Mr. Cvelic respectfully requests that the Court deny the relief sought in the Private Sale Motion as premature.

Dated: June 21, 2022                    **PORZIO, BROMBERG & NEWMAN, P.C.**

By:    */s/ Warren J. Martin Jr.*
       Warren J. Martin, Jr., Esq.
       Kelly D. Curtin, Esq.
       100 Southgate Parkway
       P.O. Box 1997
       Morristown, New Jersey 07962
       Telephone: (973) 538-4006
       Facsimile: (973) 538-5146
       Email: wjmartin@pbnlaw.com
              kdcurtin@pbnlaw.com

       *Counsel to Allen Cvelic*

6996191