**THE KELLY FIRM, P.C.**
Andrew J. Kelly, Esq.
Travis R. Graga, Esq.
Coast Capital Building
1011 Highway 71, Suite 200
Spring Lake, New Jersey 07762
(732) 449-0525
akelly@kbtlaw.com
tgraga@kbtlaw.com
*Attorneys for U.S. Construction, Inc.*

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, et al.,<br><br>Debtor. | **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY**<br><br>Chapter 11<br><br>Case No.: 22-14539 (JKS)<br><br>Hon. John K. Sherwood<br><br>BRIEF IN SUPPORT OF MOTION TO COMPEL PERFORMANCE AND/OR ASSUMPTION OF AGREEMENTS AND FOR RELATED RELIEF<br><br>Hearing Date: July 19, 2022 at 2 p.m.<br>(Short Time Application Pending) |

**PRELIMINARY STATEMENT**

U.S. Construction, Inc. ("USC") is the counterparty to construction and development contracts with National Realty Investment Advisors, LLC, the debtor (the "Debtor" or "NRIA") related to a project in Delray Beach, Florida ("DB Project"). USC, by and through its counsel, The Kelly Firm, P.C., respectfully submits this brief in support of its Motion for an Order determining that the Debtor should be compelled to perform and/or assume the construction and development contracts between USC and the Debtor allowing USC to complete the DB Project regardless of

whether the contracts are executory or not, authorizing and compelling the Debtor to pay certain subcontractors, and for such other and further relief as the Court deems appropriate (the "Motion").

## JURISDICTION

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § § 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409. The predicates for the relief requested herein is 11 U.S.C. § § 105 and 365.

## STATEMENT OF FACTS

The facts set forth in the accompanying Certification of John Farina ("Farina Cert.") are incorporated by reference as if fully set forth herein.

## LEGAL ARGUMENT

### I. THE DEBTOR SHOULD BE COMPELLED TO ASSUME THE AGREEMENTS ON AN EXPEDITED BASIS AND PAY THE SUBCONTRACTORS AND OTHER RELATED PARTIES

The Debtor should be compelled to assume the contracts on an expedited basis, as assumption of the contracts is in the best interest of the estate.

Pursuant to 11 U.S.C. § 365(d)(2), in a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease. 11 U.S.C. § 365(d)(2).

Whether to shorten the time period, (and by how much), is a matter left to the broad discretion of the bankruptcy court. Matter of Whitcomb & Keller Mortgage Co., Inc., 715 F.2d 375, 379 (7th Cir.1983); In re New York Deli, Ltd., 41 B.R. 198 (Bankr.D.Ha.1984). As the district

2

court in Matter of Dunes Casino Hotel, 63 B.R. 939, 949 (D.N.J.1986) explained, the exercise of this discretion should be undertaken after considering a variety of factors:

> In determining what constitutes a reasonable time within which a debtor should assume or reject a contract, the court should consider a number of factors, including: "The nature of the interests at stake, the balance of the hurt to the litigants, the good to be achieved, the safeguards afforded those litigants, and whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary." *In re GHR Energy Corp.,* 41 B.R. 668, 676 (Bankr.D.Mass.1984), *quoting In re Midtown Skating Corp.,* 3 B.R. 194, 198 (Bankr.S.D.N.Y.1980). Above all, the court should interpret reasonable time consistent with the broad purpose of Chapter 11, which is "to permit successful rehabilitation of debtors." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 1194, 79 L.Ed.2d 482 (1984)

In re Monroe Well Serv., Inc., 83 B.R. 317, 323 (Bankr. E.D. Pa. 1988) (citing Matter of Dunes Casino Hotel, 63 B.R. 939, 949 (D.N.J.1986)). During the period prior to assumption or rejection of an executory contract, the estate must pay the reasonable value of any contractual benefits the estate receives during that period, as an administrative expense. Continental Energy Assocs. L.P. v. Hazelton Fuel Mgmt. Co. (In re Continental Energy Assocs. L.P.), 178 B.R. 405, 408 (Bankr.M.D.Pa.1995) (collecting authorities).

Here, the Debtor should be compelled to assume the contracts immediately. As detailed in the Farina Cert., the DB Project which involves an AIA construction agreement and separate joint venture agreement (see Farina Cert., at ¶¶36-37) is nearly complete and the subcontractors and brokers, who have been working closely with USC throughout the development of the site, stand ready, willing, and able to bring the DB Project to fruition in an expeditious and economic manner. USC can complete the DB Project efficiently and cost-effectively – more so than any outside party the Debtor may recommend. See Farina Cert., at ¶¶ 39-59. The faster the DB Project is completed the better it will be for all parties concerned.

Delaying the DB Project which is 95% complete jeopardizes a net profit of more than $35 million. See Farina Cert., at ¶¶ 14-15. Bringing in a party unfamiliar with the DB Project is a recipe for disaster as the subcontractors, brokers, and prospective buyers are familiar with and trust USC – not NRIA (these parties do not even know NRIA). Moreover, the real estate market is still very strong, but is already beginning to experience the effects of the multiple interest rate hikes ordained by the Federal Reserve so far this year. More interest rate hikes are expected in the coming months, and it is likely that the real estate market will continue to cool off. The sooner the DB Project can be completed, the greater the likelihood that the remaining units can be sold and the greater the value the estate will realize from the sale of the units. In addition, the subcontractors currently on-site will soon be faced with the decision of whether to abandon the DB Project to seek other work, as payment from NRIA has been promised but not delivered. See Farina Cert., at ¶¶ 60-75. The estate and all interest parties will be injured if the contracts are not assumed forthwith, and USC's Motion should be granted.

