**SILLS CUMMIS & GROSS P.C.**
S. Jason Teele, Esq. (steele@sillscummis.com)
Daniel J. Harris, Esq. (dharris@sillscummis.com)
Gregory A. Kopacz, Esq. (gkopacz@sillscummis.com)
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)
(973) 643-6500 (Facsimile)

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case 22-14539 (JKS)<br><br>(Jointly Administered) |

**REPLY IN SUPPORT OF DEBTORS' APPLICATION PURSUANT
TO 11 U.S.C. § 327(a) FOR ENTRY OF AN ORDER AUTHORIZING THE
RETENTION OF SILLS CUMMIS & GROSS P.C. AS COUNSEL FOR THE
DEBTORS EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors-in-possession (the "**Debtors**") submit this reply (the "**Reply**") in further support of their application to retain Sills Cummis & Gross P.C. ("**Sills**") as their general bankruptcy counsel *nunc pro tunc* to the Petition Date [Docket No. 48] (the "**Application**")[2] and in response to the U.S. Trustee's objection thereto [Docket No. 114] (the

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

[2] Capitalized terms not otherwise defined shall have the meanings ascribed to such terms in the Application.

8971195

"**Objection**"),[3] and respectfully state as follows:

## PRELIMINARY STATEMENT

The Objection is long on suggestion and innuendo and short on relevant facts or applicable law that bear on the Court's determination whether Sills meets the standard for retention under section 327(a) of the Bankruptcy Code. The U.S. Trustee spends more than half of the Objection restating many of the allegations set forth in the cease-and-desist order filed by the State of New Jersey Bureau of Securities. Those allegations, however, are not before the Court at this time. What is before the Court is the Application and Sills' steadfast position that it is both disinterested and does not hold an interest adverse to the Debtors' estates. On those issues, the Objection lacks merit and the U.S. Trustee fails to carry its burden.

The Court should overrule the Objection for several reasons. *First*, there is no actual or potential conflict of interest such that Sills holds an interest adverse to the Debtors' estates. As communicated to the U.S. Trustee prior to the filing of the Objection, Sills terminated its representation of Rey Grabato ("**Grabato**"), Thomas Salzano ("**Salzano**"),[4] and Arthur Scutaro ("**Scutaro**") in all matters *prior* to being engaged by the Debtors to serve as general bankruptcy counsel on or about May 5, 2022. As a result, Sills' *former* representation of these individuals in matters unrelated to the chapter 11 cases does not present an actual conflict sufficient to disqualify Sills from representing the Debtors in these chapter 11 cases. *See Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623-24 (2d Cir. 1999) ("counsel will be disqualified under section 327(a) only if it ***presently*** 'holds or represents an interest adverse to the estate,'

---

[3]   The U.S. Trustee Objection has been joined by several parties. *See* Docket Nos. 117, 123.

[4]   For the avoidance of doubt, Salzano was not an employee of NRIA. In fact, Salzano was a "consultant" to NRIA through T. Nicholas Salzano, LLC, an entity owned and controlled exclusively by Salzano. Salzano was sometimes referred to informally as "Senior Independent Executive Advisor & Portfolio Construction Manager."

2

notwithstanding any interests it may have held or represented in the past. . . Because Caddell no longer 'represents' Wells, Caddell does not represent any of Wells' interests, whether or not any of those interests might be adverse to the estate. Accordingly, Caddell does not represent any interests adverse to the Estates within the meaning of section 327(a) based on its prior representation of Wells") (emphasis added).

