**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.* [1]<br><br>           Debtors. | Chapter 11<br><br>Case No. 22-14539 (JKS)<br><br>(Jointly Administered) |
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC,<br><br>           Plaintiff,<br><br>v.<br><br>THOMAS "NICK" SALZANO, ARTHUR RAYMOND SCUTARO, and ARTHUR RAYMOND SCUTARO, JR.,<br><br>           Defendants. | Adv. Pro. No. _____<br><br><br><br>**COMPLAINT** |

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

Plaintiff, National Realty Investment Advisors, LLC ("NRIA" or the "Plaintiff"), one of the Debtors herein (together with its debtor affiliates, the "Debtors"), by and through its undersigned proposed special litigation counsel, by way of complaint (the "Complaint") against defendants (i) Thomas "Nick" Salzano ("Salzano"), (ii) Arthur Raymond Scutaro, and (iii) Arthur Raymond Scutaro, Jr. ((i) through (iii) collectively, the "Defendants"), avers as follows:

## INTRODUCTION[2]

1.    The Defendants, NRIA's former employees, illegally transferred, converted, and misappropriated from NRIA cash sums totaling $1,030,000.00 between February and November 2020.  At all times, Defendants were aware that accepting cash from individual investors violated NRIA's policy prohibiting its personnel from accepting cash for any investment in NRIA Partners Portfolio Fund I, LLC (the "Fund").  Nevertheless, they accepted cash directly from at least three investors and took it for their own benefit.  The transfers must be avoided and the value thereof recovered for the benefit of the Debtors' estates.

2.    The transfer of the funds to the Defendants was recently discovered by Brian J. Casey, the Debtors' Independent Manager (the "Independent Manager"), as part of his continuing effort to preserve the Debtors' assets and safeguard investors' funds.

---

[2]    The allegations in this Complaint are based upon the documents and information available to Plaintiff at the time of its filing, and are subject to clarification, amendment, revision, or other modification in light of new documents and information, obtained through subsequent discovery in this action or the chapter 11 cases, or otherwise.  No statement in this Complaint is intended to waive or impair any right of the Plaintiff or the Debtors' estates with respect to any of the Defendants or any third parties, and shall not have any estoppel effect with respect to any subsequent action brought against the Defendants or third parties.  All rights of the Plaintiff and the Debtors' estates with respect to the Defendants and third parties are expressly reserved.

3.      The Independent Manager is still in the process of conducting its investigation against the Defendants and reserves the right to amend this Complaint as additional facts and information come to light.

## JURISDICTION

4.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E), (H) and (O) and Federal Rules of Bankruptcy Procedure 7001 *et seq.*, and the Plaintiff consents to the entry of final orders or judgments by this Court.

5.      Venue of this action is proper in the Bankruptcy Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory and legal predicates for the relief requested herein are sections 544, 548, and 550 of the Bankruptcy Code, Bankruptcy Rules 6009 and 7001 *et seq.*, and D.N.J. LBR 7003-1.

## PARTIES

7.      Plaintiff National Realty Investors, LLC is a Delaware Limited Liability Company with its principal place of business at 1 Harmon Plaza, Secaucus, NJ 07094.

8.      On June 7, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of New Jersey.

9.      Upon information and belief, defendant Thomas "Nick" Salzano ("Salzano") is an individual with a residence address at 82 Osprey Court, Secaucus, NJ 07094.  He acted as a consultant for NRIA, working as a portfolio manager and advisor to NRIA until his termination in or about 2021.

10.     Defendant Arthur Raymond Scutaro ("Art Scutaro") is an individual residing at 102 Sadler Road, Bloomfield, NJ 07003, and was employed by NRIA until NRIA terminated Art Scutaro's employment on or about May 25, 2022.  Upon information and belief, Art Scutaro is AJ Scutaro's father.

