**SILLS CUMMIS & GROSS P.C.**
S. Jason Teele, Esq. (steele@sillscummis.com)
Daniel J. Harris, Esq. (dharris@sillscummis.com)
Gregory A. Kopacz, Esq. (gkopacz@sillscummis.com)
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)
(973) 643-6500 (Facsimile)

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-14539 (JKS)<br><br>(Jointly Administered)<br><br>**Hearing Date: August 9, 2022 at 10:00 a.m. (ET)**<br>**Obj. Deadline: August 2, 2022 at 4:00 p.m. (ET)** |

**DEBTORS' OBJECTION TO U.S. CONSTRUCTION, INC.'S MOTION**
**TO COMPEL PERFORMANCE AND/OR ASSUMPTION OF**
**AGREEMENTS AND FOR RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (the "**Debtors**") submit this objection (the "**Objection**") to the *Motion to Compel Performance and/or Assumption of Agreements and For Related Relief* [Docket No. 125] (the "**Motion**")[2] filed by U.S. Construction, Inc. ("**USC**"), and respectfully state as follows:

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

[2] Capitalized terms not otherwise defined shall have the meanings ascribed to such terms in the Motion.

-1-

9010554

**BACKGROUND**

A. **General Background**

1. On June 7, 2022, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors are currently operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On June 30, 2022, the U.S. Trustee appointed an official committee of unsecured creditors [Docket No. 94] (the "**Committee**"). On July 21, 2022, the U.S. Trustee amended the composition of the Committee effective July 19, 2022 [Docket No. 175].

3. Additional background facts surrounding the commencement of these Chapter 11 Cases are more fully described in the *Declaration in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 16].

B. **Debtors' Prior Relationship With USC**

4. As detailed in the Motion, John Farina, USC's President and Chief Executive Officer, is partners with Dustin Salzano, the son of Thomas "Nicholas" Salzano and the Chief Financial Officer and joint owner of USC. Historically, USC was hired by the Debtors to provide general contractor services on construction projects located in Philadelphia, Pennsylvania, Brooklyn, New York, and Florida.

5. Due to the relationship between the Debtors, the Salzanos, and USC, the Debtors' Independent Manager investigated the circumstances surrounding the Debtors' process for the selection of USC as a general contractor on various projects. He also investigated the basis for several joint venture agreements between the Debtors and USC, as well as other business arrangements between the Debtors and entities affiliated with USC. Ultimately, the investigation revealed, among other misdeeds, significant irregularities in the Debtors' selection process of USC

as a general contractor.[3] To that end, the Debtors are preparing an adversary complaint to be filed prior to the return date of this Motion that seeks, among other things, to avoid the Debtors' contractual obligations to USC and to recover millions of dollars sent by the Debtors to USC and/or other parties for the benefit of USC.

6. Subject to the Debtors' continuing investigation, the Debtors believe that USC *participated* in the scheme promulgated by the Debtors' former owners and related parties to defraud investors.

C. **The Contracts Between the Debtors and USC**

7. On March 29, 2018, National Realty Investment Advisors, LLC ("**NRIA**"), USC and Shovel Ready Projects, LLC entered into that certain *Joint Venture Agreement* with respect to the development project located at 1901 S. Ocean Blvd., Delray Beach, Florida. A copy of this agreement is attached hereto as **Exhibit A**.

8. On October 3, 2019, NRIA and USC entered into that certain *General Contractor / Construction Management Promoted Interest Agreement*. An unsigned copy of this agreement is attached hereto as **Exhibit B**.

9. On October 8, 2018, Debtor Wright by The Sea 1901, LLC and USC entered into that certain *Standard Form of Agreement Between Owner and Contractor* (the "**ODR Contract**"). The ODR Contract relates to an ongoing construction project at 1901 South Ocean Blvd., Delray Beach, Florida 33483 and is attached to the Motion as Exhibit C.

10. On January 15, 2020, NRIA and USC entered into an *Agreement* that modified the March 29, 2018 Joint Venture Agreement and the October 3, 2019 General Contractor / Construction Management Promoted Interest Agreement. A copy of this agreement is attached to the Motion as Exhibit D.

