**SILLS CUMMIS & GROSS P.C.**
S. Jason Teele, Esq. (steele@sillscummis.com)
Daniel J. Harris, Esq. (dharris@sillscummis.com)
Gregory A. Kopacz, Esq. (gkopacz@sillscummis.com)
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)
(973) 643-6500 (Facsimile)

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT<br>ADVISORS, LLC, *et al.*[1]<br><br>            Debtors. | Chapter 11<br><br>Case No. 22-14539 (JKS)<br><br>(Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO RULE 9019
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) SETTLING
THE CHAPTER 11 TRUSTEE MOTION; (B) ESTABLISHING A BOARD OF
INDEPENDENT MANAGERS FOR NATIONAL REALTY INVESTMENT ADVISORS,
LLC; (C) AUTHORIZING THE DEBTORS TO (I) TO RETAIN TURNAROUND
ADVISORS, LLC TO PROVIDE A CHIEF RESTRUCTURING OFFICER, *NUNC PRO
TUNC* TO AUGUST 1, 2022, AND (II) APPROVE THE AGREEMENT RELATED
THERETO; AND (D) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "**Debtors**") submit this

motion (the "**Motion**") for entry of an order, substantially in the form attached as **Exhibit A** (the

"**Proposed Order**") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**") and sections 105(a) and 363(b) of title 11 of the United States Code (the

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
claims and noticing agent at https://omniagentsolutions.com/NRIA.  The location of the Debtors' service address is:
1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

"**Bankruptcy Code**"): (A) settling the *Motion of Jean-Michel Appolon, Thomas Cooper, Allen Cvelic and Martina Gudac Cvelic, Husband & Wife, Andrew Maretz, Thomas J. Cioffe, Cioffe Enterprises, Inc., Thomas James Cioffe, Jr., Joseph Occhiogrosso, Annemarie Occhiogrosso, Robert Zukowski, and Anthony Siriani For Entry of an Order Appointing a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a) or, In the Alternative, to Convert the Chapter 11 Cases to Chapter 7 of the Bankruptcy Code* [Docket No. 136] (the "**Trustee Motion**"); (B) establishing a board of managers (the "**Board**") for National Realty Investment Advisors, LLC ("**NRIA**") with three (3) independent managers (the "**New Board**") in accordance with the terms set forth in the Proposed Order; (C) authorizing the Debtors to (i) retain Turnaround Advisors, LLC to provide a chief restructuring officer ("**CRO**") in connection with the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), *nunc pro tunc* to August 1, 2022, and (ii) approve the Agreement (as defined below) related thereto; and (D) granting related relief.  In support of the Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

4.      On June 7, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

-2-

5.      The Debtors are currently operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On June 30, 2022, the U.S. Trustee appointed an official committee of unsecured creditors [Docket No. 94] (the "**Committee**").  On July 21, 2022, the U.S. Trustee amended the composition of the Committee effective July 19, 2022 [Docket No. 175].

6.      Additional background facts surrounding the commencement of these Chapter 11 Cases are more fully described in the *Declaration in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 16] (the "**First Day Declaration**").

A.      **The Independent Manager Agreement and the NRIA Operating Agreement**

7.      As described in the First Day Declaration, on April 29, 2022, Brian J. Casey entered into that certain *Independent Manager Agreement* (as amended, the "**Independent Manager Agreement**") with NRIA pursuant to which, *inter alia*, he was appointed as the sole manager of NRIA.[2]  First Day Decl. ¶ 18.  As of the Petition Date, Mr. Casey served as the Debtors' Independent Manager.  Except with respect to Mr. Casey's role as the Independent Manager, no Board of Managers for NRIA or the other Debtors currently exists.

8.      The Independent Manager Agreement expressly provides that "[t]he Independent Manager shall have the duties and rights of the Manager of NRIA and each NRIA Affiliate to the fullest extent permitted by the NRIA Operating Agreement, the Fund Operating Agreement, the Operating Agreement of each NRIA Affiliate and the Delaware Limited Liability Company Act, Title 6, Chapter 18, §§ 18-101, et seq. . . ., to act for and on behalf of NRIA and each NRIA Affiliate."  Independent Manager Agreement § 3.  It also provides that "the Independent

---

[2]      Attached hereto as **Exhibit B** is a true and correct copy of the Independent Manager Agreement and an amendment thereto.

