UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-1

NORRIS McLAUGHLIN, P.A.
400 Crossing Boulevard, 8th Floor
P.O. Box 5933
Bridgewater, NJ 08807-5933
(908) 722-0700
Jerome J. Gallagher, Jr. (jfgallagher@norris-law.com)
Attorneys for Secured Creditor, IPFS Corporation

| | |
|---|---|
| In Re:<br><br>CHERRY STREET CAPITAL 113-27, LLC<br>                                              Debtor. | Case No.   22-14577-JKS<br>Chapter 11<br>Hon. John K. Sherwood |

**CERTIFICATION IN SUPPORT OF SECURED CREDITOR, IPFS CORPORATION'S
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

LISA R. CHANDLER hereby certifies to the Court as follows:

1.      I am employed by secured creditor, IPFS Corporation ("IPFS"), as a
Litigation and Bankruptcy Recovery Manager.  I am responsible for the collection of insurance
premium finance accounts from customers in bankruptcy proceedings, including the account
which is the subject of this action.

2.      I have reviewed IPFS' books and records related to the account of Cherry Street
Capital 113-27, LLC (the "Debtor"). I am thereby familiar with the facts of this matter and am
authorized to make this certification in support of IPFS' motion for entry of an Order granting to
IPFS relief from the automatic stay (the "Motion").

3.      IPFS is in the business of financing insurance premiums for its customers,
including the Debtor.  IPFS is a financing company.  It is not an insurance company and does not
issue insurance policies or coverages.  In the present action, Debtor purchased insurance policies
(the "Policies") issued by Atlantic Casualty Insurance Company and Seneca Insurance Company,

Inc., that the Debtor procured through insurance agent Liberty Caparo Insurance Services. IPFS financed the premiums for the Policies in accordance with the terms of a Premium Finance Agreement executed on behalf of the Debtor on or about March 8, 2022 (the "Finance Agreement"). A true copy of the Finance Agreement, as well as the related Notice of Acceptance and of Assignment, is attached hereto as **Exhibit A.**

4.    Pursuant to the Finance Agreement, Debtor agreed to pay total premiums of $55,159.65 by making a cash down payment of $27,199.94 and having IPFS finance the $27,959.71 principal balance, plus finance charges of $857.99, for total payments due to IPFS of $28,817.70.

5.    Further pursuant to the Finance Agreement, Debtor agreed to repay the sum of $28,817.70 by making ten (10) consecutive monthly installments each in the amount of $2,881.77 beginning on April 10, 2022 and continuing on the tenth day of each month thereafter to and including January 10, 2023.

6.    Pursuant to paragraph 1 of the Finance Agreement, as security for the payments due thereunder, the Debtor granted to IPFS a security interest in all right, title and interest to the scheduled insurance policies, including all prepaid, unearned premiums on the policies financed, and all loss payments which reduce the unearned premiums.

7.    Pursuant to paragraph 2 of the Finance Agreement, the Debtor granted to IPFS an irrevocable power of attorney with full authority to cancel the scheduled insurance policy in the event of a default, including Debtor's failure to make any payments when due.

8.    Pursuant to paragraph 5 of the Finance Agreement, Debtor agreed, *inter alia*, that a default shall occur if a payment is not made when due.

9.      Pursuant to paragraph 6 of the Finance Agreement, Debtor agreed that IPFS may cancel the Policies after providing at least ten (10) days' written notice of intent to cancel if Debtor does not pay any installment when due under the Finance Agreement.

10.     Pursuant to Paragraph 13 of the Finance Agreement, Debtor agreed that if IPFS hires an attorney to collect any money due under the Finance Agreement, Debtor shall pay IPFS' reasonable attorney's fees and costs if and to the extent that such payment is allowed by the laws of the State in which Debtor is located.

11.     On or about July 10, 2022, Defendant defaulted under the terms of the Finance Agreement by failing to pay to IPFS the installment payment then due.  Defendant also has failed to make the monthly installment payments which have come due thereafter.

