**THE KELLY FIRM, P.C.**
Andrew J. Kelly, Esq.
Coast Capital Building
1011 Highway 71, Suite 200
Spring Lake, New Jersey 07762
(732) 449-0525
akelly@kbtlaw.com
*Attorneys for U.S. Construction, Inc.*

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, et al.,<br><br>Debtor. | **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY**<br><br>Chapter 11<br><br>Case No.: 22-14539 (JKS)<br><br>Hon. John K. Sherwood<br><br>REPLY TO OPPOSITION TO MOTION TO COMPEL PERFORMANCE AND/OR ASSUMPTION OF AGREEMENTS AND FOR RELATED RELIEF<br><br>Hearing Date: August 9, 2022 at 10:00 a.m. |

## PRELIMINARY STATEMENT

U.S. Construction, Inc. ("USC") as the counterparty to construction and development contracts with National Realty Investment Advisors, LLC, the debtor (the "Debtor" or "NRIA") related to a project in Delray Beach, Florida ("DB Project") filed its Motion to compel the Debtor to perform and/or assume the construction and development contracts between USC and allow USC to complete the DB Project regardless of whether the contracts are executory or not, authorizing and compelling the Debtor to pay certain subcontractors, and for such other and further relief as the Court deems appropriate (the "Motion") on July 12, 2022. After holding an initial hearing on July 19, 2022, the Court set a hearing date of August 9, 2022 at 10:00 a.m. with

objections to the Motion due on August 2, 2022.  Thereafter, the Debtor filed an objection to the Motion on August 1, 2022, and the Official Committee of Unsecured Creditors ("Creditors Committee") filed what can best be described as a "me too" objection on August 2, 2022.  No other objections to the Motion have been filed or received.

The two filed objections are similar in that they are long on innuendo and non-specific allegations, and short on substance.  Perhaps the Debtor led by its resigning "independent manager", and the Creditors Committee led by "the forensic team at Alvarez &Marsal, and former FBI agents" have some substance to back up their innuendo, but it would be helpful if they would identify that substance with the Court and USC so that everyone can drill down on what is really in the best interests of the bankruptcy estate. USC presented the details of the DB Project to the Court and interested parties in its original Motion pleadings but, other than some mudslinging from the Debtor and Creditors Committee, the Court and USC have not received anything in return.

The objections to the Motion highlight how little the Debtor and Creditors Committee know about the DB Project, making their collective prejudgment of whether to assume or reject the construction and development contracts with USC so quizzical (they both support rejection although the Debtor has yet to move to reject the contracts, perhaps because that would require the Debtor to detail its business judgment reasons, and upon information and belief neither has had a representative visit the DB Project).  With an application pending to appoint three new managers and a new chief restructuring officer, the delays that have dogged this Chapter 11 proceeding filed on June 7, 2022 (e.g., follow-up schedules yet to be filed more than two months later, construction projects languishing, etc.) may finally become the exception rather than the norm.

For the reasons outlined in the original Motion papers, USC completing the DB Project is the most sensible and only practical approach.  USC understands that the new managers, new CRO

and whoever else the Court entrusts to make key decisions for the Debtor going forward will fully investigate USC and its principals' prior dealings with the Debtor and Debtor's insiders. However, common sense must prevail regarding completion of the DB Project.

USC, by and through its counsel, The Kelly Firm, P.C., offers the following response to the objections filed by the Debtor and Creditors Committee:

## STATEMENT OF FACTS

The facts set forth in the accompanying Certification of John Farina ("Farina Cert.") dated August 5, 2022 are incorporated by reference as if fully set forth herein.

### Debtor's Objection

The Debtor offers two chief arguments in response to the Motion: first, the Court lacks the authority to compel the Debtor to assume the contracts, and can only set a deadline for the Debtor to assume or reject; and second, there are unspecified "misdeeds" and "significant irregularities in the Debtor's selection process of USC as a general contractor" that have led the Debtor and its soon to be dismissed "independent manager" to the conclusion that they "do not believe that the agreements with USC (including the ODR Contract) were negotiated at arm's length." See ECF Doc 222, ¶¶'s 5 and 17. Based on these unsupported allegations, the Debtor indicates it has decided "the agreements are the product of a tainted selection process that was not, and is not, in the best interests of the Debtor estates. As a result, the Debtors terminated all of their relationships with USC, including with respect to the Ocean Delray project and the Debtors' ongoing project at 506 Henry Street in Brooklyn, New York, and will not be doing any more work with USC going forward." Id., at ¶ 17.

Contrary to the Debtor's claim that it "terminated" its ongoing contract at 506 Henry St., USC was forced to terminate the contract with the Debtor on May 6, 2022 because of NRIA's utter

3

failure to respond to simple and repeated requests for the Debtor to process and make payment on draw requests for completed construction work on the project from months prior. NRIA's failure to respond was not due to any wrongdoing by USC, but rather is attributable to the Debtor "sleeping at the wheel" with no one in NRIA's organization knowing how to respond to a draw request or how it should be processed. The 506 Henry St. project is a brownstone building in Brooklyn, NY that USC renovated into 5 luxury condominiums. Had the Debtor responded to USC's repeated inquiries, with an estimated completion date in February of 2023 and projected sales of roughly $10 Million, after debt repayment the net proceeds would have been available solely to benefit NRIA's creditors. USC has already completed the design and construction of thirteen (13) similar boutique condominium buildings in Brooklyn, which collectively have generated over $76 million in sales to date and substantial money for NRIA. Since USC terminated the Brooklyn contract on May 6, 2022, NRIA has made little to no progress on completing the project and has returned no capital back to its investors. Instead, the project languishes with no progress having been made in three months, and no viable plan by the Debtor to complete this project and have it ready for sale.

