| |
|---|
| **IN THE UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**KASOWITZ BENSON TORRES LLP**<br>Matthew B. Stein<br>1633 Broadway<br>New York, New York 10019<br>Telephone: (212) 506-1700<br>Email: MStein@kasowitz.com<br><br>*Counsel for Douglas Elliman Real Estate* |

| | |
|---|---|
| IN RE:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-14539 (JKS)<br><br>(Jointly Administered) |

**DOUGLAS ELLIMAN REAL ESTATE'S MOTION TO COMPEL PAYMENT OF CO-BROKERAGE COMMISSIONS AT CLOSING OF SALE OF DEBTOR PROPERTY AT (I) 494 7th STREET, UNIT NO. 1, BROOKLYN NY 11215 AND (II) 285 7th STREET, UNIT NO. 1, BROOKLYN, NY 11215**

TO THE HONORABLE JOHN K. SHERWOOD
UNITED STATES BANKRUPTCY JUDGE:

Douglas Elliman Real Estate ("Elliman"), by its undersigned attorneys, hereby moves (the "Motion"), pursuant to Section 105 of Title 11 of the United States Code (the "Bankruptcy Code") for the entry of an order (the "Proposed Order") directing the above-captioned debtors and debtors-in-possession (the "Debtors") to pay Elliman's earned commissions on the sale of: (i) Debtor Seventh Street Capital 484 LLC's condominium property located at 494 7th Street Brooklyn, Unit No. 1, Brooklyn, NY 11215 (the "494 Property"), which is expected to close on August 9, 2022 and (ii) Debtor 7th Street Capital 285 LLC's condominium property located at

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

285 7th Street, Unit No. 1, Brooklyn, NY 11215 (the "285 Property," and with the 494 Property, the "Properties"), which closed on July 28, 2022.

In support of the Motion, Elliman relies on and incorporates herewith the declarations of (i) Nadia Bartolucci, real estate salesperson for the 494 Property, (the "Bartolucci Declaration") and (ii) Shari Markoff, associate broker for the 285 Property, (the "Markoff Declaration," and together with the Bartolucci Declaration, the "Declarations"), both dated August 5, 2022 (filed contemporaneously herewith). As set forth in greater detail in the Declarations, Ms. Bartolucci is a Licensed Real Estate Salesperson for Elliman, and Ms. Markoff is an associate broker for Elliman, each with person knowledge of the Properties' sales.

In further support of the Motion, Elliman respectfully states as follows:

## BACKGROUND

1. Prepetition, following extensive marketing efforts by Elliman, the Debtors executed real estate sale contracts for each of the Properties. Pursuant to each of the contracts, Elliman is entitled to receive a brokerage commission as consideration for the valuable services rendered by its agents facilitating the respective sales. In late June, this Court entered an order authorizing the sale and closing of the Properties pursuant to the previously executed contracts. [Docket No. 62]. The sale of the 285 Property closed on July 28, 2022 (the "285 Closing") and the sale of the 494 Property is scheduled to close on August 9, 2022 (the "494 Closing", and together, the "7th Street Closings"). As a result, the Debtors are responsible for the prompt payment of Elliman's earned commissions – now, with respect to the 285 Property, and on August 9, with respect to the 494 Property.

2. The commissions owed to Elliman total: (i) $58,750.00 for the 494 Property and (ii) $56,250.00 for the 285 Property. (Bartolucci Declaration ¶ 6; Markoff Declaration ¶ 6.)

There is no viable dispute that the Debtors owe the respective commission payments. The contracts of sale require their payment upon closing. (Declarations, *id.*) The Debtors specifically named Elliman as a party to whom a commission is owed. *See Debtors' Motion for Entry of an Order Authorizing the Private Sale of Certain Properties Free and Clear of Liens, Claims, Encumbrances and Interests, and Granting Related Relief* (Docket No. 36, the "Sale Motion") at ¶¶ 9, 10. And, the order granting the relief sought by the Sale Motion (Docket No. 62, the "Sale Order") provides that the Debtors must hold funds necessary to pay commissions in escrow. The Debtors, however, have refused to pay Elliman's commissions, forcing Elliman to protect its contractual right to timely payment by filing this Motion. (Bartolucci Declaration ¶ 7; Markoff Declaration ¶ 7.)

