**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-14539 (JKS)<br><br>(Jointly Administered) |

**DECLARATION OF JOHN FIORETTI IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) SETTLING THE CHAPTER 11 TRUSTEE MOTION; (B) ESTABLISHING A BOARD OF INDEPENDENT MANAGERS FOR NATIONAL REALTY INVESTMENT ADVISORS, LLC; (C) AUTHORIZING THE DEBTORS TO (I) TO RETAIN TURNAROUND ADVISORS, LLC TO PROVIDE A CHIEF RESTRUCTURING OFFICER, *NUNC PRO TUNC* TO AUGUST 1, 2022, AND (II) APPROVE THE AGREEMENT RELATED THERETO; AND (D) GRANTING RELATED RELIEF**

John Fioretti makes this declaration (the "**Declaration**") pursuant to 28 U.S.C. § 1746 in support of the *Debtors' Motion for Entry of an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (A) Settling the Chapter 11 Trustee Motion; (B) Establishing a Board of Independent Managers For National Realty Investment Advisors, LLC; (C) Authorizing the Debtors to (I) Retain Turnaround Advisors, LLC to Provide a Chief Restructuring Officer, Nunc Pro Tunc to August 1, 2022, and (II) Approve the Agreement Related Thereto; and (D) Granting Related Relief* [Docket No. 225] (the "**Motion**"), and states and declares as follows:

1.  I am the principal and sole managing member of Turnaround Advisors, L.L.C. ("**Turnaround Advisors**" or "**Turnaround**"), which is being retained to provide a Chief

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

9035333

Restructuring Officer ("**CRO**") for the above-captioned debtors and debtors-in-possession (the "**Debtors**").

2. Except as otherwise indicated herein, all facts set forth in this Declaration are based on my personal knowledge, discussions with the Debtors or other professionals retained by the Debtors, were learned from my review of relevant documents or are my opinion based upon my experience and knowledge of Turnaround Advisors and practice of consulting generally. To the extent any information disclosed herein requires amendment or modification upon completion of further review by Turnaround Advisors or as additional information becomes available, a supplemental affidavit will be submitted to the United States Bankruptcy Court for the District of New Jersey (the "**Court**") reflecting such amended or modified information.

I.  **Turnaround Advisors' Qualifications**

3. Following interviews with multiple Chief Restructuring Officer candidates, the New Board, in consultation with the Committee and the Movants, selected Turnaround Advisors as its CRO based upon Turnaround Advisors' expertise in interim crisis management, real estate, loan restructuring, and bankruptcy restructurings. Turnaround Advisors will designate me as the CRO for the Debtors, as well as the "Manager" for each of the Debtors other than National Realty Investment Advisors, LLC.

4. With over twenty-five (25) years of experience, I have successfully worked with both creditors and debtors in many different industries, including real estate, retail, finance, transportation and healthcare, as well as various manufacturing, wholesale and service companies. Some of my recent assignments and experience includes being the CRO/Receiver for a manufacturer of athletic facility equipment, the CRO and interim CEO of Garces Restaurant Group, the CRO of Southern Season, Inc., an advisor to a casual dining restaurant group, the CRO of a women's apparel retailer, the President of the One Madison Park

Condominium project in NYC, and the CRO for Actrade Capital, Inc. My other interim management assignments include being the CRO for a privately-owned lace manufacturer, the interim CEO and CFO for an international used equipment dealer in Chapter 11 and the investment manager/board of director for a debt and equity investment in a national furniture warehouse and delivery company that had recently emerged from bankruptcy. I also served as the loan workout advisor for (1) GMAC ResCap on an over $875 million loan portfolio consisting of 15 relationships and 65 residential construction and mezzanine loans nationwide and in Mexico and (2) GMAC Commercial Finance on two Resort Finance (time-share related) loans aggregating $675 million.

5. In preparing for its representation of the Debtors in these Chapter 11 Cases, Turnaround Advisors has become familiar with the Debtors' business and many of the potential issues that may arise in the context of these Chapter 11 Cases. The Debtors believe that Turnaround Advisors is both well-qualified and uniquely able to perform the duties of the CRO in an efficient and cost-effective manner.

**II.    Scope of Employment**

6. The powers and duties to be provided by Turnaround Advisors are detailed in the *Employment, Retention and Management Agreement* attached hereto as **Exhibit 1** (the "Agreement"). As detailed in the Agreement, Turnaround Advisors shall, subject to the authority, discretion and direction of the New Board, have full and complete authority, power and discretion to manage and control the business, affairs and properties of NRIA and the NRIA Affiliates (as defined in the Agreement), to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of NRIA's and the NRIA Affiliates' business. Such activities will include the following:

    a.    Assisting the Debtors in evaluating and implementing strategic and tactical options through the restructuring process;

    b.    Working with the management and other employees of the Debtors and their advisors to provide restructuring support advice;

    c.    Providing courtroom testimony to support the restructuring process, if necessary;

    d.    Assisting with the preparation of regular reports required by the Court;

    e.    Assisting management in the design and implementation of a restructuring strategy designed to maximize value for all stakeholders;

    f.    Assisting management with developing a business plan model and other related forecasts for the Debtors or as may be required by lenders and other key constituents;

    g.    Assisting the Debtors with managing the due diligence requests and process that may be requested by its various constituents as part of the restructuring process;

    h.    Assisting the Debtors with preparation of schedules and statements of financial affairs;

    i.    Assisting the Debtors with developing a budgeting cash flow forecasting model necessary to support a restructuring process and identifying potential opportunities to enhance liquidity;

    j.    Coordinating the Debtors' advisors and management in connection with pending and future investigations concerning the Debtors' former owners, insiders, and affiliates;

    k.    Working with the Debtors and their team to further identify and implement both short-term and long-term liquidity generating initiatives; and

    l.    Assisting with such other matters as may be requested that fall within Turnaround Advisors' expertise and that are mutually agreeable.

