LAW OFFICES OF PETER C. LUCAS, LLC
Peter C. Lucas, Esq. (025621991)
725 Carol Avenue
P.O. Box 490
Oakhurst, New Jersey 07755
Tel: (732) 663-9100/Fax: (732) 663-0029
Attorneys for David Gullatt and Kathy Sue Gullatt

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No.: 22-14539-JKS |
| National Realty Investment Advisors, LLC, *et al.* | : | |
| | : | Adversary Case No.: |
| Debtor. | : | |
| | : | |
| ------------------------------------ | | COMPLAINT TO DETERMINE |
| David Gullatt and Kathy Sue Gullatt, | : | THE DISCHARGEABILITY OF A DEBT |
| Plaintiffs | : | |
| v. | : | |
| National Realty Investment Advisors, LLC, et al. | : | |
| | : | |
| | : | |
| Defendant. | : | |

David Gullatt and Kathy Sue Gullatt in the above-captioned adversary proceeding by and through their counsel, Law Offices of Peter C. Lucas, LLC, say by way of Complaint against Defendant and alleges as follows:

### PARTIES

1. On or about June 7, 2022, (the "Petition Date"), Debtor, National Realty Investment Advisors, LLC ("NRIA") along with associated entities filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey.

1

2. David Gullatt and Kathy Sue Gullatt, husband and wife, ("Plaintiffs") are creditors in the Chapter 11 case having invested approximately $325,000.00 with Defendant, NRIA.

## JURISDICTION

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1). The venue of this proceeding is in the District of New Jersey pursuant to 28 U.S.C. § 1409(a).

4. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

## BACKGROUND

5. David Gullatt and Kathy Sue Gullatt are residents of Louisiana and reside at 10703 Highway 80, in the Township of Simsboro, Parish of Lincoln, and State of Louisiana.

6. NRIA's principal place of business is 1 Harmon Plaza, in the Town of Secaucus, County of Hudson and the State of New Jersey.

7. Plaintiffs first became aware of NRIA in or around early 2019 through advertising on Fox News.

8. Thereafter, in or about April 2019, Plaintiffs contacted NRIA to inquire about investing. Plaintiffs were promised by NRIA through Byron Cartozian, an NRIA agent, employee and/or representative the following:

    (a) guaranteed a minimum of twelve percent (12%) IRR (Internal Rate of Return) and the full return of principal investment;

    (b) six percent (6%) of their investment annualized and paid monthly in years one (1), two (2), three (3) and four (4), with the remaining return accruing for payout in years three (3) through five (5);

    (c) in years three (3), four (4) and five (5), their investment "trued up" to their targeted returns of sixteen to twenty-one percent (16-21%); and

    (d) principal returned in full upon liquidation of the real estate portfolio.

9.  Plaintiffs relied on and were induced by these representations to invest with NRIA. NRIA intentionally and knowingly made promises that they knew were false and/or misleading.

10. On or about May 24, 2019, Plaintiffs made their first payment to NRIA by check, in the amount of $150,000.00.

11. By letter dated June 19, 2019, Plaintiffs were advised by NRIA that they would be receiving monthly payments on the 15th day of every month, beginning July 15, 2019, in the amount of $750.00. At this time, Plaintiffs also received a pro-rated payment of $443.88.

12. On or about July 19, 2019, Plaintiffs made their second payment to NRIA by check, in the amount of $150,000.00.

13. By letter dated August 21, 2019, Plaintiffs were advised by NRIA that they would be receiving monthly payments on the 15th day of every month, beginning September 15, 2019, in the amount of $750.00. At this time, Plaintiffs also received a pro-rated payment of $591.84.

14. On or about January 30, 2020, Plaintiffs made their third payment to NRIA by check, in the amount of $25,000.00.

15. Plaintiffs received payments only in the amounts as indicated in Paragraphs 11 & 13 above from NRIA until July 2022, with the last payments received on or about June 15, 2022.

16. Shortly thereafter, Plaintiffs received a Notice of Chapter 11 Bankruptcy, advising that Defendants filed for bankruptcy on or about June 7, 2022.

17. Plaintiffs became aware of the extensive misrepresentations and widespread fraudulent scheme perpetuated by NRIA to induce individuals like themselves to significantly invest in NRIA.

18. By way of example, according to an article published on or about June 23, 2022 in Barron's, "NRIA promised investors big returns from its business developing apartment,

3

condominium, and townhouse projects in Philadelphia, northern New Jersey, Brooklyn, and Palm Beach County, Fla." However, it was reported that "the firm was overstating the success of its projects, leading it to rely on cash from new investors to pay existing ones."[1]

19. This scheme was laid out by the New Jersey Bureau of Securities, in its Summary Cease and Desist Order dated June 21, 2022 [ECF 60], which outlined the fraudulent conduct perpetuated by the Defendant wherein "the NRIA Fund operated in New Jersey and offered and sold approximately $630 million in securities in the form of membership units ("Units") in the NRIA Fund to at least 1,800 investors, including at least 380 New Jersey investors." *Id.* In doing so, the New Jersey Bureau of Securities alleged "Respondents violated … antifraud provisions", resulting in "a devastating impact on investors, as illustrated by a Debtor that raised over $600 million from investors now reporting assets of only $50 million to $100 million." *Id.*

20. Given the above, NRIA intentionally misrepresented and made false promises to Plaintiffs to induce them to invest approximately $325,000.00, knowing that the return on their investment as promised would never be realized.

21. Defendant intentionally organized a scheme wherein Plaintiffs were defrauded and lost investments that they made with NRIA.

### COUNT ONE

22. Plaintiffs repeat and reallege the allegations of Paragraphs 1-21 as if set forth at length herein.

23. Defendant knowingly and intentionally defrauded Plaintiffs through material misrepresentations, whereby Defendant induced Plaintiffs to significantly invest knowing the promised return on investments would not be realized.

---

[1] https://www.barrons.com/articles/scott-minerd-guggenheim-stocks-inflation-prediction-51662727772

24. Defendant's conduct was fraudulent, intentional, reckless, wanton and willful.

WHEREFORE, the Plaintiffs respectfully request that judgment be entered in their favor declaring that the monies owed by Defendant to Plaintiffs be non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A).

LAW OFFICES OF PETER C. LUCAS, LLC
Attorneys for Plaintiffs

BY: _____
PETER C. LUCAS

Dated: 9/12/22

5