**SILLS CUMMIS & GROSS P.C.**
S. Jason Teele, Esq. (steele@sillscummis.com)
Daniel J. Harris, Esq. (dharris@sillscummis.com)
Gregory A. Kopacz, Esq. (gkopacz@sillscummis.com)
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)
(973) 643-6500 (Facsimile)

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-14539 (JKS)<br><br>(Jointly Administered)<br><br>Re: Docket No. 529 |

**DEBTORS' OBJECTION TO MOTION OF
TIMOTHY NESTER AND CHRISTOPHER ECKMAN FOR AN ORDER
GRANTING RELIEF FROM THE AUTOMATIC STAY
TO TERMINATE REAL ESTATE CONTRACT**

The above-captioned debtors and debtors-in-possession (the "**Debtors**") submit this objection to the *Motion of Timothy Nester and Christopher Eckman for an Order Granting Relief from the Automatic Stay to Terminate Real Estate Contract* [Docket No. 529] (the "**Motion**"),[2] and respectfully state as follows:

**OBJECTION**

1. By the Motion, the movants unilaterally seek to terminate their prepetition contract

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

-1-

9183361

(the "**Contract**")[3] with debtor Cherry Street Capital 113-27 LLC (the "**Seller**") to purchase property located at 124 N. Croskey St., Philadelphia, PA (the "**Property**") because: (i) the sale did not close before July 15, 2022; (ii) the order approving the sale does not "specif[y] that Movants are to receive a new home warranty from the builder or third-party at closing;" and (iii) based on a Contract provision allegedly "authorizing the Movants to terminate the Contract in the event that the Seller is unable to transfer title 'due to a change in Seller's financial status' which specifically includes 'Seller filing bankruptcy.'" *See* Motion ¶¶ 16-20.

2. Following the Petition Date, the Debtors moved expeditiously to obtain Court approval to sell the Property and close by July 15, 2022, the outside closing deadline specified in the Contract. On June 15, 2022 (*i.e.*, eight days after the Petition Date), the Debtors filed a motion seeking approval of the sale of the Property (along with seven other properties) and an application seeking expedited consideration of the motion. *See* Docket Nos. 36, 38. The Court entered an order approving that motion six days later, on June 21, 2022 (the "**Sale Order**").[4] *See* Docket No. 62. Since then, the Debtors have worked diligently to close the Court-approved sales – including the sale of the Property – and the Seller has been and remains ready, willing and able to close.

3. Each of the movants' arguments are without merit and should be overruled for the reasons set forth below.

4. *First*, movant seeks stay relief because the sale did not close before July 15, 2022. *See* Motion ¶ 20. However, the Seller did not cause the failure to close; rather the movants refused to close over the course of the last several months (and violated the automatic stay in doing so).[5]

---

[3]   A copy of the Contract is attached as **Exhibit A**.

[4]   The Sale Order authorized the Seller to sell the Property free and clear of all liens, claims and encumbrances. *See* Sale Order ¶ 5. Thus, the Seller was and is able to "convey good and marketable title."

[5]   The Debtors expressly reserve all of their rights with respect to these stay violations.

Relief from the automatic stay would have been necessary prior to any termination becoming effective. *See, e.g., Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 318 (3d Cir. 2002) ("inasmuch as Krystal had filed for bankruptcy before GM terminated the franchise agreement, GM's termination of that agreement was a violation of the automatic stay imposed under § 362 of the Code") (citation omitted); *Computer Communs., Inc. v. Codex Corp (In re Computer Communs, Inc.)*, 824 F.2d 725, 731 (9th Cir. 1987) ("The automatic stay of § 362 barred Codex from unilaterally terminating the Agreement. Even if Codex had some reason for terminating the Agreement as a matter of contract law, it violated bankruptcy law by failing to obtain relief from the automatic stay. A party who violates the automatic stay may be held in contempt and the court may award damages to the other party for actual loss suffered") (citations omitted).

5.    On or around June 15, 2022, movants sent the Seller a *Notice of Termination of Agreement of Sale* (the "**Notice of Termination**"),[6] dated June 14, 2022 (*i.e.*, two days before the Settlement Date specified in paragraph 4 of the Contract), pursuant to which movants purported to terminate the Contract under paragraphs 14F and 14G. Subsequently, on June 20, 2022 – and notwithstanding the Debtors' efforts to obtain expedited approval of the sale, which was scheduled for hearing the very next day – the movants sent a second letter terminating the contract and reiterating their position that they could terminate the Contract under paragraphs 14F and 14G (the "**Second Termination Letter**").[7] Even after the Court entered the Sale Order on June 21, 2022, movants' counsel notified Debtors' counsel that "[n]otwithstanding the bankruptcy court's approval of the sale to my clients, my clients will not proceed to closing."[8] The movants should

---

[6]    A copy of the Notice of Termination is attached as **Exhibit B**.

[7]    A copy of the Second Termination Letter is attached as **Exhibit C**.

[8]    A copy of the June 28, 2022 email is attached as **Exhibit D**.

not be granted stay relief to terminate the Contract when the movants themselves are the cause of the failure to close.

6. *Second*, the Motion argues that movants should be entitled to stay relief because the Seller is not able to satisfy the warranty obligations under the Contract. *See* Motion as ¶ 21. To the contrary, however, the Seller can and will comply with the warranty provision of the Contract. This is consistent with the Debtors' commitment to honor warranty obligations with respect to other sales authorized by the Sale Order. *See, e.g.*, *Consent Order and Stipulation Regarding Sale of 494 Seventh Street, Unit 2, Brooklyn, New York* [Docket No. 420].

7. *Third*, any contractual provision allegedly "authorizing the Movants to terminate the Contract in the event that the Seller is unable to transfer title 'due to a change in Seller's financial status' which specifically includes 'Seller filing bankruptcy'" constitutes an unenforceable *ipso facto* clause. Neither the commencement of these chapter 11 cases nor any change in the Debtors' financial condition entitles the movants to terminate the Contract, notwithstanding any contractual provision to the contrary. *See* 11 U.S.C. § 365(e) ("Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—(A) the insolvency or financial condition of the debtor at any time before the closing of the case; [or] (B) the commencement of a case under this title . . .").

8. Here, paragraph 14F constitutes an unenforceable *ipso facto* clause as it provides as follows:

> If a change in Seller's financial status affects Seller's ability to convey title to the Property on or before the Settlement Date, or any

> extension thereof, Seller will promptly notify Buyer in writing. A **change in financial status** includes, but is not limited to, **Seller filing bankruptcy**; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all liens and encumbrances against the Property.

(emphasis added). Under section 365(e) of the Bankruptcy Code, neither the "change in [the Seller's] financial status," nor the "filing [of] bankruptcy" entitles the movants to terminate the Contract, notwithstanding paragraph 14F of the Contract. *See* 11 U.S.C. § 365(e).

9. For all of the foregoing reasons, the Motion should be denied. Nevertheless, if the Court is inclined to grant the Motion, any order granting it should expressly provide that the Seller is authorized to retain the movant's $75,000 deposit as damages for the movant's unjustified refusal to close.

## CONCLUSION

**WHEREFORE**, the Court should deny the Motion and grant the Debtors such additional relief as the Court deems appropriate.

Dated: September 20, 2022            **SILLS CUMMIS & GROSS P.C.**

/s/ S. Jason Teele
S. Jason Teele, Esq.
Daniel Harris, Esq.
Gregory A. Kopacz, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)
(973) 643-6500 (Facsimile)
steele@sillscummis.com
dharris@sillscummis.com
gkopacz@sillscummis.com

*Counsel to the Debtors and Debtors-in-Possession*