| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>MANDELBAUM BARRETT PC<br>3 Becker Farm Road, Suite 105<br>Roseland, New Jersey 07068<br>Ph.: 973-736-4600<br>Fax: 973-736-4670<br>Vincent J. Roldan<br>vroldan@mblawfirm.com<br><br>Attorneys for Metropolitan YMCA of the Oranges | Case No.  22-14539-JKS<br><br>Chapter 11<br><br>(Jointly administered) |
| In re<br><br>National Realty Investment Advisors LLC *et al.*<br><br>                              Debtors. | |

**RESPONSE IN FURTHER SUPPORT OF MOTION OF METROPOLITAN YMCA OF THE ORANGES FOR AN ORDER  GRANTING RELIEF FROM THE AUTOMATIC STAY TO EXERCISE REMEDIES UNDER CONTRACT**

Metropolitan YMCA of the Oranges ("Metro YMCA"), as and for its response to objections to its motion (the "Stay Relief Motion") for an order granting relief from the automatic stay to exercise remedies under its pre-petition contract with National Realty Investment Advisors LLC ("NRIA"), respectfully states as follows:

**Background**

1. As set forth in the Stay Relief Motion, Metro YMCA currently owns the real property commonly known as 360 Main Street, Hackensack, New Jersey 07601 (the "Hackensack Property").  NRIA is currently party to an Agreement of Purchase and Sale ("Sale

1

4860-2035-4357, v. 1

Agreement") with Metro YMCA for the purchase of its Hackensack Property, which was formerly used by Metro YMCA as a facility for single-room housing and office space.

2. In its response to the Stay Relief Motion, NRIA asserts that it is using "commercially reasonable" efforts to "diligently pursue" Government Approvals (as that term is defined in the Sale Agreement). In paragraph 8 if its response, NRIA lays out several "steps" it has taken towards obtaining the Government Approvals. The vast majority of these steps are things that NRIA <u>intends</u> to do- NRIA is "in contact", "working with a third party", is "in the process", and is "reviewing" a proposal. NRIA provides no specific timeline as to when it will actually be able to submit a site plan, nor does it discuss the lengthy approval process.

3. Metro YMCA submits there is no realistic possibility NRIA will timely obtain "Government Approvals", even if they were to receive the two 90-day extensions set forth in section 5(d) of the Sale Agreement. The only conclusion is NRIA is not and has not diligently pursued Government Approvals.

<u>The Redevelopment Plan</u>

4. NRIA asserts that the City of Hackensack has approved and adopted the 360 Main redevelopment plan ("<u>Redevelopment Plan</u>"). That may be true, but it is merely the first step in a long process. The Redevelopment Plan is publicly available, and is attached hereto as Exhibit A.

5. As set forth in section 3(a) of the Redevelopment Plan says that a "site plan" needs to be submitted:

> Prior to commencement of any construction within the Redevelopment Area, <u>a site plan prepared in accordance with the requirements of the Municipal Land Use Law (N.J.S.A. 40:55D-1 et seq.) and the Land Development Ordinance of the City of Hackensack shall be submitted by the applicant</u> for review specific to this Redevelopment Plan for completeness and compliance, prior to any submission to the Planning Board of the City of Hackensack, so that compliance with the Redevelopment Plan can

      be determined. This shall also pertain to revisions or additions
prior to, during and after completion of the improvements

6. To Metro YMCA's knowledge, that "site plan" has never been submitted.

7. Section 4 of the Redevelopment Plan lays out thirteen (13) significant requirements, and to Metro YMCA's knowledge none of these requirements has been met.

8. In any event, NRIA has not been named as the redeveloper and has not entered into a redevelopment agreement with the city.

9. Furthermore, NRIA has not:

    a. created any kind of urban renewal entity, nor has it entered into a tax abatement financial agreement with the City relating to the PILOT (payment in lieu of taxes) proposal;

    b. prepared/completed site plans, architectural or engineering plans; they only have a proposal regarding landscape;

    c. prepared an updated traffic impact analysis;

    d. provided Metro YMCA with any information as required by the Sale Agreement such as all inspection and test reports, or copies of contracts with their professionals;

    e. provided Metro YMCA with copies of all applications, plans and submissions made to the City per the terms of the Sale Agreement; or

    f. met with any City officials regarding this project.

