## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-14539<br><br>(Jointly Administered) |

## GLOBAL NOTES, RESERVATION OF RIGHTS, AND
## STATEMENT OF LIMITATIONS, METHODOLOGY AND
## DISCLAIMER REGARDING DEBTORS' SCHEDULES AND SOFAs

National Realty Investment Advisors, LLC[1] ("NRIA") and its affiliated debtors and debtors in possession (the "Debtors") are contemporaneously filing these Global Notes (as defined below) as a supplement to and integral part of their Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "SOFAs") filed in the Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). The Debtors prepared their Schedules and SOFAs pursuant to section 521 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), with the assistance of their advisors. These *Global Notes, Reservation of Rights, and Statement of Limitations, Methodology and Disclaimer Regarding Debtors' Schedules and SOFAs* (the "Global Notes") pertain to, are incorporated by reference into, and comprise an integral part of, each of the Schedules and SOFAs, and should be reviewed in connection with any review of the Schedules and SOFAs.

The Debtors and their officers, employees, agents, attorneys and financial advisors relied on financial data derived from the Debtors' books and records that was available at the time of preparation, do not guarantee or warrant the accuracy or completeness of the data that is provided in the Schedules and SOFAs and shall not be liable for any loss or injury arising out of or caused in whole or in part by any acts or omissions, in procuring, compiling, collecting, interpreting, reporting, communicating or delivering the information contained herein or in the Schedules and SOFAs. Except as expressly required by the Bankruptcy Code, the Debtors and their officers, employees, agents, attorneys and financial advisors do not undertake any obligation to update, modify, revise or re-categorize the information provided herein or in the Schedules and SOFAs or to notify any third party should the information be updated, modified, revised or re-categorized. The Debtors, on behalf of themselves, their officers, employees, agents and advisors, disclaim any liability to any third party arising out of or related to the information contained in the Schedules and SOFAs and reserve all rights with respect thereto.

---

[1] A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claim and noticing agent at http://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

The Schedules and SOFAs have been signed by an authorized representative of the Debtors. In reviewing and signing the Schedules and SOFAs, this representative, the Chief Financial Officer, supervised the efforts of the Debtors' personnel and professionals and relied upon the statements of certain representatives of the Debtors personnel and professionals. The representative has not (and could not have) personally verified the accuracy of each such statement and representation, including, for example, statements and representations concerning amounts owed to creditors and their addresses.

## Global Notes and Overview of Methodology

1. **Reservation of Rights**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and SOFAs; however, inadvertent errors or omissions may exist and conflicting, revised, or subsequent information may be discovered. The Debtors (i) reserve all rights to amend or supplement the Schedules and SOFAs from time to time, in all respects, as may be necessary or appropriate, including, without limitation, the right to amend the Schedules and SOFAs with respect to claim ("Claim") description, designation, or Debtor against which the Claim is asserted; (ii) dispute or otherwise assert offsets or defenses to any Claim reflected in the Schedules and SOFAs as to amount, liability, priority, status, or classification; (iii) subsequently designate any Claim as "disputed," "contingent," or "unliquidated;" or (iv) object to the extent, validity, enforceability, priority, or potential avoidance of any Claim. Any failure to designate a Claim in the Schedules as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such Claim or amount is not "disputed," "contingent," or "unliquidated." Listing a Claim does not constitute an admission of liability by the Debtor against which the Claim is listed or against any of the Debtors. Furthermore, nothing contained in the Schedules and SOFAs shall constitute a waiver of rights with respect to the Debtors' chapter 11 cases (the "Chapter 11 Cases"), including, without limitation, issues involving Claims, substantive consolidation, defenses, equitable subordination, recharacterization, and/or Causes of Action (defined below) arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.

The listing in the Schedules or SOFAs (including, without limitation, Schedule A/B and Schedule E/F) by the Debtors of any obligation between a Debtor and another Debtor is a statement of what appears in the Debtors' books and records and may not be an accurate reflection whether such amount would be allowed as a Claim or how such obligations may be classified and/or characterized in a plan of reorganization or by the Bankruptcy Court. The Debtors reserve all rights with respect to such obligations. For example, listing a Claim (i) in Schedule D as "secured," (ii) in Schedule E as "priority" or (iii) in Schedule F as "unsecured nonpriority," or listing a contract in Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtor of the legal rights of the claimant or a waiver of the Debtors' right to recharacterize or reclassify such Claim or contract.

NRIA is presently under investigation by and/or has received subpoenas and/or requests for information from the United States Attorney's Office for the District of New Jersey, the United States Securities and Exchange Commission (the "SEC"), the New Jersey Bureau of Securities, Illinois Securities Department and the Alabama Securities Commission. In addition, on or around March 4, 2021, the United States Attorney's Office for the District on New Jersey charged the now terminated, independently contracted portfolio manager and advisor to NRIA, Thomas Nicholas Salzano, with

one count of wire fraud in violation of 18 U.S.C section 1343, and one count of aggravated identity theft in violation of 18 U.S.C section 1028A, in connection with an offer to sell an interest in the Fund. On March 6, 2021, the United States Attorney's Office for the District of New jersey issued a warrant authorizing the (i) search of NRIA's premises located at 1325 Paterson Plank Road, Secaucus, New Jersey 07094, and (ii) seizure of certain records and tangible items. In addition, on or around June 7, 2021, the SEC filed a Complaint against Mr. Salzano in the United States District Court for the District of New Jersey, alleging that Mr. Salzano violated Sections 17(a)(1) and (3) of the Securities Act of 1933 and seeking a final judgment: (a) permanently enjoining Mr. Salzano from violating the federal securities laws; (b) ordering Mr. Salzano to pay civil money penalties pursuant to Securities Act Section 20(d) 15 U.S.C. 77t(d); and (c) permanently prohibiting Mr. Salzano from serving as an officer or director of any company that has a class of securities registered under Section 12 of the Securities Exchange Act of 1934 15 U.S.C. 781 ("Exchange Act") or that is required to file reports under Exchange Act Section 15(d) 15 U.S.C 78o(d), pursuant to Securities Act Section 20€ 15 U.S.C. 77. NRIA continues to fully cooperate with the investigating authorities.

Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the foregoing general reservation of rights.

   **2.  Description of the Cases and "as of" Information Date**. On June 7, 2022 (the "Petition Date"), the Debtors commenced voluntary cases under Chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases. On September 9, 2022, the U.S. Trustee for Region 3 filed a motion for an order appointing an independent fee examiner which is scheduled for a hearing on October 11, 2022.

   Except as otherwise noted in the Global Notes or Schedules and SOFAs, all asset and liability information are valued as of the applicable Petition Date. In some instances, the Debtors have used estimates or pro-rated amounts where actual data as of the aforementioned dates was unavailable. The Debtors have made a reasonable effort to allocate liabilities between the pre- and post-petition periods based on the information and research that was conducted in connection with the preparation of the Schedules and SOFAs. As additional information becomes available and further research is conducted, the Debtors may modify the allocation of liabilities between the pre- and post-petition periods and amend the Schedules and SOFAs accordingly.

   **3.  Basis of Presentation**. The Schedules and SOFAs reflect financial information for the Debtors only and do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled with any financial statements otherwise prepared and/or distributed by the Debtors. Additionally, the Schedules and SOFAs contain unaudited information that is subject to further review and potential adjustment and reflect the Debtors' reasonable efforts to report the assets and liabilities of each Debtor on an unconsolidated basis. Moreover, given, among other things, the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, this is not a conclusion that such Debtor was solvent at the Petition Date. Likewise, to the extent that a Debtor shows more liabilities than assets, this is not a conclusion that such Debtor was insolvent at the Petition Date or any time prior to the Petition Date.

From its formation in 2006 through at least 2018, NRIA developed more than approximately 1,000 residential units in properties in Philadelphia through an arrangement under which it coordinated with investors to buy units identified by NRIA, borrow to finance construction of the unit purchased, and roll the construction loan over to a mortgage upon completion (the "Deeded Properties"). The units were built by US Construction, Inc. ("USC"), and Premier Access Property Management, Inc. ("Premier") would function as the property manager to collect rents, manage and maintain the units. As an incentive to investors, NRIA, USC and Premier offered three guarantees: (i) NRIA guaranteed that it would buy back property within 90 days of completion if an owner was not satisfied with the appraised value of the property; (ii) USC guaranteed that it would complete the construction of the property within a scheduled number of payments on the investor's construction loan or pay a per day late charge;  and (iii) Premier guaranteed a minimum rental revenue for five years to cover interest on the buyer's mortgage, insurance and property management fee.  As discussed in the USC Complaint (defined below) and briefly herein, NRIA and the NRIA Partners Portfolio Fund I, LLC (the "Fund" or "NPPF1") made substantial payments with respect to these three guarantees.

Commencing in 2016, NRIA developed properties, primarily in Florida and Brooklyn, as part of an overall investment by various investors pursuant to Private Placement Memoranda (collectively, the "pre-Fund PPMs"). After securing investors, NRIA would purchase development properties through Operating Entities on behalf of the investors. As discussed herein, the Fund made substantial payments with respect to the pre-Fund PPMs.

NRIA introduced the Fund in February of 2018 which is detailed in various sections throughout the Global Notes.

Historically through approximately June 2021, the Debtors primarily utilized a single bank account, titled in the name of NRIA, which commingled the cash activities of virtually all Debtors existing at the time, inclusive of the receipt of investor funds for various entities, the payment of operating expenses, purchases of land, capital expenditures with respect to the development of its real estate investments held through various entities, etc.  Additionally, the financial transactions for virtually all Debtor entities were reflected on the general ledger of NRIA, irrespective of the ownership structure of each entity, as detailed below, and without adequate reconciliation to each of the Operating LLC entities (and their respective Real Estate Asset LLC entities, both defined below) which hold title to the real estate investment assets. Certain entities, most notably NPPF1, did not have a separate set of books and records, as required by GAAP.

Pursuant to the terms of the various Private Placement Memoranda ("PPMs") and Operating Agreements governing the Fund and its relationship with NRIA as the manager, the Fund was to reimburse NRIA for any operating expenses incurred in connection with the management of the Fund. As a result of the consolidated general ledger, NRIA was unable to determine the standalone assets, liabilities, revenue and expenses attributable to its business ventures and ownership interests outside of the Fund, primarily inclusive of the pre-Fund PPMs and any residual interests or obligations resulting from the Deeded Properties.

