**SILLS CUMMIS & GROSS P.C.**
S. Jason Teele, Esq. (steele@sillscummis.com)
Daniel J. Harris, Esq. (dharris@sillscummis.com)
Gregory A. Kopacz, Esq. (gkopacz@sillscummis.com)
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-14539 (JKS)<br><br>(Jointly Administered)<br><br>**Hearing Date: January 31, 2023 at 10:00 a.m.**<br>**Objections Due: January 24, 2023 at 4:00 p.m.** |

**NOTICE OF DEBTORS' SECOND MOTION TO EXTEND**
**THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN**
**AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO**
**SECTION 1121 OF THE BANKRUPTCY CODE**

**PLEASE TAKE NOTICE** that on **January 31, 2023 at 10:00 a.m. (ET)**, or as soon thereafter as counsel may be heard (the "**Hearing**"), the above-captioned debtors and debtors-in-possession (the "**Debtors**"), by and through their undersigned counsel, shall move before the Honorable John K. Sherwood, United States Bankruptcy Judge for the District of New Jersey, for entry of an order, substantially in the form submitted herewith, approving the *Debtors' Second Motion to Extend the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* (the "**Motion**").

**PLEASE TAKE FURTHER NOTICE** that the Debtors shall rely upon the Motion filed herewith. No brief is necessary as no novel issues of fact or law are presented by the Motion. Oral argument is requested in the event an objection is timely filed.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion must be filed with the Clerk of the Court, together with proof of service

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

1

9394705

thereof, and served so as to be **actually received no later than 4:00 p.m. (ET) on January 24, 2023** by (a) counsel to the Debtors, Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102, Attn.: S. Jason Teele, Esq., Daniel J. Harris, Esq., and Gregory A. Kopacz, Esq.; (b) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; and (c) counsel to the Official Committee of Unsecured Creditors, Ice Miller LLP, 1500 Broadway, 29th Floor, New York, New York 10036, Attn: Louis DeLucia, Esq. and Alyson Fiedler, Esq.

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any, must: (a) be in writing; (b) comply with the Bankruptcy Rules, the Local Rules, and other case management rules or orders of this Court; and (c) state with particularity the legal and factual basis for the objection.

**PLEASE TAKE FURTHER NOTICE** that unless an objection is timely filed and served in accordance with this notice, it may not be considered by the Bankruptcy Court. In the event no objections are filed, the relief requested in the Motion may be granted without a hearing.

Dated: January 10, 2023                **SILLS CUMMIS & GROSS P.C.**

/s/ S. Jason Teele
S. Jason Teele, Esq.
Daniel J. Harris, Esq.
Gregory A. Kopacz, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)
(973) 643-6500 (Facsimile)
steele@sillscummis.com
dharris@sillscummis.com
gkopacz@sillscummis.com

*Counsel to the Debtors and Debtors-in-Possession*

9394705

**SILLS CUMMIS & GROSS P.C.**
S. Jason Teele, Esq. (steele@sillscummis.com)
Daniel J. Harris, Esq. (dharris@sillscummis.com)
Gregory A. Kopacz, Esq. (gkopacz@sillscummis.com)
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000 (Telephone)

*Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-14539 (JKS)<br><br>(Jointly Administered)<br><br>**Hearing Date: January 31, 2023 at 10:00 a.m.**<br>**Objections Due: January 24, 2023 at 4:00 p.m.** |

**DEBTORS' SECOND MOTION TO EXTEND THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (the "**Debtors**") state as follows in support of this Motion (the "**Motion**"):

**RELIEF REQUESTED**

1. By this Motion, the Debtors seek entry of an order, substantially in the form attached as **Exhibit A**, further extending the Debtors' exclusive periods: (i) to file a chapter 11 plan by 120 days through and including June 2, 2023 (the "**Exclusive Filing Period**"), and (ii) to solicit votes thereon by 120 days through and including August 1, 2023 (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**"),

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

1

without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods. The current Exclusive Filing Period and Exclusive Solicitation Period are set to expire on February 2, 2023 and April 3, 2023, respectively.

