## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Chapter 11 |
| NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.* [1] | Case No. 22-14539 (JKS) |
| Debtors. | (Jointly Administered) |

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF NATIONAL REALTY INVESTMENT ADVISORS, LLC AND ITS AFFILIATED DEBTORS

**SILLS CUMMIS & GROSS, P.C.**
S. Jason Teele, Esq.
Gregory A. Kopacz, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 643-7000

*Counsel to the Debtors and
Debtors-in-Possession*

**ICE MILLER LLP**
Louis T. DeLucia, Esq.
Alyson M. Fiedler, Esq.
1500 Broadway, 29th Floor
New York, New York 10036
Telephone: (212) 835-6312

Daniel Polatsek, Esq.
Michael W. Ott, Esq.
200 W. Madison St., Suite 3500
Chicago, Illinois 60606
Telephone: (312) 726-6245

*Counsel to the Official Committee of
Unsecured Creditors*

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA and is attached hereto as **Exhibit 1**. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

# INTRODUCTION[2]

The Debtors and the Committee (the "**Plan Proponents**") hereby propose this joint Plan, which provides for the settlement, resolution, and satisfaction of any and all Claims against, and Equity Interests in, the Debtors.  Reference is made to the Disclosure Statement for (a) a discussion of the Debtors' history, businesses, properties, results of operations, and financial projections; (b) a summary and analysis of this Plan; and (c) certain related matters, including risk factors relating to the consummation of this Plan and Distributions to be made under this Plan.  The Debtors and the Committee are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Capitalized terms used in the Plan, including in this section, have the meanings set forth in Article I.A of the Plan.

All Holders of Claims who are entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.  Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, and Article X.C of the Plan, the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of this Plan.  Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to Holders of Claims to the extent required by Bankruptcy Code section 1125.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS AND SCHEDULES THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

# ARTICLE I.
# DEFINITIONS AND RULES OF CONSTRUCTION

## A.    Definitions

In addition to such other terms as are defined in other sections of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

"**Administrative Expense Claim Bar Date**" means, and is hereby established as, the first Business Day that is at least thirty (30) days after the Effective Date, or such other date that is established by Order of the Bankruptcy Court, and is the date by which requests for payment of Administrative Expense Claims other than Section 503(b)(9) Claims must be filed with the Bankruptcy Court, subject to any exceptions specifically set forth in this Plan.  For the avoidance of doubt, the General Bar Date was the deadline for filing Section 503(b)(9) Claims.

"**Administrative Expense Claim**" means any Claim that has been timely filed before the

---

[2]    Capitalized terms used in this Introduction have the meanings ascribed to those terms in Article I below.

9737384

Administrative Expense Claim Bar Date pursuant to the deadline and procedure set forth herein (except as otherwise provided herein or by a separate order of the Bankruptcy Court) for costs and expenses of administration under Sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code. As used herein, the term "Administrative Expense Claims" shall exclude Professional Fee Claims.

**"Affiliate"** means an "affiliate," as defined in section 101(2) of the Bankruptcy Code.

**"Allowed"** means, with respect to any Claim or Equity Interest arising prior to the Petition Date (including a Section 503(b)(9) Claim), except as otherwise provided herein:

(a)     a Claim that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated that has not been superseded by a filed proof of Claim and as to which the Debtors, the Liquidation Trust or another party-in-interest has not Filed an objection by the Claims Objection Deadline;

(b)     a proof of Claim that has been filed and as to which the Liquidation Trust, the Debtors or another party-in-interest has not Filed an objection by the Claims Objection Deadline;

(c)     a Claim that either is not Disputed by the Claims Objection Deadline or has been allowed by a Final Order;

(d)     a Claim that is allowed: (i) in any stipulation with the Debtors or the Liquidation Trust, as applicable, of amount and nature executed prior to or following the entry of the Confirmation Order and, if necessary, approved by the Bankruptcy Court; or (ii) in or pursuant to any contract, instrument, or other agreement entered into or assumed in connection herewith;

(e)     a Claim or Equity Interest that is allowed pursuant to the terms of this Plan or by Final Order of the Bankruptcy Court; or

(f)     a Disputed Claim as to which a proof of Claim or interest has been timely filed and as to which no objection has been Filed by the Claims Objection Deadline.

If a Claim is Allowed only in part, references to "Allowed" Claims in this Plan include, and are limited to, the portion of such Claim that is Allowed.  Unless otherwise specified in the Plan or by a Final Order, an "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest, rate of return, penalties, fees, or late charges on such Administrative Expense Claim or Claim from and after the Petition Date.

**"Alternative Structure Decision"** means the decision made by the Plan Proponents to modify the Debtors' post-confirmation corporate structure.  If the Plan Proponents agree to an alternative corporate structure prior to entry of the Disclosure Statement Order, such alternative corporate structure will be incorporated into an amended Plan and Disclosure Statement and filed with the Bankruptcy Court.  If the Plan Proponents agree to an alternative corporate structure after entry of the Disclosure Statement Order, such alternative structure will be described in the Plan Supplement.

9737384

**"Available Cash"** means all Cash held by the Debtors on the Effective Date or by the Liquidation Trust on or after the Effective Date; in each case, after payment, allocation, or reserve (including reserve for Wind-Down Expenses) in accordance with the Plan.

**"Avoidance Actions"** means any and all claims for relief against any and all third parties for the recovery of (a) transfers of Cash, offsets, debt forgiveness and other types or kinds of property, or the value thereof, recoverable pursuant to sections 502, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code, or otherwise applicable non-bankruptcy law, (b) any claims or causes of action of the Debtors' estates under section 510 of the Bankruptcy Code or under applicable laws, and (c) all claims or causes of action that arise under chapter 5 of the Bankruptcy Code.

**"Ballot"** means the ballot form distributed to each Holder of a Claim entitled to vote to accept or reject the Plan.

**"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the District of New Jersey.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States under 28 U.S.C. § 2075, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

**"Business Day"** means any day that is not a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a), or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

**"Cash"** means legal tender of the United States of America or the equivalent thereof.

**"Causes of Action"** means any claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, including without limitation claims for consequential or punitive damages, assertable directly or derivatively, whether arising before, on, or after the applicable Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

**"Chapter 11 Cases"** means the voluntary chapter 11 cases commenced by the Debtors, which are being jointly administered under the case captioned *In re National Realty Investment Advisors, LLC*, Case No. 22-14539 (JKS), pending before the Bankruptcy Court.

**"Claim"** means a "claim," as defined in section 101(5) of the Bankruptcy Code against any of the Debtors or against any property of the Debtors.

3

9737384

**"Claims Agent"** means Omni Agent Solutions, Inc.

**"Claims Bar Date"** means, collectively or individually, as applicable, (a) the General Bar Date; (b) the Governmental Claims Bar Date; (c) the Administrative Expense Claim Bar Date; (d) the Rejection Claims Bar Date; and (e) any other deadline for filing proofs of claim established in the Chapter 11 Cases by the Plan or any Order of the Bankruptcy Court.

**"Claims Objection Deadline**" means one year after the Effective Date, subject to any extensions thereof, as provided in Article V.B of the Plan.

**"Claims Register"** means the claims register maintained by the Claims Agent on behalf of the Clerk of the Bankruptcy Court.

**"Class"** means a group of Holders of Claims or Equity Interests classified together under the Plan.

**"Closing Date"** means the date on which all of the Chapter 11 Cases have been closed.

**"Collateral"** means any property or interest in property of a Debtor or its Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or otherwise.

**"Committee**" means the official committee of unsecured creditors appointed on June 30, 2022 [Docket No. 94] by the Office of the U.S. Trustee pursuant to section 1102 of the Bankruptcy Code, as amended on July 21, 2022 [Docket No. 175].

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

**"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**"Confirmation Order"** means the Order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**"Contributed Claims"** means all Causes of Action that a Contributing Investor has against any Person or Entity that is not a Released Party and are related in any way to the Debtors, their predecessors, their respective affiliates, or any Excluded Parties, including but not limited to (a) all Causes of Action based on, arising out of, or related to the marketing, sale, and issuance of any investments in the Debtors, including any private placement memorandum, Joint Venture Agreements, or guarantees; (b) all Causes of Action for unlawful dividend, fraudulent conveyance, fraudulent transfer, voidable transaction, or other avoidance claims under state or federal law; (c) all Causes of Action based on, arising out of, or related to the misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; (d) all Causes of Action based on, arising out of, or related to any failure to disclose, or actual or attempted cover up or obfuscation of, any of the conduct described in the Disclosure Statement, including in respect

4

of any alleged fraud related thereto; and (e) any and all JVA Claims classified in Class 6 of the Plan. "Contributed Claims" does not include any quiet title action that the William and Maureen Diehl Trust and/or William Diehl, individually, may assert against Referral Marketing LLC.

"**Contributing Investor**" means an Investor who either (a) submits a Ballot voting to accept the Plan <u>and</u> does not opt out of the Contributing Investor Settlement on their Class 5 Ballot, or (b) does not submit a Ballot on or before the Voting Deadline.  Contributing Investors shall not include any Investor that (a) votes to reject the Plan, (b) opts out of the Contributing Investor Settlement on their Class 5 Ballot, (c) objects to confirmation of the Plan, or (d) is an Excluded Party.

"**Contributing Investor Claim**" means the Investor Claim of a Contributing Investor.

"**Contributing Investor Settlement**" means the settlement set forth in Article III.E of the Plan.

"**Corporate Action**" means any action, approval, authorization, decision, or other act of any kind that would be necessary on the part of any Person or Entity for any corporation, limited liability company, or other Person or Entity to in turn act.

"**CRO**" means Turnaround Advisors, LLC and John Fioretti in his capacity as Chief Restructuring Officer of the Debtors appointed pursuant to the Governance Settlement Order.

"**Creditor**" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

"**Cure**" means, with respect to the assumption of an executory contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code, (a) the Distribution of Cash, or the Distribution of such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties under an executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law, or (b) the taking of such other actions as may be agreed upon by such parties or ordered by the Bankruptcy Court.

"**Debtor**" or "**Debtors**" means individually and collectively, each of the entities listed on **Exhibit 1** hereto, as the same may be amended from time to time.

"**Disallowed**" means, a Claim or Equity Interest, or any portion thereof that (a) is not Scheduled, or is listed on the Debtors' Schedules as contingent, unliquidated, disputed, or in an amount equal to zero, and whose Holder failed to timely File a proof of Claim or Equity Interest by the applicable Claims Bar Date, or (b) has been disallowed or expunged by Order of the Bankruptcy Court; *provided* that an Investor Claim listed as contingent, unliquidated, or disputed on the Debtors' Schedules will not be Disallowed solely as a consequence of an Investor failing to file a proof of claim on or before the applicable Claims Bar Date.

"**Disclosure Statement**" means the disclosure statement relating to this Plan, including, without limitation, all exhibits, schedules, supplements, and modifications thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

9737384

**"Disclosure Statement Order"** means the order approving the Disclosure Statement.

**"Disputed"** means, with respect to any Claim, that portion (or the entirety) of the Claim that is <u>not</u> an Allowed Claim and:

(a)    as to which a proof of Claim has been Filed or deemed Filed under the Bankruptcy Code or an order of the Bankruptcy Court;

(b)    as to which the Debtors or the Liquidation Trust has Filed or may File a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the Plan, as applicable; or

(c)    is otherwise disputed by the Debtors or the Liquidation Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

Before the time that an objection has been or may be filed, a Claim shall also be considered Disputed (a) if the amount or classification of the Claim specified in any proof of Claim exceeds or varies from the amount or classification of any corresponding Claim scheduled by the Debtors in the Schedules; (b) in its entirety, if any corresponding Claim scheduled by the Debtors was scheduled as contingent, unliquidated, or disputed in the Debtors' Schedules; or (c) in its entirety, if no corresponding Claim was scheduled by the Debtors in their Schedules. All (a) Class 5 Claims held by Non-Contributing Investors and Excluded Parties, and (b) Class 6 JVA Claims shall be Disputed Claims.

**"Distribution"** means any initial or subsequent issuance, payment, or transfer of consideration made under the Plan.

**"Distribution Date"** means the date(s) on which the Liquidation Trustee shall make one or more Distribution(s), which date(s) shall be selected by the Liquidation Trustee in his or her business judgment.

**"Distribution Record Date"** means the record date for determining entitlement of Holders of Claims to receive Distributions under the Plan, which date shall be the Effective Date.

**"Distribution Reserve"** means one or more reserves in respect of Disputed Claims or Unliquidated Claims established under the Plan for Liquidation Trust Interests distributable under the Plan with respect to such Claims and amounts payable under the Plan with respect to such Claims or on account of such reserved Liquidation Trust Interests.

**"EB-5 Debtors"** means NRIA EB5 1300 Manhattan Fund LLC and NRIA EB5 4901 Bergenline Fund LLC.

**"EB-5 Claims"** means investments in the EB-5 Debtors by (a) individual Investors directly into Debtor NRIA EB5 1300 Manhattan Fund LLC pursuant to that certain Confidential Offering Memorandum dated October 10, 2019 and related subscription agreements and (b) non-Debtor NRIA EB5 Bergenline Fund, LLC pursuant to that certain Confidential Private Placement Memorandum dated November 6, 2018, as amended, and related subscription agreements.

9737384

**"Effective Date"** means the first Business Day after the Confirmation Order becomes a Final Order and all conditions to the Effective Date as set forth in Article VII.A of this Plan have been satisfied or waived.

**"Entity"** means an "entity," as defined in section 101(15) of the Bankruptcy Code.

**"Equity Interests"** means all previously issued and outstanding common stock, preferred stock, Membership Interests, or other ownership interests in any of the Debtors outstanding immediately prior to the Effective Date, including restricted stock, treasury stock, and all options, warrants, calls, rights, puts, awards, commitments, appreciation rights, or any other agreements of any character to convert, exchange, exercise for, or otherwise receive any such common stock, preferred stock, Membership Interests, or other ownership interests.

**"Estate Assets"** means, collectively (a) any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including their books and records and all Avoidance Actions and Causes of Action, as of the Effective Date; and (b) any assets contributed to or recovered by the Liquidation Trust on or after the Effective Date.

**"Estate" or "Estates"** means the estate(s) of the Debtor(s) created upon the commencement of the Chapter 11 Cases under section 541 of the Bankruptcy Code.

**"Exchange Act"** means The Securities Exchange Act of 1934, as amended.

**"Exchange Act Registration"** means registration of the Liquidation Trust Interests as a class of equity securities under the Exchange Act.

**"Excluded Parties"** means, except as set forth in paragraph 11 of the Governance Settlement Order and except for employees and officers who are employed by the Debtors on the Effective Date, (a) any prepetition insider, employee, independent contractor, officer, member, manager, or director of any of the Debtors, (b) any non-debtor affiliate of the Debtors or insider of any such non-debtor affiliates, (c) any other Person (including any "broker," salesperson, consultant, affiliated entity, or professional) involved in any way in the marketing or sale of investments, (d) those Persons listed on the Schedule of Excluded Parties attached hereto as **Exhibit 2**, and (e) with respect to (a) through (d), any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

**"Exculpated Parties"** means, individually and collectively, in each case solely in their capacity as estate fiduciaries: (a) the Debtors' Professionals, including any professional retained by the Debtors pursuant to the Ordinary Course Professional Order; (b) the Debtors' employees and officers who are employed by the Debtors on the Effective Date; (c) the Post-Petition Board and its counsel; (d) the CRO; and (e) the Committee, members of the Committee in their capacity as members of the Committee, and the Committee's Professionals; *provided, however*, that the Exculpated Parties shall not include any Excluded Party.

**"Fee Application"** means an application by a Professional for allowance of a Professional Fee Claim.

**"Fee Examiner"** means Diana Goldberg Adams (or any Bankruptcy Court-approved

9737384

successor) in her (or his) capacity as the fee examiner appointed pursuant to the Fee Examiner Order.

"**Fee Examiner Order**" means the *Order Appointing an Independent Fee Examiner and Establishing Procedures* [Docket No. 1017] (or any other Bankruptcy Court order appointed a fee examiner).

"**File,**" "**Filed,**" or "**Filing**" means duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Cases, except with respect to proofs of claim that must be filed with the Claims Agent, in which case "File" or "Filed" means duly and properly filed with the Claims Agent and reflected on the official Claims Register maintained by the Claims Agent.

"**Final Decree**" means an order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Chapter 11 Cases.

"**Final Order**" means an Order of the Bankruptcy Court or any other adjudicative body, which Order has not been stayed, and as to which the time to appeal or to move for reargument or rehearing has expired and no appeal, or motion for reargument or rehearing shall then be pending.