## II. REJECTING THE AGREEMENTS WOULD NOT BE A GOOD EXERCISE OF NRIA'S BUSINESS JUDGMENT

Rejection of the Agreements would be a detriment to the estate.

The "business judgment" test requires a showing that rejection of the executory contract or unexpired lease will benefit the debtor's estate. In re Extraction Oil & Gas, 622 B.R. 608, 614–15 (Bankr. D. Del. 2020), motion to certify appeal granted sub nom. Extraction Oil & Gas, Inc., 2021 WL 3722229 (D. Del. Aug. 23, 2021); In re Trans World Airlines, 261 B.R. 103, 121 (Bankr. D. Del. 2003). ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice'") (quoting In re Wheeling-Pittsburgh Steel Corp., 72 B.R. at 849–50); In re Trans World Airlines, Inc., 2001 WL 1820019, 2001 Bankr. LEXIS 722 (Bankr. D. Del. Mar. 16, 2001) (noting that the standard under section 365 requires

4

consideration of the benefit of the rejection to the debtor's estate). Courts generally will not second-guess a debtor's business judgment concerning the rejection of an executory contract or unexpired lease. See Trans World Airlines, 261 B.R. at 121. The "business judgment" test merely requires a showing that rejection will benefit the debtor's estate. In re Prime Motor Inns, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991).

Here, the development project is nearly complete. As previously mentioned, all 19 condominium units have been constructed and all but one has been sold, and the five single-family homes have been framed and enclosed. USC has already ordered custom cabinetry, tile, plumbing fixtures, hardwood floors, countertops, and appliances for the single-family homes, some of which it has already received. USC is charged with all development responsibilities, including design, planning, procuring necessary approvals, marketing, and selling the DB Project and has hired everyone who has performed work at the site. Based on the estimated project costs, USC has already sold enough units for the project to be profitable without having to sell another unit. NRIA should be compelled to assume the contracts, as replacing the general contractor this late in the DB Project would be a detriment to the estate and would not be a judicious exercise of the Debtor's business judgment. As stated *supra*, USC already has subcontractors at the site who are under contract and prepared to finish the remaining work in an expeditious manner. Bringing a new general contractor and subcontractors on at this point would only act to delay the completion of the DB Project and would increase the costs, as USC's subcontractors and suppliers are already locked into pre-inflation prices. Furthermore, USC has proven itself as a capable general contractor, having completed and sold the great majority of units. Moreover, given the recent and anticipated future interest rate hikes, it makes sense to complete the DB Project as quickly as possible while property values are still high. Therefore, rejecting the contracts would not be a

sound exercise of the Debtor's business judgment and would prejudice the estate. Accordingly, the Motion should be granted.

### III. NRIA SHOULD BE COMPELLED TO PAY SUBCONTRACTORS IMMEDIATELY

The Debtor has, through its actions and the representations of its representatives, already sought to enforce the contracts. The Debtor should be required to pay subcontractors and other parties providing services the reasonable value of their work already furnished and to be performed. See Farina Cert., at ¶ 75.

Pending assumption or rejection, a debtor may elect to enforce the contract thereby being required to pay for the reasonable value of the material or services supplied. National Labor Relations Board v. Bildisco and Bildisco, 465 U.S. at page 531; Philadelphia Co., et al. v. Dipple, et al., 312 U.S. 168, 174 (1941); In re Food City, Inc., 95 B.R. 451, 454 (Bkrtcy.W.D.Tx.1988); and In re By–Rite Distributing, Inc., 47 B.R. 660, 663 and 664 (Bkrtcy.D.Utah, C.D.1985). Often times that cost will be measured by reference to the contract which presumably has been negotiated at arm's length. National Labor Relations Board v. Bildisco and Bildisco, 465 U.S. at 531; In re Cont'l Energy Associates Ltd. P'ship, 178 B.R. 405, 408 (Bankr. M.D. Pa. 1995).

Here, when NRIA filed for bankruptcy, subcontractors were repeatedly assured via email and over the telephone that they would be paid and were instructed to continue to work. See Farina Cert., at ¶¶ 63-69. The subcontractors continued to work in reliance on NRIA's representations. The post-petition email correspondence from NRIA regarding payment of subcontractors is a tacit assumption of the contracts and an attempt to enforce the contracts, thereby requiring NRIA to pay for the reasonable value of the post-petition services performed. Moreover, it is imperative that subcontractors be paid immediately so that the DB Project can continue to proceed toward a successful completion.

**CONCLUSION**

Based on the foregoing, USC respectfully requests that the Motion to compel performance and/or assumption of the contracts and for related relief be granted, and that this Court grant such other and further relief as is deemed appropriate.

**THE KELLY FIRM, P.C.**
Attorneys for U.S. Construction, Inc.

Dated:  July 12, 2022          By:     */s/ Travis R. Graga*_____
**TRAVIS R. GRAGA**