*Second*, the suggestion that Sills is somehow predisposed to favor its former clients over that of the Debtors defies logic. In fact, the work performed by Sills on behalf of NRIA and the individual defendants concurrently was never "adverse" to the Debtors. And when it became apparent that the interests of the individuals and the Debtors were no longer aligned, Sills ceased all work for the individual defendants and terminated the engagements in accordance with the terms of the relevant engagement letters.[5] As further evidence of Sills' commitment to its representation of the Debtors, Sills commenced an investigation into certain potential employee misconduct, including the misconduct by Scutaro, beginning in or around late April/early May 2022. Such investigation led to the termination of Scutaro and the commencement of an adversary proceeding by the Debtors' special litigation counsel, Riker Danzig LLP.[6] Sills' conduct both pre- and post-petition indicates that it was and remains committed to acting in the Debtors' best interest.

*Third,* the U.S. Trustee's argument that Sills' representation of the Debtors may violate Rule 1.9(a) of the New Jersey Rules of Professional Conduct is an unwarranted smear. As detailed below, either: (i) RPC 1.9(a) is not implicated because Sills' representation of the Debtors in these chapter 11 cases is not "substantially related" to the prior representations, or

---

[5] Copies of the engagement letters are attached hereto as **Exhibits A, B and C**.

[6] Sills could have represented the Debtors in this adversary proceeding. However, out of an abundance of caution, Sills referred the matter to special litigation counsel.

3

8971195

(ii) Sills obtained written future waivers from the individuals to represent the Debtors in unrelated matters.

*Fourth*, Sills believes that it is *not* a creditor of the Debtors' estates and *is* "disinterested" under the express provisions of section 101(14) of the Bankruptcy Code and case law interpreting it. As is expressly stated in the Escrow Agreement, dated May 5, 2022 by and among Sills and the Debtors (the "**Escrow Agreement**"),[7] Sills waived its claim for unpaid fees prepetition "[u]pon [the Debtor's] funding of the Escrow Amount, any and all Claims by Sills for fees and expenses under the Initial Engagement Letter, including any and all claims for the Excess Receivable, shall be deemed fully, finally, and irrevocably satisfied as to the Parties . . . and all such claims for the Excess Receivable shall attach solely to the Escrow Amount." *See* Escrow Agreement ¶ 2. In other words, as of the Petition Date, Sills had no claim against the Debtors whatsoever. Rather, Sills only had a claim against the *funds* it held in escrow. Nevertheless, because of recent negotiations with counsel to the official committee of unsecured creditors, Sills has voluntarily agreed to waive its claim to the funds held in escrow.

For these reasons and those that follow, the Court should overrule the Objection and grant the Application.

## BACKGROUND

### A. General Background And Initial Disclosures

On February 10, 2022, NRIA retained Sills to serve as outside special restructuring counsel. On May 5, 2022, the Debtors retained Sills to represent them in these chapter 11 cases. Attached as **Exhibit 2** to the Teele Declaration are the applicable engagement letters. (Teele Decl. Ex. 2.)

---

[7] A copy of the Escrow Agreement is attached as Exhibit B to Exhibit 2 the Application.

4

As disclosed in the Application and the Teele Declaration, Sills currently represents *only* the Debtors and no other parties in matters related to these chapter 11 cases and will not represent any party other than the Debtors in connection with these chapter 11 cases. (Teele Decl. ¶ 18.d.10.)

Prior to the commencement of the chapter 11 cases, Sills represented NRIA and certain individuals previously employed by or associated with NRIA in connection with matters unrelated to these chapter 11 cases. Specifically, the Teele Declaration disclosed the following:

> Sills represents Debtor National Realty Investment Advisors, LLC in a civil action commenced by Rakhi Sharma in the Superior Court of New Jersey, Law Division, Union County.[8] This representation commenced in or around March 2021.
>
> In addition, commencing in or around March 2021, Sills represented Robert G. Valencia, Natalie Petruic, Rey Grabato, Nicholas Salzano and Glenn La Mattina, all of whom, except Glenn La Mattina, are now former employees of the Debtors, in a civil action commenced by Rakhi Sharma in the Superior Court of New Jersey, Law Division, Union County. In connection with such representations, Sills' fees were paid by the Debtors, consistent with their obligation to indemnify employees. None of Sills' fees, costs or expenses were paid by the individually named defendants. These representations terminated on or around April 26, 2022, and Sills no longer represents any of the individually named defendants.
>
> Sills previously represented Rey Grabato in connection with a tax matter unrelated to these Chapter 11 Cases, which representation ended in 2014.
>
> …
>
> Sills represents the Debtors in connection with an internal investigation into employee misconduct relating to certain transactions involving alleged participation by several employees, including but not limited to former employees Arthur Scuttaro, AJ Scuttaro and Nicholas Salzano.
>
> Sills represents Debtor National Realty Investment Advisors, LLC