11.     Defendant Arthur Raymond Scutaro, Jr. ("AJ Scutaro") is an individual residing at 30 Blenheim Road, Manalapan, NJ 07726, and was employed by NRIA until NRIA terminated AJ Scutaro's employment on or about May 25, 2022.  Upon information and belief, AJ Scutaro is Art Scutaro's son.

12.     On or about March 4, 2021, Salzano was arrested and charged with wire fraud and identity theft in violation of federal criminal laws.

13.     On or about June 7, 2021, the United States Securities and Exchange Commission charged Salzano with fraud in violation of federal securities laws.

## FACTS

14.     NRIA maintained a policy prohibiting its personnel from accepting paper currency (referred to herein as "cash") for any investment in the Fund.  Each of the Defendants was aware of this policy at all relevant times.

### A.  Art Scutaro Accepts and Diverts a Cash Investment from Investor A

15.     In or about February 2020, Art Scutaro accepted approximately $100,000.00 in cash from two married individuals who own a limited liability company (the individuals and the limited liability company are collectively referred to herein as "Investor A").  Investor A also provided Art with a check for $100,000.00 at approximately the same time as providing the cash.

16.     Art Scutaro accepted the cash from Investor A in knowing and intentional violation of NRIA's policy prohibiting its personnel from accepting cash for any investment in the Fund.

17.     In connection with accepting the $100,000.00 in cash and the $100,000.00 by check, Art Scutaro prepared and had executed, or instructed one or more other employees of NRIA to prepare and have executed, an "Investment Bonus & Sign Up Agreement" for Investor A (the "Investor A Agreement").  The Investor A Agreement described a transaction whereby Investor A provided an investment of $100,000.00 and was given a discount of $100,000.00 on the purchase of four $50,000.00 units of the Fund's Preferred Series A-1 Non-Voting Membership Interests. Investor A thus received an interest in the Fund worth $200,000.00.

18.     The Investor A Agreement did not mention the $100,000.00 in cash that Investor A provided to Art Scutaro.

19.     Art Scutaro did not complete any internal paperwork at NRIA documenting his receipt of $100,000.00 in cash from Investor A.

20.     Art Scutaro did not complete or file any report to any governmental agency concerning his receipt of $100,000.00 in cash from Investor A.

21.     The $100,000.00 in cash from Investor A was not deposited in any bank account belonging to NRIA or the Fund.

22.     Upon information and belief, including but not limited to Art Scutaro's receipt of the cash, failure to report the receipt of the cash, and failure to turn the cash over to NRIA or the Fund, Art Scutaro took the cash for his own benefit.

**B.  Salzano and Art Scutaro Accept and Divert a Cash Investment from Investor B**

23.     In or about April 2020, Art Scutaro accepted approximately $330,000.00 in cash from two married individuals (the individuals are collectively referred to herein as "Investor B"). Investor B also provided Art Scutaro with three checks totaling $770,000.00 at approximately the same time as providing the cash.

5

24.    Art Scutaro accepted the cash from Investor B in knowing and intentional violation of NRIA's policy prohibiting its personnel from accepting cash for any investment in the Fund.

25.    In connection with accepting the $330,000.00 in cash and the $770,000.00 by check, Art Scutaro prepared and had executed, or instructed one or more other employees of NRIA to prepare and have executed, a "Discount Investment & Sign Up Agreement" for Investor B (the "Investor B Agreement").  The Investor B Agreement described a transaction whereby Investor B provided an investment of $770,000.00 and was given a discount on the purchase of twenty $50,000.00 units of the Fund's Preferred Series A-1 Non-Voting Membership Interests. Investor B thus received an interest in the Fund worth $1,000,000.00.

26.    The Investor B Agreement did not mention the $330,000.00 in cash that Investor B provided to Art Scutaro.

27.    Soon after receiving the cash from Investor B, Art Scutaro left the cash in Salzano's desk drawer.  Upon information and belief, including but not limited to Salzano's access to his desk drawer and his history of misconduct, Salzano took the cash from his desk drawer.