---

[3] The Summary Cease and Desist Order filed by the New Jersey Bureau of Securities [Docket No. 60] confirms the same. *See* Summary Cease and Desist Order at 16 ("Salzano caused significant amounts of business to be steered to U.S. Construction, Inc., where his son was a partial owner and CFO. He also caused concessions to be made in favor of his son's construction company by, for example, deciding that the NRIA Fund would reimburse U.S. Construction for U.S. Construction's $500,000 investment in a project known as 12 Palm Trail, telling Dustin "please invoice as stated we will take the hit.").

-3-

9010554

**D.    Status of the Ocean Delray Project**

11. The Debtors' Ocean Delray project relates to the ongoing construction of nineteen (19) condominiums and five (5) townhouses located at 1901 S. Ocean, Blvd., Delray Beach, Florida. The construction on the condominiums is complete and eighteen (18) of the nineteen (19) have sold. The single unsold condominium is listed for sale with an asking price of over $5 million. According to the Debtors' best estimate, construction of the five (5) townhouses is approximately 54% complete. The shells of the homes and installation of the windows are finished, and construction of the pools is in process. All interior and exterior work also remains ongoing.

12. Given the Debtors' desire to cease its relationship with USC and complete the Ocean Delray project in a timely fashion, the Debtors have identified a new general contractor that is willing and able to quickly step in to provide general contractor services once a new contract negotiated and approved by the Court.

**OBJECTION**

**A.    The Court Cannot Compel the Debtors to Assume the ODR Contract or Any Other Contract Between the Debtors and USC**

13. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract . . . of the debtor." 11 U.S.C. § 365(a). As a general rule, an executory contract may be assumed or rejected any time prior to plan confirmation. 11 U.S.C. § 365(d)(2). However, section 365(d)(2) also provides that "the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease." *Id.*

14. USC argues that section 365(d)(2) of the Bankruptcy Code provides the Court with authority to compel the Debtor to "perform and/or assume the construction development contracts between USC and the Debtor." *See* Obj., Preliminary Statement; Proposed Order ("[T]he construction and development contracts on the DB Project are hereby assumed by the Debtor pursuant to 11 U.S.C. § 365[.]"). Contrary to USC's position, courts recognize that section 365(d)(2) of the Bankruptcy Code "permits the Court to compel the trustee or debtor-in-possession to make a decision" on whether to assume or reject an executory contract, but it "does not,

-4-

however, permit the non-debtor party to dictate whether the contract should be assumed or rejected." *Ryan, Inc. v. Circuit City Stores, Inc.*, 2010 U.S. Dist. LEXIS 120627, *7 (E.D. Va. Nov. 15, 2010). In *Circuit City*, the court reaffirmed a statement of the bankruptcy court as follows:

> The purpose of this exception . . . is to accommodate situations where the non-debtor to the contract needs to know whether the contract will be assumed or rejected "in order for the [non-debtor] party to take actions either to perform its end of the contract or to mitigate its damages."

*Id.* (affirming bankruptcy court decision that there is no authority supporting the movant's position that the non-debtor can compel the debtor to assume a contract); *see also In re Chateaugay Corp.*, 130 B.R. 162, 166 (S.D.N.Y. 1991) ("Neither the non-debtor party to an executory contract nor the bankruptcy court can compel the debtor to assume the contract.").

15. Thus, section 362(d)(2) of the Bankruptcy Code only permits the Court to compel the Debtors to *make a decision* on whether to assume the ODR Contract. It does not give the Court authority to dictate whether the ODR Contract (and other agreements between USC and the Debtors that are capable of assumption or rejection) should be assumed or rejected.

B. **The Debtors Have Determined That They Will Be Rejecting the ODR Contract**

16. Even if the Court grants USC's request to set a time period by which the Debtors must decide whether to assume or reject the ODR Contract, the Debtors have already made that decision: *the Debtors will not do any more business with USC and will be rejecting the ODR Contract in due course*.