Manager shall have all powers set forth in Sections 2.5 and 2.7 of the NRIA Operating Agreement, any comparable provision of the Operating Agreement of each NRIA Affiliate, as well as full and exclusive decision-making authority in the continued operation of the business of NRIA and each NRIA Affiliate (subject to the requirements of the Bankruptcy Code)."[3] *Id.*

9.     Section 4 of the Independent Manager Agreement also provides that, "[a]s of the Effective Date, and simultaneously with the appointment set forth in Section 2 above, (a) [Rey E. Grabato, II] hereby resigns as the Manager, the President and the Chief Executive Officer of NRIA, and NRIA hereby accepts such resignation and waives any requirement for advance notice of such resignation that is required under the NRIA Operating Agreement." Independent Manager Agreement § 4.  This provision of the Independent Manager Agreement reflects the intent of the parties that, following his resignation, Mr. Grabato would have no future voting rights, formal or informal management role, or interaction with the Debtors in any capacity whatsoever.  Despite this extensive resignation provision, Mr. Grabato remains the sole member of NRIA.  As NRIA's sole member, Mr. Grabato cannot relinquish his membership in the company without causing its immediate dissolution pursuant to § 18-603 of the Delaware Limited Liability Company Act.

10.     Notwithstanding Section 4 of the Independent Manager Agreement and Grabato's intent to relinquish operating control over NRIA, Section 2.6 of the NRIA Operating Agreement

---

[3]     Section 2.5 of the Third Amended and Restated Limited Liability Company Operating Agreement of National Realty Investment Advisors, LLC dated July 31, 2020 (the "**NRIA Operating Agreement**"), a true and correct copy of which is attached hereto as **Exhibit C** is titled "Management by Manager(s)." This section provides, in relevant part, that "the day to day business and affairs of the Company shall be managed by its Manager(s)" and "the Managers shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business." Section 2.7, titled "Certain Powers of Manager(s)," gives the Manager(s) the power and authority to act on behalf of the Company and enumerates the actions that are within the Manager(s) ambit, including the ability to "do and perform all other lawful acts as may be necessary or appropriate to the conduct of the Company's business."

provides that "[t]he number of Managers may be increased or decreased by a Majority Vote of the Members holding Voting Securities."  NRIA Operating Agreement § 2.6.

11.     The Debtors recognize that, in order to increase the number of managers, as they seek to do by way of this Motion, the NRIA Operating Agreement technically requires Mr. Grabato's affirmative vote as NRIA's sole member.  Notwithstanding the foregoing, Mr. Grabato has functionally ceded control over the Debtors and it is impracticable to require him vote in favor of this management change.

12.     Accordingly, the Debtors seek this Court's authorization to increase the number of Managers from one to three in the absence of Mr. Grabato's vote.  The Debtors believe that effectuating this relief aligns with the spirit of the Independent Manager Agreement and Mr. Grabato's resignation which were designed to remove Mr. Grabato from his various roles with the Debtors.  Indeed, as set forth above, the Independent Manager Agreement was structured to leave Mr. Grabato with no right to dictate the Debtors' future governance structure.  In light of the unique facts and circumstances presented, including Mr. Grabato's present inaccessibility (rendering him unable to vote in favor of this change), the Debtors believe this relief is appropriate and in the best interests of their estates, creditors, and all parties in interest.

**B.     The Trustee Motion and Settlement Thereof**

13.     On July 13, 2022, several investors (the "**Movants**"), through their respective counsel, filed the Trustee Motion seeking, *inter alia*, entry of an order appointing a Chapter 11 trustee in the Chapter 11 Cases or, in the alternative, to convert the Chapter 11 Cases to chapter 7 of the Bankruptcy Code.  If the Trustee Motion were to be granted, Mr. Casey would be removed from his role as the Debtors' Independent Manager.

14.     As detailed in the First Day Declaration, beginning on November 1, 2021, Mr.

Casey served as the additional manager of the Fund (as defined below) and thereafter served as

the Independent Manager of the Debtors.  First Day Decl. ¶¶ 16-18.  At all times, Mr. Casey was

focused on, *inter alia*, maximizing the value of the Debtors' estates, maintaining goodwill with

the Debtors' contractors and subcontractors, and returning investor funds.  *See* First Day Decl. ¶

19.  But for Mr. Casey's efforts it is likely that one or more of the government units conducting

investigations – The United States Attorney's Office for the District of New Jersey, the U.S.