12.     On or about July 20, 2022, IPFS declared Defendant in default under the Finance Agreement and mailed to Defendant and its agent a written Notice of Intent to Cancel the Policy. Defendant has failed to cure the default to date.  A true copy of the Notice of Intent to Cancel the Policy is attached as **Exhibit B.**

13.     The Debtor now owes to IPFS an account balance of $20,215.62, which includes late charges of $43.23, together with IPFS' contractual attorneys' fees and costs.  The Debtor continues to receive the benefit of insurance coverage provided through the Policies, without making the payments due to IPFS therefor.

14.     The Debtor filed a petition under Chapter 11 of the Bankruptcy Code on June 7, 2022 (the "Petition Date").

15.     The value of IPFS's security interest in the collateral under the Finance Agreement on the Petition Date, was approximately $28,713.02, with a daily decline rate of approximately $151.12.  A statement of Debtor's account is attached hereto as **Exhibit C.**

16.    IPFS will become undersecured on or about October 28, 2022, because the insurance company earns premiums on the Policies at the rate of $151.12 per diem, thereby causing IPFS's cash collateral to further depreciate.

17.    The Debtor is enjoying the insurance coverage by allowing the insurance company to earn prepaid insurance premiums without payment to or the consent of IPFS, contrary to and in violation of the Finance Agreement.

18.    IPFS's inability to cancel the insurance policies is causing IPFS's security interest in its cash collateral, i.e., the unearned premiums, to depreciate daily which is causing irreparable damage to its property interests.

19.    Without an appropriate Order of this Court, and in light of the existing automatic stay, IPFS's security interest will continue to erode rapidly as a depreciating asset in the amount of $151.12 per day until the Policies can be canceled pursuant to the irrevocable power granted by the Debtor to IPFS in accordance with Paragraph 2 of the Finance Agreement.

20.    For these reasons, and those contained in the papers filed herewith, IPFS requests that the Court enter an Order granting IPFS relief from the automatic stay, authorizing IPFS to immediately cancel the Policies, recover the prepaid, unearned premiums and apply those sums to the outstanding indebtedness together with IPFS' contractual attorneys' fees and costs.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
LISA R. CHANDLER

Dated:  July 29, 2022

# EXHIBIT A

DocuSign Envelope ID: 83408321-2DFC-4071-BC14-7DC9375E4752

754 ROUTE 18 NORTH
SUITE 102
EAST BRUNSWICK, NJ 08816
(855)891-2585 FAX: (800)808-8784
CUSTOMER SERVICE: (855)891-2585

**PREMIUM FINANCE AGREEMENT**        **IPFS CORPORATION**

| | | | AGENT | INSURED |
|---|---|---|---|---|
| **A** | **CASH PRICE (TOTAL PREMIUMS)** | $55,159.65 | (Name & Place of business) LIBERTY CAPARO INSURANCE SERVICES | (Name & Residence or business) CHERRY STREET CAPITAL 113-27, LLC C/O NRIA 1 Harmon Plaza |
| **B** | **CASH DOWN PAYMENT** | $27,199.94 | 151 E 10TH AVE STE 200 | 9th Floor SECAUCUS, NJ 07094 |
| **C** | **PRINCIPAL BALANCE (A MINUS B)** | $27,959.71 | CONSHOHOCKEN,PA 19428-1567 (610)940-0750 FAX: (610)828-2524 | (201)210-2727 rey@nria.net |

Commercial

Account #: _____

**LOAN DISCLOSURE**
Additional Policies Scheduled on Page 3

Quote Number: ▉▉▉▉

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 6.640% | $857.99 | $27,959.71 | $28,817.70 |

**YOUR PAYMENT SCHEDULE WILL BE**

YOU HAVE THE RIGHT TO RECEIVE AN ITEMIZATION OF THE AMOUNT FINANCED:
☐ I WANT AN ITEMIZATION (DO NOT CHECK IF YOU DO NOT WANT AN ITEMIZATION)

| Number Of Payments | Amount Of Payments | When Payments Are Due | |
|---|---|---|---|
| 10 | $2,881.77 | Beginning: | MONTHLY 04/10/2022 |