Noticeably absent from the Debtor's opposition is a certification from anyone detailing why USC's Motion position and the details of the DB Project laid out in the Motion are contraindicated, or why allowing USC (who has successfully brought the DB Project to near completion) to finish the project is not in the best interests of the estate and its creditors. Instead, the Debtor pronounces that "[t]he Debtors will not do business with a party with whom they are litigating." Id., at ¶ 18. Interesting business philosophy. Rather than perform due diligence on the DB Project and independently determine if USC is the best party to complete the project and maximize the return to the Debtor estates, the Debtor offers only a blanket statement that the

4

Debtor will not work with any party it plans to sue. Perhaps another option: the Debtor investigates the status of the DB Project and if USC is the best company to complete the job (they are), then negotiate an arrangement whereby the contracts are assumed but the Debtor reserves all rights to pursue USC for any claims for wrongdoing. A less than novel approach.

After filing for Chapter 11 relief, the Debtor's senior staff communicated with USC on numerous occasions, including in writing, instructing USC that it should continue all construction work on the DB Project. The Debtor assured USC that the costs being incurred to complete the DB Project were being submitted to the Court as part of the Debtor's ongoing business operations and insisted that all work needed to continue and would be paid for in a timely manner. As it turns out, these were just lies by the Debtor, whose misrepresentations and false assurances allowed millions of dollars in additional construction work to be performed by USC and the subcontractors; meanwhile it appears the Debtor's intention was to never pay USC for this work.

The parties agree the Court has the power to set a deadline by which the Debtor must assume or reject the contracts. The case is more than two months old, and so far the Debtor has offered nothing to dispute that (i) the DB Project is suffering from the Debtor's neglect, and (ii) USC is positioned to successfully complete the project and deliver significant financial benefit to the Debtor. Instead, the Debtor cites case law that the Court can do nothing more than wait for the Debtor to make a decision on assumption or rejection or, if asked, set a deadline for Debtor to finally make a formal decision and give its business reasons for doing so. If the Court lacks the ability to take scissors from the running child, then the Court should set a very short deadline for the Debtor to assume or reject the DB Project contracts and proffer its sound business reasons for doing so.[1]

---

[1] USC recognizes a key threshold issue may be determining what person or persons will exercise the sound business judgment for the Debtor. Once the person or group of persons is identified by the Court, USC remains ready, willing,

**Creditors Committee Objection**

The objection lodged by the Creditors Committee contains even less substance than the Debtor's objection, offering hyperbolic conjecture such as USC "*appears* to have been complicit in [Thomas 'Nick'] Salzano's illicit enterprise and *may* be liable for tens of millions of dollars in diverted, misappropriated investor funds." (Emphasis added). See ECF Doc 231, ¶ 2. That the Creditors Committee may be investigating "the pervasive fraud that led to the Debtors' bankruptcy filing" does not excuse the Creditors Committee's lack of specifics and rush to judgment on rejection of the DB Project contracts. Id., at ¶ 1.

The Creditor Committee's near exclusive reliance on the New Jersey Bureau of Securities' *Summary Cease and Desist Order* dated June 21, 2022 (the "NJBS Order") in opposing the Motion begs the question of what the Creditors Committee representatives have done to investigate and substantiate the allegations against USC and Dustin Salzano.[2] It is certainly noteworthy, although conveniently omitted from the Creditor Committee's objection, that neither USC nor Dustin Salzano are parties to the NJBS Order. Any reference to USC and/or Dustin Salzano therein relates to allegations leveled at Thomas "Nick" Salzano who is Dustin's father, and no allegations have been made against USC or its principals.

Like the Debtor's objection, the Creditors Committee's objection fails to provide the Court and USC with any specifics or facts to back up the conjecture. The references to USC and Dustin Salzano in the NJBS Order provide no insight into whether the DB Project should be completed

---

and able to meet with the decisionmaker(s) so that whoever speaks for the Debtor can understand the details of the DB Project.

[2] The NJBS Order contains no mention of John M. Farina, USC's President and CEO (who nonetheless is also besmirched in the Committee's objection) or the DB Project. The NJBS Order only references USC twice (in ¶¶ 51.a and 83(a)) and Dustin Salzano three times (in ¶¶ 51.a, 80(a-b), and 108-109) in sixty-two pages and one hundred eighty-six numbered paragraphs where neither the company nor individual is named as a party, and all the statements involving USC and Dustin Salzano are just that - statements.

by USC, and it is of real concern that the Creditors Committee (and Debtor) may be basing the recommendation to assume or reject the DB Project contracts in whole or large measure on the NJBS Order.

[Balance of Page Intentionally Left Blank]

**CONCLUSION**

If and when allegations are made against USC, et al. (the Debtor's objection foretells of an adversary complaint in the offing), USC and its principals look forward to responding to and rebutting any claims. However, the promise of an adversary complaint does not excuse the Debtor's haphazard declarations issued in support of rejecting the DB Project contracts or the Creditors Committee's ill-informed pronouncement that it "agrees whole-heartedly" with the Debtor's decision. Two parties failing to exercise sound business judgment do not make a "right".

Based on the foregoing and the reasons set forth in the original Motion pleadings, USC respectfully requests that the Motion to compel performance and/or assumption of the contracts and for related relief be granted, and that this Court grant such other and further relief as is deemed appropriate.

**THE KELLY FIRM, P.C.**
Attorneys for U.S. Construction, Inc.

Dated: August 5, 2022            By:    */s/ Andrew J. Kelly*_____
                                        **ANDREW J. KELLY**