3. Both the 285 Closing and 494 Closing are beneficial to the respective Debtors' estates. Indeed, it is Ms. Bartolucci's and Ms. Markoff's firm belief that their services were critical to the closing of both transactions, as each Property has its own unique attributes and selling points. (Bartolucci Declaration ¶ 10; Markoff Declaration ¶ 10.)

4. Prior to the execution of the contract to sell the 494 Property, Ms. Bartolucci worked with purchasers Sarah Greenberg and Oded Burger (the "494 Purchasers") for over six months. (Bartolucci Declaration ¶ 8). Similarly, prior to the execution of the contract to sell the 285 Property, Ms. Markoff worked with purchasers Alyson, Kenneth and Phyliss Aversa (the "285 Purchasers" and with the 494 Purchasers, the "Purchasers") for a similar duration. (Markoff Declaration ¶ 8.)

5. At all times, Elliman rendered the best service possible to the Purchasers, spending countless hours at nearly all times of the week, including weekends. Elliman's services included, but were not limited to, numerous showings, connecting them with various

3

professionals in the industry for financing quotes, and assembling data charts and market information. This effort is labor-intensive and requires focus and attention to detail. Matching a homeowner to his or her future home is an arduous but rewarding endeavor. (Bartolucci Declaration ¶ 9; Markoff Declaration ¶ 9.)

6. Elliman also rendered numerous other services that directly benefited the Debtors. Elliman's brokers, Ms. Markoff and Ms. Bartolucci, served as the primary points-of-contact among the professionals who drafted the contract, procured the financing, and ensured that all requisite documents were completed for closing. Specifically, Elliman's brokers prepared and submitted to the Debtors the Purchasers' offer on the Properties, which the Debtors accepted. They also worked on the deal sheet, reviewed the attorneys' due diligence, reviewed the sale contracts with the Purchasers, and communicated with the Debtors' brokers regarding various issues like timeline of certificate of occupancy and closing. (Bartolucci Declaration ¶ 11; Markoff Declaration ¶ 11.) Ms. Markoff connected to 285 Purchasers with skilled attorneys to guide them through the sale process in light of the bankruptcy and also assisted with helping them delay the sale of their prior home due to the delay in the 285 Closing. (Markoff Declaration ¶¶ 13, 14). Ms. Bartolucci assisted the 494 Purchasers with obtaining rate-lock extensions on their financing so that they could still go forward with the purchase. (Bartolucci Declaration ¶ 12).

7. Elliman's work continued after the sale contracts were executed. Some of the various services that followed included, among other tasks, accompanying the Purchasers on the property inspections, undertaking the punch list walk-throughs, and assembling and submitting the punch lists, all while communicating with the Purchasers and the representatives of the Debtors every step of the way. (Bartolucci Declaration ¶ 11; Markoff Declaration ¶ 11.) All of

these services facilitated the 285 Closing and the anticipated imminent occurrence of the 494 Closing.

8. The Debtors' lack of responsiveness throughout the sale process only made Elliman work harder to get these deals to close. The Debtors' commencement of these chapter 11 bankruptcy case on June 7, 2022 (the "Petition Date"), caused unanticipated delays in closing the sales for each of the Properties that were exacerbated by the post-petition repeated unresponsiveness of the Debtors' real estate attorneys. (Markoff Declaration ¶ 12; Bartolucci Declaration ¶ 12).