7.    I am the sole employee of Turnaround Advisors and there are no other Turnaround Advisors employees that will be assigned to this engagement.

8. Turnaround Advisors will take necessary and appropriate steps to prevent unnecessary or inefficient duplication of services with the Debtors internal management and other advisors and professionals.

### III. Terms of Retention

9. The Agreement has been approved by each of the proposed members of the New Board. By the Agreement, Turnaround Advisors will be compensated as follows:

   a. <u>Fee</u>. NRIA shall pay Turnaround a fixed fee of one hundred thousand dollars ($100,000.00) per month, which shall be pro-rated for any partial month's performance.

   b. <u>Expenses</u>. Turnaround shall be reimbursed for all reasonable and documented out-of-pocket expenses it incurs in connection with the performance of its obligations under the Agreement, including but not limited to travel related expenses such as mileage, airfare, and hotel accommodations, meals, and reasonable attorneys' fees and related costs incurred in preparing the Agreement.

   c. <u>Success Fee</u>. Turnaround may request a success fee (a "<u>Success Fee</u>") in consideration for any substantial contribution Turnaround has made to the Debtors' estates based on results Turnaround has achieved as a result of its performance as CRO, *provided, however*, that the decision to award any Success Fee shall be in the sole and absolute discretion of the Board. In the event the Board determines that a Success Fee is appropriate, such Success Fee shall not be payable unless and until approved by the Bankruptcy Court upon notice to the Debtors, the Office of the United States Trustee for Region 3, the Official Committee of Unsecured Creditors, and all parties that have filed requests for notice pursuant to Fed. R. Bankr. P. 2002.

10. The foregoing compensation is set at a level designed to fairly compensate Turnaround Advisors for its work and to cover fixed and routine overhead expenses.

11. If the Court approves the relief requested herein, Turnaround Advisors will file with the Court (and serve copies on the Notice Parties (as defined in the Motion) contemporaneously with such filing) reports of compensation earned and expenses incurred on a quarterly basis. Such reports shall consist of summary charts that describe the services provided, identify the compensation earned by Turnaround Advisors, and itemize expenses incurred. Because Turnaround Advisors and the CRO are not employed as professionals under section 327

of the Bankruptcy Code, neither Turnaround Advisors nor the CRO will submit regular fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Turnaround Advisors and the CRO will, however, submit the reports described above.

## IV. Turnaround Advisors' Disinterestedness

12. To the best of my knowledge and information: (a) Turnaround Advisors is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates, and (b) Turnaround Advisors has no connection to the Debtors, their creditors, or other parties in interest.

11. Turnaround Advisors undertook a search to determine whether it or its affiliates or employees has been employed by, or has any relationship with the list of people and entities identified on **Exhibit 2** hereto (collectively, the "**Conflicts Check Parties**"), which includes the following, among others: (i) the Debtors; (ii) the Debtors' current and former officers/directors/members; (iii) purported secured creditors of the Debtors; (iv) the Debtors' unsecured creditors; (v) parties that are counterparties to various leases, executory contracts and other agreements with the Debtors; (vi) certain customers and employees; (vii) case professionals; (viii) pertinent governmental entities; and (ix) certain other potentially interested parties.

12. Turnaround Advisors has a diverse practice, and as a result, the foregoing inquiry revealed the following connections with the Conflicts Check Parties.

    a.    <u>Professionals</u>: I have worked with professionals at the following firms in matters unrelated to these Chapter 11 Cases: Alvarez & Marsal, Cole Schotz, P.C., EisnerAmper LLP, Klehr Harrison Harvey Branzburg LLP, McCarter & English LLP, Porzio Bromberg & Newman, P.C., Riker Danzig, LLP, Sills, Cummis, & Gross, P.C., and Omni Agent Solutions, Inc.

     b.    <u>Bankruptcy Court Judges</u>: Turnaround Advisors has appeared or may in the future appear in the Bankruptcy Court for the District of New Jersey on behalf of one or more clients.

     c.    <u>Members of the New Board</u>: Turnaround Advisors has appeared before the Hon. Kevin Gross, a former bankruptcy judge in the Bankruptcy Court for the District of Delaware and one of the proposed members of the New Board, in a matter unrelated to these Chapter 11 Cases.

     d.    <u>Unsecured Creditors/Contract Counterparties/Vendors/Other</u>: Turnaround Advisors has likely been involved in matters unrelated to these Chapter 11 Cases involving the following parties: ADT, Amazon, AT&T, Chubb, CIT, CNA, Con Edison, Crum & Forster, D&B, FedEx, Lloyds, Microsoft, Uline, UPS, USPS, Verizon, White Cap, the City of New York, the City of Philadelphia, the Delaware Secretary of State, the Pennsylvania Department of Revenue, the State of New Jersey, and the Internal Revenue Service.

13.    Other than the foregoing disclosures, neither Turnaround Advisors nor I have any other connections to the Conflicts Check Parties or the relatives of the Conflicts Check Parties. Neither Turnaround Advisors nor I are investors in NRIA Partners Portfolio Fund I, LLC.

14.    Turnaround Advisors will review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Turnaround Advisors will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration.

15.    To my knowledge, Turnaround Advisors has not received any promises regarding compensation in these Chapter 11 Cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration. Also to my knowledge, Turnaround Advisors has no agreement with any nonaffiliated or unrelated entity to share any compensation paid by the Debtors.

9035333

-8-

I certify under penalty of perjury under the laws of the United States that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: August 8, 2022  /s/ John Fioretti
Hoboken, New Jersey  John Fioretti, Principal
Turnaround Advisors, LLC

9035333