10. Metro YMCA believes that even if the timing worked out perfectly for NRIA, NRIA will not receive site plan approval for at least 6 months if not longer—well past the August 6, 2022 "Approval Date Period" set forth in section 5(d) of the Sale Agreement (with the benefit of section 108 of the Bankruptcy Code), even if it was to receive the two 90-day extensions set forth therein. The only conclusion is, NRIA is not and has not diligently pursued Government approvals.

4860-2035-4357, v. 1

11. Even if NRIA could demonstrate its diligent pursuit, NRIA has not requested an extension of the Approval Date Period and NRIA has not released any deposit money—a prerequisite to the two 90-day extensions. Therefore, the Approval Date Period has already expired.

"Government Approvals"

12. In addition, the Sale Agreement definition of "Government Approvals is expansive. Section 5(b) of the Sale Agreement defines "Government Approvals" as follows:

> (b)    For purposes of this Agreement, the term "Governmental Approvals" shall include (if applicable): (i) all zoning approvals, (ii) preliminary and final site plan approval and subdivision approval if required, (iii) the final approved site plan being signed by all necessary municipal officials/agencies, (iv) a developer's agreement containing terms and conditions reasonably acceptable to Buyer being signed by the municipality, (v) the issuance of all water and sewer connection permits (and Treatment Works Approval permits as necessary) required for the Project, (vi) approval from the soil conservation district, (vii) all required environmental permits and approvals, including an unrestricted RAO, as necessary, or its equivalent from the NJ DEP allowing for residential development of the Property; (viii) the issuance of all required federal, state, county and local permits and approvals for the Project, (ix) wetlands delineation, letter of interpretation, resource classification and flood hazard certification, (x) all required DOT permits, (xi) all easements (on-site and off-site) necessary for the Project; (xii) formal designation of the Property by the municipality as an area in need of Redevelopment; (xiii) appointment of Purchaser as the designated developer pursuant to Local Redevelopment and Housing Law, NJSA 40A:12A-1 et. sec.; (xiv) approval from the municipality of a Long-Term Tax Exemption pursuant to NJSA 40A:20-1 et. seq.; and (xv) approvals from any other governmental agency having jurisdiction over the Property. The Project is defined as a mixed used project containing commercial retail components and containing no less than the maximum number of market rate residential units permitted in this Rehabilitation/Redevelopment zone without variance with ancillary and accessory components including parking facilities to be constructed on the Property, the 374 Main St. Parcel and any other adjoining parcel(s) to be acquired by Purchaser at Purchaser's

4860-2035-4357, v. 1

election. The Governmental Approvals shall not include the
issuance of building permits.

13. Metro YMCA submits there is no realistic possibility that NRIA will obtain these Government Approvals, if at all, any time in the foreseeable future.

14. NRIA believes that the Property "could be the source of distributable value to stakeholders if the Property is ultimately developed and sold." But as set forth above the Approval Date Period has already expired and there is no reasonable possibility that NRIA will obtain the necessary "Government Approvals". Meanwhile, Metro YMCA is unfairly being asked to delay its own plans to build a new YMCA—one that will benefit the entire community.

15. Metro YMCA respectfully requests that the Court grant the Stay Relief Motion.

WHEREFORE, Metro YMCA requests that the Court (i) enter an order granting Metro YMCA relief from the automatic stay to exercise its rights under the Sale Agreement, and (ii) grant such other and further relief as is just and proper.

Dated: Roseland NJ
September 23, 2022

                  MANDELBAUM BARRETT PC

                  /s/ Vincent J. Roldan
                  Vincent J. Roldan
                  3 Becker Farm Road
                  Roseland NJ 07068
                  973-974-9815
                  vroldan@mblawfirm.com

                  ***Attorneys for Metropolitan YMCA of the Oranges***

### CERTIFICATE OF SERVICE

I hereby certify that on this 23d day of September, 2022, a copy of the foregoing response to objections to its motion for an order granting relief from the automatic stay to exercise remedies under its pre-petition contract with National Realty Investment Advisors LLC was filed in the CM/ECF filing system, which caused a true copy to be served on all counsel of record.

In addition, the foregoing response has been sent by email to counsel to the Debtor at steele@sillscummis.com and counsel to the Committee at louis.delucia@icemiller.com and alyson.fiedler@icemiller.com.

September 23, 2022

/s/    Vincent J. Roldan
Vincent J. Roldan
Mandelbaum Barrett PC
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
(973) 974-9815
(973) 325-7467 (facsimile)
VRoldan@mblawfirm.com

4860-2035-4357, v. 1