NRIA's current accounting staff has reviewed the bank and financial records of the Debtors for the years 2016, 2017, 2018, 2019, 2020, 2021 and for the period January 1, 2022 through the petition date ("accounting reconciliation") as well as the relevant source documents for each of the Debtor entities, including but not limited to, purchase and resale settlement statements, loan agreements and mortgage statements, subscription agreements and other pertinent investor onboarding documents, and have either created or completed separate general ledgers for each of the Debtors (to the extent required - entities with no income or assets are treated as disregarded entities for accounting and tax purposes) and have reflected the transactions on the specific general ledgers of the respective Debtors.

The basic organizational structure of the Debtors flow from NRIA, who holds 100% of the common interest in NPPF1, while the approximately 2,000 investors collectively hold the preferred interests. The Fund holds either a 100% interest or 80% interest in the Real Estate Asset LLC's (the "Owner Entities"). For the Owner Entities that the Fund holds an 80% interest, NRIA holds a 20% interest in those Owner Entities. Each of the Owner Entities holds a corresponding 100% interest in the Operating LLC's (the "Operating Entities"), except where otherwise noted, which is the entity that holds title to a particular real estate investment asset. A copy of the Debtors' organizational chart has been included as an attachment, as reflected at Exhibit A to the Global Notes. NRIA's 20% beneficial interest in the respective Owner Entities is subject to a variable constraint whereby NRIA is not entitled to receive any economic benefit (except for a $10,000 liquidating distribution) with respect to its 20% interest until the Funds investors have collectively been repaid their outstanding principal balance and any promised accrued returns.

Based on the ownership structure of the various entities, NRIA and its affiliates utilize the equity method of accounting to account for its real estate investments, whereby any expenditure by the investing entity (NRIA or the Fund) is reflected in the books as records of NRIA or the Fund as an investment in an Owner Entity which reflects its investment in a corresponding Operating Entity by virtue of an equity contribution to that entity. The detail with respect to the individual transactions comprising the total book cost of the real estate investment asset is reflected on the books and records of the Operating Entity. The accounting department has reconciled the various general ledgers to ensure that the investment balances on the NRIA and Fund books and records matches the equity ownership of NRIA and/or the Fund on the respective Operating and Owner Entities as of each reporting period, determined to be the calendar years ending December 31, 2016 through 2021 and January 1, 2022 through the Petition Date as well as the months ending June 30, July 31 and August 31, 2022.

The accounting department also confirmed the investor onboarding documents with appropriate bank records, except where otherwise noted and subject to the disputed nature of certain investor balances, as well as the subsequent distributions to investors for each respective entity.

4. **Currency**. Unless otherwise indicated, all amounts are reflected in U.S. dollars.

5. **Fiscal Year**. Each Debtors' fiscal year is reported on as ending December 31st.

6. **Recharacterization**. Notwithstanding the Debtors' reasonable best efforts to properly characterize, classify, categorize or designate certain Claims, assets, executory contracts, unexpired leases and other items reported in the Schedules and SOFAs, the Debtors may, nevertheless, have

5

improperly characterized, classified, categorized, designated, or omitted certain items due to the complexity and size of the Debtors' businesses. Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, redesignate, add or delete items reported in the Schedules and SOFAs at a later time as is necessary or appropriate as additional information becomes available.

**7. Fair Market Value; Book Value**. Prior to the Petition Date, the Debtors had completed properties, certain properties near completion, properties remaining to be completed or otherwise in certain stages of planning, and properties that were under contract for purchase. Prior to the Petition Date, appraisals were obtained for many of the properties which provided an as-is value and an as-completed value. The Debtors are in the process of obtaining updated valuations for all material assets. However, due to the volatility of the current real estate market, the fact that the Debtors have filed for Chapter 11 bankruptcy protection and to be conservative, neither of these values will be utilized. Accordingly, unless otherwise indicated, the Schedules and SOFAs reflect net book values for assets as of the dates stated in the Global Notes, as reflected in the Debtors' books and records. For each of the projects, the book values represent the costs incurred to the date for each of the projects. Amounts ultimately realized may vary from net book value, and such variance may be material.

The amounts listed for certain non-real estate assets do not include write-downs, if any, that may be necessary and would ordinarily be applied under GAAP to ensure a conservative statement of assets. If these assets have material value, the Debtors will pursue collection. Operating cash is presented at book balances as of the applicable Petition Date. Certain other assets, such as intangible assets, are listed as undetermined amounts as of the applicable Petition Date because the book values may materially differ from fair market values. Liabilities pursuant to "Notes" and "Units" are presented exclusive of any asserted accrued interest.

**8. Estimates**. To prepare and file the Schedules in accordance with the deadline established in these Chapter 11 Cases, the Debtors were required to make certain estimates and assumptions that affected the reported amounts of assets and liabilities as of the applicable Petition Date. The Debtors reserve the right to amend the reported amounts of assets, liabilities, and expenses to reflect changes in those estimates or assumptions.

**9. Totals and Undetermined Amounts**. All totals that are included in the Schedules and SOFAs represent totals of known amounts only without consideration of the classification of a particular claim, unless otherwise noted. To the extent there are unknown, disputed, contingent, unliquidated, or otherwise undetermined amounts, the actual total may be materially different than the listed total. The description of an amount as "unknown," "disputed," "contingent," "unliquidated," or "undetermined" is not intended to reflect upon the materiality of such amount. Due to unliquidated, contingent and/or disputed Claims, summary statistics in the Schedules, SOFAs and Global Notes may significantly understate the Debtors' liabilities.

**10. Excluded Assets and Liabilities**. The liabilities listed on the Schedules do not reflect any analysis of Claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to dispute or challenge the characterization, validity, or amount of any asserted Claims under section 503(b)(9) of the Bankruptcy Code.

The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and SOFAs, including, without limitation, accrued salaries and employee benefit accruals.

The Debtors also have excluded potential rejection damage Claims, if any, of counterparties to executory contracts and unexpired leases. In addition, certain immaterial assets and liabilities may have been excluded.

Certain liabilities (including, but not limited to certain reserves, deferred charges, and future contractual obligations) have not been included in the Debtors' Schedules. Other immaterial assets and liabilities may also have been excluded.

The estimate of Claims set forth in the Schedules may not reflect assertions by the Debtors' creditors of a right to have such Claims paid or reclassified under the Bankruptcy Code or orders of the Bankruptcy Court.

**11. Property and Equipment**. Nothing in the Schedules or SOFAs (including, without limitation the failure to list leased property or equipment as owned property or equipment) is, or shall be construed as, an admission as to the determination of legal status of any lease (including whether any lease is a true lease or financing arrangement). During the development and construction of the Debtors' properties their general contractors and subcontractors have and currently maintain and store their equipment at the Debtors' properties and/or leased locations. The Debtors do not own these assets and, therefore, they have not been listed.

**12. Leases**. In the ordinary course of business, the Debtors may have leased equipment and facilities under various operating leases. These agreements are carried by the Debtors at a zero-dollar-book value. Any such equipment and facilities leases are reported on Schedule G. To the extent that there was an amount outstanding under any of these agreements as of the applicable Petition Date, the amount owed to the applicable lessor has been listed on Schedule E/F of the Debtors.

**13. Guaranties and Other Secondary Liability Claims**. The Debtors have made reasonable efforts to locate and identify guaranties and other secondary liability Claims (collectively, the "Guaranties") in each of the executory contracts, unexpired leases, guaranteed secured financings, debt instruments and other such agreements. Where Guaranties have been identified, they have been included in the relevant Schedule for each Debtor. It is possible that certain Guaranties embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements may have been inadvertently omitted. The Debtors reserve the right to amend the Schedules to the extent additional Guaranties are identified or such Guaranties are discovered to have expired or be unenforceable. In addition, the Debtors reserve the right (i) to amend the Schedules and SOFAs and to recharacterize or reclassify any such contract or Claim, and (ii) to contest the validity or enforceability of any such Guaranties. Additionally, failure to list any Guaranties in the Schedules and SOFAs, including in any future amendments to the Schedules and SOFAs, shall not affect the enforceability of any Guaranties not listed.

Various iterations of the PPMs for the Fund and other entities indicate that investors were to receive a stated minimum return. NRIA was also making payments pursuant to the guarantees as detailed above with respect to the Deeded Properties. Based on the widespread and extensive nature of these and other alleged guarantees, the SOFAs and Schedules do not include a detailed list other than those reflected at Schedule D. However, based on the conclusions drawn in connection with the accounting reconciliation, NRIA may not possess the assets necessary to support those guarantees. Certain investors may also have received a "Personal Guarantee" from former President and CEO,

7

Rey E. Grabato, II. NRIA does not possess the necessary documents and information to make a determination with respect to the net worth of Mr. Grabato. The extent to which the Personal Guarantees were offered and in what form (i.e., signed agreement, email correspondence, verbally or otherwise) has not been determined at this time. Accordingly, these alleged guarantees are not reflected in the SOFAs.

**14.  Claims of Third-Party Related Entities**. Although the Debtors have made reasonable efforts to properly classify each Claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated and/or contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to both such entities and their affiliates. Therefore, to the extent that the Debtors have classified Claims of a creditor as "disputed" "unliquidated" and/or "contingent," all Claims of such creditor's affiliates listed in the Schedules shall similarly be considered as disputed, unliquidated and/or contingent, whether or not they are designated as such. The extent to which Mr. Salzano and/or Mr. Grabato were affiliated with other third-party related entities that may have been subject to common controlled ownership, other than those directly mentioned in Adv. Pro. No. 22-01257 in regard to NRIA v. USC, US Construction & Development, LLC, Dustin Salzano, John Farina, Premier and John Does 1-100 ("USC Complaint"), remains unclear and cannot be determined based on information available to the Debtors.  The Debtors reviewed various documents which seem to indicate that Mr. Grabato may have had an ownership interest in Akron Capital, LLC ("Akron") and/or Skyline Developments, LP ("Skyline") as well as potentially others, but the legal interpretation of the documents in question have not yet been analyzed.

**15.  Insiders**. For purposes of the Schedules and SOFAs, the Debtors define "insider" pursuant to section 101(31) of the Bankruptcy Code as (a) directors, (b) officers, (c) relatives of directors or officers of a Debtor, (d) any managing agent or managing member of a Debtor and (e) entities under common ownership with a Debtor. Payments to insiders listed in (a) through (e) above are set forth on SOFA Item 3.c. Persons listed as "insiders" have been included for informational purposes only. The Debtors did not take any position with respect to whether such individual could successfully argue that he or she is not an "insider" under applicable law, including without limitation, the federal securities laws, or with respect to any theories of liability or for any other purpose.