**PRELIMINARY STATEMENT**

2. This is the Debtors' second request for an extension of the Exclusive Periods. Since commencing these chapter 11 cases, the Debtors have worked diligently to: (i) manage the extensive requirements of chapter 11 (including filing monthly operating reports, schedules of assets and liabilities and statements of financial affairs for all 132 Debtors), (ii) stabilize their operations, (iii) preserve and maximize the value of their estates, (iv) continue construction of valuable properties, (v) cooperate with the various governmental entities that are investigating the Debtors' former owners and related parties,[2] and (vi) evaluate and value their real estate portfolio. However, the Debtors require additional time to work with the Committee and other parties in interest to formulate and file a confirmable chapter 11 plan, which the Debtors are working to accomplish in the coming weeks.

3. The Debtors' chapter 11 cases are large and extremely complex. In addition to addressing many "typical" bankruptcy challenges – such as: (i) obtaining approval of "first day" motions to ensure that the Debtors could operate their business in the ordinary course, (ii) maintaining employee morale during a period of significant transition, turnover and workforce reductions, (iii) obtaining Court-approval of sales of properties worth over $23

---

[2] On December 8, 2022, the Court entered an *Order (A) Approving the Administrative Consent Order with the State of New Jersey Bureau of Securities, (B) Authorizing the Debtors to Enter Into the Administrative Consent Order With the New Jersey Bureau of Securities, and (C) Granting Related Relief* [Docket No. 1651]. On December 20, 2022, the Debtors met with representatives for the United States Attorney's Office in connection with that office's investigation.

million,[3] (iv) obtaining Court-approval of motions to assume contracts and subcontracts and retain ordinary course professionals, both of which are critical to the Debtors' ongoing construction operations, and (v) rejecting dozens of burdensome executory contracts and unexpired leases – the Debtors have faced numerous "extraordinary" challenges. During the first several months of the chapter 11 cases, the Debtors resolved a motion to appoint a chapter 11 trustee (which resulted in the resignation of the Debtors' prior independent manager, the creation of a new board of managers, and the retention of the Debtors' chief restructuring officer), engaged in multifaceted negotiations with contractors and subcontractors to "keep them on the job," and commenced numerous adversary proceedings against former insiders and others alleged to have engaged in fraudulent conduct and other malfeasance. In addition, Hurricane Ian significantly damaged the Debtors' marina property in Fort Myers, FL, requiring a significant amount of time from the Debtors' management team. All of the foregoing took place while the Debtors were, together with their professionals, reconstructing their books and records to ensure that they comply with accounting standards and could be made available for Court review through the filing of monthly operating reports, schedules of assets and liabilities and statements of financial affairs.

4. The Debtors have been and are working diligently to formulate and negotiate a confirmable, value-maximizing chapter 11 plan. To that end: (i) the Debtors have been working with the Committee since early November to identify and formulate potential plan structures and terms to maximize returns to defrauded investors, (ii) the Debtors will be undertaking a reconciliation of the claims that were filed on or prior to the December 20, 2022 general bar date and the December 27, 2022 governmental claims bar date, and (iii) the Debtors' chief

---

[3] The Debtors are also marketing their remaining residential units, which could generate upwards of $10 million in additional proceeds for the Debtors' estates.

restructuring officer and other professionals have been analyzing the Debtors' remaining properties and creating a go-forward business plan that will form the basis for distributions to investors and determine a chapter 11 plan structure.

5. However, despite the Debtors' significant progress, given the magnitude and complexity of the issues presented in these chapter 11 cases, more time is needed for the Debtors to formulate and negotiate a plan and solicit acceptances thereof. As a result, the Debtors seek a 120-day extension of the Exclusive Periods. The requested extensions will not prejudice any party and will promote the Debtors' ability to maximize value for their stakeholders.

6. Accordingly, the Debtors request the Court enter an order granting the Motion.

## JURISDICTION

7. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). This is a core proceeding under 28 U.S.C. §157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

8. The bases for the relief requested are section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**") and rule 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

9. On June 7, 2022, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

10. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4

11. On June 30, 2022, the U.S. Trustee appointed an official committee of unsecured creditors [Docket No. 94] (the "**Committee**"). On July 21, 2022, the U.S. Trustee amended the composition of the Committee effective July 19, 2022 [Docket No. 175].

12. On September 13, 2022, the Debtors filed the *Debtors' Motion to Extend the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [Docket No. 605] (the "**First Exclusivity Extension Motion**"), which requested the entry of an order extending: (i) the Exclusive Filing Period from October 5, 2022 to February 2, 2023, and (ii) the Exclusive Solicitation Period from December 4, 2022 to April 3, 2023.