"**Fund**" means NRIA Partners Portfolio Fund I, LLC, a Debtor herein.

"**General Bar Date Order**" means the *Order (A) Establishing Deadlines to File Proofs of Claim Against or Interests in the Debtors, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, (B) Approving the Form and Manner of Notice of the Bar Dates, (C) Authorizing Publication of the Bar Dates, and (D) Granting Related Relief* [Docket No. 1016] and any other further order(s) entered by the Bankruptcy Court establishing the bar dates for filing proofs of claim or interest and granting related relief and implemented related procedures.

"**General Bar Date**" means December 20, 2022, established by the General Bar Date Order.

"**General Contractor JVA**" means a joint venture agreement, profit sharing agreement, or the legal and financial equivalent thereof executed by one or more of the Debtors whereby the non-debtor counterparty was the general contractor for the project under development.

"**General Contractor JVA Claim**" means any Claim or Equity Interest arising from a General Contractor JVA.

"**Governance Settlement Order**" means that certain *Order Granting Debtors' Motion For Entry of an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (A) Settling the Chapter 11 Trustee Motion; (B) Establishing a Board of Independent Managers For National Realty Investment Advisors, LLC; (C) Authorizing the Debtors to (I) Retain Turnaround Advisors, LLC to Provide a Chief Restructuring Officer, Nunc Pro Tun to August 1, 2022, and (II) Approve the Agreement Related Thereto; and (D) Granting Related Relief* [Docket No. 288].

"**Governmental Claims Bar Date**" means December 27, 2022, established by the General Bar Date Order.

9737384

**"Governmental Unit"** means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

**"Holder"** means the Entity that is the owner of record of a Claim, Equity Interest, or Liquidation Trust Interest, as applicable.

**"Impaired"** means, with respect to any Class, a Class that is impaired as set forth in section 1124 of the Bankruptcy Code.

**"Insurance Policy"** includes any policy of insurance coverage of any kind (including any and all amendments, endorsements, renewals, and extensions thereof) that at any time belonged or belongs to or included or includes the Debtors as a named insured, additional insured, beneficiary, or assignee.

**"Insured Claim"** means any Claim or portion of a Claim (other than a Claim held by an employee of the Debtors for workers' compensation coverage under the workers' compensation program applicable in the particular state in which the employee is employed by the Debtors) that is insured under the Debtors' Insurance Policies, but only to the extent of such coverage.

**"Intercompany Claim"** means a Claim of one Debtor against another Debtor arising prior to the Effective Date.

**"Investor"** means any Entity who holds or asserts an Investor Claim.

**"Investor Claim"** means a Claim asserted against or Equity Interest asserted in any of the Debtors that is based upon or related to an investment in any of the Debtors, including the EB-5 Debtors, but excluding any JVA Claims. For purposes of the Plan and except as expressly provided herein, an Investor Claim shall be treated as a "Claim", regardless of whether such Investor Claim arises from a Claim asserted against one or more of the Debtors or an Equity Interest asserted in one or more of the Debtors.

**"Investor Schedule"** means the schedule of principal investments and prepetition distributions attached hereto as **Exhibit 3**.

**"Joint Venture Agreements"** means the General Contractor JVAs, the Lender JVAs, the One Dollar JVAs, and the Operating Agreement JVAs.

**"JVA Claim"** means any Claims or Equity Interest under any Joint Venture Agreement with respect to any specific parcel of the Debtors' property, including Claims against or Equity Interests in one or more of the Debtors that is a General Contractor JVA Claim, a One Dollar JVA Claim, an Operating Agreement JVA Claim, or a Lender JVA Net Profits Claim, but excluding any Lender JVA Mortgage Claim.

**"Lender JVA"** means a joint venture agreement, profit sharing agreement, or the legal and financial equivalent thereof with one or more of the Debtors pursuant to which the "Venturer" identified therein was required to lend funds to NRIA in exchange for a note and alleged mortgage on a property and an interest in the Fund.

9

9737384

"**Lender JVA Mortgage Claims**" means that portion of a Claim or Equity Interest arising from a Lender JVA that is secured by a mortgage interest in a specific parcel of the Debtors' property, which portion shall be considered an "Other Secured Claim" for purposes of this Plan.

"**Lender JVA Net Profits Claims**" means any remaining Claim or Equity Interest arising from a Lender JVA, excluding the Lender JVA Mortgage Claims.

"**Lien**" means any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

"**Liquidation Trust**" means a liquidation trust established on the Effective Date for the benefit of the Liquidation Trust Beneficiaries in accordance with the terms of the Plan and the Liquidation Trust Agreement.

"**Liquidation Trust Actions**" means, collectively, all Avoidance Actions and Causes of Action held by the Debtors or the Estates and any Causes of Action that are contributed to the Liquidation Trust as Contributed Claims against any Person or Entity that is not a Released Party. A non-exclusive analysis of the Liquidation Trust Assets that are being preserved under the Plan will be filed as part of the Plan Supplement.

"**Liquidation Trust Advisory Board**" means an advisory board for the Liquidation Trust consisting of three (3) members to be identified in the Plan Supplement, with one (1) member selected by the Debtors and two (2) members selected by the Committee.

"**Liquidation Trust Agreement**" means the agreement substantially in the form Filed in the Plan Supplement establishing and delineating the terms and conditions of the Liquidation Trust, including the rights and duties of the Liquidation Trustee.

"**Liquidation Trust Assets**" means, collectively, (a) the Liquidation Trust Actions; (b) the Liquidation Trust Funding; (c) 100% of the equity interests in the Wind-Down Entities (and all proceeds and distributions from such entities); (d) all other Estate Assets, including Available Cash as of the Effective Date and Available Cash that is possessed by or turned over to the Liquidation Trust after the Effective Date; and (e) other non-real-estate-related assets or entities that may be transferred or otherwise provided, directly or indirectly, to or for the benefit of the Debtors (after the Petition Date but before the Effective Date) or the Liquidation Trust (on or after the Effective Date) by any Person or Entity.

"**Liquidation Trust Beneficiary**" means each Holder of a Liquidation Trust Interest.

"**Liquidation Trust Expenses**" means any and all reasonable fees, costs, and expenses incurred by the Liquidation Trustee not inconsistent with the Plan or the Liquidation Trust Agreement, including the maintenance or disposition costs of the Liquidation Trust Assets (including Liquidation Trustee fees, indemnity reserves, attorneys' fees, the fees of professionals, and other Persons or Entities retained by the Liquidation Trustee, personnel-related expenses, and any taxes imposed on the Liquidation Trust or in respect of the Liquidation Trust Assets), and any other expenses incurred or otherwise payable in accordance with the Liquidation Trust Agreement.

**"Liquidation Trust Funding"** means Cash required to (a) make payments in accordance with the Plan to pay Liquidation Trust Expenses, Allowed Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Class 1 Claims, Allowed Class 2 Claims, Allowed Class 3 Claims, Allowed Class 4 Claims, and Allowed Class 5 Claims; and (b) fund any other unfunded post-Confirmation reserve requirements of the Liquidation Trust (including Distribution Reserves) in connection with the Plan, any agreements, or any Order.

**"Liquidation Trust Indemnified Parties"** means the Liquidation Trustee, the members of the Liquidation Trust Advisory Board, and his or her Related Parties, each in their capacities as such.

**"Liquidation Trust Interests"** means the interests to be distributed to Holders of Allowed Claims in Classes 5 and 7 (if any) under the Plan.

**"Liquidation Trustee"** means a Person or Entity selected by the Committee and reasonably acceptable to the Debtors that is appointed pursuant to the Liquidation Trust Agreement.

**"Membership Interests"** means the membership interests in any of the Debtors.

**"Net Investor Claim Amount"** means (a) any Cash received by or on behalf of a Debtor from or on behalf of an Investor prior to the Petition Date minus (b) any and all payments or transfers of Cash or other property (other than Membership Interests in another Debtor) from the Debtors to or on behalf of such Investor prior to the Petition Date, in each case based upon the Debtors' books and records. For the avoidance of doubt, no unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a Debtor other than the Fund into the Fund shall be included in the calculation of the Net Investor Claim Amount with respect to each Investor Claim.

**"Non-Contributing Investor"** means any Investor that is not a Contributing Investor, including those Investors that (a) vote to reject the Plan, (b) opt out of the Contributing Investor Settlement on their Class 5 Ballot, (c) object to confirmation of the Plan, or (d) are an Excluded Party.

**"Non-Investor General Unsecured Claim"** means an unsecured, non-priority Claim asserted against any the Debtors that is not an Investor Claim or a JVA Claim, including, for the avoidance of doubt, all Rejection Claims; *provided, however*, that "Non-Investor General Unsecured Claims" shall exclude (a) any Claims arising from any executory contracts or unexpired leases that are assumed during the Chapter 11 Cases and (b) any vendor or other Claims satisfied in the ordinary course of business pursuant to an Order during the Chapter 11 Cases.

**"NRIA"** means National Realty Investment Advisors, LLC, a Debtor herein.

**"One Dollar JVA"** means a joint venture agreement, profit sharing agreement, or the legal and financial equivalent thereof with one or more of the Debtors pursuant to which the "Venturer" identified therein was required to advance $1 to NRIA in exchange for a note from NRIA and investment in the Fund.

9737384

**"One Dollar JVA Claims"** means a Claim or Equity Interest arising from an One Dollar JVA.

**"Operating Agreement JVA"** means a joint venture agreement, profit sharing agreement, or the legal and financial equivalent thereof executed with one or more of the Debtors that required an amendment to a Debtor's operating agreement to grant the investor a direct interest in that Debtor.

**"Operating Agreement JVA Claims"** means a Claim or Equity Interest arising from an Operating Agreement JVA.

**"Order"** means an order or judgment of the Bankruptcy Court or other adjudicative body.

**"Ordinary Course Professional Order"** means the *Order Authorizing the Debtors to Employ and Compensate Professional Utilized in the Ordinary Course of Business* [Docket No. 613].

**"Other Secured Claims"** means any Secured Claims that are not Third-Party Mortgage Claims.  For the avoidance of doubt, "Other Secured Claims" shall include Lender JVA Mortgage Claims for purposes of this Plan.

**"Person"** means a "person," as such term is defined in section 101(41) of the Bankruptcy Code.

**"Petition Date"** means June 7, 2022, the date on which the Debtors filed their voluntary petitions for relief commencing the Chapter 11 Cases.

**"Plan"** means, collectively, this plan of liquidation for the Debtors under chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be altered, amended, or modified from time to time.

**"Plan Proponents"** has the meaning set forth in the preamble.

**"Plan Supplement**" means the compilation of documents and forms of documents, schedules and exhibits to the Plan, as the same may be altered, amended, modified, or supplemented.  The Plan Supplement will be filed with the Bankruptcy Court no later than seven (7) days before the deadline to object to confirmation of the Plan.

**"Post-Petition Board"** means reconstituted board for NRIA consisting of Hon. Kevin Carey (Ret.), Hon. Kevin Gross (Ret.) and Bernard Katz that was established and approved by the Bankruptcy Court pursuant to Governance Settlement Order.

**"Priority Non-Tax Claim"** means Claims or portions thereof entitled to priority in payment pursuant to Sections 507(a)(4), 507(a)(5), 507(a)(7) or 507(a)(9) of the Bankruptcy Code, in any case to the greatest extent permitted.

**"Priority Tax Claim"** means any claim of a Governmental Unit of the kind entitled to

priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Professional**" means (a) a Person or Entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330 and/or 331 of the Bankruptcy Code, or (b) the Fee Examiner and her counsel.

"**Professional Fee Claim**" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred from and after the Petition Date through and including the Effective Date, as well as any fees associated with the preparation of Fee Applications after the Effective Date.

"**Professional Fee Reserve**" means the reserve established and funded by the Liquidation Trust on the Effective Date pursuant to Article III.A.2 of the Plan to provide sufficient funds to satisfy all unpaid Allowed Professional Fee Claims.

"**Pro Rata Share**" means a number (expressed as a percentage) equal to the proportion that an Allowed Claim in Classes 5 and 7 (if any) bear to the aggregate amount of: (a) the Allowed Claims in such Classes and (b) the Claims, Disputed or undisputed, otherwise asserted but not yet Disallowed (in their aggregate face or, if applicable, estimated amount) in such Classes, as of the date of determination.

"**Rejection Claim**" means any claim for monetary damages as a result of the rejection of any prepetition executory contract or unexpired lease, whether rejected pursuant to the Confirmation Order or otherwise.

"**Rejection Claims Bar Date**" means, to the extent not previously established by prior Order, the first Business Day that is thirty (30) calendar days after the Effective Date.

"**Related Parties**" means, collectively, all of the respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, professional persons, representatives, insiders (as defined in section 101(31) of the Bankruptcy Code), Affiliates, and successors of the referenced Person or Entity.

"**Released Parties**" means, individually and collectively, in each case solely in their capacity as such: (a) the Debtors' Professionals; (b) the Debtors' employees and officers who are employed by the Debtors on the Effective Date; (c) the Post-Petition Board and its counsel; (d) the CRO; and (e) the Committee, members of the Committee in their capacity as members of the Committee, and the Committee's Professionals; *provided, however*, that the Released Parties shall not include any Excluded Party.

"**Releasing Parties**" means, collectively, (a) the Debtors, (b) the Estates, and (c) any Person or Entity exercising or seeking to exercise any rights of the Estates (but solely in that capacity), including the Committee (but not their individual members), the CRO, the Liquidation Trustee, the Liquidation Trust, the Wind-Down CEO, and any other successor to the Debtors or any other estate representative that is or could be appointed or selected pursuant to Bankruptcy Code section 1123(b)(3) or otherwise.

9737384

"**Retained Causes of Action**" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including without limitation, Avoidance Actions and Contributed Claims; *provided, however*, that the Retained Causes of Action shall not include any rights or Causes of Action against a Released Party or Exculpated Party other than to the extent and for no other purpose than as a defense or objection to a Scheduled Claim or proof of Claim filed in these Chapter 11 Cases.

"**Schedule of Assumed Agreements**" means the schedule of those certain executory contracts and unexpired leases that the Debtors have determined, in the Debtors' reasonable discretion, the Debtors may assume and assign on the Effective Date. The initial Schedule of Assumed Agreements will be Filed as part of the Plan Supplement but remains subject to any modifications that may be made prior to the Effective Date pursuant to Article VI.A.1 of the Plan.

"**Schedules**" means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and Statements of Financial Affairs filed by the Debtors with the Bankruptcy Court pursuant to section 521(a) of the Bankruptcy Code, Bankruptcy Rule 1007(b), and the Official Bankruptcy Forms, as same may be amended from time to time.

"**Section 503(b)(9) Claim**" means a Claim against the Debtors for goods sold to a Debtor in the ordinary course of the applicable Debtor's business and received by the applicable Debtor within twenty (20) days before the Petition Date.

"**Secured Claim**" means a Claim that is secured (a) by a Lien that is valid, perfected, unavoidable, and enforceable under the Bankruptcy Code or applicable non-bankruptcy law or by reason of a Final Order; or (b) as a result of rights of setoff under Section 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the holder's interest in the Estates' interest in such property or to the extent of the amount subject to such setoff, as the case may be.

"**Securities Act**" means The Securities Act of 1933, as amended.

"**Subordinated Claim**" means any Claim that is subordinated to Non-Investor General Unsecured Claims or Investor Claims (a) pursuant to section 510 of the Bankruptcy Code by a Final Order, or (b) by consent of the Creditor holding such Claim.

"**Third-Party Mortgage Claims**" means those alleged Secured Claims of (a) S3 RE Bergenline Funding LLC as it relates to Debtor Bergenline Capital 4901 LLC, (b) S3 RE 1300 Manhattan Funding LLC as it relates to Debtor Manhattan Avenue Capital 1300 LLC, and (c) Toorak Capital Partners or its affiliate as it relates to the property located at 506 Henry Street, Brooklyn, New York.

"**Unclassified Claim**" means any Claim that is not part of any Class, including Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, and Intercompany Claims.

"**Unimpaired**" means any Class of Claims that is not impaired within the meaning of Bankruptcy Code section 1124.

14

9737384

**"Uninsured Portion"** means the portion of any Claim that includes an Insured Claim exceeding the coverage amount applicable to such Insured Claim.