---

[8] This matter is referred to herein as the "Sharma Action." On July 14, 2022, the U.S. Trustee filed the *Certification of Neidy Fuentes in Support of Objection of the United States Trustee to Debtors' Application for Retention of Professional to Retain Sills Cummis & Gross, P.C., as Attorney for the Debtors-in-Possession* [Docket No. 147] (the "**U.S. Trustee Certification**"). Attached as Exhibit C to the U.S. Trustee Certification is a copy of the *Answer to Amended Complaint* filed by Sills in the Sharma Action.

in connection with certain tax matters related to an investigation commenced by the United States Attorneys' Office in or around March 2021.[9] In connection with such engagement, Sills also represented Rey Grabato, Arthur Scutaro, and Nicholas Salzano, who are now former employees of the Debtors. This representation commenced on or around July 1, 2021 and was terminated with respect to the now former employees such that prior to the commencement of these cases Rey Grabato, Arthur Scutaro, and Nicholas Salzano were former clients of Sills.

Sills previously represented Debtor National Realty Investment Advisors, LLC in a civil action brought by Tammy Hileman in the Superior Court of New Jersey, Law Division, Union County.[10] In connection with this representation, Sills also represented Nicholas Salzano, a now former employee of the Debtors. Sills' fees were paid by the Debtors, consistent with their obligation to indemnify employees. This representation commenced on or around October 31, 2019 and was terminated on or around February 5, 2021.

(Teele Decl. ¶ 18 d.)

### B. Sills' Prepetition Withdrawal From Representing the Individuals

#### 1. The Sharma Action

On or about April 27, 2022, Sills obtained executed acknowledgements from each of the individual defendants, including Grabato and Salzano, consenting to the substitution of separate counsel in the Sharma Action.[11] Each of the executed acknowledgements affirmed the individual defendants' agreement to have Sills withdraw as counsel and for another attorney to substitute for the individual defendants.

On May 9, 2022, Sills executed a *Substitution of Counsel For Individual Defendants*

---

[9]  This matter is referred to herein as the "Tax Investigation."

[10]  This matter is referred to herein as the "Hileman Action." Copies of the: (i) *Answer, Separate Defenses, Counterclaims, Third Party Complaint and Jury Demand on Behalf of Defendants National Realty Investment Advisors, LLC, and Nicolas Salzano,* and (ii) *Consent Order Voluntary Dismissing Complaint and Counterclaims with Prejudice*, filed by Sills in the Hileman Action, are attached to the U.S. Trustee Certification as Exhibits A and B, respectively.

[11]  Attached hereto as **Exhibit D** are copies of the executed agreements acknowledging Sills' withdrawal as counsel for the individual defendants.

6

8971195

*Only*,[12] advising the court that Sills was withdrawing as attorney for the individual defendants but it would continue to represent NRIA in the Sharma Action.

### 2. The Tax Investigation

Sills did not serve as primary counsel for Grabato, Scutaro, or Salzano in the Tax Investigation. Instead, in June 2021, Sills was retained as special tax counsel to provide tax advice to Gerald Krovatin, Esq., who was previously engaged criminal counsel for Scutaro. Thereafter, in July 2021, Sills was retained as special tax counsel to provide tax advice to previously engaged criminal counsel Michael Critchley, Esq. (for Grabato) and Jeffrey Harris, Esq. (for Salzano).[13] On December 16, 2021, Sills was engaged to provide tax advice to previously engaged criminal counsel Joseph Hayden, Esq. (for NRIA).