28.    Neither Art Scutaro nor Salzano completed any internal paperwork at NRIA documenting the receipt of $330,000.00 in cash from Investor B.

29.    Neither Art Scutaro nor Salzano completed or filed any report to any governmental agency concerning the receipt of $330,000.00 in cash from Investor B.

30.    The $330,000.00 in cash from Investor B was not deposited in any bank account belonging to NRIA or the Fund.

31.    Upon information and belief, including but not limited to Art Scutaro's and Salzano's receipt of the cash, failure to report the receipt of the cash, and failure to turn the cash over to NRIA or the Fund, Art Scutaro and/or Salzano took the cash for their own benefit.

**C.  Salzano and AJ Scutaro Accept and Divert a Cash Investment from Investor C**

32.    In or about August to November 2020, an individual (referred to herein as "Investor C") contacted AJ Scutaro multiple times to request that Investor C be permitted to make an investment in cash.  AJ Scutaro initially denied Investor C's request.

33.    AJ Scutaro then contacted Salzano about Investor C's request.  AJ Scutaro and Salzano agreed between themselves to accept cash from Investor C.  AJ Scutaro then contacted Investor C to indicate that AJ Scutaro would accept Investor C's cash investment.

34.    In or about August to November 2020, AJ Scutaro accepted approximately $600,000.00 in cash from Investor C.  Investor C also provided AJ with a check for $150,000.00 at approximately the same time as providing the cash.  With the agreement of Salzano, AJ Scutaro instructed Investor C to date the check as of mid-January 2021.

35.    AJ Scutaro accepted the cash from Investor C in knowing and intentional violation of NRIA's policy prohibiting its personnel from accepting cash for any investment in the Fund.

36.    Soon after receiving the cash from Investor C, AJ Scutaro gave the cash to Salzano.

37.    In connection with accepting the $600,000.00 in cash and the $150,000.00 by check, AJ Scutaro prepared and had executed, or instructed one or more other employees of NRIA to prepare and have executed, a "Discount Investment & Sign Up Agreement" (the "Investor C Agreement").  The Investor C Agreement described a transaction whereby Investor C provided an investment of $150,000.00 and was given a $600,000.00 discount on the purchase of 0.75 $1,000,000.00 units of the Fund's Preferred Series A-1 Non-Voting Membership Interests.  The Investor C Agreement described the discount as being for "purchase of a sales lead list of personal referrals the Investor will provide [the Fund] of other potential investor purchasing customers investor will personally refer to [the Fund] – with no guarantee said leads will in fact invest with

[the Fund]."  Attached to the Investor C Agreement was a list of approximately twenty-five names with telephone numbers under the heading "Referral to NRIA."  Investor C thus received an interest in the Fund worth $750,000.00.

38.    The Investor C Agreement did not mention the $600,000.00 in cash that Investor C provided to AJ Scutaro.

39.    Neither AJ Scutaro nor Salzano completed any internal paperwork at NRIA documenting the receipt of $600,000.00 in cash from Investor C.

40.    Neither AJ Scutaro nor Salzano completed or filed any report to any governmental agency concerning the receipt of $600,000.00 in cash from Investor C.

41.    The $600,000.00 in cash from Investor C was not deposited in any bank account belonging to NRIA or the Fund.

42.    Upon information and belief, including but not limited to AJ Scutaro's and Salzano's receipt of the cash, failure to report the receipt of the cash, and failure to turn the cash over to NRIA or the Fund, AJ Scutaro and/or Salzano took the cash for their own benefit.

**D.  <u>Art Scutaro and AJ Scutaro Admit Their Misconduct</u>**

43.    In late 2021, AJ Scutaro first disclosed the cash transactions described above to a senior NRIA executive.

44.    At the end of 2021, AJ Scutaro admitted conferring with Salzano, receiving $600,000.00 in cash from Investor C, and giving the cash to Salzano.