17. In light of the connections and relationships between the Debtors' former insiders and affiliates and USC's owners and affiliates, the Debtors do not believe that the agreements with USC (including the ODR Contract) were negotiated at arm's-length. Rather, the agreements are the product of a tainted selection process that was not, and is not, in the best interests of the Debtors' estates. As a result, the Debtors terminated all of their relationships with USC, including

9010554

with respect to the Ocean Delray project and the Debtors' ongoing project at 506 Henry Street in Brooklyn, New York, and will not be doing any more work with USC going forward.

18.     Rejection of the ODR Contract is also supported by the fact that the Debtors will be filing an adversary proceeding against USC prior to the return date of the Motion. Subject to the Debtors' continuing investigation, the adversary complaint alleges that the Debtors' obligations under the agreements with USC should be voided because they are the product of fraud and misrepresentation and/or are avoidable as fraudulent conveyances. The adversary complaint also seeks avoidance of millions of dollars in payments made by the Debtors to or for the benefit of USC. The Debtors will not do business with a party with whom they are litigating.

19.     The Debtors understand the importance of completing the Ocean Delray project in a timely fashion because it has the potential to generate significant proceeds that may ultimately be returned to investors under a chapter 11 plan of reorganization. To that end, the Debtors have identified a general contractor to take USC's place and complete the project. The Debtors will be filing a motion in the near term to approve the new contract so that construction can continue without delay.

C.  **Whether Rejection Is a Valid Exercise of the Debtors' Business Judgment Is Not Before The Court**

20.     USC's argument that rejection of the ODR Contract (and other agreements) is not a good exercise of the Debtors' business judgment is premature and not before the Court.

21.     It is axiomatic that the determination of whether to assume or reject a contract is a decision to be made by the Debtors and not the non-debtor party to the contract. *See* 11 U.S.C. § 365(a). Once the Debtors formally reject the ODR Contract, the court's approval of the Debtors' rejection will be guided by an assessment of whether a debtor's business judgment has been reasonably exercised. *See In re III Enters., Inc. V*, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) ("Generally, a court will give great deference to a debtor's decision to assume or reject an executory contract. A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment - a standard which we have concluded many times is not

difficult to meet."), *aff'd sub nom.*, *Pueblo Chem., Inc. v. III Enters. Inc., V*, 169 B.R. 551 (E.D. Pa. 1994). "To satisfy the test, the . . . debtor in possession needs to establish that [assumption and assignment] will benefit the estate. Once the debtor meets its burden, the non-debtor party bears the burden of proving that the decision derives from bad faith, whim or caprice." *In re Central Jersey Airport Serv., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002).

22. The Debtors believe that, for the reasons discussed above, rejection of the ODR Contract is squarely within the Debtors' business judgment. However, the Debtors have not yet exercised their ability under section 365(a) of the Bankruptcy Code to reject the ODR Contract. As a result, the Debtors' business judgment is not before the Court.

**D.    The Debtors Do Not Have Privity With the Subcontractors Performing Work on the Ocean Delray Project**

23. USC also argues that NRIA should be compelled to pay the subcontractors with whom USC has contracted for their work performed on the Ocean Delray project. Obj. at 6. As reported to the Court at the July 19, 2022 hearing, the Debtors are committed to working with the subcontractors working on the Ocean Delray project to ensure timely payment for services rendered. Unfortunately, the Debtors do not have contractual privity with the subcontractors. Historically, the subcontractors were paid through USC, and the Debtors will not be paying any of USC's invoices going forward. In any event, the Debtors will work with the subcontractors to get them paid – either through their direct engagement by the Debtors or by the terms of a new general contractor agreement.

[*Remainder of Page Intentionally Left Blank*]

9010554

## CONCLUSION

**WHEREFORE**, the Court should deny the Motion and grant such other and further relief as the Court deems appropriate.

Dated: August 1, 2022               **SILLS CUMMIS & GROSS P.C.**

/s/ S. Jason Teele
S. Jason Teele, Esq.
Daniel Harris, Esq.
Gregory A. Kopacz Esq.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)
(973) 643-6500 (Facsimile)
steele@sillscummis.com
dharris@sillscummis.com
gkopacz@sillscummis.com

*Counsel to the Debtors and Debtors-in-Possession*