Securities and Exchange Commission, and the New Jersey Bureau of Securities – would have

taken action that would have destabilized the Debtors' business and caused a deterioration in the

value of the Debtors' assets.  Nevertheless, to avoid a value-destructive battle concerning Mr.

Casey's leadership, Mr. Casey has agreed to voluntarily step aside from his role as Independent

Manager of the Debtors.

15.     At the hearing on July 19, 2022, the Debtors reported to the Court that Mr. Casey

was voluntarily resigning from his role as the Debtors' Independent Manager and the Debtors are

appointing the Honorable Kevin Carey (Ret.), a highly respected former bankruptcy judge in the

United States Bankruptcy Court for the District of Delaware, as the Debtors' new independent

manager, subject to conflicts checks and Court approval.[4]  In conversations with the Movants

thereafter, and in consultation with the Committee, the settlement of the Trustee Motion was

reached.

---

[4]     Following the hearing, the Debtors, in consultation with the Movants and the Committee, concluded that
best practices call for a board consisting of more than one (1) member.  Accordingly, the Debtors identified the two
(2) additional members of the New Board and candidates for the Chief Restructuring Officer position based on
recommendations by the Movants and the Committee.  The settling parties also believe that a three-person board is
appropriate given the significant decisions that will have to be made by the Debtors in these Chapter 11 Cases to
maximize returns to investors.  Among other things, the New Board will have to oversee the Debtors' construction
operations, investigations and litigations against third parties (including the Debtors' former insiders and related
parties), and full cooperation with ongoing government investigations.

16.     The Debtors understand that the Committee supports the terms described below,

including the governance structure and the appointment of all three (3) members of the New

Board and Turnaround Advisors, LLC (and Mr. Fioretti) as CRO.

### RELIEF REQUESTED

17.     The Debtors and the Movants have agreed to resolve the Trustee Motion on the

terms set forth herein and in the Proposed Order.  By the Motion, the Debtors request entry of the

Proposed Order settling the Trustee Motion as set forth below:

- **New Board**: in his capacity as Independent Manager, and in contemplation of his resignation, Mr. Casey has established a new three (3) person Board of Managers for NRIA on the following terms:

  - The initial members of the New Board will be the Honorable Kevin Carey (Ret.), the Honorable Kevin Gross (Ret.), and Mr. Bernard Katz;[5]

  - The initial members of the New Board will be paid their hourly rates as follows (as may be adjusted from time to time upon notice to the Court): Honorable Kevin Carey (Ret.), $1,660/hour; Honorable Kevin Gross (Ret.), $1,300/hour; and Bernard Katz, $825/hour; *provided* that the members of the New Board in the future may elect to receive a flat monthly fee in lieu of their hourly rates upon notice to the Court;[6]

  - The members of the New Board will be entitled to reimbursement for reasonable expenses, specifically including, without limitation, travel expenses and the fees and expenses of counsel for the New Board incurred in connection with legal advice and services in matters within the New Board's responsibility; *provided* that all reasonable and documented fees and expenses of the New Board's counsel will be paid by the Debtors;

  - The Debtors will fund an escrow account in the amount of $5,000,000 to collateralize the indemnification (the "**Indemnification Escrow**") of the members of the New Board and the CRO.  The Indemnification Escrow shall be held in the Sills Cummis & Gross P.C. attorney trust account.  Upon the

---

[5]     The initial members of the New Board have begun to perform a conflict analysis for purposes of disclosure to this Court and parties-in-interest.  Although the process is ongoing, no conflicts have arisen.  The New Board will work with the U.S. Trustee concerning appropriate disclosures, if any, once the conflict process has concluded.

[6]     Although the Court's entry of the Proposed Order vests the New Board with the authority to act, the New Board will likely incur fees and expenses in preparation for the hearing on this Motion.  The New Board will submit those reasonable and documented fees and expenses to the Debtors for payment.

8991998

Debtors' binding of directors' and officers' liability insurance, the Indemnification Escrow will be released to the Debtors.