**Security:** Refer to paragraph 1 below for a description of the collateral assigned to Lender to secure this loan.
**Late Charges:** A late charge will be imposed on any installment in default 10 days or more. This late charge will be the greater of 1.5% of the installment due and $25.
**Prepayment:** If you pay your account off early, you may be entitled to a refund of a portion of the finance charge computed by the actuarial method on a 360 day basis or as otherwise allowed by law. The finance charge includes a predetermined interest rate plus a non-refundable service/origination fee of $12.00. See the terms below and on the next page for additional information about nonpayment, default and penalties.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | MINIMUM EARNED PERCENT | POLICY TERM | PREMIUM |
|---|---|---|---|---|---|---|
| PENDING | 03/10/2022 | SENECA INSURANCE COMPANY INC AMWINS ACCESS INS/FT WASHINGTON AMWINS ACCESS INS/FT WASHINGTON | PROPERTY | 50.00% | 12 | 48,162.00 Fee: 1,000.00 Tax: 1,464.86 |
| | | | | Broker Fee: | | $0.00 |
| | | | | TOTAL: | | $55,159.65 |

The undersigned insured directs IPFS Corporation (herein, "Lender") to pay the premiums on the policies described on the Schedule of Policies. In consideration of such premium payments, subject to the provisions set forth herein, the insured agrees to pay Lender at the branch office address shown above, or as otherwise directed by Lender, the amount stated as Total of Payments in accordance with the Payment Schedule, in each case as shown in the above Loan Disclosure. The named insured(s), on a joint and several basis if more than one, hereby agree to the following provisions set forth on pages 1 and 2 of this Agreement: **1. SECURITY:** To secure payment of all amounts due under this Agreement, insured assigns Lender a security interest in all right, title and interest to the scheduled policies, including (but only to the extent permitted by applicable law): (a) all money that is or may be due insured because of a loss under any such policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee), (b) any unearned premium under each such policy, (c) dividends which may become due insured in connection with any such policy and (d) interests arising under a state guarantee fund. **2. POWER OF ATTORNEY:** Insured irrevocably appoints its Lender attorney-in-fact with full power of substitution and full authority upon default to cancel all policies above identified, receive all sums assigned to its Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the insured documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this Agreement.

Notice to Insured: (1) Read this agreement before you sign, (2) Do not sign this agreement if it contains blank spaces, (3) You are entitled to a copy of this agreement at the time you sign, (4) Keep your copy of this agreement to protect your legal rights.

The undersigned hereby warrants and agrees to Agent's Representations set forth herein.

DocuSigned by:

*Rey Grabato*
F7E12305A20D458
Signature of Insured or Authorized Agent

3/8/2022
DATE

*Signature of Agent*

3/8/22
DATE

(10/17) Copyright 2017 IPFS Corporation ™        Page 1 of 3        3/4/2022 Web - NJCFEE

i DocuSign Envelope ID: 83408321-2DFC-4071-BC14-7DC9375E4752          inance charge begins to accrue as of the earliest policy effective date.