9. Indeed, the Court should be aware that the primary, if not only, reason Elliman continued to perform its duties despite the Debtors' clear intention to withhold Elliman's compensation is that Elliman's clients are its number one concern and priority. (Declarations ¶ 13). Elliman's brokers, Ms. Markoff and Ms. Bartolucci, have worked tirelessly for the Purchasers, and strongly believed that the Purchasers are entitled to proper representation through closing. *Id.*

10. The payment of the commissions by the Debtors is also warranted by virtue of the the Debtors agreement with its broker, Compass (the "Compass Agreement"), that provides for the payment of commissions to co-brokers. (Bartolucci Declaration ¶ 15, Ex C; Markoff Declaration ¶ 15, Ex. C.). This is a "dual agent" agreement and paragraph 4 thereof expressly permits payment of co-brokering commissions "at closing". (Bartolucci Declaration Ex C; Markoff Declaration Ex. C.) The Residential Brokerage Division of The Real Estate Board of New York ("REBNY"), which governs New York brokers and related transactions, has issued rules and regulations concerning co-brokering of real estate transactions (the "REBNY Rules").

The REBNY Rules at Article IV, Section 1(A) require the payment of co-brokering commissions where a buyer is procured for a sale. These Rules provide in relevant part:

> In the event that: (i) *a Co-Broker procures a Buyer* for an Exclusive Property; (ii) a contract of sale for the Exclusive Property is fully executed by a Buyer and the Owner; (iii) the Buyer defaults; (iv) the Owner retains all or a portion of the down payment given by the Buyer; and (v) the Owner pays the Exclusive Broker a percentage of the down payment retained by the Owner, then, in the absence of any agreement setting forth a different commission split, *the Co-Broker shall be paid an equal share of the amount paid by the Owner to the Exclusive Broker.*

REBNY Rules at Art. IV, Sec.1(A) (emphasis added).

11. In fact, the REBNY Rules co-broker agreement expressly emphasizes the availability of co-broker fees for new developments. (Declarations ¶ 15).

12. Accordingly, the Debtors have a contractual duty to pay Elliman its earned commissions for the Properties upon the occurrence of the 7th Street Closings pursuant to the respective sales contracts, the express language of the Compass Agreement, and the REBNY Rules. Services were rendered and those services were valuable to the Purchasers, but more importantly were valuable to the Debtors' estates.

13. Despite this clear and unequivocal obligation, the Debtors have made no effort to fulfill its payment obligation and have forced Elliman to file this Motion. There is no question that Elliman has fulfilled its contractual duties and, through its efforts to sell the Properties, have benefitted the Debtors' estates.

14. Accordingly, having benefited from Elliman's services, the Debtors are required to pay Elliman its commissions at Closing. There is simply no valid reason under law or fact to withhold Elliman's duly-earned commissions. Therefore, this Court should order the Debtors to pay Elliman its owed commissions in full upon occurrence of the respective closing dates for each of the Properties.

**JURISDICTION AND VENUE**

15. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b) and venue is proper before this Court pursuant to 28 U.S.C. § 1409.

16. The statutory predicate for the relief sought herein is Section 105 of the Bankruptcy Code.

**RELIEF REQUESTED**

17. By this Motion, Elliman requests an order pursuant to the respective sale agreements for each of the Properties, the Compass Agreement, and the REBNY Rules and pursuant to Section 105(a) of the Bankruptcy Code directing the Debtors to pay Elliman at the 7th Street Closings the commissions owed relating to the sale of the Properties.

18. Section 105(a) of the Bankruptcy Code provides that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. *See* U.S.C. ¶105(a).

19. For the reasons set forth above, it would be inequitable to permit the Debtors to obtain the benefit of Elliman's services and not pay the owed commissions. As noted, and perhaps most important for the purposes of this Motion, the Debtors and their estates are deriving a significant material benefit from the 7th Street Closings and from the valuable services Elliman rendered. To not pay Elliman now, after all of the effort and time expended to attain the 7th Street Closings, and given the enhanced difficulty of selling condominiums after the developer files for bankruptcy protection, would send a terrible signal to the real estate industry – that real estate brokers' and salespersons' efforts – both pre- and post-petition are unworthy of

compensation following the commencement of bankruptcy cases. Furthermore, a failure to pay Elliman would undermine the central tenant of the bankruptcy process, the overriding desire to preserve, and even enhance, the value of a debtor's estate.

20. The Debtor, too, should honor its duties under the sale contracts for the respective Properties, the Compass Agreement, and the REBNY Rules, and pay the commissions owed to Elliman. Elliman expended an extraordinary amount of resources to earn its sale commissions, and succeeded in a challenging economic environment to the benefit of all parties in interest in these bankruptcy cases.