**16.  Intellectual Property Rights**. The exclusion of any intellectual property shall not be construed as an admission that such intellectual property rights have been abandoned, terminated, assigned, expired by their terms, or otherwise transferred pursuant to a sale, acquisition, or other transaction.

In addition, although the Debtors have made diligent efforts to attribute intellectual property to the rightful Debtor entity, in certain instances, intellectual property owned by one Debtor may, in fact, be owned by another Debtor.

**17.  Executory Contracts and Unexpired Leases**. Although the Debtors made diligent attempts to attribute executory contracts and unexpired leases to their rightful Debtors, in certain instances, the Debtors may have inadvertently failed to do so due to the complexity and size of the Debtors' businesses.

Moreover, the Debtors have not necessarily set forth executory contracts and unexpired leases as assets in the Schedules and SOFAs, even though these contracts and leases may have some value to the Debtors' estates. The Debtors' executory contracts and unexpired leases have been set forth in Schedule G. The Debtors' rejection of executory contracts and unexpired leases may result in the assertion of rejection damage Claims. The Schedules and SOFAs do not reflect any Claims for rejection damages. The Debtors reserve the right to make any arguments and objections with respect to the assertion of any such Claims.

**18. Materialman's/Mechanic's Liens**. Although diligent attempts to identify materialman's or mechanic's liens were made, the Debtors may have inadvertently failed to identify all such liens. Additionally, the assets listed in the Schedules and SOFAs are presented without consideration of any materialman's or mechanic's liens. Property and equipment listed in the Schedules and SOFAs are presented without consideration of any liens that may attach (or have been attached) to such property and equipment.

**19. Causes of Action**. Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their Causes of Action or potential Causes of Action against third parties as assets in the Schedules and SOFAs, including, without limitation, Causes of Action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.

The Debtors reserve all of their rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, cross-Claim, counter-Claim, or recoupment and any Claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity, or pursuant to any other theory of law (collectively, "Causes of Action") they may have, and neither these Global Notes nor the Schedules and SOFAs shall be deemed a waiver of any Claims or Causes of Action or in any way prejudice or impair the assertion of such Claims or Causes of Action.

**20. Intercompany Obligations**. Any receivables and payables between the Debtors' and affiliated entities in each applicable case (each an "Intercompany Receivable" or "Intercompany Payable" and, collectively, the "Intercompany Claims") are reported as assets on Schedule B or liabilities on Schedules D, E and F. These Intercompany Claims include the following components, among others: 1) loans to affiliates, 2) accounts payable, payroll and other disbursements made from an affiliate's bank accounts on behalf of one of the Debtors, 3) centrally billed expenses, 4) corporate expense allocations, and 5) accounting for trade and other intercompany transactions. These Intercompany Claims may or may not result in allowed or enforceable Claims by or against the Debtors, and by listing these Claims the Debtors are not indicating a conclusion that the Intercompany Claims are enforceable. Intercompany Claims may also be subject to set off, recoupment, and netting not reflected in the Schedules. In situations where there is not an enforceable Claim, the assets and/or liabilities of the Debtors may be greater or lesser than the amounts stated herein. All rights to amend Intercompany Claims in the Schedules and SOFAs are reserved. The Debtors have listed the Intercompany Payables, if any, as unsecured Claims on Schedule F. The Debtors reserve their rights to later change the characterization, classification, categorization, or

designation of such items. As detailed above in Section 3 and below with respect to SOFA Item 13, the Fund made expenditures relating to NRIA's separate business ventures as well as payments to insiders of a personal nature. Additionally, NRIA assigned to the Fund its ownership interests in Owner Entities with respect to the pre-Fund PPMs in August 2021 that had accumulated substantial built-in losses by virtue of projected construction losses as a result of construction overruns and/or lower than projected sales prices of completed units, overpayments with respect to the investors who redeemed their interest in the pre-Fund PPMs and/or "rolled over" by transferring their partnership interest in a pre-Fund PPM for a partnership interest in the Fund, as well as incentives related to the rollover transactions and others, certain portions of which are being disputed by the Debtors. This assignment of entities carrying built-in losses has been recorded on the books and records as an Intercompany Payable from NRIA to NPPF1, and corresponding Intercompany Receivable to NPPF1 from NRIA. The losses from the pre-Fund PPM properties may be passed through to the direct investors of those properties but the allocation is subject to further analysis and not yet complete at this time. Accordingly, the Intercompany Claim amounts may be subject to change.

**21. Entity Classification**. The Debtors have endeavored in good faith to identify the assets owned by the applicable Debtor and the liabilities owed by the applicable Debtor. Although the Schedules and SOFAs reflect the results of this effort, several factors may impact the Debtors' ability to precisely assign assets and liabilities to a particular entity (including non- Debtor affiliates), including, but not limited to: (i) certain assets may be primarily used by an entity other than the entity that holds title to such assets according to the Debtors' books and records; (ii) certain liabilities may have been nominally incurred by one entity, yet such liabilities may have actually been incurred by, or the invoices related to such liabilities may have been issued to or in the name of, an affiliate; and (iii) certain creditors of the Debtors may have treated one or more of the Debtors and their affiliates as a consolidated entity rather than as separate entities.

**22. Setoffs**. The Debtors incur certain offsets and other similar rights during the ordinary course of business. Offsets in the ordinary course can result from various items, including, without limitation, intercompany transactions, pricing discrepancies, returns, refunds, warranties, debit memos, credits, and other disputes between the Debtors and their suppliers and/or customers. These offsets and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately. Therefore, although such offsets and other similar rights may have been accounted for when certain amounts were included in the Schedules, offsets are not independently accounted for, and as such, are or may be excluded from the Schedules and SOFAs.

The claims of individual creditors for, among other things, goods, products, services or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances or other adjustments due from such creditors to the Debtors. The Debtors reserve all of their rights regarding such credits, allowances or other adjustments.

**23. Global Notes Control**. All of the Schedules and SOFAs are subject to and qualified by the Global Notes. In the event that the Schedules and SOFAs differ from the Global Notes, ***the Global Notes shall control***.

## SPECIFIC DISCLOSURES WITH RESPECT TO THE SCHEDULES

### Schedule A/B - Real and Personal Property

Except where otherwise noted, the Debtors have included on Scheduled A/B the book value of owned real and personal property assets. NRIA and the Fund indirectly invest in real estate project assets through the various Debtors, as detailed above and as reflected in the organizational chart, attached at Exhibit A. These real estate project assets and the cash accounts of the Debtors represent a significant portion of the assets of the Debtors.

As noted above, despite commercially reasonable efforts to identify all known assets, the Debtors may not have listed all of their Causes of Action or potential Causes of Action against third parties as assets in their Schedules and SOFAs, including, but not limited to, Causes of Action arising under the Bankruptcy Code or any other applicable laws to recover assets or avoid transfers.

Assets recorded as negative net payables or other prepayments are representative of credits owed from customers or third parties. Security deposits held by real property lessors, utility companies and various other third parties have been included on the applicable Debtors' Schedule A/B, although some amounts may have been capitalized as a cost of the respective real estate asset. Separately, some of the Debtors' personal property is held and maintained at third-party locations.

The Debtors' primary assets are their direct and indirect interests in Debtors' entities that hold certain real estate projects. The Debtors have performed no independent review of the value of their assets for purposes of these Schedules but have provided an estimated view of the net value of such assets, at the Debtors cost.

### Item 3 – Checking, Savings, Money Market, or Financial Brokerage Accounts

Amounts listed in this Item reflect the amounts listed in the Debtors' books and records with regard to NRIA and the Fund and all their related Debtors: Henry Street Capital 506 LLC, Gulf Stream Views II  LLC, Wright By The Sea 1901 LLC, Manhattan Avenue Capital 1300 LLC, Bergenline Capital 4901 LLC, Cherry Street Capital 113-27 LLC, South Christopher Columbus Capital 1499 LLC, 2044 West First Capital LLC, FTM Partners Portfolio Hotel Retail LLC, FTM Partners Portfolio Marina LLC, NRIA Manhattan Avenue 1300 Member LLC, NRIA 434 Union Manager LLC, 142 NE 7th Capital LLC, Delray Capital 1 LLC, Federal Highway Capital 318 LLC, Denery Lane Capital 843 LLC, Luquer Street Capital 140 LLC, Summit Street Capital 143 LLC, Carroll Street Capital 160 LLC, Berkeley Place Capital 227 LLC, Sackett Street Capital 279 LLC, 7th Street Capital 285 LLC, Degraw ST Capital 377 LLC, Third Street Capital 423 LLC, Union Street Capital 434 LLC, Seventh Street Capital 494 LLC, Baltic Street Capital 640 LLC, N. Ocean Capital 344 LLC, N. Ocean Capital 707 LLC, Bond Way Capital 915 LLC, N. Ocean Capital 2929 LLC, N. Ocean Capital 3565 LLC, and Lombard Partners LLC.  The amounts listed are the bank balances as of the Petition Date. The Debtor's identified several immaterial bank accounts historically that are believed to have been closed out and/or never funded but are unable to confirm based on the lack of necessary supporting documentation. Accordingly, immaterial amounts may have been omitted. The Debtors reserve all rights to amend this response should additional information become available later.

## Item 7 & 8 – Deposits and Prepayments

The Debtors' characterization of an asset listed in these Items is not a legal characterization of either a deposit or a prepayment. The Debtors reserve all of their rights to re- categorize and/or recharacterize such asset holdings at a later time as appropriate. Some amounts that could potentially be classified as deposits or prepayments may have been classified as operating expenses. Additionally, the amounts set forth on these Items do not include amounts held as retainers by professionals.

## Item 11 – Interest in Insurance Policies or Annuities

The Debtors maintain certain insurance policies essential to their continued operations, including, but not limited to, property, casualty, motor vehicle and general liability, insurance policies. The terms of the policies are similar to insurance policies typically maintained by corporate entities that are similar in size and nature to the Debtors. The Debtors' insurance policies generally are structured to provide coverage for all of their direct and indirect subsidiaries and affiliates.