13. On October 5, 2022, the Court entered an order granting the First Exclusivity Extension Motion [Docket No. 903].

## BASIS FOR RELIEF

14. Section 1121(b) of the Bankruptcy Code establishes an initial 120-day period following the commencement of a case during which only the debtor may file a plan. 11 U.S.C. § 1121(b). Section 1121(c) provides an additional 60-day period during which only the debtor may solicit acceptances for a plan filed within the initial 120-day period. 11 U.S.C. § 1121(c).

15. Section 1121(d) of the Bankruptcy Code permits a court, after notice and a hearing, to extend a debtor's Exclusive Periods "for cause" (as long as such extension does not extend the Exclusive Filing Period "beyond a date that is 18 months after the date of the order for relief" or extend the Exclusive Solicitation Period "beyond a date that is 20 months after the date of the order for relief"). *See* 11 U.S.C. § 1121(d). Although "cause" is not defined in the Bankruptcy Code, the legislative history indicates the "for cause" standard is meant to be flexible to enable a debtor to negotiate with creditors and formulate a plan. *See* H.R. Rep. 595, 95th

Cong., 1st Sess. 232 (1978); *see also In re Burns & Roe Enters., Inc.*, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (the purpose of the exclusivity period is "to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated"); *In re Ames Dep't Stores Inc.*, 1991 WL 259036 at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors").

16. Although "cause" is not defined by the Bankruptcy Code, it should be viewed flexibly in this context "in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 231–32 (1978), reprinted in 1978 U.S.C.C.A.N. 5963; *see also In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to promote maximum flexibility"). It is imperative that a debtor be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate information concerning the ramifications of any proposed plan for disclosure to creditors. *See, e.g., In re Texaco, Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

17. Courts in this circuit and others have held that the decision to extend a debtor's exclusivity periods should be based on the totality of the circumstances and is within the sound discretion of the bankruptcy court. *See*, *e.g.*, *Burns & Roe Enters.*, 2005 WL 6289213, at *3; *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Express One Int'l. Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). Factors courts consider when deciding whether cause exists to extend a debtor's exclusivity periods include:

    a.    the size and complexity of the case;

    b.    the existence of good faith progress;

  c.  the necessity of sufficient time to negotiate a plan of reorganization and prepare adequate information;

  d.  whether creditors are prejudiced by the extension;

  e.  whether the debtor is paying debts as they become due;

  f.  whether the debtor has demonstrated reasonable prospects for filing a viable plan;

  g.  whether the debtor has made progress in negotiations with its creditors;

  h.  the length of time a case has been pending;

  i.  whether the debtor is seeking an extension of exclusivity in order to pressure creditors; and

  j.  whether unresolved contingencies exist.

*See*, *e.g.*, *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002); *In re Adelphia Communs. Corp.*, 352 B.R. 578, 587 (S.D.N.Y. 2006); *In re McLean Indus., Inc.,* 87 B.R. at 834.

  18.  The presence of every factor is not required; courts will consider the factors applicable to each case in determining whether cause exists to extend the exclusivity periods. *See*, *e.g.*, *In re Texaco, Inc.,* 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987) ("By sheer size alone . . . debtors have established cause for extending the exclusivity periods"); *In re Excel Mar. Carriers Ltd.*, No. 13-23060 (RDD), 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013) (finding certain factors warrant extending exclusivity, including that a plan is going forward supported by the Debtors' largest creditor group and that a disclosure statement will be considered very shortly); *Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on only two of the factors in deciding to extend the exclusivity periods).

  19.  Here, the requested extensions are warranted.

### a. These Chapter 11 Cases are Large and Complex

20. The size and complexity of a chapter 11 case *alone* can constitute sufficient cause for extending the Exclusive Periods. *See In re Texaco Inc.*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization . . . are important factors which generally constitute cause for extending the exclusivity periods") (internal citations omitted). Here, the size and complexity of these chapter 11 cases warrants the requested extension of the Exclusive Periods. These cases involve one hundred thirty-two (132) Debtors, with thousands of investors and hundreds of potential creditors. Moreover, nearly every aspect of these chapter 11 cases has involved multi-faceted negotiations with major stakeholders.