**"Unliquidated Claims"** means any Claim that is Scheduled as unliquidated or that was Filed in an unliquidated amount.

**"U.S. Trustee"** means the United States Trustee for Region 3.

**"Warranty Claims"** means a Claim against any of the Debtors arising under, or with respect to, any warranty program relating to the Debtors' properties and any obligations, whether express, implied, statutory or otherwise, relating to the Debtors' various building and construction projects for properties that were sold prior to the Petition Date, but excluding any other Claim for which a litigation or dispute is pending as of the Effective Date. For the avoidance of doubt, Warranty Claims do not include any claims against the Debtors arising under, or with respect to, any warranty program relating to the Debtors' properties and any obligations, whether express, implied, statutory or otherwise, relating to the Debtors' various building and construction projects for properties that were sold pursuant to an order of the Bankruptcy Court after the Petition Date.

**"Voting Deadline"** means the date fixed by the Bankruptcy Court for voting on accepting or rejecting the Plan in the Disclosure Statement Order.

**"Wind-Down CEO"** means a Person selected by the Debtors and reasonably acceptable to the Committee that is appointed as the chief executive officer of the Wind-Down Entities to liquidate, complete, and/or sell Wind-Down Entity Real Estate Assets. The identity of the Wind-Down CEO will be set forth in the Plan Supplement.

**"Wind-Down Entities"** means: (i) real estate companies established on or before the Effective Date to hold all Wind-Down Entity Real Estate Assets; and (ii) an intermediate "HoldCo" Wind-Down Entity to manage the "property-owning" Wind-Down Entities, and with authority to, among other things, employ individuals responsible for the administration of such Wind-Down Entities and enter into contracts. The Wind-Down Entities shall hold and manage the Wind-Down Entity Real Estate Assets in accordance with the provisions of the Plan and the Wind-Down Operating Agreements. Operating agreements and other applicable formation documents with respect to each of the Wind-Down Entities will be substantially in the form Filed in the Plan Supplement.

**"Wind-Down Entity Claim Expenses"** means any Cash required to make payments in accordance with the Plan to Holders of Allowed Other Secured Claims, Allowed Third-Party Mortgage Claims, and to counterparties to executory contracts and unexpired leases that are assumed and assigned to one of the Wind-Down Entities under the Plan or otherwise assumed and assigned pursuant to a Final Order.

**"Wind-Down Entity Expenses"** means any and all reasonable fees, costs, and expenses incurred by the Wind-Down Entities not inconsistent with the Plan or the Wind-Down Operating Agreements, including (a) any administrative fees; (b) attorneys' or other professionals' fees and expenses of the Wind-Down Entities; (c) insurance fees or premiums; (d) taxes; (e) escrow expenses; (f) costs associated with any maintenance, liquidation, and administration of the Wind-Down Entities; (g) Wind-Down Entity Claim Expenses; and (h) costs to maintain, develop,

9737384

improve, or insure all Wind-Down Entities while they are being developed, held for sale or otherwise liquidated, and any other expenses incurred or otherwise payable in accordance with the Wind-Down Operating Agreements.

"**Wind-Down Entity Real Estate Assets**" means (a) all real estate assets for each of the Debtors' remaining properties and (b) all architectural plans, engineering plans, surveys, geotech, site plans, developers' agreements, approvals, performance bonds, cash bonds, utilities, landscape plans, environmental plans, special inspections, and permits associated with the Debtors' remaining properties.

"**Wind-Down Operating Agreements**" means operating agreements substantially in the form Filed in the Plan Supplement containing standard and customary provisions regarding ownership and duties for each of the Wind-Down Entities and acceptable to the Plan Proponents.

"**Wind-Down Indemnified Parties**" means the Wind-Down CEO and his Related Parties, each in their capacities as such.

**B.      Interpretation, Rules of Construction, Computation of Time**

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings of Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

The provisions of Fed. R. Bankr. P. 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

To the extent of any inconsistency between this Plan and the Disclosure Statement filed in connection herewith, the Plan Supplement or any component thereof, the Plan shall control.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**A.     Summary and Classification of Claims and Equity Interests**

This section classifies Claims and Equity Interests – except for Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, and Intercompany Claims which are not classified – for all purposes, including confirmation, Distributions, and voting.  A Claim and Equity Interest is classified in a particular Class only to the extent that the Claim and Equity Interest falls within the Class description.  To the extent that part of a Claim and Equity Interest falls within a different Class description, that part of the Claim is classified in that different Class. The following table summarizes the Classes of Claims and Equity Interests under the Plan:

| CLASS | DESCRIPTION | IMPAIRED / UNIMPAIRED | VOTING STATUS |
|-------|-------------|-----------------------|---------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (presumed to accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (presumed to accept) |
| Class 3 | Third-Party Mortgage Claims | Impaired | Entitled to Vote |
| Class 4 | Non-Investor General Unsecured Claims | Unimpaired | Not Entitled to Vote (presumed to accept) |
| Class 5 | Investor Claims | Impaired | Entitled to Vote |
| Class 6 | JVA Claims | Impaired | Not Entitled to Vote (deemed to reject) |
| Class 7 | Subordinated Claims | Impaired | Not Entitled to Vote (deemed to reject) |
| Class 8 | Equity Interests in the Debtors | Impaired | Not Entitled to Vote (deemed to reject) |

**B.     Classification and Voting Controversies**

If a controversy arises regarding whether any Claim or Equity Interest is properly classified under the Plan, then the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.  If the Bankruptcy Court finds that the classification of any Claim or Equity Interest is improper, then such Claim or Equity Interest shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim or Equity Interest shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim or Equity Interest should have been classified, without the necessity of resoliciting any votes on the Plan.

9737384

## ARTICLE III.
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.    Unclassified Claims**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, and Intercompany Claims have not been classified and thus are excluded from the Classes of Claims and Equity Interest set forth Article III.B below.

**1.    Administrative Expense Claims**

Subject to the allowance procedures and the deadlines provided in this Plan, except to the extent any entity entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction of its Allowed Administrative Expense Claim, Cash in an amount equal to the unpaid amount of such Allowed Administrative Expense Claim (a) on the Effective Date or (b) if subject to dispute on the Effective Date, upon entry of a Final Order determining and allowing such Allowed Administrative Expense Claim or as soon thereafter as is practicable.

**FAILURE TO FILE A REQUEST FOR PAYMENT OF AN ADMINISTRATIVE EXPENSE CLAIM ON OR BEFORE THE ADMINISTRATIVE EXPENSE CLAIM BAR DATE (THE DATE THAT IS THIRTY (30) DAYS AFTER THE EFFECTIVE DATE) SHALL RESULT IN SUCH ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER DISALLOWED, BARRED, AND DISCHARGED IN ITS ENTIRETY.**

For the avoidance of doubt, the obligation to File a request for payment of an Administrative Expense Claim on or before the Administrative Expense Claim Bar Date does not apply to the Post-Petition Board or its counsel who shall be paid for their pre-Effective Date services rendered pursuant to the terms of the Governance Settlement Order, as if that Order remained in full force and effect; *provided, however*, that after the Effective Date the Post-Petition Board's counsel shall serve all invoices on the Liquidation Trustee and its counsel (in addition to the parties set forth in the Governance Settlement Order) and the Liquidation Trustee shall be responsible for making payments on account of such invoices.

**2.    Professional Fee Claims**

All final requests for payment of Professional Fee Claims pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), or 1103 must be made by Fee Application Filed with the Bankruptcy Court and served on counsel to the Liquidation Trust, counsel to the U.S. Trustee, and the Fee Examiner no later than thirty (30) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to such Fee Applications must be Filed and served on counsel to the Liquidation Trust, counsel to the Debtors, counsel to the Committee, counsel to the U.S. Trustee, the requesting Professional, and the Fee Examiner on or before the date that is twenty-one (21) calendar days after the date on which the applicable Fee Application was served (or such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting Professional).

18

All Professional Fee Claims shall be paid by the Liquidation Trust to the extent approved by Order of the Bankruptcy Court within five (5) Business Days after entry of such Order.  On the Effective Date, the Liquidation Trust shall establish the Professional Fee Reserve.  The Professional Fee Reserve shall vest in the Liquidation Trust and shall be maintained by the Liquidation Trustee in accordance with the Plan.  The Liquidation Trust shall fully fund the Professional Fee Reserve on the Effective Date in an amount that is agreed upon by the Plan Proponents prior to the Confirmation Hearing and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date.  If the Plan Proponents are unable to agree on an amount by which the Professional Fee Reserve is to be funded, then any of those parties may submit the issue to the Bankruptcy Court, which, following notice and a hearing, shall fix the amount of the required funding.  All Professional Fee Claims that have not previously been paid, otherwise satisfied, or withdrawn shall be paid from the Professional Fee Reserve.  Any excess funds in the Professional Fee Reserve shall be released to the Liquidation Trust to be used for other purposes consistent with the Plan.  For the avoidance of doubt, the Professional Fee Reserve is an estimate and shall not be construed as a cap on the Debtors' obligation to pay in full Allowed Professional Fee Claims. To the extent that there is a shortfall of funds in the Professional Fee Reserve, the Liquidation Trust shall use the Liquidation Trust Assets to pay all Allowed Professional Fee Claims in full.

Notwithstanding the occurrence of the Effective Date, the Fee Examiner shall continue to act in such capacity unless and until all final Fee Applications have been adjudicated by order of the Bankruptcy Court.  The Fee Examiner shall be discharged from her duties and have no further responsibilities following the Court's adjudication of all final Fee Applications.  Following the Effective Date, the Fee Examiner shall be entitled to be compensated by the Liquidation Trust for her services and the services of her counsel in connection with the Fee Applications; *provided that*, the Fee Examiner shall serve on counsel to the Liquidation Trust, counsel to the Debtors, counsel to the Committee, and counsel to the U.S. Trustee, invoices detailing the reasonable fees and costs incurred in connection with the review of the Fee Applications within thirty (30) calendar days after the date on which the last Professional Fee Claim is allowed by order of the Bankruptcy Court.

**3.    Priority Tax Claims**

In full and final satisfaction of each Allowed Priority Tax Claim, if any, except to the extent any Entity entitled to payment of any Allowed Priority Tax Claim has received payment on account of such Claim prior to the Effective Date or agrees in writing to a different treatment with the Plan Proponents or the Liquidating Trust, each Holder of an Allowed Priority Tax Claim shall be paid, at the Liquidation Trustee's option, as follows: (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the later of the Effective Date and thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable nonbankruptcy law as of the calendar month in which the Effective Date occurs (*provided* that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty).

9737384

### 4. Intercompany Claims

Due to the substantive consolidation in the Plan, Intercompany Claims shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan on account of such Claims. As of the Effective Date, all Intercompany Claims shall be deemed void, cancelled, and of no further force and effect.

### 5. Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the Debtors on or before the Effective Date. Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of claim with respect to quarterly fees payable pursuant to 28 U.S.C. § 1930.

## B. Classified Claims and Equity Interests

### 1. Class 1 – Priority Non-Tax Claims

Class 1 consists of all Priority Non-Tax Claims. Class 1 is Unimpaired under the Plan.

On or as soon as reasonably practicable after the later of (a) the Effective Date and (b) the date on which a Priority Non-Tax Claim becomes payable pursuant to and as specified by a Final Order, the Holder of such Allowed Priority Non-Tax Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Non-Tax Claim, either (a) Cash from the Liquidation Trust equal to the unpaid portion of such Allowed Priority Non-Tax Claim or (b) such other less favorable treatment from the Liquidation Trust to which such Holder and the Liquidation Trust shall have agreed upon in writing.

### 2. Class 2 – Other Secured Claims

Class 2 consists of all Other Secured Claims, including all Allowed Lender JVA Mortgage Claims. Class 2 is Unimpaired under the Plan.

The legal, equitable, and contractual rights of Holders of Allowed Class 2 Claims are unaltered by the Plan, and, notwithstanding the vesting of Wind-Down Entity Real Estate Assets in the Wind-Down Entities on the Effective Date, the Liens of the Holders of Allowed Class 2 Claims will continue to attach to their respective Collateral, provided that all such Claims shall remain subject to any and all defenses, counterclaims, and setoff or recoupment rights with respect thereto. Unless the Plan Proponents and the Holder of an Allowed Class 2 Claim agree to other treatment, on or as soon as is reasonably practicable after the Effective Date, each Holder of an Allowed Class 2 Claim shall receive, at the Plan Proponents' election (such election to be made on or prior to the Effective Date): (a) Cash from the Liquidation Trust in the Allowed amount of such Holder's Allowed Class 2 Claim; or (b) the return by the Liquidation Trust of the Collateral securing such Allowed Class 2 Claim, without representation or warranty by any Person (and without recourse against any Person regarding such Other Secured Claims); or (c) (A) the Cure of any default, other than a default of the kind specified in Bankruptcy Code section 365(b)(2), that Bankruptcy Code section 1124(2) requires to be cured, with respect to such Holder's Allowed Class 2 Claim, without recognition of any default rate of interest or similar penalty or charge, and

20

upon such Cure, no default shall exist; (B) the reinstatement of the maturity of such Allowed Class 2 Claim as the maturity existed before any default, without recognition of any default rate of interest or similar penalty or charge; and (C) retention of its unaltered legal, equitable, and contractual rights with respect to such Allowed Class 2 Claim, including through the retention of any associated Lien on the Collateral securing such Allowed Class 2 Claim.

The Bankruptcy Court shall retain jurisdiction and power to determine the amount necessary to satisfy any Allowed Class 2 Claim for which treatment is elected by the Plan Proponents on or prior to the Effective Date under clause (a) or clause (c) of the immediately foregoing paragraph.  With respect to any Allowed Class 2 Claim for which treatment is elected under clause (b) on or prior to the Effective Date, any Holder of such Allowed Class 2 Claim shall release (and by the Confirmation Order shall be deemed to release) all Liens against any Estate Assets.

Notwithstanding anything else in the Plan, the Holders of Allowed Class 2 Claims will have no right to receive any Distribution from, or otherwise share in, any of the Liquidation Trust Assets to satisfy their Allowed Class 2 Claims.

### 3.        Class 3 – Third-Party Mortgage Claims

Class 3 consists of all Third-Party Mortgage Claims.  Class 3A consists of Third-Party Mortgage Claims asserted by S3 RE Bergenline Funding LLC as it relates to Debtor Bergenline Capital 4901 LLC and S3 RE 1300 Manhattan Funding LLC as it relates to Debtor Manhattan Avenue Capital 1300 LLC.  Class 3B consists of Third-Party Mortgage Claims asserted by Toorak Capital Partners or its affiliate as it relates to the property located at 506 Henry Street, Brooklyn, New York.  The Liens of the Holders of Allowed Class 3 Claims will continue to attach to their respective Collateral and proceeds from such Collateral after the Effective Date, subject to the Avoidance Actions, Causes of Action, and objections to Claims asserted by the Committee in Adversary Proceeding No. 23-01169 (the "S3 Adversary") and that have been reserved under the Plan and in the Plan Supplement, and to the extent such Class 3 Claims are ultimately Allowed. Class 3 is Impaired under the Plan.

Class 3A: S3 RE Bergenline Funding LLC and S3 RE 1300 Manhattan Funding LLC agree that the Third-Party Mortgage Claims asserted by S3 RE Bergenline Funding LLC and S3 RE 1300 Manhattan Funding LLC (collectively, the "S3 Third-Party Mortgage Claims") will be paid in full in Cash when such S3 Third-Party Mortgage Claims become Allowed Class 3 Claims as determined by a Final Order entered by the Bankruptcy Court and that the injunction provisions of Article VIII.C shall apply to S3 RE Bergenline Funding LLC and S3 RE 1300 Manhattan Funding LLC and to any and all successors, assigns, loan participants, and Affiliates until such Final Order is entered, provided that nothing herein shall be deemed to prejudice, waive, or moot the Avoidance Actions, Causes of Action, claims, and objections to the S3 Third-Party Mortgage Claims asserted against S3 RE Bergenline Funding LLC and S3 RE 1300 Manhattan Funding LLC in the S3 Adversary.  For the avoidance of doubt: (i) if the Estates' properties located at 1300 Manhattan Avenue, Union City, New Jersey, and/or 4901 Bergenline Avenue, West New York, New Jersey are sold during the pendency of the S3 Adversary or before the S3 Third-Party Mortgage Claims are adjudicated, settled, Allowed or Disallowed, the Liquidation Trustee shall reserve sufficient proceeds from such sales (to the extent sufficient proceeds are generated) to

9737384

satisfy in full the asserted S3 Third-Party Mortgage Claims; (ii) to the extent any portion of the S3 Third-Party Mortgage Claims is Allowed but determined not to be a Secured Claim, such portion shall be classified and afforded the treatment of Class 4 Non-Investor General Unsecured Claims to the extent so Allowed; and (iii) nothing in this Plan, including without limitation, any limitation on the effect of substantive consolidation as set forth in Article IV, Section H *infra*, is intended to or shall impair the rights, remedies, claims or defenses of the Committee, the Liquidation Trust, the Liquidation Trustee, S3 RE Bergenline Funding LLC and/or S3 RE 1300 Manhattan Funding LLC in the S3 Adversary or as preserved under this Plan and the Plan Supplement.