On April 19, 2022, April 21, 2022, and May 3, 2022, respectively, Sills advised Harris (for Salzano), Krovatin (for Scutaro), and Critchley (for Grabato) that Sills could no longer represent Grabato, Salzano, and Scutaro in the Tax Investigation and was terminating the representations in accordance with the provisions of the applicable engagement letters. Grabato, Salzano, and Scutaro were, and upon information and belief, remain represented by criminal defense counsel identified above.

### 3. The Internal Investigation Into Potential Employee Misconduct

In or around late February 2022, Sills was advised by NRIA employees that certain misconduct may have been committed by Arthur and AJ Scutaro and Salzano. Sills recommended to NRIA that it investigate potential claims of employee misconduct. Critically, Sills determined that it could not commence a full investigation on behalf of NRIA until it reviewed and analyzed

---

[12] A copy of the *Substitution of Counsel For Individual Defendants Only* is attached to the U.S. Trustee Certification as <u>Exhibit D</u>.

[13] Attached hereto as **Exhibit E** is a copy of the relevant engagement letter.

8971195

the facts and circumstances surrounding Sills' engagement by Grabato, Salzano, and Arthur Scutaro, as well as other all other individual clients.

Before commencing the investigation on behalf of NRIA, Sills determined that its professional and ethical obligations required that each of the individual representations be completed and/or terminated in accordance with the applicable engagement letters. Sills then obtained acknowledgements from each individual defendant in the Sharma Action agreeing that Sills could withdraw from its representation. Sills also advised attorneys Harris and Krovatin in April 2022 and attorney Critchley in early May 2022 that Sills could no longer represent Scutaro, Salzano or Grabato, as described above. Only after Sills formally terminated the representations with Scutaro and Salzano in accordance with the terms of the relevant engagement letters and cleared conflicts did it continue with the internal investigation into potential employee misconduct on NRIA's behalf.

## REPLY

### A. Applicable Law

"An analysis of the issue of employment of bankruptcy counsel must begin with the premise that debtors should be free to select counsel of their choice." *In re 7677 E. Berry Ave. Assocs., L.P.*, 419 B.R. 833, 840 (Bankr. D. Colo. 2009); *see also* 3 COLLIER ON BANKRUPTCY ¶ 327.04[1] (16th ed. 2022) (debtors "may select their own attorneys, accountants and other professional persons without interference from creditors"). In fact "[o]nly in the rarest cases" will a debtor be denied the ability to select its counsel "because of the highly confidential relationship between the special counsel-attorney and the trustee-client." *Smith v. Geltzer*, 507 F.3d 64, 71 (2d Cir. 2007) (citations and internal quotations omitted).

The U.S. Trustee bears the "substantial" burden to support its contentions that Sills'

8

retention would violate section 327(a) of the Bankruptcy Code by presenting evidence of a disqualifying conflict. *Century Indem. Co. v. BSA (In re BSA)*, 630 B.R. 122, 130 (D. Del. 2021) ("The burden of showing that Sidley's retention violated section 327 rested with Century. Century's burden was substantial. Disqualification is mandated only where there is 'an actual conflict' with the interests of the debtor's estate, and a 'court may not disqualify an attorney on the appearance of conflict alone'") (citations omitted); *In re Art Van Furniture, LLC*, 617 B.R. 509, 515 (Bankr. D. Del. 2020) ("a party objecting to an application . . . on the basis of a conflict of interest bears the burden of establishing the conflict") (citations omitted).

**B. Sills Is Disinterested And Does Not Hold or Represent Any Interest Adverse To The Debtors' Estates**

The U.S. Trustee's position that Sills' Application should be denied because Sills has an actual or potential conflict due to its former representation of Grabato, Salzano, and Scutaro should be rejected by the Court.