45.    In 2022, Art Scutaro admitted receiving $100,000.00 in cash from Investor A.

46.    In 2022, Art Scutaro admitted receiving $330,000.00 in cash from Investor B and leaving the cash in Salzano's desk drawer.

47.     In May 2022, Art Scutaro, through counsel refused to be interviewed as part of an investigation into the cash transactions described above.

48.     In May 2022, AJ Scutaro, through counsel, refused to be interviewed as part of an investigation into the cash transactions described above.

49.     On or about May 25, 2022, NRIA terminated the employment of Art Scutaro and AJ Scutaro for cause, including willful misconduct related to the cash transactions described above, the failure to immediately report those transactions and the refusal to cooperate with NRIA's internal investigation into these cash transactions.

## COUNT I
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 548(A)(I)(A) AND 550(A) OF THE BANKRUPTCY CODE
### *(Against All Defendants)*

50.     The Plaintiff repeats and realleges all prior applicable allegations as if fully set forth herein.

51.     In or about February 2020, Art Scutaro accepted approximately $100,000.00 from Investor A in violation of NRIA's policy prohibiting its personnel from accepting paper currency. The $100,000.00 in cash from Investor A was not deposited in any bank account belonging to NRIA or the Fund.  In 2022, Art Scutaro admitted receiving $100,000.00 in cash from Investor A. Upon information and belief, Art Scutaro took the cash for his own benefit.

52.     In or about April 2020, Art Scutaro accepted approximately $330,000.00 in cash from Investor B in violation of NRIA's policy prohibiting its personnel from accepting paper currency.  The $330,000.00 in cash from Investor B was not deposited in any bank account belonging to NRIA or the Fund.  In 2022, Art Scutaro admitted receiving $330,000.00 in cash

from Investor B and leaving the cash in Salzano's desk drawer.  Upon information and belief, Art

Scutaro and/or Salzano took the cash for their own benefit.

      53.    In or about August to November 2020, AJ Scutaro accepted approximately

$600,000.00 in cash from Investor C.  The $600,000.00 in cash from Investor C was not deposited

in any bank account belonging to NRIA or the Fund.  At the end of 2021, AJ Scutaro admitted

conferring with Salzano, receiving $600,000.00 in cash from Investor C, and giving the cash to

Salzano.  Upon information and belief, AJ Scutaro and/or Salzano took the cash for their own

benefit.

      54.    The transfers to Defendants were made with the actual intent to hinder, delay, or

defraud NRIA and creditors of NRIA.

      55.    Based upon the foregoing, Plaintiff is entitled to avoid and recover the transferred

cash (*i.e.,* $1,030,000.00) from Defendants under 11 U.S.C. §§ 548(a)(1)(A) and 550(a), together

with an award of pre- and post-judgment interest thereon from the date of demand to the date of

payment and the costs of this action.

## <u>COUNT II</u>
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTIONS 548(A)(I)(B) AND 550(A) OF THE BANKRUPTCY CODE
*(Against All Defendants)*

      56.    The Plaintiff repeats and realleges all prior applicable allegations as if fully set forth

herein.

      57.    The transfers alleged herein were made within two (2) years of the Petition Date.

      58.    The transfers alleged herein constitute transfers of interests of NRIA's property.

      59.    The Defendants were the initial transferees and/or subsequent transferees of the

transferred cash and/or were the persons for whose benefit the transfers were made.

60.    NRIA received less than a reasonably equivalent value in exchange for the transferred cash.

61.    On the date of such transfers, NRIA (i) was insolvent, or became insolvent as a result of such transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with NRIA constituted unreasonably small capital; or (iii) intended to incur, or believed that it would incur, debts that would be beyond NRIA's ability to pay as such debts matured.

62.    Based upon the foregoing, Plaintiff is entitled to recover the transferred cash (i.e., $1,030,000.00) from Defendants under 11 U.S.C. § 550(a), together with an award of pre- and post-judgment interest thereon from the date of demand to the date of payment and the costs of this action.