- Upon entry of the Proposed Order, Brian J. Casey shall resign as the Independent Manager of the Debtors.[7] Mr. Casey and The Casey Group, Ltd. shall be exculpated and released by and on behalf of the Debtors' estates for (i) any and all actions taken or omitted to be taken in connection with the Debtors, (ii) any and all actions taken or omitted to be taken in contemplation of these Chapter 11 Cases, and (iii) their service as the "Additional" manager of the Fund and the Debtors' Independent Manager, except that Mr. Casey and The Casey Group, Ltd. shall not be so exculpated and released for claims if they arise from Mr. Casey's and The Casey Group, Ltd.'s bad faith, gross negligence, or willful misconduct. The indemnification provision in the Independent Manager Agreement shall remain effective notwithstanding Mr. Casey's resignation, and Mr. Casey shall be indemnified, to the extent applicable, under the Third Amended and Restated Limited Liability Company Operating Agreement of National Realty Investment Advisors, LLC dated July 31, 2020. The term "cost" in Section 9.3 of the Third Amended and Restated Limited Liability Company Operating Agreement of National Realty Investment Advisors, LLC dated July 31, 2020 includes legal advice and services in representing Mr. Casey. Mr. Casey shall receive his monthly fee in accordance with the Independent Manager Agreement through and including August 31, 2022. Thereafter, to the extent the New Board or the Debtors require assistance from Mr. Casey, he will be compensated by the Debtors at his regular hourly rate of $600/hour, plus reasonable out-of-pocket expenses incurred in connection with rendering assistance to the New Board or the Debtors and cooperation with and appearances before regulatory agencies, government entities, and the Bankruptcy Court. The exculpation and release shall not apply to claims and causes of action that could be asserted directly by investors, creditors, or other third parties; and

- **Appointment of CRO**: the Debtors shall retain Turnaround Advisors, LLC to provide a CRO. Turnaround Advisors, LLC will designate John Fioretti as the Debtors' CRO.

## **RELEVANT INFORMATION**

18. In order to avoid the potential delay, uncertainty, risk and expense of protracted litigation of the Trustee Motion, the Debtors and the Movants have engaged in good faith and arm's-length settlement discussions and negotiations. The parties have agreed, subject to this

---

[7] The Movants have interviewed Mr. Casey in connection with considering this settlement. Following that interview, notwithstanding statements made "upon information and belief," the Movants acknowledge and agree that Mr. Casey was *not* brought into NRIA by Arthur Scutaro.

8991998

Court's approval and without admitting and expressly denying any wrongdoing, to resolve the Trustee Motion such that the Debtors will (a) establish a New Board for NRIA with three (3) independent managers, and (b) retain Turnaround Advisors, LLC to provide a CRO, as more fully set forth below and in the Proposed Order.

**C.**     **Debtors' New Board of Managers**

19.     Upon entry of the Proposed Order, Brian J. Casey, as the Independent Manager of the Debtors, will be relieved of his duties as Independent Manager and a new three-person Board of Managers for NRIA will be established.[8]  The initial members of the New Board will be the Honorable Kevin Carey (Ret.), the Honorable Kevin Gross (Ret.), and Bernard Katz.  As detailed below, Mr. Carey and Mr. Gross are both highly regarded former bankruptcy judges from the United States Bankruptcy Court for the District of Delaware and Mr. Katz is a respected turnaround professional with more than forty (40) years of experience in forensic accounting, restructuring and financial advisory services.  In addition, Mr. Katz has served as an independent director/manager in at least twelve (12) cases over the past several years.  Together, they will provide the Debtors with the requisite guidance to complete the chapter 11 process and return investor funds.

20.     Each member of the New Board will be compensated on an hourly basis as set forth above and pursuant to separate agreements between the Debtors and each Board Member. The members of the New Board will also be entitled to reimbursement for reasonable expenses, specifically including, without limitation, travel expenses and the fees and expenses of counsel

---

[8]     The Debtors and Mr. Casey are discussing how to appropriately transition his significant institutional knowledge to the New Board and the CRO.  The Debtors anticipate that Mr. Casey will continue to provide services as an independent consultant or in a similar role on a temporary basis for a period of time to facilitate the transition.

8991998

for the New Board incurred in connection with legal advice and services in matters within the New Board's responsibility, to be paid by the Debtors.

21.     Once the New Board is appointed pursuant to this Motion and related governance documents, the New Board will retain the law firm of Cole Schotz P.C. ("**Cole Schotz**") to represent it in connection with these Chapter 11 Cases, effective as of July 25, 2022.  Cole Schotz shall not be required to file a retention application, monthly fee statements, or interim or final compensation applications with the Bankruptcy Court.  Notwithstanding the foregoing, within ten (10) calendar days of the end of each calendar month, beginning with the period through and including August 31, 2022, Cole Schotz shall serve, via email, a copy of its invoice(s) for the preceding period(s) on the following parties (collectively, the "**Notice Parties**"): (i) the New Board, (ii) counsel for the Debtors, (iii) the CRO, (iv) proposed counsel for the Committee, (v) Porzio, Bromberg & Newman in its capacity as lead counsel for the Movants, and (vi) the U.S. Trustee; *provided, however*, that Cole Schotz's failure to serve a monthly invoice within the time allotted herein shall not prevent Cole Schotz from serving a monthly invoice for such period at a later date.