**4. AGREEMENT EFFECTIVE DATE:** This Agreement shall be effective when written acceptance is mailed to the insured by Lender. **5. DEFAULT AND DELINQUENT PAYMENTS:** If any of the following happens insured will be in default: (a) a payment is not made when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against insured, or (c) insured fails to keep any promise the insured makes in this Agreement; provided, however, that, to the extent required by applicable law, insured may be held to be in default only upon the occurrence of an event described in clause (a) above. The acceptance by Lender of one or more late payments from the insured shall not estop Lender or be a waiver of the rights of Lender to exercise all of its rights hereunder or under applicable law in the event of any subsequent late payment. **6. CANCELLATION:** Lender may cancel the scheduled policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the insured does not pay any installment according to the terms of this Agreement or transfers any of the scheduled policies to a third party and the unpaid balance due to Lender shall be immediately due and payable by the insured. Lender at its option may enforce payment of this debt without recourse to the security given to Lender. **7. CANCELLATION CHARGES:** If Lender cancels any insurance policy in accordance with the terms of this Agreement and applicable law, then the insured shall pay Lender a cancellation charge equal to $5.00 or the maximum amount permitted by law. If cancellation occurs, the insured agrees to pay a finance charge on the outstanding indebtedness at the maximum rate authorized by applicable state law in effect on the date of cancellation until the outstanding indebtedness is paid in full or until such other date as required by law. (Not applicable in KY, NV, and VT) **8. INSUFFICIENT FUNDS (NSF) CHARGES:** If insured's check or electronic funding is dishonored for any reason, the insured will pay to Lender a fee of $20.00 or the maximum amount permitted by law. (Not applicable in AL and KY). **9. MONEY RECEIVED AFTER CANCELLATION:** Any payments made to Lender after Lender's Notice of Cancellation of the insurance policy(ies) has been mailed may be credited to the insured's account without any obligation on the part of Lender to request reinstatement of any policy. Any money Lender receives from an insurance company shall be credited to the balance due Lender with any surplus refunded to whomever is entitled to the money. In the event that Lender does request a reinstatement of the policy(ies) on behalf of the insured, such a request does not guarantee that coverage under the policy(ies) will be reinstated or continued. Only the insurance company has authority to reinstate the policy(ies). The insured agrees that Lender has no liability to the insured if the policy(ies) is not reinstated and Lender may charge a reinstatement fee where permitted up to the maximum amount allowed by law. **10. ASSIGNMENT:** The insured agrees not to assign this Agreement or any policy listed hereon or any interest therein (except for the interest of mortgagees or loss payees), without the written consent of Lender, and that Lender may sell, transfer and assign its rights hereunder or under any policy without the consent of the insured, and that all agreements made by the insured hereunder and all rights and benefits conferred upon Lender shall inure to the benefit of Lender's successors and assigns (and any assignees thereof). **11. INSURANCE AGENT OR BROKER:** The insured agrees that the insurance agent or broker soliciting the policies or through whom the policies were issued is not the agent of Lender; and the agent or broker named on the front of this Agreement is neither authorized by Lender to receive installment payments under this Agreement nor to make representations, orally or in writing, to the insured on Lender's behalf (except to the extent expressly required by applicable law). As and where permissible by law, Lender may compensate your agent/broker for assisting in arranging the financing of your insurance premiums. If you have any questions about this compensation you should contact your agent/broker. **12. FINANCING NOT A CONDITION:** The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance. **13. COLLECTION COSTS:** insured agrees to pay attorney fees and other collection costs to Lender to the extent permitted by law if this Agreement is referred to an attorney or collection agency who is not a salaried employee of Lender, to collect any money insured owes under this Agreement. (Not applicable in KY) **14. LIMITATION OF LIABILITY:** The insured agrees that Lender's liability to the insured, any other person or entity for breach of any of the terms of this Agreement for the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of Lender' gross negligence or willful misconduct (not applicable in KY). Insured recognizes and agrees that Lender is a lender only and not an insurance company and that in no event does Lender assume any liability as an insurer hereunder or otherwise. **15. CLASSIFICATION AND FORMATION OF AGREEMENT:** This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the insured and agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy. **16. REPRESENTATIONS AND WARRANTIES:** The insured represents that (a) the insured is not insolvent or presently the subject of any insolvency proceeding (or if the insured is a debtor of bankruptcy, the bankruptcy court has authorized this transaction), (b) if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured, (c) all parties responsible for payment of the premium are named and have signed this Agreement, and (d) there is no term or provision in any of the scheduled policies that would require Lender to notify or get the consent of any third party to effect cancellation of any such policy. **17. ADDITIONAL PREMIUM FINANCING:** insured authorizes Lender to make additional advances under this premium finance agreement at the request of either the insured or the insured's agent with the insured's express authorization, and subject to the approval of Lender, for any additional premium on any policy listed in the Schedule of Policies due to changes in the insurable risk. If Lender consents to the request for an additional advance, Lender will send insured a revised payment amount ("Revised Payment Amount"). insured agrees to pay the Revised Payment Amount, which may include additional finance charges on the newly advanced amount, and acknowledges that Lender will maintain its security interest in the Policy with full authority to cancel all policies and receive all unearned premium if insured fails to pay the Revised Payment Amount. **18. PRIVACY:** Our privacy policy may be found at https://ipfs.com/Privacy. **19. ENTIRE DOCUMENT / GOVERNING LAW:** This document is the entire Agreement between Lender and the insured and can only be changed in writing and signed by both parties except that the insured authorizes Lender to insert or correct on this Agreement, if omitted or incorrect, the insurer's name and the policy number(s). Lender is also authorized to correct patent errors and omissions in this Agreement. In the event that any provision of this Agreement is found to be illegal or unenforceable, it shall be deemed severed from the remaining provisions, which shall remain in full force and effect. The laws of the State of New Jersey will govern this Agreement. **20. AUTHORIZATION:** The insurance company(ies) and their agents, any intermediaries and the agent / broker named in this Agreement and their successors and assigns are hereby authorized and directed by insured to provide Lender with full and complete information regarding all financed insurance policy(ies), including without limitation the status and calculation of unearned premiums, and Lender is authorized and directed to provide such parties with full and complete information and documentation regarding the financing of such insurance policy(ies), including a copy of this Agreement and any related notices. **21. WAIVER OF SOVERIGN IMMUNITY:** The insured expressly waives any sovereign immunity available to the insured, and agrees to be subject to the laws as set forth in this Agreement (and the jurisdiction of federal and/or state courts) for all matters relating to the collection and enforcement of amounts owed under this Agreement and the security interest in the scheduled policies granted hereby.