## CONCLUSION

21. Based upon the foregoing, Elliman respectfully submits that the Motion should be granted and the Debtors should be required to pay Elliman's commissions from the sales proceeds of the Properties at the 7th Street Closings or as soon as practical thereafter.

WHEREFORE Elliman respectfully requests entry of the Proposed Order, substantially in the form attached as **Exhibit A** hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: New York, New York
      August 5, 2022

**KASOWITZ BENSON TORRES LLP**

*/s/    Matthew B. Stein*

Matthew B. Stein
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
Email: MStein@kasowitz.com

**COUNSEL FOR DOUGLAS ELLIMAN REAL ESTATE**

8

# **EXHIBIT A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KASOWITZ BENSON TORRES LLP**
Matthew B. Stein
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Email: MStein@kasowitz.com

*Counsel for Douglas Elliman Real Estate*

| | |
|---|---|
| IN RE:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*[1],<br><br>Debtors. | Chapter 11<br><br>Case No. 22-14539 (JKS)<br><br>(Jointly Administered) |

**ORDER AUTHORIZING PAYMENT OF DOUGLAS ELLIMAN REAL ESTATE'S CO-BROKERAGE COMMISSIONS AT CLOSING OF SALE OF DEBTOR PROPERTY AT (I) 494 7th STREET, UNIT NO. 1, BROOKLYN, NY 11215 AND (II) 285 7th STREET, UNIT NO. 1, BROOKLYN, NY 11215**

The relief set forth on the following pages, numbered two (2) through and including three (3), is hereby **ORDERED.**

Dated: August [__], 2022

                                **Honorable John K. Sherwood**
                                **United States Bankruptcy Court**

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

Upon the motion of Douglas Elliman Real Estate ("Elliman") pursuant to Section 105 of Title 11 of the United States Code for the entry of an order directing the above-captioned debtors and debtors-in-possession (the "Debtors") to pay at closing Elliman's broker commissions (the "Motion to Compel") [Docket No. ___] on the sale of the Debtors' condominium properties located at: (i) 494 7th Street Brooklyn, Unit No. 1, Brooklyn, NY 11215 (the "494 Property"), which is expected to close on August 9, 2022 (the "494 Closing") and (ii) 285 7th Street, Unit No. 1, Brooklyn, NY 11215 (the "285 Property") which closed on July 28, 2022 (the "285 Closing"); and upon the: (i) declaration of Nadia Bartolucci, licensed real estate salesperson for the 494 Property, and (ii) declaration of Shari Markoff, associate broker for the 285 Property, filed contemporaneously with the Motion to Compel; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion to Compel having been provided to the Debtors, the Office of the United States Trustee and other parties in interest; and no other or further notice being required under the circumstances; and no objections having been filed or any such objections having been overruled or withdrawn; and the Court having determined that the legal and factual bases set forth in the Motion to Compel establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

**ORDERED** as follows:

1.   The Motion to Compel is granted to the extent set forth herein.

2.   The Debtors shall pay Elliman at the 494 Closing the amount of $58,750.00 for its commission as broker for the purchasers due on the sale of the 494 Property.

3. The Debtors shall pay Elliman at the 285 Closing the amount of $56,250.00 for its commission as broker for the purchasers due on the sale of the 285 Property.

4. Any and all other proceeds from the sale (*i.e.,* other than the commission specifically authorized in paragraph 2 above) – including any applicable broker/sales commission owed to the seller's broker/agent – shall be held in escrow by the Debtors pending further order of this Court, as set forth in this Court's prior *Order Authorizing the Private Sale of Certain Properties Free and Clear of Liens, Claims, Encumbrances and Interests* [Docket No. 62].

5. This Order shall be effective immediately upon entry.

6. This Order concerns only the 494 Property and the 494 Closing and the 285 Property and the 285 Closing and entry of this order shall not impair the Debtors' rights with respect to commissions or fees concerning any other closing concerning any other property.