## Item 15 – Investments

The Fund invests in property development, including, but not limited to, the development of multifamily, townhome, condominium and mixed-use properties. The Fund indirectly invests in Real Estate Assets through various limited liability companies (collectively, the "Real Estate Asset LLCs"), for which NRIA serves as the manager. For certain Real Estate Asset LLCs, the Fund holds an eighty percent (80%) beneficial ownership interest and NRIA holds the remaining twenty percent (20%) interest, which NRIA received in return for providing management services to such Real Estate Asset LLCs. As detailed above, NRIA's 20% interest is subject to a variable constraint whereby NRIA is not entitled to receive any economic benefit (except for a $10,000 liquidating distribution) with respect to its 20% interest until the Funds investors have collectively been repaid their outstanding principal balance and any promised accrued returns. The Fund holds other interests through an assignment by NRIA in various Real Estate Asset LLCs with respect to pre-Fund PPMs that were formed prior to the formation of the Fund. Certain of these Real Estate Asset LLCs are wholly owned by the Fund, while others are owned by the Fund alongside other investors. Certain of these Real Estate Asset LLCs, in turn, each wholly-own an underlying operating limited liability company that directly own the corresponding Real Estate Asset, except where otherwise noted. A copy of the Debtors' organizational chart has been included as an attachment as Exhibit A to the Global Notes.

## Items 38 – 42 - Furniture

Based on the Debtors' review of relevant books and records, the majority of the furniture listed in these Items is physically located at properties owned or leased by the Debtors.

## Items 54 & 55 – Real Property

Land value and Real Estate properties costs are valued at cost. On Schedule A/B the Debtors have listed the real properties and the related costs for each of the Debtors who owned the land and is responsible for the completion of the properties.

**Items 59 – 64 (Part 10: Intangibles and Intellectual Property)**

Patents, trademarks and other intellectual property are listed as an undetermined amount because the fair value of such ownership is dependent on numerous variables and factors and likely differs significantly from their net book value.

**Item 75 - Other Contingent and Unliquidated Claims or Causes of Action of Every Nature, Including Counterclaims of the Debtors, Rights to Setoff Claims and Intercompany Claims**

The Debtors' failure to list any contingent and/or unliquidated Claim held by the Debtors in response to this question shall not constitute a waiver, release, relinquishment, or forfeiture of such Claim. In the ordinary course of their businesses, the Debtors may have accrued, or may subsequently accrue, certain rights to counterclaims, setoffs, refunds, or other warranty Claims against their suppliers. Additionally, certain of the Debtors may be party to pending litigation in which the Debtors have asserted, or may assert, Claims as a plaintiff or counterclaims as a defendant. Because such Claims are unknown to the Debtors and not quantifiable as of the Petition Date, they are not listed in Item 75. Finally, because of the state of the Debtors' books and records, the Debtors may or may not have Claims against related entities in unknown amounts, and therefore, the Debtors have designated those potential Claims as "unspecified claims against related parties."

**Schedule D - Creditors Holding Secured Claims**

The Claims listed on Schedule D arose or were incurred on various dates. All Claims listed on Schedule D, however, appear to have been incurred before the applicable Petition Date.

Except as otherwise agreed pursuant to an order of the Bankruptcy Court, the Debtors reserve the right to dispute or challenge the validity, perfection or priority of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D. The descriptions provided on Schedule D are intended to serve only as a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent and priority of any liens. Nothing in any of the Debtors' Schedule D shall be deemed a modification, interpretation, or waiver of the terms of any such agreements.

The Debtors have not included on Schedule D all parties that may believe their Claims are secured through setoff rights, deposits posted by, or on behalf of, the Debtors, inchoate statutory lien rights, or real property lessors, utility companies and other parties that may hold security deposits.

By listing a party on Schedule D based on a UCC-1 filing, the Debtors are not conceding that such party actually holds a perfected, unavoidable security interest in the asset that is the subject of such filing and reserves all rights as set forth in these Global Notes.

**Schedule E/F - Creditors Holding Unsecured Priority and/or Unsecured Non-Priority Claims**

The Bankruptcy Court has authorized the Debtors, in their discretion, to pay certain liabilities that may be entitled to priority under the applicable provisions of the Bankruptcy Code. To the extent that applicable Claims have been paid under one or more of the foregoing orders, such Claims may not be included in Schedule E/F.

13

The listing of any Claim on Schedule E/F does not constitute an admission by the Debtors that such Claim is entitled to priority treatment under section 507 of the Bankruptcy Code. The Debtors reserve their right to dispute the priority status of any Claim on any basis.

The unsecured non-priority Claims of individual creditors for, among other things, products, goods or services are listed as either the lower of the amounts invoiced by the creditor or the amounts reflected on the Debtors' books and records and may not reflect credits or allowances due from such creditors to the Debtors. The Claims listed on Schedule E/F arose or were incurred on various dates. In certain instances, the date on which a Claim arose may be subject to dispute. While commercially reasonable efforts have been made, determining the date upon which each Claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list respective dates for the Claims listed on Schedule E/F.

Schedule E/F also includes potential or threatened litigation Claims. Any information contained in Schedule E/F with respect to such potential litigation shall not be a binding representation of the Debtors' liabilities with respect to any of the potential suits and proceedings included therein. The Debtors expressly incorporate by reference into Schedule E/F all parties to pending litigation listed on Item 7 of the SOFAs as contingent, unliquidated, and disputed Claims, to the extent not already listed on Schedule E/F.

Schedule E/F reflects the pre-petition amounts owing to counterparties to executory contracts and unexpired leases. Such pre-petition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of executory contracts or unexpired leases. Additionally, Schedule E/F does not include potential rejection damage Claims, if any, of the counterparties to executory contracts and unexpired leases that may be rejected.

Amounts payable listed on Schedule E/F have been assigned to a specific Debtor when it is possible, from the Debtors' books and records, to assign such payable to a specific Debtor. The Debtors reserve all rights to amend or modify Schedules E/F in respect of, among other things, the specific Debtor listed as liable on a particular obligation.

The Fund and the Debtors' have approximately 2,000 investors. Investors who believe they are investors in certain other Debtors may or may not possibly be an investor in the Fund or have a Claim against a certain Debtor. Given the characteristics of the investment, the determination of whether the investors in the Fund are classified as unsecured creditors or equity owners is pending the determination of the bankruptcy Court, although such determination may be subject to a different interpretation by the Internal Revenue Service, or other jurisdiction, as detailed in the Debtors' PPMs. Irrespective of the final determination of their classification, it is believed that there will be money available for distribution to the investors. For each investor in the Fund, their investor balance has been reflected net of payments made to the individual investor, but without consideration to any operating loss allocations for income tax purposes and/or other adjustments. Accordingly, the total amount of net investor balances reflected on the Schedules as "Other Unsecured Claims," will not match the Schedules K-1 that have been or will be distributed to investors.

In connection with the solicitation of interests in the Fund, NRIA also offered approximately 1,200 alleged "Joint Venture agreements" whereby investors loaned NRIA $1 in addition to their agreed upon Fund investment for a potential additional interest with respect to a specific property owned by the Fund. This list has not been supplied in connection with the SOFAs and Schedules as it has not yet been fully reconciled, the parties to the alleged agreements are duplicative of individuals who are already listed on Schedule D and the validity of these agreements remains unclear.

## Schedule G - Unexpired Leases and Executory Contracts

Although commercially reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases, inadvertent errors, omissions or overinclusion may have occurred in preparing Schedule G. In the ordinary course of business, the Debtors enter into various agreements with customers and vendors. The Debtors may have entered into various other types of agreements in the ordinary course of their business, such as indemnity agreements, supplemental agreements, letter agreements, and confidentiality agreements that may not be set forth in Schedule G. Omission of a contract, lease or other agreement from Schedule G does not constitute an admission that such omitted contract, lease or agreement is not an executory contract or unexpired lease. Likewise, the listing of an agreement on Schedule G does not constitute an admission that such agreement is an executory contract or unexpired lease, or that such agreement was in effect or unexpired on the applicable Petition Date or is valid or enforceable. The agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters and other documents, instruments and agreements that may not be listed on Schedule G. Certain confidentiality and non-disclosure agreements may not be listed on Schedule G.

Any and all rights, Claims and Causes of Action of the Debtors with respect to the agreements listed on Schedule G are hereby reserved and preserved.

## Schedule H - Co-Debtors

In the ordinary course of their business, the Debtors are involved in litigation with co-debtors and such litigation is listed on Schedule E/F. The Debtors may also have co-debtors or co-obligors under various leases, contracts or other agreements. The Debtors have made a reasonable effort to include these co-debtor or co-obligor relationships in Schedule H; however, certain co-debtor and co-obligor relationships may have been inadvertently omitted.

Any omission of a co-debtor or co-obligor in the Schedules does not constitute an admission that such omitted co-debtor or co-obligor is not obligated or liable under the relevant debt. The Debtors' rights under the Bankruptcy Code and non-bankruptcy law with respect to any omitted co-debtor or co-obligor are not impaired by the omission.

## SPECIFIC DISCLOSURES WITH RESPECT TO THE SOFAs

### SOFAs Item 1 – Gross Revenue from Business

For each of the Debtors, a SOFA attachment has been provided that reflects the gross revenues of each of the Debtors' properties. The SOFA attachment for NRIA and the Fund also detail the related property costs and the net profit (loss) for each of the Debtors' properties.

### SOFAs Item 3 – 90 Day Payments

SOFAs Item 3 includes any disbursement or other transfer made by the Debtors within 90 days before the applicable Petition Date except for those made to insiders (which payments appear in response to SOFAs Item 4), employees, and bankruptcy professionals (which payments appear in response to SOFAs Item 11). All disbursements are made through Debtors' cash management system. Additionally, all disbursement information reported in SOFAs Item 3 for a specific Debtor pertains to the bank accounts maintained by that Debtor. All 90-day disbursements made from the Debtor are accounted for as having been made from that entity irrespective of the entity that received the benefit of such payment.

The banking relationship between NRIA and its related Debtors and TD Bank, which was the distribution vehicle for the monthly investor payments (as well as virtually all other payments), ceased during September 2021 as a result of the ongoing investigations. In and around October 2021 NRIA began to utilize Bill.com for its third-party ACH payment processing services to distribute monthly payments to the approximately 2,000 investors. The Debtors have maintained and reconciled the breakdown of the lump sum payments to and from Bill.com reflected on the schedule of 90-day payments and have allocated those payments accordingly which are reflected in the outstanding principal balances for each investor, some of which are disputed and subject to change, as detailed above.

### SOFAs Item 4 – Insider Payments

The Debtors have attempted to include all payments made on or within 12 months before the applicable Petition Date to any individual or entity deemed an "insider." The listing of a party as an insider is not intended to be nor should be construed as a legal characterization of such party as an insider and does not act as an admission of any fact, Claim, right or defense, and all such rights, Claims, and defenses are hereby expressly reserved.