### b. The Debtors' Progress in These Chapter 11 Cases Warrants an Extension of the Exclusive Periods

21. The Debtors have taken significant steps toward implementing a successful reorganization, including: (i) obtaining approval of "first day" motions, (ii) engaging in multifaceted negotiations with contractors and subcontractors to "keep them on the job" and continue constructing and developing the Debtors' properties, (iii) successfully resolving a motion to appoint a chapter 11 trustee by, *inter alia*, amending the Debtors' governance structure and appointing a chief restructuring officer, (iv) obtaining approval of sales of properties worth over $23 million, (v) obtaining approval of a motion to assume contracts and subcontracts critical to the Debtors' on-going operations, (vi) obtaining approval of a motion to reject dozens of burdensome executory contracts and unexpired leases, (vii) obtaining approval of a bar date motion, (viii) commencing adversary proceedings against former insiders and other parties alleged to have engaged in fraudulent conduct and other malfeasance, (ix) reconstructing the Debtors' books and records to ensure compliance with auditing standards; (x) negotiating a stipulation and consent order with S3 RE Bergenline Funding LLC and S3 Manhattan Funding

LLC (mortgage lenders for Debtors Bergenline Capital 4901 LLC and Manhattan Avenue Capital 1300); and (xi) retaining brokers, obtaining property appraisals, and pursuing government approvals for real estate properties.

22. In addition, the Debtors have been working with the Committee's professionals on potential plan structures and terms since early November 2022, and the Debtors' chief restructuring officer and other professionals are in the process of analyzing the Debtors' remaining properties that will form the basis for the plan structure and ultimate recoveries for investors and creditors.

23. In sum, the Debtors are working diligently to finalize and file a chapter 11 plan and solicit acceptances thereof. However, an extension of the Debtors' Exclusivity Periods is warranted because the Debtors need additional time to negotiate and confirm a chapter 11 plan.

    **c.**    **An Extension Will Not Prejudice Creditors or Other Parties in Interest**

24. The requested extension of the Exclusive Periods will not harm the Debtors' creditors or other parties in interest. Over the past several months, the Debtors have been engaged in constructive discussions with the Committee regarding potential plan terms and structures and are continuing to work expeditiously to propose and solicit a value-maximizing plan of reorganization. The relief requested herein will not result in a delay of the plan process; rather it will simply permit that process to move forward in an orderly fashion and enable the Debtors to capitalize on the progress made to date in plan negotiations. Moreover, in light of the size and complexity of the Debtors' chapter 11 cases and the issues that must necessarily be resolved before a plan of reorganization can be formulated, neither the Debtors' creditors nor any other party in interest would likely be in a position to propose and solicit acceptances of a plan of reorganization prior to the extended Exclusive Periods proposed herein. *See In re Energy*

*Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) ("In enacting § 1121, Congress intended to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a completing plan. It was intended that . . . a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests") (citation and internal quotations omitted). Accordingly, granting the Debtors their requested extensions will benefit all parties-in-interest.

        d.        **The Debtors are Paying Post-Petition Obligations as They Come Due**

        25.        Extensions of the Exclusive Periods will not prejudice the legitimate interests of post-petition creditors because the Debtors continue to make timely payments on their undisputed post-petition obligations. As such, this factor weighs in favor of allowing the Debtors to extend the Exclusive Periods.

        e.        **The Debtors Have Made Progress in Negotiations with Creditors**

        26.        The Debtors have, throughout these chapter 11 cases, made every effort to reach consensual resolutions of any issues raised by investors and other creditors. In addition, over the past three months, the Debtors have worked closely with the Committee's professionals to identify and formulate potential plan structures and terms to maximize creditor returns. These on-going, substantive discussions have been fruitful, and the Debtors are working diligently with the goal of filing a chapter 11 plan in the coming weeks. However, additional time is needed to continue negotiations and drafting of key plan documents. As such, this factor weighs in favor of allowing the Debtors to extend the Exclusive Periods.