Class 3B: Unless the Plan Proponents or the Liquidation Trustee, as applicable, and Toorak Capital Partners or its affiliate agree to other treatment, at the election of Toorak Capital Partners or its affiliate, with such election to be made on or before the Effective Date, Toorak Capital Partners or its affiliate shall be entitled to either: (A) (i) be paid its Allowed Third-Party Mortgage Claim in full in Cash upon the sale of the property located at 506 Henry Street, Brooklyn, New York (the "506 Henry Street Property"), and (ii) retain its unaltered legal, equitable, and contractual rights under the prepetition loan and mortgage documents (including the right to receive the payment of interest at a rate that is (x) agreed to by the Plan Proponents or the Liquidation Trustee, as applicable, and Toorak Capital Partners or its affiliate, or (y) determined by a Final Order); *provided, however*, that if any Claim asserted by Toorak Capital Partners or its affiliate is a Disputed Claim, such Claim shall be treated in accordance with the terms of any Final Order allowing such Claim; or (B) the surrender and return of the 506 Henry Street Property.  For the avoidance of doubt: (i) nothing in this Plan, including without limitation, any limitation on the effect of substantive consolidation as set forth in Article IV, Section H *infra*, shall be deemed to prejudice, waive, or moot any Avoidance Actions, Causes of Action, claims, and objections that may be asserted or assertable by the Plan Proponents or the Liquidation Trustee; and (ii) to the extent that Toorak Capital Partners or its affiliate asserts any Claim or portion thereof that is not a Secured Claim or to the extent any portion of Toorak Capital Partners' Third Party Mortgage Claim is determined not to be a Secured Claim, such Claim or portion thereof shall be classified and afforded the treatment of a Class 4 Non-Investor General Unsecured Claim to the extent so Allowed.

### 4.    Class 4 – Non-Investor General Unsecured Claims

Class 4 consists of all Non-Investor General Unsecured Claims.  Class 4 is Unimpaired under the Plan.

In full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed Class 4 Claims will receive, following payment of Allowed Administrative Expense Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, and Class 3 Claims, payment in full on account of such Allowed Class 4 Claims.

### 5.    Class 5 –Investor Claims

Class 5 consists of all Investor Claims.  Class 5 is Impaired under the Plan.

In full satisfaction, settlement, and release of, and in exchange for, such Investor Claims, the Holders of Allowed Class 5 Claims will receive on or as soon as reasonably practicable after the Effective Date, following payment of Administrative Expense Claims, Priority Tax Claims,

9737384

Class 1 Claims, Class 2 Claims, Class 3 Claims, and Class 4 Claims, their Pro Rata Share of Liquidation Trust Interests that entitle such Holders to Distributions of the Liquidation Trust Assets.

Class 5 Claims of Contributing Investors shall be Allowed in the Net Investor Claim Amount, in accordance with the Contributing Investor Settlement. Subject to the ability of each Holder of a Class 5 Claim to opt out of the Contributing Investor Settlement on their Ballot, each Contributing Investor shall be deemed to have agreed to the Contributing Investor Settlement and their treatment contained in the Plan.

Each Class 5 Ballot will provide an opportunity for Holders of Class 5 Claims to affirmatively opt out of the Contributing Investor Settlement. Holders of Class 5 Claims who (a) submit a Ballot voting to accept the Plan and do not opt out of the Contributing Investor Settlement on their Class 5 Ballot or (b) do not submit a Ballot on or before the Voting Deadline shall be Contributing Investors. Upon the Effective Date, without further action or order of the Bankruptcy Court, each Contributing Investor shall be deemed to have (a) contributed its Contributed Claims to the Liquidation Trust; (b) agreed to the allowance of its Class 5 Claim in the Net Investor Claim Amount; (c) agreed to the terms of the Contributing Investor Settlement; and (d) agreed to execute any documents reasonably requested by the Liquidation Trustee to effectuate the terms of the Plan. In exchange for accepting the Contributing Investor Settlement, the Debtors and their Estates shall, upon the occurrence of the Effective Date and the formation of the Liquidation Trust, be deemed to have waived all Avoidance Actions to avoid and recover any prepetition distributions received by such Contributing Investor with respect to the subject Allowed Class 5 Claim.

Holders of Class 5 Claims that (a) vote to reject the plan, (b) opt out of the Contributing Investor Settlement on their Class 5 Ballot, (c) object to confirmation of the Plan, or (d) are Excluded Parties shall be Non-Contributing Investors. Class 5 Claims held by Non-Contributing Investors shall be Disputed Claims and subject to a claim objection, Avoidance Action or other remedies available to the Debtors or the Liquidating Trust, as applicable. The Debtors' Estates, the Liquidation Trustee, and the Plan Proponents reserve all rights to object to the validity, amount, or any other aspect of any Claims held by Non-Contributing Investors, including Class 5 Claims. The Debtors' Estates, the Liquidation Trustee, and the Plan Proponents also reserve any Liquidation Trust Actions that may exist regarding Non-Contributing Investors, all of which are hereby retained and preserved by and for the benefit of the Liquidation Trust.

6.      **Class 6 – JVA Claims**

Class 6 consists of all JVA Claims. Class 6 is Impaired under the Plan.

The JVA Claims are Disputed Claims.

Upon any JVA Claim becoming Allowed by a Final Order, in full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed Class 6 Claims will receive on or as soon as reasonably practicable after entry of a Final Order allowing such JVA Claim, following payment of Administrative Expense Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, and Class 5 Claims, payment on such Allowed Class 6 Claims from Liquidation Trust Assets in accordance with the terms of the applicable Joint Venture

23

Agreement and in such amount as determined by adjudication through a Final Order.

JVA Claims that are Disallowed shall receive no Distribution under the Plan.

**7.        Class 7 –Subordinated Claims**

Class 7 consists of all Subordinated Claims.  Class 7 is Impaired under the Plan.

The Holders of Allowed Subordinated Claims will retain a residual right to receive their Pro Rata Share of Liquidation Trust Interests that entitle such Holders to Distribution of Liquidation Trust Assets, following payment of Administrative Expense Claims, Priority Tax Claims, Class 1 Claims, Class 4 Claims, Class 5 Claims, and Class 6 Claims.

The Plan Proponents do not believe that Holders of Allowed Class 7 Claims will receive any Distribution under the Plan.  Accordingly, the Plan Proponents have determined not to solicit the votes of the Holders of any Class 7 Claims, and such Holders shall be deemed to have rejected the Plan and, therefore, are not entitled to vote on the Plan.

**8.        Class 8 – Equity Interest in the Debtors**

Class 8 consists of all Equity Interests in the Debtors.  Class 8 is Impaired under the Plan.

Equity Interests in the Debtors shall not be entitled to, and shall not, receive or retain any property or interest in property under the Plan on account of such Equity Interests.  As of the Effective Date, all Equity Interests in the Debtors shall be deemed void, cancelled, and of no further force and effect.  Class 8 is deemed to have rejected the Plan and, therefore, Holders of Equity Interests in the Debtors are not entitled to vote on the Plan.

**C.        Special Provision Concerning Warranty Claims**

Except with respect to warranties provided by the Debtors after the Petition Date that will continue to be honored, the Liquidation Trust and the Wind-Down Entities will have no further responsibility to honor or satisfy any warranty program relating to the Debtors' properties and any obligations, whether express, implied, statutory or otherwise, relating to the Debtors' various building and construction projects from and after the Effective Date.

The Debtors have served written notice on parties in interest of the specific bar date or deadline for any Creditors to file a proof of claim (or amend any previously filed proof of claim) on account of any Warranty Claims.  If a Creditor fails to timely file a proof of claim on account of a Warranty Claim, the Creditor will be forever barred and estopped from asserting any such Claim against any Debtor from and after the Effective Date.  Holders of Allowed Warranty Claims shall be classified in Class 4 of the Plan as Holders of Non-Investor General Unsecured Claims.

**D.        Special Provision Concerning Insured Claims**

Any Allowed Non-Investor General Unsecured Claim with respect to an Insured Claim shall be limited to the Uninsured Portion of such Claim, provided such Claims have been timely Filed by the applicable Claims Bar Date.  If there is insurance purchased by or otherwise applicable

24

9737384

to the Debtors, any Person with rights against or under the applicable Insurance Policy, including the Debtors, the Liquidation Trust, and Holders of Insured Claims, may pursue such rights.

Nothing in this Article III.D shall constitute a waiver of any Causes of Action the Debtors, the Estates, or the Liquidation Trust may hold against any Person, including the Debtors' insurance carriers; and nothing in this Article III.D is intended to, shall, or shall be deemed to preclude any Holder of an Insured Claim from seeking or obtaining a distribution or other recovery from any insurer of the Debtors in addition to (but not in duplication of) any Distribution such Holder may receive under the Plan; *provided, however,* that the Debtors and the Liquidation Trust do not waive, and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled.

The Plan shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtors' insurers under their policies, and the Debtors' insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest or litigate with any Person the existence, primacy, or scope of available coverage under any allegedly applicable policy. The Plan shall not operate as a waiver of any other Claims the Debtors' insurers have asserted or may assert in any proof of claim or of any objections or defenses to any such Claims.

**E.      Comprehensive Settlement of Claims and Controversies**

**1.      General Provisions**

Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Equity Interest may have against any Debtor with respect to any Claim, Equity Interest, or any Distribution on account thereof and Causes of Action against any Debtor.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are (a) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (b) fair, equitable, and reasonable.  This comprehensive compromise and settlement is a critical component of the Plan and is designed to provide a resolution of myriad disputed Claims, Liens, and Causes of Action that otherwise could take years to resolve, which would delay and undoubtedly reduce the Distributions that ultimately would be available for all Holders of Claims.

**2.      Implementing Settlement Elements**

Pursuant to the comprehensive settlement negotiated by the Debtors and the Committee, the Plan effectuates, among other things, the following:

(a)      On the Effective Date, each Contributing Investor Claim shall be deemed Allowed under the Plan in the Net Investor Claim Amount set forth in the Investor Schedule with respect to such Claim.  No unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor into the Fund

9737384

shall be included in the calculation of the Net Investor Claim Amount with respect to each Investor Claim. Holders of Allowed Class 5 Claims (Investor Claims) that are Contributing Investors shall receive their Pro Rata Share of Liquidation Trust Interests that entitle such Holders to Distributions of the Liquidation Trust Assets.

(b)     On the Effective Date, all Contributing Investors in Class 5 shall be deemed to have contributed to the Liquidation Trust all Contributed Claims held by such Contributing Investor.

(c)     To the extent, and only to the extent, a Contributing Investor Claim is Allowed by subparagraph (a) above, the Debtors and their Estates shall, upon the occurrence of the Effective Date, be deemed to have waived and released all Avoidance Actions to avoid or recover any prepetition distributions received by such Contributing Investor in connection with the subject Allowed Class 5 Claim.

(d)     In accordance with Section IV.H of the Plan, the Debtors will be substantively consolidated. On the Effective Date, the Liquidation Trust shall retain all of the Liquidation Trust Assets and shall contribute the Wind-Down Entity Real Estate Assets to the Wind-Down Entities.

(e)     The Liquidation Trust will be created to most effectively and efficiently pursue the Liquidation Trust Actions for the collective benefit of all the Liquidation Trust Beneficiaries, establish and hold the Distribution Reserves, and receive and distribute to Liquidation Trust Beneficiaries the net proceeds of the Liquidation Trust Assets, Liquidation Trust Expenses, and certain other Claims, all in accordance with the Plan.

(f)     Findings will be sought in the Confirmation Order concerning the nature and extent of the alleged fraud perpetrated by the Debtors' former owners, non-debtor affiliates, and related parties, including reference to the *Order (A) Approving the Administrative Consent Order With the State of New Jersey Bureau of Securities, (B) Authorizing the Debtors to Enter Into the Administrative Consent Order With the State of New Jersey Bureau of Securities, and (C) Granting Related Relief* [Docket No. 1651] and such other findings as agreed by the Plan Proponents, including, without limitation, a finding that from February 2018 through at least October 2021, the Debtors, under the direction and control of the Former Control Persons, operated a *Ponzi* scheme.

## F.     Impaired Classes of Claims and Interests Entitled to Vote

Only the votes of Holders of Allowed Claims in Classes 3 and 5 shall be solicited with respect to the Plan.

## G.     Acceptance by an Impaired Class

In accordance with Bankruptcy Code section 1126(c), and except as provided in Bankruptcy Code section 1126(e), the Holders of Claims in any Class entitled to vote on the Plan shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds in dollar

amount and more than one-half in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

## H.    Presumed Acceptances by Unimpaired Classes

Classes 1, 2, and 4 are Unimpaired under the Plan.  Under Bankruptcy Code section 1126(f), the Holders of Claims in such Unimpaired Classes are conclusively presumed to have accepted the Plan, and, therefore, the votes of such Holders shall not be solicited.

## I.    Impaired Classes Deemed to Reject Plan

The Plan Proponents have determined not to solicit the votes of Holders of any Claims in Class 7, and such Holders shall be deemed to have rejected the Plan and, therefore, such Holders are not entitled to vote on the Plan.  Holders of JVA Claims in Class 6 and Equity Interests in the Debtors in Class 8 are not entitled to receive or retain any property or interests in property under the Plan.  Under Bankruptcy Code section 1126(g), such Holders are deemed to have rejected the Plan, and, therefore, the votes of such Holders shall not be solicited.

## J.    Modification of Votes

Following the Voting Deadline, no Creditors entitled to vote on the Plan will be able to change their votes cast on the Plan or any attendant elections or preferences without the written consent of the Plan Proponents, which consent may be given or withheld in the Plan Proponents' reasonable discretion.

## K.    Confirmation Pursuant to Bankruptcy Code Section 1129(b)

Because at least one Impaired Class is deemed to have rejected the Plan, the Plan Proponents will and hereby request confirmation of the Plan under Bankruptcy Code section 1129(b).  The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

## L.    Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of determining acceptance of the Plan by such Class under Bankruptcy Code section 1129(a)(8).

## M.    Severability of Joint Plan

As further discussed in Article X.C of the Plan, the Plan Proponents may alter, amend, or modify this Plan at or before the Confirmation Hearing, including to remove one or more Debtors from this Plan, in the Plan Proponents' reasonable discretion.

9737384

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.     Overview**

This Plan provides for the disposition of substantially all the Estate Assets and the Distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code.  The Plan will be implemented by various acts and transactions as set forth in the Plan, including, among other things, the establishment of the Liquidation Trust, the appointment of the Liquidation Trustee, the Wind-Down CEO, and the making of Distributions by the Liquidation Trust in accordance with the Plan.

The Plan Proponents reserve the right to pursue an Alternative Structure Decision prior to or at the Confirmation Hearing if it is determined that an alternative post-confirmation corporate structure is in the best interests of the Debtors' Estates and stakeholders.

**B.     Debtors' Corporate Affairs**

**1.     Debtors' Existing Directors, Officers, and Managers**

On the Effective Date, each of the Debtors' existing directors, officers, and managers (including the members of the Post-Petition Board) shall be terminated automatically without the need for any Corporate Action and without the need for any corporate or limited liability company filings and shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated unless otherwise provided herein).  On the Effective Date, pursuant to the Liquidation Trust Agreement and the Plan, the Liquidation Trustee shall succeed to all such powers as would have been available and applicable to the Debtors' officers and managers (including the members of the Post-Petition Board) in respect of all Liquidation Trust Assets and, subject to the Wind-Down Operating Agreements and Article IV.C. hereof, the Wind-Down CEO shall succeed to all such powers as would have been applicable to the Debtors' officers with respect to the Wind-Down Entity Real Estate Assets; *provided, however*, that the Wind-Down CEO and the Liquidation Trustee may continue to consult with or employ those former officers and employees of the Debtors, as approved by the Liquidation Trustee.

Notwithstanding anything contained in this Plan or the Confirmation Order to the contrary, and notwithstanding the occurrence of the Effective Date, paragraphs 6(b), 6(c), 6(d), 10, and 11 of the Governance Settlement Order shall remain in full force and effect and survive entry of the Confirmation Order.