**1. Sills Does Not Currently Represent Interests in Competition With The Debtors Or Have A Potential Conflict That Would Make It Adverse to the Debtors' Estates**

In the Third Circuit, "a conflict is actual, and hence *per se* disqualifying, if it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest." *Staiano v. Pillowtex, Inc. (In re Pillowtex, Inc.)*, 304 F.3d 246, 251-52 (3d Cir. 2002) (citation omitted). Thus, the U.S. Trustee must establish that Sills has an "impermissibly conflicting interest" and that it will likely favor such conflicting interest over the Debtors' interests.

In determining whether a professional meets the standard for retention under section 327(a) of the Bankruptcy Code, this section uses present tense language, stating that the debtor may employ persons "that do not *hold* or *represent* an adverse interest . . . and that *are* disinterested,"

9

defined in 101(14) as one who "does not *have* an interest materially adverse" to the estate. 11 U.S.C. § 327(a) (emphasis added); 11 U.S.C. § 101(14) (emphasis added). Consistent with the United States Supreme Court's instruction that "Congress' use of a verb tense is significant in construing statutes," *BSA*, 630 B.R. at 131 (citing *U.S. v. Wilson*, 503 U.S. 329 (1992)), "courts have read the present-tense language [in section 327(a)] to require a present conflict inhibiting vigorous representation of the estate. *Id.* (citing *In re Ampal-Am. Israel Corp.*, 691 F. App'x 12, 15 (2d Cir. 2017) and *In re Muma Servs., Inc.*, 286 B.R. 583, 591 (Bankr. D. Del. 2002)).

Here, the U.S. Trustee has failed to carry its burden of establishing that Sills has an actual conflict of interest. As detailed above, Sills served as counsel to Grabato, Salzano, and Scutaro in three matters going back to October 2019 – the Hileman Action, the Sharma Action, and the Tax Investigation. As described above, (i) the Hileman Action ended on or around February 5, 2021, (ii) Sills withdrew as counsel for the individual defendants in the Sharma Action on May 9, 2022, and (iii) on April 19, 2022, April 21, 2022, and May 3, 2022, respectively, Sills advised attorneys Harris, Krovatin, and Critchley that Sills could no longer represent Salzano, Scutaro, or Grabato in the Tax Investigation. Indeed, the U.S. Trustee's own Objection recognizes that Sills no longer represents these individuals. *See* Objection ¶ 76 (describing prior engagements as "former relationship[s] with Grabato and Salzano,"); *see id.* ¶¶ 79-81, 85 (detailing the termination of the various matters involving Grabato, Salzano, and Scutaro). Thus, Sills does not concurrently represent both the interests of the Debtors and those of Grabato, Salzano, and Scutaro individually. As such, Sills does not have an actual conflict that would make it adverse to the Debtors' estates.

Under Third Circuit law, "[s]ection 327(a) presents a *per se* bar to the appointment of a law firm with an actual conflict, [but] gives the [Bankruptcy C]ourt wide discretion in deciding whether to approve the appointment of a law firm with a potential conflict." *In re Marvel Entm't*

10

*Group, Inc.*, 140 F.3d 463, 477 (3d Cir. 1998). A potential conflict, while by definition hypothetical, nonetheless requires more than a mere apparent conflict, which is a prohibited basis for disqualification. *Id.* at 476 ("the district court may not disqualify an attorney on the appearance of conflict alone"). As a result, more than a mere theoretical possibility must exist before a court can consider whether to disqualify the debtor's chosen counsel based on a potential conflict. In stating the rule, the Third Circuit has rejected as "faulty reasoning" the notion that a court has discretion to disqualify "any person who in the slightest degree might have some interest or relationship that would even faintly color [counsel's] independence and impartial attitude." *Id.* at 477 (internal quotations omitted). "[H]orrible imaginings" of "every conceivable conflict" may not "carry the day." *Id.*

Further, even if the Court finds a potential conflict, it should not disqualify "where the possibility that the potential conflict will become actual is remote." *In re Jade Mgmt. Servs.*, 386 F. App'x 145, 149 (3d Cir. 2010) (quotation omitted). Thus, the Court has "wide discretion" to approve the retention of counsel even with a potential conflict. *Marvel*, 140 F.3d at 477.