### COUNT III
### AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 544(b)(1) OF THE BANKRUPTCY CODE AND THE NEW JERSEY UNIFORM FRAUDULENT TRANSFER ACT (N.J. Rev. Stat. §§ 25:2-25(a) & 25:2-29(1))
### *(Against All Defendants)*

63.    Plaintiff repeats and realleges all prior applicable allegations as if fully set forth herein.

64.    The transfers of the cash were made within four years of the Petition Date and constitute transfers of the interests of NRIA's property.

65.    In or about February 2020, Art Scutaro accepted approximately $100,000.00 from Investor A in violation of NRIA's policy prohibiting its personnel from accepting paper currency. The $100,000.00 in cash from Investor A was not deposited in any bank account belonging to

NRIA or the Fund.  In 2022, Art Scutaro admitted receiving $100,000.00 in cash from Investor A.

Upon information and belief, Art Scutaro took the cash for his own benefit.

66.     In or about April 2020, Art Scutaro accepted approximately $330,000.00 in cash

from Investor B in violation of NRIA's policy prohibiting its personnel from accepting paper

currency.  The $330,000.00 in cash from Investor B was not deposited in any bank account

belonging to NRIA or the Fund.  In 2022, Art Scutaro admitted receiving $330,000.00 in cash

from Investor B and leaving the cash in Salzano's desk drawer.  Upon information and belief, Art

Scutaro and/or Salzano took the cash for their own benefit.

67.     In or about August to November 2020, AJ Scutaro accepted approximately

$600,000.00 in cash from Investor C.  The $600,000.00 in cash from Investor C was not deposited

in any bank account belonging to NRIA or the Fund.  At the end of 2021, AJ Scutaro admitted

conferring with Salzano, receiving $600,000.00 in cash from Investor C, and giving the cash to

Salzano.  Upon information and belief, AJ Scutaro and/or Salzano took the cash for their own

benefit.

68.     The transfers were made with the actual intent to hinder, delay or defraud any

creditor of the Debtors.

69.     Based upon the foregoing, Plaintiff is entitled to recover the transferred cash from

Defendants under 11 U.S.C. §§ 544(b) and 550(a), and New Jersey Revised Statutes § 25:2-25(a),

together with an award of pre- and post-judgment interest thereon from the date of demand to the

date of payment and the costs of this action.

## <u>COUNT IV</u>
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTIONS 544(b)(1) AND 550(A) OF THE BANKRUPTCY CODE AND THE NEW JERSEY UNIFORM FRAUDULENT TRANSFER ACT (N.J. Rev. Stat. §§ 25:2-25(b) & 25:2-29(1))
### *(Against All Defendants)*

70.     The Plaintiff repeats and realleges all prior applicable allegations as if fully set forth herein.

71.     The transfers at issue were made within four (4) years of the Petition Date.

72.      The transfers at issue constitute transfers of the interests of NRIA's property.

73.     The Defendants were the initial transferees and/or subsequent transferees of the transferred cash and/or were the persons for whose benefit the transfers were made.

74.     NRIA received less than reasonably equivalent value in exchange for the transferred cash.

75.     At the time of the transfers at issue, NRIA (i) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or (ii) intended to incur, or believed or reasonably believed that it would incur, debts beyond its ability to pay as they became due.

76.     Based upon the foregoing, the Plaintiff is entitled to avoid and recover the transferred cash from the Defendants under 11 U.S.C. §§ 544(b) and 550(a), and New Jersey Revised Statutes § 25:2-25(b), together with an award of pre- and post-judgment interest thereon from the date of demand to the date of payment and the costs of this action.

### COUNT V
### TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO
### SECTION 542 OF THE BANKRUPTCY CODE
### (*Against All Defendants*)

69.    The Plaintiff repeats and realleges all prior applicable allegations as if fully set forth herein.

70.    The cash that Defendants accepted from Investors A, B, and C was the property of NRIA and is now the property of the Debtor's estate.