22.     Each Notice Party shall have seven (7) calendar days (the "**Objection Notice Period**") from the date of its receipt of a monthly invoice within which to object to such monthly invoice by filing a formal objection (a "**Fee Objection**") with the Bankruptcy Court, setting a hearing on the Fee Objection as soon as is practicable, and providing notice of the hearing on same to Cole Schotz and the other Notice Parties.  Each Fee Objection must set forth the nature of the objection and the amount of fees and expenses at issue.  Cole Schotz may reply to the Fee Objection within seven (7) days of the filing of same.  In the event a Fee Objection is filed, Cole Schotz shall be entitled to payment on any undisputed portion of its monthly invoice as if no Fee

-10-

Objection had been filed (as set forth in more detail below); *provided, however*, that Cole Schotz shall not be entitled to payment on any disputed portion of such monthly invoice unless and until (i) the Bankruptcy Court enters an Order adjudicating the Fee Objection or (ii) the objecting party withdraws its Fee Objection.  In the event no Notice Party timely files an objection a monthly invoice, at the end of each Objection Notice Period, the Debtors shall be authorized and directed to promptly pay Cole Schotz, in full, for all such fees and expenses for which the Objection Notice Period has passed.  In the event a timely Fee Objection has been filed, the Debtors shall be authorized and directed to promptly pay Cole Schotz, in full, for all undisputed fees and expenses for which the Objection Notice Period has passed, pending a resolution on the balance as set forth above.

23.    The members of the New Board and the CRO shall be indemnified, to the extent applicable, in accordance with the terms of the Third Amended and Restated Limited Liability Company Operating Agreement of National Realty Investment Advisors, LLC dated July 31, 2020, and by the NRIA Partners Portfolio Fund I, LLC (the "**Fund**") in accordance with the terms of the Eighth Amended and Restated Limited Liability Company Operating Agreement dated November 23, 2021.[9]  In addition to and not in limitation of any rights of indemnifications under these agreements, the Debtors will, to the maximum extent permitted by applicable law, indemnify and hold harmless the members of the New Board and the CRO from any and all loss, claim, damage or cause of action, including reasonable attorneys' fees related thereto ("**Claims**") incurred by the New Board members and the CRO in the performance of their duties and obligations as such; *provided* that a New Board member and the CRO shall not be so

---

[9]    Attached hereto as **Exhibit D** is a true and correct copy of the Eighth Amended and Restated Limited Liability Company Operating Agreement dated November 23, 2021.

8991998

indemnified for Claims if they arise from such New Board member's or the CRO's bad faith, gross negligence, or willful misconduct. The benefits of the indemnification shall survive the termination of each New Board member's or the CRO's service as such.

24.     The Debtors have also deposited $5,000,000 in escrow with the Debtors' counsel, Sills, Cummis & Gross, P.C., to collateralize the indemnification of the members of the New Board and the CRO. The Indemnification Escrow shall be held in the Sills Cummis & Gross, P.C. attorney trust account. Upon the Debtors' binding of directors' and officers' liability insurance, the Indemnification Escrow will be released to the Debtors. If the Debtors are unable to obtain directors' and officers' liability insurance, the Indemnification Escrow will be retained in the Sills Cummis & Gross, P.C. attorney trust account to cover any indemnifiable costs and expenses for the members of the New Board and the CRO.

25.     In connection with the appointment of the New Board, the Proposed Order provides that, effective upon entry of the Proposed Order, Brian J. Casey and The Casey Group, Ltd. shall resign as the Independent Manager of the Debtors and will be exculpated and released by and on behalf of the Debtors' estates for (i) any and all actions taken or omitted to be taken in connection with the Debtors, (ii) any and all actions taken or omitted to be taken in contemplation of these Chapter 11 Cases, and (iii) their service as the "Additional" manager of the Fund and the Debtors' Independent Manager, except that Mr. Casey and The Casey Group, Ltd. shall not be so exculpated and released for claims if they arise from Mr. Casey's and The Casey Group, Ltd.'s bad faith, gross negligence, or willful misconduct. Mr. Casey shall receive his monthly fee in accordance with the Independent Manager Agreement through and including August 31, 2022. Thereafter, to the extent the New Board or the Debtors require assistance from Mr. Casey, he will be compensated by the Debtors at his regular hourly rate of $600/hour, plus

8991998

reasonable out-of-pocket expenses incurred in connection with rendering assistance to the New

Board or the Debtors and cooperation with and appearances before regulatory agencies,

government entities, and the Bankruptcy Court.