### AGENT/BROKER REPRESENTATIONS

The agent/broker executing this, and any future, agreements represents, warrants and agrees: (1) installment payments totaling $0.00 and all applicable down payment(s) have been received from the insured in immediately available funds, (2) the insured has received a copy of this Agreement; if the agent/broker has signed this Agreement on the insured's behalf, the insured has expressly authorized the agent/broker to sign this Agreement on its behalf or, if the insured has signed, to the best of the undersigned's knowledge and belief such signature is genuine, (3) the policies are in full force and effect and the information in the Schedule of Policies including the premium amounts is correct, (4) no direct company bill, audit, or reporting form policies or policies subject to retrospective rating or to minimum earned premium are included, except as indicated, and the deposit of provisional premiums is not less than anticipated premiums to be earned for the full term of the policies, (5) the policies can be cancelled by the insured or Lender (or its successors and assigns) on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (6) there are no bankruptcy, receivership, or insolvency proceedings affecting the insured, (7) to hold Lender, its successors and assigns harmless against any loss or expense (including attorney fees) resulting from these representations or from errors, omissions or inaccuracies of agent/broker in preparing this Agreement, (8) to pay the down payment and any funding amounts received from Lender under this Agreement to the insurance company or general agent (less any commissions where applicable), (9) to hold in trust for Lender or its assigns any payments made or credited to the insured through or to agent/broker directly or indirectly, actually or constructively by the insurance companies and to pay the monies, as well as the unearned commissions to Lender or its assigns upon demand to satisfy the outstanding indebtedness of the insured, (10) all material information concerning the insured and the financed policies necessary for Lender to cancel such policies and receive the unearned premium has been disclosed to Lender, (11) no term or provision of any financed policy requires Lender to notify or get the consent of any third party to effect cancellation of such policy, and (12) to promptly notify Lender in writing if any information on this Agreement becomes inaccurate.

DocuSign Envelope ID: 83408321-2DFC-4071-BC14-7DC9375E4752

| (Name & Place of business) LIBERTY CAPARO INSURANCE SERVICES 151 E 10TH AVE STE 200 CONSHOHOCKEN,PA 19428-1567 (610)940-0750 FAX: (610)828-2524 | **INSURED** (Name & Residence or business) CHERRY STREET CAPITAL 113-27, LLC C/O NRIA 1 Harmon Plaza 9th Floor SECAUCUS, NJ 07094 (201)210-2727 rey@nria.net |
|---|---|

Account #: _____        **SCHEDULE OF POLICIES**        Quote Number: ▆▆▆▆
(continued)

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | MINIMUM EARNED PERCENT | POL. TERM | PREMIUM |
|---|---|---|---|---|---|---|
| PENDING | 03/10/2022 | ATLANTIC CASUALTY INSURANCE CO AMWINS ACCESS INS/FT WASHINGTON AMWINS ACCESS INS/FT WASHINGTON | GENERAL LIABILITY | 25.00% | 12 | 3,993.00 Fee: 420.00 Tax: 119.79 |
| | | | | Broker Fee: | | $0.00 |
| | | | | TOTAL: | | $55,159.65 |