There are certain current employees of the Debtors that hold conventional positions who received reasonable compensation and were related to or were formerly related to certain insiders of the Debtors and their compensation has been excluded.

### SOFAs Item 6 – Setoffs

The Debtors routinely incur setoffs during the ordinary course of business. Setoffs in the ordinary course can result from various items including counterparty settlements, pricing discrepancies, returns, warranties and other transaction true-ups. These normal setoffs are consistent with the ordinary course of business in the Debtors' industry and can be particularly voluminous,

making it unduly burdensome and costly for the Debtors to list all normal setoffs. Therefore, ordinary course setoffs are excluded from the Debtors' responses to SOFA Item 6 except where otherwise noted.

## SOFAs Item 7 – Litigation

In addition to the litigation listed in SOFAs Item 7, the Debtors from time to time may also participate in administrative actions and appeals with state agencies in the ordinary course of business. These actions have not been identified in this schedule unless formal proceedings were instituted. The actual amount of litigation matters is contingent on the outcome of the cases.

## SOFAs Item 10 – Losses from Fire, Theft, or Other Casualty

The Debtors occasionally incur losses for a variety of reasons, including theft and property damage. The Debtors, however, may not have records of all such losses to the extent such losses do not have a material impact on the Debtors' business or are not reported for insurance purposes.

## SOFAs Item 11 – Payments Related to Bankruptcy

Payments and transfers made on behalf of all Debtors in connection with debt consolidation, restructuring, seeking bankruptcy relief or filing the Chapter 11 Cases, were made by NRIA or the Fund, and therefore, are reflected on those entities only.

## SOFAs Item 13 – Transfers Not Already Listed on This Statement

Payments directly to, or for the benefit of, Mr. Salzano, Mr. Grabato, Mr. O'Brien and their affiliates that were not already listed elsewhere are reflected as transfers that may be classified as transfers outside of the ordinary course of business upon further analysis. The Debtors cannot express an opinion with respect to the portion of these payments that relates to reasonable compensation for services provided or items that could have potentially been avoided by NRIA and its affiliates. These payments, which include, but are not limited to, compensation, car payments, mortgage payments, payments to Mr. Salzano's current wife, Olena Budinska, and payments to various vendors in order to divert internet search results away from Mr. Salzano's prior failed business ventures, were disbursed by NRIA and/or Fund bank accounts, and therefore, are reflected on those entities only.

The Debtors have filed multiple Adversary Proceedings and are working collaboratively with the Official Committee of Unsecured Creditors ("UCC") and its professional advisors to further examine transactions related to the following, which could potentially be determined to have been conducted outside the ordinary course of business:

1. Payments to various parties with respect to the Deeded Properties as reflected in the USC Complaint.
2. Payments to USC related to purported construction services as reflected in the USC Complaint.
3. Payments to insiders and other related parties which are the subject of subpoenas filed on behalf of the UCC.
4. Real estate transactions involving the insiders, Akron, Skyline, other parties which are the subject of subpoenas filed on behalf of the UCC and potentially others that may be identified

as a result of further analysis.

5. Payments with respect to the pre-Fund PPMs, including, but not limited to, overpayments with respect to redeeming investors, payments with respect to the "rollover transactions" and others.

Accordingly, the Debtors reserve all of their rights to supplement their response to this question as additional documents and information become available.

## SOFAs Item 22, 23 and 24 - Environmental Information

The information set forth in SOFAs Items 22, 23, and 24 reflect the environmental information readily available to the Debtors at the time the Debtors prepared the Schedules and SOFAs.

## SOFAs Item 26 – Books, Records and Financial Statements

Prior to the March 2021 arrest of Mr. Salzano, Mr. Salzano was directly involved in the accounting process and directed then-Controller Robert Valencia, who is the cousin of Rey Grabato, with respect to most internal accounting matters. A substantial portion of NRIA's internal accounting was outsourced to USC and performed under the supervision of Dustin Salzano, who is the son of Mr. Salzano and the Chief Financial Officer of USC.

Van Duyne, Bruno & Co., P.A. ("Van Duyne") was engaged in or around March 2019 and ultimately prepared a 2017 consolidated compilation report with respect to NRIA and its affiliates, consolidated review reports for the periods ending December 2018, December 2019 and June 30, 2020, respectively, and was the paid tax preparer for several Debtor entities with respect to the 2019 tax year. Van Duyne terminated its engagement letter and withdrew from its engagement with NRIA immediately following Mr. Salzano's arrest in early March 2021. Wipfli LLP ("Wipfli") was engaged as the paid tax preparer with respect to the Debtor entities that USC and Dustin Salzano managed the day-to-day bookkeeping for and prepared several Debtor tax returns for the years ended 2016 through 2020.

Exhibit B to the Global Notes details the affiliation of third-parties with respect to accounting related functions of the respective Debtors. NRIA instructed both USC and Wipfli to cease performing accounting related services in or around May 2021 and began to manage all day-to-day accounting operations internally while it was seeking a new tax preparer. Mr. Valencia maintained most of the administrative accounting controls until the November 2021 arrival of Brian Casey as the Additional Manager to the Fund, due to then-CEO Mr. Grabato's insistence that Mr. Valencia's historical knowledge was crucial to the accounting department.

The current Chief Financial Officer was appointed in approximately August 2021 which was approved by Mr. Casey in November 2021. NRIA also retained Eisner Advisory Group ("Eisner") in December 2021 to provide technical and advisory accounting services to support the internal accounting staff with respect to the accounting reconciliation detailed above. Eisner was subsequently engaged to be the Debtors paid tax preparer for all entities moving forward.

In the ordinary course of business, the Debtors may provide certain parties, such as financial institutions, debtholders, auditors, potential investors, vendors and financial advisors financial statements that may not be part of a public filing. The Debtors do not maintain complete lists to track such disclosures. As such, the Debtors have not provided lists of these parties in response to this question.

*          *          *          *          *

# EXHIBIT A

# NRIA ORGANIZATIONAL CHART



| | Subsidiary Entity | Owner | Ownership Percentage |
|---|---|---|---|
| 1 | Web Marketing Associates, LLC | NRIA | 98% |
| 2 | Lender Prime 1, LLC | NRIA | 100% |
| 3 | 143 Adagio Investments, LLC | NRIA | 100% |
| 4 | 184 Lincoln Place LP | NRIA | 100% |
| 5 | Land Net LLC | NRIA | 100% |
| 6 | NRIA Exchange LLC | NRIA | 100% |
| **Managed Entity** | | | |
| Black Horse Alley Capital | | | |

**National Realty Investment Advisors, LLC ("NRIA")**

**NRIA Partners Portfolio Fund I, LLC ("NPPF1")**
100% Voting/Common Interests: NRIA
100% Preferred Non-Voting Interests: NPPF1 Investors

**100% Owner** → **NRIA Structured Credit Strategies, LLC**
100% Owned by NPPF1

**20% Owner (Unless Otherwise Noted)**

**80% Owner (Unless Otherwise Noted)**

**100% Owner**

**Real Estate Asset LLCs (See Page 2)**

**Real Estate Asset LLCs (See Page 3)**

# NRIA ORGANIZATIONAL CHART

| Real Estate Asset LLC: 80% Owned by NPPF1 / 20% Owned by NRIA (Unless Otherwise Noted) | Operating LLC: 100% Owned by Real Estate Asset LLC | Manager LLC: 100% Owned by NRIA |
|---|---|---|
| NRIA HENRY STREET 506 MANAGER LLC | HENRY STREET CAPITAL 506 LLC | |
| Gulf Stream Views LLC | Gulf Stream Views II LLC | NRIA GULF STREAM VIEWS MANAGER LLC |
| NRIA 1ST AVENUE 301 MANAGER LLC | 1ST AVENUE CAPITAL 301 LLC | |
| NRIA Wright by the Sea 1901 Member LLC | Wright by the Sea 1901 LLC | NRIA FL Manager LLC |
| NRIA GUTTENBERG CAPITAL 6269 MANAGER LLC / NRIA GUTTENBERG CAPITAL 6269 JV MANAGER LLC | GUTTENBERG CAPITAL 6269 LLC | |
| Main St. Capital 360 Member LLC | Main St. Capital 360 LLC | MAIN ST CAPITAL 360 MANAGER LLC |
| NRIA Guttenberg Capital 416-22 69th St Member LLC | GUTTENBERG CAPITAL 416-22 69TH ST LLC | NRIA GUTTENBERG CAPITAL 416-22 69TH ST MANAGER LLC |
| NRIA 51st Street 508 Member LLC | 51ST STREET CAPITAL 508 LLC owns Culver Urban Renewal Redevelopment II | NRIA 51ST STREET MANAGER 508 LLC |
| NRIA 52nd Street 511-513 Member LLC | 52ND STREET CAPITAL 511-513 LLC owns Culver Urban Renewal Redevelopment I | NRIA NJ MANAGER 511 LLC |
| NRIA Newark Street Capital 511 Member LLC | Newark Street Capital 511-521 LLC | NRIA NEWARK STREET CAPITAL 511-521 MANAGER LLC |
| NRIA Madison Street Capital 931 Member LLC | Madison Street Capital 931 LLC | NRIA NJ Manager 931 LLC |
| NRIA Manhattan Avenue 1300 Member LLC / NRIA EB5 1300 Manhattan Fund LLC **(6% Non-Voting)** | Manhattan Avenue Capital 1300 LLC | NJ Manager 1300 LLC |
| NRIA Bergenline 4901 Manager LLC / NRIA EB5 4901 BERGENLINE FUND LLC **(6% Non-Voting)** | Bergenline Capital 4901 LLC | |
| Adam St Capital 6903 Member LLC | Adam St Capital 6903 LLC | ADAM ST CAPITAL 6903 MANAGER LLC |
| NRIA North Bergen 8709 Member LLC | North Bergen Capital 8709 LLC | NRIA NJ Manager 8709 LLC |
| NRIA CHERRY STREET 113-27 MANAGER LLC | CHERRY STREET CAPITAL 113-27 LLC | |
| NRIA SOUTH CHRISTOPHER COLUMBUS 1499 MANAGER LLC / Other Investors **(6% Non-Voting)** | SOUTH CHRISTOPHER COLUMBUS CAPITAL 1499 LLC | |
| NRIA 3RD STREET CAPITAL 200-210 MEMBER, LLC | 3RD STREET CAPITAL 200-210 LLC | NRIA 3RD STREET CAPITAL 200-210 MANAGER, LLC |
| NRIA 3RD STREET CAPITAL 203-215 MEMBER, LLC | 3RD STREET CAPITAL 203-215 LLC | NRIA 3RD STREET CAPITAL 203-215 MANAGER, LLC |
| NRIA BRINY CAPITAL 305 MEMBER, LLC | BRINY CAPITAL 305 LLC | NRIA BRINY CAPITAL 305 MANAGER, LLC |
| NRIA 2044 WEST FIRST CAPITAL MEMBER, LLC | 2044 WEST FIRST CAPITAL LLC | NRIA 2044 WEST FIRST CAPITAL MANAGER, LLC |
| NRIA Partners Portfolio Fund I LLC | FTM PARTNERS PORTFOLIO HOTEL RETAIL LLC | NRIA 2044 WEST FIRST CAPITAL MANAGER, LLC |
| NRIA Partners Portfolio Fund I LLC | FTM PARTNERS PORTFOLIO MARINA LLC | NRIA 2044 WEST FIRST CAPITAL MANAGER, LLC |
| NRIA Partners Portfolio Fund I LLC | FTM PARTNERS PORTFOLIO RESTAURANT LLC | NRIA 2044 WEST FIRST CAPITAL MANAGER, LLC |
| NRIA OLD RIVER RD CAPITAL 460-510 MEMBER, LLC | OLD RIVER ROAD CAPITAL 460-510, LLC | NRIA OLD RIVER RD CAPITAL 460-510 MANAGER, LLC |