        f.        **Relatively Little Time Has Elapsed in These Cases**

        27.        As discussed above, the Debtors have made significant progress towards resolving all issues necessary to file and confirm a chapter 11 plan. Accordingly, the Debtors

respectfully submit that cause exists to extend the Exclusivity Periods as requested. Similar relief is regularly granted in large chapter 11 cases in this circuit and others. *See, e.g., In re TECT Aerospace Group Holdings, Inc., et al.*, No. 21-10670 (KBO) [Docket No. 717] (Bankr. D. Del. Jan. 18, 2022) (granting debtors' third motion to extend exclusive period); *In re Diocese of Camden, N.J.*, No. 20-21257 (JNP) [Docket No. 996] (Bankr. D.N.J. Nov. 24, 2021) (granting debtor's fourth motion to extend exclusive periods); *In re LTL Management LLC*, No. 21-30589 (MBK) [Docket No. 2267] (Bankr. D.N.J. May 9, 2022) (granting debtor's second motion to extend exclusive periods); *In re Boy Scouts of Am. & Del. BSA, LLC*, No. 20-10343 (LSS) [Docket No. 6076] (Bankr. D. Del. Aug. 18, 2021) (granting debtor's third motion to extend exclusive periods); *In re Windstream Holdings, Inc. et al.*, No. 19-22312 (RDD) [Docket No. 2186] (Bankr. S.D.N.Y. June 22, 2020) (granting debtors' fourth motion to extend exclusive periods).

    **g.**    **An Extension Will Not Pressure Creditors**

28.    The Debtors are not seeking an extension of the Exclusive Period to pressure or prejudice creditors or any of their other stakeholders. All creditor groups and their advisors have had an opportunity to actively participate in substantive discussions with the Debtors throughout these chapter 11 cases. The Debtors are seeking an extension of the Exclusive Periods to preserve and capitalize on the significant progress made to date in their chapter 11 plan negotiations.

    **h.**    **Reaching Agreement with Creditors as to Certain Key Terms of a Confirmable Plan Remain an "Unresolved Contingency"**

29.    These chapter 11 cases present unique circumstances, which demand that creditors and investors support any chapter 11 plan. To that end, the Debtors are working closely with the Committee (including satisfying diligence requests), to address all outstanding matters

that bear on plan confirmation. Although the Debtors and Committee have engaged in robust, detailed negotiations and the parties are working constructively to address all plan issues, certain key elements are presently unresolved. Accordingly, the requested extensions of the Exclusive Periods are warranted to permit the Debtors to reach agreement with the Committee and their other stakeholders regarding these remaining contingencies.

30. For the foregoing reasons, the Debtors submit that "cause" exists to extend the Exclusive Periods as requested.

## WAIVER OF MEMORANDUM OF LAW

31. The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Debtors rely on is incorporated herein and the Motion does not raise any novel issues of law.

## NOTICE

32. Notice of this Motion has been given to: (i) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; (ii) counsel to the Committee; (iii) the Debtors' thirty largest unsecured creditors on a consolidated basis and the Debtors' thirty largest investors on a consolidated basis; (iv) S3 RE Bergenline Funding, LLC, S3 RE 1300 Manhattan Funding LLC and Toorak Capital Partners; (v) the U.S. Attorney General; (vi) the Internal Revenue Service; (vii) the Securities and Exchange Commission; (viii) the New Jersey Attorney General; (ix) the U.S. Attorney for the District of New Jersey; (x) the New Jersey Division of Taxation; (xi) the New Jersey Bureau of Securities; (xii) the New York Attorney General; (xiii) the New York Department of Taxation and Finance; (xiv) the Florida Attorney General; (xv) the Florida Department of Revenue;

12
9394705

(xvi) the Illinois Attorney General; (xvii) the Illinois Department of Revenue; (xviii) the Illinois Securities Department; (xix) the Alabama Attorney General; (xx) the Alabama Department of Revenue; (xxi) the Alabama Securities Commission; and (xxii) those parties who have filed a notice of appearance and request for service of pleadings in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request entry of an order, substantially in the form attached as **Exhibit A**, granting the relief requested and such other relief as is appropriate.

| | |
|---|---|
| Dated: January 10, 2023 | **SILLS CUMMIS & GROSS P.C.** |
| | /s/ S. Jason Teele |
| | S. Jason Teele, Esq. |
| | Daniel Harris, Esq. |
| | Gregory A. Kopacz, Esq. |
| | One Riverfront Plaza |
| | Newark, New Jersey 07102 |
| | (973) 643-7000 (Telephone) |
| | (973) 643-6500 (Facsimile) |
| | steele@sillscummis.com |
| | dharris@sillscummis.com |
| | gkopacz@sillscummis.com |
| | |
| | *Counsel to the Debtors and Debtors-in-Possession* |