**2.     Dissolution of the Debtors Other than NRIA**

On the Effective Date, each of the Debtors, other than NRIA, will be dissolved automatically without the need for any Corporate Action, without the need for any corporate or limited liability company filings, and without the need for any other or further actions to be taken by or on behalf of such dissolving Debtor or any other Person or any payments to be made in connection therewith.  In furtherance of the forgoing, the Liquidation Trustee is authorized in its discretion to file any certificates of cancellation as it deems appropriate.

28

9737384

### 3. Corporate Documents and Corporate Authority

On the Effective Date, the certificates of incorporation, bylaws, operating agreements, and articles of organization, as applicable, of all the Debtors shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of the Confirmation Order shall constitute authorization for the Debtors, the Liquidation Trustee, and the Wind-Down CEO, as applicable, to take or cause to be taken all actions (including, if applicable, Corporate Actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation.

### C. Post-Effective Date Governance of the Wind-Down Entities

### 1. Appointments

On and after the Effective Date, the initial Wind-Down CEO shall become and serve as the chief executive officer for the Wind-Down Entities. The compensation for the Wind-Down CEO will be set forth in a separate document to be Filed as part of the Plan Supplement.

### 2. Creation and Governance of the Wind-Down Entities

On the Effective Date, the Wind-Down CEO and the Liquidation Trustee shall execute the Wind-Down Operating Agreements and shall take any other steps necessary to establish the Wind-Down Entities in accordance with the Plan. The Wind-Down Entities shall be governed by the Wind-Down Operating Agreements and administered by the Wind-Down CEO. The powers, rights, duties, and responsibilities of the Wind-Down CEO shall be specified in the Wind-Down Operating Agreements, and shall be subject to the supervision and control of the Liquidation Trustee. The Liquidation Trustee shall be authorized to establish an intermediate "HoldCo" Wind-Down Entity to manage the "property-owning" Wind-Down Entities, and with authority to, among other things, employ individuals responsible for the administration of such Wind-Down Entities and enter into contracts. The Wind-Down Entities shall hold and manage the Wind-Down Entity Real Estate Assets in accordance with the provisions of the Plan and the Wind-Down Operating Agreements.

### 3. Wind-Down Entities Pending Closing of the Cases, Vesting of Wind-Down Entity Real Estate Assets

Consistent with the injunction provisions of Article VIII.C of this Plan, and except to the extent necessary to give effect to the treatment of any Holder of an Allowed Other Secured Claim or Third-Party Mortgage Claim in Classes 2 and 3 of the Plan, respectively, upon the occurrence of the Effective Date, all Wind-Down Entity Real Estate Assets shall vest automatically in the Wind-Down Entities free and clear of all Claims, Liens, rights, or interests. Such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use or other similar tax.

On and after the Effective Date, the Wind-Down Entities will be wholly-owned subsidiaries of the Liquidation Trust. The manager of the Wind-Down Entities shall be the Wind-

9737384

Down CEO.  The Wind-Down CEO's indemnity and exculpation by the Wind-Down Entities shall, to the greatest extent possible, be the same as the Liquidation Trustee's indemnity and exculpation in connection with the Liquidation Trust, and the Wind-Down CEO may take such steps as appropriate to maintain the good standing of the Wind-Down Entities.

Until the Wind-Down Entities are dissolved, all Cash or property received by the Wind-Down Entities, net of any authorized expenses of the Wind-Down Entities incurred after the Effective Date, shall be transferred to the Liquidation Trust (as and when set forth below).  The Wind-Down Entities (a) shall have the Liquidation Trust as their sole member, (b) shall be treated as disregarded entities for income tax purposes, and (c) shall have a purpose consistent with the purpose of the Liquidation Trust as set forth in Article IV.D.4 of the Plan.

### 4. Liquidation of Wind-Down Entity Real Estate Assets

The Wind-Down CEO, with the oversight of and subject to the prior approval of the Liquidation Trustee, will be responsible for development and disposition of the Wind-Down Entity Real Estate Assets.  Except to the extent necessary to give effect to the treatment of any Holder of an Allowed Other Secured Claim or Third-Party Mortgage Claim in Classes 2 and 3 of the Plan, respectively, no pre-petition Claims, Liens, rights and interests shall be asserted against, attach, or otherwise impact the post-Effective Date sale of Wind-Down Entity Real Estate Assets.

### 5. Authority to Act on Behalf of Wind-Down Entities

Subject to the supervision and prior approval of the Liquidation Trustee and provisions of the Wind-Down Operating Agreements, the Wind-Down CEO shall have the authority and right on behalf of the Wind-Down Entities and without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

(a)    retain, compensate, and employ professionals and other Persons to represent the Wind-Down Entities with respect to and in connection with their rights and responsibilities;

(b)    establish, maintain, and administer documents and accounts of the Wind-Down Entities;

(c)    seek and obtain the requisite government approvals and permits necessary to develop and operate the Wind-Down Entities;

(d)    maintain, develop, improve, administer, operate, conserve, supervise, collect, settle, and protect Wind-Down Entity Real Estate Assets (subject to the limitations described herein or in the Wind-Down Operating Agreements);

(e)    sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of Wind-Down Entity Real Estate Assets, or any part thereof or interest therein, upon such terms as are first approved by the Liquidation Trustee and the Wind-Down CEO determines to be necessary, appropriate, or desirable, including the consummation of any sale transaction or disposition for any Wind-Down Entity Real Estate Assets

9737384

as to which an Order was entered before the Effective Date;

(f)    obtain third-party financing and enter into other joint venture arrangements, in each case with respect to Wind-Down Entity Real Estate Assets;

(g)    subject to Article IV.C.3 of the Plan, invest Cash of the Wind-Down Entities, including Cash realized from the liquidation of Wind-Down Entity Real Estate Assets, which investments, for the avoidance of doubt, will not be required to comply with Bankruptcy Code section 345(b);

(h)    negotiate, incur, and pay the Wind-Down Entity Expenses, including in connection with the resolution and satisfaction of any Wind-Down Entity Claim Expenses;

(i)    comply with the Plan, exercise the Wind-Down CEO's rights, and perform the Wind-Down CEO's obligations; and

(j)    exercise such other powers as approved by the Liquidation Trustee and deemed by the Wind-Down CEO to be necessary and proper to implement the Plan.

Commencing on the first Business Day that is no longer than thirty (30) calendar days after the quarter-end of the first full calendar quarter following the Effective Date and continuing on the first Business Day that is no longer than thirty (30) calendar days after each calendar quarter-end thereafter, the Wind-Down Entities will remit to the Liquidation Trust as of such quarter-end any Cash in excess of their respective budgeted reserve for ongoing operations, other anticipated Wind-Down Entity Expenses, and their other Plan obligations (subject to more specific provisions as may be set forth in the Wind-Down Operating Agreements).

The Wind-Down CEO shall, subject to the approval of the Liquidation Trustee, prepare a budget and establish an appropriate cash management system so that the Wind-Down Entities have sufficient funds for ongoing operations, other anticipated Wind-Down Entity Expenses, and their other Plan obligations (subject to more specific provisions as may be set forth in the Wind-Down Operating Agreements).

The Wind-Down Entities shall advise the Liquidation Trustee regarding the status of its affairs on at least a weekly basis or as requested by the Liquidation Trustee (in his or her sole discretion) and shall make available to the Liquidation Trust such information as is necessary for any reporting by the Liquidation Trust.

The Wind-Down CEO shall advise and seek the prior approval of the Liquidation Trustee regarding all material actions and decisions, including the sale of any property prior to entering into the contract of sale, the incurrence of any debt, the expenditure of any funds that were not previously budgeted for and approved by the Liquidation Trustee, the retention of professionals, or executing any material contracts.  The Liquidation Trust will have all additional rights to govern over the Wind-Down Entities as are set forth in the Wind-Down Operating Agreements.

**6.    Removal or Resignation of the Wind-Down CEO**

The Wind-Down CEO may be removed by the Liquidation Trustee on thirty (30) days prior

notice by the Liquidation Trustee, in the Liquidation Trustee's sole and absolute discretion, subject to the approval of the Liquidation Trust Advisory Board. The Wind-Down CEO may resign by giving not less than thirty (30) calendar days' prior notice thereof in a notice Filed in the Chapter 11 Cases.

## 7.    Successor Wind-Down CEO

At any time that the initial Wind-Down CEO is no longer the Wind-Down CEO, the Liquidation Trustee shall select a replacement Wind-Down CEO, subject to the review and approval of the Liquidation Trust Advisory Board.

## 8.    Termination of the Wind-Down CEO and Dissolution of the Wind-Down Entities

Following the sale or other disposition of all Wind-Down Entity Real Estate Assets, and the satisfaction of all Wind-Down Entity Claim Expenses and Wind-Down Entity Expenses, the Wind-Down CEO's role as Wind-Down CEO shall be terminated and the Wind-Down CEO shall file certificates of cancellation to terminate the existence of the Wind-Down Entities.

## 9.    Indemnification

The Wind-Down Entities and the Liquidation Trust shall indemnify the Wind-Down Indemnified Parties for, and shall defend and hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence or willful misconduct on the part of the Wind-Down Indemnified Parties (which fraud, gross negligence or willful misconduct, if any, must be determined by a Final Order) for any action taken, suffered, or omitted to be taken by the Wind-Down Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or the Wind-Down Operating Agreements, as applicable.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence or willful misconduct.  To the extent the Wind-Down Entities or the Liquidation Trust indemnifies, defends, and holds harmless any Wind-Down Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidation Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidation Trust Expenses.  The costs and expenses incurred in enforcing the right of indemnification in this Article IV.C.9 shall be paid by the Wind-Down Entities or the Liquidation Trust, as applicable.

## 10.    Insurance

The Wind-Down Entities shall be required to obtain any insurance coverages deemed to be reasonably necessary at the Wind-Down Entities' expense for themselves and their respective agents, including coverage with respect to the liabilities, duties, and obligations of the Wind-Down CEO and Liquidation Trustee, which insurance coverage may, at the sole discretion of the Liquidation Trustee, be extended for a reasonable period after the termination of the Wind-Down Operating Agreements.

9737384

11.     **Control Provision**

To the extent there is any inconsistency between the Plan as it relates to Wind-Down Entities and the Wind-Down Operating Agreements, the Plan shall control.

D.    **Liquidation Trust**

1.     **Appointments**

On and after the Effective Date, the initial Liquidation Trustee shall become and serve as Liquidation Trustee.  The Liquidation Trustee will receive compensation and reimbursement of reasonable expenses to be specifically set forth in the Liquidation Trust Agreement.

On and after the Effective Date, the initial Liquidation Trust Advisory Board shall begin to serve without further action. The Liquidation Trust Advisory Board will receive compensation and reimbursement of reasonable expenses to be specifically set forth in the Liquidation Trust Agreement.

2.     **Creation and Governance of the Liquidation Trust**

On the Effective Date, the Liquidation Trustee shall execute the Liquidation Trust Agreement and shall take any other steps necessary to establish the Liquidation Trust in accordance with the Plan and the beneficial interests therein.  The Liquidation Trust shall be governed by the Liquidation Trust Agreement and administered by the Liquidation Trustee.  The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement.

For federal income tax purposes, the transfer of the assets to the Liquidation Trust will be treated as a sale or other disposition of assets to the Liquidation Trust Beneficiaries in exchange for their claims in the Chapter 11 Cases.  Any income or loss from the transfer of assets to the Liquidation Trust shall flow through to the ultimate taxpaying member of each Debtor who will be responsible to pay the tax liability, if any.  For federal income tax purposes, the Liquidation Trust Beneficiaries shall be treated as the grantors of the Liquidation Trust and deemed to be the owners of the assets of the Liquidation Trust.  The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be deemed a transfer to the Liquidation Trust Beneficiaries by the Debtors, followed by a deemed transfer by such Liquidation Trust Beneficiaries to the Liquidation Trust. The Liquidation Trust will consistently report the valuation of the assets transferred to the Liquidation Trust.  Such consistent valuations and revised reporting will be used for all federal income tax purposes.  Income deductions, gain, or loss from the Liquidation Trust shall be reported to the beneficiaries of the Liquidation Trust in conjunction with the filing of the Liquidation Trust's income tax returns.  Each Liquidation Trust Beneficiary shall report income, deductions, gain, or loss on such Liquidation Trust Beneficiary's income tax returns.

3.     **Vesting of Liquidation Trust Assets**

On the Effective Date, the Liquidation Trust will be automatically vested with all of the Debtors' and the Estates' respective rights, title, and interest in and to all Liquidation Trust Assets. Except as specifically provided in the Plan or the Confirmation Order, the Liquidation Trust Assets

33

shall automatically vest in the Liquidation Trust free and clear of all Claims, Liens, or interests subject only to the Liquidation Trust Interests and the Liquidation Trust Expenses, as provided for in the Liquidation Trust Agreement, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax.  The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all Liquidation Trust Assets.  The Liquidation Trust shall hold and distribute the Liquidation Trust Assets in accordance with the provisions of the Plan and the Liquidation Trust Agreement.

**4.     Purpose of the Liquidation Trust**

The Liquidation Trust shall be established for the purpose of pursuing or liquidating the Liquidation Trust Assets and making Distributions to the Liquidation Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

**5.     Authority**

Subject to the supervision of the Liquidation Trust Advisory Board, the Liquidation Trustee shall have the authority and right on behalf of the Debtors and the Estates and without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

(a)     review, reconcile, compromise, settle, or object to Claims and resolve such objections as set forth in the Plan;

(b)     calculate and make Distributions and calculate and establish reserves under and in accordance with the Plan;

(c)     retain, compensate, and employ professionals and other Persons to represent the Liquidation Trustee with respect to and in connection with its rights and responsibilities;

(d)     establish, maintain, and administer documents and accounts of the Debtors as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan;

(e)     maintain, conserve, pursue, litigate, collect, settle, and protect the Liquidation Trust Assets (subject to the limitations described herein), including any and all Retained Causes of Action;

(f)     control, govern, supervise, and manage the Wind-Down Entities and the Wind-Down CEO;

(g)     sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the Liquidation Trust Assets or any part thereof or interest therein upon such terms as the Liquidation Trustee determines to be necessary, appropriate, or desirable;

(h)     negotiate, incur, and pay the Liquidation Trust Expenses;

(i)     prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors that are required under the Plan, by any Governmental Unit, or by applicable law;

(j)     compile and maintain the official Claims Register, including for purposes of making initial and subsequent Distributions under the Plan;

(k)     take such actions as are necessary or appropriate to wind-down and dissolve the Debtors;

(l)     comply with the Plan, exercise the Liquidation Trustee's rights, and perform the Liquidation Trustee's obligations; and

(m)     exercise such other powers as deemed by the Liquidation Trustee to be necessary and proper to implement the Plan.

To the extent necessary to give full effect to its administrative rights and duties under the Plan, the Liquidation Trustee shall be deemed to be vested with all rights, powers, privileges, and authorities of (a) an appropriate corporate or limited liability company officer or manager of each of the Debtors under any applicable non-bankruptcy law and (b) a "trustee" of each of the Debtors under Bankruptcy Code sections 704 and 1106.

### 6.     Limitation of Liability

The Liquidation Trustee shall enjoy all of the rights, powers, immunities, and privileges applicable to a Bankruptcy Code chapter 7 trustee with respect to limitations of liability.  The Liquidation Trustee may, in connection with the performance of its functions, in its sole and absolute discretion, consult with its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing, except to the extent that any such act or the failure to take any action constitutes willful misconduct, gross negligence, or fraud.  Notwithstanding such authority, the Liquidation Trustee shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and its determination not to do so shall not result in the imposition of liability on the Liquidation Trustee unless such determination is based on willful misconduct, gross negligence, or fraud. Persons dealing with the Liquidation Trustee shall look only to the Liquidation Trust Assets to satisfy any liability incurred by the Liquidation Trustee to such Person in carrying out the terms of the Plan or the Liquidation Trust Agreement, and the Liquidation Trustee shall have no personal obligation to satisfy such liability.

### 7.     Indemnification

The Liquidation Trust shall indemnify the Liquidation Trust Indemnified Parties for, and shall defend and hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence or willful misconduct on the

35

part of the Liquidation Trust Indemnified Parties (which fraud, gross negligence or willful misconduct, if any, must be determined by a Final Order) for any action taken, suffered, or omitted to be taken by the Liquidation Trust Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or the Liquidation Trust Agreement, as applicable.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence or willful misconduct.  To the extent the Liquidation Trust indemnifies, defends, and holds harmless any Liquidation Trust Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidation Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidation Trust Expenses.  The costs and expenses incurred in enforcing the right of indemnification in this Article IV.D.7 shall be paid by the Liquidation Trust.