The U.S. Trustee also fails to carry its burden that Sills' prior representations of Grabato, Salzano, and Scutaro results in Sills' holding or representing any interests potentially adverse to the Debtors' estates. As detailed above, there is no actual conflict because Sills terminated its representation of Grabato, Salzano, and Scutaro, nor is it likely that Sills will favor the interests of these individuals (or any other party) in this case over the Debtors'. The U.S. Trustee's speculation that Sills is "not in a position to properly evaluate the Debtor's actions against Grabato, Salzano, and Scutaro, given its former representation of both NRIA and the individuals while the actions were occurring," is not a sufficient basis to deny the Debtors their counsel of choice.

### 2. Sills Does Not Have A Predisposition or Bias That Would Render It Unable to Represent the Debtors

The U.S. Trustee's suggestion that Sills is predisposed to act in the interests of its former clients Grabato, Salzano, and Scutaro, and not in the interests of the Debtors, is baseless. In fact, after terminating its relationship with Scutaro and Salzano under the terms of the applicable engagement letters, Sills investigated the reported employee misconduct, which included an investigation of such individuals, and other employees and associates. Under the direction of the Debtors' Independent Manager, the investigation led to the termination of Scutaro and was the basis for the adversary proceeding commenced by the Debtors' special litigation counsel, Riker Danzig LLP, seeking recovery of $420,000 in fraudulent transfers made to Grabato, Salzano, and Salzano's wife. Other wrongdoing revealed in the investigation will be used in future adversary proceedings to be commenced by Sills or Riker Danzig LLP. Sills has acted, and will continue to act, in the Debtors' interest and there is simply no evidence that Sills would prefer Grabato, Salzano, and Scutaro over the Debtors.

### 3. Reasonable Alternatives To Disqualification Exist Because The Debtors Have Retained Special Litigation and Special Regulatory and Investigation Counsel

Even if some adverse interest were to arise between Sills and the Debtors in the future, the Debtors have retained Riker Danzig LLP as proposed special litigation counsel and Pashman Stein Walder Hayden, P.C. as proposed special regulatory and investigation counsel to handle any contested matters, adversary proceedings, other litigation, or other matter that presents a conflict of interest such that Sills cannot represent the Debtors based on its prior representation of certain individuals previously associated with the Debtors. The retention and use of conflicts counsel is an accepted approach to dealing with any hypothetical future conflict that may arise in the future. *See In re Wash. Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("in most cases the use of

conflicts counsel solves the problem."); *see also BSA*, 630 B.R. at 132 (finding that bankruptcy court's acceptance of conflicts counsel as "consistent with case law") (citing *In re Relativity Media, LLC*, 2018 Bankr. LEXIS 2037, 2018 WL 3769967, at *5-6 (Bankr. S.D.N.Y. July 6, 2018)). Such an option, rather than disqualifying the Debtors' selected counsel of choice, is an appropriate mechanism for dealing with hypothetical conflicts that may arise in the future. *See, e.g.*, *In re Enron Corp.*, No. 01-16034 (ALG), 2002 Bankr. LEXIS 1720, at *34 (Bankr. S.D.N.Y. May 23, 2002) ("Conflicts counsel, limited engagement agreements, and ethical walls have been acceptable procedures to address conflict of interests issues.").