71.    The cash that Defendants accepted from Investors A, B and C is property that the Debtor may use pursuant to Section 363 of the Bankruptcy Code.

72.    Based upon the foregoing, the Plaintiff is entitled to turnover of the cash that Defendants accepted from Investors A, B and C under 11 U.S.C. § 542, together with an award of pre- and post-judgment interest thereon from the date of demand to the date of payment and the costs of this action.

### COUNT VI
### CONVERSION
### (*Against All Defendants*)

73.    Plaintiff repeats and realleges all prior applicable allegations as if fully set forth herein.

74.    The cash that Defendants accepted from Investors A, B, and C was the property of NRIA.

75.    NRIA maintained the right to the immediate possession of the cash that Defendants accepted from Investors A, B, and C, at all relevant times.

76.    Defendants wrongfully interfered with NRIA's right to possession of the cash that Defendants accepted from Investors A, B, and C.

14

77.    Defendants' interference with NRIA's right to possession of the cash that Defendants accepted from Investors A, B, and C proximately caused damage to the Debtors and their creditors.

78.    Based on the foregoing, Plaintiff demands judgment against Defendants for compensatory damages, restitution, and disgorgement, together with an award of pre- and post-judgment interest thereon from the date of demand to the date of payment and the costs of this action.  Plaintiff reserves the right to seek punitive damages at the appropriate time.

## COUNT VII
## BREACH OF FIDUCIARY DUTY
### (*Against All Defendants*)

79.    Plaintiff repeats and realleges all prior applicable allegations as if fully set forth herein.

80.    At the time they accepted the cash from Investors A, B, and C, Defendants were employees and agents of NRIA.

81.    At the time they accepted the cash from Investors A, B, and C, Defendants bore a fiduciary duty to NRIA.

82.    Defendants breached their fiduciary duty to NRIA by their conduct as aforesaid.

83.    Based on the foregoing, Plaintiff demands judgment against Defendants for compensatory damages, restitution, and disgorgement, together with an award of pre- and post-judgment interest thereon from the date of demand to the date of payment and the costs of this action.  Plaintiff reserves the right to seek punitive damages at the appropriate time.

**COUNT VIII**
**BREACH OF DUTY OF LOYALTY**
(*Against All Defendants*)

84.     Plaintiff repeats and realleges all prior applicable allegations as if fully set forth herein.

85.     At the time they accepted the cash from Investors A, B, and C, Defendants were employees and agents of NRIA.

86.     At the time they accepted the cash from Investors A, B, and C, Defendants bore a duty of loyalty to NRIA.

87.     Defendants breached their duty of loyalty to NRIA by their conduct as aforesaid.

88.     Based on the foregoing, Plaintiff demands judgment against Defendants for compensatory damages, restitution, and disgorgement, together with an award of pre- and post-judgment interest thereon from the date of demand to the date of payment and the costs of this action.  Plaintiff reserves the right to seek punitive damages at the appropriate time.

**COUNT IX**
**FRAUDULENT MISREPRESENTATION AND CONCEALMENT**
(*Against All Defendants*)

89.     Plaintiff repeats and realleges all prior applicable allegations as if fully set forth herein.

90.     Defendants had a duty to disclose that they had accepted the cash from Investors A, B, and C.

91.     Defendants failed to disclose to NRIA that they had accepted the cash from Investors A, B, and C.

92.     Defendants affirmatively misrepresented to NRIA that the sole proceeds received from Investors A, B, and C were checks as aforesaid.

16

93.    The facts misrepresented and concealed by Defendants were material to NRIA.

94.    NRIA reasonably relied upon the misrepresentations made by the Defendants.

95.    NRIA could not reasonably have obtained from another source the information concealed by Defendants.

96.    Defendants' misrepresentations and concealments as aforesaid were intentional, and were made with the purpose of diverting from NRIA value and consideration it otherwise would have received from Investors A, B, and C in connection with their transactions.