**D.     Qualifications of Initial Members of New Board**

        **a.   Honorable Kevin Carey (Ret.)**

26.     Kevin Carey is Senior Counsel at Hogan Lovells US LLP, after having previously

served as U.S. Bankruptcy Judge for the Eastern District of Pennsylvania from 2001 to 2005 and

a U.S. Bankruptcy Judge for the District of Delaware from 2005 to 2019.  Mr. Carey is a fellow

of the American College of Bankruptcy and is the current President of the American Bankruptcy

Institute.  He is also a member of the International Insolvency Institute and was the first judge to

serve as global chair of the Turnaround Management Association.

        **b.   Honorable Kevin Gross (Ret.)**

27.     Kevin Gross is a Director at Richards Layton & Finger, P.A. in Wilmington,

Delaware after having previously served as U.S. Bankruptcy Judge for the District of Delaware

from 2006 to 2020 and as Chief Judge for the Bankruptcy Court for the District of Delaware

from July 1, 2011 to June 30, 2014.  Mr. Gross presided over some of the highest-profile

reorganizations in the country and developed a national reputation as a mediator of choice to

help resolve complex chapter 11 cases.

        **c.   Bernard Katz**

28.     Bernard Katz is a principal of BAK Advisors Inc., a financial advisory firm. Mr.

Katz has over forty (40) years of experience in forensic accounting, and restructuring and

financial advisory services to growth-oriented and distressed companies.  Mr. Katz was

previously a partner at CohnReznick LLP and has been asked to serve on several advisory boards

to assist businesses in meeting their strategic objectives.  Mr. Katz has served as an independent director/manager in at least twelve (12) cases over the past several years.

**E.**      **Retention of Turnaround Advisors, LLC to Provide a CRO**

29.      The parties have also agreed that the Debtors shall retain Turnaround Advisors, LLC as the Debtors' CRO, subject to the terms of an engagement letter between Turnaround Advisors, LLC and the Debtors (the "**Agreement**") with the approval of the New Board. Turnaround Advisors, LLC has designated John Fioretti as the Debtors' CRO.  Mr. Fioretti has over twenty-five (25) years of restructuring experience acting as an interim crisis manager, a portfolio manager of troubled debt, and a director on a board of directors.  He has successfully worked with both debtors and creditors in many different industries, including real estate, restaurant, retail, finance, transportation, and healthcare as well as with various manufacturing, wholesale, and service companies. Mr. Fioretti has extensive experience with bankruptcy restructurings and sales, as well as out of court settlements.

30.      The Debtors and Turnaround Advisors, LLC will file prior to the objection deadline for the Motion: (i) a copy of the executed Agreement and (ii) a declaration in support of the Motion and retention of Turnaround Advisors, LLC detailing, *inter alia*, Turnaround Advisors, LLC's and Mr. Fioretti's qualifications, the services to be provided by the CRO, the terms of the professional compensation to Turnaround Advisors, LLC, indemnification provisions in the Agreement, and information regarding Turnaround Advisors, LLC's and Mr. Fioretti's and disinterestedness.

**BASIS FOR RELIEF REQUESTED**

31.      By this Motion, the Debtors seek entry of the Proposed Order approving a settlement of the Trustee Motion pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

8991998

A.      **The Settlement Falls Well Within the Range of Reasonableness and Should Be Approved**

32.      It has long been recognized that compromises are favored in the bankruptcy context "[t]o minimize litigation and expedite the administration of a bankruptcy estate." *In re Martin*, 91 F. 3d 389, 393 (3d Cir. 1996). As the Supreme Court has acknowledged, "[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *Protective Comm. For Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (citation and internal quotation marks omitted).