**IPFS CORPORATION**
(IPFS)
3522  THOMASVILLE RD
STE 400
TALLAHASSEE, FL 32309
(855)891-2585 - FAX: (800)808-8764

| NOTICE OF ACCEPTANCE AND OF ASSIGNMENT | |
|---|---|
| REFER TO THIS ACCOUNT NO. IN ALL CORRESPONDENCE | ACCOUNT NUMBER |
| | ▮▮▮▮▮▮▮ |

Dear Customer,

Thank you for the opportunity to finance your insurance premium. Per your request, we have paid the premium balance due on the policy listed below, less your down payment, to either the insurer or your agent as instructed by your agent. Your payment schedule is shown below. If payment coupons are not enclosed, you will be billed for each installment.

**Payment Instructions:**
1. All payments must be made payable to IPFS CORPORATION
2. To ensured proper credit to your account, write your account number on your check and return the proper coupon with your payment.
3. Be sure your payment is mailed in time to reach our office by your due date.
4. Mail your payment to the address on the coupon.



1-0.3200 00000D9RP86H7 1/2 BIN:0 0-387
ⁱⁱᵖᵖᵖ·ⁱⁱᵘᵖᵖ·ⁱⁱⁱ·ⁱⁱⁱₐₐₕⁱⁱⁱᵖⁱᵖ·ⁱ·ⁱ·ⁱ·ⁱₐⁱⁱⁱⁱⁱ·ⁱⁱ·ⁱₚₚₕⁱ·ⁱ

**INSURED**
CHERRY STREET CAPITAL 113-27, LLC
C/O NRIA
1 HARMON PLAZA
9TH FLOOR
SECAUCUS, NJ 07094-2804

**AGENT**
LIBERTY CAPARO INSURANCE SERVICES
151 E 10TH AVE STE 200
CONSHOHOCKEN, PA 19428-1567

| DISCLOSURE | |
|---|---|
| TOTAL PREMIUMS | $55,159.65 |
| DOWN PAYMENT | $27,199.94 |
| AMOUNT FINANCED | $27,959.71 |
| FINANCE CHARGE | $857.99 |
| ASSESSMENTS | $0.00 |
| TOTAL PAYMENTS | $28,817.70 |
| NUMBER OF PAYMENTS | 10 |
| PAYMENT AMOUNT | $2,881.77 |
| ANNUAL % RATE | 6.640 |
| ACCEPTANCE DATE | 03/11/22 |

| SCHEDULE OF PAYMENTS | | |
|---|---|---|
| PYMT NO. | DUE DATE | AMOUNT |
| 1 | 04/10/22 | $2,881.77 |
| 2 | 05/10/22 | $2,881.77 |
| 3 | 06/10/22 | $2,881.77 |
| 4 | 07/10/22 | $2,881.77 |
| 5 | 08/10/22 | $2,881.77 |
| 6 | 09/10/22 | $2,881.77 |
| 7 | 10/10/22 | $2,881.77 |
| 8 | 11/10/22 | $2,881.77 |
| 9 | 12/10/22 | $2,881.77 |
| 10 | 01/10/23 | $2,881.77 |

The terms and conditions of your premium finance agreement govern this loan. If for any reason you did not authorize this request for financing of your insurance premium, notify us immediately at the address or telephone number shown above.

## SCHEDULE OF POLICIES

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE | FULL NAME OF INSURER AND GENERAL AGENT OTHER THAN SUBMITTING PRODUCER TO WHOM COPY OF THIS NOTICE WAS SENT | COVERAGE FIRE, AUTO MAR, I.M., CAS | POLICY TERM IN MONTHS COVERED BY PREM. | PREMIUM FINANCED |
|---|---|---|---|---|---|
| ▮▮▮▮▮▮ | 03/10/22 | SENECA INSURANCE COMPANY INC AMWINS ACCESS INS/FT WASHINGTON | PRPRTY | 12 | $48,162.00 |
| | | | FEES TAXES | | $1,000.00 $1,464.86 |
| | | Continued on Schedule A | | | |