# NRIA ORGANIZATIONAL CHART

| Real Estate Asset LLC: 100% Owned by NPPF1 | Operating LLC: 100% Owned by Real Estate Asset LLC | Manager LLC: 100% Owned by Operating LLC (Unless Otherwise Noted) |
|---|---|---|
| NRIA NE 7TH MANAGER LLC | 142 NE 7TH CAPITAL LLC | |
| NRIA DELRAY 1 MANAGER LLC | Delray Capital 1 LLC | Delray Capital 1B LLC |
| NRIA FEDERAL HIGHWAY 318 MANAGER LLC | FEDERAL HIGHWAY CAPITAL 318 LLC | Federal Highway Capital 318 B LLC (100% Owned by NPPF1) |
| NRIA DENERY LANE CAPITAL 837 MANAGER LLC | DENERY LANE CAPITAL 837 LLC | |
| DENERY LANE CAPITAL 843 MANAGER LLC | DENERY LANE CAPITAL 843 LLC | |
| NRIA 140 LUQUER MANAGER LLC | LUQUER STREET CAPITAL 140 LLC | |
| NRIA Brooklyn II | SUMMIT STREET CAPITAL 143 LLC | |
| NRIA Brooklyn II | CARROLL STREET CAPITAL 160 LLC | |
| NRIA 227 BERKELEY MANAGER LLC | BERKELEY PLACE CAPITAL 227 LLC | |
| NRIA 279 SACKETT MANAGER LLC | SACKETT STREET CAPITAL 279 LLC | |
| NRIA 7TH STREET CAPITAL MANAGER LLC | 7TH STREET CAPITAL 285 LLC | |
| NRIA Brooklyn I | DEGRAW ST CAPITAL 377 LLC | |
| NRIA 423 THIRD MANAGER LLC | THIRD STREET CAPITAL 423 LLC | |
| NRIA 434 UNION MANAGER LLC | UNION STREET CAPITAL 434 LLC | |
| NRIA 494 SEVENTH MANAGER LLC | SEVENTH STREET CAPITAL 494 LLC | |
| NRIA Brooklyn I | BALTIC STREET CAPITAL 640 LLC | |
| NRIA II | BERGEN ST CAPITAL 1070 LLC | |
| NRIA N. OCEAN 344 MANAGER LLC | N. OCEAN CAPITAL 344 LLC | |
| NRIA N. OCEAN 707 MANAGER LLC | N. OCEAN CAPITAL 707 LLC | N OCEAN CAPITAL 707 B LLC |
| NRIA BOND WAY CAPITAL MANAGER LLC | BOND WAY CAPITAL 915 LLC | |
| NRIA N. Ocean 2929 Manager LLC | N. Ocean Capital 2929, LLC | N OCEAN CAPITAL 2929 B LLC |
| NRIA N. Ocean 3565 Manager LLC | N. Ocean Capital 3565, LLC | N. OCEAN CAPITAL 3565 B LLC |
| NRIA ELDEN DRIVE 1 MANAGER LLC | ELDEN DRIVE CAPITAL 1 LLC | |
| NRIA HANOVER ROAD MANAGER LLC | HANOVER ROAD CAPITAL 2 LLC | |
| NRIA KENWOOD RD 8 MANAGER LLC | KENWOOD RD CAPITAL 8 LLC | |
| NRIA OLD WOODS ROAD MANAGER LLC | OLD WOODS ROAD CAPITAL 36 LLC | |
| NRIA 2031 LOMBARD MANAGER LLC | 2031 LOMBARD PARTNERS LLC | |



# EXHIBIT B

**NRIA**
**SOFAs Item 26 - Books, Records and Financial Statements**

| | Debtor | Accountants & Bookkeepers | Tax Preparers | Financial Statement Preparers |
|---|---|---|---|---|
| 1 | National Realty Investment Advisors, LLC | NRIA | Van Duyne | Van Duyne |
| 2 | NRIA Partners Portfolio Fund I, LLC | NRIA | Van Duyne | Van Duyne |
| 3 | 142 NE 7TH CAPITAL LLC | USC | WIPFLI | Van Duyne |
| 4 | 143 Adagio Investments | NRIA | Pandya Kapadia Bhatt & Asso. CPAs LLC | N/A |
| 5 | 184 Lincoln Place LP | USC | WIPFLI | Van Duyne |
| 6 | 1ST AVENUE CAPITAL 301 LLC | NRIA | Van Duyne | Van Duyne |
| 7 | 2031 LOMBARD PARTNERS LLC | USC | WIPFLI | Van Duyne |
| 8 | 2044 WEST FIRST CAPITAL LLC | NRIA | N/A | N/A |
| 9 | 3RD STREET CAPITAL 200-210 LLC | NRIA | N/A | N/A |
| 10 | 3RD STREET CAPITAL 203-215 LLC | NRIA | N/A | N/A |
| 11 | 51ST STREET CAPITAL 508 LLC | NRIA | N/A | N/A |
| 12 | 52ND STREET CAPITAL 511-513 LLC | NRIA | N/A | N/A |
| 13 | 7TH STREET CAPITAL 285 LLC | USC | WIPFLI | Van Duyne |
| 14 | Adam St Capital 6903 LLC | NRIA | N/A | Van Duyne |
| 15 | Adam St Capital 6903 Member LLC | NRIA | N/A | N/A |
| 16 | BALTIC STREET CAPITAL 640 LLC | USC | WIPFLI | Van Duyne |
| 17 | BERGEN ST CAPITAL 1070 LLC | USC | WIPFLI | Van Duyne |
| 18 | Bergenline Capital 4901 LLC | NRIA | Van Duyne | Van Duyne |
| 19 | BERKELEY PLACE CAPITAL 227 LLC | USC | WIPFLI | Van Duyne |
| 20 | BOND WAY CAPITAL 915 LLC | USC | WIPFLI | Van Duyne |
| 21 | BRINY CAPITAL 305 LLC | NRIA | N/A | N/A |
| 22 | CARROLL STREET CAPITAL 160 LLC | USC | WIPFLI | Van Duyne |
| 23 | CHERRY STREET CAPITAL 113-27 LLC | USC | N/A | Van Duyne |
| 24 | DEGRAW ST CAPITAL 377 LLC | USC | WIPFLI | Van Duyne |
| 25 | Delray Capital 1 LLC | USC | N/A | Van Duyne |
| 26 | DENERY LANE CAPITAL 837 LLC | USC | WIPFLI | Van Duyne |
| 27 | DENERY LANE CAPITAL 843 LLC | USC | WIPFLI | Van Duyne |
| 28 | ELDEN DRIVE CAPITAL 1 LLC | NRIA | Van Duyne | Van Duyne |
| 29 | FEDERAL HIGHWAY CAPITAL 318 LLC | USC | N/A | N/A |
| 30 | FTM PARTNERS PORTFOLIO HOTEL RETAIL LLC | NRIA | N/A | N/A |
| 31 | FTM PARTNERS PORTFOLIO MARINA LLC | NRIA | N/A | N/A |
| 32 | FTM PARTNERS PORTFOLIO RESTAURANT LLC | NRIA | N/A | N/A |
| 33 | Gulf Stream Views II LLC | NRIA | N/A | N/A |
| 34 | Gulf Stream Views LLC | NRIA | Van Duyne | Van Duyne |
| 35 | GUTTENBERG CAPITAL 416-22 69TH ST LLC | NRIA | N/A | Van Duyne |
| 36 | GUTTENBERG CAPITAL 6269 LLC | NRIA | Van Duyne | Van Duyne |
| 37 | HANOVER ROAD CAPITAL 2 LLC | NRIA | Van Duyne | Van Duyne |
| 38 | HENRY STREET CAPITAL 506 LLC | USC | N/A | Van Duyne |
| 39 | KENWOOD RD CAPITAL 8 LLC | NRIA | Van Duyne | Van Duyne |
| 40 | Landnet LLC | NRIA | N/A | N/A |
| 41 | Lender Prime 1, LLC | NRIA | N/A | N/A |
| 42 | LUQUER STREET CAPITAL 140 LLC | USC | WIPFLI | Van Duyne |
| 43 | Madison Street Capital 931 LLC | NRIA | N/A | Van Duyne |
| 44 | Main St. Capital 360 LLC | NRIA | N/A | N/A |
| 45 | Main St. Capital 360 Member LLC | NRIA | N/A | N/A |
| 46 | Manhattan Avenue Capital 1300 LLC | NRIA | N/A | Van Duyne |
| 47 | N. OCEAN CAPITAL 344 LLC | USC | WIPFLI | Van Duyne |
| 48 | N. OCEAN CAPITAL 707 LLC | USC | N/A | N/A |
| 49 | Newark Street Capital 511-521 LLC | NRIA | N/A | Van Duyne |
| 50 | North Bergen Capital 8709 LLC | NRIA | N/A | Van Duyne |
| 51 | NRIA 140 LUQUER MANAGER LLC | NRIA | N/A | N/A |
| 52 | NRIA 1ST AVENUE 301 MANAGER LLC | NRIA | N/A | N/A |