### 8.    Insurance

The Liquidation Trustee shall be authorized, but not required, to obtain any insurance coverages deemed to be reasonably necessary, at the Liquidation Trust's sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties, and obligations of the Liquidation Trustee, which insurance coverage may, at the sole discretion of the Liquidation Trustee, be extended for a reasonable period after the termination of the Liquidation Trust.

### 9.    Tax Reporting

The Liquidation Trust shall timely file tax returns for the Liquidation Trust treating the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

The Liquidation Trust shall be responsible for timely payment of all taxes (if any) imposed on and payable by the Liquidation Trust, the Wind-Down Entities, or any Liquidation Trust Assets.

The Liquidation Trust shall distribute such tax-related notices, beneficiary statements, and information returns, as applicable, to the applicable Holders of Allowed Claims as are required by applicable law or that the Liquidation Trustee determines are otherwise necessary or desirable.

The Liquidation Trust is authorized to file a request for expedited determination under Bankruptcy Code section 505(b) for any tax returns filed with respect to the Debtors.

### 10.    Distributions to Liquidation Trust Beneficiaries

The Liquidation Trust shall reserve up to $5 million to make an initial Distribution on a Pro Rata Basis to Holders of Allowed Class 5 Claims upon full satisfaction of Administrative Expense Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims, and Class 4 Claims.

The Liquidation Trust, in the Liquidation Trustee's discretion, subject to the approval of the Liquidation Trust Advisory Board, may make periodic Distributions of additional Cash to the Liquidation Trust Beneficiaries at any time following the Effective Date, provided that such Distributions are otherwise permitted under, and not inconsistent with the Plan, the Liquidation Trust Agreement, and applicable law.

36

No later than (a) the first Business Day that is at least 180 calendar days after the Effective Date and (b) the last Business Day of each subsequent 180-calendar-day period until the Closing Date, the Liquidation Trustee shall calculate Distributions to be made to the Liquidation Trust Beneficiaries based on the amount of Available Cash at such time and promptly thereafter may make Distributions, if any, of the amount so determined.

### 11.    Cash Investments

The Liquidation Trustee may invest Cash of the Liquidation Trust, including any earnings on or proceeds from, any Cash realized from the liquidation of the Liquidation Trust Assets, or any Cash that is remitted to the Liquidation Trust from the Wind-Down Entities, which investments, for the avoidance of doubt, will not be required to comply with Bankruptcy Code section 345(b); *provided, however*, that such investments must be investments that are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable guidelines, rulings, or other controlling authorities.

### 12.    Registration and Restriction on Transfer of the Liquidation Trust Interests

The record Holders of the Liquidation Trust Interests shall be recorded and set forth in a registry maintained by, or at the direction of, the Liquidation Trustee expressly for such purpose. Such obligation may be satisfied by the Liquidation Trust's retention of an institutional transfer agent for the maintenance of such registry, and notwithstanding anything to the contrary contained in this paragraph, the Liquidation Trust may, in connection with any Exchange Act Registration with respect to the Liquidation Trust Interests, in its discretion cause the Liquidation Trust Interests to be issued in book entry form.

Upon their issuance as of the Effective Date, and thereafter until the effectiveness of any Exchange Act Registration of the Liquidation Trust Interests, the Liquidation Trust Interests shall not be certificated and be further subject to restrictions on transfer under the Liquidation Trust Agreement, which restrictions shall prohibit the Liquidation Trust Interests from being certificated or transferable except by operation of law or by will or the laws of descent and distribution, in each case following written notice to the Liquidation Trust.  The Liquidation Trust shall be administered in a manner consistent with the SEC's published guidance on liquidating trusts. Upon the effectiveness of an Exchange Act Registration of the Liquidation Trust Interests, such transfer restrictions under the Liquidation Trust Agreement may terminate and the Liquidation Trust Interests may be transferable by the Holders thereof to the extent otherwise permissible under applicable law.

### 13.    Exemption

To the extent the Liquidation Trust Interests are deemed to be "securities," the issuance of such interests under the Plan are exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under the Securities Act and any applicable state and local laws requiring registration of securities.

### 14.    Contribution of Contributed Claims

On the Effective Date, all Contributed Claims will be irrevocably contributed to the Liquidation

37

9737384

Trust and shall thereafter be Liquidation Trust Actions for all purposes. No Person or Entity may rely on the absence of a specific reference in the Plan, the Confirmation Order, the Liquidation Trust Agreement, or the Disclosure Statement to any Contributed Claims against such Person or Entity as any indication that the Liquidation Trust will not pursue any and all available Contributed Claims against such Person or Entity. The objection to the Allowance of any Claims will not in any way limit the ability or the right of the Liquidation Trust to assert, commence, or prosecute any Contributed Claims. Nothing contained in the Plan, the Confirmation Order, the Liquidation Trust Agreement, or the Disclosure Statement will be deemed to be a waiver, release, or relinquishment of any Contributed Claims that the Contributing Claimants had immediately prior to the Effective Date. The Liquidation Trust shall have, retain, reserve, and be entitled to assert all Contributed Claims fully as if the Contributed Claims had not been contributed to the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement. For the avoidance of doubt, (a) the Contributed Claims shall not include the rights of any of the Holders of Class 5 Claims to receive the Distributions, if any, to which they are entitled under the Plan; (b) the Contributed Claims shall not include any Causes of Action against any of the Released Parties; and (c) in the exercise of its reasonable discretion and in accordance with the Liquidation Trust Agreement, the Liquidation Trust shall not be obligated to pursue all or any given Contributed Claims.

If an Excluded Party fails to timely file an objection to the proposed assignment and transfer of the Contributed Claims or other terms of the Plan related to the Contributed Investor Settlement by the deadline for filing objections to the confirmation of this Plan, that Excluded Party shall be deemed to have irrevocably consented to the assignment and transfer of Contributed Claims and other Plan terms related to the Contributed Investor Settlement and will be forever barred from asserting that the assignment and transfer of the Contributed Claims or other Plan terms affect the ability of the Liquidation Trust to pursue the Contributed Claims against such Excluded Party.

If the Bankruptcy Court does not enter a Final Order approving the assignment and transfer of the Contributed Claims to the Liquidation Trust or if a subsequent court invalidates the assignment of the Contributed Claims to the Liquidation Trust, then pursuant to the provisions of Section 1123(b)(3)(B) of the Bankruptcy Code, the Liquidation Trustee is hereby appointed as the representative of the Contributing Investors for the purpose of pursuing the Contributed Claims. If an Excluded Party fails to timely file an objection to the proposed appointment by the deadline for filing objections to confirmation of this Plan, that Excluded Party shall be deemed to have irrevocably consented to the appointment and will be forever barred from asserting that the appointment in any way affects the ability of the Liquidation Trust to pursue the Contributed Claims against the Excluded Parties.

Any recoveries on the Contributed Claims by the Liquidation Trustee will be paid to the Liquidation Trust, to be administered and distributed pursuant to the Plan and Liquidation Trust Agreement.

### 15.    Termination of the Liquidation Trust, Wind-Down Authority

The existence of the Liquidation Trust and the authority of the Liquidation Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the

9737384

date on which all of the Liquidation Trust Assets are liquidated in accordance with the Plan, the funds in the Liquidation Trust have been completely distributed in accordance with the Plan, all tax returns and other filings or reports have been filed with the appropriate state or federal regulatory authorities, and the Order closing the remaining Chapter 11 Cases is a Final Order. In no event shall the Liquidation Trust be terminated later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before or after such fifth anniversary, determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, unless a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Liquidation Trust Assets. The termination of the Liquidation Trust shall not affect, impede, release, waive or otherwise impair any Cause of Action or the continued prosecution thereof; it being the intent of the Plan to allow Causes of Action to be pursued through Final Order (notwithstanding any termination of the Liquidation Trust). After the Liquidating Trust is terminated, the Liquidating Trustee shall wind down the affairs of the Liquidating Trust consistent with this paragraph.

### 16.    Control Provision

To the extent there is any inconsistency between the Plan as it relates to the Liquidation Trust and the Liquidation Trust Agreement, the Plan shall control.

### E.    Preservation of Privileges and Defenses

The actions taken by the Debtors (prior to the Effective Date), the Wind-Down Entities (after the Effective Date), the Liquidation Trust (after the Effective Date), or any of their respective Related Parties in connection with the Plan shall not be (or be deemed to be) a waiver of any privilege or defense of the Debtors (prior to the Effective Date), the Wind-Down Entities (after the Effective Date), or the Liquidation Trust (after the Effective Date), as applicable, including any attorney-client privilege or work-product doctrine. Notwithstanding any Debtors providing any privileged information related to any Liquidation Trust Actions to the Liquidation Trustee, the Liquidation Trust, the Wind-Down Entities, or any Person associated with any of the foregoing, such privileged information shall be without waiver in recognition of the joint, common, or successor interest in prosecuting the Liquidation Trust Actions and shall remain privileged. Only the Liquidation Trustee shall have the right to waive the attorney-client privilege, work-product doctrine, or other protections as to the Debtors (prior to the Effective Date), the Wind-Down Entities, and the Liquidation Trust (after the Effective Date).

### F.    Preservation of Rights of Action

Except as otherwise provided in the Plan or the Confirmation Order, from and after the Effective Date, the Liquidation Trust will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or Estates' Causes of Action (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions and Contributed Claims, all well as Liquidation Trust Actions, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases. In accordance with Bankruptcy Code section 1123(b)(3), the Liquidation Trustee, as a successor in interest to the Debtors, the Estates and the

9737384

Contributing Investors (solely with respect to the Contributed Claims) may and will have the exclusive right, power, and interest to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the Liquidation Trust Actions without notice to or approval from the Bankruptcy Court. In accordance with the Plan, and pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the Liquidation Trustee may compromise and settle Liquidation Trust Actions.

The failure to specifically identify in the Disclosure Statement or the Plan any potential or existing Avoidance Actions or Causes of Action as a Liquidation Trust Action or Contributed Claims is not intended to and shall not limit the rights of the Liquidation Trust to pursue any such Avoidance Actions or Causes of Action. Unless a Liquidation Trust Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order), the Plan Proponents expressly reserve such Liquidation Trust Action for later resolution by the Liquidation Trust (including any Avoidance Actions or Causes of Action not specifically identified or of which the Plan Proponents may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Plan Proponents at this time or facts or circumstances that may change or be different from those the Plan Proponents now believe to exist). As such, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches will apply to any such Avoidance Actions or Causes of Action upon or after Confirmation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except when such Avoidance Actions or Causes of Action have been expressly released. In addition, the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor, the Liquidation Trust, or the Wind-Down Entities is a plaintiff, defendant, or an interested party is fully reserved as against any Person or Entity that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits.

## G.    Cancellation of Instruments

Except to the extent necessary to give effect to the treatment of any Holder of an Allowed Other Secured Claim or Third-Party Mortgage Claim in Classes 2 and 3 of the Plan, respectively, and except with respect to any executory contracts and unexpired leases that are assumed and assigned to the Wind-Down Entities under the Plan or otherwise assumed and assigned pursuant to a Final Order, any agreement, bond, certificate, contract, indenture, lease, note, security, Membership Interest, warrant, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date, and all Liens, mortgages, pledges, grants, trusts, and other interests relating thereto shall be automatically cancelled, and all obligations of the Debtors thereunder or in any way related thereto shall be discharged.

## H.    Substantive Consolidation

Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129, of the substantive consolidation of the Debtors in the manner set forth in Contributing Investor Settlement. Notwithstanding such substantive consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 shall be due and payable by each individual

40

Debtor through the Effective Date.

The substantive consolidation effected pursuant to the Plan shall not affect, without limitation, (a) the Debtors', the Liquidation Trust's, or the Wind-Down Entities' defenses to any Claim or Cause of Action, including the ability to assert any counterclaim; (b) the Debtors', the Liquidation Trust's, or the Wind-Down Entities' setoff or recoupment rights; (c) requirements for any third party to establish mutuality prior to substantive consolidation in order to assert a right of setoff against the Debtors, the Liquidation Trust, or the Wind-Down Entities; or (d) distributions to the Debtors, the Estates, the Liquidation Trust, or the Wind-Down Entities out of any insurance policies or proceeds of such policies.

The Disclosure Statement and the Plan shall be deemed to be a motion requesting that the Bankruptcy Court approve the substantive consolidation contemplated by the Plan. Unless an objection to the proposed substantive consolidation is made in writing by any Creditor purportedly affected by such substantive consolidation on or before the deadline to object to confirmation of the Plan, or such other date as may be fixed by the Bankruptcy Court, the substantive consolidation contemplated by the Plan may be approved by the Bankruptcy Court at the Confirmation Hearing. In the event any such objections are timely filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court, which hearing may, but need not, be the Confirmation Hearing.

If the Bankruptcy Court determines that substantive consolidation of any given Debtor is not appropriate, then the Plan Proponents may request that the Bankruptcy Court otherwise confirm the Plan and approve the treatment of and Distributions to the different Classes under the Plan on an adjusted, Debtor-by-Debtor basis. Furthermore, the Plan Proponents reserve their rights (a) to seek confirmation of the Plan without implementing substantive consolidation of any given Debtor, and, in the Plan Proponents' reasonable discretion, to request that the Bankruptcy Court approve the treatment of and Distributions to any given Class under the Plan on an adjusted, Debtor-by-Debtor basis; and (b) to seek to substantively consolidate all Debtors into the Liquidation Trust if all Impaired Classes entitled to vote on the Plan vote to accept the Plan.

## I.    Preservation of Right to Conduct Investigations

The preservation for the Liquidation Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidation Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors or the Committee prior to the Effective Date shall vest with the Liquidation Trust and shall continue until dissolution of the Liquidation Trust.

## J.    Continuing Indemnification of Post-Petition Board and CRO

Notwithstanding anything contained herein, consistent with paragraph 6(c) of the Governance Settlement Order, the members of the Post-Petition Board and the CRO shall be indemnified by the Liquidation Trust and the Wind-Down Entities, to the extent applicable, in accordance with the terms of the Third Amended and Restated Limited Liability Company Operating Agreement of National Realty Investment Advisors, LLC dated July 31, 2020, and by the Fund in accordance with the terms of the Eighth Amended and Restated Limited Liability Company Operating Agreement dated November 23, 2021. In addition to and not in limitation of any rights of indemnifications under these agreements, the Liquidation Trust and the Wind-Down

41

Entities shall, to the maximum extent permitted by applicable law, indemnify and hold harmless the members of the Post-Petition Board and the CRO from any and all loss, claim, damage or cause of action, including reasonable attorneys' fees related thereto (solely for purposes of this paragraph, "**Claims**") incurred by the members of the Post-Petition Board and the CRO in the performance of their duties and obligations as such; *provided* that a member of the Post-Petition Board and the CRO shall not be so indemnified for Claims if they arise from such member's or the CRO's bad faith, gross negligence, or willful misconduct.  The benefits of the foregoing indemnification shall survive the termination of each Post-Petition Board member's or the CRO's service as such.

<div align="center">

**ARTICLE V.**
**PROVISIONS GOVERNING OBJECTIONS TO CLAIMS AND DISTRIBUTIONS**

</div>

**A.    Objections to and Resolution of Disputed Claims, Including Any Claims of Excluded Parties or Holders of Disputed Claims**

From and after the Effective Date, the Liquidation Trust shall have the authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, and any agreement entered into by the Liquidation Trust with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim.

**B.    Claim Objections**

All objections to Claims (other than Professional Fee Claims, which shall be governed by Article V of the Plan, but including any Claims of Excluded Parties or Holders of Disputed Claims) shall be Filed by the Liquidation Trust on or before the Claims Objection Deadline, which date may be extended on presentment of an order to the Bankruptcy Court by the Liquidation Trust prior to the expiration of such period and without need for notice or hearing.

**C.    Estimation of Certain Claims**

The Liquidation Trust may, at any time, move for a Bankruptcy Court order estimating any Disputed Claim or Unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction and power to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. The estimated amount of any Claim so determined by the Bankruptcy Court shall constitute the maximum recovery that the Holder thereof may recover after the ultimate liquidation of its Claim, irrespective of the actual amount that is ultimately Allowed.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

**D.    Disposition of Assets in Reserves After Disallowance**

After an objection to a Disputed Claim is sustained or an Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, such that the Disputed Claim or Unliquidated Claim is a Disallowed Claim in whole or in part, any Cash held in an applicable

<div align="center">42</div>

Distribution Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan and any reserved Liquidation Trust Interests shall be cancelled.