### C. Sills' Representation of the Debtors Would Not Be a Violation of The New Jersey Rules of Professional Conduct

The U.S. Trustee's position that Sills "has a professional conflict if it represents the Debtors' adverse interest" is an unsupported and unsubstantiated dig at Sills. Under RPC 1.9(a) of the New Jersey Rules of Professional Conduct, "a lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client *unless the former client gives informed consent confirmed in writing*." RPC 1.9(a) (emphasis added). The elements of RPC 1.9(a) involve a "fact-sensitive analysis," *City of Atl. City v. Trupos*, 201 N.J. 447, 467 (2010). Accordingly, in assessing the New Jersey Rules of Professional Conduct, courts undertake a "painstaking analysis of the facts." *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 205 (1988) (citation omitted).

In *Trupos*, the New Jersey Supreme Court clarified the test for the element of "substantially related": under "RPC 1.9, matters are deemed to be 'substantially related' if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client,

13

or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation." *Trupos*, 201 N.J. at 451-52. "[T]he burden of persuasion on all elements under RPC 1.9(a) remains with the moving party, as it 'bears the burden of proving that disqualification is justified.'" *Id.* at 463 (citation omitted). The movant is required to meet its "burden of persuasion" by "proving that, in fact, the current and former representations are 'substantially related.'" *Id.* at 467.

Sills complied with RPC 1.9(a) in all respects. With respect to the Hileman Action, the representation of Salzano terminated on or around February 5, 2021 by settlement agreement. Thus, there is no relationship between the Hileman Action and the chapter 11 cases. After careful consideration, Sills also determined that the facts relevant to the Sharma Action were not relevant and material to the Debtors' retention of Sills as bankruptcy counsel in these chapter 11 cases. Finally, the engagement letter between NRIA with respect to the Tax Investigation contains written future waivers of potential conflicts of interest from NRIA, Grabato, Salzano, and Scutaro. The engagement letter contains a separate "Waiver of Potential Conflicts of Interest" wherein each party agreed, "after consultation with their own counsel," to "waive any [] potential conflict."

As a result, Sills complied with RPC 1.9(a) at all times and the Court should reject the suggestion made by the U.S. Trustee that Sills' representation of the Debtors may violate its professional conduct obligations to former clients.

### D. Sills Has Agreed to Waive its Claim to Escrowed Funds

Lastly, the U.S. Trustee argues that "Sills's Application should be denied given that it is a creditor of the Debtors and, therefore, not disinterested as required under section 327(a). Objection ¶ 71.

Sills does not believe that it is a creditor of the Debtors' estates because the Escrow

14

8971195

Agreement provides that "[u]pon [the Debtor's] funding of the Escrow Amount, any and all Claims by Sills for fees and expenses under the Initial Engagement Letter, including any and all claims for the Excess Receivable, shall be deemed fully, finally, and irrevocably satisfied as to the Parties . . . and all such claims for the Excess Receivable shall attach solely to the Escrow Amount." *See* Escrow Agreement ¶ 2. In other words, as of the Petition Date, Sills had no claim against the Debtors whatsoever. Rather, Sills only had a claim against the *funds* held in escrow.

Nevertheless, as a result of recent negotiations with counsel to the official committee of unsecured creditors, Sills has voluntarily agreed to waive its claim for the Excess Receivable (as such term is defined in the Escrow Agreement).

## RESERVATION OF RIGHTS

The Debtors reserve their right to supplement or amend this Reply and to present evidence and raise additional arguments at any related hearing.

## CONCLUSION

**WHEREFORE**, this Court should overrule the Objection and grant the Application.

Dated: July 15, 2022                              **SILLS CUMMIS & GROSS P.C.**

/s/ S. Jason Teele
S. Jason Teele, Esq.
Daniel Harris, Esq.
Gregory A. Kopacz Esq.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)
(973) 643-6500 (Facsimile)
steele@sillscummis.com
dharris@sillscummis.com
gkopacz@sillscummis.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*

15

8971195