97.    Based on the foregoing, Plaintiff demands judgment against Defendants for compensatory damages, restitution, and disgorgement, together with an award of pre- and post-judgment interest thereon from the date of demand to the date of payment and the costs of this action.  Plaintiff reserves the right to seek punitive damages at the appropriate time.

**COUNT X**
**VIOLATION OF N.J.S.A. 2C:41-1 *et seq.* ("RICO")**
**(*Against All Defendants*)**

98.    Plaintiff repeats and realleges all prior applicable allegations as if fully set forth herein.

99.    N.J.S.A. 2C:41-2 provides in pertinent part as follows:

> a. It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ...to use or invest, directly or indirectly, any part of the income, or the proceeds of the income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in or the activities of which affect trade or commerce . . .

> b. It shall be unlawful for any person through a pattern of racketeering activity ...to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in or activities of which affect trade or commerce.
> c. It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or

commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity . . .

d. It shall be unlawful for any person to conspire as defined by N.J.S.A. 2C:5-2 to violate any of the provisions of this section.

100.    N.J.S.A. 2C:41-1(a) defines "racketeering activity" to include "theft and all crimes defined in chapter 20 of Title 2C of the New Jersey Statutes," "forgery and fraudulent practices and all crimes defined in chapter 21 of Title 2C," and "any conduct defined as "racketeering activity" under Title 18, U.S.C.S.1961(1)(A), (B) and (D)."    N.J.S.A. 2C:41-1(a)(1)(n, o), 2C:41-1(a)(2).

101.    N.J.S.A. 2C:41-1(d) defines "pattern of racketeering activity" to require "[e]ngaging in at least two incidents of racketeering conduct" within ten (10) years, and "a showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents."    N.J.S.A. 2C:41-1(d)(1, 2).

102.    N.J.S.A. 2C:41-1(b) defines a "person" to include "any individual or entity or enterprise as defined herein holding or capable of holding a legal or beneficial interest in property."

103.    Defendants are, and were at all times relevant hereto, "Persons" within the meaning of N.J.S.A. 2C:41-1(b).

**The Enterprise**

104.    N.J.S.A. 2C:41-1(c) defines "enterprise" to include "any individual, sole proprietorship, partnership, corporation, business or charitable trust, association, or other legal entity, any union or group of individuals associated in fact although not a legal entity, and it includes illicit as well as licit enterprises and governmental as well as other entities."

18

105.    The Defendants have been associated in fact and have operated with the common purpose of misappropriating and converting the proceeds of investments made by clients of NRIA, which otherwise would have inured to the benefit of Plaintiff.

**The Pattern of Racketeering Activity**

106.    The Defendants have engaged in a pattern of racketeering activity within the meaning of N.J.S.A. 2C:41-1(d).

107.    Specifically, Defendants have engaged in a systematic and repeated scheme to convert investment proceeds and misappropriate cash from NRIA, by (A) accepting cash from potential NRIA investors, without authorization from Plaintiff and in violation of NRIA's policy prohibiting its personnel from accepting cash for any investment in the Fund; (B) by preparing and obtaining investor signatures on Investor Agreements that did not disclose the investors' tender of cash to the defendants; (C) by failing to prepare or submit any NRIA internal documentation reflecting the investors' tender of cash to the Defendants; (D) by failing to complete or file any report to any governmental agency concerning the receipt of cash from the investors; (E) by failing to deposit the cash received from investors in any bank account in the name of NRIA or the Fund; (F) by failing to turn the cash over to NRIA or the Fund; and (G) upon information and belief, by using the cash received for their own benefit.

108.    Based on the foregoing, Plaintiff demands judgment against Defendants for treble damages pursuant to N.J.S.A. 2C:41-4(c), compensatory damages, restitution and disgorgement pursuant to N.J.S.A. 2C:41-4(a)(7), together with an award of pre- and post-judgment interest thereon from the date of demand to the date of payment and the costs of this action.  Plaintiff reserves the right to seek punitive damages at the appropriate time.