33.      Section 105(a) of the Bankruptcy Code provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Moreover, Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." The authority to approve a compromise [or] settlement "lies within the sound discretion of the Bankruptcy Court." *In re Petersburg Regency, LLC*, 540 B.R. 508, 535 (Bankr. D.N.J. 2015) (Papalia, J). In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate. *Id.* (citing *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 136 (Bankr. D.N.J. 2010)). The court must "assess and balance the value of the claim that is being comprised against the value to the estate of the acceptable of the compromise proposal." *Id.* (citation omitted); *In re Roper and Twardowsky, LLC*, 559 B.R. 375, 394 (Bankr. D.N.J. 2016) (Meisel, J) (this analysis "pits the value of rights relinquished by the estate versus the value received in return.") (citations omitted).

8991998

34.     When determining whether a settlement is fair and reasonable under Bankruptcy

Rule 9019(a), courts in the Third Circuit consider the following factors (collectively, the

"**Martin Factors**"):

(a)     the probability of success in litigation;

(b)     the likely difficulties of collection;

(c)     the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

(d)     the paramount interest of the creditors.

*In re Martin,* 91 F. 3d at 393; *In re Will v. Northwestern Univ. (In re Nutraquest, Inc.),* 434 F.3d

639, 644 (3d Cir. 2006); *see also In re Marvel Entm't Grp.,* 222 B.R. 243, 249 (D. Del. 1998) (in

applying Bankruptcy Rule 9019(a), whether a court should approve a settlement depends on

several factors, including the probability of success in the litigation, the complexity of the

litigation, the attendant expense and delay, and the interests of the creditors).    A court

considering approval of a settlement "should not conduct a 'mini trial' on the merits but 'canvas

the issues and see whether the settlement falls below the lowest point in the range of

reasonableness.'"    *Petersburg Regency,* 540 B.R. at 536 (citation omitted).    Although bankruptcy

courts are directed to determine whether settlements are in the "best interests of the estate"—*In

re Energy Coop.,* 886 F.2d 921, 927 (7th Cir. 1989)—the bankruptcy court should not substitute

its judgment for that of a debtor in possession or a trustee.    *Roper and Twardowsky,* 559 B.R. at

394.

35.     Application of the Martin Factors here demonstrates that the parties' entry into the

settlement falls well above the lowest point in the range of reasonableness and should therefore

be approved.    While the Debtors believe that the Trustee Motion lacks merit, the Debtors took

seriously the allegations made by the Movants in the Trustee Motion and by the New Jersey

-16-

Bureau of Securities in the Summary Cease and Desist Order [Docket No. 60].  The Debtors recognized that, given the extent and nature of the allegations, there was no guarantee that the Debtors would prevail if the issues raised therein were to be litigated by the Court.  As is the case with all litigated claims, the outcome of any such litigation is not certain and will undoubtedly be costly and detrimental to the Debtors' goal of maximizing the value of the estates.  For example, the appointment of a chapter 11 trustee increases the risk that contractors and subcontractors would walk off the Debtors' pending construction projects, state and local government agencies would pull the Debtors' construction permits, and the ongoing government investigations noted above would accelerate.  As such, the consensual resolution set forth above and in the Proposed Order is appropriate and in the best interests of the Debtors' estates.

36.    In addition, without the consensual resolution contained herein and in the Proposed Order, litigating the issues raised in the Trustee Motion would be extremely expensive for the Debtors' estates and such litigation would distract all relevant parties and delay the Debtors' goal of returning investor funds.  The immediate benefits and certainty brought about by the settlement better serve the Debtors' estates and avoid the prosecution of complex claims that will be disputed, expensive, and time-consuming.

37.    Finally, the settlement will serve the paramount interests of all creditors and stakeholders of the Debtors.  Specifically, the approval of the settlement will lead to the appointment of experienced management at both the board and executive level, and avoid what could otherwise be several weeks of litigation between the Debtors and the Movants.

38.    In sum, the proposed settlement falls well above the lowest point in the range of reasonableness.  Accordingly, the Debtors respectfully submit that the Court should approve the settlement under Bankruptcy Rule 9019.