**Make online payments or view account information at www.ipfs.com.**
**Please use access code ATKJ68Q to register (first time users).**

1-0.3200  00000D9RP86H7  1/2 BIN:0  0-387

**IPFS CORPORATION**
(IPFS)

**SCHEDULE A**

| NOTICE OF ACCEPTANCE AND OF ASSIGNMENT | |
|---|---|
| REFER TO THIS ACCOUNT NO. IN ALL CORRESPONDENCE | ACCOUNT NUMBER |
| | █████████ |

**INSURED**
CHERRY STREET CAPITAL 113-27, LLC
C/O NRIA
1 HARMON PLAZA
9TH FLOOR
SECAUCUS, NJ 07094

**AGENT**
LIBERTY CAPARO INSURANCE SERVICES
151 E 10TH AVE STE 200
CONSHOHOCKEN, PA 19428-1567

## SCHEDULE OF POLICIES

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE | FULL NAME OF INSURER AND GENERAL AGENT OTHER THAN SUBMITTING PRODUCER TO WHOM COPY OF THIS NOTICE WAS SENT | COVERAGE FIRE, AUTO MAR, I.M., CAS | POLICY TERM IN MONTHS COVERED BY PREM. | PREMIUM FINANCED |
|---|---|---|---|---|---|
| PENDING | 03/10/22 | ATLANTIC CASUALTY INSURANCE CO AMWINS ACCESS INS/FT WASHINGTON | GL | 12 | $3,993.00 |
| | | | FEES | | $420.00 |
| | | | TAXES | | $119.79 |

1-0.3200 00000398P8H7 2/2 BIN:D O-388

# EXHIBIT B

**IPFS CORPORATION**
(IPFS)
P.O. BOX 412086
KANSAS CITY, MO 64141-2086
PHONE: (855)891-2585 - FAX: (800)806-8784

| NOTICE OF INTENT TO CANCEL | | |
|---|---|---|
| DATE OF NOTICE | ACCOUNT NUMBER | PAYMENT NO. |
| 07/20/22 | ██████████ | 4 |

IF ANY QUESTIONS, PLEASE CALL: (855)891-2585

| AMOUNT OF CURRENT PAYMENT | LATE CHARGE | PREVIOUS FEES NOT PAID | OTHER AMOUNTS | PLEASE PAY THIS AMOUNT |
|---|---|---|---|---|
| $2,881.77 | $43.23 | $0.00 | $0.00 | $2,925.00 |

1-0.3200 00000D9RP8QHL 1/2 BIN:0 0-82

**INSURED**
CHERRY STREET CAPITAL 113-27, LLC
C/O NRIA
1 HARMON PLAZA
9TH FLOOR
SECAUCUS, NJ 07094-2804

**AGENT**
LIBERTY CAPARO INSURANCE SERVICES
151 E 10TH AVE STE 200
CONSHOHOCKEN, PA 19428-1567

Your payment is now due. If IPFS does not receive the amount due on or before 08/02/22, 5:00 PM Central Time your financed insurance policies will be cancelled. (KINDLY DISREGARD THIS NOTICE IF YOU HAVE ALREADY MAILED YOUR PAYMENT) MAKE YOUR PAYMENT NOW TO KEEP YOUR INSURANCE IN FORCE. THIS IS THE ONLY NOTICE YOU WILL RECEIVE BEFORE CANCELLATION IS MADE.

## PLEASE MAKE ALL PAYMENTS TO ONE OF THE ADDRESSES NOTED BELOW.

To ensure proper credit, please send the coupon below with your payment and write your account number on your check.

**Make online payments or view account information at ipfs.com.**
**Please use access code ATKJ68Q to register (first time users).**

## NY, SC, FL & MD INSUREDS: SEE LAST PAGE

DETACH HERE

Written notations on this coupon will NOT be received.
To ensure proper credit, include coupon with payment.