**NRIA**
**SOFAs Item 26 - Books, Records and Financial Statements**

| | Debtor | Accountants & Bookkeepers | Tax Preparers | Financial Statement Preparers |
|---|---|---|---|---|
| 53 | NRIA 2031 LOMBARD MANAGER LLC | NRIA | N/A | N/A |
| 54 | NRIA 2044 WEST FIRST CAPITAL MEMBER, LLC | NRIA | N/A | N/A |
| 55 | NRIA 227 BERKELEY MANAGER LLC | NRIA | N/A | N/A |
| 56 | NRIA 279 SACKETT MANAGER LLC | NRIA | N/A | N/A |
| 57 | NRIA 3RD STREET CAPITAL 200-210 MEMBER, LLC | NRIA | N/A | N/A |
| 58 | NRIA 3RD STREET CAPITAL 203-215 MEMBER, LLC | NRIA | N/A | N/A |
| 59 | NRIA 423 THIRD MANAGER LLC | NRIA | N/A | Van Duyne |
| 60 | NRIA 434 UNION MANAGER LLC | NRIA | N/A | N/A |
| 61 | NRIA 494 SEVENTH MANAGER LLC | NRIA | N/A | N/A |
| 62 | NRIA 51st Street 508 Member LLC | NRIA | N/A | N/A |
| 63 | NRIA 52nd Street 511-513 Member LLC | NRIA | N/A | N/A |
| 64 | NRIA 7TH STREET CAPITAL MANAGER LLC | NRIA | N/A | N/A |
| 65 | NRIA Bergenline 4901 Manager LLC | NRIA | N/A | N/A |
| 66 | NRIA BOND WAY CAPITAL MANAGER LLC | NRIA | N/A | N/A |
| 67 | NRIA BRINY CAPITAL 305 MEMBER, LLC | NRIA | N/A | N/A |
| 68 | NRIA Brooklyn I | NRIA | N/A | N/A |
| 69 | NRIA Brooklyn II | NRIA | Van Duyne | Van Duyne |
| 70 | NRIA CHERRY STREET 113-27 MANAGER LLC | NRIA | WIPFLI | N/A |
| 71 | NRIA DELRAY 1 MANAGER LLC | NRIA | N/A | N/A |
| 72 | NRIA DENERY LANE CAPITAL 837 MANAGER LLC | NRIA | N/A | N/A |
| 73 | NRIA DENERY LANE CAPITAL 843 MANAGER LLC | NRIA | N/A | N/A |
| 74 | NRIA EB5 1300 Manhattan Fund LLC | NRIA | Van Duyne | Van Duyne |
| 75 | NRIA EB5 Bergenline Fund LLC | NRIA | N/A | N/A |
| 76 | NRIA ELDEN DRIVE 1 MANAGER LLC | NRIA | N/A | N/A |
| 77 | NRIA FEDERAL HIGHWAY 318 MANAGER LLC | NRIA | N/A | N/A |
| 78 | NRIA Guttenberg Capital 416-22 69th St Member LLC | NRIA | N/A | N/A |
| 79 | NRIA GUTTENBERG CAPITAL 6269 MANAGER LLC | NRIA | N/A | N/A |
| 80 | NRIA Guttenberg Capital 6269 JV Manager | NRIA | N/A | N/A |
| 81 | NRIA HANOVER ROAD MANAGER LLC | NRIA | N/A | N/A |
| 82 | NRIA HENRY STREET 506 MANAGER LLC | NRIA | WIPFLI | N/A |
| 83 | NRIA II, LLC | NRIA | N/A | Van Duyne |
| 84 | NRIA KENWOOD RD 8 MANAGER LLC | NRIA | N/A | N/A |
| 85 | NRIA Madison Street Capital 931 Member LLC | NRIA | N/A | N/A |
| 86 | NRIA Manhattan Avenue 1300 Member LLC | NRIA | N/A | N/A |
| 87 | NRIA N. Ocean 2929 Manager LLC | NRIA | N/A | N/A |
| 88 | NRIA N. OCEAN 344 MANAGER LLC | NRIA | N/A | N/A |
| 89 | NRIA N. Ocean 3565 Manager LLC | NRIA | N/A | N/A |
| 90 | NRIA N. OCEAN 707 MANAGER LLC | NRIA | N/A | N/A |
| 91 | NRIA NE 7TH MANAGER LLC | NRIA | N/A | N/A |
| 92 | NRIA Newark Street Capital 511 Member LLC | NRIA | N/A | N/A |
| 93 | NRIA North Bergen 8709 Member LLC | NRIA | N/A | N/A |
| 94 | NRIA OLD RIVER RD CAPITAL 460-510 MEMBER, LLC | NRIA | N/A | N/A |
| 95 | NRIA OLD WOODS ROAD MANAGER LLC | NRIA | N/A | N/A |
| 96 | NRIA SCC 1499 MANAGER LLC | NRIA | Van Duyne | Van Duyne |
| 97 | NRIA Structured Credit Strategies, LLC | NRIA | N/A | US Bancorp |
| 98 | NRIA Wright by the Sea 1901 Member LLC | NRIA | WIPFLI | N/A |
| 99 | OLD RIVER ROAD CAPITAL 460-510, LLC | NRIA | N/A | N/A |
| 100 | OLD WOODS ROAD CAPITAL 36 LLC | NRIA | Van Duyne | Van Duyne |
| 101 | SACKETT STREET CAPITAL 279 LLC | USC | WIPFLI | Van Duyne |
| 102 | SEVENTH STREET CAPITAL 494 LLC | USC | WIPFLI | Van Duyne |
| 103 | SOUTH CHRISTOPHER COLUMBUS CAPITAL 1499 LLC | USC | WIPFLI | Van Duyne |
| 104 | SUMMIT STREET CAPITAL 143 LLC | USC | WIPFLI | Van Duyne |

**NRIA**
**SOFAs Item 26 - Books, Records and Financial Statements**

| | Debtor | Accountants & Bookkeepers | Tax Preparers | Financial Statement Preparers |
|---|---|---|---|---|
| 105 | THIRD STREET CAPITAL 423 LLC | USC | WIPFLI | Van Duyne |
| 106 | UNION STREET CAPITAL 434 LLC | USC | WIPFLI | Van Duyne |
| 107 | Web Marketing Associates, LLC | NRIA | Cipolla & Co., LLC | N/A |
| 108 | Wright by the Sea 1901 LLC | USC | N/A | NRIA / Van Duyne |
| 109 | NRIA Exchange | NRIA | N/A | N/A |
| 110 | Culver Urban Renewal Redevelopment I | NRIA | N/A | N/A |
| 111 | Culver Urban Renewal Redevelopment II | NRIA | N/A | N/A |
| 112 | Adam St Capital 6903 Manager LLC | NRIA | N/A | N/A |
| 113 | Delray Capital 1B LLC | NRIA | WIPFLI | N/A |
| 114 | FEDERAL HIGHWAY CAPITAL 318B LLC | NRIA | WIPFLI | Van Duyne |
| 115 | Main St. Capital 360 Manager LLC | NRIA | N/A | N/A |
| 116 | N. Ocean Capital 2929B LLC | USC | WIPFLI | Van Duyne |
| 117 | N. Ocean Capital 3565B LLC | USC | WIPFLI | Van Duyne |
| 118 | N. OCEAN CAPITAL 707B LLC | NRIA | WIPFLI | Van Duyne |
| 119 | NJ Manager 1300 | NRIA | N/A | N/A |
| 120 | NRIA 2044 WEST FIRST CAPITAL Manager, LLC | NRIA | N/A | N/A |
| 121 | NRIA 3RD STREET CAPITAL 200-210 Manager, LLC | NRIA | N/A | N/A |
| 122 | NRIA 3RD STREET CAPITAL 203-215 Manager, LLC | NRIA | N/A | N/A |
| 123 | NRIA 51st Street 508 Manager LLC | NRIA | N/A | N/A |
| 124 | NRIA BRINY CAPITAL 305 Manager, LLC | NRIA | N/A | N/A |
| 125 | NRIA FL Manager | NRIA | N/A | N/A |
| 126 | NRIA GSV Manager | NRIA | N/A | N/A |
| 127 | NRIA Guttenberg 416-22 69th St Manager LLC | NRIA | N/A | N/A |
| 128 | NRIA Newark Street Capital 511-521 Manager LLC | NRIA | N/A | N/A |
| 129 | NRIA NJ Manager 511 LLC | NRIA | N/A | N/A |
| 130 | NRIA NJ Manager 8709 LLC | NRIA | N/A | N/A |
| 131 | NRIA NJ Manager 931 LLC | NRIA | N/A | N/A |
| 132 | NRIA Old River Rd Capital 460-510 Manager LLC | NRIA | N/A | N/A |

| | |
|---|---|
| Debtor Name | **Guttenberg Capital 416-22 69th St. LLC** |
| **United States Bankruptcy Court for the  District of New Jersey** | |
| Case number (if known):    **22-14578** | |

☐ Check if this is an amended filing

Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/22

**The debtor must answer every question.  If more space is needed, attach a separate sheet to this form.  On the top of any additional pages, write the debtor's name and case number (if known).**

| Part 1: | Income |
|---|---|

### 1. Gross Revenue from business

☒ None

| **Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year** | **Sources of Revenue** | **Gross Revenue** (before deductions and exclusions) |
|---|---|---|

### 2. Non-business revenue

Include revenue regardless of whether that revenue is taxable.  Non-business income may include interest, dividends, money collected from lawsuits, and royalties.  List each source and the gross revenue for each separately.  Do not include revenue listed in line 1.