### E.    Timing of Distributions for Allowed Claims

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Holders of Allowed Claims as of the applicable Distribution Date shall be made on or as soon as practicable after the applicable Distribution Date; *provided, however*, that the Liquidation Trustee, in its discretion, may defer Distributions to a given Holder of Liquidation Trust Interests (other than the final Distribution) if the amount available for Distribution to such Holder is not at least $250.00. Distributions on account of Claims that first become Allowed Claims after the applicable Distribution Date shall be made pursuant to Article V of the Plan and on the day selected by the Liquidation Trustee. Distributions made as soon as reasonably practicable after the Effective Date or such other date set forth herein shall be deemed to have been made on such date.

### F.    Calculating Distributions and Related Matters

The Liquidation Trust shall undertake in its reasonable discretion to make in accordance with the Plan all calculations of Available Cash, Claims, and other amounts for or relating to Distributions for Holders of Allowed Claims to be made from the Liquidation Trust or for reserves for Holders of Disputed Claims and Unliquidated Claims to be established by the Liquidation Trust, and may establish and holdback from Distributions reasonable reserves for other contingencies.

### G.    Interest and Other Amounts Regarding Claims

Unless Allowed by a Final Order, no post-petition interest shall accrue or be paid on any Claims, and no Holder of an Allowed Claim shall be entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date.

### H.    Distributions by Liquidation Trustee as Disbursing Agent

The Liquidation Trustee, or such other party as may be designated by the Liquidation Trustee, shall serve as the disbursing agent under the Plan with respect to Distributions required pursuant to the Plan to be paid by the Liquidation Trust. The Liquidation Trustee shall not be required to give any bond or surety or other security for the performance of any duties as disbursing agent.

### I.    Means of Cash Payment

Cash payments under the Plan shall be made, at the option and in the sole discretion of the Liquidation Trustee, by (a) checks drawn on or (b) wire transfer, electronic funds transfer, or ACH from a domestic bank. Cash payments to foreign Creditors may be made, at the option and in the sole discretion of the Liquidation Trustee, by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of checks shall be null and void if not cashed within 180 calendar days of the date of the issuance thereof.

Requests for reissuance of any check within 180 calendar days of the date of the issuance thereof shall be made directly to the Liquidation Trustee.

**J.      Form of Currency For Distributions**

All Distributions under the Plan shall be made in U.S. Dollars. Where a Claim has been denominated in foreign currency on a proof of claim, the Allowed amount of such Claim shall be calculated in U.S. Dollars based upon the currency conversion rate in place as of the Petition Date and in accordance with Bankruptcy Code section 502(b).

**K.      Fractional Distributions**

Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**L.      De Minimis Distributions**

Notwithstanding anything in the Plan to the contrary, the Liquidation Trust shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim on any given Distribution Date is less than $100.00, and such amount shall be distributed to other Creditors on such Distribution Date in accordance with the terms of the Plan.  Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed on any given Distribution Date is less than $100.00 shall be forever barred from asserting any Claim with respect to such eliminated Distribution against any Estate Assets.

**M.      No Distributions With Respect to Certain Claims**

Notwithstanding anything in the Plan to the contrary, no Distributions or other consideration of any kind shall be made on account of any Disputed Claim or Unliquidated Claim unless and until such Claim becomes an Allowed Claim, and then only to the extent that such Claim becomes an Allowed Claim and as provided under the Plan for such Allowed Claim. Nonetheless, in undertaking the calculations concerning Allowed Claims under the Plan, including the determination of Distributions due to the Holders of Allowed Claims, each Disputed Claim or Unliquidated Claim shall be treated as if it were an Allowed Claim (which, for Unliquidated Claims, shall mean they shall be treated as if Allowed in such amounts as determined in the reasonable discretion of the Liquidation Trust), except that if the Bankruptcy Court estimates the likely portion of such a Claim to be Allowed or authorized or the Bankruptcy Court or the Holder of such Claim and the Liquidation Trustee otherwise determine the amount or number that would constitute a sufficient reserve for such a Claim, such amount or number as determined by the Bankruptcy Court or by agreement of the Holder of such Claim and the Liquidation Trustee shall be used with respect to such Claim.

Distributions due in respect of a Disputed Claim or Unliquidated Claim shall be held in reserve by the Liquidation Trust in one or more Distribution Reserves.  The Liquidation Trust will

44

elect to treat any Distribution Reserve as a "Disputed Ownership Fund," pursuant to Treasury Regulation section 1.468B-9(c)(2)(ii).  As outlined in this election, Creditors holding such Claims are not treated as transferors of the money or property transferred to the "Disputed Ownership Fund."  For federal income tax purposes, a "Disputed Ownership Fund" is treated as the owner of all assets that it holds.  A "Disputed Ownership Fund" is treated as a C corporation for purposes of the Internal Revenue Code.  A "Disputed Ownership Fund" must file all required income and information tax returns and make all tax payments.  The Liquidation Trustee will be responsible for all such filings and payments on behalf of any "Disputed Ownership Fund", with any such payments to be made from the Distribution Reserve.

**N.      Distributions and Transfers Upon Resolution of Disputed Claims or Unliquidated Claims**

After an objection to a Disputed Claim is resolved or an Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, an amount of Liquidation Trust Interests and/or Cash held in the Disputed Ownership Fund corresponding to the amount of any resulting Allowed Claim shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to the transfer, in a taxable transaction to the Holder of the formerly Disputed Claim or Unliquidated Claim.  Upon each such resolution of a Claim against the Disputed Ownership Fund and such transfer with respect to any resulting Allowed Claim, (a) any remaining Liquidation Trust Interests in the Disputed Ownership Fund that had been held with respect to such formerly Disputed Claim or Unliquidated Claim prior to its resolution shall be cancelled; and (b) any remaining Cash in the Disputed Ownership Fund that had been held with respect to such formerly Disputed Claim or Unliquidated Claim prior to its resolution shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to such transfers, for use as follows, provided that such Cash transfers shall be treated as a taxable transfer by the Disputed Ownership Fund and to the recipients of such Cash.  Such remaining Cash may be utilized for payment, allocation, or reserve in accordance with the Plan for (a) unpaid or unutilized amounts for either Liquidation Trust Expenses or Liquidation Trust Funding or (b) any post-Confirmation reserve requirements of the Liquidation Trust in connection with the Plan, any agreements, or any Bankruptcy Court Orders.  To the extent any such remaining Cash is not so utilized, it shall become Available Cash for distribution to the Holders of Liquidation Trust Interests (including each Holder of Liquidation Trust Interests to the extent it obtains an Allowed Claim as a result of resolution of a formerly Disputed Claim or Unliquidated Claim) in a manner reasonably allocated by the Liquidation Trust so that all Holders of Liquidation Trust Interests will receive Cash in proportion to their Liquidation Trust Interests, net of any tax payable by the Disputed Ownership Fund with respect to the respective transfers.

**O.      Delivery of Distributions**

Distributions in respect of Liquidation Trust Interests shall be made to Holders of Liquidation Trust Interests as of the record date set for such Distribution.  Distributions to Holders of Liquidation Trust Interests or Allowed Claims that have not been converted to Liquidation Trust Interests shall be made (a) at the addresses set forth in the proofs of Claim Filed by such Holders, (b) at the addresses reflected in the Schedules if no proof of Claim has been Filed, or (c) at the addresses set forth in any written notices of address changes delivered to the Claims Agent or the Liquidation Trustee at least thirty (30) days prior to a Distribution Date.  If any Holder's

Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Liquidation Trustee is notified of such Holder's then-current address. The responsibility to provide the Claims Agent or the Liquidation Trustee with a current address of a Holder of Liquidation Trust Interests or Claims shall always be the responsibility of such Holder. Amounts in respect of undeliverable Distributions made by the Liquidation Trustee shall be held in trust on behalf of the Holder of the Liquidation Trust Interest or Claim to which they are payable by the Liquidation Trustee until the earlier of the date that such undeliverable Distributions are claimed by such Holder and 180 calendar days after the date the undeliverable Distributions were made. After such 180-day period, the Allowed Claims relating to the undeliverable Distributions shall be deemed disallowed and the Liquidation Trust may expunge such Allowed Claims from the Claims Register without further order of the Court.

## P.    Application of Distribution Record Date and Other Transfer Restrictions

At the close of business on the Distribution Record Date, the Claims Register for all Claims shall be closed, and there shall be no further changes in the record holders of any Claims. Except as provided herein, the Liquidation Trust and its respective Related Parties shall have no obligation to recognize any putative transfer of Claims occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record Holders stated on the Claims Register as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Plan to such Persons or the date of such Distributions. In addition, the Liquidation Trust and each of its Related Parties shall have no obligation to recognize any putative transfer of Claims occurring at any time prior to the Effective Date to which the Debtors did not expressly consent and shall be entitled instead to recognize and deal for all purposes hereunder with only the Holder of particular Claims as reflected on the Debtors' books and records for purposes of effecting Distributions of Liquidation Trust Interests. Nothing in this Article V.P is intended to or will impair or limit the rights of Holders at the record dates established from time to time regarding Liquidation Trust Interests to receive all Distributions in respect of such Liquidation Trust Interests when any Distributions are made.

## Q.    Withholding, Payment, and Reporting Requirements Regarding Distributions

All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The Liquidation Trust shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including, to the extent such information is not already available to the Liquidation Trust, requiring each Holder of a Liquidation Trust Interest or Claim to provide an executed current Form W-9, Form W-8, or similar tax form as a prerequisite to receiving a Distribution. Notwithstanding any other provision of the Plan, (a) each Holder of a Liquidation Trust Interest or an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Liquidation Trust in connection with such Distribution; and (b) no Distribution shall be made to or on behalf of such Holder

46

pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Liquidation Trust for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

## R.    Forfeiture of Distributions

If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Article V.I. fails to claim an undeliverable Distribution within the time limit set forth in Article V.O, or fails to complete and return to the Liquidation Trustee the appropriate Form W-8 or Form W-9 within 180 calendar days after a request for the completion and return of the appropriate form pursuant to Article V.Q (or such later time as approved by a Bankruptcy Court order), then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions under the Plan. Any such forfeited Distributions shall be deemed Available Cash for all purposes, notwithstanding any federal or state escheat laws to the contrary.

## S.    Defenses and Setoffs

On and after the Effective Date, the Liquidation Trust shall have all of the Debtors' and the Estates' rights under Bankruptcy Code section 558.  Nothing under the Plan shall affect the rights and defenses of the Debtors, the Estates, or the Liquidation Trust in respect of any Claim, including all rights in respect of legal and equitable objections, defenses, setoffs, or recoupment against such Claims. Accordingly, the Liquidation Trust may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors, the Estates, or the Liquidation Trust, as applicable, may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim or rights that may exist against such Holder.

## T.    Allocation of Distributions

All Distributions received under the Plan by Holders of Liquidation Trust Interests and Claims shall be deemed to be allocated first to the principal amount of such Claim, or the Claim to which the applicable Liquidation Trust Interest relates, as determined for United States federal income tax purposes, and then to accrued interest, if any, with respect to such Claim.

## U.    Joint Distributions

The Liquidation Trustee may, in his sole discretion, make Distributions jointly to any Holder of a Claim and any other Person that the Liquidation Trustee has determined to have an interest in such Claim.

## V.    Disallowance of Claims

Any Claims held by Entities from which property is recoverable under Section 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action

47

against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to any Debtor by that Entity have been turned over or paid to the Debtors or the Liquidation Trust.

## W.     Adjustment to Claims Without Objection

Any Claim that has been paid or satisfied, amended, or superseded may be marked as satisfied, adjusted or expunged on the Claims Register by the Claims Agent at the direction of the Liquidation Trust without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

## ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.     Assumption of Certain Executory Contracts and Unexpired Leases

#### 1.     Assumption of Agreements

On the Effective Date, the Debtors shall assume all executory contracts and unexpired leases that are listed on the Schedule of Assumed Agreements and shall assign such contracts and leases either to the Liquidation Trust or the Wind-Down Entities.

The Plan Proponents reserve the right to amend the Schedule of Assumed Agreements at any time prior to the Confirmation Hearing, in the Plan Proponents' reasonable discretion, (a) to delete any executory contract or unexpired lease and provide for its rejection under the Plan or otherwise, or (b) to add any executory contract or unexpired lease and provide for its assumption and assignment under the Plan.  The Plan Proponents will provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to those agreements affected by the amendment.

Unless otherwise specified on the Schedule of Assumed Agreements, each executory contract and unexpired lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is also listed on the Schedule of Assumed Agreements.

The Confirmation Order will constitute a Bankruptcy Court Order approving the assumption and assignment, on the Effective Date, of all executory contracts and unexpired leases identified on the Schedule of Assumed Agreements.

Notwithstanding anything contained in the Plan to the contrary, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the rights of the Debtor, as applicable, to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.

9737384

## 2. Cure Payments

Any amount that must be paid under Bankruptcy Code section 365(b)(1) to Cure a default under and compensate the non-debtor party to an executory contract or unexpired lease to be assumed under the Plan will be identified as the "Cure Payment" on the Schedule of Assumed Agreements.  Unless the parties mutually agree to a different date, such payment shall be made in Cash within thirty (30) days following the later of: (a) the Effective Date and (b) entry of a Final Order resolving any disputes regarding (i) the amount of any Cure Payment, (ii) the ability of the Wind-Down Entities to provide "adequate assurance of future performance" within the meaning of Bankruptcy Code section 365 with respect to a contract or lease to be assumed, to the extent required, or (iii) any other matter pertaining to assumption and assignment, including whether the contract at issue is executory or the lease at issue is unexpired.

Pending the Bankruptcy Court's ruling on any such dispute, the executory contract or unexpired lease at issue shall be deemed assumed by the Debtors and assigned to the Liquidation Trust or the Wind-Down Entities, unless otherwise agreed by the parties or ordered by the Bankruptcy Court.

## 3. Objections to Assumption/Cure Payment Amounts

Any Person that is a party to an executory contract or unexpired lease that will be assumed and assigned under the Plan and that objects to such assumption or assignment (including the proposed Cure Payment) must File with the Bankruptcy Court and serve on parties entitled to notice an objection and, if applicable, a supporting declaration stating the basis for its objection. This objection and, if applicable, declaration must be Filed and served on or before the deadline established by the Disclosure Statement Order.  Any Person that fails to timely File and serve such objection and, if applicable, a declaration shall be deemed to waive any and all objections to the proposed assumption and assignment (including the proposed Cure Payment) of its contract or lease.

In the absence of a timely objection by a Person that is a party to an executory contract or unexpired lease, the Confirmation Order shall constitute a conclusive determination regarding the amount of any Cure and compensation due under the applicable executory contract or unexpired lease, as well as a conclusive finding that the Liquidation Trust or the applicable Wind-Down Entity has demonstrated adequate assurance of future performance with respect to such executory contract or unexpired lease, to the extent required.

## 4. Resolution of Claims Relating to Assumed Contracts and Leases

Payment of the Cure Payment established under the Plan, by the Confirmation Order, or by any other order of the Bankruptcy Court, with respect to an assumed and assigned executory contract or unexpired lease, shall be deemed to satisfy, in full, any prepetition or post-petition arrearage or other Claim (including any Claim asserted in a Filed proof of Claim or listed on the Schedules) with respect to such contract or lease (irrespective of whether the Cure Payment is less than the amount set forth in such proof of claim or the Schedules).  Upon the tendering of the Cure Payment, any such Filed Claim or Claim listed on the Debtors' Schedules shall be disallowed with prejudice, without further order of the Bankruptcy Court or action by any Person.

9737384

**B.      Rejection of Executory Contracts and Unexpired Leases**

**1.      Rejected Agreements**

On the Effective Date all executory contracts and unexpired leases of the Debtors shall be rejected except for (a) executory contracts and unexpired leases that have been previously assumed or rejected by the Debtors, (b) executory contracts and unexpired leases that are set forth in the Schedule of Assumed Agreements, and (c) any agreement, obligation, security interest, transaction, or similar undertaking that the Debtors believe is not an executory contract or an unexpired lease, but that is later determined by the Bankruptcy Court, upon motion filed by the applicable counterparty, to be an executory contract or unexpired lease that is subject to assumption or rejection under Bankruptcy Code section 365.  For the avoidance of doubt, executory contracts and unexpired leases that have been previously assumed or assumed and assigned pursuant to an order of the Bankruptcy Court shall not be affected by the Plan.  The Confirmation Order will constitute a Bankruptcy Court Order approving the rejection, on the Effective Date, of the executory contracts and unexpired leases to be rejected under the Plan.