**Defendants' RICO Liability**

109.    Defendants, in association with their enterprise engaged in enterprise engaged in and/or affecting trade or commerce, have conducted and/or participated in, directly or indirectly, the affairs of the enterprise through a pattern of racketeering activity as aforesaid, in violation of N.J.S.A. 2C:41-2(c).

110.    Defendants have conspired to violate N.J.S.A. 2C:41-2(c).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests entry of a final judgment against the Defendants as follows:

(a)    On Count I, awarding judgment in favor of Plaintiff and against Defendants (i) avoiding the transfers of the funds, (ii) directing Defendants to return to Plaintiff the amount of the transfers (i.e., $1,030,000.00) pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550(a), and (iii) for money damages against Defendants in the amount of the transfers, together with interest from the date of demand at the maximum legal rate, to the extent allowed by law;

(b)    On Count II, awarding judgment in favor of Plaintiff and against Defendants (i) avoiding the transfers of the funds, (ii) directing Defendants to return to Plaintiff the amount of the transfers (i.e., $1,030,000.00) pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550(a), and (iii) for money damages against Defendants in the amount of the transfers, together with interest from the date of demand at the maximum legal rate, to the extent allowed by law;

20

(c)    On Count III, awarding judgment in favor of Plaintiff and against Defendants (i) avoiding the transfers of the funds, (ii) directing Defendants to return to Plaintiff the amount of the transfers (i.e., $1,030,000.00) pursuant to 11 U.S.C. §§ 544(b) and 550(a) and New Jersey Revised Statutes § 25:2-25(a), and (iii) for money damages against Defendants in the amount of the transfers, together with interest from the date of demand at the maximum legal rate, to the extent allowed by law;

(d)    On Count IV, awarding judgment in favor of Plaintiff and against Defendants (i) avoiding the transfers of the funds, (ii) directing Defendants to return to Plaintiff the amount of the transfers (i.e., $1,030,000.00) pursuant to 11 U.S.C. §§ 544(b) and 550(a) and New Jersey Revised Statutes § 25:2-25(b), and (iii) for money damages against Defendants in the amount of the transfers, together with interest from the date of demand at the maximum legal rate, to the extent allowed by law;

(e)    On Count V, awarding judgment in favor of Plaintiff and against Defendants for turnover of the funds received by them (i.e., $1,030,000.00) pursuant to 11 U.S.C. § 542, together with interest from the date of demand at the maximum legal rate, to the extent allowed by law;

(f)    On Counts VI, VII, VIII, and IX, awarding judgment in favor of Plaintiff and against Defendants for money damages against Defendants for misappropriation of $1,030,000.00, together with interest from the date of demand at the maximum legal rate, to the extent allowed by law;

(g)    On Count X, awarding judgment in favor of Plaintiff and against Defendants for treble money damages against Defendants for $3,090,000.00, pursuant to N.J.S.A. 2C:41-4(c), or alternatively for compensatory damages, restitution and

disgorgement pursuant to N.J.S.A. 2C:41-4(a)(7), together with interest from the

date of demand at the maximum legal rate, to the extent allowed by law;

(h)    Awarding Plaintiff attorney's fees to the extent permitted by law;

(i)    Awarding Plaintiff interest and costs of suit; and

(j)    Awarding such other and further relief as the Court deems just and proper.


Dated: July 18, 2022

 /s/ *Joseph L. Schwartz*
RIKER DANZIG LLP
Joseph L. Schwartz (JS-5525)
Tod S. Chasin (TC-0122)
Daniel A. Bloom (DB-6392)
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
jschwartz@riker.com
tchasin@riker.com
dabloom@riker.com

*Proposed Special Litigation Counsel
to Debtors National Realty
Investment Advisors, LLC and NRIA
Partners Portfolio Fund I LLC*