8991998

**B.** **The Relief Sought Also Satisfies Section 363 of the Bankruptcy Code**

39.    Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1).  Under applicable case law in this and other circuits, courts will approve a debtor's proposed use of its assets under section 363(b)(1) if it represents a sound business purpose on the part of the debtor.  *See, e.g., In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (Bankr. D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'"); *In re Martin,* 91 F.3d at 395 (courts defer to a trustee's judgment concerning use of property under §363(b) when there is a legitimate business justification); *In re Delaware & Hudson R.R. Co.,* 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)).  Under the business judgment rule, a court will not interfere with the judgment of a board of directors unless there is a showing of "gross and palpable overreaching." *In re Marvel Entm't Group, Inc.,* 273 B.R. 58, 78 (Bankr. D. Del. 2002) ("under the business judgment rule, a board's 'decisions will not be disturbed if they can be attributed to any rational purpose' and a court 'will not substitute its own notions of what is or is not sound business judgment.'") (citing *Sinclair Oil Corp. v. Levien,* 280 A.2d 717, 719-20 (Del. 1971)).

40.    The Debtors submit that appointment of the New Board and the retention of Turnaround Advisors, LLC to provide a CRO is necessary and essential to the Debtors' restructuring efforts.  As set forth above, the members of the New Board are highly qualified restructuring professionals that will be able to oversee the administration of these Chapter 11

8991998

Cases, with a view toward maximizing value for all stakeholders.  The retention of Turnaround Advisors, LLC to provide a CRO is also in the best interests of the Debtors' estates as Turnaround Advisors, LLC and Mr. Fioretti have extensive experience in providing crisis management and consulting services to distressed companies in various industries, including real estate.  The CRO, with the guidance of the New Board, will advise the Debtors through the Chapter 11 process.

41.     Authorizing the Debtors to pay the reasonable and documented fees and expenses of the New Board's counsel is also a sound exercise of the Debtors' business judgment.  Given the complexities of the Chapter 11 Cases, the members of the New Board will be required to quickly digest a significant amount of information and make decisions regarding the trajectory of these Chapter 11 Cases.  By authorizing the Debtors to pay reasonable and documented fees of counsel, the members of the New Board (and the Debtors' stakeholders) will be assured that the New Board will receive independent, unvarnished legal advice.  Thus, using estate funds to pay the New Board's counsel is in the best interest of the Debtors' estates and is consistent with the Debtors' goal of returning investor funds.

## REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(h)

42.     The Debtors respectfully request a waiver of the fourteen (14) day stay of effectiveness imposed by Bankruptcy Rule 6004(h) so that the relief requested herein can take effect immediately upon entry of an order approving this Motion.

## WAIVER OF MEMORANDUM OF LAW

43.     Because the legal basis upon which the Debtors rely is incorporated herein and the Motion does not raise any novel issues of law, the Debtors request that the Court waive the requirements to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3).

8991998

## NO PRIOR REQUEST

44.    No prior request for the relief sought herein has been made to this or any other

court.

## NOTICE

45.    Notice of this Motion has been given to: (i) the Office of the United States

Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102;

(ii) proposed counsel to the Committee; (iii) the Debtors' thirty largest unsecured creditors on a

consolidated basis and the Debtors' thirty largest investors on a consolidated basis; (iv) S3 RE

Bergenline Funding, LLC, S3 RE 1300 Manhattan Funding LLC and Toorak Capital Partners;

(v) the U.S. Attorney General; (vi) the Internal Revenue Service; (vii) the Securities and

Exchange Commission; (viii) the New Jersey Attorney General; (ix) the U.S. Attorney for the

District of New Jersey; (x) the New Jersey Division of Taxation; (xi) the New Jersey Bureau of

Securities; (xii) the New York Attorney General; (xiii) the New York Department of Taxation

and Finance; (xiv) the Florida Attorney General; (xv) the Florida Department of Revenue;

(xvi) the Illinois Attorney General; (xvii) the Illinois Department of Revenue; (xviii) the Illinois

Securities Department; (xix) the Alabama Attorney General; (xx) the Alabama Department of

Revenue; (xxi) the Alabama Securities Commission; (xxii) those parties who have filed a notice

of appearance and request for service of pleadings in these Chapter 11 Cases pursuant to

Bankruptcy Rule 2002; and (xxiii) counsel to the Movants.  In light of the nature of the relief

requested herein, the Debtors submit that no other or further notice is required.


*[Remainder of Page Intentionally Left Blank]*

8991998

## **CONCLUSION**

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated:  August 1, 2022         **SILLS CUMMIS & GROSS P.C.**

/s/ S. Jason Teele
S. Jason Teele, Esq.
Daniel J. Harris, Esq.
Gregory A. Kopacz Esq.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)
(973) 643-6500 (Facsimile)
steele@sillscummis.com
dharris@sillscummis.com
gkopacz@sillscummis.com

*Counsel to the Debtors and Debtors-in-Possession*

8991998