INTENT (07/16) Copyright 2016 IPFS Corporation

INSURED
CHERRY STREET CAPITAL 113-27, LLC
C/O NRIA
1 HARMON PLAZA
9TH FLOOR
SECAUCUS, NJ 07094-2804

| PAYMENT COUPON | | |
|---|---|---|
| PAYMENT NO. | ACCOUNT NUMBER | DUE DATE |
| 4 | ██████████ | 07/10/22 |

| | |
|---|---|
| For any overnight or priority delivery, please mail to:<br>IPFS CORPORATION<br>1055 BROADWAY<br>11TH FLOOR<br>KANSAS CITY, MO 64105<br>For questions, please call (855)891-2585 | Make online payments or view account information at ipfs.com.<br>Please use access code ATKJ68Q to register (first time users). |

| | |
|---|---|
| PAYMENT DUE | $2,881.77 |
| LATE FEE | $43.23 |
| OTHER FEES DUE | $0.00 |
| OTHER AMOUNTS DUE | $0.00 |

MAKE CHECK PAYABLE AND REMIT TO:
**IPFS CORPORATION**
**P.O BOX 32144**
**NEW YORK, NY    10087-2144**

| IF RECEIVED AFTER    07/20/22<br>5:00 PM CENTRAL TIME<br>PLEASE PAY THIS AMOUNT | $2,925.00 |
|---|---|

██████████  00002925008

**IPFS CORPORATION**
(IPFS)
P.O. BOX 412086
KANSAS CITY, MO 64141-2086
PHONE: (855)891-2585 - FAX: (800)808-8784

| NOTICE OF INTENT TO CANCEL | |
|---|---|
| REFER TO THIS ACCOUNT NO. IN ALL CORRESPONDENCE | ACCOUNT NUMBER |
| | ▮▮▮▮▮▮ |

### SCHEDULE A

**INSURED**
CHERRY STREET CAPITAL 113-27, LLC
C/O NRIA
1 HARMON PLAZA
9TH FLOOR
SECAUCUS, NJ 07094

**AGENT**
LIBERTY CAPARO INSURANCE SERVICES
151 E 10TH AVE STE 200
CONSHOHOCKEN, PA 19428-1567

## SCHEDULE OF POLICIES

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE | FULL NAME OF INSURER AND GENERAL AGENT OTHER THAN SUBMITTING PRODUCER TO WHOM COPY OF THIS NOTICE WAS SENT | COVERAGE FIRE, AUTO MAR, I.M., CAS | POLICY TERM IN MONTHS COVERED BY PREM. | PREMIUM FINANCED |
|---|---|---|---|---|---|
| ▮▮▮▮▮▮ | 03/10/22 | SENECA INSURANCE COMPANY INC AMWINS ACCESS INS/FT WASHINGTON | PRPRTY | 12 | $48,162.00 |
| | | | FEES | | $1,000.00 |
| | | | TAXES | | $1,464.86 |
| PENDING | 03/10/22 | ATLANTIC CASUALTY INSURANCE CO AMWINS ACCESS INS/FT WASHINGTON | GL | 12 | $3,993.00 |
| | | | FEES | | $420.00 |
| | | | TAXES | | $119.79 |

INTENT (07/16) Copyright 2016 IPFS Corporation

# EXHIBIT C



# Customer Account History

| Primary Insured: CHERRY STREET CAPITAL 113-27, LLC |
|---|
| Account: ███████ |
| Account Status: Delinquent |
| Date: 07/26/2022 |

| Date | Event | Amount | Balance |
|---|---|---|---|
| 03/11/22 | Original Contract | 56,017.64 | 56,017.64 |
| 03/11/22 | Down Payment | (27,199.94) | 28,817.70 |
| 03/11/22 | Remaining Late Charge from Previous Account | 234.83 | 29,052.53 |
| 03/14/22 | Regular Payment | (2,881.77) | 26,170.76 |
| 04/06/22 | ACH Payment Charge | 6.00 | 26,176.76 |
| 04/06/22 | Regular Payment | (3,122.60) | 23,054.16 |
| 05/17/22 | ACH Payment Charge | 6.00 | 23,060.16 |
| 05/17/22 | Regular Payment | (2,887.77) | 20,172.39 |
| 07/20/22 | Late Charge | 43.23 | 20,215.62 |
| 07/20/22 | Notice of Intent to Cancel | - | 20,215.62 |