☒ None

| | **Description of sources of revenue** | **Gross Revenue from** (before deductions and exclusions) |
|---|---|---|

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

### 3. Certain payments or transfers to creditors within 90 days before filing this case

List payments of transfers - including expense reimbursements to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575.  (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☒ None

| **Creditor's name and address** | **Dates** | **Total amount or value** | **Reasons for payment or transfer** *Check all that apply* |
|---|---|---|---|

In re   Guttenberg Capital 416-22 69th St. LLC                                      Case No.   22-14578

---

**4. Payments or other transfers of property made within 1 year before filing  this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

[X] None

| Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|
| | | | |

---

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

[X] None

| Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|
| | | | |

---

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

[X] None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| | | | |

---

**Part 3:**   **Legal Actions or Assignments**

---

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

[ ] None

| | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1 | United States Attorneys' Office, District of New Jersey | Investigation | | [X] Pending [ ] On appeal [ ] Concluded |
| | **Case number** | | | |

---

Official Form 207            **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

In re  Guttenberg Capital 416-22 69th St. LLC                                              Case No.   22-14578

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.2  United States Securities and Exchange Commission | Investigation | | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| **Case number** | | | |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.3  New Jersey Bureau of Securities | Investigation | | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| **Case number** | | | |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.4  Illinois Securities Department | Investigation | | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| **Case number** | | | |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.5  Alabama Securities Commission | Investigation | | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| **Case number** | | | |

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☒ None

| Custodian's name and address | Description of the property | Value |
|---|---|---|

---

| **Part 4:** | **Certain Gifts and Charitable Contributions** |
|---|---|

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of gifts to that recipient is less than $1,000**

Official Form 207                    Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

In re  Guttenberg Capital 416-22 69th St. LLC                                    Case No.   22-14578

☐ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

9.1    See attached Exhibit SOFA 9

**Recipient's relationship to debtor**

---

**Part 5:**    **Certain Losses**

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

☒ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss | Date of loss | Value of property lost |
|---|---|---|---|
| | If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br>List unpaid claims on Official Form 106 A/B (Schedule A/B: Assets - Real and Personal Property). | | |

---

**Part 6:**    **Certain Payments of Transfers**

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☒ None

| Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

---

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☒ None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

Official Form 207                **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**13. Transfers not already listed on this statement**

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

**[X]** None

| Who received transfer? Address. | Description of property transferred or payments received or debts paid in exchange. | Date transfer was made | Total amount or value |
|---|---|---|---|

---

| Part 7: | Previous Locations |
|---|---|

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| | Address | Dates of occupancy |
|---|---|---|
| 14.1 | 1 Harmon Plaza Fl 9<br>Secaucus, NJ 07094 | April 2021 - Present |
| 14.2 | 1325 Paterson Plank Road, Secaucus, NJ 07094 | March 2016 - March 2021 |

| Part 8: | Health Care Bankruptcies |
|---|---|

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No   Go to Part 9.
☐ Yes.  Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| | Location where patient records are maintained | How are records kept?<br>☐ Electronically<br>☐ Paper |

| Part 9: | Personally Identifiable Information |
|---|---|

**16. Does the debtor collect and retain personally identifiable information of customers?**

☐ No
☑ Yes. State the nature of the information collected and retained.   Names, Addresses, Email Addresses, Social Security Numbers, Bank Account Numbers and other Electronic Data

Does the debtor have a privacy policy about that information?

☐ No
☑ Yes.

---

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No  Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

   ☐ No. Go to Part 10.
   ☐ Yes. Fill in below:

   **Name of plan**                                    **Employer identification number of plan**
                                                        EIN:
   _____
   Has the plan been terminated?
   ☐ No
   ☐ Yes

---

**Part 10:        Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☐ None

| | Financial institution name and | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.1 | TD Bank | 1758 | ☑ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other | 9/2/2021 | $14,499.72 |

---

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☒ None

| Depository institution name and address | Names of anyone with access to it. Address | Description of contents | Does debtor still have it? |
|---|---|---|---|
| | | | ☐ No |
| | | | ☐ Yes |

---

Official Form 207                    **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

In re  Guttenberg Capital 416-22 69th St. LLC                                    Case No.   22-14578

---

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

[X] None

| Facility name and address | Names of anyone with access to it. Address | Description of contents | Does debtor still have it? |
|---|---|---|---|
| | | | ☐ No |
| | | | ☐ Yes |

---

| **Part 11:** | **Property the Debtor Holds or Controls That the Debtor Does Not Own** |
|---|---|

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☐ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| See Global Notes | | | |

---

| **Part 12:** | **Details About Environmental Information** |
|---|---|

For the purpose of Part 12, the following definitions apply:
 - Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
 - Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
 - Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

[✓] No
☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| | | | ☐ Pending |
| | | | ☐ On appeal |
| **Case number** | | | ☐ Concluded |

---

In re  Guttenberg Capital 416-22 69th St. LLC                                    Case No.   22-14578

---

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |

---

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |

---

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☒ None

| Business name and address | Describe the nature of the business | Employer identification number. Dates business existed |
|---|---|---|
| | | |

---

**26. Books, records, and financial statements**
**26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.**

☐ None

| | Name and address | Dates of service |
|---|---|---|
| 26a.1 | Thomas Fierro<br>1 Harmon Plaza, Floor 9<br>Secaucus, NJ 07094 | March 2021 -<br>Present |
| 26a.2 | Rey E. Grabato, II<br>1 Harmon Plaza, Floor 9<br>Secaucus, NJ 07094 | November 2006 -<br>April 2022 |

---

| 26a.3 | Thomas Nicholas Salzano<br>1 Harmon Plaza, Floor 9<br>Secaucus, NJ 07094 | November 2006 -<br>March 2021 |
|---|---|---|
| 26a.4 | Robert Valencia<br>1 Harmon Plaza, Floor 9<br>Secaucus, NJ 07094 | December 2017 -<br>May 2022 |
| 26a.5 | Dustin Salzano/U.S.<br>Construction Inc.<br>70 Hudson St. Suite 5A<br>Hoboken, NJ 07030 | See Global Notes |
| 26a.6 | Van Duyne, Bruno & Co.,<br>P.A.<br>18 Hook Mountain Road<br>P.O. Box 896<br>Pine Brook, NJ 07058 | See Global Notes |
| 26a.7 | Wipfli LLP<br>2 West Baltimore Ave<br>Suite 210<br>Media, PA 19063 | See Global Notes |

**26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.**

☐ None

| | **Name and address** | **Dates of service** |
|---|---|---|
| 26b.1 | Van Duyne, Bruno & Co.,<br>P.A.<br>18 Hook Mountain Road<br>P.O. Box 896<br>Pine Brook, NJ 07058 | See Global Notes |

**26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.**

☐ None

| | **Name and address** | **If any books of account<br>and records are<br>unavailable, explain why** |
|---|---|---|
| 26c.1 | Thomas Fierro<br>1 Harmon Plz, Fl 9<br>Secaucus, NJ 07094 | N/A |

**26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.**

☐ None

| | **Name and address** |
|---|---|
| 26d.1 | See Global Notes |

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes.  Give the details about the two most recent inventories

| **Name of the person who supervised<br>the taking of the inventory** | **Date of inventory** | **The dollar amount and basis<br>(cost, market, or other basis)<br>of each inventory** |
|---|---|---|

**Name and address of the person who has possession of inventory records**

---

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| | Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|---|
| 28.1 | National Realty Investment Advisors, LLC | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Controlling Manager Real Estate Asset LLC Owner | 100% Common Equity Owner of NPPF1 20% of Equity Owner |
| 28.2 | NRIA Partners Portfolio Fund I, LLC ("NPPF1") | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Real Estate Asset LLC Owner | 80% of Equity Owner |
| 28.3 | NRIA Guttenberg Capital 416-22 69th St Member LLC | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Equity Owner | 100% of Debtor |
| 28.4 | Thomas Fierro | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Chief Financial Officer | 0% |
| 28.5 | Brian Casey | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Independent Manager | 0% |

**29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes.  Identify below.

| | Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|---|
| 29.1 | Coley O'Brien | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Managing Member | Terminated in March 2022 |
| 29.2 | Arthur S. Scutaro | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Executive Vice President of Investor Relations | Terminated in May 2022 |
| 29.3 | Arthur R. Scutaro | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Executive Vice President of Investor Operations | Terminated in May 2022 |
| 29.4 | Bethany Salzano-Stafirny | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Senior Vice President of Executive Operations | Terminated in May 2022 |
| 29.5 | Robert Valencia | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Controller | Terminated in May 2022 |
| 29.6 | Richard Stabile | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Senior Vice President of Acquisitions, Construction Management, Sales | Terminated in June 2022 |
| 29.7 | Glenn La Mattina | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Chief Operating Officer | Terminated in August 2022 |
| 29.8 | John Collins | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Executive Vice President of Business Development | Terminated in August 2022 |
| 29.9 | Rey E. Grabato, II | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Chief Executive Officer and President | November 2006 - April 2022 |

| 29.10  Thomas Nicholas Salzano | 1 Harmon Plaza, Floor 9 Secaucus, NJ 07094 | Managing Member | Terminated in March 2021 |

## 30. Payments, distributions, or withdrawals credited or given to insiders

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No

☐ Yes.  Identify below.

| **Name and address of recipient** | **Amount of money or description and value of property** | **Dates** | **Reason for providing this value** |

**Relationship to debtor**

## 31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?

☑ No

☐ Yes.  Identify below.

| **Name of the parent corporation** | **Employer identification number of the parent corporation** |

## 32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?

☑ No

☐ Yes.  Identify below.

| **Name of the pension fund** | **Employer identification number of the pension fund** |

| **Part 14:** | **Signature and Declaration** |

**WARNING**    Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on.    9/27/2022
                           MM / DD / YYYY

/s/ Thomas Fierro                                                                          Printed name    Thomas Fierro
Signature of individual signing on behalf of the debtor

Position or relationship to the debtor        Chief Financial Officer

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy*  (Official Form 207) attached?**

☐ No

☑ Yes

# STATEMENT OF FINANCIAL AFFAIRS

## EXHIBIT
## PART 4, QUESTION 9

### ALL GIFTS OR CHARITABLE CONTRIBUTIONS THE DEBTOR GAVE TO A RECIPIENT WITHIN 2 YEARS BEFORE FILING THIS CASE UNLESS THE AGGREGATE VALUE OF GIFTS TO THAT RECIPIENT IS LESS THAN $1,000

**Guttenberg Capital 416-22 69th St. LLC**

**Case No. 22-14578**

**Sofa 9: List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of gifts to that recipient is less than $1,000**

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value | Recipient's relationship to debtor |
|---|---|---|---|---|
| WINRED TRUMP | Political Contribution | 07/06/20 | $   500.00 | |
| WINRED TRUMP | Political Contribution | 07/10/20 | $   500.00 | |
| WINRED TRUMP | Political Contribution | 08/06/20 | $   500.00 | |
| WINRED TRUMP | Political Contribution | 09/08/20 | $   500.00 | |
| WINRED TRUMP | Political Contribution | 10/06/20 | $   500.00 | |
| WINRED TRUMP | Political Contribution | 11/06/20 | $   500.00 | |
| WINRED TRUMP | Political Contribution | 12/07/20 | $   500.00 | |
| WINRED TRUMP | Political Contribution | 01/06/21 | $   500.00 | |
| WINRED TRUMP | Political Contribution | 02/08/21 | $   500.00 | |
| WINRED TRUMP | Political Contribution | 03/08/21 | $   500.00 | |
| WINRED TRUMP | Political Contribution | 04/06/21 | $   500.00 | |