**2.      Rejection Claims Bar Date Rejection Damages**

Any Rejection Claim or other Claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed and served no later than the Rejection Claims Bar Date.  Any such Rejection Claims that are not timely Filed and served will be forever disallowed, barred, and unenforceable, and Persons holding such Claims will not receive and be barred from receiving any Distributions on account of such untimely Claims.  If one or more Rejection Claims are timely Filed pursuant to the Plan, the Liquidation Trust may object to any Rejection Claim on or prior to the Claims Objection Deadline.  For the avoidance of doubt, the Rejection Claims Bar Date established by the Plan does not alter any rejection claims bar date established by a prior order of the Bankruptcy Court with respect to any executory contract or unexpired leases that was previously rejected in these Chapter 11 Cases.

**C.      Insurance Policies**

For the avoidance of doubt, on the Effective Date, the Debtors' rights with respect to all Insurance Policies under which the Debtors may be a beneficiary or assignee (including all Insurance Policies that may have expired prior to the Petition Date, all Insurance Policies in existence on the Petition Date, all Insurance Policies entered into by the Debtors after the Petition Date, and all Insurance Policies under which the Debtors hold rights to make, amend, prosecute, and benefit from claims) shall revest in the Debtors as necessary for the Liquidation Trust to pursue and prosecute any Causes of Action, unless any such Insurance Policy is otherwise cancelled by the Liquidation Trustee in his or her discretion.  Notwithstanding any provision providing for the rejection of executory contracts, any Insurance Policy that is deemed to be an executory contract shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Liquidation Trustee, who shall retain the right to assume or reject any such executory contracts pursuant to and subject to the provisions of section 365 of the Bankruptcy Code following the Effective Date.

## ARTICLE VII.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.    Conditions Precedent to the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing:

(a)    The Bankruptcy Court shall have entered the Confirmation Order that approves and confirms the Plan, approves the substantive consolidation of the Debtors and the Contributing Investor Settlement;

(b)    The Confirmation Order shall not be subject to any stay;

(c)    Other than the approvals and consents that vest in the Wind-Down Entities under the Plan, all governmental and material third-party approvals and consents necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained and be in full force and effect;

(d)    All of the Debtors' documents and records, including, without limitation, all electronic records, shall be made available to the Liquidation Trustee and his or her professionals;

(e)    The Liquidation Trust and the Wind-Down Entities shall have been formed;

(f)    All actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan are affected or executed and delivered, as applicable; and

(g)    The Professional Fee Reserve is funded pursuant to Article III.A.2 of the Plan.

**B.    Waiver of Conditions of the Effective Date**

The conditions to the Effective Date set forth in clause (d) of Article VII.A of the Plan may be waived in writing by the Plan Proponents, in the Plan Proponents' reasonable discretion, at any time without further order.

**C.    Notice of the Effective Date**

Promptly after the occurrence of the Effective Date, the Liquidation Trust or its agents shall mail or cause to be mailed to all Creditors a notice that informs such Creditors of (a) entry of the Confirmation Order and the resulting confirmation of the Plan; (b) the occurrence of the Effective Date; (c) the assumption, assignment, and rejection of executory contracts and unexpired leases pursuant to the Plan, as well as the deadline for the filing of resulting Rejection Claims; (d) the deadline established under the Plan for the filing of Administrative Expense Claims; and (e) such other matters as the Liquidation Trustee finds appropriate.

## ARTICLE VIII.
## RELEASE, INJUNCTIVE AND RELATED PROVISIONS

**A.    Releases and Related Matters**

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be deemed to have forever released, waived, and discharged each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever, whether known or unknown, whether foreseen or unforeseen, whether liquidated or unliquidated, whether fixed or contingent, whether matured or unmatured, existing or hereafter arising, at law, in equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the conduct of the Debtors' business, the Chapter 11 Cases, or the Plan, except for acts or omissions that are determined in a Final Order to have constituted fraud, gross negligence or willful misconduct.

Entry of the Confirmation Order shall constitute (a) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Article VIII.A; and (b) the Bankruptcy Court's findings that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, (2) in the best interests of the Debtors, the Estates, and any Holders of Claims that are Releasing Parties, (3) fair, equitable, and reasonable, (4) given and made after due notice and opportunity for hearing, and (5) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties.

Notwithstanding any provision herein to the contrary or an abstention from voting on the Plan, no provision of the Plan, or any order confirming the Plan, (a) releases any non-debtor Person from any Cause of Action of the SEC; or (b) enjoins, limits, impairs, or delays the SEC from commencing or continuing any Causes of Action, proceedings, or investigations against any non-debtor Person in any forum.

**B.    Exculpation and Limitation of Liability**

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, none of the Exculpated Parties shall have or incur any liability to any Person, including to any Holder of a Claim or an Equity Interest, for any postpetition act or omission in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan; *provided,* that the exculpation provisions of this Article VIII.B shall not apply to acts or omissions constituting fraud, gross negligence, or willful misconduct by such Exculpated Party as determined by a Final Order.  For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be

9737384

**deemed not to constitute fraud, gross negligence or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation, and in all respects, the Exculpated Parties shall be entitled to rely on the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Debtors, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan.  The Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by this Article VIII.B of the Plan.**

## C.      Injunctive Provisions

Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan does not operate to discharge the Debtors; *provided, however*, that, upon confirmation of the Plan and the occurrence of the Effective Date, the Holders of Claims and Equity Interests may not seek payment or recourse against or otherwise be entitled to any Distribution from the Debtors, the Debtors' Estates, the Wind-Down Entities, or the Liquidation Trust except as expressly provided in the Plan. Further, the following terms apply except as otherwise expressly provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan:

1.      Except as otherwise provided in the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors, the Debtors' Estates, the Wind-Down Entities, the Liquidation Trust, the Liquidation Trustee, their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or satisfied or to be released or satisfied under the Plan or the Confirmation Order.

2.      Except as otherwise expressly provided for in the Plan or in obligations issued under the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Wind-Down Entities, the Liquidation Trust, the Liquidation Trustee, or their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, to the extent that (a) such Claims or Equity Interests have been released or satisfied under this Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed under this Plan or the Confirmation Order.

3.      The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests against the Debtors or any of their assets or properties solely to the extent that (a) such Claims or Equity Interests have been released or satisfied under this Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions, or assertions of Liens relate to property that will be distributed under this Plan or the Confirmation Order.  On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.

9737384

4.     Upon the entry of the Confirmation Order, all Holders of Claims and Equity Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**5.     As of the Effective Date, to the extent not enjoined by the other provisions of this Article VIII.C, all Persons and Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtors, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Debtors' Estates, the Wind-Down Entities, the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets with respect to any such Claim or Equity Interest or taking any act to recover such Claim or Equity Interest outside of the claims allowance procedure discussed in this Plan and the Bankruptcy Code and Bankruptcy Rules; (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Debtors' respective property, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets; (c) creating, perfecting, or enforcing any Lien, Claim, or encumbrance of any kind against the Debtors, the Debtors' respective property, the Debtors' Estates, the Wind-Down Entities (including following post-Effective Date sales or other transfers of Wind-Down Entity Real Estate Assets), the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trustee Assets; and (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Debtors' respective property, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets, unless such Person or Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Person or Entity asserts, has, or intends to preserve, any right of setoff pursuant to applicable law or otherwise.**

6.     All injunctive provisions of this Article VIII.C shall extend for the benefit of the Liquidation Trustee, the Wind-Down Entities, and any successors of the Debtors, and to any property and interests in property subject to this Plan.

## ARTICLE IX.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases until the Chapter 11 Cases are closed, including jurisdiction to issue any other Order necessary to administer the Estates or the Liquidation Trust and enforce the terms of this Plan, and/or the Liquidation Trust Agreement pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To determine the type, allowance, and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Liquidation Trustee or any other party-in-interest entitled to proceed in that manner;

(b)     Except as otherwise limited herein, to recover all Assets of the Debtors and property

54

9737384

of the Debtors' Estates, wherever located;

(c)     To hear and determine any issue arising under this Plan; *provided, however*, any action, controversy, dispute, claim, or question arising out of or relating to the right of any party to enforce, contest, and/or litigate the existence, primacy, and/or scope of available coverage and/or any defenses to coverage under the Insurance Policies shall be referred to and resolved solely in accordance with the terms and conditions of the Insurance Policies and applicable non-bankruptcy law, including, but not limited to, any choice of law, forum, or jurisdiction provision therein;

(d)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(e)     To hear any other matter not inconsistent with the Bankruptcy Code;

(f)     To enter a Final Decree closing any of the Chapter 11 Cases;

(g)     To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(h)     To decide or resolve any motions, adversary proceedings, contested or litigated matters, including the Retained Cause of Actions and the Contributed Claims, and any other matters and grant or deny any applications involving the Debtors that may be pending on or instituted by the Liquidation Trustee after the Effective Date;

(i)     To issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided herein;

(j)     To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

(k)     To enforce, interpret, and determine any disputes arising in connection with any stipulations, Orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

(l)     To hear and adjudicate any adversary proceeding or other proceeding which may be commenced against any Person or Entity arising from, related to, or in connection with any Avoidance Action and other claims against third parties relating to the facts and circumstances surrounding the same, including without limitation all Liquidation Trust Actions and Retained Causes of Action; *provided, however*, that nothing in this Plan or the Confirmation Order shall vest the Bankruptcy Court with exclusive jurisdiction over any claims identified herein;

(m)     To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof; and

(n)     To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the applicable Claims Bar Date, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the confirmation of the Plan for the purpose of determining whether a Claim is discharged hereunder, or for any other purpose; and

(o)     Notwithstanding the closure of the Chapter 11 Cases, to adjudicate any request by Person or Entity seeking to sue any party appointed by the Bankruptcy Court in these Chapter 11 Cases, including but not limited to the Post-Petition Board and the CRO, all of whom were appointed pursuant to the Bankruptcy Court's Governance Settlement Order, for leave to pursue such suit.

## ARTICLE X.
## MISCELLANEOUS PROVISIONS

### A.     Post-Effective-Date Reporting

Beginning the first quarter-end following the Effective Date and continuing on each quarter-end thereafter until the Chapter 11 Cases are closed, within thirty (30) calendar days after the end of such period, the Liquidation Trust shall File quarterly reports with the Bankruptcy Court. Each quarterly report shall contain a cash flow statement which shall show Distributions by Class during the prior quarter, an unaudited balance sheet, the terms of any settlement of an individual Claim in an amount greater than $100,000, the terms of any litigation settlement where the Cause of Action or the Liquidation Trust Action was greater than $100,000 or the settlement is for more than $100,000, the terms of any sale of Estate Assets where the proceeds of such sale are $100,000 or greater, and such other information as the Liquidation Trust determines is material.

### B.     Dissolution of the Committee

On the Effective Date, the Committee shall be deemed dissolved, the retention and employment of the Committee's Professionals shall be deemed terminated, and the members of the Committee shall be deemed released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, other than for purposes of filing and/or objecting to final Fee Applications filed in the Chapter 11 Cases, except as set forth herein or in the Liquidation Trust Agreement.

### C.     Modification of the Plan

In the Plan Proponents' reasonable discretion, the Plan Proponents may alter, amend, or modify the Plan under Bankruptcy Code section 1127(a) at any time at or prior to the conclusion of the Confirmation Hearing.  All alterations, amendments, or modifications to the Plan must comply with Bankruptcy Code section 1127.  The Plan Proponents shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or order of the Bankruptcy Court.  A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration,

9737384

amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

After entry of the Confirmation Order and prior to substantial consummation (as defined in Bankruptcy Code section 1101(2)) of the Plan, the Plan Proponents or the Liquidation Trust, as applicable, may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan.  Such proceedings must comply with Bankruptcy Code section 1127.  To the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or an order of the Bankruptcy Court.  A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

## D.    Exemption from Transfer Taxes

Pursuant to Bankruptcy Code section 1146, the vesting of the Liquidation Trust Assets in the Liquidation Trust, the vesting of Wind-Down Entity Real Estate Assets in the Wind-Down Entities, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, Lien, pledge, or other security interest, or the making or assignment of any lease or sublease, or making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

## E.    Transactions on Business Days

If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

## F.    Good Faith

Confirmation of the Plan shall constitute a conclusive determination that: (a) the Plan, and all the transactions and settlements contemplated thereby, have been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules; and (b) the solicitation of acceptances or rejections of the Plan has been in good faith and in compliance with all applicable provisions of the Bankruptcy Code, and the Bankruptcy Rules, and, in each case, that the Plan Proponents and their Professionals have acted in good faith in connection therewith.

## G.    Revocation or Withdrawal, or Non-Consummation

The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Hearing and to File subsequent plans.  If the Plan Proponents revoke or withdraw the Plan prior to the Confirmation Hearing, or if the Effective Date does not occur, then (a) the

9737384

Plan shall be null and void in all respects; and (b) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (x) constitute or be deemed to constitute a waiver or release of any Claims against, or any Equity Interests in, any Debtor, or any Causes of Action by or against any Debtor or any other Person, (y) prejudice in any manner the rights of any Debtor or any other Person in any further proceedings involving a Debtor, or (z) constitute an admission of any sort by any Debtor or any other Person.

## H.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), (a) the laws of the State of New Jersey shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation or formation of each Debtor shall govern corporate or limited liability company governance matters with respect to such Debtor; in each case without giving effect to the principles of conflicts of law thereof. Any applicable nonbankruptcy law that would prohibit, limit, or otherwise restrict implementation of the Plan based on (a) the commencement of the Chapter 11 Cases, (b) the appointment of the Liquidation Trustee or the Wind-Down CEO, (c) the wind down of the Debtors, (d) the liquidation of some or all of the Liquidation Trust Assets, the Wind-Down Entity Real Estate Assets or (e) any other act or action to be done pursuant to or contemplated by the Plan is superseded and rendered inoperative by the Plan and federal bankruptcy law.

## I.    Notices

Following the Effective Date, all pleadings and notices Filed in the Chapter 11 Cases shall be served solely on (a) the Liquidation Trust and its counsel, (b) the U.S. Trustee, (c) any Person whose rights are affected by the applicable pleading or notice, and (d) any Person or Entity Filing a specific request for notices and papers on and after the Effective Date.

## J.    Closing of Certain Chapter 11 Cases

On the Effective Date, the Chapter 11 Cases for all Debtors other than NRIA will be deemed closed and no further fees in respect of such closed cases will thereafter accrue or be payable to any Person or Entity.  As soon as practicable after the Effective Date, the Liquidation Trust shall submit a separate order to the Bankruptcy Court under certification of counsel closing the Chapter 11 Cases for all Debtors other than NRIA.  The Liquidation Trust may at any point File a motion to close the Chapter 11 Cases for NRIA.

## K.    Final Decree

Upon the Liquidation Trustee's determination that all Claims have been Allowed, disallowed, expunged, or withdrawn and that all Liquidation Trust Assets have been liquidated, abandoned, or otherwise administered, the Liquidation Trust shall move for the entry of the Final Decree with respect to NRIA.  On entry of the Final Decree, the Liquidation Trustee, the Liquidation Trust Advisory Board, the Wind-Down CEO, and their respective Related Parties, in each case to the extent not previously discharged by the Bankruptcy Court, shall be deemed discharged and have no further duties or obligations to any Person.

9737384

**L.      Additional Documents**

On or before the Effective Date, the Plan Proponents may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors (prior to the Effective Date), the Wind-Down Entities (after the Effective Date), and the Liquidation Trust, as applicable, and all Holders receiving Distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other acts as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**M.      Conflicts with the Plan**

In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, any other order entered in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence; *provided, however*, that the Confirmation Order shall control and take precedence in the event of any inconsistency between the Confirmation Order, any provision of the Plan, and any of the foregoing documents.

## ARTICLE XI.
## REQUEST FOR CONFIRMATION AND RECOMMENDATION

**A.      Request For Confirmation**

The Plan Proponents request confirmation of the Plan in accordance with Bankruptcy Code section 1129.

**B.      Recommendation**

The Plan Proponents believe that confirmation and implementation of the Plan is the best alternative under the circumstances and urge all Impaired Creditors entitled to vote to vote in favor of and support confirmation of the Plan.

9737384

Dated:  July 25, 2023

<div style="margin-left:auto">

**NATIONAL REALTY INVESTMENT
ADVISORS, LLC, *ET AL.***

By: /s/ John Fioretti
Name: John Fioretti
Title: Chief Restructuring Officer

-and-

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By: /s/ Caroline Spiteri
Name: Caroline Spiteri
Title: Chair, Official Committee of
Unsecured Creditors

</div>

9737384