**SILLS CUMMIS & GROSS P.C.**
S. Jason Teele, Esq.
Gregory A. Kopacz, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 643-7000

*Counsel to the Debtors and Debtors-in-Possession*

**ICE MILLER LLP**
Louis T. DeLucia, Esq.
Alyson M. Fiedler, Esq.
1500 Broadway, 29th Floor
New York, New York 10036
Telephone: (212) 835-6312

Daniel Polatsek, Esq.
Michael W. Ott, Esq.
200 W. Madison St., Suite 3500
Chicago, Illinois 60606
Telephone: (312) 726-6245

*Counsel to the Official Committee of Unsecured Creditors*

**Order Filed on August 10, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT<br>ADVISORS, LLC, *et al.*[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 22-14539 (JKS)<br><br>(Jointly Administered)<br><br>**Hearing Date: August 1, 2023 at 10:00 a.m.** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF NATIONAL
REALTY INVESTMENT ADVISORS, LLC AND ITS AFFILIATED DEBTORS**

The relief set forth on the following pages numbered two (2) through fifty (50) is hereby

**ORDERED**.

**DATED: August 10, 2023**

_____
Honorable John K. Sherwood
United States Bankruptcy Court

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

9775935

Page:        2
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

Upon consideration of the *First Amended Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and its Affiliated Debtors* [Docket No. 3256] (annexed hereto as **Exhibit A**, and including all exhibits thereto, and as amended, supplemented, or modified from time to time pursuant to the terms thereof, the "**Plan**"[2]) proposed by National Realty Investment Advisors, LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") and the official committee of unsecured creditors (the "**Committee**," and together with the Debtors, the "**Plan Proponents**") in the above-captioned jointly administered chapter 11 cases (the "**Cases**"); and the Plan Proponents having filed the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC, et al.* [Docket No. 2559] (the "**Disclosure Statement**"); and this Bankruptcy Court having approved the Disclosure Statement as containing adequate information by order dated May 18, 2023 [Docket No. 2556] (the "**Disclosure Statement Order**"); and the Debtors having filed the Plan Supplement on June 29, 2023 [Docket No. 2732]; and upon the affidavits of service and publication filed reflecting compliance with the notice and solicitation requirements of the Disclosure Statement Order [Docket Nos. 2564, 2615, 2631, 2705, 2706, 2707, 2746 and 2774] (the "**Notice Affidavits**"); and upon the *Notice of Hearing to Consider Confirmation of the Plan and the Objection Deadline Related Thereto* [Docket No. 2616] (the "**Confirmation Hearing Notice**"); and upon the *Amended Declaration of Kim D. Steverson of Omni Agent*

---

[2]     Capitalized terms used but not otherwise defined in this Confirmation Order have the meanings ascribed to those Defined Terms in the Plan. Any term used in this Confirmation Order that is not defined in the Plan or in this Confirmation Order, but that is defined in title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") or the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. The rules of interpretation and construction set forth in Article I of the Plan shall apply to this Confirmation Order. Among other things, those rules of interpretation and construction provide that the word "including" shall be deemed to mean - including, without limitation."

9775935

Page:       3
Debtors:    National Realty Investment Advisors LLC, *et al.*
Case No.:   22-14539
Caption:    Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
            Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
            its Affiliated Debtors

*Solutions, Inc. Regarding Solicitation of Votes and Tabulation of Ballots on the Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors and its Affiliated Debtors* [Docket No. 3252], filed with the Bankruptcy Court on July 25, 2023 (the "**Voting Certification**"); and upon the *Declaration of John Fioretti in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and its Affiliated Debtors* [Docket No. 3257] (the "**Confirmation Declaration**"); and upon the *Plan Proponents' Memorandum of Law (I) in Support of Confirmation of First Amended Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and its Affiliated Debtors; (II) in Response to Filed Confirmation Objections; and (III) in Opposition to 416 69St Development LLC, 6903 Adams St Development LLC, Global PM Support LLC, and North Hudson Development LLC's Cross Motion for Claim Reclassification* [Docket No. 3259], filed with the Bankruptcy Court on July 25, 2023 (the "**Confirmation Memorandum**"); and any objections to the Plan having been resolved or overruled by the Bankruptcy Court pursuant to this Confirmation Order; and a hearing having been held on August 1, 2023 (the "**Confirmation Hearing**"); and upon the evidence adduced and proffered and the arguments of counsel made at the Confirmation Hearing; and the Bankruptcy Court having reviewed all documents in connection with Confirmation and having heard all parties desiring to be heard; and upon the complete record of these Cases; and after due deliberation and consideration of all of the foregoing; and sufficient cause appearing therefor; the Bankruptcy Court hereby makes the following:

9775935

Page:       4
Debtors:    National Realty Investment Advisors LLC, *et al.*
Case No.:   22-14539
Caption:    Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
            Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
            its Affiliated Debtors

## FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    <u>Findings of Fact and Conclusions of Law</u>. The findings and conclusions set forth

herein, together with the findings of fact and conclusions of law set forth in the record of the

Confirmation Hearing, constitute this Bankruptcy Court's findings of fact and conclusions of law

pursuant to Federal Rule of Civil Procedure 52, made applicable to these proceedings pursuant to

Bankruptcy Rules 7052 and 9014. To the extent that any of the following findings of fact

constitute conclusions of law, they are adopted as such. To the extent that any of the following

conclusions of law constitute findings of fact; they are adopted as such.

B.    <u>Jurisdiction and Venue</u>. The Bankruptcy Court has jurisdiction over the Debtors'

Cases pursuant to 28 U.S.C. §§ 157(a) and 1334. Venue of these proceedings and the Cases is

proper in this district and in this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

Confirmation of the Plan, approval of the compromises and settlements incorporated into the

Plan, and authorization of the acts necessary or appropriate to implement the Plan are each core

bankruptcy proceedings pursuant to 28 U.S.C. § 157(b)(2). The Bankruptcy Court has exclusive

jurisdiction to determine whether the Plan complies with the applicable provisions of the

Bankruptcy Code and should be confirmed, and the Bankruptcy Court has the constitutional

power and authority to enter a final order with respect thereto.

C.    <u>Chapter 11 Petitions</u>. On June 7, 2022, each of the Debtors commenced a

voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are proper debtors under

Bankruptcy Code section 109 and proper proponents of the Plan under Bankruptcy Code section

1121(a). The Debtors continue to operate their business and manage their property as debtors in

9775935

Page:       5
Debtors:    National Realty Investment Advisors LLC, *et al.*
Case No.:   22-14539
Caption:    Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
            Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
            its Affiliated Debtors

possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has

been appointed in these Cases.

D.    <u>Judicial Notice</u>. The Bankruptcy Court takes judicial notice of the docket in these

Cases maintained by the clerk of the Bankruptcy Court or its duly appointed agent, including all

pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments

made, proffered, submitted, or adduced at the hearings held before the Bankruptcy Court during

these Cases, including the hearing to consider the adequacy of the Disclosure Statement and the

Confirmation Hearing.

E.    <u>Plan Supplement</u>. The Plan Supplement complies with the terms of the Plan, and

the filing and notice of the Plan Supplement was appropriate and complied with the requirements

of the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules, and no

other or further notice is or shall be required. The Plan Proponents are authorized to modify the

Plan Supplement documents following entry of this Confirmation Order in a manner consistent

with the Plan, this Confirmation Order, or applicable law.

F.    <u>Notice of Transmittal, Mailing, and Publication of Materials</u>. As is evidenced by

the Voting Certification and the Notice Affidavits, the transmittal and service of the Plan, the

Disclosure Statement, Ballots, Confirmation Hearing Notice, and Notice of Non-Voting Status

(as defined in the Disclosure Statement Order) were adequate and sufficient under the

circumstances, and all parties required to be given notice of the Confirmation Hearing (including

the deadline for filing and serving objections to Confirmation of the Plan) were given due,

proper, timely, and adequate notice in accordance with the Disclosure Statement Order and in

5

9775935

Page:        6
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties each had an opportunity to appear and be heard with respect thereto. No other or further notice is required. The publication of the Confirmation Hearing Notice as set forth in the Notice Affidavits complied with the Disclosure Statement Order.

G.       Voting. The procedures by which the Ballots for acceptance or rejection of the Plan and for making related elections were distributed and tabulated were fair, properly conducted, and complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law, the Plan, and the Disclosure Statement Order.

H.       Bankruptcy Rule 3016. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Plan Proponents as the plan proponents. The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b). The Plan and Disclosure Statement describe in specific and conspicuous language all acts and actions to be enjoined and identify the Persons that would be subject to injunctions. Bankruptcy Rule 3016(c) is therefore satisfied.

I.       Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). As set forth below, the Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code section 1129(a)(1).

J.       Proper Classification (11 U.S.C. §§ 1122, 1123(2)(1)). The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code. In addition to Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims, which need

6

Page:        7
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

not be classified, the Plan designates eight (8) different Classes of Claims and Equity Interests.

The Claims or Equity Interests placed in each Class are substantially similar to other Claims or

Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal

reasons exist for separately classifying the various Classes of Claims and Equity Interests created

under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and

Equity Interests. Thus, the Plan satisfies Bankruptcy Code sections 1122 and 1123(a)(1).

K.    Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Article III of the

Plan specifies that Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), and Class

4 (Non-Investor General Unsecured Claims) are Unimpaired under the Plan. Thus, the

requirement of Bankruptcy Code section 1123(a)(2) is satisfied.

L.    Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Article

III of the Plan designates Class 3 (Third Party Mortgage Claims), Class 5 (Investor Claims),

Class 6 (JVA Claims), Class 7 (Subordinated Claims), and Class 8 (Equity Interests) as Impaired

and specifies the treatment of Claims and Equity Interests in such Classes. Thus, the requirement

of Bankruptcy Code section 1123(a)(3) is satisfied.

M.    No Discrimination (11 U.S.C. § 1123(2)(4)). The Plan provides for the same

treatment for each Claim or Equity Interest in each respective Class unless the Holder of a

particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or

Equity Interest. Thus, the requirement of Bankruptcy Code section 1123(a)(4) is satisfied.

9775935

Page:          8
Debtors:       National Realty Investment Advisors LLC, *et al.*
Case No.:      22-14539
Caption:       Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
               Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
               its Affiliated Debtors

N.      Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan and the additional

documents included in the Plan Supplement provide adequate and proper means for the Plan's

implementation. Thus, the requirements of Bankruptcy Code section 1123(a)(5) are satisfied.

O.      Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). The Plan does not

provide for the issuance of any non-voting equity securities of any corporation, and each of the

Debtors will eventually be dissolved under the Plan, other than NRIA. Therefore, the

requirement of Bankruptcy Code section 1123(a)(6) is satisfied.

P.      Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)). Article IV.C of the

Plan provides for the creation of the Wind-Down Entities and for the appointment of the Wind-

Down CEO, with the authority detailed in Article IV.C of the Plan and in the Wind-Down

Operating Agreements. The initial Wind-Down CEO was selected by the Debtors and approved

by the Committee, with his compensation terms disclosed in the Plan Supplement, and any

successor Wind-Down CEO will be appointed pursuant to Article IV.C.7 of the Plan. Article

IV.D. of the Plan provides for the creation of the Liquidation Trust and for the appointment of

the Liquidation Trustee and the Liquidation Trust Advisory Board to serve with respect to the

Liquidation Trust, including with the authority detailed in Article IV.D.5 of the Plan and in the

Liquidation Trust Agreement. The initial Liquidation Trustee was selected by the Committee and

approved by the Debtors, with compensation terms disclosed in the Plan Supplement, and any

successor Liquidation Trustee will be appointed pursuant to the Liquidation Trust Agreement.

Two of the members of the Liquidation Trust Advisory Board were selected by the Committee

and the third member was selected by the Debtors, all with compensation terms disclosed in the

9775935

Page:       9
Debtors:    National Realty Investment Advisors LLC, *et al.*
Case No.:   22-14539
Caption:    Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
            Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
            its Affiliated Debtors

Plan Supplement, and any successor Liquidation Trust Advisory Board member will be appointed pursuant to the Liquidation Trust Agreement.  All these selection, disclosure, and replacement mechanisms are consistent with the interests of the Creditors and Holders of Equity Interests and with public policy. Therefore, Bankruptcy Code section 1123(a)(7) is satisfied.

Q.      Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's other provisions are appropriate, in the best interests of the Debtors and their Estates, and consistent with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules:

i.      Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)). The Debtors have exercised reasonable business judgment in determining to assume and assign or to reject, as the case may be, certain executory contracts and unexpired leases under the terms of the Plan and this Confirmation Order, and such assumptions and assignments, or such rejections, as applicable, are justified and appropriate in these Cases.

ii.      Compromises and Settlements Under and in Connection with the Plan (11 U.S.C. § 1123(b)(3) & (b)(6)). All of the settlements and compromises pursuant to and in connection with the Plan, including the Contributing Investor Settlement, comply with the requirements of Bankruptcy Code section 1123(b) and Bankruptcy Rule 9019.[3] In particular, the Bankruptcy Court finds that the Plan's comprehensive compromises and settlements, including the Contributing Investor Settlement, are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable.

---

[3]     For the avoidance of doubt, all references to Bankruptcy Rule 9019 contained in the Plan or this Confirmation Order refer only to the settlements and compromises embodied in the Plan.

9775935

Page:       10
Debtors:    National Realty Investment Advisors LLC, *et al.*
Case No.:   22-14539
Caption:    Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
            Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
            its Affiliated Debtors

     iii.    <u>Releases, Exculpations, and Injunctions (11 U.S.C. § 1123(b))</u>. The releases, exculpations, and injunctions provided in the Plan are (i) within the jurisdiction and power of the Bankruptcy Court under 28 U.S.C. § 1334; (ii) integral elements of the transactions incorporated into the Plan and inextricably bound with the other provisions of the Plan; (iii) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims; (iv) in the best interests of the Debtors and the Estates; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; (vii) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties; and (viii) otherwise consistent with Bankruptcy Code sections 105, 524, 1123, 1129, 1141, and other applicable provisions of the Bankruptcy Code and other applicable law.

     R.    <u>Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. Pursuant to Bankruptcy Code section 1129(a)(2), the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, including Bankruptcy Code sections 1122, 1123, 1124, 1125, and 1126, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, the Plan Supplement, and all other matters considered by the Bankruptcy Court in connection with the Cases.

     S.    <u>Plan Proposed in Good Faith and Not by Means Forbidden by Law (11 U.S.C. § 1129(a)(3))</u>. The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying Bankruptcy Code section 1129(a)(3). In determining that the

Page:           11
Debtors:        National Realty Investment Advisors LLC, *et al.*
Case No.:       22-14539
Caption:        Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
                Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
                its Affiliated Debtors

Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the
circumstances surrounding the filing of the Cases, the Plan itself, and the process leading to its
formulation. The Plan is the result of extensive, good faith, arms'-length negotiations among the
Debtors, the Committee, and other key stakeholders, and is supported by the Creditors and other
parties in interest in the Cases. The Plan promotes the objectives and purposes of the Bankruptcy
Code by orderly administering the property of the Debtors and the Estates, resolving myriad
disputed intercompany and intercreditor Claims, Liens, and Causes of Action that otherwise
could take years to resolve—which would delay and undoubtedly reduce the Distributions that
ultimately would be available for all Creditors—and otherwise enabling equality of distribution
and the speedy yet efficient disposition of assets.

          T.      Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). The
procedures set forth in the Plan for the Bankruptcy Court's approval of the fees, costs, and
expenses to be paid in connection with the Cases, or in connection with the Plan and incident to
the Cases, satisfy the objectives of, and comply with, Bankruptcy Code section 1129(a)(4).

          U.      Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). Article IV.B.1 of the
Plan provides that, on the Effective Date, each of the Debtors' existing directors, officers, and
managers (including the members of the Post-Petition Board) shall be terminated automatically.
The initial Wind-Down CEO, Liquidation Trustee, and Liquidation Trust Advisory Board were
selected by representatives of the key stakeholders, and their identities and compensation terms
are set forth in the Plan or the Plan Supplement; the appointment to such offices of such parties is

9775935

Page:          12
Debtors:       National Realty Investment Advisors LLC, *et al.*
Case No.:      22-14539
Caption:       Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
               Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
               its Affiliated Debtors

consistent with the interests of the Debtors' creditors and interest holders and with public policy.

Thus, the Plan satisfies Bankruptcy Code section 1129(a)(5).

V.      No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for any rate

change that requires regulatory approval. Bankruptcy Code section 1129(a)(6) is thus not

applicable.

W.      Best Interests of Holders of Claims and Equity Interests (11 U.S.C. § 1129(a)(7)).

The "best interests" test under Bankruptcy Code section 1129(a)(7) is satisfied as to all Impaired

Classes under the Plan, as each Holder of a Claim or Equity Interest in such Impaired Classes

either has voted to accept the Plan or will receive or retain property of a value, as of the Effective

Date of the Plan, that is not less than the amount that such Holder would receive or retain if the

Debtors were liquidated under chapter 7 of the Bankruptcy Code. More specifically, the

liquidation analysis attached as Exhibit C to the Disclosure Statement, the Confirmation

Declaration, and all other applicable evidence proffered or adduced at the Confirmation Hearing

(i) are reasonable, persuasive, and credible; (ii) are based on reasonable and sound

methodologies and assumptions; (iii) provide a reasonable estimate of the liquidation values of

the Debtors upon hypothetical conversion to cases under chapter 7 of the Bankruptcy Code; and

(iv) establish that each Holder of a Claim or Equity Interest in the Impaired Classes will receive

or retain, on account of such Claim or Equity Interest, property under the Plan of a value, as of

the Effective Date of the Plan, that is not less than the amount that such Holder would receive or

retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

12

Page:        13
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

X.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). The Holders of Claims in Class 1, Class 2 and Class 4 are left Unimpaired under the Plan. The Holders of Claims in Class 3 and Class 5 have voted to accept the Plan in accordance with the Bankruptcy Code, thereby satisfying section 1129(a)(8) as to those Classes. However, Class 6 (JVA Claims), Class 7 (Subordinated Claims) and Class 8 (Equity Interests) are deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g). Accordingly, Bankruptcy Code section 1129(a)(8) has not been and cannot be satisfied as to those Classes. The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of Bankruptcy Code section 1129(b), as set forth below.

Y.      Treatment of Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims pursuant to Article III of the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(9).

Z.      Acceptance by Impaired Class (11 U.S.C. § 1129(2)(10)). Class 3 and Class 5 are each an Impaired Class of Claims that voted to accept the Plan, determined without including any acceptance of the Plan by any Insider. Therefore, Bankruptcy Code section 1129(a)(10) is satisfied.

AA.     Feasibility (11 U.S.C. § 1129(a)(11)). The evidence provided in support of Confirmation establishes that the assets to be vested in the Wind-Down Entities and the Liquidation Trust will be sufficient to enable the Wind-Down CEO and Liquidation Trustee to perform the duties and functions outlined under the Plan and to satisfy post-Effective-Date

13

Page:       14
Debtors:    National Realty Investment Advisors LLC, *et al.*
Case No.:   22-14539
Caption:    Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
            Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
            its Affiliated Debtors

obligations. Furthermore, reasonable, persuasive, and credible evidence proffered or adduced at

or prior to the Confirmation Hearing establishes that the Plan is feasible. Finally, given that the

Plan provides for the eventual dissolution of each of the Debtors, except NRIA, and

contemplates the liquidation or other final administration of all the Debtors' property,

confirmation of the Plan is not likely to be followed by the need for further financial

reorganization. Thus, Bankruptcy Code section 1129(a)(11) is satisfied.

        BB.    Payment of Fees (11 U.S.C. § 1129(a)(12)). The Plan requires that all fees

payable under 28 U.S.C. § 1930 have been paid or will be paid pursuant to Article III.A.5 of the

Plan, thus satisfying the requirement of Bankruptcy Code section 1129(a)(12).

        CC.    Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16)). Bankruptcy Code

sections 1129(a)(13)-(16) are inapplicable as the Debtors (i) do not provide "retiree benefits" as

defined in Bankruptcy Code section 1114 (§ 1129(3)(13)), (ii) have no domestic support

obligations (§ 1129(a)(14)), (iii) are not individuals (§ 1129(a)(15)), and (iv) are not nonprofit

corporations (§ 1129(a)(16)).

        DD.    No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C. § 1129(b)).

The classification and treatment of Claims and Equity Interests in Classes 6, 7 and 8, which are

deemed to have rejected the Plan, is proper pursuant to Bankruptcy Code section 1122, does not

discriminate unfairly, and is fair and equitable pursuant to Bankruptcy Code section 1129(b)(1).

There is no Class of Claims or Equity Interests junior to the Holders of Claims or Equity

Interests in Class 6, Class 7 or Class 8 that will receive or retain property under the Plan on

account of their Claims or Equity Interests. Accordingly, the Plan does not violate the absolute

9775935

Page:          15
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
its Affiliated Debtors

priority rule, does not discriminate unfairly, and is fair and equitable with respect to each Class

that is deemed to have rejected the Plan. Thus, the Plan satisfies the requirements of Bankruptcy

Code section 1129(b) with respect to Class 6, Class 7 and Class 8.

EE.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only chapter 11 plan

proposed in the Cases, and Bankruptcy Code section 1129(e) is therefore satisfied.

FF.    <u>Principal Purpose (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is

neither the avoidance of taxes nor the avoidance of the application of section 5 of the Securities

Act of 1933, and no governmental unit has objected to the Confirmation of the Plan on any such

grounds.  Accordingly, Bankruptcy Code section 1129(d) is inapplicable.

GG.    <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan

Proponents have met their burden of proving the elements of Bankruptcy Code sections 1129(a)

and (b) by a preponderance of the evidence, the Plan satisfies all the requirements for

Confirmation set forth in Bankruptcy Code section 1129, and the Plan should be confirmed.

HH.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. The Plan Proponents and their

Related Parties have acted in good faith within the meaning of Bankruptcy Code section 1125(e)

and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules,

and Disclosure Statement Order in connection with all of their respective activities relating to the

solicitation of acceptances of the Plan and their participation in the activities described in

Bankruptcy Code section 1125, and they are entitled to the protections afforded by Bankruptcy

Code section 1125(e) and the injunction and exculpation provisions set forth in Article VIII of

the Plan.

9775935

Page:        16
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

II.    <u>Executory Contracts and Unexpired Leases</u>. The Debtors have exercised reasonable business judgment in determining whether to assume or reject their executory contracts and unexpired leases pursuant to Article VI of the Plan. Each assumption or rejection of an executory contract or unexpired lease pursuant to Article VI of the Plan and the Schedule of Assumed Agreements, as amended, shall be legal, valid, and binding upon the Wind-Down Entities or the Liquidation Trust, as applicable, and all non-debtor parties (and their assignees or successors) to such executory contracts or unexpired leases, all to the same extent as if such assumption or rejection had been effectuated pursuant to an order of the Bankruptcy Court entered before Confirmation under Bankruptcy Code section 365.

JJ.    <u>Cure and Adequate Assurance</u>. The Debtors have cured, or provided adequate assurance that the Wind-Down Entities or the Liquidation Trust, as applicable, will promptly cure, all defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed pursuant to the Plan or otherwise. In addition, the Debtors have provided adequate assurance of future performance regarding the executory contracts and unexpired leases that are being assumed by the Debtors and assigned to the Wind-Down Entities or the Liquidation Trust.

KK.    <u>Retention of Jurisdiction</u>. The Bankruptcy Court may and will properly retain jurisdiction and power over the matters set forth in Article IX of the Plan.

LL.    <u>Consummation in Good Faith</u>. The Debtors, the Committees, the Wind-Down Entities, the Liquidation Trust, and their respective Related Parties will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, transfers,

9775935

Page:        17
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

and Distributions contemplated thereby; and (ii) take the other acts or actions authorized and

directed by this Confirmation Order.

MM.    <u>Plan Modifications</u>. The Plan Proponents have made certain modifications to the

Plan, which modifications are incorporated in the Plan as attached hereto as **<u>Exhibit A.</u>** All such

modifications are incorporated by reference herein and approved. The disclosure of these

modifications to the Plan on the record at the Confirmation Hearing constitutes due and

sufficient notice of such modifications, complies in all respects with Section X.C of the Plan and

Bankruptcy Code section 1127, and the Bankruptcy Court hereby finds that such modifications

are non-material, not adverse to any party in interest under the Plan, and pursuant to Bankruptcy

Rule 3019, these modifications do not require additional disclosure under Bankruptcy Code

section 1125 and do not require the re-solicitation of any Class of Claims under Bankruptcy

Code section 1126. The Plan as modified shall constitute the Plan submitted for Confirmation.

NN.    <u>Preservation of Right to Conduct Investigations</u>. The preservation for the

Liquidation Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule

2004 is necessary and relevant to the liquidation and administration of the Liquidation Trust

Assets.  Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule

2004 held by the Debtors or the Committee prior to the Effective Date shall vest with the

Liquidation Trust and shall continue until dissolution of the Liquidation Trust.

Based on the foregoing findings, and on the record made before the Bankruptcy Court at

the Confirmation Hearing, and good and sufficient cause appearing therefor, it is hereby

9775935

Page:        18
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

### ORDERED, ADJUDGED, AND DECREED THAT:

### <u>Confirmation of the Plan</u>

1.      The Plan, as and to the extent modified by this Confirmation Order, is

**APPROVED** and **CONFIRMED** pursuant to Bankruptcy Code section 1129.

2.      Each provision of the Plan is authorized and approved and shall have the same

validity, binding effect, and enforceability as every other provision of the Plan. The terms of the

Plan, as previously modified and as modified by any modifications made by this Confirmation

Order, are incorporated by reference into and are an integral part of this Confirmation Order. The

failure specifically to describe, include, or refer to any particular article, section, part, or

provision of the Plan, the Plan Supplement, or any related document in this Confirmation Order

shall not diminish or impair the effectiveness of such article, section, part, or provision, it being

the intent of the Bankruptcy Court that the Plan, the Plan Supplement, and all related documents

be approved and confirmed in their entirety as if set forth verbatim in this Confirmation Order.

3.      Any resolutions of objections to Confirmation of the Plan explained on the record

at the Confirmation Hearing are hereby incorporated by reference. All unresolved objections,

statements, joinders, comments, and reservations of rights in opposition to or inconsistent with

the Plan have been fully considered by the Bankruptcy Court and are hereby **DENIED** and

**OVERRULED** with prejudice on the merits and in their entirety. All withdrawn objections are

deemed withdrawn with prejudice. The record of the Confirmation Hearing is hereby closed and

such evidentiary record shall not be amended, modified, or supplemented.

9775935

Page:        19
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

## Compromises and Settlements Under the Plan

4.      Pursuant to Bankruptcy Code section 1123(b) and Bankruptcy Rule 9019, upon the Effective Date, all settlements and compromises set forth in the Plan are approved in all respects as good faith, fair, reasonable, and equitable compromises and settlements of all Claims or Causes of Action affected thereby, as well as all other controversies and matters resolved pursuant to the Plan. Entry of this Confirmation Order constitutes approval of all such compromises and settlements pursuant to the Bankruptcy Rules, including Bankruptcy Rule 9019(a), the Bankruptcy Code, including Bankruptcy Code sections 105(a), 1123(a)(5), 1123(b)(3), and 1123(b)(6), and other applicable law.

5.      In order to give effect to the Plan's comprehensive compromise and settlement,

    (a)    On the Effective Date, unless held by Excluded Parties or Non-Contributing Investors (in which case such Claims are Disputed Claims), all Class 5 Investor Claims held by Contributing Investors are deemed Allowed in the Net Investor Claim Amount set forth in the Investor Schedule in accordance with the Contributing Investor Settlement;

    (b)    On the Effective Date, all Contributing Investors in Class 5 shall be deemed to have contributed to the Liquidation Trust all Contributed Claims held by such Contributing Investor;

    (c)    To the extent, and only to the extent, a Contributing Investor Claim is Allowed by subparagraph (a) above, the Debtors and their Estates shall, upon the occurrence of the Effective Date, be deemed to have waived and released all Avoidance Actions to avoid or recover any prepetition distributions received by such Contributing Investor in connection with the subject Allowed Class 5 Claim;

    (d)    In accordance with Article IV.H of the Plan, the Debtors will be substantively consolidated. On the Effective Date, the Liquidation Trust shall retain all of the Liquidation Trust Assets and shall contribute the Wind-Down Entity Real Estate Assets to the Wind-Down Entities;

9775935

Page:        20
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

    (e)    The Holders of Allowed Claims in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Third-Party Mortgage Claims), Class 4 (Non-Investor General Unsecured Claims), Class 6 (JVA Claims), and Class 7 (Subordinated Claims) will receive the treatment provided for such Holders under the Plan;

    (f)    The Liquidation Trust will be created to most effectively and efficiently pursue the Liquidation Trust Actions for the collective benefit of all the Liquidation Trust Beneficiaries, establish and hold the Distribution Reserves, and receive and distribute to Liquidation Trust Beneficiaries the net proceeds of the Liquidation Trust Assets, Liquidation Trust Expenses, and certain other Claims, all in accordance with the Plan; and

    (g)    As of the Effective Date, any Intercompany Claims that could be asserted by one Debtor against another Debtor shall be deemed void, cancelled, and of no further force and effect.

### Classification and Treatment

6.      The Plan's classification scheme is approved. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes; (c) may not be relied on by any Holder of a Claim as representing the actual classification of such Claim under the Plan for Distribution purposes; and (d) shall not be binding on the Debtors, the Estates, or the Liquidation Trust except for voting purposes.

### Authorization to Implement the Plan

7.      On the Effective Date, the certificates of incorporation, bylaws, operating agreements, and articles of organization, as applicable, of all the Debtors shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of this

9775935

Page:        21
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

Confirmation Order shall constitute authorization for the Debtors, the Wind-Down CEO, and the Liquidation Trustee, as applicable, to take or cause to be taken all actions (including, if applicable, Corporate Actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation.

8.      This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan or the Plan Supplement.

9.      Pursuant to Bankruptcy Code section 1146(a), any transfers of property pursuant to the Plan or made in connection therewith shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment to the fullest extent contemplated by section 1146(a). Upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

9775935

Page:         22
Debtors:      National Realty Investment Advisors LLC, *et al.*
Case No.:     22-14539
Caption:      Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
              Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
              its Affiliated Debtors

10.     Issuance of the Liquidation Trust Interests in accordance with the Plan is
approved. The Liquidation Trust is authorized and empowered, without further approval of this
Court or any other Person, to take such actions and to perform such acts as may be necessary,
desirable, or appropriate to implement the issuance of the Liquidation Trust Interests in
accordance with the Plan and to execute and deliver all agreements, documents, securities,
instruments, and certificates relating thereto.

11.     The approvals and authorizations specifically set forth in this Confirmation Order
are not intended to limit the authority of the Debtors, the Wind-Down CEO, or the Liquidation
Trustee, as applicable, to take any and all actions necessary or appropriate to implement,
effectuate, and consummate any and all documents or transactions contemplated by the Plan or
this Confirmation Order.

## **Enforceability of Plan**

12.     Pursuant to Bankruptcy Code sections 1123(a), 1141(a), and 1142, the Plan and
all Plan-related documents (including the Liquidation Trust Agreement and the Wind-Down
Operating Agreements upon their execution) shall be, and hereby are, valid, binding, and
enforceable.  Subject to the terms of the Plan, upon the occurrence of the Effective Date, the Plan
and the Plan Supplement shall be immediately effective and enforceable and deemed binding on
the Debtors, all Creditors and Holders of Equity Interests, and all other Persons in accordance
with their respective terms.

9775935

Page:        23
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

### Vesting of Assets

13.     On the Effective Date, the Liquidation Trust will be automatically vested with all of the Debtors' and the Estates' respective rights, title, and interest in and to all Liquidation Trust Assets and the Wind-Down Entity Real Estate Assets. Except as specifically provided in the Plan or this Confirmation Order, the Liquidation Trust Assets and the Wind-Down Entity Real Estate Assets shall automatically vest in the Liquidation Trust free and clear of all Claims, Liens, or interests subject only to the Liquidation Trust Interests and the Liquidation Trust Expenses, as provided for in the Liquidation Trust Agreement, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all Liquidation Trust Assets and Wind-Down Entity Real Estate Assets. The Liquidation Trust shall hold and distribute the Liquidation Trust Assets in accordance with the provisions of the Plan and the Liquidation Trust Agreement, and shall transfer the Wind-Down Entity Real Estate Assets to the Wind-Down Entities in the manner that the Liquidation Trustee deems appropriate, after consultation with the Wind-Down CEO; provided that neither the vesting of the Liquidation Trust Assets or Wind-Down Entity Real Estate Assets in the Liquidation Trust upon the Effective Date nor the transfer of the Wind-Down Entity Real Estate Assets to the Wind-Down Entities on or after the Effective Date may be asserted in defense of any claims commenced or continued by the Liquidation Trustee relating to any prepetition transfers made by the Debtors.

9775935

Page:        24
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

14.    Except as otherwise provided in the Plan or this Confirmation Order, from and after the Effective Date, the Liquidation Trust will retain all rights to commence, pursue, litigate, or settle, as appropriate, any and all of the Debtors' or Estates' Causes of Action and Causes of Action that are Contributed Claims (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, all as Liquidation Trust Actions, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases.  All rights of the Debtors and the Committee to conduct investigations pursuant to Bankruptcy Rule 2004 are hereby preserved for and shall vest in the Liquidation Trust and shall continue until the dissolution of the Liquidation Trust.  The Liquidation Trust will succeed to the rights of the Debtors and the Committee with respect to any and all Bankruptcy Rule 2004 subpoenas issued by the Committee prior to the Effective Date as if the Liquidation Trust had originally issued such subpoenas.  All of the Debtors' privileges, including without limitation the attorney-client privilege, work-product privilege, and other similar protections for the Debtors, shall vest in the Liquidation Trust upon the Effective Date.  Effective upon the Effective Date, the Liquidation Trustee, and only the Liquidation Trustee, shall have the right to assert and/or waive such privileges and protections as to documents and communications of the Debtors prior to the Effective Date; provided that, if this transfer of authority is later determined to be invalid or ineffective, then the Debtors' attorney-client privilege and work-product protections shall be deemed waived as of the Effective Date.

15.    No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Avoidance Actions, Causes of Action, or Contributed Claims

9775935

Page:        25
Debtors:    National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:    Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
            Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
            its Affiliated Debtors

against them as any indication that the Liquidation Trust will not pursue any and all available

Avoidance Actions, Causes of Action, or Contributed Claims against such Person. The Debtors

and the Liquidation Trust expressly reserve all rights to prosecute any and all Avoidance

Actions, Causes of Action, or Contributed Claims against any Person other than the Released

Parties, in accordance with the Plan.

## Termination of Directors and Officers

16.    On the Effective Date, each of the Debtors' existing directors, officers, and

managers (including the members of the Post-Petition Board) and employees shall be terminated

automatically without the need for any Corporate Action and without the need for any corporate

or limited liability company filings and shall have no ongoing rights against or obligations to the

Debtors or the Estates, including under any applicable prepetition agreements (all of which will

be deemed terminated).

## Dissolution of the Debtors Other than NRIA

17.    On the Effective Date, each of the Debtors, other than NRIA, will be dissolved

automatically without the need for any Corporate Action, without the need for any corporate or

limited liability company filings, and without the need for any other or further actions to be taken

by or on behalf of such dissolving Debtor or any other Person or any payments to be made in

connection therewith.  On and after the Effective Date, the Wind-Down Entities will be wholly-

owned subsidiaries of the Liquidation Trust. The manager of the Wind-Down Entities shall be

the Wind-Down CEO. The Wind-Down CEO's indemnity and exculpation by the Wind-Down

Entities shall, to the greatest extent possible, be the same as the Liquidation Trustee's indemnity

Page:        26
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

and exculpation in connection with the Liquidation Trust, and the Wind-Down CEO may take

such steps as appropriate to maintain the good standing of the Wind-Down Entities. Until the

Wind-Down Entities are dissolved, the Wind-Down Entities shall treat all Cash in accordance

with Article 3.02(f)(i) of the Wind-Down Entity Operating Agreements. The Wind-Down

Entities (a) shall have the Liquidation Trust as their sole member, (b) shall be treated as

disregarded entities for income tax purposes, (c) shall have a purpose consistent with the purpose

of the Liquidation Trust as set forth in Article IV.D.4 of the Plan.

18.    On the Effective Date, each of the Debtors other than NRIA will be dissolved

automatically without the need for any Corporate Action, without the need for any corporate or

limited liability company filings, and without the need for any other or further actions to be taken

by or on behalf of such dissolving Debtor or any other Person or any payments to be made in

connection therewith; provided, however, that the Liquidation Trustee is authorized in its

discretion to file any certificates of cancellation as it deems appropriate.

19.    Pursuant to Bankruptcy Code section 350 and Article X.J of the Plan, the closing

of certain of the Cases is hereby authorized. Upon the Effective Date, the Cases, other than the

Case of NRIA (Case Nos. 22-14539 (JKS)), will be deemed closed and no further fees in respect

of such closed Cases will thereafter accrue or be payable to any Person or Entity. The

Liquidation Trust may at any point File a motion to close the Case for NRIA. As soon as

practicable after the Effective Date, the Liquidation Trust shall submit a separate order to the

Bankruptcy Court under certification of counsel to enter on the docket of each individual

Debtor's Case to close such Case effective as of the Effective Date, except for the Case of NRIA.

26

Page:            27
Debtors:         National Realty Investment Advisors LLC, *et al.*
Case No.:        22-14539
Caption:         Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
                 Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
                 its Affiliated Debtors

The Liquidating Trust shall reserve all rights to move to reopen a closed case. The closing of the
Cases, other than the Case of NRIA, will in no way prejudice the Liquidating Trust's rights to
object or otherwise contest a proof of Claim filed against any of the Debtors or to commence or
prosecute any action to which any of the Debtors may be a party, or a claimant's rights to receive
Distributions under the Plan to the extent such claimant's Claim is ultimately Allowed, nor will
the closing of such Cases otherwise alter or modify the terms of the Plan.

### Cancellation of Equity Interests, Notes, Instruments, Certificates, and Other Documents

20.      As of the Effective Date, all Equity Interests shall be deemed void, cancelled, and
of no further force and effect. On and after the Effective Date, Holders of Equity Interests shall
not be entitled to, and shall not receive or retain any property or interest in property under the
Plan on account of such Equity Interests.

21.      Except to the extent necessary to give effect to the treatment of any Holder of an
Allowed Other Secured Claim or Third-Party Mortgage Claim in Classes 2 and 3, respectively,
and except with respect to any executory contracts and unexpired leases that are assumed and
assigned to the Wind-Down Entities under the Plan or otherwise assumed and assigned pursuant
to a Final Order, any agreement, bond, certificate, contract, indenture, lease, note, security,
Membership Interest, warrant, or other instrument or document evidencing or creating any
indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date, and
all Liens, mortgages, pledges, grants, trusts, and other interests relating thereto shall be
automatically cancelled, and all obligations of the Debtors thereunder or in any way related
thereto shall be discharged.

9775935

Page:        28
Debtors:    National Realty Investment Advisors LLC, *et al.*
Case No.:   22-14539
Caption:    Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
            Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
            its Affiliated Debtors

## Plan Distributions

22.     The Liquidation Trust, or such other party as may be designated by the
Liquidation Trustee, as applicable, shall make all Distributions under the Plan and such
Distributions shall be in accordance with the Plan and the Liquidation Trust Agreement, as
applicable.  To the extent the Liquidating Trustee makes a Distribution under the Plan while any
Disputed Claim(s) is outstanding, a reserve for the Disputed Claim(s) will have to be made.

## Administration of the Wind-Down Entities

23.     The Wind-Down Operating Agreements, substantially in the form filed with the
Plan Supplement, as such Plan Supplement may be amended in accordance with the Plan and this
Confirmation Order, is hereby approved.

24.     The appointment of JR Budd Co., Inc. as the initial Wind-Down CEO is hereby
approved. The Wind-Down CEO shall be compensated in the manner set forth in and consistent
with the Plan Supplement. The Wind-Down CEO shall have all powers, rights, duties, and
protections afforded the Wind-Down CEO under the Plan, including in Article IV.C.5. thereof,
and the Wind-Down Operating Agreements.

## Administration of the Liquidation Trust

25.     The Liquidation Trust Agreement, substantially in the form filed with the Plan
Supplement, as such Plan Supplement may be amended in accordance with the Plan and this
Confirmation Order, is hereby approved.

26.     The appointment of AIRN Liquidation Trust Co., LLC as the Liquidation Trustee
is hereby approved. The Liquidation Trustee shall be compensated in the manner set forth in and

9775935

Page:        29
Debtors:    National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:    Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
              Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
              its Affiliated Debtors

consistent with the Liquidation Trust Agreement and the Plan Supplement. The Liquidation

Trustee shall have all powers, rights, duties, and protections afforded the Liquidation Trustee

under the Plan, including Article IV.D.5 thereof, and the Liquidation Trust Agreement.

27.    The appointment of Caroline Gladding-Spiteri, Helen Green and Christopher

Davino to the Liquidation Trust Advisory Board are hereby approved. The Liquidation Trust

Advisory Board shall be compensated in the manner set forth in and consistent with the

Liquidation Trust Agreement and the Plan Supplement. The Liquidation Trust Advisory Board

shall have all powers, rights, duties, and protections afforded the Liquidation Trust Advisory

Board under the Plan and the Liquidation Trust Agreement.

## Executory Contracts and Unexpired Leases

28.    On the Effective Date, pursuant to Bankruptcy Code sections 365 and 1123, (a)

the Debtors' assumption of all executory contracts and unexpired leases identified on the

Schedule of Assumed Agreements (as it may be amended) is approved, and (b) the Debtors'

assignment of all such executory contracts and unexpired leases to the Liquidation Trust or the

Wind-Down Entities is approved. Except as to any objection that was resolved or continued at

the Confirmation Hearing, this Confirmation Order shall constitute a conclusive determination

regarding the amount of any cure and compensation due under the applicable executory contract

or unexpired lease, as well as a conclusive finding that the applicable Wind-Down Entity or the

Liquidation Trust has demonstrated adequate assurance of future performance with respect to

such executory contract or unexpired lease, to the extent required. Absent order of the

Bankruptcy Court to the contrary, any counterparty to an executory contract or unexpired lease

9775935

Page:         30
Debtors:      National Realty Investment Advisors LLC, *et al.*
Case No.:     22-14539
Caption:      Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
              Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
              its Affiliated Debtors

that failed to timely object to the proposed assumption or proposed Cure Payment is hereby

deemed to have assented to such assumption or Cure Payment. Any monetary defaults under

each executory contract and unexpired lease that the Debtors assume and assign, shall be

satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure

Payment.  In addition to the contracts listed on the Schedule of Assumed Agreements, the

Debtors are authorized to assume and assign the contract with United American Metal Works, in

accordance with the foregoing provision, upon payment of an agreed to cure amount of

$27,962.42.

29.     Assumption of any executory contract or unexpired lease and payment of the

applicable Cure Payment, if any, shall result in the full release and satisfaction of any Claims or

defaults, whether monetary or non-monetary, including defaults of provisions restricting the

change in control or ownership interest composition or other bankruptcy-related defaults, arising

under any assumed executory contract or unexpired lease at any time before the date the Debtors

assume such executory contract or unexpired lease.

30.     Nothing in the Plan or this Confirmation Order, including any discharge, waivers,

releases, or injunctions, shall adversely affect or prevent any counterparty to an unexpired lease

or executory contract that is assumed from asserting, after the Effective Date, any claim that, as

of the date of service of the Schedule of Assumed Agreements, was accrued but not yet required

to be billed, or accrued after the date of service of the Schedule of Assumed Agreements, and is

made in accordance with the terms of the assumed unexpired lease or executory contract.

9775935

Page:        31
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

31.    The Debtors shall have the right to remove an executory contract or unexpired lease from the Schedule of Assumed Agreements prior to the Effective Date. To the extent of any such modifications, the Debtors will provide notice to each counterparty to an affected executory contract or unexpired lease.

32.    On the Effective Date, pursuant to Bankruptcy Code sections 365 and 1123, the rejection of all executory contracts and unexpired leases of the Debtor, including without limitation all Joint Venture Agreements, is approved, except for (a) executory contracts and unexpired leases that have been previously assumed or rejected by Debtors, (b) executory contracts and unexpired leases that are set forth in the Schedule of Assumed Agreements, and (c) any agreement, obligation, security interest, transaction, or similar undertaking that the Debtors believe is not executory or a lease, but that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease that is subject to assumption or rejection under Bankruptcy Code section 365.

33.    Any Rejection Claim or other Claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed and served no later than the first Business Day that is at least thirty (30) calendar days after the Effective Date. Any such Rejection Claims that are not timely Filed and served will be forever disallowed, barred, and unenforceable, and Persons holding such Claims will not receive and be barred from receiving any Distributions on account of such untimely Claims.

9775935

Page:        32
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

## Administrative Expense Claims

34.      All requests for payment of an Administrative Expense Claim must be Filed with

the Bankruptcy Court no later than the first Business Day that is at least thirty (30) calendar days

after the Effective Date. The failure to File a request for payment of an Administrative Expense

Claim on or before the Administrative Expense Claim Bar Date, or the failure to serve such

request timely and properly, shall result in the Administrative Expense Claim being forever

barred and disallowed without further order of the Bankruptcy Court. If for any reason any such

Administrative Expense Claim is incapable of being forever barred and disallowed, then the

Holder of such Claim shall in no event have recourse to any property to be distributed pursuant

to the Plan.

## Professional Fee Claims

35.      All final requests for payment of Professional Fee Claims pursuant to Bankruptcy

Code sections 327, 328, 330, 331, 363, 503(b), or 1103 must be made by application Filed with

the Bankruptcy Court and served on counsel to the Liquidation Trust, counsel to the U.S.

Trustee, and the Fee Examiner no later than thirty (30) calendar days after the Effective Date,

unless otherwise ordered by the Bankruptcy Court.

36.      All objections to the allowance of such Professional Fee Claims must be Filed and

served on counsel to the Liquidation Trust, counsel to the Debtors, counsel to the Committee,

counsel to the U.S. Trustee, the requesting Professional, and the Fee Examiner on or before the

date that is twenty-one (21) calendar days after the date on which the applicable application was

served (or such longer period as may be allowed by order of the Bankruptcy Court or by

9775935

Page:         33
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

agreement with the requesting Professional). For the avoidance of doubt, nothing set forth herein

supersedes the Fee Examiner Order [Docket No. 1017] and the procedures put in place thereby

governing the Fee Examiner's review of fee applications.

37.    All Professional Fee Claims shall be paid by the Liquidation Trust to the extent

approved by order of the Bankruptcy Court within five (5) Business Days after entry of such

order.

## Releases, Injunction, and Exculpation

38.    The following release, injunction, exculpation, discharge, and related provisions

set forth in Article VIII of the Plan are hereby approved and authorized in their entirety.

39.    Non-Discharge of the Debtors; Injunction. In accordance with Bankruptcy Code

section 1141(d)(3)(A), the Plan does not discharge the Debtors. Bankruptcy Code section

1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is

free and clear of all Claims and Equity Interests against the Debtors. As such, no Person holding

a Claim or an Equity Interest may receive any payment from, or seek recourse against, any assets

that are to be distributed under the Plan other than assets required to be distributed to that Person

under the Plan. As of the Effective Date, all Persons are precluded and barred from asserting

against any property to be distributed under the Plan any Claims, rights, Causes of Action,

liabilities, Equity Interests, or other action or remedy based on any act, omission, transaction, or

other activity that occurred before the Effective Date except as expressly provided in the Plan or

this Confirmation Order. For the avoidance of doubt, a Holder of a Claim that timely filed a

proof of Claim asserting that such Claim is subject to a right of setoff against the Debtors retains

9775935

Page:          34
Debtors:       National Realty Investment Advisors LLC, *et al.*
Case No.:      22-14539
Caption:       Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
               Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
               its Affiliated Debtors

all rights to pursue such setoff following the Effective Date.   The Debtors, the Debtors' Estates,

the Wind-Down Entities, the Liquidation Trust, and the Liquidating Trustee retain all rights to

object or otherwise oppose a request of setoff by a Holder of such Claim.

40.    <u>Releases and Related Matters</u>. On the Effective Date, for good and valuable

consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be

deemed to have forever released, waived, and discharged each of the Released Parties from any

and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action,

and liabilities whatsoever, whether known or unknown, whether foreseen or unforeseen, whether

liquidated or unliquidated, whether fixed or contingent, whether matured or unmatured, existing

or hereafter arising, at law, in equity, or otherwise, that are based in whole or in part on any act,

omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in

any way relating to the Debtors, the conduct of the Debtors' business, the Cases, or the Plan,

except for acts or omissions that are determined in a Final Order to have constituted actual fraud,

gross negligence or willful misconduct.

41.    <u>Exculpation and Limitation of Liability</u>. On the Effective Date, for good and

valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent

permitted by law, and notwithstanding any other provision of this Order, none of the Exculpated

Parties shall have or incur any liability to any Person, including to any Holder of a Claim or an

Equity Interest, for any post-petition act or omission in connection with, relating to, or arising

out of the Debtors, the Cases, the formulation, negotiation, preparation, dissemination,

solicitation of acceptances, implementation, confirmation, or consummation of the Plan, the

9775935

Page:        35
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan; *provided*, that the exculpation provisions of Article VIII.B. of the Plan shall not apply to acts or omissions constituting actual fraud, gross negligence, or willful misconduct by such Exculpated Party as determined by a Final Order. For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute fraud, gross negligence or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation, and in all respects, the Exculpated Parties shall be entitled to rely on the written advice of counsel with respect to their duties and responsibilities under, or in connection with, the Debtors, the Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation or consummation of Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan. This Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by Article VIII.B.

42.    Notwithstanding any provision in the Plan or this Confirmation Order to the contrary or an abstention from voting on the Plan, no provision of the Plan, or this Confirmation Order, (i) releases any non-debtor Person from any Cause of Action of the SEC; or (ii) enjoins,

35

9775935

Page:         36
Debtors:    National Realty Investment Advisors LLC, *et al.*
Case No.:   22-14539
Caption:    Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
            Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
            its Affiliated Debtors

limits, impairs, or delays the SEC from commencing or continuing any Causes of Action,

proceedings, or investigations against any non-debtor Person in any forum.

43.    Notwithstanding any provision in the Plan or this Confirmation Order to the

contrary or an abstention from voting on the Plan, no provision of the Plan, or this Confirmation

Order, (i) releases any non-debtor Person from claims of the United States related to the violation

of any federal tax; or (ii) enjoins, limits, impairs, or delays the United States from commencing

or continuing any actions, proceedings, or investigations against any non-debtor Person in any

forum for claims related to the violation of any federal tax laws. Moreover, notwithstanding any

other provision of the Plan or Confirmation Order, the United States' rights, if any, to setoff and

recoupment are preserved.

**Payment of Statutory Fees**

44.    All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy

Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.

**Dissolution of the Committees**

45.    On the Effective Date, the Committee shall be deemed dissolved, the retention

and employment of the Committee's Professionals shall be deemed terminated, and the members

of the Committee shall be deemed released and discharged of and from all further authority,

duties, responsibilities, and obligations arising from, or related to, the Cases, other than for

purposes of filing and/or objecting to final Fee Applications, except as set forth in the Plan or in

the Liquidation Trust Agreement.  For the avoidance of doubt, the dissolution of the Committee

shall in no way affect any outstanding subpoenas issued by the Committee pursuant to

9775935

Page:        37
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

Bankruptcy Rule 2004, which subpoenas shall continue in full force and effect, and shall inure to

the benefit of the Liquidation Trust, and which the Liquidation Trust may continue to prosecute

and enforce as if the Liquidation Trust had initially issued such subpoenas.

### Tax-Specific Provisions

46.    The Liquidation Trust shall be established for the purpose of pursuing or

liquidating the Liquidation Trust Assets and making Distributions to the Liquidation Trust

Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective

to continue or engage in the conduct of a trade or business. The administration of the Wind-

Down Real Estate Assets by the Wind-Down Entities in accordance with the Plan and the Wind-

Down Operating Agreements is consistent with the absence of any objective to continue or

engage in the conduct of a trade or business.

47.    Nothing in the Plan or this Confirmation Order shall constitute a declaratory

judgment as to whether the proposed Liquidating Trust qualifies under 26 C.F.R.§

301.7701¬4(d).

### Additional Provisions Regarding Recording Officers

48.    The Plan and this Confirmation Order are and shall be binding on and shall

govern acts of all Persons, including all escrow agents, filing agents, filing officers, title agents,

title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal, state, and local officials, and all

other Persons who may be required by operation of law, the duties of their office, or contract to

9775935

Page:       38
Debtors:    National Realty Investment Advisors LLC, *et al.*
Case No.:   22-14539
Caption:    Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
            Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
            its Affiliated Debtors

accept, file, register, or otherwise record or release any documents or instruments relating to any

Estate Assets (all such Persons being referred to as "**Recording Officers**").

49.     Upon the occurrence of the Effective Date, all transactions contemplated by the

Plan, including the vesting of the Wind-Down Real Estate Assets in the Wind-Down Entities, the

vesting of the Liquidation Trust Assets in the Liquidation Trust, and the release and discharge of

Liens under the Plan, shall be deemed fully effective and to have occurred as a matter of law

without the necessity of any other or further transfer documentation, forms, documents,

paperwork, or anything else, and all Recording Officers are hereby instructed and directed to

facilitate, recognize, and otherwise give full force and effect to the transactions effectuated by

the Plan and this federal court order. In the event that any Recording Officer refuses to give full

force and effect to the transactions effectuated as a matter of law by the Plan and this

Confirmation Order, the Wind-Down Entities or the Liquidation Trust may pursue any and all

appropriate remedies (including sanctions) against such Person before this Bankruptcy Court. A

certified copy of this Confirmation Order may be filed with the appropriate Recording Officers

to evidence cancellation of any recorded Claims, Liens, and other interests against or regarding

the Estate Assets recorded prior to the date of this Confirmation Order, other than Liens that

specifically survive after the Effective Date pursuant to the Plan.

50.     Without limiting the generality of the preceding paragraph, from and after the

Effective Date, subject to the supervision of the Liquidation Trustee and the provisions of the

Wind-Down Operating Agreements, all Recording Officers must recognize that the Wind-Down

CEO has the full legal authority, right, and power to sell, liquidate, transfer, assign, distribute,

9775935

Page:        39
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

abandon, or otherwise dispose of the Wind-Down Real Estate Assets or any part thereof or any

interest therein, including through the formation on or after the Effective Date of any new or

additional legal entities to be owned by the Wind-Down Entities to own and hold particular

Wind-Down Real Estate Assets separate and apart from any other Wind-Down Real Estate

Assets, upon such terms as the Wind-Down CEO determines to be necessary, appropriate, or

desirable.

**Seneca Specialty Insurance Company Matters**

51.    The Debtors and their successors shall comply with all of their post-petition

obligations arising under the Commercial Property & Equipment Breakdown Policy No.

SSP2203140 (the "**Seneca Insurance Policy**") issued by Seneca Specialty Insurance Company

in the ordinary course of business pursuant to the terms thereof pending assumption and

assignment of the Seneca Insurance Policy pursuant to the Plan.  Seneca's rights, if any, of

setoff, subrogation and recoupment are preserved under the Plan and this Confirmation Order, as

are any rights, claims, defenses and counterclaims of the Debtors, the Estates and/or the

Liquidation Trust.

**Arthur Raymond Scuttaro, AJ Sales & Marketing Inc. and Arthur Scuttaro Matters**

52.    The rights, if any, of Arthur Raymond Scuttaro, AJ Sales & Marketing, Inc.

and/or Arthur Scutarro of setoff, recoupment and/or subrogation, are preserved under the Plan

and this Confirmation Order, as are any rights, claims, defenses and counterclaims of the

Debtors, the Estates and/or the Liquidation Trust.  Neither the Plan nor this Confirmation Order

extinguish or bar Arthur Raymond Scuttaro, AJ Sales & Marketing, Inc. or Arthur Scutarro from

9775935

Page:        40
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

asserting any rights, claims or defenses in any actions, suits, litigations or other similar

proceedings filed by the Debtors or to be filed by the Liquidation Trust.


## Cipolla & Co., LLC Matters

53.    The rights, if any, of Cipolla & Co., LLC of setoff, recoupment and/or

subrogation, are preserved under the Plan and this Confirmation Order, as are any rights, claims,

defenses and counterclaims of the Debtors, the Estates and/or the Liquidation Trust.

## Ruggiero Plante Land Design, LLC Matters

54.    Notwithstanding anything in the Plan or this Confirmation Order to the contrary,

the Wind-Down Entity Real Estate Assets shall not include the Ruggiero Work Product (as

defined in the *Limited Objection of Ruggiero Plante Land Design, LLC to Confirmation of the

Joint Chapter 11 Plan of National Realty Investment Advisors, LLC* [Docket No. 2788]) unless

and until Ruggiero Plante Land Design, LLC ("**RPLD**") receives payment in full of the face

amount of Claim No. 27 filed by RPLD of $288,000 (the "**RPLD Claim**") or such other amount

agreed to by RPLD and the applicable Wind Down Entity (the "**RPLD Payment Amount**"), in

which case title to the Ruggiero Work Product will transfer to the applicable Wind Down Entity

and the RPLD Claim shall be deemed satisfied. Until RPLD receives payment in full of the

RPLD Payment Amount, the Ruggiero Work Product shall not be sold, conveyed or transferred

to the applicable Wind Down Entity or thereafter sold, conveyed or transferred to any other

party. RPLD shall not be subject to the release, injunction or exculpation provisions of the Plan

9775935

Page:       41
Debtors:    National Realty Investment Advisors LLC, *et al.*
Case No.:   22-14539
Caption:    Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
            Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
            its Affiliated Debtors

solely to the extent necessary for RPLD to assert claims against any party in the event there is

any attempt to sell, transfer or convey the Ruggiero Work Product before RPLD receives

payment in full of the RPLD Payment Amount. For sake of clarity, in the event that RPLD does

not receive the RPLD Payment Amount and RPLD retains all right, title and interest in and to the

Ruggiero Work Product, then nothing herein shall, or be deemed to, waive or limit the

Liquidating Trust's or Wind Down Entity's, as applicable, right to object to the RPLD Claim and

RPLD's rights to respond and to defend the RPLD Claim.

### **8701 River Road LLC Matters**

55.     8701 River Road LLC ("**8701**") is hereby authorized and permitted to file a proof

of claim against the Debtors (when filed, the "**Claim**"), which shall be deemed timely if it is

filed no later than thirty (30) days after the date on which this Confirmation Order is entered.

56.     Nothing herein shall be deemed to be a ruling on the allowance of the Claim on a

substantive basis, and all parties in interest retain the right to object to the Claim on any basis,

other than its timeliness.

57.     To the extent the Claim is ultimately Allowed, it shall be treated in accordance

with the terms of the Plan and any order authorizing its allowance.

### **Bower Lewis Thrower Architects, Ltd. Matters**

58.     In full and final resolution of the Objection of Bower Lewis Thrower Architects,

Ltd. to Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and

its Affiliated Debtors [Docket No. 2780] (the "**BLTA Objection**"), as well as any and all claims

asserted or assertable by Bower Lewis Thrower Architects, Ltd., ("**BLTA**") against any of the

9775935

Page:        42
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

Debtors or their Estates, including, without limitation, claim number 667-4, asserted in the

amount of $737,444.00 (the "**Contract Claim**") and claim numbers 667-57 and 667-56, each of

which was asserted in the amount of $507,526.40 (the "**Rejection Claims**"), BLTA and the Plan

Proponents agree to the following settlement, which the Bankruptcy Court hereby approves:

(a)     On or before the Effective Date, the Debtors or the Liquidation Trust, as
        applicable, shall: (i) make a $525,000 lump sum payment to BLTA (the
        "**Lump Sum Payment**"); and (ii) enter into the Design License
        Agreement (the "**DLA**") and the Engagement Letter (the "**EA**" and
        together with the DLA, the "**Agreements**"), in forms which are hereby
        approved as being substantially in the forms attached to the *Debtors'
        Motion for Entry of an Order Pursuant to Sections 105(a) and 363(b) of
        the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy
        Procedure Authorizing the Debtors to: (A) Enter into Post-Petition
        Agreements with Bower Lewis Thrower Architects, Ltd., and (B) Allow
        and Pay a Related Secured Claim* [Docket No. 2343]).

(b)     Upon receipt of the Lump Sum Payment and the execution of (and entry
        into) the Agreements by either the Debtors or the Liquidation Trust: (i)
        BLTA shall immediately provide the Debtors or the Liquidation Trust, as
        applicable, solely for licensed use in accordance with the DLA, all
        drawings, designs and other work product prepared, utilized or possessed
        by BLTA or its agents or employees that relate to the Debtors' projects or
        properties or work performed for the Debtors; (ii) BLTA shall
        immediately discharge and release any liens and encumbrances filed or
        asserted against any of the Debtors (or their Estates) or their properties,
        projects or assets, including, for the avoidance of doubt, the mechanics'
        lien identified in the Contract Claim; (iii) the Rejection Claims shall be
        deemed released, waived, expunged and Disallowed; and (iv) the Debtors'
        claims agent shall be authorized and directed to update the claims registry
        to reflect such release, waiver, expungement and/or disallowance, without
        further court order.

(c)     The balance of the Contract Claim, as reduced by the Lump Sum Payment
        (*i.e.* $212,444), shall be (and shall be treated as) an Allowed Class 4 Non-
        Investor General Unsecured Claims and paid at the same time, and in the
        same proportion and manner, as other Allowed Class 4 Non-Investor
        General Unsecured Claims in accordance with the terms of the Plan,
        *provided*, *however*, that if the Project (as defined in the BLTA Objection)

42

9775935

Page:       43
Debtors:    National Realty Investment Advisors LLC, *et al.*
Case No.:   22-14539
Caption:    Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
            Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
            its Affiliated Debtors

is sold before the date of any Distribution to Allowed Class 4 Non-Investor General Unsecured Claims, the balance of the Contract Claim (*i.e.*, $212,444) shall be paid from the proceeds of such sale to the extent sufficient proceeds exist.

(d)     Upon the entry of this Confirmation Order and payment of the Lump Sum Payment, BLTA agrees to provide services to the Debtors, the Liquidation Trust, the Wind-Down Entities and/or any of their potential contract parties on an agreed-upon fee basis pursuant to terms of the DLA and/or EA.

### Toorak Capital Partners Matters

59.     In full and final resolution of the *Objection of Secured Creditor Toorak Capital Partners, LLC to Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and its Affiliated Debtors* [Docket No. 3120] (the "**Toorak Objection**"), Toorak Capital Partners, LLC ("**Toorak**") and the Plan Proponents agree to the following settlement, which the Bankruptcy Court hereby approves:

(a)     The Liquidation Trust shall have 75 days from the Confirmation Order Effective Date to bring any challenge or objection to any and all claims or liens asserted by Toorak (the "**Toorak Challenge Period**"), including but not limited to the extent, amount and/or priority of any such claims or liens.  If no challenge or objection is filed or commenced within the Toorak Challenge Period, all such challenges and objections are and shall be deemed immediately waived, and the Liquidation Trust shall be barred from pursuing any such challenges, objections, defenses, offsets, rights of recoupment or counterclaims of any kind or nature against Toorak, and its predecessors in interest, affiliates, subsidiaries, participants or assigns, and all of their respective past, present, and future shareholders, members, directors, managers, officers, employees, attorneys, advisers, consultants, servicers, representatives or agents with respect to the enforcement or administration of the Loan (as defined in the Toorak Objection), including: (1) the ability to appear in, or defend in any manner, any act or action by Toorak to foreclose on its interest in the Property (as defined in the Toorak Objection) in connection with the Loan, including but not limited to the extent, amount and/or priority of Toorak's Loan, liens or claims; (2) the Toorak Consent Judgment (as such term is hereinafter

43

Page:        44
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

defined); or (3) the Consolidated Loan Documents (as defined in the Toorak Objection).

(b)    The applicable Wind-Down Entity shall execute and deliver a Consent Judgment of Foreclosure (the "**Toorak Consent Judgment**"), substantially in the form set forth in **Exhibit B** hereto, within fifteen (15) days of on or before the Effective Date.

(c)    Toorak shall take no action with respect to the Toorak Consent Judgment or the Consolidated Loan Documents (as defined in the Toorak Objection) and shall not receive any payments of principal or interest thereunder, through and including December 31, 2023, during which time Toorak shall not receive any payments of principal or interest thereunder despite interest accruing under the Consolidated Loan Documents at the mutually agreed upon modified regular interest rate equal to 11.50% as of the Effective Date. The agreement that non-default interest shall accrue at 11.50% as of the Effective Date shall not affect the Liquidation Trust's rights to object to same during the Toorak Challenge Period.

(d)    The Wind-Down Entity shall execute any additional documents as required by Toorak to record the 11.5% interest rate increase.

## Anne and Douglas Magner Matters

60.    In full and final resolution of Anne and Douglas Magner's *Limited Objection to Proposed Confirmation of Plan of Reorganization* [Docket No. 2789] (the "**Magner Objection**"), and all claims asserted or assertable by Anne and Douglas Magner (the "**Magners**") against any of the Debtors or their Estates, including, without limitation, claim number 540-1894, asserted in the amount of $5,426,964.69 (the "**Magner Claim**), the Magners and the Plan Proponents agree to the following settlement, which the Bankruptcy Court hereby approves:

(a)    The Magner Claim will be Allowed in the amount of $902,615,50 (*i.e.*, the "Net Investor Claim Amount" as reflected on Investor Schedule attached to the Plan).

9775935

| | |
|---|---|
| Page: | 45 |
| Debtors: | National Realty Investment Advisors LLC, *et al.* |
| Case No.: | 22-14539 |
| Caption: | Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and its Affiliated Debtors |

     (b)     The Magners will be considered Contributing Investors and participants in the Contributing Investor Settlement.

     (c)     The Debtors will provide the Magners their calculation of the Magner's total investment amount, as reflected on the Investor Schedule attached to the Plan, on or before August 10, 2023.

## EB-5 Matters

61.     The following actions are authorized and directed on or before the Effective Date:

     (a)     Upon receipt of written authorization from the EB-5 investors, the Debtors shall transfer the $100,000 held in escrow by Debtor NRIA EB5 1300 Manhattan Fund, LLC (the "**EB-5 Escrow-MAC 1300**") to Debtor Manhattan Avenue Capital 1300, LLC ("**MAC 1300**") (the job creating entity "JCE" for EB-5 definition purposes). MAC 1300 is authorized to use the funds for any lawful purpose in furtherance of the Debtors' business or as required by the Plan; *provided*, *however*, that evidence of the foregoing transfers shall be provided to Mona Shah & Associates Global for use in EB-5 Investor applications.

     (b)     Non-Debtor NRIA EB5 Bergenline Fund, LLC shall transfer $650,000 to Debtor Bergenline Capital 4901, LLC ("**Bergenline Capital**") (the job creating entity "JCE" for EB-5 definition purposes) within five (5) business days of entry of this Confirmation Order. Bergenline Capital is authorized to use the funds for any lawful purpose in furtherance of the Debtors' business or as required by the Plan; *provided*, *however*, that evidence of the foregoing transfers shall be provided to Mona Shah & Associates Global for use in EB-5 Investor applications.

     (c)     Notwithstanding any of the foregoing, if any of the EB-5 Investors is denied or withdraws from the EB-5 Program prior to the transfer of the escrowed funds, the amount of the escrow attributable to such investor(s) shall not be transferred as set forth above and shall instead be transferred to the applicable EB-5 Investor, either before or after the Effective Date.

62.     All of the foregoing shall occur on or before the Effective Date.

## Matters Related to Vijay Veerachandran; Bharat Ramchandani; Hudson Strategy, LLC; NCNJ Investments LLC

45

9775935

Page:        46
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

63.    In full and final resolution of the claims asserted by Vijay Veerachandran ("**Veerachandran**"), Bharat Ramchandani ("**Ramchandani**"; together, the "**Individual Depositors**"), Hudson Strategy, LLC ("**Hudson**"), and NCNJ Investments LLC ("**NCNJ**"; together, the "**Depositors**") against any of the Debtors or their Estates, related to certain escrowed real estate deposits made by the Depositors, the Individual Depositors and Depositors agree to the following settlement, which the Bankruptcy Court hereby approves:

(a)    Veerachandran's Net Investor Claim Amount as set forth on Exhibit 3 of the Plan will be further reduced by any and all additional returns of capital and redemptions received prior to the Petition Date and the $130,475 in interest paid on the Hudson Strategy, LLC Deposit.

(b)    Ramchandani's Net Investor Claim Amount as set forth on Exhibit 3 of the Plan will be further reduced by the $130,475 in interest paid on the NCNJ Investments LLC Deposit and any and all additional returns of capital and redemptions received prior to the Petition Date.

(c)    On or as soon as practical after the Effective Date, the Liquidation Trust shall return to Hudson its $950,000 escrow deposit for the purchase of a unit in the real property project located at 1300 Manhattan Avenue, Union City, New Jersey.

(d)    On or as soon as practical after the Effective Date, the Liquidation Trust shall return to NCNJ its $922,000 escrow deposit for the purchase of a unit in the real property project located at 1300 Manhattan Avenue, Union City, New Jersey.

### Echevarria JV Matters

64.    Notwithstanding any provision in the Plan, Disclosure Statement or this Confirmation Order to the contrary, nothing herein shall constitute a ruling whether any claims asserted by 416 69St Development LLC ("**69 St Dev.**"), 6903 Adams St Development LLC ("**Adams St Dev.**"), Global PM Support LLC ("**Global PM**"), and North Hudson Development LLC ("**North Hudson Dev.**" and collectively with 69 St Dev., Adams St Dev., and Global PM,

46

Page:        47
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

the "**Echevarria JVs**") pursuant to any Joint Venture Agreements with any Debtor are classified

as Class 6 (JVA Claims) under the Plan. The classification of the Construction Claims, as

defined in the Echevarria JV's objection to confirmation of the Plan and cross motion for claim

reclassification [Docket No. 2796] will be determined post-confirmation and all rights of the

Echevarria JVs, the Debtors, the Estates and/or the Liquidation Trust as to classification,

allowance or disallowance of such claims are preserved under the Plan and this Confirmation

Order.

### Knoll Objection

65.     In full and final resolution of Andrea Knoll's ("**Knoll**") *Objection to the Joint*

*Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC, et. al.* [Docket No.

3133], the Plan Proponents and Knoll agree to the following settlement, which the Bankruptcy

Court hereby approves:

> (a)     Following the Effective Date, the Liquidation Trustee and the Liquidation
>         Trust Advisory Board agree to meet with Knoll and her attorneys to
>         discuss the litigation against TD Bank; and
>
> (b)     Knoll shall be deemed to be a Contributing Investor under the Plan.

#### Release of Previously Escrowed Sale Proceeds

66.     Upon the entry of this Confirmation Order, all proceeds from any sale of the

Debtors' or Estates' assets or properties held in escrow in accordance with a prior Bankruptcy

Court order, including without limitation the *Order Authorizing the Private Sale of Certain*

*Properties Free and Clear of Liens, Claims, Encumbrances and Interests* [Docket No. 62], shall

9775935

Page:        48
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

be immediately released to the Debtors, to be administered, utilized, and/or distributed, as

applicable, in accordance with the Plan and the Liquidation Trust Agreement.

### Notice of Entry of Confirmation Order and Effective Date

67.    Pursuant to Bankruptcy Rules 2002 and 3020(c), the Liquidation Trust is hereby

authorized to serve a notice of entry of this Confirmation Order and the occurrence of the

Effective Date, no later than five (5) Business Days after the Effective Date, on all Holders of

Claims against or Equity Interests in the Debtors. The form of the Notice of Confirmation and

Effective Date is hereby approved in all respects. The Notice of Confirmation and Effective Date

shall constitute good and sufficient notice of the entry of this Confirmation Order and of the

relief granted herein, and of all related deadlines under the Plan, and no other or further notice

need be given of entry of this Confirmation Order, the occurrence of the Effective Date, or the

related deadlines under the Plan. Notice need not be given or served to any Person for whom any

prior notices sent during these Cases have been returned as undeliverable unless the Debtors

have been informed in writing by such Person of that Person's new address.

### Preemptive Effect

68.    Pursuant to Bankruptcy Code sections 1123(a) and 1123(b) as well as general

principles of federal supremacy, the provisions of this Confirmation Order, the Plan, and related

documents or any amendments or modifications thereto shall apply and be enforceable

notwithstanding any otherwise applicable non-bankruptcy law. Without limiting the generality of

the preceding sentence, any applicable non-bankruptcy law that would prohibit, limit, or

otherwise restrict implementation of the Plan based on (a) the commencement of the Cases, (b)

9775935

Page:           49
Debtors:        National Realty Investment Advisors LLC, *et al.*
Case No.:       22-14539
Caption:        Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
                Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
                its Affiliated Debtors

the appointment of the Liquidation Trustee or the Wind-Down CEO, (c) the wind down of the

Debtors, (d) the liquidation of some or all of the Liquidation Trust Assets or the Wind-Down

Real Estate Assets, or (e) any other act or action to be done pursuant to or contemplated by the

Plan is superseded and rendered inoperative by the Plan and federal bankruptcy law.

### **Retention of Jurisdiction and Power**

69.     Pursuant to Bankruptcy Code sections 105(a) and 1142, the Bankruptcy Court

shall retain jurisdiction and judicial power over all matters arising out of, or related to, these

Cases and the Plan to the fullest extent permitted by law, including jurisdiction and power to take

the actions listed in Article IX of the Plan.

### **Rules Governing Conflicts Between Documents**

70.     The provisions of this Confirmation Order, including the findings of fact and

conclusions of law set forth herein, and the provisions of the Plan are integrated with each other,

non-severable, and mutually dependent unless expressly stated by further order of the

Bankruptcy Court. The provisions of the Plan, the Plan Supplement, and this Confirmation Order

shall be construed in a manner consistent with each other so as to effect the purpose of each;

provided, however, that if there is any direct conflict between the terms of the Plan or the Plan

Supplement and the terms of this Confirmation  Order that cannot be reconciled, then, solely to

the extent of such conflict, (i) the provisions of this Confirmation Order shall govern and any

such provision of this Confirmation Order shall be deemed a modification of the Plan and shall

control and take precedence; and (ii) as to all other agreements, instruments, or documents, the

9775935

Page:        50
Debtors:     National Realty Investment Advisors LLC, *et al.*
Case No.:    22-14539
Caption:     Findings of Fact, Conclusions of Law, and Order Confirming First Amended Joint
             Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and
             its Affiliated Debtors

provisions of the Plan shall govern and take precedence (unless otherwise expressly provided for

in such agreement, instrument, or document).

### Extension of Injunctions and Stays

71.     All injunctions or stays in the Cases under Bankruptcy Code sections 105 or 362

or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained

in or arising from the Plan or this Confirmation Order), shall remain in full force and effect

through and inclusive of the Effective Date. All injunctions or stays contained in the Plan or this

Confirmation Order shall remain in full force and effect in accordance with their terms.

### Finality and Immediate Effect of Confirmation Order

72.     This Confirmation Order (a) is a final order and the period in which an appeal

must be filed shall commence upon the entry hereof, and (b) shall be immediately effective and

enforceable upon the entry hereof.

9775935

## EXHIBIT A

**First Amended Joint Chapter 11 Plan of Liquidation of National Realty Investment
Advisors, LLC and Its Affiliated Debtors**

9775935

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.* [1] | Case No. 22-14539 (JKS) |
| Debtors. | (Jointly Administered) |

### FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF NATIONAL REALTY INVESTMENT ADVISORS, LLC AND ITS AFFILIATED DEBTORS

**SILLS CUMMIS & GROSS, P.C.**
S. Jason Teele, Esq.
Gregory A. Kopacz, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 643-7000

*Counsel to the Debtors and*
*Debtors-in-Possession*

**ICE MILLER LLP**
Louis T. DeLucia, Esq.
Alyson M. Fiedler, Esq.
1500 Broadway, 29th Floor
New York, New York 10036
Telephone: (212) 835-6312

Daniel Polatsek, Esq.
Michael W. Ott, Esq.
200 W. Madison St., Suite 3500
Chicago, Illinois 60606
Telephone: (312) 726-6245

*Counsel to the Official Committee of*
*Unsecured Creditors*

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA and is attached hereto as **Exhibit 1**. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

9737384

# INTRODUCTION[2]

The Debtors and the Committee (the "**Plan Proponents**") hereby propose this joint Plan, which provides for the settlement, resolution, and satisfaction of any and all Claims against, and Equity Interests in, the Debtors.  Reference is made to the Disclosure Statement for (a) a discussion of the Debtors' history, businesses, properties, results of operations, and financial projections; (b) a summary and analysis of this Plan; and (c) certain related matters, including risk factors relating to the consummation of this Plan and Distributions to be made under this Plan.  The Debtors and the Committee are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Capitalized terms used in the Plan, including in this section, have the meanings set forth in Article I.A of the Plan.

All Holders of Claims who are entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.  Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, and Article X.C of the Plan, the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of this Plan.  Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to Holders of Claims to the extent required by Bankruptcy Code section 1125.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS AND SCHEDULES THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINITIONS AND RULES OF CONSTRUCTION

### A.    Definitions

In addition to such other terms as are defined in other sections of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

"**Administrative Expense Claim Bar Date**" means, and is hereby established as, the first Business Day that is at least thirty (30) days after the Effective Date, or such other date that is established by Order of the Bankruptcy Court, and is the date by which requests for payment of Administrative Expense Claims other than Section 503(b)(9) Claims must be filed with the Bankruptcy Court, subject to any exceptions specifically set forth in this Plan.  For the avoidance of doubt, the General Bar Date was the deadline for filing Section 503(b)(9) Claims.

"**Administrative Expense Claim**" means any Claim that has been timely filed before the

---

[2]    Capitalized terms used in this Introduction have the meanings ascribed to those terms in Article I below.

9737384

Administrative Expense Claim Bar Date pursuant to the deadline and procedure set forth herein (except as otherwise provided herein or by a separate order of the Bankruptcy Court) for costs and expenses of administration under Sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code. As used herein, the term "Administrative Expense Claims" shall exclude Professional Fee Claims.

**"Affiliate"** means an "affiliate," as defined in section 101(2) of the Bankruptcy Code.

**"Allowed"** means, with respect to any Claim or Equity Interest arising prior to the Petition Date (including a Section 503(b)(9) Claim), except as otherwise provided herein:

(a)     a Claim that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated that has not been superseded by a filed proof of Claim and as to which the Debtors, the Liquidation Trust or another party-in-interest has not Filed an objection by the Claims Objection Deadline;

(b)     a proof of Claim that has been filed and as to which the Liquidation Trust, the Debtors or another party-in-interest has not Filed an objection by the Claims Objection Deadline;

(c)     a Claim that either is not Disputed by the Claims Objection Deadline or has been allowed by a Final Order;

(d)     a Claim that is allowed: (i) in any stipulation with the Debtors or the Liquidation Trust, as applicable, of amount and nature executed prior to or following the entry of the Confirmation Order and, if necessary, approved by the Bankruptcy Court; or (ii) in or pursuant to any contract, instrument, or other agreement entered into or assumed in connection herewith;

(e)     a Claim or Equity Interest that is allowed pursuant to the terms of this Plan or by Final Order of the Bankruptcy Court; or

(f)     a Disputed Claim as to which a proof of Claim or interest has been timely filed and as to which no objection has been Filed by the Claims Objection Deadline.

If a Claim is Allowed only in part, references to "Allowed" Claims in this Plan include, and are limited to, the portion of such Claim that is Allowed.  Unless otherwise specified in the Plan or by a Final Order, an "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest, rate of return, penalties, fees, or late charges on such Administrative Expense Claim or Claim from and after the Petition Date.

**"Alternative Structure Decision"** means the decision made by the Plan Proponents to modify the Debtors' post-confirmation corporate structure.  If the Plan Proponents agree to an alternative corporate structure prior to entry of the Disclosure Statement Order, such alternative corporate structure will be incorporated into an amended Plan and Disclosure Statement and filed with the Bankruptcy Court.  If the Plan Proponents agree to an alternative corporate structure after entry of the Disclosure Statement Order, such alternative structure will be described in the Plan Supplement.

2

"**Available Cash**" means all Cash held by the Debtors on the Effective Date or by the Liquidation Trust on or after the Effective Date; in each case, after payment, allocation, or reserve (including reserve for Wind-Down Expenses) in accordance with the Plan.

"**Avoidance Actions**" means any and all claims for relief against any and all third parties for the recovery of (a) transfers of Cash, offsets, debt forgiveness and other types or kinds of property, or the value thereof, recoverable pursuant to sections 502, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code, or otherwise applicable non-bankruptcy law, (b) any claims or causes of action of the Debtors' estates under section 510 of the Bankruptcy Code or under applicable laws, and (c) all claims or causes of action that arise under chapter 5 of the Bankruptcy Code.

"**Ballot**" means the ballot form distributed to each Holder of a Claim entitled to vote to accept or reject the Plan.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of New Jersey.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States under 28 U.S.C. § 2075, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

"**Business Day**" means any day that is not a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a), or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

"**Cash**" means legal tender of the United States of America or the equivalent thereof.

"**Causes of Action**" means any claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, including without limitation claims for consequential or punitive damages, assertable directly or derivatively, whether arising before, on, or after the applicable Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

"**Chapter 11 Cases**" means the voluntary chapter 11 cases commenced by the Debtors, which are being jointly administered under the case captioned *In re National Realty Investment Advisors, LLC*, Case No. 22-14539 (JKS), pending before the Bankruptcy Court.

"**Claim**" means a "claim," as defined in section 101(5) of the Bankruptcy Code against any of the Debtors or against any property of the Debtors.

9737384

"**Claims Agent**" means Omni Agent Solutions, Inc.

"**Claims Bar Date**" means, collectively or individually, as applicable, (a) the General Bar Date; (b) the Governmental Claims Bar Date; (c) the Administrative Expense Claim Bar Date; (d) the Rejection Claims Bar Date; and (e) any other deadline for filing proofs of claim established in the Chapter 11 Cases by the Plan or any Order of the Bankruptcy Court.

"**Claims Objection Deadline**" means one year after the Effective Date, subject to any extensions thereof, as provided in Article V.B of the Plan.

"**Claims Register**" means the claims register maintained by the Claims Agent on behalf of the Clerk of the Bankruptcy Court.

"**Class**" means a group of Holders of Claims or Equity Interests classified together under the Plan.

"**Closing Date**" means the date on which all of the Chapter 11 Cases have been closed.

"**Collateral**" means any property or interest in property of a Debtor or its Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or otherwise.

"**Committee**" means the official committee of unsecured creditors appointed on June 30, 2022 [Docket No. 94] by the Office of the U.S. Trustee pursuant to section 1102 of the Bankruptcy Code, as amended on July 21, 2022 [Docket No. 175].

"**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the Order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"**Contributed Claims**" means all Causes of Action that a Contributing Investor has against any Person or Entity that is not a Released Party and are related in any way to the Debtors, their predecessors, their respective affiliates, or any Excluded Parties, including but not limited to (a) all Causes of Action based on, arising out of, or related to the marketing, sale, and issuance of any investments in the Debtors, including any private placement memorandum, Joint Venture Agreements, or guarantees; (b) all Causes of Action for unlawful dividend, fraudulent conveyance, fraudulent transfer, voidable transaction, or other avoidance claims under state or federal law; (c) all Causes of Action based on, arising out of, or related to the misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; (d) all Causes of Action based on, arising out of, or related to any failure to disclose, or actual or attempted cover up or obfuscation of, any of the conduct described in the Disclosure Statement, including in respect

4

9737384

of any alleged fraud related thereto; and (e) any and all JVA Claims classified in Class 6 of the Plan. "Contributed Claims" does not include any quiet title action that the William and Maureen Diehl Trust and/or William Diehl, individually, may assert against Referral Marketing LLC.

"**Contributing Investor**" means an Investor who either (a) submits a Ballot voting to accept the Plan <u>and</u> does not opt out of the Contributing Investor Settlement on their Class 5 Ballot, or (b) does not submit a Ballot on or before the Voting Deadline.  Contributing Investors shall not include any Investor that (a) votes to reject the Plan, (b) opts out of the Contributing Investor Settlement on their Class 5 Ballot, (c) objects to confirmation of the Plan, or (d) is an Excluded Party.

"**Contributing Investor Claim**" means the Investor Claim of a Contributing Investor.

"**Contributing Investor Settlement**" means the settlement set forth in Article III.E of the Plan.

"**Corporate Action**" means any action, approval, authorization, decision, or other act of any kind that would be necessary on the part of any Person or Entity for any corporation, limited liability company, or other Person or Entity to in turn act.

"**CRO**" means Turnaround Advisors, LLC and John Fioretti in his capacity as Chief Restructuring Officer of the Debtors appointed pursuant to the Governance Settlement Order.

"**Creditor**" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

"**Cure**" means, with respect to the assumption of an executory contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code, (a) the Distribution of Cash, or the Distribution of such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties under an executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law, or (b) the taking of such other actions as may be agreed upon by such parties or ordered by the Bankruptcy Court.

"**Debtor**" or "**Debtors**" means individually and collectively, each of the entities listed on **<u>Exhibit 1</u>** hereto, as the same may be amended from time to time.

"**Disallowed**" means, a Claim or Equity Interest, or any portion thereof that (a) is not Scheduled, or is listed on the Debtors' Schedules as contingent, unliquidated, disputed, or in an amount equal to zero, and whose Holder failed to timely File a proof of Claim or Equity Interest by the applicable Claims Bar Date, or (b) has been disallowed or expunged by Order of the Bankruptcy Court; *provided* that an Investor Claim listed as contingent, unliquidated, or disputed on the Debtors' Schedules will not be Disallowed solely as a consequence of an Investor failing to file a proof of claim on or before the applicable Claims Bar Date.

"**Disclosure Statement**" means the disclosure statement relating to this Plan, including, without limitation, all exhibits, schedules, supplements, and modifications thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

9737384

"**Disclosure Statement Order**" means the order approving the Disclosure Statement.

"**Disputed**" means, with respect to any Claim, that portion (or the entirety) of the Claim that is <u>not</u> an Allowed Claim and:

(a)    as to which a proof of Claim has been Filed or deemed Filed under the Bankruptcy Code or an order of the Bankruptcy Court;

(b)    as to which the Debtors or the Liquidation Trust has Filed or may File a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the Plan, as applicable; or

(c)    is otherwise disputed by the Debtors or the Liquidation Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

Before the time that an objection has been or may be filed, a Claim shall also be considered Disputed (a) if the amount or classification of the Claim specified in any proof of Claim exceeds or varies from the amount or classification of any corresponding Claim scheduled by the Debtors in the Schedules; (b) in its entirety, if any corresponding Claim scheduled by the Debtors was scheduled as contingent, unliquidated, or disputed in the Debtors' Schedules; or (c) in its entirety, if no corresponding Claim was scheduled by the Debtors in their Schedules.  All (a) Class 5 Claims held by Non-Contributing Investors and Excluded Parties, and (b) Class 6 JVA Claims shall be Disputed Claims.

"**Distribution**" means any initial or subsequent issuance, payment, or transfer of consideration made under the Plan.

"**Distribution Date**" means the date(s) on which the Liquidation Trustee shall make one or more Distribution(s), which date(s) shall be selected by the Liquidation Trustee in his or her business judgment.

"**Distribution Record Date**" means the record date for determining entitlement of Holders of Claims to receive Distributions under the Plan, which date shall be the Effective Date.

"**Distribution Reserve**" means one or more reserves in respect of Disputed Claims or Unliquidated Claims established under the Plan for Liquidation Trust Interests distributable under the Plan with respect to such Claims and amounts payable under the Plan with respect to such Claims or on account of such reserved Liquidation Trust Interests.

"**EB-5 Debtors**" means NRIA EB5 1300 Manhattan Fund LLC and NRIA EB5 4901 Bergenline Fund LLC.

"**EB-5 Claims**" means investments in the EB-5 Debtors by (a) individual Investors directly into Debtor NRIA EB5 1300 Manhattan Fund LLC pursuant to that certain Confidential Offering Memorandum dated October 10, 2019 and related subscription agreements and (b) non-Debtor NRIA EB5 Bergenline Fund, LLC pursuant to that certain Confidential Private Placement Memorandum dated November 6, 2018, as amended, and related subscription agreements.

6

"**Effective Date**" means the first Business Day after the Confirmation Order becomes a Final Order and all conditions to the Effective Date as set forth in Article VII.A of this Plan have been satisfied or waived.

"**Entity**" means an "entity," as defined in section 101(15) of the Bankruptcy Code.

"**Equity Interests**" means all previously issued and outstanding common stock, preferred stock, Membership Interests, or other ownership interests in any of the Debtors outstanding immediately prior to the Effective Date, including restricted stock, treasury stock, and all options, warrants, calls, rights, puts, awards, commitments, appreciation rights, or any other agreements of any character to convert, exchange, exercise for, or otherwise receive any such common stock, preferred stock, Membership Interests, or other ownership interests.

"**Estate Assets**" means, collectively (a) any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including their books and records and all Avoidance Actions and Causes of Action, as of the Effective Date; and (b) any assets contributed to or recovered by the Liquidation Trust on or after the Effective Date.

"**Estate**" or "**Estates**" means the estate(s) of the Debtor(s) created upon the commencement of the Chapter 11 Cases under section 541 of the Bankruptcy Code.

"**Exchange Act**" means The Securities Exchange Act of 1934, as amended.

"**Exchange Act Registration**" means registration of the Liquidation Trust Interests as a class of equity securities under the Exchange Act.

"**Excluded Parties**" means, except as set forth in paragraph 11 of the Governance Settlement Order and except for employees and officers who are employed by the Debtors on the Effective Date, (a) any prepetition insider, employee, independent contractor, officer, member, manager, or director of any of the Debtors, (b) any non-debtor affiliate of the Debtors or insider of any such non-debtor affiliates, (c) any other Person (including any "broker," salesperson, consultant, affiliated entity, or professional) involved in any way in the marketing or sale of investments, (d) those Persons listed on the Schedule of Excluded Parties attached hereto as **Exhibit 2**, and (e) with respect to (a) through (d), any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

"**Exculpated Parties**" means, individually and collectively, in each case solely in their capacity as estate fiduciaries: (a) the Debtors' Professionals, including any professional retained by the Debtors pursuant to the Ordinary Course Professional Order; (b) the Debtors' employees and officers who are employed by the Debtors on the Effective Date; (c) the Post-Petition Board and its counsel; (d) the CRO; and (e) the Committee, members of the Committee in their capacity as members of the Committee, and the Committee's Professionals; *provided, however*, that the Exculpated Parties shall not include any Excluded Party.

"**Fee Application**" means an application by a Professional for allowance of a Professional Fee Claim.

"**Fee Examiner**" means Diana Goldberg Adams (or any Bankruptcy Court-approved

successor) in her (or his) capacity as the fee examiner appointed pursuant to the Fee Examiner Order.

**"Fee Examiner Order"** means the *Order Appointing an Independent Fee Examiner and Establishing Procedures* [Docket No. 1017] (or any other Bankruptcy Court order appointed a fee examiner).

**"File," "Filed," or "Filing"** means duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Cases, except with respect to proofs of claim that must be filed with the Claims Agent, in which case "File" or "Filed" means duly and properly filed with the Claims Agent and reflected on the official Claims Register maintained by the Claims Agent.

**"Final Decree"** means an order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Chapter 11 Cases.

**"Final Order"** means an Order of the Bankruptcy Court or any other adjudicative body, which Order has not been stayed, and as to which the time to appeal or to move for reargument or rehearing has expired and no appeal, or motion for reargument or rehearing shall then be pending.

**"Fund"** means NRIA Partners Portfolio Fund I, LLC, a Debtor herein.

**"General Bar Date Order"** means the *Order (A) Establishing Deadlines to File Proofs of Claim Against or Interests in the Debtors, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, (B) Approving the Form and Manner of Notice of the Bar Dates, (C) Authorizing Publication of the Bar Dates, and (D) Granting Related Relief* [Docket No. 1016] and any other further order(s) entered by the Bankruptcy Court establishing the bar dates for filing proofs of claim or interest and granting related relief and implemented related procedures.

**"General Bar Date"** means December 20, 2022, established by the General Bar Date Order.

**"General Contractor JVA"** means a joint venture agreement, profit sharing agreement, or the legal and financial equivalent thereof executed by one or more of the Debtors whereby the non-debtor counterparty was the general contractor for the project under development.

**"General Contractor JVA Claim"** means any Claim or Equity Interest arising from a General Contractor JVA.

**"Governance Settlement Order"** means that certain *Order Granting Debtors' Motion For Entry of an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (A) Settling the Chapter 11 Trustee Motion; (B) Establishing a Board of Independent Managers For National Realty Investment Advisors, LLC; (C) Authorizing the Debtors to (I) Retain Turnaround Advisors, LLC to Provide a Chief Restructuring Officer, Nunc Pro Tun to August 1, 2022, and (II) Approve the Agreement Related Thereto; and (D) Granting Related Relief* [Docket No. 288].

**"Governmental Claims Bar Date**" means December 27, 2022, established by the General Bar Date Order.

9737384

"**Governmental Unit**" means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

"**Holder**" means the Entity that is the owner of record of a Claim, Equity Interest, or Liquidation Trust Interest, as applicable.

"**Impaired**" means, with respect to any Class, a Class that is impaired as set forth in section 1124 of the Bankruptcy Code.

"**Insurance Policy**" includes any policy of insurance coverage of any kind (including any and all amendments, endorsements, renewals, and extensions thereof) that at any time belonged or belongs to or included or includes the Debtors as a named insured, additional insured, beneficiary, or assignee.

"**Insured Claim**" means any Claim or portion of a Claim (other than a Claim held by an employee of the Debtors for workers' compensation coverage under the workers' compensation program applicable in the particular state in which the employee is employed by the Debtors) that is insured under the Debtors' Insurance Policies, but only to the extent of such coverage.

"**Intercompany Claim**" means a Claim of one Debtor against another Debtor arising prior to the Effective Date.

"**Investor**" means any Entity who holds or asserts an Investor Claim.

"**Investor Claim**" means a Claim asserted against or Equity Interest asserted in any of the Debtors that is based upon or related to an investment in any of the Debtors, including the EB-5 Debtors, but excluding any JVA Claims. For purposes of the Plan and except as expressly provided herein, an Investor Claim shall be treated as a "Claim", regardless of whether such Investor Claim arises from a Claim asserted against one or more of the Debtors or an Equity Interest asserted in one or more of the Debtors.

"**Investor Schedule**" means the schedule of principal investments and prepetition distributions attached hereto as **Exhibit 3**.

"**Joint Venture Agreements**" means the General Contractor JVAs, the Lender JVAs, the One Dollar JVAs, and the Operating Agreement JVAs.

"**JVA Claim**" means any Claims or Equity Interest under any Joint Venture Agreement with respect to any specific parcel of the Debtors' property, including Claims against or Equity Interests in one or more of the Debtors that is a General Contractor JVA Claim, a One Dollar JVA Claim, an Operating Agreement JVA Claim, or a Lender JVA Net Profits Claim, but excluding any Lender JVA Mortgage Claim.

"**Lender JVA**" means a joint venture agreement, profit sharing agreement, or the legal and financial equivalent thereof with one or more of the Debtors pursuant to which the "Venturer" identified therein was required to lend funds to NRIA in exchange for a note and alleged mortgage on a property and an interest in the Fund.

9

"**Lender JVA Mortgage Claims**" means that portion of a Claim or Equity Interest arising from a Lender JVA that is secured by a mortgage interest in a specific parcel of the Debtors' property, which portion shall be considered an "Other Secured Claim" for purposes of this Plan.

"**Lender JVA Net Profits Claims**" means any remaining Claim or Equity Interest arising from a Lender JVA, excluding the Lender JVA Mortgage Claims.

"**Lien**" means any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

"**Liquidation Trust**" means a liquidation trust established on the Effective Date for the benefit of the Liquidation Trust Beneficiaries in accordance with the terms of the Plan and the Liquidation Trust Agreement.

"**Liquidation Trust Actions**" means, collectively, all Avoidance Actions and Causes of Action held by the Debtors or the Estates and any Causes of Action that are contributed to the Liquidation Trust as Contributed Claims against any Person or Entity that is not a Released Party. A non-exclusive analysis of the Liquidation Trust Assets that are being preserved under the Plan will be filed as part of the Plan Supplement.

"**Liquidation Trust Advisory Board**" means an advisory board for the Liquidation Trust consisting of three (3) members to be identified in the Plan Supplement, with one (1) member selected by the Debtors and two (2) members selected by the Committee.

"**Liquidation Trust Agreement**" means the agreement substantially in the form Filed in the Plan Supplement establishing and delineating the terms and conditions of the Liquidation Trust, including the rights and duties of the Liquidation Trustee.

"**Liquidation Trust Assets**" means, collectively, (a) the Liquidation Trust Actions; (b) the Liquidation Trust Funding; (c) 100% of the equity interests in the Wind-Down Entities (and all proceeds and distributions from such entities); (d) all other Estate Assets, including Available Cash as of the Effective Date and Available Cash that is possessed by or turned over to the Liquidation Trust after the Effective Date; and (e) other non-real-estate-related assets or entities that may be transferred or otherwise provided, directly or indirectly, to or for the benefit of the Debtors (after the Petition Date but before the Effective Date) or the Liquidation Trust (on or after the Effective Date) by any Person or Entity.

"**Liquidation Trust Beneficiary**" means each Holder of a Liquidation Trust Interest.

"**Liquidation Trust Expenses**" means any and all reasonable fees, costs, and expenses incurred by the Liquidation Trustee not inconsistent with the Plan or the Liquidation Trust Agreement, including the maintenance or disposition costs of the Liquidation Trust Assets (including Liquidation Trustee fees, indemnity reserves, attorneys' fees, the fees of professionals, and other Persons or Entities retained by the Liquidation Trustee, personnel-related expenses, and any taxes imposed on the Liquidation Trust or in respect of the Liquidation Trust Assets), and any other expenses incurred or otherwise payable in accordance with the Liquidation Trust Agreement.

10

9737384

**"Liquidation Trust Funding"** means Cash required to (a) make payments in accordance with the Plan to pay Liquidation Trust Expenses, Allowed Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Class 1 Claims, Allowed Class 2 Claims, Allowed Class 3 Claims, Allowed Class 4 Claims, and Allowed Class 5 Claims; and (b) fund any other unfunded post-Confirmation reserve requirements of the Liquidation Trust (including Distribution Reserves) in connection with the Plan, any agreements, or any Order.

**"Liquidation Trust Indemnified Parties"** means the Liquidation Trustee, the members of the Liquidation Trust Advisory Board, and his or her Related Parties, each in their capacities as such.

**"Liquidation Trust Interests"** means the interests to be distributed to Holders of Allowed Claims in Classes 5 and 7 (if any) under the Plan.

**"Liquidation Trustee"** means a Person or Entity selected by the Committee and reasonably acceptable to the Debtors that is appointed pursuant to the Liquidation Trust Agreement.

**"Membership Interests"** means the membership interests in any of the Debtors.

**"Net Investor Claim Amount"** means (a) any Cash received by or on behalf of a Debtor from or on behalf of an Investor prior to the Petition Date minus (b) any and all payments or transfers of Cash or other property (other than Membership Interests in another Debtor) from the Debtors to or on behalf of such Investor prior to the Petition Date, in each case based upon the Debtors' books and records. For the avoidance of doubt, no unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a Debtor other than the Fund into the Fund shall be included in the calculation of the Net Investor Claim Amount with respect to each Investor Claim.

**"Non-Contributing Investor"** means any Investor that is not a Contributing Investor, including those Investors that (a) vote to reject the Plan, (b) opt out of the Contributing Investor Settlement on their Class 5 Ballot, (c) object to confirmation of the Plan, or (d) are an Excluded Party.

**"Non-Investor General Unsecured Claim"** means an unsecured, non-priority Claim asserted against any the Debtors that is not an Investor Claim or a JVA Claim, including, for the avoidance of doubt, all Rejection Claims; *provided, however*, that "Non-Investor General Unsecured Claims" shall exclude (a) any Claims arising from any executory contracts or unexpired leases that are assumed during the Chapter 11 Cases and (b) any vendor or other Claims satisfied in the ordinary course of business pursuant to an Order during the Chapter 11 Cases.

**"NRIA"** means National Realty Investment Advisors, LLC, a Debtor herein.

**"One Dollar JVA"** means a joint venture agreement, profit sharing agreement, or the legal and financial equivalent thereof with one or more of the Debtors pursuant to which the "Venturer" identified therein was required to advance $1 to NRIA in exchange for a note from NRIA and investment in the Fund.

9737384

**"One Dollar JVA Claims"** means a Claim or Equity Interest arising from an One Dollar JVA.

**"Operating Agreement JVA"** means a joint venture agreement, profit sharing agreement, or the legal and financial equivalent thereof executed with one or more of the Debtors that required an amendment to a Debtor's operating agreement to grant the investor a direct interest in that Debtor.

**"Operating Agreement JVA Claims"** means a Claim or Equity Interest arising from an Operating Agreement JVA.

**"Order"** means an order or judgment of the Bankruptcy Court or other adjudicative body.

**"Ordinary Course Professional Order"** means the *Order Authorizing the Debtors to Employ and Compensate Professional Utilized in the Ordinary Course of Business* [Docket No. 613].

**"Other Secured Claims"** means any Secured Claims that are not Third-Party Mortgage Claims.  For the avoidance of doubt, "Other Secured Claims" shall include Lender JVA Mortgage Claims for purposes of this Plan.

**"Person"** means a "person," as such term is defined in section 101(41) of the Bankruptcy Code.

**"Petition Date"** means June 7, 2022, the date on which the Debtors filed their voluntary petitions for relief commencing the Chapter 11 Cases.

**"Plan"** means, collectively, this plan of liquidation for the Debtors under chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be altered, amended, or modified from time to time.

**"Plan Proponents"** has the meaning set forth in the preamble.

**"Plan Supplement"** means the compilation of documents and forms of documents, schedules and exhibits to the Plan, as the same may be altered, amended, modified, or supplemented.  The Plan Supplement will be filed with the Bankruptcy Court no later than seven (7) days before the deadline to object to confirmation of the Plan.

**"Post-Petition Board"** means reconstituted board for NRIA consisting of Hon. Kevin Carey (Ret.), Hon. Kevin Gross (Ret.) and Bernard Katz that was established and approved by the Bankruptcy Court pursuant to Governance Settlement Order.

**"Priority Non-Tax Claim"** means Claims or portions thereof entitled to priority in payment pursuant to Sections 507(a)(4), 507(a)(5), 507(a)(7) or 507(a)(9) of the Bankruptcy Code, in any case to the greatest extent permitted.

**"Priority Tax Claim"** means any claim of a Governmental Unit of the kind entitled to

priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Professional**" means (a) a Person or Entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330 and/or 331 of the Bankruptcy Code, or (b) the Fee Examiner and her counsel.

"**Professional Fee Claim**" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred from and after the Petition Date through and including the Effective Date, as well as any fees associated with the preparation of Fee Applications after the Effective Date.

"**Professional Fee Reserve**" means the reserve established and funded by the Liquidation Trust on the Effective Date pursuant to Article III.A.2 of the Plan to provide sufficient funds to satisfy all unpaid Allowed Professional Fee Claims.

"**Pro Rata Share**" means a number (expressed as a percentage) equal to the proportion that an Allowed Claim in Classes 5 and 7 (if any) bear to the aggregate amount of: (a) the Allowed Claims in such Classes and (b) the Claims, Disputed or undisputed, otherwise asserted but not yet Disallowed (in their aggregate face or, if applicable, estimated amount) in such Classes, as of the date of determination.

"**Rejection Claim**" means any claim for monetary damages as a result of the rejection of any prepetition executory contract or unexpired lease, whether rejected pursuant to the Confirmation Order or otherwise.

"**Rejection Claims Bar Date**" means, to the extent not previously established by prior Order, the first Business Day that is thirty (30) calendar days after the Effective Date.

"**Related Parties**" means, collectively, all of the respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, professional persons, representatives, insiders (as defined in section 101(31) of the Bankruptcy Code), Affiliates, and successors of the referenced Person or Entity.

"**Released Parties**" means, individually and collectively, in each case solely in their capacity as such: (a) the Debtors' Professionals; (b) the Debtors' employees and officers who are employed by the Debtors on the Effective Date; (c) the Post-Petition Board and its counsel; (d) the CRO; and (e) the Committee, members of the Committee in their capacity as members of the Committee, and the Committee's Professionals; *provided, however*, that the Released Parties shall not include any Excluded Party.

"**Releasing Parties**" means, collectively, (a) the Debtors, (b) the Estates, and (c) any Person or Entity exercising or seeking to exercise any rights of the Estates (but solely in that capacity), including the Committee (but not their individual members), the CRO, the Liquidation Trustee, the Liquidation Trust, the Wind-Down CEO, and any other successor to the Debtors or any other estate representative that is or could be appointed or selected pursuant to Bankruptcy Code section 1123(b)(3) or otherwise.

13

**"Retained Causes of Action"** means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including without limitation, Avoidance Actions and Contributed Claims; *provided, however*, that the Retained Causes of Action shall not include any rights or Causes of Action against a Released Party or Exculpated Party other than to the extent and for no other purpose than as a defense or objection to a Scheduled Claim or proof of Claim filed in these Chapter 11 Cases.

**"Schedule of Assumed Agreements"** means the schedule of those certain executory contracts and unexpired leases that the Debtors have determined, in the Debtors' reasonable discretion, the Debtors may assume and assign on the Effective Date. The initial Schedule of Assumed Agreements will be Filed as part of the Plan Supplement but remains subject to any modifications that may be made prior to the Effective Date pursuant to Article VI.A.1 of the Plan.

**"Schedules"** means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and Statements of Financial Affairs filed by the Debtors with the Bankruptcy Court pursuant to section 521(a) of the Bankruptcy Code, Bankruptcy Rule 1007(b), and the Official Bankruptcy Forms, as same may be amended from time to time.

**"Section 503(b)(9) Claim"** means a Claim against the Debtors for goods sold to a Debtor in the ordinary course of the applicable Debtor's business and received by the applicable Debtor within twenty (20) days before the Petition Date.

**"Secured Claim"** means a Claim that is secured (a) by a Lien that is valid, perfected, unavoidable, and enforceable under the Bankruptcy Code or applicable non-bankruptcy law or by reason of a Final Order; or (b) as a result of rights of setoff under Section 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the holder's interest in the Estates' interest in such property or to the extent of the amount subject to such setoff, as the case may be.

**"Securities Act"** means The Securities Act of 1933, as amended.

**"Subordinated Claim"** means any Claim that is subordinated to Non-Investor General Unsecured Claims or Investor Claims (a) pursuant to section 510 of the Bankruptcy Code by a Final Order, or (b) by consent of the Creditor holding such Claim.

**"Third-Party Mortgage Claims"** means those alleged Secured Claims of (a) S3 RE Bergenline Funding LLC as it relates to Debtor Bergenline Capital 4901 LLC, (b) S3 RE 1300 Manhattan Funding LLC as it relates to Debtor Manhattan Avenue Capital 1300 LLC, and (c) Toorak Capital Partners or its affiliate as it relates to the property located at 506 Henry Street, Brooklyn, New York.

**"Unclassified Claim"** means any Claim that is not part of any Class, including Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, and Intercompany Claims.

**"Unimpaired"** means any Class of Claims that is not impaired within the meaning of Bankruptcy Code section 1124.

14

9737384

**"Uninsured Portion"** means the portion of any Claim that includes an Insured Claim exceeding the coverage amount applicable to such Insured Claim.

**"Unliquidated Claims"** means any Claim that is Scheduled as unliquidated or that was Filed in an unliquidated amount.

**"U.S. Trustee"** means the United States Trustee for Region 3.

**"Warranty Claims"** means a Claim against any of the Debtors arising under, or with respect to, any warranty program relating to the Debtors' properties and any obligations, whether express, implied, statutory or otherwise, relating to the Debtors' various building and construction projects for properties that were sold prior to the Petition Date, but excluding any other Claim for which a litigation or dispute is pending as of the Effective Date. For the avoidance of doubt, Warranty Claims do not include any claims against the Debtors arising under, or with respect to, any warranty program relating to the Debtors' properties and any obligations, whether express, implied, statutory or otherwise, relating to the Debtors' various building and construction projects for properties that were sold pursuant to an order of the Bankruptcy Court after the Petition Date.

**"Voting Deadline"** means the date fixed by the Bankruptcy Court for voting on accepting or rejecting the Plan in the Disclosure Statement Order.

**"Wind-Down CEO"** means a Person selected by the Debtors and reasonably acceptable to the Committee that is appointed as the chief executive officer of the Wind-Down Entities to liquidate, complete, and/or sell Wind-Down Entity Real Estate Assets.  The identity of the Wind-Down CEO will be set forth in the Plan Supplement.

**"Wind-Down Entities"** means: (i) real estate companies established on or before the Effective Date to hold all Wind-Down Entity Real Estate Assets; and (ii) an intermediate "HoldCo" Wind-Down Entity to manage the "property-owning" Wind-Down Entities, and with authority to, among other things, employ individuals responsible for the administration of such Wind-Down Entities and enter into contracts. The Wind-Down Entities shall hold and manage the Wind-Down Entity Real Estate Assets in accordance with the provisions of the Plan and the Wind-Down Operating Agreements. Operating agreements and other applicable formation documents with respect to each of the Wind-Down Entities will be substantially in the form Filed in the Plan Supplement.

**"Wind-Down Entity Claim Expenses"** means any Cash required to make payments in accordance with the Plan to Holders of Allowed Other Secured Claims, Allowed Third-Party Mortgage Claims, and to counterparties to executory contracts and unexpired leases that are assumed and assigned to one of the Wind-Down Entities under the Plan or otherwise assumed and assigned pursuant to a Final Order.

**"Wind-Down Entity Expenses"** means any and all reasonable fees, costs, and expenses incurred by the Wind-Down Entities not inconsistent with the Plan or the Wind-Down Operating Agreements, including (a) any administrative fees; (b) attorneys' or other professionals' fees and expenses of the Wind-Down Entities; (c) insurance fees or premiums; (d) taxes; (e) escrow expenses; (f) costs associated with any maintenance, liquidation, and administration of the Wind-Down Entities; (g) Wind-Down Entity Claim Expenses; and (h) costs to maintain, develop,

9737384

improve, or insure all Wind-Down Entities while they are being developed, held for sale or otherwise liquidated, and any other expenses incurred or otherwise payable in accordance with the Wind-Down Operating Agreements.

**"Wind-Down Entity Real Estate Assets"** means (a) all real estate assets for each of the Debtors' remaining properties and (b) all architectural plans, engineering plans, surveys, geotech, site plans, developers' agreements, approvals, performance bonds, cash bonds, utilities, landscape plans, environmental plans, special inspections, and permits associated with the Debtors' remaining properties.

**"Wind-Down Operating Agreements"** means operating agreements substantially in the form Filed in the Plan Supplement containing standard and customary provisions regarding ownership and duties for each of the Wind-Down Entities and acceptable to the Plan Proponents.

**"Wind-Down Indemnified Parties"** means the Wind-Down CEO and his Related Parties, each in their capacities as such.

## B.    Interpretation, Rules of Construction, Computation of Time

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings of Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

The provisions of Fed. R. Bankr. P. 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

To the extent of any inconsistency between this Plan and the Disclosure Statement filed in connection herewith, the Plan Supplement or any component thereof, the Plan shall control.

9737384

# ARTICLE II.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**A.    Summary and Classification of Claims and Equity Interests**

This section classifies Claims and Equity Interests – except for Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, and Intercompany Claims which are not classified – for all purposes, including confirmation, Distributions, and voting.  A Claim and Equity Interest is classified in a particular Class only to the extent that the Claim and Equity Interest falls within the Class description.  To the extent that part of a Claim and Equity Interest falls within a different Class description, that part of the Claim is classified in that different Class. The following table summarizes the Classes of Claims and Equity Interests under the Plan:

| CLASS | DESCRIPTION | IMPAIRED / UNIMPAIRED | VOTING STATUS |
|-------|-------------|------------------------|---------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (presumed to accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (presumed to accept) |
| Class 3 | Third-Party Mortgage Claims | Impaired | Entitled to Vote |
| Class 4 | Non-Investor General Unsecured Claims | Unimpaired | Not Entitled to Vote (presumed to accept) |
| Class 5 | Investor Claims | Impaired | Entitled to Vote |
| Class 6 | JVA Claims | Impaired | Not Entitled to Vote (deemed to reject) |
| Class 7 | Subordinated Claims | Impaired | Not Entitled to Vote (deemed to reject) |
| Class 8 | Equity Interests in the Debtors | Impaired | Not Entitled to Vote (deemed to reject) |

**B.    Classification and Voting Controversies**

If a controversy arises regarding whether any Claim or Equity Interest is properly classified under the Plan, then the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.  If the Bankruptcy Court finds that the classification of any Claim or Equity Interest is improper, then such Claim or Equity Interest shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim or Equity Interest shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim or Equity Interest should have been classified, without the necessity of resoliciting any votes on the Plan.

9737384

# ARTICLE III.
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.     Unclassified Claims**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, and Intercompany Claims have not been classified and thus are excluded from the Classes of Claims and Equity Interest set forth Article III.B below.

**1.     Administrative Expense Claims**

Subject to the allowance procedures and the deadlines provided in this Plan, except to the extent any entity entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction of its Allowed Administrative Expense Claim, Cash in an amount equal to the unpaid amount of such Allowed Administrative Expense Claim (a) on the Effective Date or (b) if subject to dispute on the Effective Date, upon entry of a Final Order determining and allowing such Allowed Administrative Expense Claim or as soon thereafter as is practicable.

**FAILURE TO FILE A REQUEST FOR PAYMENT OF AN ADMINISTRATIVE EXPENSE CLAIM ON OR BEFORE THE ADMINISTRATIVE EXPENSE CLAIM BAR DATE (THE DATE THAT IS THIRTY (30) DAYS AFTER THE EFFECTIVE DATE) SHALL RESULT IN SUCH ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER DISALLOWED, BARRED, AND DISCHARGED IN ITS ENTIRETY.**

For the avoidance of doubt, the obligation to File a request for payment of an Administrative Expense Claim on or before the Administrative Expense Claim Bar Date does not apply to the Post-Petition Board or its counsel who shall be paid for their pre-Effective Date services rendered pursuant to the terms of the Governance Settlement Order, as if that Order remained in full force and effect; *provided, however*, that after the Effective Date the Post-Petition Board's counsel shall serve all invoices on the Liquidation Trustee and its counsel (in addition to the parties set forth in the Governance Settlement Order) and the Liquidation Trustee shall be responsible for making payments on account of such invoices.

**2.     Professional Fee Claims**

All final requests for payment of Professional Fee Claims pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), or 1103 must be made by Fee Application Filed with the Bankruptcy Court and served on counsel to the Liquidation Trust, counsel to the U.S. Trustee, and the Fee Examiner no later than thirty (30) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to such Fee Applications must be Filed and served on counsel to the Liquidation Trust, counsel to the Debtors, counsel to the Committee, counsel to the U.S. Trustee, the requesting Professional, and the Fee Examiner on or before the date that is twenty-one (21) calendar days after the date on which the applicable Fee Application was served (or such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting Professional).

18

All Professional Fee Claims shall be paid by the Liquidation Trust to the extent approved by Order of the Bankruptcy Court within five (5) Business Days after entry of such Order.  On the Effective Date, the Liquidation Trust shall establish the Professional Fee Reserve.  The Professional Fee Reserve shall vest in the Liquidation Trust and shall be maintained by the Liquidation Trustee in accordance with the Plan.  The Liquidation Trust shall fully fund the Professional Fee Reserve on the Effective Date in an amount that is agreed upon by the Plan Proponents prior to the Confirmation Hearing and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date.  If the Plan Proponents are unable to agree on an amount by which the Professional Fee Reserve is to be funded, then any of those parties may submit the issue to the Bankruptcy Court, which, following notice and a hearing, shall fix the amount of the required funding.  All Professional Fee Claims that have not previously been paid, otherwise satisfied, or withdrawn shall be paid from the Professional Fee Reserve.  Any excess funds in the Professional Fee Reserve shall be released to the Liquidation Trust to be used for other purposes consistent with the Plan.  For the avoidance of doubt, the Professional Fee Reserve is an estimate and shall not be construed as a cap on the Debtors' obligation to pay in full Allowed Professional Fee Claims. To the extent that there is a shortfall of funds in the Professional Fee Reserve, the Liquidation Trust shall use the Liquidation Trust Assets to pay all Allowed Professional Fee Claims in full.

Notwithstanding the occurrence of the Effective Date, the Fee Examiner shall continue to act in such capacity unless and until all final Fee Applications have been adjudicated by order of the Bankruptcy Court.  The Fee Examiner shall be discharged from her duties and have no further responsibilities following the Court's adjudication of all final Fee Applications.  Following the Effective Date, the Fee Examiner shall be entitled to be compensated by the Liquidation Trust for her services and the services of her counsel in connection with the Fee Applications; *provided that*, the Fee Examiner shall serve on counsel to the Liquidation Trust, counsel to the Debtors, counsel to the Committee, and counsel to the U.S. Trustee, invoices detailing the reasonable fees and costs incurred in connection with the review of the Fee Applications within thirty (30) calendar days after the date on which the last Professional Fee Claim is allowed by order of the Bankruptcy Court.

**3.      Priority Tax Claims**

In full and final satisfaction of each Allowed Priority Tax Claim, if any, except to the extent any Entity entitled to payment of any Allowed Priority Tax Claim has received payment on account of such Claim prior to the Effective Date or agrees in writing to a different treatment with the Plan Proponents or the Liquidating Trust, each Holder of an Allowed Priority Tax Claim shall be paid, at the Liquidation Trustee's option, as follows: (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the later of the Effective Date and thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable nonbankruptcy law as of the calendar month in which the Effective Date occurs (*provided* that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty).

9737384

4.        **Intercompany Claims**

Due to the substantive consolidation in the Plan, Intercompany Claims shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan on account of such Claims.  As of the Effective Date, all Intercompany Claims shall be deemed void, cancelled, and of no further force and effect.

5.        **Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the Debtors on or before the Effective Date.  Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of claim with respect to quarterly fees payable pursuant to 28 U.S.C. § 1930.

**B.        Classified Claims and Equity Interests**

1.        **Class 1 – Priority Non-Tax Claims**

Class 1 consists of all Priority Non-Tax Claims.  Class 1 is Unimpaired under the Plan.

On or as soon as reasonably practicable after the later of (a) the Effective Date and (b) the date on which a Priority Non-Tax Claim becomes payable pursuant to and as specified by a Final Order, the Holder of such Allowed Priority Non-Tax Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Non-Tax Claim, either (a) Cash from the Liquidation Trust equal to the unpaid portion of such Allowed Priority Non-Tax Claim or (b) such other less favorable treatment from the Liquidation Trust to which such Holder and the Liquidation Trust shall have agreed upon in writing.

2.        **Class 2 – Other Secured Claims**

Class 2 consists of all Other Secured Claims, including all Allowed Lender JVA Mortgage Claims.  Class 2 is Unimpaired under the Plan.

The legal, equitable, and contractual rights of Holders of Allowed Class 2 Claims are unaltered by the Plan, and, notwithstanding the vesting of Wind-Down Entity Real Estate Assets in the Wind-Down Entities on the Effective Date, the Liens of the Holders of Allowed Class 2 Claims will continue to attach to their respective Collateral, provided that all such Claims shall remain subject to any and all defenses, counterclaims, and setoff or recoupment rights with respect thereto.  Unless the Plan Proponents and the Holder of an Allowed Class 2 Claim agree to other treatment, on or as soon as is reasonably practicable after the Effective Date, each Holder of an Allowed Class 2 Claim shall receive, at the Plan Proponents' election (such election to be made on or prior to the Effective Date): (a) Cash from the Liquidation Trust in the Allowed amount of such Holder's Allowed Class 2 Claim; or (b) the return by the Liquidation Trust of the Collateral securing such Allowed Class 2 Claim, without representation or warranty by any Person (and without recourse against any Person regarding such Other Secured Claims); or (c) (A) the Cure of any default, other than a default of the kind specified in Bankruptcy Code section 365(b)(2), that Bankruptcy Code section 1124(2) requires to be cured, with respect to such Holder's Allowed Class 2 Claim, without recognition of any default rate of interest or similar penalty or charge, and

20

upon such Cure, no default shall exist; (B) the reinstatement of the maturity of such Allowed Class 2 Claim as the maturity existed before any default, without recognition of any default rate of interest or similar penalty or charge; and (C) retention of its unaltered legal, equitable, and contractual rights with respect to such Allowed Class 2 Claim, including through the retention of any associated Lien on the Collateral securing such Allowed Class 2 Claim.

The Bankruptcy Court shall retain jurisdiction and power to determine the amount necessary to satisfy any Allowed Class 2 Claim for which treatment is elected by the Plan Proponents on or prior to the Effective Date under clause (a) or clause (c) of the immediately foregoing paragraph.  With respect to any Allowed Class 2 Claim for which treatment is elected under clause (b) on or prior to the Effective Date, any Holder of such Allowed Class 2 Claim shall release (and by the Confirmation Order shall be deemed to release) all Liens against any Estate Assets.

Notwithstanding anything else in the Plan, the Holders of Allowed Class 2 Claims will have no right to receive any Distribution from, or otherwise share in, any of the Liquidation Trust Assets to satisfy their Allowed Class 2 Claims.

### 3.  Class 3 – Third-Party Mortgage Claims

Class 3 consists of all Third-Party Mortgage Claims.  Class 3A consists of Third-Party Mortgage Claims asserted by S3 RE Bergenline Funding LLC as it relates to Debtor Bergenline Capital 4901 LLC and S3 RE 1300 Manhattan Funding LLC as it relates to Debtor Manhattan Avenue Capital 1300 LLC.  Class 3B consists of Third-Party Mortgage Claims asserted by Toorak Capital Partners or its affiliate as it relates to the property located at 506 Henry Street, Brooklyn, New York.  The Liens of the Holders of Allowed Class 3 Claims will continue to attach to their respective Collateral and proceeds from such Collateral after the Effective Date, subject to the Avoidance Actions, Causes of Action, and objections to Claims asserted by the Committee in Adversary Proceeding No. 23-01169 (the "S3 Adversary") and that have been reserved under the Plan and in the Plan Supplement, and to the extent such Class 3 Claims are ultimately Allowed. Class 3 is Impaired under the Plan.

Class 3A: S3 RE Bergenline Funding LLC and S3 RE 1300 Manhattan Funding LLC agree that the Third-Party Mortgage Claims asserted by S3 RE Bergenline Funding LLC and S3 RE 1300 Manhattan Funding LLC (collectively, the "S3 Third-Party Mortgage Claims") will be paid in full in Cash when such S3 Third-Party Mortgage Claims become Allowed Class 3 Claims as determined by a Final Order entered by the Bankruptcy Court and that the injunction provisions of Article VIII.C shall apply to S3 RE Bergenline Funding LLC and S3 RE 1300 Manhattan Funding LLC and to any and all successors, assigns, loan participants, and Affiliates until such Final Order is entered, provided that nothing herein shall be deemed to prejudice, waive, or moot the Avoidance Actions, Causes of Action, claims, and objections to the S3 Third-Party Mortgage Claims asserted against S3 RE Bergenline Funding LLC and S3 RE 1300 Manhattan Funding LLC in the S3 Adversary.  For the avoidance of doubt: (i) if the Estates' properties located at 1300 Manhattan Avenue, Union City, New Jersey, and/or 4901 Bergenline Avenue, West New York, New Jersey are sold during the pendency of the S3 Adversary or before the S3 Third-Party Mortgage Claims are adjudicated, settled, Allowed or Disallowed, the Liquidation Trustee shall reserve sufficient proceeds from such sales (to the extent sufficient proceeds are generated) to

satisfy in full the asserted S3 Third-Party Mortgage Claims; (ii) to the extent any portion of the S3 Third-Party Mortgage Claims is Allowed but determined not to be a Secured Claim, such portion shall be classified and afforded the treatment of Class 4 Non-Investor General Unsecured Claims to the extent so Allowed; and (iii) nothing in this Plan, including without limitation, any limitation on the effect of substantive consolidation as set forth in Article IV, Section H *infra*, is intended to or shall impair the rights, remedies, claims or defenses of the Committee, the Liquidation Trust, the Liquidation Trustee, S3 RE Bergenline Funding LLC and/or S3 RE 1300 Manhattan Funding LLC in the S3 Adversary or as preserved under this Plan and the Plan Supplement.

Class 3B: Unless the Plan Proponents or the Liquidation Trustee, as applicable, and Toorak Capital Partners or its affiliate agree to other treatment, at the election of Toorak Capital Partners or its affiliate, with such election to be made on or before the Effective Date, Toorak Capital Partners or its affiliate shall be entitled to either: (A) (i) be paid its Allowed Third-Party Mortgage Claim in full in Cash upon the sale of the property located at 506 Henry Street, Brooklyn, New York (the "506 Henry Street Property"), and (ii) retain its unaltered legal, equitable, and contractual rights under the prepetition loan and mortgage documents (including the right to receive the payment of interest at a rate that is (x) agreed to by the Plan Proponents or the Liquidation Trustee, as applicable, and Toorak Capital Partners or its affiliate, or (y) determined by a Final Order); *provided*, *however*, that if any Claim asserted by Toorak Capital Partners or its affiliate is a Disputed Claim, such Claim shall be treated in accordance with the terms of any Final Order allowing such Claim; or (B) the surrender and return of the 506 Henry Street Property.  For the avoidance of doubt: (i) nothing in this Plan, including without limitation, any limitation on the effect of substantive consolidation as set forth in Article IV, Section H *infra*, shall be deemed to prejudice, waive, or moot any Avoidance Actions, Causes of Action, claims, and objections that may be asserted or assertable by the Plan Proponents or the Liquidation Trustee; and (ii) to the extent that Toorak Capital Partners or its affiliate asserts any Claim or portion thereof that is not a Secured Claim or to the extent any portion of Toorak Capital Partners' Third Party Mortgage Claim is determined not to be a Secured Claim, such Claim or portion thereof shall be classified and afforded the treatment of a Class 4 Non-Investor General Unsecured Claim to the extent so Allowed.

### 4.    Class 4 – Non-Investor General Unsecured Claims

Class 4 consists of all Non-Investor General Unsecured Claims.  Class 4 is Unimpaired under the Plan.

In full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed Class 4 Claims will receive, following payment of Allowed Administrative Expense Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, and Class 3 Claims, payment in full on account of such Allowed Class 4 Claims.

### 5.    Class 5 –Investor Claims

Class 5 consists of all Investor Claims.  Class 5 is Impaired under the Plan.

In full satisfaction, settlement, and release of, and in exchange for, such Investor Claims, the Holders of Allowed Class 5 Claims will receive on or as soon as reasonably practicable after the Effective Date, following payment of Administrative Expense Claims, Priority Tax Claims,

9737384

Class 1 Claims, Class 2 Claims, Class 3 Claims, and Class 4 Claims, their Pro Rata Share of Liquidation Trust Interests that entitle such Holders to Distributions of the Liquidation Trust Assets.

Class 5 Claims of Contributing Investors shall be Allowed in the Net Investor Claim Amount, in accordance with the Contributing Investor Settlement. Subject to the ability of each Holder of a Class 5 Claim to opt out of the Contributing Investor Settlement on their Ballot, each Contributing Investor shall be deemed to have agreed to the Contributing Investor Settlement and their treatment contained in the Plan.

Each Class 5 Ballot will provide an opportunity for Holders of Class 5 Claims to affirmatively opt out of the Contributing Investor Settlement. Holders of Class 5 Claims who (a) submit a Ballot voting to accept the Plan <u>and</u> do not opt out of the Contributing Investor Settlement on their Class 5 Ballot or (b) do not submit a Ballot on or before the Voting Deadline shall be Contributing Investors. Upon the Effective Date, without further action or order of the Bankruptcy Court, each Contributing Investor shall be deemed to have (a) contributed its Contributed Claims to the Liquidation Trust; (b) agreed to the allowance of its Class 5 Claim in the Net Investor Claim Amount; (c) agreed to the terms of the Contributing Investor Settlement; and (d) agreed to execute any documents reasonably requested by the Liquidation Trustee to effectuate the terms of the Plan. In exchange for accepting the Contributing Investor Settlement, the Debtors and their Estates shall, upon the occurrence of the Effective Date and the formation of the Liquidation Trust, be deemed to have waived all Avoidance Actions to avoid and recover any prepetition distributions received by such Contributing Investor with respect to the subject Allowed Class 5 Claim.

Holders of Class 5 Claims that (a) vote to reject the plan, (b) opt out of the Contributing Investor Settlement on their Class 5 Ballot, (c) object to confirmation of the Plan, or (d) are Excluded Parties shall be Non-Contributing Investors. Class 5 Claims held by Non-Contributing Investors shall be Disputed Claims and subject to a claim objection, Avoidance Action or other remedies available to the Debtors or the Liquidating Trust, as applicable. The Debtors' Estates, the Liquidation Trustee, and the Plan Proponents reserve all rights to object to the validity, amount, or any other aspect of any Claims held by Non-Contributing Investors, including Class 5 Claims. The Debtors' Estates, the Liquidation Trustee, and the Plan Proponents also reserve any Liquidation Trust Actions that may exist regarding Non-Contributing Investors, all of which are hereby retained and preserved by and for the benefit of the Liquidation Trust.

6.      **Class 6 – JVA Claims**

Class 6 consists of all JVA Claims. Class 6 is Impaired under the Plan.

The JVA Claims are Disputed Claims.

Upon any JVA Claim becoming Allowed by a Final Order, in full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed Class 6 Claims will receive on or as soon as reasonably practicable after entry of a Final Order allowing such JVA Claim, following payment of Administrative Expense Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, and Class 5 Claims, payment on such Allowed Class 6 Claims from Liquidation Trust Assets in accordance with the terms of the applicable Joint Venture

9737384

Agreement and in such amount as determined by adjudication through a Final Order.

JVA Claims that are Disallowed shall receive no Distribution under the Plan.

### 7.      Class 7 –Subordinated Claims

Class 7 consists of all Subordinated Claims.  Class 7 is Impaired under the Plan.

The Holders of Allowed Subordinated Claims will retain a residual right to receive their Pro Rata Share of Liquidation Trust Interests that entitle such Holders to Distribution of Liquidation Trust Assets, following payment of Administrative Expense Claims, Priority Tax Claims, Class 1 Claims, Class 4 Claims, Class 5 Claims, and Class 6 Claims.

The Plan Proponents do not believe that Holders of Allowed Class 7 Claims will receive any Distribution under the Plan.  Accordingly, the Plan Proponents have determined not to solicit the votes of the Holders of any Class 7 Claims, and such Holders shall be deemed to have rejected the Plan and, therefore, are not entitled to vote on the Plan.

### 8.      Class 8 – Equity Interest in the Debtors

Class 8 consists of all Equity Interests in the Debtors.  Class 8 is Impaired under the Plan.

Equity Interests in the Debtors shall not be entitled to, and shall not, receive or retain any property or interest in property under the Plan on account of such Equity Interests.  As of the Effective Date, all Equity Interests in the Debtors shall be deemed void, cancelled, and of no further force and effect.  Class 8 is deemed to have rejected the Plan and, therefore, Holders of Equity Interests in the Debtors are not entitled to vote on the Plan.

### C.      Special Provision Concerning Warranty Claims

Except with respect to warranties provided by the Debtors after the Petition Date that will continue to be honored, the Liquidation Trust and the Wind-Down Entities will have no further responsibility to honor or satisfy any warranty program relating to the Debtors' properties and any obligations, whether express, implied, statutory or otherwise, relating to the Debtors' various building and construction projects from and after the Effective Date.

The Debtors have served written notice on parties in interest of the specific bar date or deadline for any Creditors to file a proof of claim (or amend any previously filed proof of claim) on account of any Warranty Claims.  If a Creditor fails to timely file a proof of claim on account of a Warranty Claim, the Creditor will be forever barred and estopped from asserting any such Claim against any Debtor from and after the Effective Date.  Holders of Allowed Warranty Claims shall be classified in Class 4 of the Plan as Holders of Non-Investor General Unsecured Claims.

### D.      Special Provision Concerning Insured Claims

Any Allowed Non-Investor General Unsecured Claim with respect to an Insured Claim shall be limited to the Uninsured Portion of such Claim, provided such Claims have been timely Filed by the applicable Claims Bar Date.  If there is insurance purchased by or otherwise applicable

9737384

to the Debtors, any Person with rights against or under the applicable Insurance Policy, including the Debtors, the Liquidation Trust, and Holders of Insured Claims, may pursue such rights.

Nothing in this Article III.D shall constitute a waiver of any Causes of Action the Debtors, the Estates, or the Liquidation Trust may hold against any Person, including the Debtors' insurance carriers; and nothing in this Article III.D is intended to, shall, or shall be deemed to preclude any Holder of an Insured Claim from seeking or obtaining a distribution or other recovery from any insurer of the Debtors in addition to (but not in duplication of) any Distribution such Holder may receive under the Plan; *provided, however,* that the Debtors and the Liquidation Trust do not waive, and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled.

The Plan shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtors' insurers under their policies, and the Debtors' insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest or litigate with any Person the existence, primacy, or scope of available coverage under any allegedly applicable policy. The Plan shall not operate as a waiver of any other Claims the Debtors' insurers have asserted or may assert in any proof of claim or of any objections or defenses to any such Claims.

## E.    Comprehensive Settlement of Claims and Controversies

### 1.    General Provisions

Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Equity Interest may have against any Debtor with respect to any Claim, Equity Interest, or any Distribution on account thereof and Causes of Action against any Debtor.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are (a) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (b) fair, equitable, and reasonable.  This comprehensive compromise and settlement is a critical component of the Plan and is designed to provide a resolution of myriad disputed Claims, Liens, and Causes of Action that otherwise could take years to resolve, which would delay and undoubtedly reduce the Distributions that ultimately would be available for all Holders of Claims.

### 2.    Implementing Settlement Elements

Pursuant to the comprehensive settlement negotiated by the Debtors and the Committee, the Plan effectuates, among other things, the following:

(a)    On the Effective Date, each Contributing Investor Claim shall be deemed Allowed under the Plan in the Net Investor Claim Amount set forth in the Investor Schedule with respect to such Claim.  No unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor into the Fund

shall be included in the calculation of the Net Investor Claim Amount with respect to each Investor Claim. Holders of Allowed Class 5 Claims (Investor Claims) that are Contributing Investors shall receive their Pro Rata Share of Liquidation Trust Interests that entitle such Holders to Distributions of the Liquidation Trust Assets.

(b)    On the Effective Date, all Contributing Investors in Class 5 shall be deemed to have contributed to the Liquidation Trust all Contributed Claims held by such Contributing Investor.

(c)    To the extent, and only to the extent, a Contributing Investor Claim is Allowed by subparagraph (a) above, the Debtors and their Estates shall, upon the occurrence of the Effective Date, be deemed to have waived and released all Avoidance Actions to avoid or recover any prepetition distributions received by such Contributing Investor in connection with the subject Allowed Class 5 Claim.

(d)    In accordance with Section IV.H of the Plan, the Debtors will be substantively consolidated. On the Effective Date, the Liquidation Trust shall retain all of the Liquidation Trust Assets and shall contribute the Wind-Down Entity Real Estate Assets to the Wind-Down Entities.

(e)    The Liquidation Trust will be created to most effectively and efficiently pursue the Liquidation Trust Actions for the collective benefit of all the Liquidation Trust Beneficiaries, establish and hold the Distribution Reserves, and receive and distribute to Liquidation Trust Beneficiaries the net proceeds of the Liquidation Trust Assets, Liquidation Trust Expenses, and certain other Claims, all in accordance with the Plan.

(f)    Findings will be sought in the Confirmation Order concerning the nature and extent of the alleged fraud perpetrated by the Debtors' former owners, non-debtor affiliates, and related parties, including reference to the *Order (A) Approving the Administrative Consent Order With the State of New Jersey Bureau of Securities, (B) Authorizing the Debtors to Enter Into the Administrative Consent Order With the State of New Jersey Bureau of Securities, and (C) Granting Related Relief* [Docket No. 1651] and such other findings as agreed by the Plan Proponents, including, without limitation, a finding that from February 2018 through at least October 2021, the Debtors, under the direction and control of the Former Control Persons, operated a *Ponzi* scheme.

## F.    Impaired Classes of Claims and Interests Entitled to Vote

Only the votes of Holders of Allowed Claims in Classes 3 and 5 shall be solicited with respect to the Plan.

## G.    Acceptance by an Impaired Class

In accordance with Bankruptcy Code section 1126(c), and except as provided in Bankruptcy Code section 1126(e), the Holders of Claims in any Class entitled to vote on the Plan shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds in dollar

amount and more than one-half in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

## H.  Presumed Acceptances by Unimpaired Classes

Classes 1, 2, and 4 are Unimpaired under the Plan.  Under Bankruptcy Code section 1126(f), the Holders of Claims in such Unimpaired Classes are conclusively presumed to have accepted the Plan, and, therefore, the votes of such Holders shall not be solicited.

## I.  Impaired Classes Deemed to Reject Plan

The Plan Proponents have determined not to solicit the votes of Holders of any Claims in Class 7, and such Holders shall be deemed to have rejected the Plan and, therefore, such Holders are not entitled to vote on the Plan.  Holders of JVA Claims in Class 6 and Equity Interests in the Debtors in Class 8 are not entitled to receive or retain any property or interests in property under the Plan.  Under Bankruptcy Code section 1126(g), such Holders are deemed to have rejected the Plan, and, therefore, the votes of such Holders shall not be solicited.

## J.  Modification of Votes

Following the Voting Deadline, no Creditors entitled to vote on the Plan will be able to change their votes cast on the Plan or any attendant elections or preferences without the written consent of the Plan Proponents, which consent may be given or withheld in the Plan Proponents' reasonable discretion.

## K.  Confirmation Pursuant to Bankruptcy Code Section 1129(b)

Because at least one Impaired Class is deemed to have rejected the Plan, the Plan Proponents will and hereby request confirmation of the Plan under Bankruptcy Code section 1129(b).  The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

## L.  Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of determining acceptance of the Plan by such Class under Bankruptcy Code section 1129(a)(8).

## M.  Severability of Joint Plan

As further discussed in Article X.C of the Plan, the Plan Proponents may alter, amend, or modify this Plan at or before the Confirmation Hearing, including to remove one or more Debtors from this Plan, in the Plan Proponents' reasonable discretion.

9737384

# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.    Overview**

This Plan provides for the disposition of substantially all the Estate Assets and the Distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code.  The Plan will be implemented by various acts and transactions as set forth in the Plan, including, among other things, the establishment of the Liquidation Trust, the appointment of the Liquidation Trustee, the Wind-Down CEO, and the making of Distributions by the Liquidation Trust in accordance with the Plan.

The Plan Proponents reserve the right to pursue an Alternative Structure Decision prior to or at the Confirmation Hearing if it is determined that an alternative post-confirmation corporate structure is in the best interests of the Debtors' Estates and stakeholders.

**B.    Debtors' Corporate Affairs**

**1.    Debtors' Existing Directors, Officers, and Managers**

On the Effective Date, each of the Debtors' existing directors, officers, and managers (including the members of the Post-Petition Board) shall be terminated automatically without the need for any Corporate Action and without the need for any corporate or limited liability company filings and shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated unless otherwise provided herein).  On the Effective Date, pursuant to the Liquidation Trust Agreement and the Plan, the Liquidation Trustee shall succeed to all such powers as would have been available and applicable to the Debtors' officers and managers (including the members of the Post-Petition Board) in respect of all Liquidation Trust Assets and, subject to the Wind-Down Operating Agreements and Article IV.C. hereof, the Wind-Down CEO shall succeed to all such powers as would have been applicable to the Debtors' officers with respect to the Wind-Down Entity Real Estate Assets; *provided, however*, that the Wind-Down CEO and the Liquidation Trustee may continue to consult with or employ those former officers and employees of the Debtors, as approved by the Liquidation Trustee.

Notwithstanding anything contained in this Plan or the Confirmation Order to the contrary, and notwithstanding the occurrence of the Effective Date, paragraphs 6(b), 6(c), 6(d), 10, and 11 of the Governance Settlement Order shall remain in full force and effect and survive entry of the Confirmation Order.

**2.    Dissolution of the Debtors Other than NRIA**

On the Effective Date, each of the Debtors, other than NRIA, will be dissolved automatically without the need for any Corporate Action, without the need for any corporate or limited liability company filings, and without the need for any other or further actions to be taken by or on behalf of such dissolving Debtor or any other Person or any payments to be made in connection therewith.  In furtherance of the forgoing, the Liquidation Trustee is authorized in its discretion to file any certificates of cancellation as it deems appropriate.

28

9737384

3.      **Corporate Documents and Corporate Authority**

On the Effective Date, the certificates of incorporation, bylaws, operating agreements, and articles of organization, as applicable, of all the Debtors shall be deemed amended to the extent necessary to carry out the provisions of the Plan.  The entry of the Confirmation Order shall constitute authorization for the Debtors, the Liquidation Trustee, and the Wind-Down CEO, as applicable, to take or cause to be taken all actions (including, if applicable, Corporate Actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation.

C.      **Post-Effective Date Governance of the Wind-Down Entities**

1.      **Appointments**

On and after the Effective Date, the initial Wind-Down CEO shall become and serve as the chief executive officer for the Wind-Down Entities.  The compensation for the Wind-Down CEO will be set forth in a separate document to be Filed as part of the Plan Supplement.

2.      **Creation and Governance of the Wind-Down Entities**

On the Effective Date, the Wind-Down CEO and the Liquidation Trustee shall execute the Wind-Down Operating Agreements and shall take any other steps necessary to establish the Wind-Down Entities in accordance with the Plan.  The Wind-Down Entities shall be governed by the Wind-Down Operating Agreements and administered by the Wind-Down CEO.  The powers, rights, duties, and responsibilities of the Wind-Down CEO shall be specified in the Wind-Down Operating Agreements, and shall be subject to the supervision and control of the Liquidation Trustee.  The Liquidation Trustee shall be authorized to establish an intermediate "HoldCo" Wind-Down Entity to manage the "property-owning" Wind-Down Entities, and with authority to, among other things, employ individuals responsible for the administration of such Wind-Down Entities and enter into contracts.  The Wind-Down Entities shall hold and manage the Wind-Down Entity Real Estate Assets in accordance with the provisions of the Plan and the Wind-Down Operating Agreements.

3.      **Wind-Down Entities Pending Closing of the Cases, Vesting of Wind-Down Entity Real Estate Assets**

Consistent with the injunction provisions of Article VIII.C of this Plan, and except to the extent necessary to give effect to the treatment of any Holder of an Allowed Other Secured Claim or Third-Party Mortgage Claim in Classes 2 and 3 of the Plan, respectively, upon the occurrence of the Effective Date, all Wind-Down Entity Real Estate Assets shall vest automatically in the Wind-Down Entities free and clear of all Claims, Liens, rights, or interests.  Such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use or other similar tax.

On and after the Effective Date, the Wind-Down Entities will be wholly-owned subsidiaries of the Liquidation Trust.  The manager of the Wind-Down Entities shall be the Wind-

Down CEO.  The Wind-Down CEO's indemnity and exculpation by the Wind-Down Entities shall, to the greatest extent possible, be the same as the Liquidation Trustee's indemnity and exculpation in connection with the Liquidation Trust, and the Wind-Down CEO may take such steps as appropriate to maintain the good standing of the Wind-Down Entities.

Until the Wind-Down Entities are dissolved, all Cash or property received by the Wind-Down Entities, net of any authorized expenses of the Wind-Down Entities incurred after the Effective Date, shall be transferred to the Liquidation Trust (as and when set forth below).  The Wind-Down Entities (a) shall have the Liquidation Trust as their sole member, (b) shall be treated as disregarded entities for income tax purposes, and (c) shall have a purpose consistent with the purpose of the Liquidation Trust as set forth in Article IV.D.4 of the Plan.

4.        **Liquidation of Wind-Down Entity Real Estate Assets**

The Wind-Down CEO, with the oversight of and subject to the prior approval of the Liquidation Trustee, will be responsible for development and disposition of the Wind-Down Entity Real Estate Assets.  Except to the extent necessary to give effect to the treatment of any Holder of an Allowed Other Secured Claim or Third-Party Mortgage Claim in Classes 2 and 3 of the Plan, respectively, no pre-petition Claims, Liens, rights and interests shall be asserted against, attach, or otherwise impact the post-Effective Date sale of Wind-Down Entity Real Estate Assets.

5.        **Authority to Act on Behalf of Wind-Down Entities**

Subject to the supervision and prior approval of the Liquidation Trustee and provisions of the Wind-Down Operating Agreements, the Wind-Down CEO shall have the authority and right on behalf of the Wind-Down Entities and without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

(a)        retain, compensate, and employ professionals and other Persons to represent the Wind-Down Entities with respect to and in connection with their rights and responsibilities;

(b)        establish, maintain, and administer documents and accounts of the Wind-Down Entities;

(c)        seek and obtain the requisite government approvals and permits necessary to develop and operate the Wind-Down Entities;

(d)        maintain, develop, improve, administer, operate, conserve, supervise, collect, settle, and protect Wind-Down Entity Real Estate Assets (subject to the limitations described herein or in the Wind-Down Operating Agreements);

(e)        sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of Wind-Down Entity Real Estate Assets, or any part thereof or interest therein, upon such terms as are first approved by the Liquidation Trustee and the Wind-Down CEO determines to be necessary, appropriate, or desirable, including the consummation of any sale transaction or disposition for any Wind-Down Entity Real Estate Assets

9737384

as to which an Order was entered before the Effective Date;

(f)   obtain third-party financing and enter into other joint venture arrangements, in each case with respect to Wind-Down Entity Real Estate Assets;

(g)   subject to Article IV.C.3 of the Plan, invest Cash of the Wind-Down Entities, including Cash realized from the liquidation of Wind-Down Entity Real Estate Assets, which investments, for the avoidance of doubt, will not be required to comply with Bankruptcy Code section 345(b);

(h)   negotiate, incur, and pay the Wind-Down Entity Expenses, including in connection with the resolution and satisfaction of any Wind-Down Entity Claim Expenses;

(i)   comply with the Plan, exercise the Wind-Down CEO's rights, and perform the Wind-Down CEO's obligations; and

(j)   exercise such other powers as approved by the Liquidation Trustee and deemed by the Wind-Down CEO to be necessary and proper to implement the Plan.

Commencing on the first Business Day that is no longer than thirty (30) calendar days after the quarter-end of the first full calendar quarter following the Effective Date and continuing on the first Business Day that is no longer than thirty (30) calendar days after each calendar quarter-end thereafter, the Wind-Down Entities will remit to the Liquidation Trust as of such quarter-end any Cash in excess of their respective budgeted reserve for ongoing operations, other anticipated Wind-Down Entity Expenses, and their other Plan obligations (subject to more specific provisions as may be set forth in the Wind-Down Operating Agreements).

The Wind-Down CEO shall, subject to the approval of the Liquidation Trustee, prepare a budget and establish an appropriate cash management system so that the Wind-Down Entities have sufficient funds for ongoing operations, other anticipated Wind-Down Entity Expenses, and their other Plan obligations (subject to more specific provisions as may be set forth in the Wind-Down Operating Agreements).

The Wind-Down Entities shall advise the Liquidation Trustee regarding the status of its affairs on at least a weekly basis or as requested by the Liquidation Trustee (in his or her sole discretion) and shall make available to the Liquidation Trust such information as is necessary for any reporting by the Liquidation Trust.

The Wind-Down CEO shall advise and seek the prior approval of the Liquidation Trustee regarding all material actions and decisions, including the sale of any property prior to entering into the contract of sale, the incurrence of any debt, the expenditure of any funds that were not previously budgeted for and approved by the Liquidation Trustee, the retention of professionals, or executing any material contracts. The Liquidation Trust will have all additional rights to govern over the Wind-Down Entities as are set forth in the Wind-Down Operating Agreements.

## 6.   Removal or Resignation of the Wind-Down CEO

The Wind-Down CEO may be removed by the Liquidation Trustee on thirty (30) days prior

notice by the Liquidation Trustee, in the Liquidation Trustee's sole and absolute discretion, subject to the approval of the Liquidation Trust Advisory Board. The Wind-Down CEO may resign by giving not less than thirty (30) calendar days' prior notice thereof in a notice Filed in the Chapter 11 Cases.

### 7. Successor Wind-Down CEO

At any time that the initial Wind-Down CEO is no longer the Wind-Down CEO, the Liquidation Trustee shall select a replacement Wind-Down CEO, subject to the review and approval of the Liquidation Trust Advisory Board.

### 8. Termination of the Wind-Down CEO and Dissolution of the Wind-Down Entities

Following the sale or other disposition of all Wind-Down Entity Real Estate Assets, and the satisfaction of all Wind-Down Entity Claim Expenses and Wind-Down Entity Expenses, the Wind-Down CEO's role as Wind-Down CEO shall be terminated and the Wind-Down CEO shall file certificates of cancellation to terminate the existence of the Wind-Down Entities.

### 9. Indemnification

The Wind-Down Entities and the Liquidation Trust shall indemnify the Wind-Down Indemnified Parties for, and shall defend and hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence or willful misconduct on the part of the Wind-Down Indemnified Parties (which fraud, gross negligence or willful misconduct, if any, must be determined by a Final Order) for any action taken, suffered, or omitted to be taken by the Wind-Down Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or the Wind-Down Operating Agreements, as applicable.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence or willful misconduct.  To the extent the Wind-Down Entities or the Liquidation Trust indemnifies, defends, and holds harmless any Wind-Down Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidation Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidation Trust Expenses.  The costs and expenses incurred in enforcing the right of indemnification in this Article IV.C.9 shall be paid by the Wind-Down Entities or the Liquidation Trust, as applicable.

### 10. Insurance

The Wind-Down Entities shall be required to obtain any insurance coverages deemed to be reasonably necessary at the Wind-Down Entities' expense for themselves and their respective agents, including coverage with respect to the liabilities, duties, and obligations of the Wind-Down CEO and Liquidation Trustee, which insurance coverage may, at the sole discretion of the Liquidation Trustee, be extended for a reasonable period after the termination of the Wind-Down Operating Agreements.

9737384

**11.    Control Provision**

To the extent there is any inconsistency between the Plan as it relates to Wind-Down Entities and the Wind-Down Operating Agreements, the Plan shall control.

**D.    Liquidation Trust**

**1.    Appointments**

On and after the Effective Date, the initial Liquidation Trustee shall become and serve as Liquidation Trustee. The Liquidation Trustee will receive compensation and reimbursement of reasonable expenses to be specifically set forth in the Liquidation Trust Agreement.

On and after the Effective Date, the initial Liquidation Trust Advisory Board shall begin to serve without further action. The Liquidation Trust Advisory Board will receive compensation and reimbursement of reasonable expenses to be specifically set forth in the Liquidation Trust Agreement.

**2.    Creation and Governance of the Liquidation Trust**

On the Effective Date, the Liquidation Trustee shall execute the Liquidation Trust Agreement and shall take any other steps necessary to establish the Liquidation Trust in accordance with the Plan and the beneficial interests therein. The Liquidation Trust shall be governed by the Liquidation Trust Agreement and administered by the Liquidation Trustee. The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement.

For federal income tax purposes, the transfer of the assets to the Liquidation Trust will be treated as a sale or other disposition of assets to the Liquidation Trust Beneficiaries in exchange for their claims in the Chapter 11 Cases. Any income or loss from the transfer of assets to the Liquidation Trust shall flow through to the ultimate taxpaying member of each Debtor who will be responsible to pay the tax liability, if any. For federal income tax purposes, the Liquidation Trust Beneficiaries shall be treated as the grantors of the Liquidation Trust and deemed to be the owners of the assets of the Liquidation Trust. The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be deemed a transfer to the Liquidation Trust Beneficiaries by the Debtors, followed by a deemed transfer by such Liquidation Trust Beneficiaries to the Liquidation Trust. The Liquidation Trust will consistently report the valuation of the assets transferred to the Liquidation Trust. Such consistent valuations and revised reporting will be used for all federal income tax purposes. Income deductions, gain, or loss from the Liquidation Trust shall be reported to the beneficiaries of the Liquidation Trust in conjunction with the filing of the Liquidation Trust's income tax returns. Each Liquidation Trust Beneficiary shall report income, deductions, gain, or loss on such Liquidation Trust Beneficiary's income tax returns.

**3.    Vesting of Liquidation Trust Assets**

On the Effective Date, the Liquidation Trust will be automatically vested with all of the Debtors' and the Estates' respective rights, title, and interest in and to all Liquidation Trust Assets. Except as specifically provided in the Plan or the Confirmation Order, the Liquidation Trust Assets

33

9737384

shall automatically vest in the Liquidation Trust free and clear of all Claims, Liens, or interests subject only to the Liquidation Trust Interests and the Liquidation Trust Expenses, as provided for in the Liquidation Trust Agreement, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax.  The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all Liquidation Trust Assets.  The Liquidation Trust shall hold and distribute the Liquidation Trust Assets in accordance with the provisions of the Plan and the Liquidation Trust Agreement.

**4.**      **Purpose of the Liquidation Trust**

The Liquidation Trust shall be established for the purpose of pursuing or liquidating the Liquidation Trust Assets and making Distributions to the Liquidation Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

**5.**      **Authority**

Subject to the supervision of the Liquidation Trust Advisory Board, the Liquidation Trustee shall have the authority and right on behalf of the Debtors and the Estates and without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

(a)      review, reconcile, compromise, settle, or object to Claims and resolve such objections as set forth in the Plan;

(b)      calculate and make Distributions and calculate and establish reserves under and in accordance with the Plan;

(c)      retain, compensate, and employ professionals and other Persons to represent the Liquidation Trustee with respect to and in connection with its rights and responsibilities;

(d)      establish, maintain, and administer documents and accounts of the Debtors as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan;

(e)      maintain, conserve, pursue, litigate, collect, settle, and protect the Liquidation Trust Assets (subject to the limitations described herein), including any and all Retained Causes of Action;

(f)      control, govern, supervise, and manage the Wind-Down Entities and the Wind-Down CEO;

(g)      sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the Liquidation Trust Assets or any part thereof or interest therein upon such terms as the Liquidation Trustee determines to be necessary, appropriate, or desirable;

34

    (h)      negotiate, incur, and pay the Liquidation Trust Expenses;

    (i)       prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors that are required under the Plan, by any Governmental Unit, or by applicable law;

    (j)      compile and maintain the official Claims Register, including for purposes of making initial and subsequent Distributions under the Plan;

    (k)     take such actions as are necessary or appropriate to wind-down and dissolve the Debtors;

    (l)      comply with the Plan, exercise the Liquidation Trustee's rights, and perform the Liquidation Trustee's obligations; and

    (m)    exercise such other powers as deemed by the Liquidation Trustee to be necessary and proper to implement the Plan.

To the extent necessary to give full effect to its administrative rights and duties under the Plan, the Liquidation Trustee shall be deemed to be vested with all rights, powers, privileges, and authorities of (a) an appropriate corporate or limited liability company officer or manager of each of the Debtors under any applicable non-bankruptcy law and (b) a "trustee" of each of the Debtors under Bankruptcy Code sections 704 and 1106.

### 6.    Limitation of Liability

The Liquidation Trustee shall enjoy all of the rights, powers, immunities, and privileges applicable to a Bankruptcy Code chapter 7 trustee with respect to limitations of liability. The Liquidation Trustee may, in connection with the performance of its functions, in its sole and absolute discretion, consult with its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing, except to the extent that any such act or the failure to take any action constitutes willful misconduct, gross negligence, or fraud. Notwithstanding such authority, the Liquidation Trustee shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and its determination not to do so shall not result in the imposition of liability on the Liquidation Trustee unless such determination is based on willful misconduct, gross negligence, or fraud. Persons dealing with the Liquidation Trustee shall look only to the Liquidation Trust Assets to satisfy any liability incurred by the Liquidation Trustee to such Person in carrying out the terms of the Plan or the Liquidation Trust Agreement, and the Liquidation Trustee shall have no personal obligation to satisfy such liability.

### 7.    Indemnification

The Liquidation Trust shall indemnify the Liquidation Trust Indemnified Parties for, and shall defend and hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence or willful misconduct on the

9737384

part of the Liquidation Trust Indemnified Parties (which fraud, gross negligence or willful misconduct, if any, must be determined by a Final Order) for any action taken, suffered, or omitted to be taken by the Liquidation Trust Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or the Liquidation Trust Agreement, as applicable.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence or willful misconduct.  To the extent the Liquidation Trust indemnifies, defends, and holds harmless any Liquidation Trust Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidation Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidation Trust Expenses.  The costs and expenses incurred in enforcing the right of indemnification in this Article IV.D.7 shall be paid by the Liquidation Trust.

8.    **Insurance**

The Liquidation Trustee shall be authorized, but not required, to obtain any insurance coverages deemed to be reasonably necessary, at the Liquidation Trust's sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties, and obligations of the Liquidation Trustee, which insurance coverage may, at the sole discretion of the Liquidation Trustee, be extended for a reasonable period after the termination of the Liquidation Trust.

9.    **Tax Reporting**

The Liquidation Trust shall timely file tax returns for the Liquidation Trust treating the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

The Liquidation Trust shall be responsible for timely payment of all taxes (if any) imposed on and payable by the Liquidation Trust, the Wind-Down Entities, or any Liquidation Trust Assets.

The Liquidation Trust shall distribute such tax-related notices, beneficiary statements, and information returns, as applicable, to the applicable Holders of Allowed Claims as are required by applicable law or that the Liquidation Trustee determines are otherwise necessary or desirable.

The Liquidation Trust is authorized to file a request for expedited determination under Bankruptcy Code section 505(b) for any tax returns filed with respect to the Debtors.

10.    **Distributions to Liquidation Trust Beneficiaries**

The Liquidation Trust shall reserve up to $5 million to make an initial Distribution on a Pro Rata Basis to Holders of Allowed Class 5 Claims upon full satisfaction of Administrative Expense Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims, and Class 4 Claims.

The Liquidation Trust, in the Liquidation Trustee's discretion, subject to the approval of the Liquidation Trust Advisory Board, may make periodic Distributions of additional Cash to the Liquidation Trust Beneficiaries at any time following the Effective Date, provided that such Distributions are otherwise permitted under, and not inconsistent with the Plan, the Liquidation Trust Agreement, and applicable law.

36

9737384

No later than (a) the first Business Day that is at least 180 calendar days after the Effective Date and (b) the last Business Day of each subsequent 180-calendar-day period until the Closing Date, the Liquidation Trustee shall calculate Distributions to be made to the Liquidation Trust Beneficiaries based on the amount of Available Cash at such time and promptly thereafter may make Distributions, if any, of the amount so determined.

### 11.    Cash Investments

The Liquidation Trustee may invest Cash of the Liquidation Trust, including any earnings on or proceeds from, any Cash realized from the liquidation of the Liquidation Trust Assets, or any Cash that is remitted to the Liquidation Trust from the Wind-Down Entities, which investments, for the avoidance of doubt, will not be required to comply with Bankruptcy Code section 345(b); *provided, however*, that such investments must be investments that are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable guidelines, rulings, or other controlling authorities.

### 12.    Registration and Restriction on Transfer of the Liquidation Trust Interests

The record Holders of the Liquidation Trust Interests shall be recorded and set forth in a registry maintained by, or at the direction of, the Liquidation Trustee expressly for such purpose. Such obligation may be satisfied by the Liquidation Trust's retention of an institutional transfer agent for the maintenance of such registry, and notwithstanding anything to the contrary contained in this paragraph, the Liquidation Trust may, in connection with any Exchange Act Registration with respect to the Liquidation Trust Interests, in its discretion cause the Liquidation Trust Interests to be issued in book entry form.

Upon their issuance as of the Effective Date, and thereafter until the effectiveness of any Exchange Act Registration of the Liquidation Trust Interests, the Liquidation Trust Interests shall not be certificated and be further subject to restrictions on transfer under the Liquidation Trust Agreement, which restrictions shall prohibit the Liquidation Trust Interests from being certificated or transferable except by operation of law or by will or the laws of descent and distribution, in each case following written notice to the Liquidation Trust. The Liquidation Trust shall be administered in a manner consistent with the SEC's published guidance on liquidating trusts. Upon the effectiveness of an Exchange Act Registration of the Liquidation Trust Interests, such transfer restrictions under the Liquidation Trust Agreement may terminate and the Liquidation Trust Interests may be transferable by the Holders thereof to the extent otherwise permissible under applicable law.

### 13.    Exemption

To the extent the Liquidation Trust Interests are deemed to be "securities," the issuance of such interests under the Plan are exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under the Securities Act and any applicable state and local laws requiring registration of securities.

### 14.    Contribution of Contributed Claims

On the Effective Date, all Contributed Claims will be irrevocably contributed to the Liquidation

9737384

Trust and shall thereafter be Liquidation Trust Actions for all purposes. No Person or Entity may rely on the absence of a specific reference in the Plan, the Confirmation Order, the Liquidation Trust Agreement, or the Disclosure Statement to any Contributed Claims against such Person or Entity as any indication that the Liquidation Trust will not pursue any and all available Contributed Claims against such Person or Entity. The objection to the Allowance of any Claims will not in any way limit the ability or the right of the Liquidation Trust to assert, commence, or prosecute any Contributed Claims. Nothing contained in the Plan, the Confirmation Order, the Liquidation Trust Agreement, or the Disclosure Statement will be deemed to be a waiver, release, or relinquishment of any Contributed Claims that the Contributing Claimants had immediately prior to the Effective Date. The Liquidation Trust shall have, retain, reserve, and be entitled to assert all Contributed Claims fully as if the Contributed Claims had not been contributed to the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement. For the avoidance of doubt, (a) the Contributed Claims shall not include the rights of any of the Holders of Class 5 Claims to receive the Distributions, if any, to which they are entitled under the Plan; (b) the Contributed Claims shall not include any Causes of Action against any of the Released Parties; and (c) in the exercise of its reasonable discretion and in accordance with the Liquidation Trust Agreement, the Liquidation Trust shall not be obligated to pursue all or any given Contributed Claims.

If an Excluded Party fails to timely file an objection to the proposed assignment and transfer of the Contributed Claims or other terms of the Plan related to the Contributed Investor Settlement by the deadline for filing objections to the confirmation of this Plan, that Excluded Party shall be deemed to have irrevocably consented to the assignment and transfer of Contributed Claims and other Plan terms related to the Contributed Investor Settlement and will be forever barred from asserting that the assignment and transfer of the Contributed Claims or other Plan terms affect the ability of the Liquidation Trust to pursue the Contributed Claims against such Excluded Party.

If the Bankruptcy Court does not enter a Final Order approving the assignment and transfer of the Contributed Claims to the Liquidation Trust or if a subsequent court invalidates the assignment of the Contributed Claims to the Liquidation Trust, then pursuant to the provisions of Section 1123(b)(3)(B) of the Bankruptcy Code, the Liquidation Trustee is hereby appointed as the representative of the Contributing Investors for the purpose of pursuing the Contributed Claims. If an Excluded Party fails to timely file an objection to the proposed appointment by the deadline for filing objections to confirmation of this Plan, that Excluded Party shall be deemed to have irrevocably consented to the appointment and will be forever barred from asserting that the appointment in any way affects the ability of the Liquidation Trust to pursue the Contributed Claims against the Excluded Parties.

Any recoveries on the Contributed Claims by the Liquidation Trustee will be paid to the Liquidation Trust, to be administered and distributed pursuant to the Plan and Liquidation Trust Agreement.

### 15.    Termination of the Liquidation Trust, Wind-Down Authority

The existence of the Liquidation Trust and the authority of the Liquidation Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the

9737384

date on which all of the Liquidation Trust Assets are liquidated in accordance with the Plan, the funds in the Liquidation Trust have been completely distributed in accordance with the Plan, all tax returns and other filings or reports have been filed with the appropriate state or federal regulatory authorities, and the Order closing the remaining Chapter 11 Cases is a Final Order.  In no event shall the Liquidation Trust be terminated later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before or after such fifth anniversary, determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, unless a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Liquidation Trust Assets.  The termination of the Liquidation Trust shall not affect, impede, release, waive or otherwise impair any Cause of Action or the continued prosecution thereof; it being the intent of the Plan to allow Causes of Action to be pursued through Final Order (notwithstanding any termination of the Liquidation Trust).  After the Liquidating Trust is terminated, the Liquidating Trustee shall wind down the affairs of the Liquidating Trust consistent with this paragraph.

### 16.    Control Provision

To the extent there is any inconsistency between the Plan as it relates to the Liquidation Trust and the Liquidation Trust Agreement, the Plan shall control.

### E.    Preservation of Privileges and Defenses

The actions taken by the Debtors (prior to the Effective Date), the Wind-Down Entities (after the Effective Date), the Liquidation Trust (after the Effective Date), or any of their respective Related Parties in connection with the Plan shall not be (or be deemed to be) a waiver of any privilege or defense of the Debtors (prior to the Effective Date), the Wind-Down Entities (after the Effective Date), or the Liquidation Trust (after the Effective Date), as applicable, including any attorney-client privilege or work-product doctrine.  Notwithstanding any Debtors providing any privileged information related to any Liquidation Trust Actions to the Liquidation Trustee, the Liquidation Trust, the Wind-Down Entities, or any Person associated with any of the foregoing, such privileged information shall be without waiver in recognition of the joint, common, or successor interest in prosecuting the Liquidation Trust Actions and shall remain privileged.  Only the Liquidation Trustee shall have the right to waive the attorney-client privilege, work-product doctrine, or other protections as to the Debtors (prior to the Effective Date), the Wind-Down Entities, and the Liquidation Trust (after the Effective Date).

### F.    Preservation of Rights of Action

Except as otherwise provided in the Plan or the Confirmation Order, from and after the Effective Date, the Liquidation Trust will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or Estates' Causes of Action (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions and Contributed Claims, all well as Liquidation Trust Actions, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases.  In accordance with Bankruptcy Code section 1123(b)(3), the Liquidation Trustee, as a successor in interest to the Debtors,  the Estates and the

39

9737384

Contributing Investors (solely with respect to the Contributed Claims)  may and will have the exclusive right, power, and interest  to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the Liquidation Trust Actions without notice to or approval from the Bankruptcy Court.  In accordance with the Plan, and pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the Liquidation Trustee may compromise and settle Liquidation Trust Actions.

The failure to specifically identify in the Disclosure Statement or the Plan any potential or existing Avoidance Actions or Causes of Action as a Liquidation Trust Action or Contributed Claims is not intended to and shall not limit the rights of the Liquidation Trust to pursue any such Avoidance Actions or Causes of Action.  Unless a Liquidation Trust Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order), the Plan Proponents expressly reserve such Liquidation Trust Action for later resolution by the Liquidation Trust (including any Avoidance Actions or Causes of Action not specifically identified or of which the Plan Proponents may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Plan Proponents at this time or facts or circumstances that may change or be different from those the Plan Proponents now believe to exist).  As such, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches will apply to any such Avoidance Actions or Causes of Action upon or after Confirmation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except when such Avoidance Actions or Causes of Action have been expressly released.  In addition, the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor, the Liquidation Trust, or the Wind-Down Entities is a plaintiff, defendant, or an interested party is fully reserved as against any Person or Entity that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits.

## G.    Cancellation of Instruments

Except to the extent necessary to give effect to the treatment of any Holder of an Allowed Other Secured Claim or Third-Party Mortgage Claim in Classes 2 and 3 of the Plan, respectively, and except with respect to any executory contracts and unexpired leases that are assumed and assigned to the Wind-Down Entities under the Plan or otherwise assumed and assigned pursuant to a Final Order, any agreement, bond, certificate, contract, indenture, lease, note, security, Membership Interest, warrant, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date, and all Liens, mortgages, pledges, grants, trusts, and other interests relating thereto shall be automatically cancelled, and all obligations of the Debtors thereunder or in any way related thereto shall be discharged.

## H.    Substantive Consolidation

Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129, of the substantive consolidation of the Debtors in the manner set forth in Contributing Investor Settlement.  Notwithstanding such substantive consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 shall be due and payable by each individual

Debtor through the Effective Date.

The substantive consolidation effected pursuant to the Plan shall not affect, without limitation, (a) the Debtors', the Liquidation Trust's, or the Wind-Down Entities' defenses to any Claim or Cause of Action, including the ability to assert any counterclaim; (b) the Debtors', the Liquidation Trust's, or the Wind-Down Entities' setoff or recoupment rights; (c) requirements for any third party to establish mutuality prior to substantive consolidation in order to assert a right of setoff against the Debtors, the Liquidation Trust, or the Wind-Down Entities; or (d) distributions to the Debtors, the Estates, the Liquidation Trust, or the Wind-Down Entities out of any insurance policies or proceeds of such policies.

The Disclosure Statement and the Plan shall be deemed to be a motion requesting that the Bankruptcy Court approve the substantive consolidation contemplated by the Plan. Unless an objection to the proposed substantive consolidation is made in writing by any Creditor purportedly affected by such substantive consolidation on or before the deadline to object to confirmation of the Plan, or such other date as may be fixed by the Bankruptcy Court, the substantive consolidation contemplated by the Plan may be approved by the Bankruptcy Court at the Confirmation Hearing. In the event any such objections are timely filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court, which hearing may, but need not, be the Confirmation Hearing.

If the Bankruptcy Court determines that substantive consolidation of any given Debtor is not appropriate, then the Plan Proponents may request that the Bankruptcy Court otherwise confirm the Plan and approve the treatment of and Distributions to the different Classes under the Plan on an adjusted, Debtor-by-Debtor basis. Furthermore, the Plan Proponents reserve their rights (a) to seek confirmation of the Plan without implementing substantive consolidation of any given Debtor, and, in the Plan Proponents' reasonable discretion, to request that the Bankruptcy Court approve the treatment of and Distributions to any given Class under the Plan on an adjusted, Debtor-by-Debtor basis; and (b) to seek to substantively consolidate all Debtors into the Liquidation Trust if all Impaired Classes entitled to vote on the Plan vote to accept the Plan.

I.      **Preservation of Right to Conduct Investigations**

The preservation for the Liquidation Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidation Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors or the Committee prior to the Effective Date shall vest with the Liquidation Trust and shall continue until dissolution of the Liquidation Trust.

J.      **Continuing Indemnification of Post-Petition Board and CRO**

Notwithstanding anything contained herein, consistent with paragraph 6(c) of the Governance Settlement Order, the members of the Post-Petition Board and the CRO shall be indemnified by the Liquidation Trust and the Wind-Down Entities, to the extent applicable, in accordance with the terms of the Third Amended and Restated Limited Liability Company Operating Agreement of National Realty Investment Advisors, LLC dated July 31, 2020, and by the Fund in accordance with the terms of the Eighth Amended and Restated Limited Liability Company Operating Agreement dated November 23, 2021. In addition to and not in limitation of any rights of indemnifications under these agreements, the Liquidation Trust and the Wind-Down

41

9737384

Entities shall, to the maximum extent permitted by applicable law, indemnify and hold harmless the members of the Post-Petition Board and the CRO from any and all loss, claim, damage or cause of action, including reasonable attorneys' fees related thereto (solely for purposes of this paragraph, "**Claims**") incurred by the members of the Post-Petition Board and the CRO in the performance of their duties and obligations as such; *provided* that a member of the Post-Petition Board and the CRO shall not be so indemnified for Claims if they arise from such member's or the CRO's bad faith, gross negligence, or willful misconduct.  The benefits of the foregoing indemnification shall survive the termination of each Post-Petition Board member's or the CRO's service as such.

## ARTICLE V.
## PROVISIONS GOVERNING OBJECTIONS TO CLAIMS AND DISTRIBUTIONS

**A.  Objections to and Resolution of Disputed Claims, Including Any Claims of Excluded Parties or Holders of Disputed Claims**

From and after the Effective Date, the Liquidation Trust shall have the authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, and any agreement entered into by the Liquidation Trust with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim.

**B.  Claim Objections**

All objections to Claims (other than Professional Fee Claims, which shall be governed by Article V of the Plan, but including any Claims of Excluded Parties or Holders of Disputed Claims) shall be Filed by the Liquidation Trust on or before the Claims Objection Deadline, which date may be extended on presentment of an order to the Bankruptcy Court by the Liquidation Trust prior to the expiration of such period and without need for notice or hearing.

**C.  Estimation of Certain Claims**

The Liquidation Trust may, at any time, move for a Bankruptcy Court order estimating any Disputed Claim or Unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction and power to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. The estimated amount of any Claim so determined by the Bankruptcy Court shall constitute the maximum recovery that the Holder thereof may recover after the ultimate liquidation of its Claim, irrespective of the actual amount that is ultimately Allowed.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

**D.  Disposition of Assets in Reserves After Disallowance**

After an objection to a Disputed Claim is sustained or an Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, such that the Disputed Claim or Unliquidated Claim is a Disallowed Claim in whole or in part, any Cash held in an applicable

42

Distribution Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan and any reserved Liquidation Trust Interests shall be cancelled.

### E.    Timing of Distributions for Allowed Claims

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Holders of Allowed Claims as of the applicable Distribution Date shall be made on or as soon as practicable after the applicable Distribution Date; *provided, however*, that the Liquidation Trustee, in its discretion, may defer Distributions to a given Holder of Liquidation Trust Interests (other than the final Distribution) if the amount available for Distribution to such Holder is not at least $250.00.  Distributions on account of Claims that first become Allowed Claims after the applicable Distribution Date shall be made pursuant to Article V of the Plan and on the day selected by the Liquidation Trustee.  Distributions made as soon as reasonably practicable after the Effective Date or such other date set forth herein shall be deemed to have been made on such date.

### F.    Calculating Distributions and Related Matters

The Liquidation Trust shall undertake in its reasonable discretion to make in accordance with the Plan all calculations of Available Cash, Claims, and other amounts for or relating to Distributions for Holders of Allowed Claims to be made from the Liquidation Trust or to reserves for Holders of Disputed Claims and Unliquidated Claims to be established by the Liquidation Trust, and may establish and holdback from Distributions reasonable reserves for other contingencies.

### G.    Interest and Other Amounts Regarding Claims

Unless Allowed by a Final Order, no post-petition interest shall accrue or be paid on any Claims, and no Holder of an Allowed Claim shall be entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date.

### H.    Distributions by Liquidation Trustee as Disbursing Agent

The Liquidation Trustee, or such other party as may be designated by the Liquidation Trustee, shall serve as the disbursing agent under the Plan with respect to Distributions required pursuant to the Plan to be paid by the Liquidation Trust.  The Liquidation Trustee shall not be required to give any bond or surety or other security for the performance of any duties as disbursing agent.

### I.    Means of Cash Payment

Cash payments under the Plan shall be made, at the option and in the sole discretion of the Liquidation Trustee, by (a) checks drawn on or (b) wire transfer, electronic funds transfer, or ACH from a domestic bank.  Cash payments to foreign Creditors may be made, at the option and in the sole discretion of the Liquidation Trustee, by such means as are necessary or customary in a particular foreign jurisdiction.  Cash payments made pursuant to the Plan in the form of checks shall be null and void if not cashed within 180 calendar days of the date of the issuance thereof.

Requests for reissuance of any check within 180 calendar days of the date of the issuance thereof shall be made directly to the Liquidation Trustee.

**J.      Form of Currency For Distributions**

All Distributions under the Plan shall be made in U.S. Dollars. Where a Claim has been denominated in foreign currency on a proof of claim, the Allowed amount of such Claim shall be calculated in U.S. Dollars based upon the currency conversion rate in place as of the Petition Date and in accordance with Bankruptcy Code section 502(b).

**K.      Fractional Distributions**

Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**L.      De Minimis Distributions**

Notwithstanding anything in the Plan to the contrary, the Liquidation Trust shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim on any given Distribution Date is less than $100.00, and such amount shall be distributed to other Creditors on such Distribution Date in accordance with the terms of the Plan.  Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed on any given Distribution Date is less than $100.00 shall be forever barred from asserting any Claim with respect to such eliminated Distribution against any Estate Assets.

**M.      No Distributions With Respect to Certain Claims**

Notwithstanding anything in the Plan to the contrary, no Distributions or other consideration of any kind shall be made on account of any Disputed Claim or Unliquidated Claim unless and until such Claim becomes an Allowed Claim, and then only to the extent that such Claim becomes an Allowed Claim and as provided under the Plan for such Allowed Claim. Nonetheless, in undertaking the calculations concerning Allowed Claims under the Plan, including the determination of Distributions due to the Holders of Allowed Claims, each Disputed Claim or Unliquidated Claim shall be treated as if it were an Allowed Claim (which, for Unliquidated Claims, shall mean they shall be treated as if Allowed in such amounts as determined in the reasonable discretion of the Liquidation Trust), except that if the Bankruptcy Court estimates the likely portion of such a Claim to be Allowed or authorized or the Bankruptcy Court or the Holder of such Claim and the Liquidation Trustee otherwise determine the amount or number that would constitute a sufficient reserve for such a Claim, such amount or number as determined by the Bankruptcy Court or by agreement of the Holder of such Claim and the Liquidation Trustee shall be used with respect to such Claim.

Distributions due in respect of a Disputed Claim or Unliquidated Claim shall be held in reserve by the Liquidation Trust in one or more Distribution Reserves.  The Liquidation Trust will

elect to treat any Distribution Reserve as a "Disputed Ownership Fund," pursuant to Treasury Regulation section 1.468B-9(c)(2)(ii). As outlined in this election, Creditors holding such Claims are not treated as transferors of the money or property transferred to the "Disputed Ownership Fund." For federal income tax purposes, a "Disputed Ownership Fund" is treated as the owner of all assets that it holds. A "Disputed Ownership Fund" is treated as a C corporation for purposes of the Internal Revenue Code. A "Disputed Ownership Fund" must file all required income and information tax returns and make all tax payments. The Liquidation Trustee will be responsible for all such filings and payments on behalf of any "Disputed Ownership Fund", with any such payments to be made from the Distribution Reserve.

**N.      Distributions and Transfers Upon Resolution of Disputed Claims or Unliquidated Claims**

After an objection to a Disputed Claim is resolved or an Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, an amount of Liquidation Trust Interests and/or Cash held in the Disputed Ownership Fund corresponding to the amount of any resulting Allowed Claim shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to the transfer, in a taxable transaction to the Holder of the formerly Disputed Claim or Unliquidated Claim. Upon each such resolution of a Claim against the Disputed Ownership Fund and such transfer with respect to any resulting Allowed Claim, (a) any remaining Liquidation Trust Interests in the Disputed Ownership Fund that had been held with respect to such formerly Disputed Claim or Unliquidated Claim prior to its resolution shall be cancelled; and (b) any remaining Cash in the Disputed Ownership Fund that had been held with respect to such formerly Disputed Claim or Unliquidated Claim prior to its resolution shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to such transfers, for use as follows, provided that such Cash transfers shall be treated as a taxable transfer by the Disputed Ownership Fund and to the recipients of such Cash. Such remaining Cash may be utilized for payment, allocation, or reserve in accordance with the Plan for (a) unpaid or unutilized amounts for either Liquidation Trust Expenses or Liquidation Trust Funding or (b) any post-Confirmation reserve requirements of the Liquidation Trust in connection with the Plan, any agreements, or any Bankruptcy Court Orders. To the extent any such remaining Cash is not so utilized, it shall become Available Cash for distribution to the Holders of Liquidation Trust Interests (including each Holder of Liquidation Trust Interests to the extent it obtains an Allowed Claim as a result of resolution of a formerly Disputed Claim or Unliquidated Claim) in a manner reasonably allocated by the Liquidation Trust so that all Holders of Liquidation Trust Interests will receive Cash in proportion to their Liquidation Trust Interests, net of any tax payable by the Disputed Ownership Fund with respect to the respective transfers.

**O.      Delivery of Distributions**

Distributions in respect of Liquidation Trust Interests shall be made to Holders of Liquidation Trust Interests as of the record date set for such Distribution. Distributions to Holders of Liquidation Trust Interests or Allowed Claims that have not been converted to Liquidation Trust Interests shall be made (a) at the addresses set forth in the proofs of Claim Filed by such Holders, (b) at the addresses reflected in the Schedules if no proof of Claim has been Filed, or (c) at the addresses set forth in any written notices of address changes delivered to the Claims Agent or the Liquidation Trustee at least thirty (30) days prior to a Distribution Date. If any Holder's

9737384

Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Liquidation Trustee is notified of such Holder's then-current address. The responsibility to provide the Claims Agent or the Liquidation Trustee with a current address of a Holder of Liquidation Trust Interests or Claims shall always be the responsibility of such Holder. Amounts in respect of undeliverable Distributions made by the Liquidation Trustee shall be held in trust on behalf of the Holder of the Liquidation Trust Interest or Claim to which they are payable by the Liquidation Trustee until the earlier of the date that such undeliverable Distributions are claimed by such Holder and 180 calendar days after the date the undeliverable Distributions were made. After such 180-day period, the Allowed Claims relating to the undeliverable Distributions shall be deemed disallowed and the Liquidation Trust may expunge such Allowed Claims from the Claims Register without further order of the Court.

P.    **Application of Distribution Record Date and Other Transfer Restrictions**

At the close of business on the Distribution Record Date, the Claims Register for all Claims shall be closed, and there shall be no further changes in the record holders of any Claims. Except as provided herein, the Liquidation Trust and its respective Related Parties shall have no obligation to recognize any putative transfer of Claims occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record Holders stated on the Claims Register as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Plan to such Persons or the date of such Distributions. In addition, the Liquidation Trust and each of its Related Parties shall have no obligation to recognize any putative transfer of Claims occurring at any time prior to the Effective Date to which the Debtors did not expressly consent and shall be entitled instead to recognize and deal for all purposes hereunder with only the Holder of particular Claims as reflected on the Debtors' books and records for purposes of effecting Distributions of Liquidation Trust Interests. Nothing in this Article V.P is intended to or will impair or limit the rights of Holders at the record dates established from time to time regarding Liquidation Trust Interests to receive all Distributions in respect of such Liquidation Trust Interests when any Distributions are made.

Q.    **Withholding, Payment, and Reporting Requirements Regarding Distributions**

All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The Liquidation Trust shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including, to the extent such information is not already available to the Liquidation Trust, requiring each Holder of a Liquidation Trust Interest or Claim to provide an executed current Form W-9, Form W-8, or similar tax form as a prerequisite to receiving a Distribution. Notwithstanding any other provision of the Plan, (a) each Holder of a Liquidation Trust Interest or an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Liquidation Trust in connection with such Distribution; and (b) no Distribution shall be made to or on behalf of such Holder

46

pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Liquidation Trust for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

## R.    Forfeiture of Distributions

If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Article V.I. fails to claim an undeliverable Distribution within the time limit set forth in Article V.O, or fails to complete and return to the Liquidation Trustee the appropriate Form W-8 or Form W-9 within 180 calendar days after a request for the completion and return of the appropriate form pursuant to Article V.Q (or such later time as approved by a Bankruptcy Court order), then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions under the Plan. Any such forfeited Distributions shall be deemed Available Cash for all purposes, notwithstanding any federal or state escheat laws to the contrary.

## S.    Defenses and Setoffs

On and after the Effective Date, the Liquidation Trust shall have all of the Debtors' and the Estates' rights under Bankruptcy Code section 558.  Nothing under the Plan shall affect the rights and defenses of the Debtors, the Estates, or the Liquidation Trust in respect of any Claim, including all rights in respect of legal and equitable objections, defenses, setoffs, or recoupment against such Claims. Accordingly, the Liquidation Trust may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors, the Estates, or the Liquidation Trust, as applicable, may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim or rights that may exist against such Holder.

## T.    Allocation of Distributions

All Distributions received under the Plan by Holders of Liquidation Trust Interests and Claims shall be deemed to be allocated first to the principal amount of such Claim, or the Claim to which the applicable Liquidation Trust Interest relates, as determined for United States federal income tax purposes, and then to accrued interest, if any, with respect to such Claim.

## U.    Joint Distributions

The Liquidation Trustee may, in his sole discretion, make Distributions jointly to any Holder of a Claim and any other Person that the Liquidation Trustee has determined to have an interest in such Claim.

## V.    Disallowance of Claims

Any Claims held by Entities from which property is recoverable under Section 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action

9737384

against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to any Debtor by that Entity have been turned over or paid to the Debtors or the Liquidation Trust.

**W.    Adjustment to Claims Without Objection**

Any Claim that has been paid or satisfied, amended, or superseded may be marked as satisfied, adjusted or expunged on the Claims Register by the Claims Agent at the direction of the Liquidation Trust without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

**ARTICLE VI.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.    Assumption of Certain Executory Contracts and Unexpired Leases**

**1.    Assumption of Agreements**

On the Effective Date, the Debtors shall assume all executory contracts and unexpired leases that are listed on the Schedule of Assumed Agreements and shall assign such contracts and leases either to the Liquidation Trust or the Wind-Down Entities.

The Plan Proponents reserve the right to amend the Schedule of Assumed Agreements at any time prior to the Confirmation Hearing, in the Plan Proponents' reasonable discretion, (a) to delete any executory contract or unexpired lease and provide for its rejection under the Plan or otherwise, or (b) to add any executory contract or unexpired lease and provide for its assumption and assignment under the Plan.  The Plan Proponents will provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to those agreements affected by the amendment.

Unless otherwise specified on the Schedule of Assumed Agreements, each executory contract and unexpired lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is also listed on the Schedule of Assumed Agreements.

The Confirmation Order will constitute a Bankruptcy Court Order approving the assumption and assignment, on the Effective Date, of all executory contracts and unexpired leases identified on the Schedule of Assumed Agreements.

Notwithstanding anything contained in the Plan to the contrary, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the rights of the Debtor, as applicable, to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.

48

## 2.    Cure Payments

Any amount that must be paid under Bankruptcy Code section 365(b)(1) to Cure a default under and compensate the non-debtor party to an executory contract or unexpired lease to be assumed under the Plan will be identified as the "Cure Payment" on the Schedule of Assumed Agreements.  Unless the parties mutually agree to a different date, such payment shall be made in Cash within thirty (30) days following the later of: (a) the Effective Date and (b) entry of a Final Order resolving any disputes regarding (i) the amount of any Cure Payment, (ii) the ability of the Wind-Down Entities to provide "adequate assurance of future performance" within the meaning of Bankruptcy Code section 365 with respect to a contract or lease to be assumed, to the extent required, or (iii) any other matter pertaining to assumption and assignment, including whether the contract at issue is executory or the lease at issue is unexpired.

Pending the Bankruptcy Court's ruling on any such dispute, the executory contract or unexpired lease at issue shall be deemed assumed by the Debtors and assigned to the Liquidation Trust or the Wind-Down Entities, unless otherwise agreed by the parties or ordered by the Bankruptcy Court.

## 3.    Objections to Assumption/Cure Payment Amounts

Any Person that is a party to an executory contract or unexpired lease that will be assumed and assigned under the Plan and that objects to such assumption or assignment (including the proposed Cure Payment) must File with the Bankruptcy Court and serve on parties entitled to notice an objection and, if applicable, a supporting declaration stating the basis for its objection. This objection and, if applicable, declaration must be Filed and served on or before the deadline established by the Disclosure Statement Order.  Any Person that fails to timely File and serve such objection and, if applicable, a declaration shall be deemed to waive any and all objections to the proposed assumption and assignment (including the proposed Cure Payment) of its contract or lease.

In the absence of a timely objection by a Person that is a party to an executory contract or unexpired lease, the Confirmation Order shall constitute a conclusive determination regarding the amount of any Cure and compensation due under the applicable executory contract or unexpired lease, as well as a conclusive finding that the Liquidation Trust or the applicable Wind-Down Entity has demonstrated adequate assurance of future performance with respect to such executory contract or unexpired lease, to the extent required.

## 4.    Resolution of Claims Relating to Assumed Contracts and Leases

Payment of the Cure Payment established under the Plan, by the Confirmation Order, or by any other order of the Bankruptcy Court, with respect to an assumed and assigned executory contract or unexpired lease, shall be deemed to satisfy, in full, any prepetition or post-petition arrearage or other Claim (including any Claim asserted in a Filed proof of Claim or listed on the Schedules) with respect to such contract or lease (irrespective of whether the Cure Payment is less than the amount set forth in such proof of claim or the Schedules).  Upon the tendering of the Cure Payment, any such Filed Claim or Claim listed on the Debtors' Schedules shall be disallowed with prejudice, without further order of the Bankruptcy Court or action by any Person.

49

**B.      Rejection of Executory Contracts and Unexpired Leases**

**1.      Rejected Agreements**

On the Effective Date all executory contracts and unexpired leases of the Debtors shall be rejected except for (a) executory contracts and unexpired leases that have been previously assumed or rejected by the Debtors, (b) executory contracts and unexpired leases that are set forth in the Schedule of Assumed Agreements, and (c) any agreement, obligation, security interest, transaction, or similar undertaking that the Debtors believe is not an executory contract or an unexpired lease, but that is later determined by the Bankruptcy Court, upon motion filed by the applicable counterparty, to be an executory contract or unexpired lease that is subject to assumption or rejection under Bankruptcy Code section 365.  For the avoidance of doubt, executory contracts and unexpired leases that have been previously assumed or assumed and assigned pursuant to an order of the Bankruptcy Court shall not be affected by the Plan.  The Confirmation Order will constitute a Bankruptcy Court Order approving the rejection, on the Effective Date, of the executory contracts and unexpired leases to be rejected under the Plan.

**2.      Rejection Claims Bar Date Rejection Damages**

Any Rejection Claim or other Claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed and served no later than the Rejection Claims Bar Date.  Any such Rejection Claims that are not timely Filed and served will be forever disallowed, barred, and unenforceable, and Persons holding such Claims will not receive and be barred from receiving any Distributions on account of such untimely Claims.  If one or more Rejection Claims are timely Filed pursuant to the Plan, the Liquidation Trust may object to any Rejection Claim on or prior to the Claims Objection Deadline.  For the avoidance of doubt, the Rejection Claims Bar Date established by the Plan does not alter any rejection claims bar date established by a prior order of the Bankruptcy Court with respect to any executory contract or unexpired leases that was previously rejected in these Chapter 11 Cases.

**C.      Insurance Policies**

For the avoidance of doubt, on the Effective Date, the Debtors' rights with respect to all Insurance Policies under which the Debtors may be a beneficiary or assignee (including all Insurance Policies that may have expired prior to the Petition Date, all Insurance Policies in existence on the Petition Date, all Insurance Policies entered into by the Debtors after the Petition Date, and all Insurance Policies under which the Debtors hold rights to make, amend, prosecute, and benefit from claims) shall revest in the Debtors as necessary for the Liquidation Trust to pursue and prosecute any Causes of Action, unless any such Insurance Policy is otherwise cancelled by the Liquidation Trustee in his or her discretion.  Notwithstanding any provision providing for the rejection of executory contracts, any Insurance Policy that is deemed to be an executory contract shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Liquidation Trustee, who shall retain the right to assume or reject any such executory contracts pursuant to and subject to the provisions of section 365 of the Bankruptcy Code following the Effective Date.

## ARTICLE VII.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.      Conditions Precedent to the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing:

(a)      The Bankruptcy Court shall have entered the Confirmation Order that approves and confirms the Plan, approves the substantive consolidation of the Debtors and the Contributing Investor Settlement;

(b)      The Confirmation Order shall not be subject to any stay;

(c)      Other than the approvals and consents that vest in the Wind-Down Entities under the Plan, all governmental and material third-party approvals and consents necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained and be in full force and effect;

(d)      All of the Debtors' documents and records, including, without limitation, all electronic records, shall be made available to the Liquidation Trustee and his or her professionals;

(e)      The Liquidation Trust and the Wind-Down Entities shall have been formed;

(f)      All actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan are affected or executed and delivered, as applicable; and

(g)      The Professional Fee Reserve is funded pursuant to Article III.A.2 of the Plan.

**B.      Waiver of Conditions of the Effective Date**

The conditions to the Effective Date set forth in clause (d) of Article VII.A of the Plan may be waived in writing by the Plan Proponents, in the Plan Proponents' reasonable discretion, at any time without further order.

**C.      Notice of the Effective Date**

Promptly after the occurrence of the Effective Date, the Liquidation Trust or its agents shall mail or cause to be mailed to all Creditors a notice that informs such Creditors of (a) entry of the Confirmation Order and the resulting confirmation of the Plan; (b) the occurrence of the Effective Date; (c) the assumption, assignment, and rejection of executory contracts and unexpired leases pursuant to the Plan, as well as the deadline for the filing of resulting Rejection Claims; (d) the deadline established under the Plan for the filing of Administrative Expense Claims; and (e) such other matters as the Liquidation Trustee finds appropriate.

9737384

# ARTICLE VIII.
## RELEASE, INJUNCTIVE AND RELATED PROVISIONS

**A.    Releases and Related Matters**

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be deemed to have forever released, waived, and discharged each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever, whether known or unknown, whether foreseen or unforeseen, whether liquidated or unliquidated, whether fixed or contingent, whether matured or unmatured, existing or hereafter arising, at law, in equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the conduct of the Debtors' business, the Chapter 11 Cases, or the Plan, except for acts or omissions that are determined in a Final Order to have constituted fraud, gross negligence or willful misconduct.

Entry of the Confirmation Order shall constitute (a) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Article VIII.A; and (b) the Bankruptcy Court's findings that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, (2) in the best interests of the Debtors, the Estates, and any Holders of Claims that are Releasing Parties, (3) fair, equitable, and reasonable, (4) given and made after due notice and opportunity for hearing, and (5) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties.

Notwithstanding any provision herein to the contrary or an abstention from voting on the Plan, no provision of the Plan, or any order confirming the Plan, (a) releases any non-debtor Person from any Cause of Action of the SEC; or (b) enjoins, limits, impairs, or delays the SEC from commencing or continuing any Causes of Action, proceedings, or investigations against any non-debtor Person in any forum.

**B.    Exculpation and Limitation of Liability**

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, none of the Exculpated Parties shall have or incur any liability to any Person, including to any Holder of a Claim or an Equity Interest, for any postpetition act or omission in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan; *provided,* that the exculpation provisions of this Article VIII.B shall not apply to acts or omissions constituting fraud, gross negligence, or willful misconduct by such Exculpated Party as determined by a Final Order.  For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be

9737384

deemed not to constitute fraud, gross negligence or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation, and in all respects, the Exculpated Parties shall be entitled to rely on the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Debtors, the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan.  The Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by this Article VIII.B of the Plan.

C.      **Injunctive Provisions**

Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan does not operate to discharge the Debtors; *provided, however*, that, upon confirmation of the Plan and the occurrence of the Effective Date, the Holders of Claims and Equity Interests may not seek payment or recourse against or otherwise be entitled to any Distribution from the Debtors, the Debtors' Estates, the Wind-Down Entities, or the Liquidation Trust except as expressly provided in the Plan. Further, the following terms apply except as otherwise expressly provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan:

1.      Except as otherwise provided in the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors, the Debtors' Estates, the Wind-Down Entities, the Liquidation Trust, the Liquidation Trustee, their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or satisfied or to be released or satisfied under the Plan or the Confirmation Order.

2.      Except as otherwise expressly provided for in the Plan or in obligations issued under the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Wind-Down Entities, the Liquidation Trust, the Liquidation Trustee, or their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, to the extent that (a) such Claims or Equity Interests have been released or satisfied under this Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed under this Plan or the Confirmation Order.

3.      The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests against the Debtors or any of their assets or properties solely to the extent that (a) such Claims or Equity Interests have been released or satisfied under this Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions, or assertions of Liens relate to property that will be distributed under this Plan or the Confirmation Order.  On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.

4.      Upon the entry of the Confirmation Order, all Holders of Claims and Equity Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**5.      As of the Effective Date, to the extent not enjoined by the other provisions of this Article VIII.C, all Persons and Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtors, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Debtors' Estates, the Wind-Down Entities, the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets with respect to any such Claim or Equity Interest or taking any act to recover such Claim or Equity Interest outside of the claims allowance procedure discussed in this Plan and the Bankruptcy Code and Bankruptcy Rules; (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Debtors' respective property, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets; (c) creating, perfecting, or enforcing any Lien, Claim, or encumbrance of any kind against the Debtors, the Debtors' respective property, the Debtors' Estates, the Wind-Down Entities (including following post-Effective Date sales or other transfers of Wind-Down Entity Real Estate Assets), the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trustee Assets; and (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Debtors' respective property, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets, unless such Person or Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Person or Entity asserts, has, or intends to preserve, any right of setoff pursuant to applicable law or otherwise.**

6.      All injunctive provisions of this Article VIII.C shall extend for the benefit of the Liquidation Trustee, the Wind-Down Entities, and any successors of the Debtors, and to any property and interests in property subject to this Plan.

## ARTICLE IX.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases until the Chapter 11 Cases are closed, including jurisdiction to issue any other Order necessary to administer the Estates or the Liquidation Trust and enforce the terms of this Plan, and/or the Liquidation Trust Agreement pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)      To determine the type, allowance, and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Liquidation Trustee or any other party-in-interest entitled to proceed in that manner;

(b)      Except as otherwise limited herein, to recover all Assets of the Debtors and property

of the Debtors' Estates, wherever located;

(c)    To hear and determine any issue arising under this Plan; *provided, however*, any action, controversy, dispute, claim, or question arising out of or relating to the right of any party to enforce, contest, and/or litigate the existence, primacy, and/or scope of available coverage and/or any defenses to coverage under the Insurance Policies shall be referred to and resolved solely in accordance with the terms and conditions of the Insurance Policies and applicable non-bankruptcy law, including, but not limited to, any choice of law, forum, or jurisdiction provision therein;

(d)    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(e)    To hear any other matter not inconsistent with the Bankruptcy Code;

(f)    To enter a Final Decree closing any of the Chapter 11 Cases;

(g)    To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(h)    To decide or resolve any motions, adversary proceedings, contested or litigated matters, including the Retained Cause of Actions and the Contributed Claims, and any other matters and grant or deny any applications involving the Debtors that may be pending on or instituted by the Liquidation Trustee after the Effective Date;

(i)    To issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided herein;

(j)    To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

(k)    To enforce, interpret, and determine any disputes arising in connection with any stipulations, Orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

(l)    To hear and adjudicate any adversary proceeding or other proceeding which may be commenced against any Person or Entity arising from, related to, or in connection with any Avoidance Action and other claims against third parties relating to the facts and circumstances surrounding the same, including without limitation all Liquidation Trust Actions and Retained Causes of Action; *provided, however*, that nothing in this Plan or the Confirmation Order shall vest the Bankruptcy Court with exclusive jurisdiction over any claims identified herein;

55

(m)     To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof; and

(n)     To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the applicable Claims Bar Date, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the confirmation of the Plan for the purpose of determining whether a Claim is discharged hereunder, or for any other purpose; and

(o)     Notwithstanding the closure of the Chapter 11 Cases, to adjudicate any request by Person or Entity seeking to sue any party appointed by the Bankruptcy Court in these Chapter 11 Cases, including but not limited to the Post-Petition Board and the CRO, all of whom were appointed pursuant to the Bankruptcy Court's Governance Settlement Order, for leave to pursue such suit.

## ARTICLE X.
## MISCELLANEOUS PROVISIONS

### A.     Post-Effective-Date Reporting

Beginning the first quarter-end following the Effective Date and continuing on each quarter-end thereafter until the Chapter 11 Cases are closed, within thirty (30) calendar days after the end of such period, the Liquidation Trust shall File quarterly reports with the Bankruptcy Court. Each quarterly report shall contain a cash flow statement which shall show Distributions by Class during the prior quarter, an unaudited balance sheet, the terms of any settlement of an individual Claim in an amount greater than $100,000, the terms of any litigation settlement where the Cause of Action or the Liquidation Trust Action was greater than $100,000 or the settlement is for more than $100,000, the terms of any sale of Estate Assets where the proceeds of such sale are $100,000 or greater, and such other information as the Liquidation Trust determines is material.

### B.     Dissolution of the Committee

On the Effective Date, the Committee shall be deemed dissolved, the retention and employment of the Committee's Professionals shall be deemed terminated, and the members of the Committee shall be deemed released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, other than for purposes of filing and/or objecting to final Fee Applications filed in the Chapter 11 Cases, except as set forth herein or in the Liquidation Trust Agreement.

### C.     Modification of the Plan

In the Plan Proponents' reasonable discretion, the Plan Proponents may alter, amend, or modify the Plan under Bankruptcy Code section 1127(a) at any time at or prior to the conclusion of the Confirmation Hearing. All alterations, amendments, or modifications to the Plan must comply with Bankruptcy Code section 1127. The Plan Proponents shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or order of the Bankruptcy Court. A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration,

9737384

amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

After entry of the Confirmation Order and prior to substantial consummation (as defined in Bankruptcy Code section 1101(2)) of the Plan, the Plan Proponents or the Liquidation Trust, as applicable, may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan.  Such proceedings must comply with Bankruptcy Code section 1127.  To the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or an order of the Bankruptcy Court.  A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

## D.      Exemption from Transfer Taxes

Pursuant to Bankruptcy Code section 1146, the vesting of the Liquidation Trust Assets in the Liquidation Trust, the vesting of Wind-Down Entity Real Estate Assets in the Wind-Down Entities, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, Lien, pledge, or other security interest, or the making or assignment of any lease or sublease, or making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

## E.      Transactions on Business Days

If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

## F.      Good Faith

Confirmation of the Plan shall constitute a conclusive determination that: (a) the Plan, and all the transactions and settlements contemplated thereby, have been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules; and (b) the solicitation of acceptances or rejections of the Plan has been in good faith and in compliance with all applicable provisions of the Bankruptcy Code, and the Bankruptcy Rules, and, in each case, that the Plan Proponents and their Professionals have acted in good faith in connection therewith.

## G.      Revocation or Withdrawal, or Non-Consummation

The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Hearing and to File subsequent plans.  If the Plan Proponents revoke or withdraw the Plan prior to the Confirmation Hearing, or if the Effective Date does not occur, then (a) the

9737384

Plan shall be null and void in all respects; and (b) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (x) constitute or be deemed to constitute a waiver or release of any Claims against, or any Equity Interests in, any Debtor, or any Causes of Action by or against any Debtor or any other Person, (y) prejudice in any manner the rights of any Debtor or any other Person in any further proceedings involving a Debtor, or (z) constitute an admission of any sort by any Debtor or any other Person.

## H.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), (a) the laws of the State of New Jersey shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation or formation of each Debtor shall govern corporate or limited liability company governance matters with respect to such Debtor; in each case without giving effect to the principles of conflicts of law thereof. Any applicable nonbankruptcy law that would prohibit, limit, or otherwise restrict implementation of the Plan based on (a) the commencement of the Chapter 11 Cases, (b) the appointment of the Liquidation Trustee or the Wind-Down CEO, (c) the wind down of the Debtors, (d) the liquidation of some or all of the Liquidation Trust Assets, the Wind-Down Entity Real Estate Assets or (e) any other act or action to be done pursuant to or contemplated by the Plan is superseded and rendered inoperative by the Plan and federal bankruptcy law.

## I.    Notices

Following the Effective Date, all pleadings and notices Filed in the Chapter 11 Cases shall be served solely on (a) the Liquidation Trust and its counsel, (b) the U.S. Trustee, (c) any Person whose rights are affected by the applicable pleading or notice, and (d) any Person or Entity Filing a specific request for notices and papers on and after the Effective Date.

## J.    Closing of Certain Chapter 11 Cases

On the Effective Date, the Chapter 11 Cases for all Debtors other than NRIA will be deemed closed and no further fees in respect of such closed cases will thereafter accrue or be payable to any Person or Entity.  As soon as practicable after the Effective Date, the Liquidation Trust shall submit a separate order to the Bankruptcy Court under certification of counsel closing the Chapter 11 Cases for all Debtors other than NRIA.  The Liquidation Trust may at any point File a motion to close the Chapter 11 Cases for NRIA.

## K.    Final Decree

Upon the Liquidation Trustee's determination that all Claims have been Allowed, disallowed, expunged, or withdrawn and that all Liquidation Trust Assets have been liquidated, abandoned, or otherwise administered, the Liquidation Trust shall move for the entry of the Final Decree with respect to NRIA.  On entry of the Final Decree, the Liquidation Trustee, the Liquidation Trust Advisory Board, the Wind-Down CEO, and their respective Related Parties, in each case to the extent not previously discharged by the Bankruptcy Court, shall be deemed discharged and have no further duties or obligations to any Person.

9737384

L.     **Additional Documents**

On or before the Effective Date, the Plan Proponents may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors (prior to the Effective Date), the Wind-Down Entities (after the Effective Date), and the Liquidation Trust, as applicable, and all Holders receiving Distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other acts as may be necessary or advisable to effectuate the provisions and intent of the Plan.

M.     **Conflicts with the Plan**

In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, any other order entered in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence; *provided, however*, that the Confirmation Order shall control and take precedence in the event of any inconsistency between the Confirmation Order, any provision of the Plan, and any of the foregoing documents.

## ARTICLE XI.
## REQUEST FOR CONFIRMATION AND RECOMMENDATION

A.     **Request For Confirmation**

The Plan Proponents request confirmation of the Plan in accordance with Bankruptcy Code section 1129.

B.     **Recommendation**

The Plan Proponents believe that confirmation and implementation of the Plan is the best alternative under the circumstances and urge all Impaired Creditors entitled to vote to vote in favor of and support confirmation of the Plan.

9737384

Dated:  July 25, 2023

**NATIONAL REALTY INVESTMENT
ADVISORS, LLC,** *ET AL.*

By: /s/ John Fioretti
Name: John Fioretti
Title: Chief Restructuring Officer

-and-

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By: /s/ Caroline Spiteri
Name: Caroline Spiteri
Title: Chair, Official Committee of
Unsecured Creditors

9737384

**EXHIBIT 1**

**LIST OF DEBTORS**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In re:

NATIONAL REALTY INVESTMENT
ADVISORS, LLC, *et al.*[1]

Debtors.

Chapter 11

Case 22-14539- (JKS)

(Jointly Administered)

| Debtor | Case Number |
|---|---|
| *National Realty Investment Advisors, LLC* | *22-14539* |
| *NRIA Partners Portfolio Fund I, LLC* | *22-14540* |
| 142 NE 7th Capital LLC | 22-14542 |
| 143 Adagio Investments, LLC | 22-14543 |
| 184 Lincoln Place LP | 22-14545 |
| 1st Avenue Capital 301 LLC | 22-14546 |
| 2031 Lombard Partners LLC | 22-14548 |
| 2044 West First Capital LLC | 22-14550 |
| 3rd Street Capital 200-210 LLC | 22-14551 |
| 3rd Street Capital 203-215 LLC | 22-14553 |
| 51st Street Capital 508, LLC | 22-14555 |
| 52nd Street Capital 511-513, LLC | 22-14556 |
| 7th Street Capital 285 LLC | 22-14558 |
| Adam St Capital 6903 LLC | 22-14560 |
| Adam St Capital 6903 Manager, LLC | 22-14561 |
| Adam St Capital 6903 Member, LLC | 22-14563 |
| Baltic Street Capital 640 LLC | 22-14565 |
| Bergen St Capital 1070 LLC | 22-14566 |
| Bergenline Capital 4901 LLC | 22-14568 |
| Berkeley Place Capital 227 LLC | 22-14570 |
| Bond Way Capital 915 LLC | 22-14572 |
| Briny Capital 305 LLC | 22-14574 |
| Carroll Street Capital 160 LLC | 22-14576 |
| Cherry Street Capital 113-27 LLC | 22-14577 |
| Culver Urban Renewal Redevelopment I, LLC | 22-14579 |
| Culver Urban Renewal Redevelopment II, LLC | 22-14581 |
| DeGraw St. Capital 377 LLC | 22-14541 |
| Delray Capital 1 LLC | 22-14544 |
| Delray Capital 1B LLC | 22-14547 |

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NRIA. The location of the Debtors' service address is: 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

9607985

| Debtor | Case Number |
|---|---|
| Denery Lane Capital 837 LLC | 22-14549 |
| Denery Lane Capital 843 LLC | 22-14552 |
| Denery Lane Capital 843 Manager LLC | 22-14554 |
| Elden Drive Capital 1 LLC | 22-14557 |
| Federal Highway Capital 318 B LLC | 22-14559 |
| Federal Highway Capital 318 LLC | 22-14562 |
| FTM Partners Portfolio Hotel Retail LLC | 22-14564 |
| FTM Partners Portfolio Marina LLC | 22-14567 |
| FTM Partners Portfolio Restaurant LLC | 22-14569 |
| Gulf Stream Views II, LLC | 22-14573 |
| Gulf Stream Views, LLC | 22-14575 |
| Guttenberg Capital 416-22 69th St. LLC | 22-14578 |
| Guttenberg Capital 6269 LLC | 22-14580 |
| Hanover Road Capital 2 LLC | 22-14582 |
| Henry Street Capital 506, LLC | 22-14583 |
| Kenwood Rd. Capital 8 LLC | 22-14584 |
| Landnet LLC | 22-14586 |
| Lender Prime 1, LLC | 22-14585 |
| Luquer Street Capital 140 LLC | 22-14587 |
| Madison Street Capital 931, LLC | 22-14588 |
| Main St. Capital 360 LLC | 22-14590 |
| Main St. Capital 360 Manager LLC | 22-14592 |
| Main St. Capital 360 Member LLC | 22-14594 |
| Manhattan Avenue Capital 1300 LLC | 22-14596 |
| N. Ocean Capital 2929 B LLC | 22-14597 |
| N. Ocean Capital 344 LLC | 22-14599 |
| N. Ocean Capital 3565 B LLC | 22-14601 |
| N. Ocean Capital 707 B LLC | 22-14603 |
| N. Ocean Capital 707 LLC | 22-14605 |
| Newark Street Capital 511-521 LLC | 22-14607 |
| NJ Manager 1300, LLC | 22-14609 |
| North Bergen Capital 8709 LLC | 22-14610 |
| NRIA 140 Luquer Manager LLC | 22-14612 |
| NRIA 1st Avenue 301 Manager LLC | 22-14614 |
| NRIA 2031 Lombard Manager LLC | 22-14616 |
| NRIA 2044 West First Capital Manager LLC | 22-14618 |
| NRIA 2044 West First Capital Member LLC | 22-14589 |
| NRIA 227 Berkeley Manager LLC | 22-14591 |
| NRIA 279 Sackett Manager LLC | 22-14593 |
| NRIA 3rd Street Capital 200-210 Manager LLC | 22-14595 |
| NRIA 3rd Street Capital 200-210 Member LLC | 22-14598 |
| NRIA 3rd Street Capital 203-215 Manager LLC | 22-14600 |
| NRIA 3rd Street Capital 203-215 Member LLC | 22-14602 |
| NRIA 423 Third Manager LLC | 22-14604 |

9607985

| Debtor | Case Number |
|--------|-------------|
| NRIA 434 Union Manager LLC | 22-14606 |
| NRIA 494 Seventh Manager LLC | 22-14608 |
| NRIA 51st Street 508 Member LLC | 22-14611 |
| NRIA 51st Street Manager 508, LLC | 22-14613 |
| NRIA 52nd Street 511-513 Member LLC | 22-14615 |
| NRIA 7th Street Capital Manager LLC | 22-14617 |
| NRIA Bergenline 4901 Manager LLC | 22-14619 |
| NRIA Bond Way Capital Manager LLC | 22-14620 |
| NRIA Briny Capital 305 Manager LLC | 22-14623 |
| NRIA Briny Capital 305 Member LLC | 22-14625 |
| NRIA Brooklyn I LLC | 22-14627 |
| NRIA Brooklyn II LLC | 22-14629 |
| NRIA Cherry Street 113-27 Manager LLC | 22-14621 |
| NRIA Delray 1 Manager LLC | 22-14622 |
| NRIA Denery Lane Capital 837 Manager LLC | 22-14624 |
| NRIA EB5 1300 Manhattan Fund LLC | 22-14626 |
| NRIA EB5 4901 Bergenline Fund LLC | 22-14628 |
| NRIA Elden Drive 1 Manager LLC | 22-14630 |
| NRIA Exchange LLC | 22-14631 |
| NRIA Federal Highway 318 Manager LLC | 22-14632 |
| NRIA FL Manager LLC | 22-14633 |
| NRIA Gulf Stream Views Manager LLC | 22-14635 |
| NRIA Guttenberg Capital 416-22 69th St Manager LLC | 22-14637 |
| NRIA Guttenberg Capital 416-22 St. Member LLC | 22-14639 |
| NRIA Guttenberg Capital 6269 JV Manager LLC | 22-14641 |
| NRIA Guttenberg Capital 6269 Manager LLC | 22-14643 |
| NRIA Hanover Road Manager LLC | 22-14645 |
| NRIA Henry Street 506 Manager, LLC | 22-14646 |
| NRIA II | 22-14648 |
| NRIA Kenwood Rd. 8 Manager LLC | 22-14650 |
| NRIA Madison Street Capital 931 Member LLC | 22-14651 |
| NRIA Manhattan Avenue 1300 Member LLC | 22-14653 |
| NRIA N. Ocean 2929 Manager LLC | 22-14655 |
| NRIA N. Ocean 344 Manager LLC | 22-14634 |
| NRIA N. Ocean 3565 Manager LLC | 22-14636 |
| NRIA N. Ocean 707 Manager LLC | 22-14638 |
| NRIA NE 7th Manager LLC | 22-14640 |
| NRIA Newark Street Capital 511 Member LLC | 22-14642 |
| NRIA Newark Street Capital 511-521 Manager LLC | 22-14644 |
| NRIA NJ Manager 511, LLC | 22-14647 |
| NRIA NJ Manager 8709 LLC | 22-14649 |
| NRIA NJ Manager 931 LLC | 22-14652 |
| NRIA North Bergen 8709 Member, LLC | 22-14654 |
| NRIA Old River Road Capital 460-510 Manager LLC | 22-14656 |

9607985

| Debtor | Case Number |
|---|---|
| NRIA Old River Road Capital 460-510 Member LLC | 22-14657 |
| NRIA Old Woods Road Manager LLC | 22-14658 |
| NRIA South Christopher Columbus 1499 Manager LLC | 22-14659 |
| NRIA Structured Credit Strategies LLC | 22-14660 |
| NRIA Wright by the Sea 1901 Member, LLC | 22-14661 |
| Old River Road Capital 460-510 LLC | 22-14662 |
| Old Woods Road Capital 36 LLC | 22-14663 |
| Sackett Street Capital 279 LLC | 22-14664 |
| Seventh Street Capital 494 LLC | 22-14665 |
| South Christopher Columbus Capital 1499 LLC | 22-14667 |
| Summit Street Capital 143 LLC | 22-14668 |
| Third Street Capital 423 LLC | 22-14669 |
| Union Street Capital 434 LLC | 22-14670 |
| Web Marketing Associates, LLC | 22-14671 |
| Wright by the Sea 1901 LLC | 22-14672 |

-4-

**EXHIBIT 2**

**SCHEDULE OF EXCLUDED PARTIES**

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 1 | 130 S. Front St, LP |
| 2 | 143 Adagio Investments, LLC |
| 3 | 1625 South Ocean, LLC |
| 4 | 305 Briny Ave, LLC |
| 5 | 44 Capital Management Corp |
| 6 | 44 Ventures I LLC |
| 7 | 724 Group Investments LLC |
| 8 | 900 Block N 5th Street, LP |
| 9 | 900 East Investments LLC |
| 10 | A.J. Sales & Marketing Incorporated |
| 11 | Ably Soft Private Limited |
| 12 | Abraham, Ashish C. |
| 13 | Acuna, Ricardo |
| 14 | Adagio Funding Ltd. |
| 15 | Ahuja, Amit |
| 16 | Akina Financial |
| 17 | Akina Financial and Consulting LLC |
| 18 | Akron Capital, LLC |
| 19 | Amarilla, Jesenia |
| 20 | Amato & Associates CPAS Inc |
| 21 | Amato, Josephine |
| 22 | Amato, Paul |
| 23 | AMI Realty Associates LLC |
| 24 | Amoroso, Michael |
| 25 | Analytical Closing Solution, LLC |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 26 | Anand, Deepit |
| 27 | Anand, Kulraaj |
| 28 | Anandani, Manish |
| 29 | Anika Equities |
| 30 | Apex Investments LLC |
| 31 | Armenta, Eduardo |
| 32 | Aron, Rick |
| 33 | Arya, Vivek |
| 34 | Ashcraft, Jhamani |
| 35 | Assetwise Solutions Inc. |
| 36 | ATTP Holding LLC |
| 37 | Avula, Venu Madaav R. |
| 38 | Banyan Grove Realty LLC |
| 39 | Barish, Erin |
| 40 | Barnawi, Usman |
| 41 | Barry Shochat Revocable Trust |
| 42 | Bassila, Jean-Claude |
| 43 | Bcartozian Business Development, LLC |
| 44 | BeeGee Capital LLC |
| 45 | Bell, Mark |
| 46 | Bhandarkar, Gopal |
| 47 | Bhatia, Kishor |
| 48 | Bhatia, Kishor & Painuly, Priyanka |
| 49 | Bhogi, Hari |
| 50 | Bhoraniya, Chandu |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 51 | Big Eye Marketing LLC |
| 52 | BL Realty LLC |
| 53 | BNP Capital Fund LLC |
| 54 | BNP Holdings LLC |
| 55 | Bohorquez, Steffy |
| 56 | BQO.LEO.JHO LLC |
| 57 | Braverman, Amy |
| 58 | Brooklyn Property Ventures, LLC |
| 59 | Budinska, Olena |
| 60 | CAMA SELF DIRECTED IRA |
| 61 | Campell, Ed |
| 62 | Canale, Paolo |
| 63 | Cangialosi, James |
| 64 | Cao, Simon |
| 65 | Caparo Insurance |
| 66 | Carli, Donna Marie |
| 67 | Carney Stanton LP |
| 68 | Carney, Jr., Thomas F. |
| 69 | Carney, Peter H. |
| 70 | Cartozian, Byron |
| 71 | Castle Rock Capacity, LLC |
| 72 | Cauley, Charmaine |
| 73 | CB Services LLC |
| 74 | Cetrulo, Jaclyn |
| 75 | Cetrulo, Sarah |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 76 | Cetrulo, Tiffany |
| 77 | CFA Assurance Services, LLC |
| 78 | CFA Review Services, LLC |
| 79 | CFA Tax Services, LLC |
| 80 | Chandra, Prenita Tanvi |
| 81 | Cipolla & Co., LLC |
| 82 | Cipolla Financial Advisors, LLC |
| 83 | Cipolla, Joseph |
| 84 | Clark, Scott |
| 85 | Clermont, Francia |
| 86 | Cobarrubias, Jose |
| 87 | Cohen, Scott & Meredith |
| 88 | Collins, John |
| 89 | Columbia, Immacolata |
| 90 | Confidential Brands, LLC |
| 91 | Cossaboon, Sam |
| 92 | Cruger, Christopher |
| 93 | Crystal Title & Escrow Co., Inc. |
| 94 | Cutrafello, Dawn |
| 95 | Damiao, Mario |
| 96 | David Dhillon Strategies, LLC |
| 97 | Davis, Na Jiah |
| 98 | Dee Anand, LLC |
| 99 | DePrima, Charles |
| 100 | Desai, Narendra |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under
their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 101 | Design Help Group |
| 102 | Dharia, Sumit |
| 103 | Dhillon, David |
| 104 | Dilaurenzo, Richard |
| 105 | Disla, Jose |
| 106 | District Trust LLC |
| 107 | Dixon, NG |
| 108 | DKSJR Investments LLC |
| 109 | DMR Construction Services, Inc |
| 110 | Donoghue, Patrick |
| 111 | Double Your Volume, LLC |
| 112 | DR Property Ventures, LLC |
| 113 | DRM Partners, Inc. |
| 114 | Drummond, Alton |
| 115 | Duffe, James |
| 116 | Dunay, Miskel & Backman, LLP |
| 117 | Dvores, Lawrence |
| 118 | East Coast Property Ventures, LLC a/k/a ECPV, LLC |
| 119 | Echevarria Industries, Inc. |
| 120 | Echevarria, Mario |
| 121 | Epic Insurance Brokers |
| 122 | Ethics First LLC |
| 123 | F. Benvenuto Gabriades |
| 124 | Face Time Pictures, LLC |
| 125 | Fakury, Elias |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 126 | Fallas, Alan |
| 127 | Fallas, Isaac |
| 128 | Fallas, Moses |
| 129 | Farina, Catherine |
| 130 | Farina, John |
| 131 | Farina, Luigi |
| 132 | Farina, Luigi & Catherine |
| 133 | FatBit Technologies Inc. |
| 134 | FFA 42921 LLC |
| 135 | Fick, Gary |
| 136 | Finn, Roman |
| 137 | Forte, Michael |
| 138 | Fortuna Funding LLC |
| 139 | Fox, Jordan |
| 140 | Fox, Marion |
| 141 | Front Street Investments LP |
| 142 | Furiel, Kristine |
| 143 | Gabor & Marotta LLC |
| 144 | Gaglani, Amit |
| 145 | Garnnier, Chrisne |
| 146 | Gelb, Michael |
| 147 | Gogineni, Gopichand |
| 148 | Golaszewski, Patryk |
| 149 | Golden Talents, LLC |
| 150 | Gottesfeld, Stephen |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 151 | Grabato, Rey |
| 152 | Gramuglia, Anthony |
| 153 | Grande Classe Development LLC a/k/a Grande Classe, LLC |
| 154 | Great Eastern Holdings LP |
| 155 | Growmore Capital LLC |
| 156 | Guo/Zhang, Yifeng/Min |
| 157 | Gupta, Permanand |
| 158 | H&L Marketing Services, LLC |
| 159 | Hapshy, Christy |
| 160 | Hapshy, Mina |
| 161 | Harrington, Brian |
| 162 | Harrington, Jack R. |
| 163 | Hicks, David |
| 164 | High Point Services, LLC |
| 165 | Hoboken Private Ltd. |
| 166 | Imagen K2 LLC |
| 167 | Immobiliare Capital Funding LLC |
| 168 | Integrated Data Solutions, LLC |
| 169 | IntelliRooster, LLC |
| 170 | Jabe Investments, LLC |
| 171 | Jain, Sharad |
| 172 | Jain, Swati |
| 173 | JAMATO LLC |
| 174 | JAMS Services, LLC |
| 175 | Janus Financial Services, Inc |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 176 | Javi, Sanjeev |
| 177 | JD Realty Holdings, LLC |
| 178 | Jia Hang Zhang |
| 179 | Jianping Cai & YiYi Du |
| 180 | Joseph, Ben |
| 181 | Joseph, Ben & Sujata B. |
| 182 | Joyce Kilmer LLC |
| 183 | Kash Resources LLC |
| 184 | Keefe, Preston |
| 185 | Kennedy, James |
| 186 | Khatiwala, Sid & Raghunath, Nikhil |
| 187 | King, Catherine |
| 188 | Kirpalani, Anmol |
| 189 | Klink, David C. |
| 190 | Klink, David C. and Edith |
| 191 | Knowhow Industry Strategies |
| 192 | Knowhow Industry Strategies, Inc. |
| 193 | Korczak, Mark |
| 194 | KREAH HCM Services Pvt. Ltd |
| 195 | Kruglyak, Lenny |
| 196 | Kruk, Joseph |
| 197 | Kuntesh Rana |
| 198 | Kyle, Stafirny |
| 199 | La Mattina, Glenn |
| 200 | Lalkiya, Jaysukh |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 201 | Land Net LLC |
| 202 | Lau, Kay |
| 203 | Leishman, Gregory |
| 204 | Lena Star LLC |
| 205 | Lerner, Robert |
| 206 | Levine Capital Aggregation Fund I LLC |
| 207 | Levine Capital Management, LLC |
| 208 | Levine S.D. Funding, LLC |
| 209 | Levine, Adam |
| 210 | Levine, Stephen |
| 211 | Levine, Stew |
| 212 | LiCalsi, Dennis |
| 213 | Lin, David |
| 214 | Lincoln Equity Inc. LLC |
| 215 | Link N' Log LLC |
| 216 | Lipton, John |
| 217 | Lively, Jesse |
| 218 | LLKNJ LLC |
| 219 | LMSD Associates, LD |
| 220 | Lombard, Jordan |
| 221 | Lu, Yingchun (Lin Fei) |
| 222 | Lubore, Jeffrey |
| 223 | Lucas, Andrew |
| 224 | Lucca Enterprises, LLC |
| 225 | Lucca, Joseph |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 226 | Lucca, Zachary |
| 227 | Lutero, Grace |
| 228 | Lutero, Nathania |
| 229 | Lutero, Nichole |
| 230 | Lux Property Group, LLC |
| 231 | Luz Ruta, LLC |
| 232 | Ma, Junning |
| 233 | Mahalla, Jetesa |
| 234 | Makower, Bryan |
| 235 | Maldonado, Jose |
| 236 | Malhotra, Vijay |
| 237 | Malone, Joseph |
| 238 | Marion Fox Living Trust |
| 239 | Markowitz, Arnold |
| 240 | Maryco Communications, LLC |
| 241 | Mastriano, Joseph |
| 242 | Mather, Scott |
| 243 | Matsas, Ben-Gurion |
| 244 | Matsas, Steven |
| 245 | Matthew, Jay |
| 246 | Maxwell, Ryan |
| 247 | McCarroll, James |
| 248 | McCloskey, Thomas |
| 249 | McFillin, Phillip |
| 250 | McGrail, Bryan |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under
their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 251 | McGrath, Michael |
| 252 | MCJA, LLC |
| 253 | McMillan, Shanae |
| 254 | Media Effective, LLC |
| 255 | Meola, Gina |
| 256 | Metro Construction Developers Inc. |
| 257 | Mins, Stephen |
| 258 | Molos, Kenneth |
| 259 | Mona Shah & Associates, PLLC |
| 260 | Monica, Michael |
| 261 | Moran, Anna |
| 262 | Morris Private Development Group, LLC |
| 263 | Musti, Subrahmanyam |
| 264 | Nepa, Ottavio |
| 265 | Network Digital Office Systems, Inc. |
| 266 | New Rez Property Management, LLC |
| 267 | Norvergence Foundation, Inc. |
| 268 | Norvergence, LLC |
| 269 | NRIA Capital Partners Inc. |
| 270 | NSS Consulting LLC |
| 271 | NYC Property Ventures, LLC |
| 272 | NYC Transportation Regional Center LLC |
| 273 | Ober, John |
| 274 | O'Brien, Daniel Coley |
| 275 | O'Brien, Jack |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 276 | Occhiogrosso, Joseph |
| 277 | O'Grady, Daniel |
| 278 | Oh, Susanna |
| 279 | Olena Budinska, LLC |
| 280 | OLHV Realty LLC |
| 281 | Osborne, Matthew |
| 282 | Oyediran, Olurotin |
| 283 | Pacaigue, Bernadette |
| 284 | Painuly, Priyanka |
| 285 | Pandya, Raj |
| 286 | Pantina, Frank |
| 287 | Patel, Atul |
| 288 | Patel, Biren |
| 289 | Patel, Jitenda |
| 290 | Patel, Raj |
| 291 | Patnaik, Animesh |
| 292 | PDCL, LLC |
| 293 | Pelican Investment Group LLC |
| 294 | Peters, Donna |
| 295 | Petruic, Natalie |
| 296 | Pham, Paul |
| 297 | Philly Funding LLC |
| 298 | Polizzi, Philip |
| 299 | Pomper, Stuart |
| 300 | Prakas & Co. |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 301 | Prakas, Athan "Tom" |
| 302 | Premier Access Property Management, Inc. |
| 303 | Prestandrea, Anthony |
| 304 | Pride, Broderick |
| 305 | Qiu, Xiaoguang Edward |
| 306 | Rabinovitz, Eve |
| 307 | Radici, Richard and Elena |
| 308 | Ramesh, Nirmala |
| 309 | Ramieri, Joseph |
| 310 | Realty Holding Trust 3314 |
| 311 | Red Seat Ventures, LLC |
| 312 | Reddy, Sridath |
| 313 | Reed Smith LLP |
| 314 | Referral Marketing, LLC |
| 315 | Reina, Juan |
| 316 | Renascent Enterprises, Inc. |
| 317 | Rey Grabato, LLC |
| 318 | RG Valencia LLC |
| 319 | Richard Radici |
| 320 | Ringer, Adam |
| 321 | Robert, Frederick |
| 322 | Rosenberg, Jeff |
| 323 | Rosenberg, Julianna |
| 324 | RTA CPA Inc |
| 325 | Ruffino, Jean |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 326 | Ruffino, Raymond |
| 327 | Sackrebleu Manager, LLC |
| 328 | Sackrebleu, LLC |
| 329 | Sacus, Blasé |
| 330 | Sadagopan, Venkatesh |
| 331 | Sage Titans |
| 332 | Salzano, Bethany |
| 333 | Salzano, Dustin |
| 334 | Salzano, Peter |
| 335 | Salzano, Thomas N. |
| 336 | Samul, Jamie |
| 337 | Sapphire Property Ventures, LLC |
| 338 | SAV Consulting LLC |
| 339 | SAV, Incorporated |
| 340 | Schaffer, Grace |
| 341 | Scuttaro, Anthony |
| 342 | Scuttaro, Arthur R. |
| 343 | Scuttaro, Arthur S. |
| 344 | Scuttaro, Stephen |
| 345 | Scuttaro, Vincent |
| 346 | SEAGLASS CAP., LLC |
| 347 | Sems, Richard |
| 348 | Shafer, Chas |
| 349 | Shah, Akik |
| 350 | Shah, Dharmesh |

## Exhibit 2 - Schedule of Excluded Parties

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
| --- | --- |
| 351 | Shah, Mona |
| 352 | Shah, Prashant |
| 353 | Sharma, Manisha |
| 354 | Shenoy, Juthika |
| 355 | Sheth, Haresh |
| 356 | Sheth, Vaishali |
| 357 | Shovel Ready Investments, LLC |
| 358 | Shovel Ready Projects, LLC |
| 359 | Siwal, JKS |
| 360 | Skyline Developments LP |
| 361 | Spada, Andrew |
| 362 | Spaldo, Frank |
| 363 | Sra, Kanwal |
| 364 | Sra, Kanwalden & Avneet |
| 365 | SRHD, LLC |
| 366 | SSAPT 2020 LLC |
| 367 | Stabile, Richard |
| 368 | Stark Jr, David |
| 369 | Stefanici, Rosa |
| 370 | Steyz, Shannen |
| 371 | SUJSUN LLC |
| 372 | Summer Ave Trust |
| 373 | Sunrise Realty 2015 Investment LLC |
| 374 | Swikworks, LLC |
| 375 | System One Financial Services, LLC |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under
their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 376 | T. Nicholas Salzano, LLC |
| 377 | T3X Consulting, LLC |
| 378 | Tab Financial Group LLC |
| 379 | Taylor, Caroline |
| 380 | Techosquare Solutions |
| 381 | Teterin Management LLC |
| 382 | Thomas Nicholas Salzano, LLC |
| 383 | Thomas, Maria |
| 384 | Thorne, Beverly |
| 385 | Tinari, Frank |
| 386 | TKS Group LLC |
| 387 | Torres, Javier |
| 388 | Turner & Brody LLC |
| 389 | Turner, Frederick & Kristine |
| 390 | Turner, Ivel |
| 391 | U.S. Construction, Inc. |
| 392 | Umriakov, Oleh |
| 393 | US Development |
| 394 | Valencia, Robert |
| 395 | Valley Consulting and Financial LLC |
| 396 | Van Duyne, Bruyne & Co., P.A. |
| 397 | Van Netta, William Duke |
| 398 | VanHoorn, Frank |
| 399 | Vasquez, Xavier |
| 400 | Velocity TX, LLC |

**Exhibit 2 - Schedule of Excluded Parties**

References to individuals shall be deemed to include any Affiliates and/or Persons or Entities under their control, including any trusts under which such individuals are a beneficial interest holder.

| # | Party Name |
|---|---|
| 401 | Venkatesh, Harsha |
| 402 | Ventola, Michael |
| 403 | Venu Avula |
| 404 | Vestcore Property Management, LLC |
| 405 | Villalobos, Veronica |
| 406 | Vision Capital Consulting LLC |
| 407 | Wagman, Marc |
| 408 | Web Marketing Associates, LLC |
| 409 | Weinberg, Jeffrey |
| 410 | Weingold Law PLLC |
| 411 | Weiss, Max |
| 412 | Wellerstein, Elisha |
| 413 | Wigo, Charles |
| 414 | Wiklinski, Stanley |
| 415 | Wipfli LLP |
| 416 | Wolinsky, Steven |
| 417 | World Vision Capital LLC |
| 418 | X-On Advisors, LLC |
| 419 | Zia, Muhammad |
| 420 | Zito, Marie |

**<u>EXHIBIT 3</u>**

**INVESTOR SCHEDULE**

Joint Chapter 11 Plan of Liquidation of
National Realty Investment Advisors, LLC and Its Affiliated Debtors
Investor Schedule

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| 270 Wealth Trust | | 200,000.00 | 31,315.00 | | 168,685.00 |
| Abbaraju, Ramasesha | | 250,000.00 | 53,558.34 | | 196,441.66 |
| Abdelhadi, Mohammad | | 108,000.00 | 21,232.62 | - | 86,767.38 |
| Abdelhadi, Mohammad (MT) "Madison Trust Company FBO  Mohammad Abdelhadi" | | 43,360.62 | 8,258.36 | - | 35,102.26 |
| Abraham, Jacob | | 142,221.00 | 15,226.62 | 44,755.67 | 82,238.71 |
| Abraham, Jacob "Madison Trust Company FBO Jacob Abraham" | | 668,292.13 | 13,762.09 | 131,683.08 | 522,846.96 |
| Abramsky, Yury & Zhanna | | 124,260.13 | 31,486.89 | 36,028.47 | 56,744.77 |
| Abston, Brenda Janell | | 500,000.00 | 50,493.14 | | 449,506.86 |
| Adamusik, Michael  JTWROS Dylan Tyler Benson | | 300,000.00 | 56,046.49 | | 243,953.51 |
| Adamusik, Michael (MT) "Madison Trust Co.FBO Michael Adamusik" | | 325,473.92 | 45,982.41 | - | 279,491.51 |
| Aditya, Maheshwari | | 200,000.00 | 37,358.28 | | 162,641.72 |
| Afzal, Naeem & Rukhsana | | 500,000.00 | 43,811.53 | - | 456,188.47 |
| Agarwal, Deepa (IRA) "Vantage FBO Deepa Agarwal IRA" | | 450,000.00 | 27,482.90 | - | 422,517.10 |
| Agboatwalla, Alimohammed (MT)"Madison Trust Company FBO Alimohammed Agboatwalla" | | 150,000.00 | 29,448.70 | - | 120,551.30 |
| Agostino, Joseph | | 150,000.00 | 26,632.62 | - | 123,367.38 |
| Agostino, Louie | | 150,000.00 | 26,632.62 | - | 123,367.38 |
| Ahmad, Syed N.  (Corp)"Amarat Enterprises Inc." | | 50,000.00 | 8,123.30 | - | 41,876.70 |
| Ahuja, Amit | Yes | 126,000.00 | 173,265.53 | - | - |
| Ahuja, Amit K."Amit Kumar Ahuja Revocable Trust" | | 420,304.66 | 107,301.94 | 17,304.66 | 295,698.06 |
| Ahuja, Ashok | | 300,000.00 | 40,685.60 | - | 259,314.40 |
| AIKS Group LLC | | 350,000.00 | 40,888.18 | - | 309,111.82 |
| Ajram, Aref | | 400,000.00 | 32,849.31 | - | 367,150.69 |
| Akina Financial and Consulting, LLC | Yes | 2,000,000.00 | 2,548,955.48 | | - |
| Akolkar, Ajit | | 100,000.00 | 23,726.88 | | 76,273.12 |
| Akolkar, Ajit (IRA) "Midland Trust Company As Custodian FBO Ajit Akolkar" | | 250,000.00 | 37,265.84 | | 212,734.16 |
| Akron Capital, LLC | Yes | 500,000.00 | 572,638.94 | - | - |
| Alberni, Jose G. "ITA 2014 Revocable Trust" | | 150,000.00 | 15,657.60 | | 134,342.40 |
| Albury, Thomas D. (Trust)"Thomas D. Albury and Esther N. Albury Living Revocable Trust" | | 250,000.00 | 10,964.57 | - | 239,035.43 |
| Aleti, Sumith C. | | 100,000.00 | 9,789.12 | | 90,210.88 |
| Alexiades, George (MT) "Madison Trust Company FBO George Alexiades" | | 150,000.00 | 19,161.00 | - | 130,839.00 |
| Ali, Ahzad | | 255,000.00 | 40,764.70 | - | 214,235.30 |
| Ali, Jamal | | 350,000.00 | 67,708.13 | - | 282,291.87 |
| Ali, Jamal  (MT) "Madison Trust Company FBO Jamal Ali" | | 200,000.00 | 34,394.56 | - | 165,605.44 |
| Ali, Tauqeer & Zarina | | 200,000.00 | 12,433.75 | - | 187,566.25 |
| Alla, Venkata Mahesh | | 100,000.00 | 9,657.60 | - | 90,342.40 |
| Allard, Julius A. | | 200,000.00 | 27,535.72 | - | 172,464.28 |
| Allen, Carol Ann | | 50,000.00 | 1,590.42 | | 48,409.58 |
| Allen, Robert E. | | 250,000.00 | $11,049.22 | - | 238,950.78 |
| Allgauer, Franklin | | 94,441.48 | - | 36,441.48 | 58,000.00 |
| Altmeyer, Vicki Lee (MT) "Madison Trust Company FBO Vicki Altmeyer IRA" | | 200,000.00 | 20,769.33 | | 179,230.67 |
| Amato, Josephine "JAMATO LLC" | Yes | 507,129.50 | 488,525.26 | 109,931.76 | - |

Joint Chapter 11 Plan of Liquidation of
National Realty Investment Advisors, LLC and Its Affiliated Debtors
Investor Schedule

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Amato, Paul | Yes | 80,893.00 | 116,730.04 | - | - |
| Amin, Divakar | | 50,000.00 | 7,288.89 | - | 42,711.11 |
| Amoroso, Michael (Defined Benefit Plan) "Michael Amoroso MD PC Defined Benefit Plan" | | 300,000.00 | 70,863.01 | - | 229,136.99 |
| Amoroso, Michael (MT)    "Madison Trust Company FBO Michael Amoroso" | Yes | 300,000.00 | 300,000.00 | - | - |
| Anand, Deepit (LLC) "Sapphire Property Ventures, LLC" | Yes | 11,493,069.30 | 14,566,684.89 | - | - |
| Anand, Kulraaj & Dharitri | Yes | 131,200.00 | 27,507.10 | 1,200.00 | 102,492.90 |
| Anand, Kulraaj B. (IRA)"Gold Star Trust Company FBO Kulraaj B Anand IRA" | Yes | 50,000.00 | 5,016.44 | - | 44,983.56 |
| Anand, Prabhu & Deepa | | 500,000.00 | 140,787.87 | - | 359,212.13 |
| Anandani, Manish | Yes | 46,287.50 | 57,520.53 | - | - |
| Anandani, Manish Kumar and Poonam | | 75,000.00 | 30,979.11 | - | 44,020.89 |
| Anandani, Manish Kumar"Madison Trust Company FBO Manish Anandani" | | 275,000.00 | 98,312.67 | - | 176,687.33 |
| Anantaneni, Harshawardhan (LLC) "BYM Investments LLC" | | 50,000.00 | 8,065.76 | - | 41,934.24 |
| Anderegg, Robert (MT) "Madison Trust Company FBO Robert Anderegg" | | 150,000.00 | 19,859.70 | - | 130,140.30 |
| Anderson, John O. | | 300,000.00 | 19,824.24 | - | 280,175.76 |
| Anidjar, Isaac J. & Sultana R. | | 801,000.00 | 151,636.30 | - | 649,363.70 |
| Anika Equities | Yes | | | | - |
| Ankenbauer, Theodore R. (IRA) "AltoIRA Custodian FBO Theodore Ankenbauer Traditional IRA" | | 1,000,000.00 | 98,296.84 | - | 901,703.16 |
| Ansari, Muhammad Jaffer | | 400,000.00 | 56,511.39 | - | 343,488.61 |
| Antar, Robert (MT) "Madison Trust Company FBO Robert Antar IRA" | | 319,600.00 | 50,586.93 | - | 269,013.07 |
| Appana, Srinivas N. | | 100,000.00 | 12,664.35 | - | 87,335.65 |
| Appel, Steven | | 391,727.01 | 99,357.25 | 213,610.51 | 78,759.25 |
| Appel, Steven (401K) "Steven Appel, DDS, PC 401k Plan FBO Steven Appel" | | 293,397.04 | 61,124.50 | - | 232,272.54 |
| Appolon, Jean-Michel (Corp)"AVEMM Corporataion" | | 500,000.00 | 39,277.47 | - | 460,722.53 |
| Arcamuzi, William | | 100,000.00 | 16,107.27 | - | 83,892.73 |
| Arif, Michael | | 50,000.00 | 3,856.86 | - | 46,143.14 |
| Armenta, Eduardo | Yes | 344,628.00 | 555,992.06 | - | - |
| Arokiasamy, David Antony (LLC)"Hebron NJ LLC" | | 500,000.00 | 65,787.81 | - | 434,212.19 |
| Aron, William | | 124,400.49 | 27,363.54 | 48,731.09 | 48,305.86 |
| Aronson, George | | 100,000.00 | 13,965.81 | - | 86,034.19 |
| Arora, Om P. & Vijay L. | | 500,000.00 | 19,474.73 | - | 480,525.27 |
| Arthur, David | | 160,000.00 | 19,324.22 | - | 140,675.78 |
| Arya, Vivek | Yes | 76,303.00 | 125,647.49 | - | - |
| Ash, Cecil P. | | 180,000.00 | 18,838.44 | - | 161,161.56 |
| Ashraf, Nasim & Aseela | | 350,000.00 | 73,388.18 | - | 276,611.82 |
| Attarwala, Irfan & Farida | | 50,000.00 | 10,137.08 | - | 39,862.92 |
| Au, Andrew (IRA)"Midland Trust Company As Custodian FBO Andrew Au" | | 100,000.00 | 3,345.24 | - | 96,654.76 |
| Auer, Eugene Richard & Norma P. JTWROS | | 300,000.00 | 48,614.52 | - | 251,385.48 |
| Austin, Mary (CAMA IRA Custodial Acct.) | | 50,000.00 | 11,874.95 | - | 38,125.05 |
| Avsar LLC | | 187,553.07 | 23,841.84 | - | 163,711.23 |
| Avula, Venu Madaav R. | Yes | 176,584.35 | 141,636.48 | 32,308.60 | 2,639.27 |
| Awasthi, Ashish | | 25,000.00 | 3,381.23 | - | 21,618.77 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Azevedo, John L. | | 1,000,000.00 | 41,552.42 | - | 958,447.58 |
| Babik, William | | 300,000.00 | 57,643.75 | - | 242,356.25 |
| Bachu, Venugopal | | 300,000.00 | 40,718.60 | - | 259,281.40 |
| Badve, Ashok Vishwanath&Suvarna Ashok Ba | | 15,000.00 | - | | 15,000.00 |
| Baer, Jeffrey | | 150,000.00 | 18,363.10 | - | 131,636.90 |
| Bagby, Calvin L. (IRA)"Strata Trust Company Custodian  FBO Calvin Bagby IRA" | | 500,000.00 | 56,514.96 | - | 443,485.04 |
| Bailey Jr., Carl | | 784,810.53 | 384,678.25 | 122,848.89 | 277,283.39 |
| Baker, Randal | | 192,626.74 | 32,746.59 | 76,626.74 | 83,253.41 |
| Baki, Ayman | | 837,320.99 | 202,446.20 | 268,881.43 | 365,993.36 |
| Bakshi, Simran | | 100,000.00 | 4,522.85 | - | 95,477.15 |
| Balassiano, Norman (MT)"Madison Trust Company FBO Norman Balassiano IRA" | | 200,000.00 | 23,365.20 | - | 176,634.80 |
| Ballata, Jay | | 200,000.00 | 24,757.92 | - | 175,242.08 |
| Ballman, John Gary & Deborah Ann | | 250,000.00 | 14,349.21 | - | 235,650.79 |
| Bamboo Forest LLC | | 100,000.00 | 22,649.94 | - | 77,350.06 |
| Bamji, Dinshaw & Mahrukh | | 100,000.00 | 19,358.39 | - | 80,641.61 |
| Banala, Dwaraknadh R. & Kasireddy, Sarala R. | | 360,000.00 | 43,052.09 | - | 316,947.91 |
| Bandaru, Murali K. | | 50,000.00 | 14,475.00 | - | 35,525.00 |
| Bandaru, Murali K. (IRA)"Midland Trust Company as Custodian FBO Murali K Bandaru | | 75,000.00 | 15,493.20 | - | 59,506.80 |
| Bangalore, Shivakumar N. | | 75,000.00 | 7,558.25 | - | 67,441.75 |
| Banit, Daxes M. & Hina | | 500,000.00 | 85,388.25 | - | 414,611.75 |
| Banthia, Pratap (Trust)"Banthis Family Trust UA 02/27/14" | | 300,000.00 | 60,275.28 | - | 239,724.72 |
| Banthia, Usha (MT)"Madison Trust Company FBO Usha Banthia" | | 150,000.00 | 22,993.20 | - | 127,006.80 |
| Barbaruolo, Perry | | 500,000.00 | 77,976.81 | - | 422,023.19 |
| Barber, Kenneth | | 90,304.00 | 23,328.43 | 23,904.00 | 43,071.57 |
| Barish, Erin | Yes | 50,000.00 | 59,583.56 | - | - |
| Barish, William | | 805,031.78 | 344,704.69 | 124,431.78 | 335,895.31 |
| Barker, Kyle | | 385,924.16 | 79,873.72 | 69,924.16 | 236,126.28 |
| Barnes, Jennifer A. | | 150,000.00 | 23,669.22 | - | 126,330.78 |
| Barnett, Clifford | | 100,000.00 | 14,344.88 | - | 85,655.12 |
| Barry Shochat Revocable Trust | Yes | 121,000.00 | 147,295.12 | - | - |
| Baskar, Chitra | | 460,801.44 | 213,292.26 | 97,001.44 | 150,507.74 |
| Baskind, Jason | | 100,000.00 | 14,276.21 | - | 85,723.79 |
| Baskind, Robert | | 150,000.00 | 21,414.40 | - | 128,585.60 |
| Bassila, Jean-Claude | Yes | 55,000.00 | 65,433.43 | - | - |
| Bateman, George (MT)"Madison Trust Company FBO George Bateman" | | 394,000.00 | 17,280.25 | - | 376,719.75 |
| Bath, Jugdip | | 100,000.00 | 5,896.15 | - | 94,103.85 |
| Batra, Raj K. & Sonia (LLC)"FIRSTHILL REALTY LLC" | | 800,000.00 | 118,198.22 | - | 681,801.78 |
| Battineni, Bharati (MT) "Madison Trust Company FBO Bharati Battineni" | | 100,000.00 | 13,212.35 | - | 86,787.65 |
| Battineni, Venkateswarlu | | 200,000.00 | 26,518.23 | - | 173,481.77 |
| Battineni, Venkateswarlu (MT)"Madison Trust Company FBO Venkateswarlu Battineni" | | 100,000.00 | 13,212.35 | - | 86,787.65 |
| Baum, Michael | | 200,000.00 | 24,757.92 | - | 175,242.08 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Bauman, Michael Donald (MT)"Madison Trust Company FBO Michael Donald Bauman" | | 500,000.00 | 42,508.41 | - | 457,491.59 |
| Baumeler, Alfred (IRA)"Equity Trust Company Custodian FBO Alfred Baumeler IRA" | | 555,000.00 | 65,134.04 | - | 489,865.96 |
| Baysinger, Jasper (Trust) "The 1986 Baysinger Living Trust" | | 837,062.08 | 144,372.61 | 63,762.08 | 628,927.39 |
| Beaubien, Douglas A. (Trust) "2009 D.A.B. Revocable Living Trust" | | 300,000.00 | 11,808.18 | - | 288,191.82 |
| Beck, Alice & Edward (Trust)"Beck Family Revocable Trust" | | 400,000.00 | 77,157.60 | - | 322,842.40 |
| Beck, Gustave | | 499,225.79 | 122,502.04 | 127,766.89 | 248,956.86 |
| Beck, Gustave (IRA)"Gustave Beck, Legal Owner via Non-Trust IRA with AET" | | 100,000.00 | 23,816.73 | - | 76,183.27 |
| Becker, Simon | | 622,815.59 | 127,148.84 | 111,283.80 | 384,382.95 |
| BeeGee Capital LLC | Yes | 920,538.80 | 872,726.64 | 981,044.18 | - |
| Beeman, Chad | | 150,000.00 | 12,869.90 | - | 137,130.10 |
| Behera, Goutam | | 50,000.00 | 9,481.84 | - | 40,518.16 |
| Behringer, Alfred R. | | 150,000.00 | 22,746.60 | - | 127,253.40 |
| Beightol, Frederick A. | | 250,000.00 | 35,112.07 | - | 214,887.93 |
| Bejgam, Kishor | | 150,000.00 | 16,599.07 | - | 133,400.93 |
| Bekhtel, Alex & Irena | | 600,000.00 | 63,387.12 | - | 536,612.88 |
| Bell, Mark JTWROS Sandra Bell, Lowell Bell | | 513,149.83 | 204,338.77 | 136,646.53 | 172,164.53 |
| Benavente, Victor A. | | 400,000.00 | 26,073.06 | - | 373,926.94 |
| Bendickson, Edward A. | | 1,000,000.00 | 154,921.60 | - | 845,078.40 |
| Bendickson, Edward A. (MT)"Madison Trust Company FBO Edward A. Bendickson" | | 1,500,000.00 | 125,821.92 | - | 1,374,178.08 |
| Bennett, Christopher M. | | 500,000.00 | 81,315.02 | - | 418,684.98 |
| Bennett, Clifford E. & Pamela A. JTWROS | | 1,000,000.00 | 160,503.18 | - | 839,496.82 |
| Bennett, Stephen B. | | 500,000.00 | 65,924.80 | - | 434,075.20 |
| Benvenuti, Paolo | | 50,000.00 | 12,276.31 | - | 37,723.69 |
| Benz, Mark (IRA)"Midland Trust Company As Custodian FBO Mark Benz" | | 250,000.00 | 13,253.37 | - | 236,746.63 |
| Bergmann, Henry (401K)"Dreamer Realty 401K Plan" | | 50,000.00 | 7,097.09 | - | 42,902.91 |
| Berkowitz, Jeff (LLC)"Jberkowitz RD LLC" | | 100,000.00 | 10,657.56 | - | 89,342.44 |
| Berman, Jerrold H. | | 300,000.00 | 26,874.30 | - | 273,125.70 |
| Betesh, Mitchell | | 200,000.00 | 30,328.75 | - | 169,671.25 |
| Bhambri, Ajay & Neha | | 125,000.00 | 14,607.82 | - | 110,392.18 |
| Bhandarkar, Gopal | Yes | 691,844.50 | 796,718.24 | 42,910.25 | - |
| Bhandarkar, Gopal IRA | Yes | 196,980.60 | 49,245.25 | 64,180.60 | 83,554.75 |
| Bhanderi, Ghanshyam (LLC)"CRSB Capital LLC" | | 100,000.00 | 11,271.69 | - | 88,728.31 |
| Bhargava, Umesh Kumar & Nalini | | 300,000.00 | 46,479.42 | - | 253,520.58 |
| Bhat, Vasanth | | 91,804.04 | 22,951.00 | 29,427.88 | 39,425.16 |
| Bhatia, Kishor | Yes | 88,231.66 | 120,623.56 | - | - |
| Bhatia, Kishor & Painuly, Priyanka | Yes | 116,000.00 | 162,450.85 | - | - |
| Bhatt, Manish | | 150,000.00 | 22,647.96 | - | 127,352.04 |
| Bhatt, Manish (MT) "Madison Trust Company FBO Manish Bhatt IRA" | | 110,000.00 | 10,225.44 | - | 99,774.56 |
| Bhimani, Amrish | | 50,000.00 | 6,304.85 | - | 43,695.15 |
| Bhogi, Anitha (IRA) "Nuview Trust Co, Custodian FBO Anitha Bhogi IRA" | | 201,246.58 | 48,299.28 | 68,446.58 | 84,500.72 |
| Bhogi, Hari "NUVIEW TRUST CO. CUSTODIAN FBO HARI KRISHNA BHOGI IRA" | Yes | 63,000.00 | 90,650.96 | - | - |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Bhoopalam, Vamshi (Trust)"The Bhoopalam Family Revocable Trust" | | 51,000.00 | 10,591.16 | - | 40,408.84 |
| Bhoraniya, Chandulal J. | Yes | 400,000.00 | 78,579.48 | - | 321,420.52 |
| Bhupalam, Bhaskar | | 145,000.00 | 35,808.58 | - | 109,191.42 |
| Bhuptani, Tejas (LLC)"SPT Services LLC" | | 50,000.00 | 3,716.96 | - | 46,283.04 |
| Bick, Steven (MT)    "Madison Trust Company FBO  Steven Bick IRA" | | 450,000.00 | 76,154.50 | - | 373,845.50 |
| Bifone, Salvatore (IRA)"Midland Trust Company As Custodian FBO Salvatore Bifone" | | 250,000.00 | 21,929.31 | - | 228,070.69 |
| Bindra, Saranjit | | 60,000.00 | 23,426.67 | - | 36,573.33 |
| Binet, Yankel "Edward" (Trust)"Tiferes Family Trust" | | 300,000.00 | 54,246.60 | - | 245,753.40 |
| Birkmire Jr., Harvey E. | | 450,000.00 | 68,650.79 | - | 381,349.21 |
| Bitonti, Mario (Trust)"Revocable Living Trust of Mario & Anne Bitonti" | | 300,000.00 | 14,801.32 | - | 285,198.68 |
| Blackburn, Jefferson T. | | 300,000.00 | 47,054.75 | - | 252,945.25 |
| Blackburn, Jefferson T. (IRA)"Midland Trust Company as Custodian FBO Jeff Blackburn" | | 200,000.00 | 22,543.35 | - | 177,456.65 |
| Blair, Rochelle (IRA)"Forge Trust Co. CFBO Rochelle  Blair" | | 94,000.00 | 11,584.62 | - | 82,415.38 |
| Blair, Thomas L. (IRA)"Forge Trust Co. CFBO Thomas L. Blair IRA" | | 257,500.00 | 22,609.84 | - | 234,890.16 |
| Blankenship, Jerome L. (Trust)"The Blankenship Living Trust" | | 250,000.00 | 11,375.51 | - | 238,624.49 |
| Blaska, Barry L. | | 150,000.00 | 8,453.61 | - | 141,546.39 |
| Blatman, Jody M. (Trust)"Jody M. Blatman Revocable Trust of October 15, 2020" | | 100,000.00 | 10,108.37 | - | 89,891.63 |
| Blue 310 Doral LLC | Yes | 2,413,161.04 | 664,253.51 | 37,128.39 | 1,711,779.14 |
| Blumer, I. David & Jane | | 150,000.00 | 26,578.80 | - | 123,421.20 |
| Bodnar, Stanko | | 3,600,000.00 | 287,008.12 | - | 3,312,991.88 |
| Bohorquez, Steffy | Yes | 30,000.00 | 33,600.00 | - | - |
| Boice, George DeWitt (Trust) "The George DeWitt Boice and Lorraine R. Boice Living Trust" | | 100,000.00 | 4,345.24 | - | 95,654.76 |
| Bolwell, Evelyn or Grandsire, Paul  (LLC)"RTOUT, LLC" | | 50,000.00 | 3,840.42 | - | 46,159.58 |
| Bommaraju, Jag | | 50,000.00 | 11,162.22 | - | 38,837.78 |
| Bonney, Jeffrey Leo | | 200,000.00 | 13,255.60 | - | 186,744.40 |
| Boonzaaijer, Erica L. (LLC)"610 PHC Trust LLC" | | 250,000.00 | 27,054.66 | - | 222,945.34 |
| Borenius, John L. (IRA)    "Equity Trust Company Custodian FBO John L. Borenius, IRA  " | | 300,000.00 | 48,463.16 | - | 251,536.84 |
| Bornemann, Janice A.(MT)"Madison Trust Company FBO Janice A.. Bornemann" | | 150,000.00 | 13,198.70 | - | 136,801.30 |
| Bornemann, William (MT)"Madison Trust Company FBO William R. Bornemann" | | 150,000.00 | 28,440.48 | - | 121,559.52 |
| Bourne, Steven J. | | 500,000.00 | 18,036.58 | - | 481,963.42 |
| Bowe, James B. | | 100,000.00 | 10,860.69 | - | 89,139.31 |
| Boyer, Larry E. | | 200,000.00 | 27,214.62 | - | 172,785.38 |
| Boyle, Teresa (IRA) "Midland Trust Company As Custodian FBO Teresa Boyle" | | 200,000.00 | 28,607.34 | - | 171,392.66 |
| Boyles, Dana | | 500,000.00 | 50,328.76 | - | 449,671.24 |
| Boyles, Jimmy Lee | | 215,000.00 | 44,091.30 | - | 170,908.70 |
| Boyles, Jimmy Lee  (IRA)"The IRA club FBO Jimmy Lee Boyles (ROTH) IRA" | | 235,000.00 | 33,655.91 | - | 201,344.09 |
| Boyles, Jimmy Lee  (IRA)"The IRA club FBO Jimmy Lee Boyles (Traditional) IRA" | | 800,000.00 | 104,793.46 | - | 695,206.54 |
| Brandt, Robert H. (Trust)"Robert & Charlotte Brandt Living Trust" | | 500,000.00 | 38,269.68 | - | 461,730.32 |
| Brar, Saroj MD (Trust)"Saroj Brar Revocable Trust" | | 500,000.00 | 64,171.47 | - | 435,828.53 |
| Breaux, Beverly L. | | 450,000.46 | 40,594.78 | - | 409,405.68 |
| Brissett, Courtney | | 496,333.33 | 43,882.54 | 196,333.34 | 256,117.45 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Brissett, Courtney (Pat 2)(MT) "Madison Trust Company FBO Courtney Brissett" | | 800,000.00 | 69,836.22 | - | 730,163.78 |
| Brittenham, David | | 100,000.00 | 21,700.04 | - | 78,299.96 |
| Britton, Robert | | 100,000.00 | 9,486.82 | - | 90,513.18 |
| Brogdon, Stephen N. | | 100,000.00 | 3,865.08 | - | 96,134.92 |
| Brown, Barbara E | | 75,000.00 | 885.63 | - | 74,114.37 |
| Brown, Robert "Jeff" | | 130,399.71 | 39,645.81 | 38,600.71 | 52,153.19 |
| Brown, Steven D. | | 600,000.00 | 49,883.51 | - | 550,116.49 |
| Brown, Timothy | | 140,000.00 | 19,318.84 | - | 120,681.16 |
| Brown, Trevor J. (Trust) "The Trevor Brown Separate Property Trust" | | 350,000.00 | 15,632.41 | - | 334,367.59 |
| Brownstein, Mark & Beatrice (Trust) "Mark & Beatrice Brownstein Trust" | | 200,000.00 | 11,389.38 | - | 188,610.62 |
| Brownstein, Richard | | 150,000.00 | 6,907.60 | - | 143,092.40 |
| Bruce L. Levy Trust | | 564,457.23 | 103,988.06 | 95,833.46 | 364,635.71 |
| Bruce Levy IRA | | 910,815.64 | 446,406.43 | 140,358.44 | 324,050.77 |
| Brulato, Gina | | 50,000.00 | 9,282.88 | - | 40,717.12 |
| Brunson, Virginia | | 150,000.00 | 6,027.50 | - | 143,972.50 |
| Brunton, Thomas (Trust) "The Thomas Brunton Living Trust" | | 1,950,000.00 | 175,103.89 | - | 1,774,896.11 |
| Bruske, Edward H. III (LP) "EHB & PAB Family Limited Parternership" | | 100,000.00 | 13,976.76 | - | 86,023.24 |
| Bryan Schumaker | | 265,382.78 | 42,461.28 | - | 222,921.50 |
| Bryne, Roger M. | | 200,000.00 | 24,045.65 | - | 175,954.35 |
| Buehrig, Waymond E. & Mary JoAnn | | 150,000.00 | 10,791.10 | - | 139,208.90 |
| Burch, Howard J. (Trust) "Howard Burch Revocable Trust" | | 2,000,000.00 | 325,707.55 | - | 1,674,292.45 |
| Burnham, James A. (LLC) "Copper Bottom LLC" | | 575,000.00 | 75,036.26 | - | 499,963.74 |
| Burrell, Maurice | | 500,000.00 | 58,913.40 | - | 441,086.60 |
| Burton, Carroll Baker | | 100,000.00 | 9,574.50 | - | 90,425.50 |
| Buse, John David | | 150,000.00 | 21,274.10 | - | 128,725.90 |
| Bussa, Naga Raju | | 150,000.00 | 12,195.30 | - | 137,804.70 |
| Butler, Aaron | | 50,000.00 | 9,092.57 | - | 40,907.43 |
| Butler, Aaron (IRA) "The Entrust Group, Inc. FBO Aaron Butler Roth IRA" | | 50,000.00 | 9,092.57 | - | 40,907.43 |
| Butler, Gordon M. Jr. | | 360,000.00 | 17,761.64 | - | 342,238.36 |
| C2 Group LLC | | 579,913.73 | 207,618.95 | 157,265.33 | 215,029.45 |
| Cable, Larrie Gene (Trust) "Cable Family Revocable Trust dtd 31 May 2018" | | 500,000.00 | 69,557.11 | - | 430,442.89 |
| Cabrol, Jean Marc    "IRA Services Trust Company CFBO: Jean-Marc Cabrol" | | 250,000.00 | 51,291.67 | - | 198,708.33 |
| Cadenhead, William B. | | 150,000.00 | 19,613.10 | - | 130,386.90 |
| Cai, Jianping | | 140,156.20 | 30,889.14 | 48,921.69 | 60,345.37 |
| Calandra, David Joseph | | 500,000.00 | 40,650.80 | - | 459,349.20 |
| Calapai, Elissa | | 200,000.00 | 12,981.65 | - | 187,018.35 |
| Calio, Antoinette | | 476,000.00 | 44,076.50 | - | 431,923.50 |
| Calio, Antoinette (MT) "Madison Trust Company FBO Antoinette Calio" | | 149,000.00 | 6,861.47 | - | 142,138.53 |
| CAMA SELF DIRECTED IRA | Yes | 55,000.00 | 80,821.37 | - | - |
| Campell, Ed | Yes | 57,502.82 | 79,662.72 | - | - |
| Camporese, Peter & Sandra  (MT) "Madison Trust Company FBO Peter Camporese Traditional IRA" | | 1,735,985.63 | 207,209.00 | - | 1,528,776.63 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Camporese, Peter & Sandra (Part 4) (MT) "*Madison Trust Company FBO Peter Camporese Roth IRA XXXX1012*" | | 202,839.53 | 28,408.58 | - | 174,430.95 |
| Camporese, Peter & Sandra (Part 5) (MT) "Madison Trust Company FBO Sandra Camporese Roth IRA XXXX8100" | | 81,747.08 | 10,188.18 | - | 71,558.90 |
| Camporese, Peter and Sandra  (Personal) | | 4,646,000.00 | 1,248,652.73 | - | 3,397,347.27 |
| Canale, Paolo | Yes | 44,275.00 | 55,308.57 | - | - |
| Cangialosi, James | Yes | 336,504.26 | 380,918.70 | - | - |
| Canning, Matthew (LLC)"The Bradford Montgomery Property Group, LLC" | | 35,000.00 | 4,935.24 | - | 30,064.76 |
| Cao, Simon "World Vision Capital LLC" | Yes | 1,788,558.55 | 586,824.84 | 432,244.15 | 769,489.56 |
| Cao, Simon (Trust) "WVC Solo 401k Trust" | Yes | 1,400,000.00 | $368,565.86 | 267,105.94 | 764,328.20 |
| Capkovic, Gary (IRA)"Midland Trust Company as Custodian FBO Gary Capkovic IRA" | | 249,294.00 | 30,928.40 | - | 218,365.60 |
| Carlile, Rex E. (MT) "Madison Trust Company FBO Rex E Carlile" | | 200,000.00 | 27,652.94 | - | 172,347.06 |
| Carney, Richard P. (Trust)"Richard P. Carney Revocable Trust" | | 50,000.00 | 3,656.18 | - | 46,343.82 |
| Carpi, Frank | | 150,000.00 | 24,299.32 | - | 125,700.68 |
| Carpino, Ronald (IRA)"Equity Trust Company Custodian FBO Ronald J Carpino Roth IRA" | | 35,520.00 | 9,948.52 | - | 25,571.48 |
| Carpino, Ronald (IRA)"Equity Trust Company Custodian FBO Ronald J Carpino Traditional IRA" | | 2,256,000.00 | 122,041.15 | - | 2,133,958.85 |
| Carter, Elise | | 300,000.00 | 24,988.57 | - | 275,011.43 |
| Carter, Elise (IRA)"Midland Trust Company as Custodian FBO Elise Carter" XXX57571 | | 222,000.00 | 37,851.48 | - | 184,148.52 |
| Carter, Elise (IRA)"Midland Trust Company as Custodian FBO Elise Carter" XXX57574 | | 178,000.00 | 29,646.37 | - | 148,353.63 |
| Cartozian, Byron | Yes | 50,000.00 | 2,288.85 | - | 47,711.15 |
| Cartozian, Byron (MT)"Madison Trust Company FBO Byron Cartozian XXX3157" | Yes | 135,021.83 | 28,000.38 | 31,534.17 | 75,487.28 |
| Cartozian, Byron (MT)"Madison Trust Company FBO Byron Cartozian XXX4862" | Yes | 43,779.00 | 7,099.63 | - | 36,679.37 |
| Cartozian, Janet | | 100,000.00 | 21,258.20 | - | 78,741.80 |
| Carvalho- Imam, Erika M. | | 538,849.32 | 111,909.25 | 88,849.32 | 338,090.75 |
| Cassidy, Robert T. | | 300,000.00 | 27,647.40 | - | 272,352.60 |
| Cassity, Edward J. | | 50,000.00 | 5,332.20 | - | 44,667.80 |
| Castellanos, Gabriel and Sonia | | 300,000.00 | 61,373.70 | - | 238,626.30 |
| Castro, Kyleen E. | | 500,000.00 | 19,680.46 | - | 480,319.54 |
| Catlett, Troy D. | | 25,000.00 | 4,477.68 | - | 20,522.32 |
| Chabra, Narinder | | 2,337,047.98 | 509,959.58 | - | 1,827,088.40 |
| Chabra, Surinder | | 1,261,500.00 | 520,228.36 | 200,000.00 | 541,271.64 |
| Chaganti,  Raghava-Srinivas R. | | 50,000.00 | 6,913.32 | - | 43,086.68 |
| Chambers, Robert C. | | 300,000.00 | 45,821.90 | - | 254,178.10 |
| Chamlin, Kenneth | | 50,000.00 | 6,345.95 | - | 43,654.05 |
| Chan, Quinn (MT) "Madison Trust Company FBO Quinn Chan" | | 700,000.00 | 100,991.82 | - | 599,008.18 |
| Chandler, Reginald Keith | | 400,000.00 | 52,872.15 | - | 347,127.85 |
| Chandra, "Tanvi" Prenita (Corp)"Renascent Enterprises Inc" | Yes | 100,000.00 | 26,624.72 | 51,000.00 | 22,375.28 |
| Chandra, Subhash | | 100,000.00 | 9,558.96 | - | 90,441.04 |
| Chaney, Thomas Hogan | | 500,000.00 | 65,102.86 | - | 434,897.14 |
| Chang, Michael J. | | 202,000.00 | 29,859.03 | - | 172,140.97 |
| Chang, Pei K. (Trust) "The Pei K. Chang Living Trust" | | 263,000.00 | 39,700.78 | - | 223,299.22 |
| Chapman, Henry Allen | | 50,000.00 | 3,656.18 | - | 46,343.82 |
| Chattoo, Premetesh | | 50,000.00 | 7,856.26 | - | 42,143.74 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Chaudhari, Dinesh | | 100,000.00 | 23,550.01 | - | 76,449.99 |
| Chaudhari, Girishkumar | | 35,000.00 | 4,613.25 | - | 30,386.75 |
| Chehebar, Albert | | 3,000,000.00 | 818,388.08 | - | 2,181,611.92 |
| Chen, Irvin | | 25,000.00 | 3,525.08 | - | 21,474.92 |
| Chen, Jimmy | | 406,679.64 | 201,479.68 | 89,685.74 | 115,514.22 |
| Chen, Michael | | 406,624.51 | 97,447.01 | 25,731.51 | 283,445.99 |
| Chen, Michael (Trust) "MMC Investment Trust" | | 700,000.00 | 182,574.81 | - | 517,425.19 |
| Chen, Ningxing | | 500,000.00 | 55,155.16 | - | 444,844.84 |
| Chen, Ya-Rou -TAIWAN | | 100,000.00 | 26,466.71 | - | 73,533.29 |
| Chepuri, Roshan | | 125,000.00 | 9,141.65 | - | 115,858.35 |
| Chhugani, Naresh | | 75,000.00 | 14,477.75 | - | 60,522.25 |
| Chigullapally, Ashok | | 70,000.00 | 20,265.00 | - | 49,735.00 |
| Chilkamarri, Sharika | | 50,000.00 | 12,466.58 | - | 37,533.42 |
| Chitluru, Raveendra & Seetha | | 50,000.00 | 6,899.62 | - | 43,100.38 |
| Chivukula, Ravi & Somenhalli, Sudhakar (LLC)"Chivso LLC" | | 50,000.00 | 6,913.32 | - | 43,086.68 |
| Choudhary, Manoj | | 300,000.00 | 54,133.65 | - | 245,866.35 |
| Choukroun, Yael (IRA)"Midland Trust Company as Custodian FBO Yael Choukroun" | | 50,000.00 | 5,219.24 | - | 44,780.76 |
| Choy, Isaac O. & Lin, Susan | | 250,000.00 | 49,185.89 | - | 200,814.11 |
| Christensen, Russ (401K)"Murray Duplex LLC 401K plan" | | 325,000.00 | 27,565.18 | - | 297,434.82 |
| Christophersen, Dana | | 150,000.00 | 14,513.90 | - | 135,486.10 |
| Chvatal, Brad | | 850,000.00 | 142,282.10 | - | 707,717.90 |
| Chvatal, Brad (MT)"Madison Trust Company FBO Brad Chvatal" | | 150,000.00 | 20,067.18 | - | 129,932.82 |
| Cincera, Brian | | 1,110,000.00 | 385,336.32 | - | 724,663.68 |
| Cinelli, Dennis & Linda | | 50,000.00 | 2,206.65 | - | 47,793.35 |
| Cioffe, Thomas (MT)"Madison Trust Company FBO Thomas Cioffe Roth IRA" | | 100,000.00 | 20,533.34 | - | 79,466.66 |
| Cioffe, Thomas (MT)"Madison Trust Company FBO Thomas Cioffe Traditional IRA" | | 100,000.00 | 14,894.56 | - | 85,105.44 |
| Cioffe, Thomas (Corp) "Cioffe Enterprises, INC" | | 2,100,000.00 | 403,250.64 | - | 1,696,749.36 |
| Clark, James | | 50,000.00 | 3,430.84 | - | 46,569.16 |
| Clark, Jon Scott | Yes | 323,226.63 | 74,870.35 | 97,253.26 | 151,103.02 |
| Clark, Jon Scott (401k)"Jon Scott Clark 401K PSP" | Yes | 394,226.63 | 238,897.65 | - | 155,328.98 |
| Clary, Michael J. | | 500,000.00 | 51,369.94 | - | 448,630.06 |
| Clary, Michael J. (IRA)"Madison Trust Company FBO Michael J. Clary IRA" | | 550,000.00 | 42,330.92 | - | 507,669.08 |
| Clement, Carl | | 150,000.00 | 29,050.00 | - | 120,950.00 |
| Cockburn, Harold | | 400,000.00 | 87,133.39 | - | 312,866.61 |
| Cockburn, Harold (MT)"Madison Trust Company FBO Harold Cockburn IRA" | | 500,000.00 | 101,721.00 | - | 398,279.00 |
| Codjoe, Paul | | 75,000.00 | 12,462.94 | - | 62,537.06 |
| Cohen, Bennett | | 200,000.00 | 28,032.88 | - | 171,967.12 |
| Cohen, Scott & Meredith | Yes | 66,400.00 | 87,509.74 | - | - |
| Coker, Dale M. & Susan B. | | 400,000.00 | 58,987.60 | - | 341,012.40 |
| Coleman, Christopher T. | | 152,615.47 | 27,125.90 | - | 125,489.57 |
| Coleman, Mark H. (LP)"Whale Island, LP" | | 1,575,000.00 | 313,938.86 | - | 1,261,061.14 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Conway, Anthony E. | | 200,000.00 | 9,045.62 | - | 190,954.38 |
| Cook, Gregory W. | | 250,000.00 | 9,908.59 | - | 240,091.41 |
| Cooper, Thomas L. | | 500,000.00 | 60,020.47 | - | 439,979.53 |
| Coppedge, Don M. & Judy N. | | 250,000.00 | 28,110.64 | - | 221,889.36 |
| Corfield, Michael A. | | 100,000.00 | 4,763.04 | - | 95,236.96 |
| Corvini, Stephen W. (MT)"Madison Trust Company FBO Stephen Corvini" | | 50,000.00 | 9,235.24 | - | 40,764.76 |
| Costa, Pasquale | | 200,000.00 | 9,483.94 | - | 190,516.06 |
| Costello, Stephen | | 347,078.84 | 79,628.17 | 64,278.84 | 203,171.83 |
| Cotton, Ira W. (Trust) "The Ira W. Cotton & Marcy A. Cotton Joint Revocable Living Trust Established November 11, 2017" | | 240,000.00 | 33,469.72 | - | 206,530.28 |
| Coughlin, Mike | | 175,000.00 | 47,494.35 | - | 127,505.65 |
| Creamer, David | | 150,000.00 | 15,904.20 | - | 134,095.80 |
| Creamer, Patrick | | 2,350,004.00 | 339,313.54 | - | 2,010,690.46 |
| Crespo, Katherine (Trust)"Twenty Thirty-Three Infinity Trust" | | 200,000.00 | 10,986.24 | - | 189,013.76 |
| Cucci, Robert P. | | 250,000.00 | 25,547.88 | - | 224,452.12 |
| Currie, Tully | | 250,000.00 | 17,557.01 | - | 232,442.99 |
| Cutler, David (IRA) "Midland Trust Company As Custodian FBO David Cutler" | | 70,000.00 | 10,338.57 | - | 59,661.43 |
| Cvelic, Allen | | 542,247.12 | 76,164.36 | 77,247.12 | 388,835.64 |
| Cvelic, Allen "Madison Trust Acct 1 | | 169,310.36 | 45,569.59 | 54,304.72 | 69,436.05 |
| Cvelic, Allen Madison Trust Acct 2 | | 374,349.06 | 71,126.32 | 123,075.84 | 180,146.90 |
| Cvelic, Matthew & Mary | | 734,266.33 | 124,661.95 | 148,909.33 | 460,695.05 |
| Cvelic-Badurina, Natasa | | 250,000.00 | 21,077.07 | - | 228,922.93 |
| Czachor, Lance (MT)"Madison Trust Company FBO Lance Czachor" | | 400,000.00 | 49,515.96 | - | 350,484.04 |
| Czuzak, Myron Christian & Alicia Mabel | | 150,000.00 | 17,623.30 | - | 132,376.70 |
| Dabah, David | | 300,000.00 | 46,183.56 | - | 253,816.44 |
| Dabah, Jack | | 800,000.00 | 142,002.65 | - | 657,997.35 |
| Dabah, Toby | | 1,950,000.00 | 297,721.74 | - | 1,652,278.26 |
| Dabbah, Joseph & Alice | | 300,000.00 | 47,663.01 | - | 252,336.99 |
| D'Addario, Michael | | 200,000.00 | 17,105.02 | - | 182,894.98 |
| D'Alessandro, Henry | | 592,637.12 | 301,329.71 | - | 291,307.41 |
| Dali, Sanjiv V. (MT)"Madison Trust Company FBO Sanjiv V. Dali" | | 300,000.00 | 53,239.71 | - | 246,760.29 |
| Daly, Michael John & Corinne | | 300,000.00 | 52,582.19 | - | 247,417.81 |
| Dama, Deepak | | 1,000,000.00 | 191,274.01 | - | 808,725.99 |
| Damron, Loretta (IRA)"Equity Trust Company Custodian FBO Loretta Damron IRA" | | 150,000.00 | 17,952.10 | - | 132,047.90 |
| Dandona, Roshi Singh & Hakmeem Kauk | | 153,035.62 | 19,129.50 | 43,035.62 | 90,870.50 |
| Dantini, Daniel & Christina (Trust)"Dantini Family Revocable Trust" | | 150,000.00 | 16,191.90 | - | 133,808.10 |
| Darabi, Hamid A. | | 150,000.00 | 13,034.30 | - | 136,965.70 |
| Darr, Robert J. | | 50,000.00 | 1,606.86 | - | 48,393.14 |
| Darshini Dalal | | 500,000.00 | - | - | 500,000.00 |
| Daruwala, Percis V. | | 150,000.00 | 12,030.90 | - | 137,969.10 |
| Daruwala, Vispi K. | | 50,000.00 | 4,010.33 | - | 45,989.67 |
| Dave, Beena | | 300,000.00 | 53,460.32 | - | 246,539.68 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Davey, Craig S. (401k)"Craig S. Davey SOLO 401K" | | 100,000.00 | 20,821.92 | - | 79,178.08 |
| David C. Klink Revocable Living Trust | | 150,755.99 | 16,534.54 | 107,255.99 | 26,965.46 |
| David, Travis | | 100,000.00 | 11,436.09 | - | 88,563.91 |
| Davidian, Hagop & Adrineh (Trust)"Hagop and Adrineh Davidian Trust dated March 25, 2015" | | 210,000.00 | 32,132.83 | - | 177,867.17 |
| Davis, Frank Allen Jr. | | 150,000.00 | 20,348.64 | - | 129,651.36 |
| Dawlabani, Nickolas & Samar | | 150,000.00 | 22,296.88 | - | 127,703.12 |
| Day, James C. (Trust)"James C. Day Trust" | | 300,000.00 | 26,725.99 | - | 273,274.01 |
| Day, Ross K. (Trust) "Day 2019 Trust" | | 150,000.00 | 7,607.15 | - | 142,392.85 |
| Day, Tim | | 150,000.00 | 17,359.70 | - | 132,640.30 |
| Dayan, Daniel | | 150,000.00 | 27,887.76 | - | 122,112.24 |
| Dayan, Sol (LLC) "Dayan Funding LLC" | | 50,000.00 | 7,394.56 | - | 42,605.44 |
| De La Cruz, Ulises | | 175,000.00 | 24,857.24 | - | 150,142.76 |
| De La Cruz, Ulises (IRA)"Equity Trust Company Custodian FBO Ulises De La Cruz IRA" | | 170,000.00 | 15,424.36 | - | 154,575.64 |
| Deal, George T. | | 400,000.00 | 57,543.33 | - | 342,456.67 |
| Debara, Bommy & Jasmine | | 14,421.04 | - | - | 14,421.04 |
| Debellis, Joseph (MT)    "Madison Trust Company FBO Joseph Debellis" | | 301,000.00 | 50,613.12 | - | 250,386.88 |
| Debellis, Kathleen | | 60,000.00 | 7,213.72 | - | 52,786.28 |
| Debiasi, Anthony | | 313,300.00 | 222,758.79 | - | 90,541.21 |
| Debiasi, Stephen | | 2,308,035.53 | 590,785.49 | 83,435.53 | 1,633,814.51 |
| deDomenico, Michael H. | | 150,000.00 | 16,027.50 | - | 133,972.50 |
| DeFiore, John | | 564,588.85 | 144,606.97 | 219,960.85 | 200,021.03 |
| Deguchi, Yoshiteru | | 150,000.00 | 9,202.10 | - | 140,797.90 |
| DeLosa,  Deborah A. (MT)(IRA)    "Madison Trust Co. FBO Deborah DeLosa" | | 500,000.00 | 117,543.81 | - | 382,456.19 |
| DeLosa, Joseph J. Jr | | 244,151.00 | 26,623.16 | 56,649.00 | 160,878.84 |
| DeLosa, Joseph J. Jr  (MT/ Rollover) "Madison Trust Co. FBO Joseph DeLosa Jr." | | 255,849.00 | 74,622.80 | - | 181,226.20 |
| DelRocco, Robert JTWROS Donna Geyer | | 300,000.00 | 52,219.13 | - | 247,780.87 |
| DeLuca, Joseph | | 320,000.00 | 49,653.14 | - | 270,346.86 |
| Deluca, Joseph (IRA)"Equity Trust Company Custodian FBO Joseph Deluca" | | 130,000.00 | 25,272.79 | - | 104,727.21 |
| Demello, Doriann | | 150,000.00 | 11,455.50 | - | 138,544.50 |
| DeMello, Doriann (Trust)"Doriann Lopes Demello Revocable Trust" | | 150,000.00 | 22,318.60 | - | 127,681.40 |
| DeMik, Larry (Trust)"Supershear Solo 401K Trust" | | 100,000.00 | 3,926.95 | - | 96,073.05 |
| Denlinger, Deryl (IRA)"Equity Trust Company Custodian FBO Deryl Denlinger ROTH IRA" | | 294,740.06 | 55,246.99 | - | 239,493.07 |
| Deol, Gurpaljit S. (Trust)"The Deol Family Trust" | | 100,000.00 | 6,052.51 | - | 93,947.49 |
| DePalma, Paul | | 300,000.00 | 39,513.90 | - | 260,486.10 |
| DePrima, Charles (Reimbursement) | Yes | 196,333.34 | 12,205.83 | 196,333.34 | - |
| DePrisco, Laura (MT)"Madison Trust Company FBO Laura DePrisco" | | 225,000.00 | 43,556.48 | - | 181,443.52 |
| Desai, Bhavin V. | | 150,000.00 | 27,952.10 | - | 122,047.90 |
| Desai, Hemang | | 50,000.00 | 7,371.09 | - | 42,628.91 |
| Desai, Kishor and Kusam | | 148,817.75 | 34,974.55 | 32,417.75 | 81,425.45 |
| Desai, Narendra  (LLC Part 1)    "DesaiMD Medical Associates, LLC" | Yes | 300,000.00 | 363,024.66 | - | - |
| Desai, Prashant | | 50,000.00 | 10,849.96 | - | 39,150.04 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Desai, Sandip (LLC)"NVVM LLC" | | 50,000.00 | 7,582.20 | - | 42,417.80 |
| Desai, Snehal | | 50,000.00 | 7,697.28 | - | 42,302.72 |
| Desai, Tushar & Komal (Trust)"The Desai Family Revocable Trust" | | 50,000.00 | 6,823.98 | - | 43,176.02 |
| Detaranto, Frank (IRA)"Midland Trust Company as Custodian FBO Francis Detaranto" | | 250,000.00 | 47,340.04 | - | 202,659.96 |
| Devineni, Aruna | | 50,000.00 | 4,180.84 | - | 45,819.16 |
| Devore, Glen | | 500,000.00 | 59,497.84 | - | 440,502.16 |
| Dewald, Thomas A. & Danette K. | | 150,000.00 | 6,825.40 | - | 143,174.60 |
| Dhaliwal, Kulwant | | 150,000.00 | 21,573.14 | - | 128,426.86 |
| Dhaliwal, Satbir Singh | | 372,000.00 | 162,834.41 | - | 209,165.59 |
| Dhankani, Hitesh | | 15,000.00 | | | 15,000.00 |
| Dharia, Sumit | | 103,845.22 | 16,198.54 | - | 87,646.68 |
| Dharia/Makower, Sumit/Bryan | Yes | 86,157.04 | 133,302.69 | - | - |
| Dhillon, Santosh & Gurmeet S. | | 150,000.00 | 7,154.20 | - | 142,845.80 |
| Dhingra, Krishan (IRA)    "IRA Services Trust Co.  CFBO: Krishan Dhingra" | | 150,000.00 | 15,745.33 | - | 134,254.67 |
| Dhody, Harmeet S. | | 50,000.00 | 13,802.44 | - | 36,197.56 |
| Di Spirito, Arcangelo Michael | | 150,000.00 | 12,277.50 | - | 137,722.50 |
| Diamant, Judy | | 400,000.00 | 31,060.58 | - | 368,939.42 |
| Diana, Vakser  (IRA/Rollover)    "Equity Trust Company Custodian FBO Diana Vakser, IRA " | | 30,176.08 | 5,132.80 | - | 25,043.28 |
| Diaz, Arturo D. (Trust)"The Diaz Family Trust" | | 180,000.00 | 18,771.73 | - | 161,228.27 |
| DiBenedetto, Robert & Susan | | 200,000.00 | 26,948.73 | - | 173,051.27 |
| Dickinson, Erin (MT)"Madison Trust Company FBO Erin Dickinson" | | 150,000.00 | 17,483.00 | - | 132,517.00 |
| Didio, Brian | | 291,726.82 | 73,906.99 | 119,413.28 | 98,406.55 |
| Dietz, Gregory | | 300,000.00 | 40,223.74 | - | 259,776.26 |
| Digby, Don | | 800,000.00 | 162,048.00 | - | 637,952.00 |
| Dilaurenzo, Richard | Yes | 275,395.80 | 414,089.64 | - | - |
| DiMare, John C. Jr (Trust)"John C DiMare Jr. Revocable Living Trust Dated March 16, 2000" | | 150,000.00 | 12,541.10 | - | 137,458.90 |
| DiSalvatore, William | | 194,622.55 | 56,150.48 | 31,622.55 | 106,849.52 |
| Djonli, Djonli | | 150,000.00 | 19,818.60 | - | 130,181.40 |
| DMR Construction | Yes | 150,000.00 | 32,225.00 | | 117,775.00 |
| Doan, Minh | | 216,400.00 | 117,989.00 | - | 98,411.00 |
| Donda, Anish | | 200,000.00 | 19,621.06 | - | 180,378.94 |
| Dong, Meilin | | 81,111.58 | 48,732.28 | 14,711.58 | 17,667.72 |
| Donohue, John | | 1,000,000.00 | 47,420.02 | - | 952,579.98 |
| Dorne, Bernadette S. (IRA)"Camaplan Custodian FBO Bernadette S Dorne IRA" | | 123,350.00 | 17,759.42 | - | 105,590.58 |
| Doshi, Biren (IRA)"Midland Trust Company as Custodian FBO Biren Doshi" | | 50,000.00 | 5,888.18 | - | 44,111.82 |
| Dove, Stephen | | 250,000.00 | 46,792.12 | - | 203,207.88 |
| Dr. Stephen Mins | Yes | 50,000.00 | 74,969.86 | - | - |
| Dubey, Harihar Nath & Usha | | 400,000.00 | 22,082.19 | - | 377,917.81 |
| Dudman, Bryan (IRA)"Equity Trust Company Custodian FBO Bryan Dudman IRA" | | 250,000.00 | 26,046.84 | - | 223,953.16 |
| Duffe, James | Yes | 60,500.00 | 89,480.33 | - | - |
| Dugwyler, Kenneth R. "The K and C Dugwyler Trust" | | 150,000.00 | 20,657.60 | - | 129,342.40 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Duncan, Franklin Dee (Trust)"Duncan Trust" | | 300,000.00 | 26,725.99 | - | 273,274.01 |
| Duphare, Harsh | | 500,000.00 | 33,276.39 | - | 466,723.61 |
| Durshanapalli, Srinivas | | 250,000.00 | 40,625.78 | - | 209,374.22 |
| Dutt, Shiv | | 50,000.00 | 9,665.61 | - | 40,334.39 |
| Dvores, Lawrence | Yes | 63,000.00 | 91,458.74 | - | - |
| Dyer, Dwight D. & Mary M. (JTWROS) | | 250,000.00 | 12,471.35 | - | 237,528.65 |
| Dyer, Sean (LLC)"DIG One LLC" | | 50,000.00 | 8,122.23 | - | 41,877.77 |
| Dykes, Darvin (IRA) | | 627,000.00 | 57,478.95 | - | 569,521.05 |
| Dykes, Darvin (Roth IRA) | | 201,000.00 | 12,495.98 | - | 188,504.02 |
| Eames, Bradley J. | | 150,000.00 | 11,470.81 | - | 138,529.19 |
| Eaton, Brad G. | | 250,000.00 | 10,319.53 | - | 239,680.47 |
| Eaton, Brad G. (IRA) "Apple Invstments LLC" | | 142,000.00 | 5,666.92 | - | 136,333.08 |
| Eaton, Patricia (Corp)"Eaton Security Services, Inc" | | 121,875.42 | 30,305.65 | 46,206.02 | 45,363.75 |
| ECPV, LLC | Yes | 4,800,000.00 | 1,778,133.33 | - | 3,021,866.67 |
| Edavalapati, Srinivasa & Vemulapalli, Nagajyothi | | 100,000.00 | 5,424.74 | - | 94,575.26 |
| Edith D Klink Revocable Living Trust | | 150,755.99 | 16,534.54 | 107,255.99 | 26,965.46 |
| Edward A. BendicksonTrust Dated March 9,2006 | | 500,000.00 | 92,190.83 | - | 407,809.17 |
| Egan, Kathy and Ron | | 50,000.00 | 11,816.64 | - | 38,183.36 |
| Ehrhart, Daniel L. (MT)"Madison Trust Company Custodian FBO Daniel L. Ehrhart Roth IRA" | | 300,000.00 | 15,986.28 | - | 284,013.72 |
| Ehrhart, Daniel L. (MT)"Madison Trust Company Custodian FBO Daniel L. Ehrhart Trad. IRA" | | 200,000.00 | 10,712.29 | - | 189,287.71 |
| Eichlin, Barbara (LLC)"A Rose Holdings, LLC" | | 15,000.00 | 2,474.10 | - | 12,525.90 |
| Eichlin, Barbara (ROTH IRA)"Cama SDIRA LLC FBO Barbara Eichlin IRA" | | 140,000.00 | 23,027.85 | - | 116,972.15 |
| Eichlin, Barbara (Trust)"The J & B Eichlin Living Trust" | | 145,000.00 | 23,878.20 | - | 121,121.80 |
| Eis, Jacob (Trust)"Jacob Eis Revocable Living Trust" | | 265,253.24 | 57,420.99 | 88,950.24 | 118,882.01 |
| Eisenstein, Larry | | 150,000.00 | 23,198.70 | - | 126,801.30 |
| Elanjian, Marcel | | 300,000.00 | 30,657.52 | - | 269,342.48 |
| Elder, John | | 700,000.00 | 107,961.50 | - | 592,038.50 |
| Elefson, Steven    Madison Trust Company FBO Steven Elefson" | | 50,000.00 | 11,633.28 | - | 38,366.72 |
| Elhefnaoui, Gaber | | 100,000.00 | 9,730.16 | - | 90,269.84 |
| Elisetty, Raj (LLC) "Aysara Investments LLC" | | 50,000.00 | 6,246.60 | - | 43,753.40 |
| Elisha Wellerstein | Yes | 211,000.00 | 309,369.09 | - | - |
| Ellsworth, Robert A. (Trust) "Robert A. Ellsworth Grantor Trust" | | 150,000.00 | 28,609.70 | - | 121,390.30 |
| Elmalem, Maurice | | 2,000,000.00 | 135,826.49 | - | 1,864,173.51 |
| El-Mohandes, Ali (MT)    "Madison Trust Company FBO Ali El-Mohandes" | | 900,000.00 | 162,771.59 | - | 737,228.41 |
| El-Mohandes, Ali | | 1,000,000.00 | 211,643.85 | - | 788,356.15 |
| Elsawaby, Aly H. | | 50,000.00 | 2,057.54 | - | 47,942.46 |
| El-Sayed, Mohamed | | 6,000,000.00 | 451,219.03 | - | 5,548,780.97 |
| Ely, Ronald D. | | 150,000.00 | 26,669.22 | - | 123,330.78 |
| Emerson, John B. | | 150,000.00 | 22,993.20 | - | 127,006.80 |
| Esanu, Warren II | | 150,000.00 | 8,791.10 | - | 141,208.90 |
| Eskapalli, Swarupa R. | | 100,000.00 | 18,908.66 | - | 81,091.34 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Etemad, Kamran & Esparham, Shiva | | 150,000.00 | 19,572.00 | - | 130,428.00 |
| Evans, Duane | | 50,000.00 | 3,807.54 | - | 46,192.46 |
| Ewell, Dana | | 100,000.00 | 9,706.02 | - | 90,293.98 |
| Ezrine, Edwin (LLC)"Ezrine Alternative Investments, LLC" | | 100,000.00 | 9,172.62 | - | 90,827.38 |
| Fajardo, Annette V. (Trust) "Annette V. Fajardo Revocable Living Trust" | | 100,000.00 | 8,084.03 | - | 91,915.97 |
| Fakse, Sonny (LLC)"TRL National, LLC" | | 200,001.00 | 45,274.31 | - | 154,726.69 |
| Fallas, Alan | Yes | 800,000.00 | 157,612.88 | - | 642,387.12 |
| Fallas, Alan (MT) "Madison Trust Company FBO Alan Fallas" | Yes | 150,000.00 | 49,775.00 | - | 100,225.00 |
| Fallas, Isaac (Part 1) "Madison Trust Company FBO Isaac Fallas" | Yes | 100,000.00 | 24,209.66 | - | 75,790.34 |
| Fallas, Moses (LLC) "AMI REALTY ASSOCIATES LLC" | Yes | 150,000.00 | 42,531.12 | - | 107,468.88 |
| Fallas, Moses (Personal) | Yes | 50,000.00 | 11,991.57 | - | 38,008.43 |
| Fallas, Moses (LLC) "Joyce Kilmer LLC" | Yes | 100,000.00 | 26,518.23 | - | 73,481.77 |
| Fang, Jiayi (401K) "2KSILVER LLC 401K Trust (Solo 401K)" | | 203,966.25 | 42,832.86 | 71,166.25 | 89,967.14 |
| Farca, Michael (MT)"Madison Trust Company FBO Michael Farca IRA" | | 100,000.00 | 22,499.91 | - | 77,500.09 |
| Farina, Luigi & Catherine | Yes | 742,642.26 | 295,379.53 | 220,565.75 | 226,696.98 |
| Farina, Matthew & Carla | | 50,000.00 | 13,108.57 | - | 36,891.43 |
| Farina, Michael & Kimberly | | 50,000.00 | 13,163.37 | - | 36,836.63 |
| Fariwa, Victor & Ezak | | 250,000.00 | 76,027.23 | - | 173,972.77 |
| Farley, Lawrence Clark | | 500,000.00 | 37,882.25 | - | 462,117.75 |
| Favaro, Luca | | 779,854.55 | 170,335.88 | 212,465.75 | 397,052.92 |
| Federmann, Karl (IRA)"Midland Trust Company as Custodian FBO Karl Federmann" | | 365,485.06 | 14,085.31 | - | 351,399.75 |
| Feger, Gary F. & Amy S. (Trust) "Gary F. & Amy S. Feger Revocable Trust" | | 150,000.00 | 11,941.90 | - | 138,058.10 |
| Fendrick, Robert J. | | 250,000.00 | 27,414.47 | - | 222,585.53 |
| Feng, David | | 150,000.00 | 19,993.20 | - | 130,006.80 |
| Fernandez, Francisco | | 50,000.00 | 6,082.20 | - | 43,917.80 |
| Ferrere, Dennis | | 250,000.00 | 31,951.02 | - | 218,048.98 |
| Feuer, Edward (LLC)"Siddhartha LLC" | | 300,000.00 | 37,605.83 | - | 262,394.17 |
| FFA 42921 LLC | Yes | 77,550.00 | 111,179.08 | - | - |
| Fick, Gary | Yes | 116,000.00 | 164,853.48 | - | - |
| Finley, Robert P. | | 150,000.00 | 8,527.50 | - | 141,472.50 |
| Finley, Robert R. (Sr.) | | 150,000.00 | 8,239.80 | - | 141,760.20 |
| Finn, Roman | Yes | 100,000.00 | 100,000.00 | - | - |
| Fiore, Paul & Lisa | | 215,000.00 | 29,030.58 | - | 185,969.42 |
| Fisher, Thomas W. | | 100,000.00 | 4,032.88 | - | 95,967.12 |
| Fishman, Charles JTWROS Michael J Fishman | | 100,000.00 | 18,267.13 | - | 81,732.87 |
| Flake, Nathan (Trust) "Orb Relief Trust" | | 300,000.00 | 38,568.47 | - | 261,431.53 |
| Flake, Norman (LP)"NWF Limited Partnership" | | 200,000.00 | 10,657.50 | - | 189,342.50 |
| Flaskay, Nick | | 250,000.00 | 42,473.34 | - | 207,526.66 |
| Fleisher, Douglas | | 289,514.70 | 65,499.02 | 56,714.70 | 167,300.98 |
| Fleming, Thomas O. Jr. (IRA)"Horizon Trust, FBO Thomas O. Fleming, Jr. Traditional IRA" | | 250,000.00 | 27,398.34 | - | 222,601.66 |
| Fletcher, Adam (LLC)"SLCas LLC" | | 50,000.00 | 1,488.38 | - | 48,511.62 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Fletcher, Brian | | 50,000.00 | 9,536.64 | - | 40,463.36 |
| FLEX NRIA Partners, LLC Group of investors (see notes) | | 300,000.00 | 51,028.92 | - | 248,971.08 |
| Fligel, David | | 50,000.00 | 12,566.64 | - | 37,433.36 |
| Fligel, David "Preferred Trust Co. FBO David Fligel IRA" | | 100,000.00 | 25,116.69 | - | 74,883.31 |
| Florek, John | | 300,000.00 | 44,225.99 | - | 255,774.01 |
| Florek, John (MT)"Madison Trust Company FBO John Edward Florek IRA" | | 500,000.00 | 18,995.51 | - | 481,004.49 |
| Flores, Jose | | 106,982.84 | 35,491.80 | 26,089.61 | 45,401.43 |
| Foland, Alvin J. & Irene K. | | 150,000.00 | 11,483.00 | - | 138,517.00 |
| Foland, Christopher | | 200,000.00 | 13,036.44 | - | 186,963.56 |
| Follman, Paul | | 150,000.00 | 17,787.70 | - | 132,212.30 |
| Forman, Paul C. & Florence E. | | 330,000.00 | 42,165.26 | - | 287,834.74 |
| Forman, Warren L. & Constance JTWROS | | 150,000.00 | 7,708.24 | - | 142,291.76 |
| Forte, Nick & Fran | | 200,000.00 | 29,131.52 | - | 170,868.48 |
| Forte-O'Brien, Mary | | 80,893.23 | 9,049.88 | - | 71,843.35 |
| Fortunato, Steven | | 250,000.00 | 12,910.92 | - | 237,089.08 |
| Foster, Colin V. | | 1,000,000.00 | 200,575.80 | - | 799,424.20 |
| Foster, Edward L. (Ted) | | 150,000.00 | 19,777.50 | - | 130,222.50 |
| Fowler, Richard W. Jr. (MT) "Madison Trust Company FBO Richard Fowler" | | 300,000.00 | 42,582.19 | - | 257,417.81 |
| Fox, James | | 2,950,000.00 | 357,246.72 | - | 2,592,753.28 |
| Fox, Jordan | Yes | 20,000.00 | 32,420.82 | - | - |
| Fox, Marion | Yes | 69,921.00 | 113,344.81 | - | - |
| Fox, Marion    "Marion Fox Living Trust" | Yes | 63,000.00 | 92,825.75 | - | - |
| Fox-Greenberg, Susan (Trust)"Jordan & Marion Fox Grandchildren's Trust" | Yes | 270,446.50 | 101,920.12 | - | 168,526.38 |
| Fox-Greenberg, Susan B. (Personal) | | 50,000.00 | 9,774.99 | - | 40,225.01 |
| Fox-Snider, John M. & Ellen V. | | 161,984.97 | 32,097.41 | 37,675.69 | 92,211.87 |
| Franco, Isaac | | 100,000.00 | 15,547.94 | - | 84,452.06 |
| Frankel, Leonard (LLC)"Apple Empire, LLC" | | 548,566.59 | 186,124.77 | 156,729.47 | 205,712.35 |
| Fratantoro, Joseph (MT) "Madison Trust Company FBO Joseph Fratantoro" | | 152,700.00 | 21,322.32 | - | 131,377.68 |
| Frederick & Kristine Turner | Yes | 353,169.20 | 567,741.26 | - | - |
| Freed, Michael | | 150,000.00 | 11,455.50 | - | 138,544.50 |
| Frei, Amy (Part 2) (MT)    "Madison Trust Company Custodian FBO Amy Frei IRA" | | 113,099.47 | 35,306.36 | - | 77,793.11 |
| Frei, Robert  (MT)    "Madison Trust Company Custodian FBO Robert Frei Roth IRA" | | 186,865.42 | 58,333.57 | - | 128,531.85 |
| Frei, Robert & Amy | | 350,035.11 | 108,650.02 | - | 241,385.09 |
| Frei, Steven | | 150,000.00 | 26,027.50 | - | 123,972.50 |
| Freshwater, Mark S. | | 150,000.00 | 16,027.50 | - | 133,972.50 |
| Fricker, Harald Max (Trust)"The Harald Max Fricker 1998 Revocable Trust" | | 200,000.00 | 29,922.30 | - | 170,077.70 |
| Fried, Marc W. | | 200,000.00 | 30,344.75 | - | 169,655.25 |
| Friedlander, Harold S. (Trust)"The Harold S. Friedlander Revocable Trust dated 9/18/2001" | | 150,000.00 | 15,493.20 | - | 134,506.80 |
| Friel, Daniel | | 600,000.00 | 88,287.60 | - | 511,712.40 |
| Friesen, Paul | | 500,000.00 | 57,016.09 | - | 442,983.91 |
| Frija, Steven | | 100,000.00 | 16,079.87 | - | 83,920.13 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Fritz, Mark C. | | 500,000.00 | 52,191.88 | - | 447,808.12 |
| Fruh, Ronald A. (MT) "Madison Trust Company FBO Ronald A. Fruh" | | 150,000.00 | 20,739.80 | - | 129,260.20 |
| Fugleberg, John | | 100,000.00 | 16,581.88 | - | 83,418.12 |
| Gaddam, Srikanth (Trust)"Lakshmi Living Trust" | | 100,030.00 | 9,627.61 | - | 90,402.39 |
| Gade, Venugopal | | 50,000.00 | 14,450.00 | - | 35,550.00 |
| Gadikota, Jaya Prakash | | 100,000.00 | 14,127.88 | - | 85,872.12 |
| Gadikota, Kavitha"Madison Trust Company FBO Kavitha Gadikota IRA" | | 60,000.00 | 15,070.00 | - | 44,930.00 |
| Gadikota, Madhusudhan | | 413,891.54 | 150,357.23 | 36,616.54 | 226,917.77 |
| Gadikota, Madhusudhan (Part 1) "Madison Trust Company FBO Madhusudhan Gadikota" | | 219,000.00 | 53,363.00 | - | 165,637.00 |
| Gadiraju, Madhuri | | 120,000.00 | 9,789.12 | - | 110,210.88 |
| Gadiraju, Srinivas | | 120,000.00 | 16,493.20 | - | 103,506.80 |
| Gaglani, Amit | Yes | 370,112.00 | 87,675.43 | 170,112.00 | 112,324.57 |
| Gaglani, Kamlesh (MT) "Madison Trust Company FBO Kamlesh Gaglani" | | 300,000.00 | 52,301.32 | - | 247,698.68 |
| Gaglani, Manaxi (Part 2)(MT)"Madison Trust Company FBO Manaxi" | | 100,000.00 | 17,050.20 | - | 82,949.80 |
| Gaglani, Minaxi A. | | 150,000.00 | 23,028.81 | - | 126,971.19 |
| Gaglani, Rahul | | 50,000.00 | 7,869.96 | - | 42,130.04 |
| Gajipara, Amit | | 250,000.00 | 35,485.10 | - | 214,514.90 |
| Galagan, Robert | | 1,291,412.58 | 355,375.01 | 399,412.58 | 536,624.99 |
| Galane, Jon A. "Mountain West IRA FBO Jon A. Galane Beneficiary IRA" | | 42,000.00 | 4,416.90 | - | 37,583.10 |
| Galane, Jon A. "Mountain West IRA FBO Jon A. Galane Roth IRA" | | 147,000.00 | 16,002.68 | - | 130,997.32 |
| Galane, Jon A. "Mountain West IRA FBO Jon A. Galane Traditional IRA" | | 27,900.00 | 2,934.09 | - | 24,965.91 |
| Galane, Jon A. (Trust)"JLMG Living Trust" | | 150,000.00 | 18,014.46 | - | 131,985.54 |
| Galane, Lisa "Mountain West IRA FBO Lisa Galane Traditional IRA" | | 177,000.00 | 17,729.10 | - | 159,270.90 |
| Galane, Lisa "Mountain West IRA FBO Lisa. Galane Roth IRA" | | 60,000.00 | 6,009.86 | - | 53,990.14 |
| Galine, William Clayton | | 150,000.00 | 20,287.70 | - | 129,712.30 |
| Gallagher, Frank M. Jr | | 350,000.00 | 55,788.66 | - | 294,211.34 |
| Gallagher, Ronald | | 500,000.00 | 74,026.48 | - | 425,973.52 |
| Gallion, Ernest Scott | | 150,000.00 | 7,664.40 | - | 142,335.60 |
| Galper, Marina | | 185,758.74 | 41,104.56 | 58,858.74 | 85,795.44 |
| Galvin, Joel & Nan | | 224,157.98 | 61,200.52 | 65,958.98 | 96,998.48 |
| Gambino, George M. | | 250,000.00 | 27,714.59 | - | 222,285.41 |
| Gampa, Vijay Kumar | | 51,000.00 | 10,722.79 | - | 40,277.21 |
| Ganapathiappan, Kalaiselvi | | 300,000.00 | 58,897.23 | - | 241,102.77 |
| Ganapathiappan, Sivapackia | | 50,000.00 | 10,166.60 | - | 39,833.40 |
| Gandhi, Manish | | 450,000.00 | 59,634.36 | - | 390,365.64 |
| Gandhi, Manoj (MT)"Madison Trust Company FBO Manoj Ganhi" | | 500,000.00 | 77,191.90 | - | 422,808.10 |
| Gandhi, Sasikumar & Ganapathy, Bhavani | | 150,000.00 | 21,826.47 | - | 128,173.53 |
| Garapati, Srinivas (LLC)"SGBU Investment LLC" | | 25,000.00 | 2,950.87 | - | 22,049.13 |
| Garber, Bradley N. (MT)"Madison Trust Company FBO Bradley Garber" | | 300,000.00 | 33,157.52 | - | 266,842.48 |
| Garber, David W. | | 50,000.00 | 3,541.10 | - | 46,458.90 |
| Garces, James (IRA) "Midland Trust Company As Custodian FBO James Garces" | | 150,000.00 | 21,455.50 | - | 128,544.50 |

Joint Chapter 11 Plan of Liquidation of
National Realty Investment Advisors, LLC and Its Affiliated Debtors
Investor Schedule

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Garcia, Joaquin R. | | 380,000.00 | 63,189.95 | - | 316,810.05 |
| Gardner, Samuel Neville | | 50,000.00 | 2,664.40 | - | 47,335.60 |
| Garg, Kapil | | 300,000.00 | 21,707.85 | - | 278,292.15 |
| Garnett, Martin E. & Carol S. (Trust)"1998 Garnett Family Trust" | | 50,000.00 | 9,299.32 | - | 40,700.68 |
| Gartenlaub, Marshall N. (IRA)"Equity Trust Company Custodian FBO Marshall N. Gartenlaub, IRA  " | | 230,000.00 | 44,395.38 | - | 185,604.62 |
| Gates, Steven H. & Laurie M. (Trust)"Steven H. & Laurie M. Gates Living Trust Dtd 04/21/2021" | | 50,000.00 | 2,680.84 | - | 47,319.16 |
| Gatten, Charles | | 700,000.00 | 58,876.96 | - | 641,123.04 |
| Gatto, Leslie | | 330,525.13 | 159,468.02 | 65,703.75 | 105,353.36 |
| Gauravbhai Patel | | 500,000.00 | - | - | 500,000.00 |
| Gee, John | | 170,000.00 | 31,912.02 | - | 138,087.98 |
| Geevarghese, Kochumman | | 200,000.00 | 10,273.97 | - | 189,726.03 |
| Gelb, Jason | | 200,000.00 | 23,842.51 | - | 176,157.49 |
| Gelb, Michael | Yes | 970,127.23 | 327,181.80 | 296,957.54 | 345,987.89 |
| Gelb, Michael (MT/ Rollover) "Madison Trust Company FBO Michael Gelb IRA" | Yes | 205,107.06 | 59,139.47 | - | 145,967.59 |
| Gelli, Srikanth (LLC)"Sapthagiri LLC" | | 25,000.00 | 3,220.85 | - | 21,779.15 |
| Gemming, Richard | | 165,226.62 | 39,552.02 | 32,814.63 | 92,859.97 |
| Gemming, Richard (MT/ Rollover)    "Madison Trust Company FBO Richard Gemming" | | 184,643.57 | 36,461.50 | 14,134.56 | 134,047.51 |
| Gennaro G. Marino and Kim Kissinger Marino | | 150,000.00 | 19,161.00 | - | 130,839.00 |
| Genova, Richard J. (LLC)"Groundstone LLC" | | 300,000.00 | 54,390.37 | - | 245,609.63 |
| Gentry, Bruce Wayne | | 150,000.00 | 7,993.20 | - | 142,006.80 |
| Gentry, Frank T. III (Trust)"The Frank T Gentry III Living Trust" | | 50,000.00 | 1,897.96 | - | 48,102.04 |
| Gentry, Kendall D. & Nancy F. | | 1,800,000.00 | 206,812.60 | - | 1,593,187.40 |
| George, Leela (IRA)"Midland Trust Company as Custodian FBO Leela George" | | 349,574.75 | 52,190.96 | - | 297,383.79 |
| Geraci, Ernest and Lynnette B. | | 565,320.55 | 135,231.51 | 15,320.55 | 414,768.49 |
| Geria, Ashish | | 50,000.00 | 6,189.58 | - | 43,810.42 |
| Gershowitz, Elliot & Wendy | | 442,345.21 | 80,155.88 | 42,345.21 | 319,844.12 |
| Gershowitz, Elliot (LLC)"AWE Family Holding Co LLC" | | 58,000.00 | 7,408.85 | - | 50,591.15 |
| Gertzman, Gloria B. | | 250,000.00 | 40,062.70 | - | 209,937.30 |
| Gertzman, Jerrold S. | | 250,000.00 | 38,244.29 | - | 211,755.71 |
| Gill, Thomas M. Jr. | | 600,999.00 | 154,783.57 | - | 446,215.43 |
| Gill, Thomas M. Jr. Forge Trust Co. FBO Tom Gill Jr IRA | | 600,000.00 | - | - | 600,000.00 |
| Gillis, Alexander | | 300,000.00 | 29,362.91 | - | 270,637.09 |
| Ginsberg, Jeffrey | | 30,000.00 | 4,639.74 | - | 25,360.26 |
| Ginsberg, Jeffrey Scott (Part 2)(IRA)"Forge Trust Co. CFBO: Jeffrey Scott Ginsberg IRA" | | 81,000.00 | 6,430.04 | - | 74,569.96 |
| Ginsberg, Russell (LLC)"Green Orchard Investments LLC" | | 59,000.00 | 9,140.94 | - | 49,859.06 |
| Ginsberg, Russell (Part 2)(IRA)"Forge Trust Co. CFBO: Russell S Ginsberg IRA" | | 147,800.00 | 8,822.64 | - | 138,977.36 |
| Giordano, Mark (IRA)"Midland Trust Company as Custodian FBO Mark Giordano" | | 150,000.00 | 10,657.60 | - | 139,342.40 |
| Giriraddi, Deepak S. & Batakurki, Veena | | 50,000.00 | 10,641.61 | - | 39,358.39 |
| Gittler, Mitch | | 100,000.00 | 15,832.20 | - | 84,167.80 |
| Gladding-Spiteri, Caroline  (IRA)"IRA Services Trust Co. CFBO Caroline Gladding-Spiteri IRA" | | 2,180,000.00 | 398,223.35 | - | 1,781,776.65 |
| Gladstein, Igol | | 400,000.00 | 58,177.93 | - | 341,822.07 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Gleason, Donald R. (IRA)"Donald R. Gleason IRA" | | 175,000.00 | 27,900.07 | - | 147,099.93 |
| Glicklich, Peter | | 47,257.77 | 15,557.81 | 15,757.77 | 15,942.19 |
| Glore, George | | 2,313,662.00 | 465,762.95 | 749,427.49 | 1,098,471.56 |
| Goel, Chandra | | 100,000.00 | 14,018.29 | - | 85,981.71 |
| Goel, Shiromani | | 100,000.00 | 18,360.66 | - | 81,639.34 |
| Goel, Tejraj | | 250,000.00 | 22,203.10 | - | 227,796.90 |
| Gogate, Sadanand | | 144,973.76 | 45,446.60 | 14,973.76 | 84,553.40 |
| Gogineni, Gopichand | Yes | 63,000.00 | 91,562.30 | - | - |
| Gold, Daniel | | 200,000.00 | 26,479.38 | - | 173,520.62 |
| Gold, Daniel (IRA)"Midland Trust Company As Custodian FBO Daniel Gold" | | 310,480.00 | 39,660.55 | - | 270,819.45 |
| Goldberg, Arthur | | 350,000.00 | 62,288.50 | - | 287,711.50 |
| Golde, Richard | | 400,000.00 | 16,776.24 | - | 383,223.76 |
| Goldsmith, Douglas (Corp)"DKG Management, INC" | | 243,129.27 | 147,000.17 | 23,972.27 | 72,156.83 |
| Goldsmith, Theodore | | 2,250,000.00 | 208,530.30 | - | 2,041,469.70 |
| Goldstein, Kathleen | | 800,000.00 | 113,429.20 | - | 686,570.80 |
| Goldstein, Leonard | | 218,619.64 | 55,983.47 | 45,619.64 | 117,016.53 |
| Goldstrom, Robert & Lori | | 150,000.00 | 20,165.82 | - | 129,834.18 |
| Good, Bill T. | | 250,000.00 | 22,682.53 | - | 227,317.47 |
| Good, James F. | | 150,000.00 | 29,736.40 | - | 120,263.60 |
| Goodwin, Alan (401k)"Tri Stallion Resources EPSP 401k" | | 150,000.00 | 24,161.00 | - | 125,839.00 |
| Goraya, Sukhjender S. | | 150,000.00 | 6,905.52 | - | 143,094.48 |
| Gorechlad, John W. | | 150,000.50 | 27,705.50 | - | 122,295.00 |
| Gorman, Craig & Stacey (Trust) "Gorman Family Trust" | | 198,783.91 | 64,840.22 | 55,124.09 | 78,819.60 |
| Gorman, Todd R. (Trust)"476 Wealth Trust" | | 100,000.00 | 5,730.16 | - | 94,269.84 |
| Gosain, Bhupinder | | 900,000.00 | 155,816.95 | - | 744,183.05 |
| Gosukonda, Sreedhar | | 113,930.62 | 20,368.54 | - | 93,562.08 |
| Gosukonda, Sreedhar  (MT) "Madison Trust Company FBO Sreedhar and Madauri Gosukonda IRA" | | 386,068.38 | 82,116.60 | - | 303,951.78 |
| Gottesfeld, Steven | Yes | 141,893.23 | 101,636.18 | 28,979.51 | 11,277.54 |
| Gottesfeld, Steven    "Madison Trust Company FBO Steven Gottesfeld" | Yes | 158,379.51 | 113,769.99 | - | 44,609.52 |
| Gottimukkala, Ravi (LLC)"Elan Real Estate Investments LLC" | | 100,000.00 | 9,591.84 | - | 90,408.16 |
| Gottlieb, Keith & Lisa | | 600,000.00 | 92,926.15 | - | 507,073.85 |
| Gough, Thomas H. (Trust)"Gough Family Trust" | | 600,000.00 | 68,200.83 | - | 531,799.17 |
| Goyal, Sandeep | | 100,000.00 | 19,248.79 | - | 80,751.21 |
| Granata, Thomas J. | | 200,000.00 | 32,108.28 | - | 167,891.72 |
| Grande Classe, LLC | Yes | 184,120.84 | 53,470.35 | 23,498.30 | 107,152.19 |
| Grasso, Joe III | | 1,250,000.00 | 84,406.61 | - | 1,165,593.39 |
| Gray, Kim | | 150,000.00 | 19,037.70 | - | 130,962.30 |
| Green, Daniel C. & Helen | | 2,000,000.00 | 180,433.78 | - | 1,819,566.22 |
| Greenberg, Mark | | 250,000.00 | 42,680.38 | - | 207,319.62 |
| Greenberg, Steven (MT)"Madison Trust Company FBO Steven Greenberg" | | 109,000.00 | 13,092.12 | - | 95,907.88 |
| Greenberg, Susan | | 300,000.00 | 29,564.38 | - | 270,435.62 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Greene, Kendall & Maia | | 100,000.00 | 12,022.82 | - | 87,977.18 |
| Greenstein, Kenneth | | 200,000.00 | 43,935.96 | - | 156,064.04 |
| Gregory, Bruce | | 2,000,000.00 | 461,072.85 | - | 1,538,927.15 |
| Grewal, Balwinder (Trust)"The Balwinder and Daljit Grewal Living Trust, Dated Jan 19, 2016" | | 300,000.00 | 32,861.91 | - | 267,138.09 |
| Griffin, Scott Thomas | | 250,000.00 | 20,873.16 | - | 229,126.84 |
| Griffith, Kenneth R. | | 100,000.00 | 13,279.48 | - | 86,720.52 |
| Groesbeck, Theodore | | 300,000.00 | 34,883.51 | - | 265,116.49 |
| Groom, Alicia C. (Trust) "Alicia C. Thomas-Ackland Trust dtd 11/25/2015" | | 25,000.00 | - | - | 25,000.00 |
| Groom, Kendall  (MT)  "Madison Trust Company FBO Kendall Groom" | | 150,000.00 | - | - | 150,000.00 |
| Groom, Kendall J. (Trust) "Kendall J Groom Living Trust dtd 01/10/2001" | | 150,000.00 | - | - | 150,000.00 |
| Grotness, Erik (IRA)"NuView Custodian FBO: Erik Grotness IRA" | | 200,000.00 | 9,977.05 | - | 190,022.95 |
| Grove, Catherine (LLC)"GMC Mortgage, LLC" | | 388,674.33 | 132,888.50 | 92,085.59 | 163,700.24 |
| Grove, Cathy  (MT)    "Madison Trust Company FBO Cathy Grove" | | 300,000.00 | 66,725.00 | 14,286.00 | 218,989.00 |
| Grundmann, William | | 150,000.00 | 22,869.90 | - | 127,130.10 |
| Guarnieri, Debra | | 210,377.74 | 25,139.97 | - | 185,237.77 |
| Guddati, Murthy Narasimha | | 50,000.00 | 12,208.25 | - | 37,791.75 |
| Guerin, Vickie (MT)"Madison Trust Company FBO Vickie Guerin IRA" | | 100,000.00 | 7,180.84 | - | 92,819.16 |
| Gujral, Varun (MT)"Madison Company FBO Varun Gujral" | | 135,000.00 | 22,514.34 | 35,000.00 | 77,485.66 |
| Gulati, Brijesh | | 340,561.54 | 71,517.96 | 163,976.94 | 105,066.64 |
| Gulati, Madhu | | 1,200,000.00 | 91,972.62 | - | 1,108,027.38 |
| Gulati, Nitin | | 50,000.00 | 4,795.92 | - | 45,204.08 |
| Gulati, Sandeep | | 50,000.00 | 7,732.96 | - | 42,267.04 |
| Gulati, Vinay  (Corp) "Dream Realty Inc" | | 150,000.00 | 40,654.86 | - | 109,345.14 |
| Gulati, Vinay  (Trust/Rollover)    "The Gulati Trust, Dated July 28, 1998" | | 226,140.84 | 68,771.76 | 49,640.84 | 107,728.24 |
| Gullatt, David E. & Kathy Sue | | 325,000.00 | 55,472.37 | - | 269,527.63 |
| Gulrajani, Suren | | 75,000.00 | 18,137.50 | - | 56,862.50 |
| Gunda, Arun | | 100,000.00 | 4,906.45 | - | 95,093.55 |
| Gundu, Adirath Vikram Kumar | | 300,000.00 | 57,828.76 | - | 242,171.24 |
| Guo/Zhang, Yifeng/Min | Yes | 76,303.30 | 123,690.79 | - | - |
| Gupta, Jai (LLC)"Granville Estates LLC" | | 3,000,000.00 | 617,602.61 | - | 2,382,397.39 |
| Gupta, Jitendrakumar S. | | 150,000.00 | 14,437.08 | - | 135,562.92 |
| Gupta, Premanand | Yes | 1,143,755.02 | 716,291.92 | 251,168.58 | 176,294.52 |
| Gupta, Rajat & Vanita C. | | 527,683.99 | 118,949.16 | 57,109.98 | 351,624.85 |
| Gupta, Rajesh    "Madison Trust Company FBO Rajesh K. Gupta" | | 450,000.00 | 95,886.51 | - | 354,113.49 |
| Gupta, Rajesh K. (Personal Part 1) | | 100,000.00 | 21,700.04 | - | 78,299.96 |
| Gupta, Sandeep Singh | | 150,000.00 | 14,437.08 | - | 135,562.92 |
| Gupta, Saurabh | | 350,000.00 | 86,279.46 | - | 263,720.54 |
| Gupta, Usha (MT)   "Madison Trust Company FBO  Usha Gupta" | | 300,000.00 | 58,600.00 | - | 241,400.00 |
| Gupte, Vijay | | 300,000.00 | 57,409.03 | - | 242,590.97 |
| Gusty, Chris | | 150,000.00 | 22,292.52 | - | 127,707.48 |
| Gutta, Sairam | | 120,000.00 | 29,749.56 | - | 90,250.44 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Habert, Raymond | | 450,000.00 | 107,901.77 | - | 342,098.23 |
| Hack, Mohamed I. | | 150,000.00 | 25,643.90 | - | 124,356.10 |
| Hack, Saheeda | | 100,000.00 | 5,109.58 | - | 94,890.42 |
| Haddad, Bashar | | 150,000.00 | 21,496.60 | - | 128,503.40 |
| Haddad, Faizah | | 150,000.00 | 7,483.00 | - | 142,517.00 |
| Haddad, Linda | | 150,000.00 | 21,496.60 | - | 128,503.40 |
| Hagen, Ronald A. Sr. | | 600,000.00 | 24,273.88 | - | 575,726.12 |
| Hailemariam, Moussie (MT)"Madison Trust Company FBO Moussie Hailemariam" | | 222,953.73 | 23,883.48 | - | 199,070.25 |
| Haji, Imtiaz (MT)"Madison Trust Company FBO Imtiaz Haji" | | 154,445.90 | 26,037.17 | - | 128,408.73 |
| Haji, Rashida (MT)"Madison Trust Company FBO Rashida Haji" | | 60,000.00 | 10,894.56 | - | 49,105.44 |
| Hall, Carol K. | | 250,000.00 | 22,819.51 | - | 227,180.49 |
| Hall, Richard H. (IRA)"RHH Trust" | | 150,000.00 | 12,113.10 | - | 137,886.90 |
| Hall, Robert (LP)"Casa Real LP" | | 150,000.00 | 26,191.90 | - | 123,808.10 |
| Hall, Wesley W. (Trust)"Hall Living Trust" | | 100,000.00 | 2,861.68 | - | 97,138.32 |
| Hammell, Douglas Alan | | 200,000.00 | 21,315.00 | - | 178,685.00 |
| Hamner, Samuel G. | | 100,000.00 | 10,273.96 | - | 89,726.04 |
| Hanson, Darlene | | 200,000.00 | 11,314.98 | - | 188,685.02 |
| Haque, Munzer | | 150,000.00 | 10,342.03 | - | 139,657.97 |
| Harpavat, Sanjiv "Ganesh" & Sandhya | | 150,000.00 | 24,613.10 | - | 125,386.90 |
| Harper, James A. | | 300,000.00 | 41,602.90 | - | 258,397.10 |
| Harrington, Brian | Yes | 364,553.51 | 95,478.85 | 73,506.65 | 195,568.01 |
| Harrington, Brian "Madison Trust Company FBO Brian Harrington" | Yes | 245,239.00 | 49,735.00 | - | 195,504.00 |
| Harrington, Marion | | 100,000.00 | 19,295.92 | - | 80,704.08 |
| Harrington, Marion (MT)"Madison Trust Company FBO Marion Harrington IRA" | | 137,000.00 | 27,737.85 | - | 109,262.15 |
| Harrington, Mary Pat"Madison Trust Company FBO Mary Pat Harrington" | | 88,000.00 | 19,580.05 | - | 68,419.95 |
| Harrington, Stephen & Elyse | | 500,000.00 | 63,851.31 | - | 436,148.69 |
| Harris, Monroe E. Jr. | | 150,000.00 | 17,952.10 | - | 132,047.90 |
| Harrison, Stephen | | 100,000.00 | 3,960.32 | - | 96,039.68 |
| Hartley, Roger G. | | 300,000.00 | 20,126.62 | - | 279,873.38 |
| Hawthorne Shriver, Rene | | 50,000.00 | 3,123.30 | - | 46,876.70 |
| Hazard, William Marshall (Trust) "The William Marshall Hazard Trust" | | 500,000.00 | 21,929.27 | - | 478,070.73 |
| Heer, Raymond R. III | | 150,000.00 | 22,746.60 | - | 127,253.40 |
| Heera, Jayvant | | 550,342.79 | 175,375.40 | 229,211.78 | 145,755.61 |
| Heffernan, William | | 150,000.00 | 12,582.20 | - | 137,417.80 |
| Heffner, John S. & Damron, Loretta A. | | 300,000.00 | 53,229.40 | - | 246,770.60 |
| Heiney, Israel | | 300,000.00 | 32,268.49 | - | 267,731.51 |
| Heiney, Michael | | 300,000.00 | 54,730.57 | - | 245,269.43 |
| Heiney, Terri | | 200,000.00 | 20,038.25 | - | 179,961.75 |
| Heinle, Norman | | 150,000.00 | 19,037.70 | - | 130,962.30 |
| Helfand, Lonnie | | 150,000.00 | 17,433.85 | - | 132,566.15 |
| Henson, Jeffrey S. | | 300,000.00 | 38,897.23 | - | 261,102.77 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Henzel, Craig | | 50,000.00 | 4,174.73 | - | 45,825.27 |
| Heriges, Roy Lee & Teresa R. | | 200,000.00 | 11,698.51 | - | 188,301.49 |
| Herman, Michael (MT) "Madison Trust Company FBO Michael Herman IRA" | | 100,000.00 | 11,570.58 | - | 88,429.42 |
| Herskowitz, Amy | | 177,551.51 | 30,468.60 | 22,551.51 | 124,531.40 |
| Herskowitz, Amy (Trust) "GST HH & JH FBO Amy Herskowitz" | | 100,000.00 | 19,783.39 | | 80,216.61 |
| Herskowitz, Renée | | 200,000.00 | 33,966.07 | - | 166,033.93 |
| Herskowitz, Renée (Trust) "GST HH & JH FBO Renée Herskowitz" | | 100,000.00 | 19,783.39 | - | 80,216.61 |
| Hicks, David "Madison Trust Company Custodian FBO David Hicks" | Yes | 450,000.00 | 518,275.68 | - | - |
| Hidalgo, Samuel | | 129,979.01 | 18,531.96 | 53,676.01 | 57,771.04 |
| Hidalgo, Samuel (ROTH IRA) "Provident Trust Group LLC FBO Samuel Hidalgo ROTH IRA" | | 80,000.00 | 20,924.79 | - | 59,075.21 |
| Himeda, Mark (IRA) "Midland Trust Company as Custodian FBO Mark Himeda" | | 150,000.00 | 18,531.96 | - | 131,468.04 |
| Himeda, Mark T. | | 300,000.00 | 53,733.00 | - | 246,267.00 |
| Hirani, Eric | | 200,000.00 | 29,045.66 | - | 170,954.34 |
| Ho, Tina | | 1,260,273.32 | 330,617.62 | 197,614.11 | 732,041.59 |
| Hodges, Garold E. (Trust) "Hodges Family Revocable Trust" | | 500,000.00 | 63,321.99 | - | 436,678.01 |
| Hoerner, Greg (LLC) "Hoerner Investment, LLC" | | 200,000.00 | 15,016.14 | - | 184,983.86 |
| Hoffman, Roy R. | | 150,000.00 | 20,986.40 | - | 129,013.60 |
| Hofgard, William | | 108,314.13 | 70,868.19 | 18,014.13 | 19,431.81 |
| Holladay, Douglas W. | | 300,000.00 | 52,582.19 | - | 247,417.81 |
| Hollady, Susan | | 300,000.00 | 46,356.30 | - | 253,643.70 |
| Hollis, Robert | | 300,000.00 | 49,100.66 | - | 250,899.34 |
| Holmquist, Dan Lee & Kimberly J. | | 150,000.00 | 13,404.20 | - | 136,595.80 |
| Holoien, Steven & Chinn, Cathryn | | 50,000.00 | 11,999.90 | - | 38,000.10 |
| Homan, Paul | | 150,000.00 | 16,496.84 | - | 133,503.16 |
| Hopp, Donald K. II (IRA) "Pacific Premier Trust Custodian FBO Donald K. Hopp II Roth IRA" | | 200,000.00 | 13,310.39 | - | 186,689.61 |
| Hoskeri, Sanjay | | 101,000.00 | 25,115.44 | - | 75,884.56 |
| Howard, Thomas W. | | 150,000.00 | 12,030.90 | - | 137,969.10 |
| Howe, Clifford (MT) "Madison Trust Company FBO Clifford Howe" | | 25,000.00 | 4,163.77 | - | 20,836.23 |
| Howe, Mary L. (MT) "Madison Trust Company FBO Mary L. Howe" | | 60,000.00 | 9,770.80 | - | 50,229.20 |
| Howe, Richard (IRA) Strata Trust Company Custodian FBO Richard Howe IRA" | | 108,000.00 | 12,143.85 | - | 95,856.15 |
| Howe, Richard (Trust) "The Richard and Kelly Howe Family Trust" | | 50,000.00 | 5,718.11 | - | 44,281.89 |
| Howell, Robert E. | | 150,000.00 | 15,945.30 | - | 134,054.70 |
| Hoyt, John | | 165,514.52 | 47,694.18 | 49,514.52 | 68,305.82 |
| Hoyt, John (LLC) "Jshira LLC" | | 135,000.00 | 33,021.32 | - | 101,978.68 |
| Hseih (Chen), Christina | | 80,893.00 | 29,778.66 | - | 51,114.34 |
| Hsieh, Christina K. | | 100,000.00 | 25,700.04 | - | 74,299.96 |
| Hu, Xiaohua "Tony" & Tsang, Shuetyue "Michelle" | | 200,000.00 | 30,920.64 | - | 169,079.36 |
| Huff, Wallace | | 200,000.00 | 27,159.83 | - | 172,840.17 |
| Hughson, Edward Julian | | 50,000.00 | 3,832.20 | - | 46,167.80 |
| Hunter, Van A. (Trust) "Van Alan Hunter 2009 Revocable Trust Dated 12/10/2009" | | 150,000.00 | 28,075.40 | - | 121,924.60 |
| Hutchison, Kevin "White Dove Group, LLC" | | 150,000.00 | 26,907.60 | - | 123,092.40 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Hutman, Sammy (IRA) | | | | | |
| "Midland Trust Company as Custodian FBO Sammy Hutman SEP IRA" | | 100,000.00 | 11,299.22 | - | 88,700.78 |
| Hyde, Patrick | | 300,000.00 | 54,098.64 | - | 245,901.36 |
| Ichter, Carry | | 150,000.00 | 22,169.22 | - | 127,830.78 |
| Idnani, Manish (LLC)"Manam Invest LLC" | | 25,000.00 | 3,220.85 | - | 21,779.15 |
| Idnani, Manish (MT)"Madison Trust Company FBO Manish Idnani" | | 50,000.00 | 6,203.28 | - | 43,796.72 |
| Ippoliti, Roseanne | | 145,000.00 | 26,147.68 | - | 118,852.32 |
| Ippoliti, Roseanne (MT)  "Madison Trust Company FBO Roseanne Ippoliti Roth" | | 21,611.54 | 3,860.20 | - | 17,751.34 |
| Ippoliti, Roseanne (MT)  "Madison Trust Company FBO Roseanne Ippoliti Traditional" | | 333,389.65 | 59,548.85 | - | 273,840.80 |
| Irukulla, Pavan & Mamindla, Kavitha | | 300,000.00 | 36,816.90 | - | 263,183.10 |
| Irwin, Michael (LLC)"RK Futures LLC" | | 150,000.00 | 7,746.60 | - | 142,253.40 |
| Isnar, Hagop | | 91,234.51 | 10,076.34 | - | 81,158.17 |
| Israel, Abraham (LLC)"Sacarde LLC" | | 300,000.00 | 37,136.94 | - | 262,863.06 |
| Itkin, Vladimir  "ITK Solutions, LLC" | | 50,000.00 | 12,049.98 | - | 37,950.02 |
| Itzkoff, Esther J. | | 200,000.00 | 31,117.75 | - | 168,882.25 |
| Iyer, Jagdish | | 610,155.44 | 205,685.75 | 193,517.44 | 210,952.25 |
| Iyer, Murali (LLC)"Yuga LLC" | | 75,000.00 | 14,498.30 | - | 60,501.70 |
| Iyer, Ravikumar N. | | 50,000.00 | 6,572.62 | - | 43,427.38 |
| Iyer, Shankar (LLC) "4S Investments LLC" | | 250,000.00 | 70,492.33 | 68,500.00 | 111,007.67 |
| Jack O'Brien "LKKNJ LLC" | Yes | 74,669.40 | 123,086.13 | | - |
| Jackson, Billy D. & Lela S. | | 400,000.00 | 30,131.25 | - | 369,868.75 |
| Jackson, Gregory Q. (LLC)"ABL Enterprises LLC" | | 150,000.00 | 8,198.70 | - | 141,801.30 |
| Jackson, Joseph L. (LLC) "Diversified Notary Services, LLC" | | 150,000.00 | 10,568.31 | - | 139,431.69 |
| Jackson, Linda J. | | 450,000.00 | 71,175.09 | - | 378,824.91 |
| Jacobs, David A. | | 600,000.00 | 82,632.49 | - | 517,367.51 |
| Jacobs, Howard | | 50,000.00 | 3,532.88 | - | 46,467.12 |
| Jagadesh, Sunil Kumar | | 100,000.00 | 9,591.84 | - | 90,408.16 |
| Jahangeer, Ahmed | | 100,000.00 | 18,789.61 | - | 81,210.39 |
| Jahangeer, Ahmed (MT)  "Madison Trust Company FBO  Ahmed Jahangeer" | | 500,000.00 | 98,566.51 | - | 401,433.49 |
| Jain, Anuj | | 75,000.00 | 18,450.00 | - | 56,550.00 |
| Jain, Dharam (MT)"Madison Trust Company FBO Dharam Jain" | | 150,000.00 | 27,483.00 | - | 122,517.00 |
| Jain, Nirlesh | | 50,000.00 | 6,988.51 | - | 43,011.49 |
| Jain, Rajan | | 50,000.00 | 18,194.61 | - | 31,805.39 |
| Jain, Rajiv | | 456,425.98 | 120,595.68 | 99,571.44 | 236,258.86 |
| Jain, Ritesh  (LLC)"Think line Investment, LLC" | | 150,000.00 | 24,369.90 | - | 125,630.10 |
| Jain, Sharad (Trust) "The Sharad Jain Trust" | Yes | 2,000,000.00 | 2,096,328.77 | | - |
| Jain, Swati (Trust)"The Swati Jain Trust" | Yes | 2,000,000.00 | 2,096,328.77 | | - |
| Jaisinghani, Ravi | | 50,000.00 | 3,848.64 | - | 46,151.36 |
| Jaiswal, Satyeshkumar (Trust) "Satyeshkumar Jaiswal as Trustee of the Jaiswal Family Revocable Trust Dated June 25,2019" | | 500,000.00 | 133,945.12 | - | 366,054.88 |
| Jakka, Viswanath | | 101,000.00 | 25,041.16 | - | 75,958.84 |
| Jalalizadeh, Bahram | | 500,000.00 | 64,828.88 | - | 435,171.12 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Jale, Sudhakar & Vanaja | | 75,000.00 | 6,262.05 | - | 68,737.95 |
| Jale, Sudhakar (LLC)"JNR Ventures LLC" | | 50,000.00 | 2,343.65 | - | 47,656.35 |
| Jalla, Vinatha | | 75,000.00 | 15,789.40 | - | 59,210.60 |
| Jalota, Amit & Leena | | 150,000.00 | 31,378.12 | - | 118,621.88 |
| JAMATO LLC | Yes | 55,000.00 | 67,911.00 | - | - |
| James, Brian K. | | 200,000.00 | 33,183.98 | - | 166,816.02 |
| James, Danny A. (MT)"Madison Trust Company FBO Danny A. James" | | 500,000.00 | 91,472.78 | - | 408,527.22 |
| James, Jesse (LLC)"JDJ Alaska LLC" | | 200,000.00 | 29,812.72 | - | 170,187.28 |
| Jammi, Venkat (LLC)"Start, LLC" | | 50,000.00 | 2,500.02 | - | 47,499.98 |
| Jani, Kruti | | 100,000.00 | 10,000.00 | - | 90,000.00 |
| Jani, Sanjeev J. | | 168,986.00 | 32,633.76 | - | 136,352.24 |
| Jani, Sanjeev J. (Corp/ Rollover) "Himarth Consulting Inc." | | 220,195.13 | 75,210.74 | 60,646.62 | 84,337.77 |
| Janke, Paul (Corp)"Storveldi, Inc" | | 900,000.00 | 114,027.30 | - | 785,972.70 |
| Janke, Phlip "Janke Rentals" | | 250,000.00 | 50,753.31 | - | 199,246.69 |
| Jariwala, Rajesh | | 100,000.00 | 12,773.95 | - | 87,226.05 |
| Jarugula, Revanth & Chava, Anitha | | 100,000.00 | 9,624.72 | - | 90,375.28 |
| Jasti, Ravindra Babu | | 600,000.00 | 88,531.87 | - | 511,468.13 |
| Javi, Sanjeev | Yes | 86,157.00 | 110,166.14 | - | - |
| Jay, Steven L. | | 300,000.00 | 39,789.12 | - | 260,210.88 |
| Jayakumaran, Indrany | | 162,124.04 | 34,144.30 | 47,249.04 | 80,730.70 |
| Jeffrey A. Mogalian Revocable Trust | | 300,000.00 | 33886.07 | | 266,113.93 |
| Jennings, David (MT) "Madison Trust Company FBO David Jennngs" | | 276,939.59 | 41,701.08 | - | 235,238.51 |
| Jia, Junhui "Jason" | | 330,198.69 | 77,046.40 | 153,614.09 | 99,538.20 |
| Jiang, Abby"Abby Jiang - Self-Employed 401K" | | 50,000.00 | 11,183.26 | - | 38,816.74 |
| Jiang, Xingjian (Nan) | | 267,922.47 | 56,707.85 | 46,522.47 | 164,692.15 |
| Jianping Cai & YiYi Du | Yes | 50,000.00 | 71,057.53 | - | - |
| Jinny and David Lin | | 100,000.00 | - | - | 100,000.00 |
| Johnson, Butch L. | | 600,000.00 | 43,123.22 | - | 556,876.78 |
| Johnson, Johnny | | 100,000.00 | 14,912.25 | - | 85,087.75 |
| Johnson, Roy E. | | 300,000.00 | 18,157.52 | - | 281,842.48 |
| Jones, Thomas A. | | 600,000.00 | 67,958.84 | - | 532,041.16 |
| Jones, Willis K. & Vickie J. | | 150,000.00 | 16,373.30 | - | 133,626.70 |
| Jonnalagadda, Janardhana | | 360,000.00 | 47,709.64 | - | 312,290.36 |
| Joseph, Benedict A. "OLHV Realty Cash Balance Plan" | Yes | 75,000.00 | 13,082.20 | - | 61,917.80 |
| Joseph, Benedict A. & Sujata B. | Yes | 150,000.00 | 23,718.54 | - | 126,281.46 |
| Joshi, Somit (IRA) "Pacific Premier Trustas Custodian IRA FBO Joshi Somit" | | 50,000.00 | 6,707.82 | - | 43,292.18 |
| Juranich, Joseph T. | | 500,000.00 | 204,561.86 | - | 295,438.14 |
| Juranich, LucyJTWROS Joseph Juranich | | 250,000.00 | 35,514.90 | - | 214,485.10 |
| Kadam, Umesh (MT)"Madison Trust Company FBO Umesh Kadam" | | 50,000.00 | 8,634.80 | - | 41,365.20 |
| Kadam, Umesh V. | | 100,000.00 | 17,582.13 | - | 82,417.87 |
| Kadish, David | | 400,000.00 | 125,305.83 | - | 274,694.17 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Kafka, Jennifer (MT) "Madison Trust Company FBO Jennifer Kafka " | | 60,400.00 | 9,411.65 | - | 50,988.35 |
| Kaiser, Daniel (IRA)"IRA Services Trust Company FBO Forge Trust CO. CFBO Daniel Kaiser" | | 300,000.00 | 64,965.70 | - | 235,034.30 |
| Kakar, Shailender | | 200,000.00 | 22,604.88 | - | 177,395.12 |
| Kalala, Satish (401K)"SKALALA 401K TRUST" | | 50,000.00 | 17,288.90 | - | 32,711.10 |
| Kalavadia, Vishal | | 300,000.00 | 50,211.51 | - | 249,788.49 |
| Kallambella, Ramesh (MT)"Madison Trust Company FBO Ramesh Kallambella ROTH IRA" | | 100,000.00 | 20,246.52 | - | 79,753.48 |
| Kallus, George J. | | 150,000.00 | 11,496.60 | - | 138,503.40 |
| Kaluzshner, Alexander | | 100,000.00 | 8,184.97 | - | 91,815.03 |
| Kaluzshner, Anat | | 200,000.00 | 20,432.80 | - | 179,567.20 |
| Kamath, Satish V. (MT)"Madison Trust Company FBO Satish V. Kamath" | | 325,000.00 | 51,642.28 | - | 273,357.72 |
| Kamnani, Gobind (LLC)Platinum Umbrella Investments, LLC | | 150,000.00 | 27,318.60 | - | 122,681.40 |
| Kamo, Garima | | 500,000.00 | 109,753.37 | - | 390,246.63 |
| Kamo, Garima (MT)"Madison Trust Company FBO Garima Kamo" | | 195,000.00 | 38,283.14 | - | 156,716.86 |
| Kandula, Pradeep and Renuka | | 2,053,997.00 | 352,066.38 | 65,023.56 | 1,636,907.06 |
| Kanna, Suresh (LLC)"Kfive Investments LLC" | | 25,000.00 | 3,241.40 | - | 21,758.60 |
| Kanthamneni, Madhu (Trust)"The Madhu Kanthamneni Revocable Trust" | | 50,000.00 | 1,615.08 | - | 48,384.92 |
| Kanuganti, Sreenivas Reddy (LLC)"DrReddy Commerce Center LLC" | | 300,000.00 | 36,479.42 | - | 263,520.58 |
| Kanumury, Nagesh (IRA) "Midland Trust Company as Custodian FBO Nagesh Kanumury" | | 51,000.00 | 10,353.67 | - | 40,646.33 |
| Kanumury, Nagesh"Kanumury Family Trust" | | 50,000.00 | 14,387.50 | - | 35,612.50 |
| Kapadia, Pankaj | | 50,000.00 | 12,991.57 | - | 37,008.43 |
| Kapoor, Arvind | | 150,000.00 | 9,624.43 | - | 140,375.57 |
| Kapplin, Steven D. (Trust) | | 300,000.00 | 47,219.13 | - | 252,780.87 |
| Kapse, Surendra P. & Rashmi S. | | 75,000.00 | 21,490.14 | - | 53,509.86 |
| Kapuganti, Shobhan & Sunitha | | 277,735.07 | 86,217.01 | 97,704.41 | 93,813.65 |
| Karedla, Ramakrishna | | 150,000.00 | 19,202.10 | - | 130,797.90 |
| Karim, Khalid | | 150,000.00 | 26,496.60 | - | 123,503.40 |
| Karren, Kent  (Trust) "Karren Living Trust" | | 150,000.00 | 28,445.30 | - | 121,554.70 |
| Kasabov, Stefan | | 313,269.52 | 59,810.94 | 85,348.52 | 168,110.06 |
| Kasireddy, Aruna | | 150,000.00 | 13,445.30 | - | 136,554.70 |
| Kassam, Faisal & Chatur, Rahim (Corp) "Cerberus Capital Corp" | | 300,061.00 | 54,504.46 | - | 245,556.54 |
| Kassam, Faisal (Personal) | | 1,050,077.00 | 267,409.93 | - | 782,667.07 |
| Kassin, Jacob | | 600,000.00 | 90,141.54 | - | 509,858.46 |
| Kassin, Wayne (401K) "YCE Capital Holdings - Defined Benefit Plan" | | 200,000.00 | 29,775.25 | - | 170,224.75 |
| Katakam, Venkateshwarlu (MT)   "Madison Trust Company FBO Venkateshwarlu Katakam IRA" | | 50,000.00 | 14,436.50 | - | 35,563.50 |
| Katta, Amarender & Kankanala, Madhavi | | 180,000.00 | 30,585.04 | - | 149,414.96 |
| Katta, Ram | | 60,000.00 | 8,565.76 | - | 51,434.24 |
| Katta, Ram (MT) "Madison Trust Company FBO Ram Katta IRA" | | 240,000.00 | 40,502.84 | - | 199,497.16 |
| Katz, Michael | | 100,000.00 | 30,520.48 | - | 69,479.52 |
| Kaul, Sandra | | 50,000.00 | 6,496.65 | - | 43,503.35 |
| Kaur, Manpreet (LLC)"Alliance Properties Group, LLC" | | 150,000.00 | 13,445.30 | - | 136,554.70 |
| Keany, Sutton & Susanne"Sutton/ Susanne Keany Joint Account WROS" | | 500,000.00 | 86,565.90 | - | 413,434.10 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Kedar, Rajesh (IRA)"Midland Trust Company as Custodian FBO  Rajesh Kedar" | | 500,000.00 | 77,191.90 | - | 422,808.10 |
| Kedar, Sudesh (Trust)"Blue Diamond Management" | | 125,000.00 | 14,604.57 | | 110,395.43 |
| Kedar, Sudesh (Trust)"Carolina Cares Family Foundation" | | 150,000.00 | 21,660.96 | | 128,339.04 |
| Keefe, Preston | Yes | 55,000.00 | 79,609.86 | | - |
| Keeley, Oliver | | 808,903.45 | 127,883.06 | 56,103.45 | 624,916.94 |
| Kellar, Daniel (MT) "Madison Trust Company Custodian FBO Daniel Kellar" | | 50,000.00 | 5,262.99 | - | 44,737.01 |
| Kemp, Richard | | 400,000.00 | 45,086.73 | - | 354,913.27 |
| Kennedy, James | Yes | 165,000.00 | 239,100.82 | - | - |
| Kennedy, Kevin"IRAR FBO Kevin E. Kennedy" | | 50,000.00 | 11,549.98 | - | 38,450.02 |
| Kessock, Stanley J. | | 150,000.00 | 30,175.00 | - | 119,825.00 |
| Khakhar, Kaushik & Aarati | | 350,000.00 | 57,494.62 | - | 292,505.38 |
| Khatiwala, Sid & Raghunath, Nikhil | Yes | 116,000.00 | 194,962.63 | - | - |
| Khatri, Kantilal | | 150,000.00 | 27,030.90 | - | 122,969.10 |
| Khokhal, Ketan | | 97,339.14 | 21,231.54 | - | 76,107.60 |
| Khot, Rohan | | 50,000.00 | 8,323.98 | - | 41,676.02 |
| Kibblehouse, John R. & DoreenJ. Jr | | 200,000.00 | 34,230.16 | - | 165,769.84 |
| Kibler, James F. & Dawn R. | | 250,000.00 | 27,785.03 | - | 222,214.97 |
| Kiernan, Daniel | | 75,000.00 | 17,750.00 | - | 57,250.00 |
| Kievman-Mager, Mura | | 1,118,076.19 | 145,349.88 | 350,101.95 | 622,624.36 |
| King, Ami T. | | 150,000.00 | 22,919.22 | - | 127,080.78 |
| King, Nancy Jean (IRA)"IRA Financial Trust Company CFBO Nancy Jean King" | | 225,000.00 | 5,625.00 | - | 219,375.00 |
| King, Wendell (Trust)"The Wendell & Nancy Jean King Family Trust" | | 110,000.00 | 13,345.76 | - | 96,654.24 |
| Kirk, Gilbert M. & Debra E. | | 740,000.00 | 161,920.89 | - | 578,079.11 |
| Kirkar LLC | | 350,025.00 | 51,836.05 | - | 298,188.95 |
| Kissi, Emmanuel K. "Kissi Healthcare Services" | | 50,000.00 | 6,541.10 | - | 43,458.90 |
| Kizis, Bret | | 125,560.71 | 45,830.86 | 27,560.71 | 52,169.14 |
| Klar, Kenneth Richard (IRA)"IRA Club  FBO Kenneth Richard Klar" | | 50,000.00 | 2,631.52 | - | 47,368.48 |
| Kliewer, Walter Mark & Helga E. | | 600,000.00 | 36,815.84 | - | 563,184.16 |
| Kling, Richard (Trust)"Kling Family Trust" | | 85,860.27 | 12,879.00 | 30,860.27 | 42,121.00 |
| Klink, David and Edith | Yes | 1,248,424.66 | 240,023.10 | 877,424.66 | 130,976.90 |
| Klugman, Robert | | 100,000.00 | 19,738.71 | - | 80,261.29 |
| Knaub, Lance | | 100,000.00 | 16,660.60 | - | 83,339.40 |
| Knoll, Andrea | | 350,000.00 | 49,506.28 | - | 300,493.72 |
| Knoll, Andrea (LLC)"Sommers Services LLC'" | | 250,000.00 | 14,995.29 | - | 235,004.71 |
| Knowles, Kurt Jr. | | 150,000.00 | 28,514.46 | - | 121,485.54 |
| Knutson, Craig | | 150,000.00 | 27,483.00 | - | 122,517.00 |
| Knutson, Craig (MT)"Madison Trust Company FBO Craig Knutson" | | 300,000.00 | 39,187.08 | - | 260,812.92 |
| Kodeboina, Kiran (Trust)"The Kodeboina and Balmuri Family Trust" | | 75,000.00 | 5,666.10 | - | 69,333.90 |
| Kodnad, Subhash S. "The Kodnad Family Revocable Trust DTD: 04/05/2012" | | 100,000.00 | 15,394.62 | - | 84,605.38 |
| Koduru, Vijaya  (LLC) "V CAPVEST LLC" | | 581,576.30 | 124,266.42 | 47,808.00 | 409,501.88 |
| Koduru, Vijaya  (Trust)"Koduru_Peyyeti Family Revocable Trust" | | 214,646.69 | 50,906.93 | 29,457.99 | 134,281.77 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Kohen, Albert JTWROS Esther Kohen | | 300,000.00 | 55,305.56 | - | 244,694.44 |
| Kohli, Lalit & Leena | | 50,000.00 | 4,582.20 | - | 45,417.80 |
| Kohli, Pardeep | | 750,000.00 | 117,927.72 | - | 632,072.28 |
| Kohli, Sankalp | | 150,000.00 | 13,417.91 | - | 136,582.09 |
| Kolarski, Viktor (LLC) "AVVK Consulting, LLC" | | 3,000,000.00 | 517,694.15 | - | 2,482,305.85 |
| Kolluru, Jayanthi (MT)    "Madison Trust Company FBO Jayanthi Kolluru" | | 300,000.00 | 47,141.16 | - | 252,858.84 |
| Koneru, Ravi & Sushma | | 50,000.00 | 4,779.48 | - | 45,220.52 |
| Konesky, Ian & Melissa  (MT)    "Madison Trust Company Custodian FBO Ian Konesky IRA" | | 125,000.00 | 38,884.29 | - | 86,115.71 |
| Konesky, Ian & Melissa  (Personal) | | 125,000.00 | 39,192.54 | - | 85,807.46 |
| Kothari, Paresh J. & Tarlika P. | | 100,001.00 | 17,890.04 | - | 82,110.96 |
| Kothari, Tarlika (MT) "Madison Trust Company FBO Tarlika Kothari" | | 67,000.00 | 10,204.14 | - | 56,795.86 |
| Kotian, Santosh | | 51,000.00 | 10,894.85 | - | 40,105.15 |
| Kowarsky, Stephen (MT)    "Madison Trust Company FBO Stephen Kowarsky" | | 50,000.00 | 11,699.92 | - | 38,300.08 |
| Kowarsky, Stephen R. | | 450,000.00 | 73,712.56 | - | 376,287.44 |
| Krauss, Brian (Trust)"Brian S. Krauss Trust dated 2/3/12" | | 50,000.00 | 3,315.76 | - | 46,684.24 |
| Krishna, Nallamothu Prudhvi | | 50,000.00 | 4,795.92 | - | 45,204.08 |
| Krishna, Sunanda | | 150,000.00 | 9,695.30 | - | 140,304.70 |
| Krishnaswamy, Vijay  (MT)    "Madison Trust Company FBO Vijay Krishnaswamy" | | 500,000.00 | 109,833.24 | - | 390,166.76 |
| Krishnaswamy, Vijay  (Personal) | | 150,000.00 | 34,400.00 | - | 115,600.00 |
| Kroll, Wayne F. | | 200,000.00 | 26,424.59 | - | 173,575.41 |
| Krueger, Douglas | | 415,000.00 | 34,926.57 | - | 380,073.43 |
| Kruglyak, Lenny    "Madison Trust Company FBO Lenny Kruglyak" | Yes | 126,000.00 | 181,094.79 | - | - |
| Kruglyak, Leonid | | 199,689.71 | 52,869.33 | 45,289.71 | 101,530.67 |
| Kulla, Scott (Trust) "Scott and Cynthia Kulla Living Trust dated May 24,2017" | | 900,000.00 | 104,192.41 | - | 795,807.59 |
| Kumar, Girish | | 150,000.00 | 29,859.70 | - | 120,140.30 |
| Kunapuli, Satya Prasad | | 50,000.00 | 6,968.12 | - | 43,031.88 |
| Kundalia, Rakesh | | 100,000.00 | 15,664.40 | - | 84,335.60 |
| Kundra, Sachin (LLC)"Kundra Enterprises, LLC" | | 50,000.00 | 4,519.61 | - | 45,480.39 |
| Kunisetty, Sridhar (MT)    "Madison Trust Company FBO  Sridhar Kunisetty IRA" | | 156,000.00 | 38,803.52 | - | 117,196.48 |
| Kuo, Rodger Kenneth (MT)"Madison Trust Company FBO Rodger Kenneth Kuo " | | 237,977.00 | 32,776.61 | - | 205,200.39 |
| Kuppireddy, Srikrushna Reddy | | 150,000.00 | 35,775.00 | - | 114,225.00 |
| Kuriakose, Aby J. & Minimol A. | | 300,000.00 | 36,109.70 | - | 263,890.30 |
| Kuriawa, Justin | | 100,000.00 | 16,381.27 | - | 83,618.73 |
| Kurmala, Padmasri | | 150,000.00 | 18,005.39 | - | 131,994.61 |
| Kwintner, Martin | | 50,000.00 | 6,428.15 | - | 43,571.85 |
| Lacher, Mark & Susan | | 1,000,000.00 | 123,789.84 | - | 876,210.16 |
| Lackey, Jerry Mark | | 100,000.00 | 13,427.44 | - | 86,572.56 |
| Lagestee, Phillip (LLC)"Parma Holdings LLC" | | 100,000.00 | 15,328.92 | - | 84,671.08 |
| Lajoie, Juanita | | 1,500,001.00 | 170,422.50 | - | 1,329,578.50 |
| Lakhani, Priya | | 500,000.00 | 94,207.59 | - | 405,792.41 |
| Lakshminarayan, Chandrasekhar | | 150,000.00 | 13,843.45 | - | 136,156.55 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Lalan, Vikin | | 275,000.00 | 64,812.49 | - | 210,187.51 |
| Lalin, Sean C. | | 200,000.00 | 28,881.22 | - | 171,118.78 |
| Lalkiya, Jaysukh | Yes | 121,000.00 | 177,568.33 | - | - |
| Lam, Lily (MT)   "Madison Trust Co. FBO Lily Y. Lam, IRA" | | 250,000.00 | 36,376.14 | - | 213,623.86 |
| Lamba, Gurpreet S. | | 25,000.00 | 3,504.53 | - | 21,495.47 |
| Lamont, Kevin M. | | 1,450,000.00 | 282,108.30 | - | 1,167,891.70 |
| Landsman, Jeffrey | | 50,000.00 | 4,024.66 | - | 45,975.34 |
| Lang, Richard C. | | 2,120,000.00 | 117,822.86 | - | 2,002,177.14 |
| Langley, Shannon H. | | 60,000.00 | 2,178.88 | - | 57,821.12 |
| Larkin, Eileen | | 1,000,000.00 | 277,460.34 | 48,899.00 | 673,640.66 |
| Larner, Elliot (IRA)"Midland Trust Company as Custodian FBO Elliot Larner" | | 100,000.00 | 13,582.20 | - | 86,417.80 |
| LaRock, Steven & Wong-LaRock, Vince | | 200,000.00 | 17,140.53 | - | 182,859.47 |
| Larsen, Timothy C. | | 150,000.00 | 25,822.00 | - | 124,178.00 |
| Larson, Paul Leroy (IRA) Midland Trust Company As Custodian FBO Paul Larson IRA XXXX0201 | | 339,750.00 | 27,622.09 | - | 312,127.91 |
| Larson, Paul Leroy (IRA) Midland Trust Company As Custodian FBO Paul Larson IRA XXXX1059 | | 327,500.00 | 29,274.48 | - | 298,225.52 |
| Larson, Vladimir A. (LLC)"Mir Investment Properties V, LLC | | 51,000.00 | 6,187.49 | - | 44,812.51 |
| Latif, Farouk | | 150,000.00 | 17,915.82 | - | 132,084.18 |
| Lau, Kay   "IMAGEN K2 LLC" | Yes | 150,000.00 | 156,700.00 | - | - |
| Lavorini, Aldo | | 100,000.00 | 16,189.47 | - | 83,810.53 |
| Lawinger, Jane M. | | 200,000.81 | 38,050.30 | 18,575.81 | 143,374.70 |
| Lees, Donald E. | | 200,000.00 | 16,479.36 | - | 183,520.64 |
| Lefler, Lisa S. | | 1,000,000.00 | 152,465.67 | - | 847,534.33 |
| Legarcie, Maritza | | 500,000.00 | 21,929.27 | - | 478,070.73 |
| Leishman, Gregory J. | Yes | 7,053,635.23 | 3,553,983.66 | 3,695,131.43 | - |
| Lenhardt, Robert G. & Jean A. (JTWROS) | | 250,000.00 | 10,485.14 | - | 239,514.86 |
| Leon, Liliana Kung Quan | | 190,000.00 | 27,706.15 | - | 162,293.85 |
| Lerner, Robert | Yes | 36,627.00 | 47,067.24 | - | - |
| Leshinsky, Gail | | 200,000.00 | 46,299.97 | - | 153,700.03 |
| Leung, Ryan | | 150,000.00 | 21,161.00 | - | 128,839.00 |
| Levin, Steven H. | | 47,257.77 | 15,557.81 | 15,757.77 | 15,942.19 |
| Levine Capital Aggregation Fund LLC | Yes | 1,875,000.00 | $333,394.00 | - | 1,541,606.00 |
| Levine, Dan   "Dan Levine 2015 Trust" | | 58,227.72 | 11,160.29 | - | 47,067.43 |
| Levita, Gertrude | | 50,000.00 | 3,689.06 | - | 46,310.94 |
| Levitan, Scott | | 50,000.00 | 6,656.18 | - | 43,343.82 |
| Levitan, Thomas | | 50,000.00 | 6,689.06 | - | 43,310.94 |
| Lewin, James (LLC)"JDL ROTH Investment LLC" | | 150,000.00 | 22,318.60 | - | 127,681.40 |
| Lewis, Adolphus R. & Glenda G. | | 50,000.00 | 2,504.82 | - | 47,495.18 |
| Lewis, Carlin  (Trust) "The Carlin G. Lewis Revocable Living Trust" | | 1,000,000.00 | 336,801.80 | - | 663,198.20 |
| Li, Wendy | | 1,792,426.21 | 572,365.69 | 227,184.55 | 992,875.97 |
| LiCalsi, Dennis | Yes | 50,000.00 | 50,000.00 | - | - |
| LiCalsi, Dennis (MT)   "Madison Trust Company Custodian FBO Dennis LiCalsi IRA" | | 50,000.00 | 11,090.43 | - | 38,909.57 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Lift, Carl | | 550,000.00 | 71,020.85 | - | 478,979.15 |
| Lin, David | Yes | 709,834.73 | 623,204.15 | 176,328.73 | - |
| Lin, David  (MT)    "Madison Trust Company FBO David Lin" | | 83,750.00 | 15,548.83 | - | 68,201.17 |
| Lindell, Scott (MT)"Madison Trust Company FBO Scott Lloyd Lindell" | | 900,000.00 | 122,267.02 | - | 777,732.98 |
| Lindgren, Charles A. | | 150,000.00 | 13,034.30 | - | 136,965.70 |
| Lingamallu, Dheera (IRA)"Midland Trust Company as Custodian FBO Dheera Lingamallu" | | 50,000.00 | 10,027.48 | - | 39,972.52 |
| Lingamallu, Kishore & Dheera (LLC)"Hanuum LLC" | | 350,000.00 | 64,301.68 | - | 285,698.32 |
| Little, David E. | | 100,000.00 | 6,350.75 | - | 93,649.25 |
| Liu, Donglin | | 250,000.00 | 28,352.86 | - | 221,647.14 |
| Liu, Lu | | 150,000.00 | 17,787.70 | - | 132,212.30 |
| Liu, Wenying | | 120,066.00 | 26,446.54 | - | 93,619.46 |
| Livingston, Steven J. | | 100,000.00 | 11,803.62 | - | 88,196.38 |
| Livingston, Steven J. (MT)"Madison Trust Company FBO Steven J. Livingston" | | 50,000.00 | 5,841.41 | - | 44,158.59 |
| LMSD Associates, LD | Yes | 156,900.00 | 189,707.14 | - | - |
| Lodha, Vishal (LLC)"Vikraj Investments, LLC" | | 150,000.00 | 19,325.40 | - | 130,674.60 |
| Longhi, Mario (Trust)"Maria Helena Longhi 2019 Family Trust" | | 600,000.00 | 38,945.12 | - | 561,054.88 |
| Longi, Mohammad | | 143,303.58 | 57,405.65 | 26,848.14 | 59,049.79 |
| Longo, John N. | | 50,000.00 | 8,887.07 | - | 41,112.93 |
| Longo, Thomas J. (MT)    "Madison Trust Company Custodian FBO Thomas J. Longo" | | 50,000.00 | 14,232.45 | - | 35,767.55 |
| Longstreth, Joel & Sandy | | 800,000.00 | 63,571.99 | - | 736,428.01 |
| Loulou, Majd | | 25,000.00 | 2,998.82 | - | 22,001.18 |
| Loulou, Majd (MT)"Madison Trust Company FBO  Majd Loulou" | | 25,000.00 | 2,804.19 | - | 22,195.81 |
| Lovestedt, Penny C. (Trust)"Lovestedt Family Trust" | | 150,000.00 | 18,034.30 | - | 131,965.70 |
| Lowe, Shane & Jennifer | | 50,000.00 | 7,439.06 | - | 42,560.94 |
| Lowry, Christine | | 50,000.00 | 9,500.00 | - | 40,500.00 |
| Lu, Canghai & Xu, Jing | | 210,000.00 | 43,468.32 | - | 166,531.68 |
| Lu, Canghai (MT) "Madison Trust Company FBO Canghai Lu IRA" | | 200,000.00 | 27,652.94 | - | 172,347.06 |
| Lu, Yingchun | | 87,666.30 | 31,103.80 | - | 56,562.50 |
| Lu, Yingchun (IRA)"Equity Trust Company Custodian FBO Yingchun Lu" | | 107,282.49 | 17,165.28 | 43,645.49 | 46,471.72 |
| Lu, Yingchun (Lin Fei) | Yes | 132,800.00 | 179,429.17 | - | - |
| Lubore, Jeffrey | Yes | 262,042.00 | 383,214.52 | - | - |
| Lucas, Andrew - SEAGLASS CAP., LLC | Yes | 50,000.00 | 62,378.08 | - | - |
| Lucas, Gregg (Trust)"Lucas Living Trust" | | 150,000.00 | 23,445.30 | - | 126,554.70 |
| Luigi Farina | Yes | 50,000.00 | 72,372.60 | - | - |
| Luke, Richmond M. | | 350,000.00 | 47,161.92 | - | 302,838.08 |
| Luke, Richmond M. & Pebbly, Amelia J. | | 100,000.00 | 3,579.92 | - | 96,420.08 |
| Lundgren, Jeff & Kim | | 50,000.00 | 82.20 | - | 49,917.80 |
| Luo, Ying Iris | | 200,000.00 | 37,348.64 | - | 162,651.36 |
| Ma, Junning | Yes | 75,669.40 | 123,583.68 | - | - |
| Machover, Geoff (IRA)"Midland Trust Company as Custodian FBO Geoff Machover" | | 200,000.00 | 35,274.02 | - | 164,725.98 |
| Macri, Michael A. | | 275,000.00 | 21,788.16 | - | 253,211.84 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Macwan, Amit | | 150,000.00 | 29,284.30 | - | 120,715.70 |
| Madaan, Ajay | | 50,000.00 | 7,009.22 | - | 42,990.78 |
| Maddipoti, Ramesh  (LLC)"Aniavi, LLC" | | 520,000.00 | 70,546.64 | - | 449,453.36 |
| Maddipoti, Ramesh (MT)"Madison Trust Company FBO  Ramesh Maddipoti" | | 205,000.00 | 27,243.97 | - | 177,756.03 |
| Maddipoti, Ujwala (MT)"Madison Trust Company FBO Ujwala Maddipoti" | | 275,000.00 | 37,137.34 | - | 237,862.66 |
| Madhok, Nupur | | 125,000.00 | 14,566.72 | - | 110,433.28 |
| Madhok, Vinod & Indu | | 125,000.00 | 14,642.07 | - | 110,357.93 |
| Madison Trust Company Custodian FBO David Klink IRA | | 913,531.30 | 230,770.20 | 221,743.40 | 461,017.70 |
| Mager, Howard & Kievman-Mager, Mura | | 2,186,540.47 | 321,141.90 | 1,054,081.20 | 811,317.37 |
| Maggio, Eric | | 91,234.51 | 10,076.34 | - | 81,158.17 |
| Magner, Douglas P. & Anne G. | | 2,738,815.29 | 698,634.50 | 1,137,565.29 | 902,615.50 |
| Magnotta, Kathleen | | 50,000.00 | 2,065.76 | - | 47,934.24 |
| Mahendraker, Alka S. | | 75,000.00 | 13,082.20 | - | 61,917.80 |
| Maier, Don (IRA)"IRA Club FBO Don Maier IRA" | | 100,000.00 | 12,324.22 | - | 87,675.78 |
| Maier, Janaye Deanne | | 600,000.00 | 60,115.06 | - | 539,884.94 |
| Mainali, Rajeeb | | 350,000.00 | 41,043.30 | - | 308,956.70 |
| Makhija, Vipin | | 50,000.00 | 9,624.95 | - | 40,375.05 |
| Makkena, Ramesh | | 250,000.00 | 45,736.14 | - | 204,263.86 |
| Makower, Bryan | | 45,617.25 | 11,399.57 | - | 34,217.68 |
| Malandrakis, Kuriakos (LLC)"JCM Group LLC" | | 150,000.00 | 16,291.10 | - | 133,708.90 |
| Malde, Jaindra | | 200,000.00 | 29,789.12 | - | 170,210.88 |
| Maldonado, Jose | Yes | 52,300.00 | 67,740.68 | - | - |
| Malepati, Suresh (LLC)"Avance Builders LLC" | | 25,000.00 | 3,241.40 | - | 21,758.60 |
| Malhotra, Rakesh (MT)      "Madison Trust Company FBO Rakesh Malhotra" | | 50,000.00 | 10,449.92 | - | 39,550.08 |
| Malhotra, Vijay | Yes | 91,798.60 | 138,517.80 | - | - |
| Mali, Nikhil | | 150,000.00 | 22,845.24 | - | 127,154.76 |
| Malladi, Brindavani & Kappagantula, Srinivas | | 50,000.00 | 6,913.32 | - | 43,086.68 |
| Malladi, Manju | | 100,000.00 | 21,578.97 | - | 78,421.03 |
| Mallikarjuna, Manish | | 100,000.00 | 17,779.48 | - | 82,220.52 |
| Malone, Joseph   "FFA 42921, LLC" | Yes | 183,000.00 | 269,937.53 | - | - |
| Mandapaty, Sai (Trust)"The Mandapaty Family Trust, Dated Dec 29, 2020" | | 500,000.00 | 57,454.47 | - | 442,545.53 |
| Mandel, Jacqueline (MT) "Madison Trust Company Custodian FBO Jacqueline Mandel IRA" | | 319,849.91 | 51,176.00 | 136,849.91 | 131,824.00 |
| Mandel, Pinchos | | 500,000.00 | 93,092.51 | - | 406,907.49 |
| Mandyam, Srinivasan | | 400,000.00 | 37,093.69 | - | 362,906.31 |
| Manemeit, Brigitte (MT)"Madison Trust Company FBO Brigitte Manemeit" | | 234,987.55 | 27,608.36 | - | 207,379.19 |
| Manfredi, John (IRA)"Equity Trust Company Custodian FBO John Manfredi IRA" | | 111,750.00 | 30,445.63 | 30,856.77 | 50,447.60 |
| Mang, Helga M. (Trust)"The Helga M. Mang Revocable Trust DTD 4/29/2015" | | 100,000.00 | 14,961.21 | - | 85,038.79 |
| Manisha Sharma | Yes | 120,000.00 | 132,900.82 | - | - |
| Manukonda, Ram Babu | | 75,000.00 | 6,241.50 | - | 68,758.50 |
| Maranville, Cole L. (LLC)"Alder Mar Investments LLC" | | 200,000.00 | 28,662.13 | - | 171,337.87 |
| Marcus, R. Steven & Kasondra  (Held Jointly) | | 1,000,000.00 | 192,762.47 | - | 807,237.53 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Maretz, Andrew  (Personal) | | 2,965,399.21 | 659,298.93 | 579,945.21 | 1,726,155.07 |
| Maretz, Andrew (MT)"Madison Trust Company FBO Andrew Maretz IRA" | | 662,997.81 | 175,540.65 | 60,997.81 | 426,459.35 |
| Marietta, Martin (LP)"Marietta Family Limited Partnership" | | 400,000.00 | 15,963.48 | - | 384,036.52 |
| Marinakos, Chris (LLC)"Samos Investments, LLC" | | 800,000.00 | 122,607.26 | - | 677,392.74 |
| Marino, Richard (401K) "The CEU/CME Company Employee Profit Sharing Plan 401K" | | 150,000.00 | 9,832.20 | - | 140,167.80 |
| Marino, Vincent | | 750,000.00 | 100,119.88 | - | 649,880.12 |
| Marion Fox Living Trust | Yes | 632,462.13 | 251,332.68 | 37,675.69 | 343,453.76 |
| Mark Bell | Yes | - | 56,441.10 | - | - |
| Markowitz, Arnold | Yes | 233,196.53 | 237,176.27 | - | - |
| Marks, Cory & Lisa | | 121,704.98 | 41,411.19 | 35,547.98 | 44,745.81 |
| Marks, Ruth | | 60,000.00 | 14,310.00 | - | 45,690.00 |
| Marks, Stuart | | 880,000.00 | 181,359.52 | - | 698,640.48 |
| Marks, Stuart (MT)"Madison Trust Company FBO Stuart Marks IRA" | | 70,000.00 | 14,057.46 | - | 55,942.54 |
| Maroscia, John | | 835,037.42 | 215,750.30 | 56,331.42 | 562,955.70 |
| Maroscia, John  (MT) "Madison Trust Company FBO John Maroscia" | | 400,000.00 | 92,866.71 | - | 307,133.29 |
| Marquis, Paulette D. (Trust)"Paulette D. Marquis Revocable Living Trust" | | 500,000.00 | 105,207.95 | - | 394,792.05 |
| Marra, Constantino (MT) "Madison Trust Company FBO Constantino Marra IRA" | | 50,000.00 | 2,291.10 | - | 47,708.90 |
| Marsh, Aaron | | 50,000.00 | 5,065.71 | - | 44,934.29 |
| Marsh, Robert | | 50,000.00 | 4,874.86 | - | 45,125.14 |
| Marshall, Jacob C.  (LLC) "Marshall Horizons Investors Fund I, LLC" | | 1,350,000.00 | 242,643.93 | - | 1,107,356.07 |
| Marshall, Jacob C.  (Personal) | | 575,000.00 | 92,246.04 | - | 482,753.96 |
| Marshbanks, Aaron | | 50,000.00 | 4,106.23 | - | 45,893.77 |
| Martha L. Stephens & Scott A. Summers | | 58,227.72 | 11,160.29 | - | 47,067.43 |
| Martin, Harald  (Trust)     "H & C Martin Family Trust" | | 150,000.00 | 29,265.68 | - | 120,734.32 |
| Martin, John  Samuel (Trust)"Martin Revocable Trust" | | 300,000.00 | 45,986.40 | - | 254,013.60 |
| Martin, Timothy N. | | 200,000.00 | 11,424.56 | - | 188,575.44 |
| Martin, Tracy | | 330,893.23 | 62,479.62 | - | 268,413.61 |
| Martineau, Jerald (IRA)"Midland Trust Company as Custodian FBO Jerald Martineau" | | 348,573.16 | 30,575.80 | - | 317,997.36 |
| Martinek, Michael J. | | 100,000.00 | 21,398.62 | - | 78,601.38 |
| Martinez, Wendy | | 200,000.00 | 33,801.67 | - | 166,198.33 |
| Martucci, Ruth | | 50,000.00 | 2,615.08 | - | 47,384.92 |
| Mast, Robert P. (IRA)"Midland Trust Company as Custodian FBO  Robert Mast IRA" | | 150,000.00 | 17,938.54 | - | 132,061.46 |
| Mast, Robert P. (Trust)"Robert P. Mast Revocable Living Trust" | | 50,000.00 | 9,051.47 | - | 40,948.53 |
| Masters, Cheryl Anne | | 400,000.00 | 91,366.53 | - | 308,633.47 |
| Mastriano, Joseph (Reimbursement) | Yes | 196,333.32 | 12,205.83 | 196,333.34 | - |
| Mather, Scott | Yes | 613,274.66 | 604,261.08 | - | 9,013.58 |
| Mathur, Ranjana | | 80,893.23 | 9,049.88 | - | 71,843.35 |
| Mathur, Sumer N. (Trust)"Mathur Family Trust Dated July 15th 2020" | | 210,194.84 | 45,470.60 | 124,641.45 | 40,082.79 |
| Matsas, Ben-Gurian   (MT)     "Madison Trust Company FBO Ben-Gurian Matsas" | Yes | 140,000.00 | 37,183.04 | - | 102,816.96 |
| Matsas, Ben-Gurian  (Personal) | Yes | 200,000.00 | 35,454.33 | - | 164,545.67 |
| Matsas, Rachelle (MT) "Madison Trust Company FBO Rachelle Matsas IRA" | | 65,000.00 | 12,005.79 | - | 52,994.21 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Mattes, Gerald | | 815,631.05 | 188,968.77 | 54,330.45 | 572,331.83 |
| Matthew, Jay "Jabe Investments, LLC" | Yes | 63,000.00 | 86,632.77 | - | - |
| Matthew, Jay "Madison Trust Company FBO Jay Matthew" | Yes | 63,000.00 | 86,301.37 | - | - |
| Mauer, Morris (LLC)"Meaza Properties LLC" | | 150,000.00 | 23,774.10 | - | 126,225.90 |
| Mayeda, Daniel (MT)"Madison Trust Company FBO Daniel Mayeda" | | 450,000.00 | 69,349.35 | - | 380,650.65 |
| Maynard, Miles A. (Trust) "Maynard Trust" | | 200,000.00 | 13,607.31 | - | 186,392.69 |
| Mayne, Michelle M. (Trust) "Michelle M.Mayne Revocable Living Trust u/a DTD 7-23-92" | | 5,000,000.00 | 839,452.16 | - | 4,160,547.84 |
| McCarroll, James C. "MCJA, LLC" | | 50,000.00 | 10,983.24 | - | 39,016.76 |
| McCarroll, James C. (IRA) "PENSCO TRUST COMPANY, LLC" | | 100,000.00 | 21,466.76 | - | 78,533.24 |
| McCarroll, James "MCJA, llc" | Yes | 63,000.00 | 94,669.15 | - | - |
| McCarthy, Brian | | 150,000.00 | 20,164.40 | - | 129,835.60 |
| McCarthy, James P. (Trust)"James P. McCarthy Revocable Trust" | | 400,000.00 | 44,319.65 | - | 355,680.35 |
| McCarty, C. Alan | | 500,000.00 | 75,411.03 | - | 424,588.97 |
| McClain, Scott D. | | 100,000.00 | 11,039.36 | - | 88,960.64 |
| McCloskey, Thomas | Yes | 416,187.04 | 341,633.58 | 86,962.14 | - |
| McCloskey, Thomas "TKS Group LLC" | Yes | 183,668.50 | 32,448.18 | - | 151,220.32 |
| McCloskey, Thomas (MT)"Madison Trust Company Custodian FBO Thomas McCloskey" | Yes | 150,000.00 | 140,812.13 | - | 9,187.87 |
| McCloskey, Thomas A."McCloskey/ Katz Charitable Remainder Unitrust F/B/O Thomas A McCloskey" | Yes | 400,000.00 | 82,410.90 | - | 317,589.10 |
| McCullough, Michael A. | | 50,000.00 | 11,578.89 | - | 38,421.11 |
| McCullough, Michael A."Manju Group" | | 50,000.00 | 10,232.98 | - | 39,767.02 |
| McDonald, Peter | | 300,000.00 | 31,931.70 | - | 268,068.30 |
| McElhone, Lisa (Corp)"Eagle Six Consultants Inc" | | 1,000,000.00 | 288,812.62 | - | 711,187.38 |
| McGrail, Bryan | Yes | 105,000.00 | 91,642.07 | - | 13,357.93 |
| McGrail, Bryan (MT)"Madison Trust Company FBO Bryan McGrail" | | 50,000.00 | 11,574.97 | - | 38,425.03 |
| McGrath, Michael R. | Yes | 50,000.00 | 50,000.00 | - | - |
| McGuire, Michael J. | | 50,000.00 | 3,213.72 | - | 46,786.28 |
| McKune, John | | 50,003.00 | 8,615.76 | - | 41,387.24 |
| McKune, John (IRA)"Midland Trust Company FBO John McKune" | | 150,000.00 | 28,157.60 | - | 121,842.40 |
| McKune, John (MT) "Madison Trust Co. FBO John McKune" | | 150,000.00 | 21,394.56 | - | 128,605.44 |
| McManus, Patrick | | 162,459.77 | 27,312.99 | - | 135,146.78 |
| McMurtrey, Gary | | 350,000.00 | 30,770.55 | - | 319,229.45 |
| McMurtrey, Gary (MT)"Madison Trust Company FBO Gary McMurtrey IRA" | | 100,000.00 | 7,269.44 | - | 92,730.56 |
| McNary, John | | 100,000.00 | 16,244.27 | - | 83,755.73 |
| McTee, Rudy L. | | 100,000.00 | 11,618.18 | - | 88,381.82 |
| Mehta, Anup (Trust)"Mehta Living Trust" | | 50,000.00 | 8,108.53 | - | 41,891.47 |
| Mehta, Ashish | | 75,000.00 | 18,388.73 | - | 56,611.27 |
| Mehta, Kaushik S. | | 50,000.00 | 6,189.58 | - | 43,810.42 |
| Mehta, Khyati & Ranjan | | 100,000.00 | 12,406.42 | - | 87,593.58 |
| Mehta, Kishor & Ranjan | | 600,000.00 | 57,219.13 | - | 542,780.87 |
| Mehta, Mohan & Asha | | 330,000.00 | 59,324.84 | - | 270,675.16 |
| Mehta, Namita & Somil | | 100,000.00 | 12,351.62 | - | 87,648.38 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Mehta, Rohan | | 50,000.00 | 6,189.58 | - | 43,810.42 |
| Mehta, Vishal & Minjal | | 100,000.00 | 12,406.42 | - | 87,593.58 |
| Melody Zhou-Weiss | Yes | 101,843.35 | 20,368.80 | | 81,474.55 |
| Melone, Mitchell (Corp)"Vanco Pharmacy INC" | | 200,000.00 | 24,953.52 | - | 175,046.48 |
| Menard, John (LLC)"John G LLC" | | 200,000.00 | 13,160.79 | - | 186,839.21 |
| Meskin, Vladimir | | 150,000.00 | 21,414.40 | - | 128,585.60 |
| Mesrie, Samuel | | 150,000.00 | 30,904.20 | - | 119,095.80 |
| Milano, Frederick | | 225,000.00 | 53,215.14 | - | 171,784.86 |
| Milano, Fredrick (MT)"Madison Trust Company FBO Fredrick Milano" | | 550,000.00 | 109,924.60 | - | 440,075.40 |
| Milano, Marilyn (MT) "Madison Trust Company FBO Marilyn Milano IRA" | | 800,000.00 | 211,972.50 | - | 588,027.50 |
| Miller, Dwight (401K)"Dash Real Estate Group Profit Sharing (401K)" | | 192,083.29 | 32,654.11 | 76,083.29 | 83,345.89 |
| Minns, Stephen (IRA)"Equity Trust Company Custodian FBO Stephen Minns IRA" | | 170,663.03 | $38,590.92 | 49,263.03 | 82,809.08 |
| Minns, Stephen (IRA)"Equity Trust Company Custodian FBO Stephen Minns IRA" XXX8294 | | 113,681.46 | $30,849.00 | 36,378.16 | 46,454.30 |
| Minns, Stephen (IRA)"Equity Trust Company Custodian FBO Stephen Minns IRA" XXX8295 | | 173,479.45 | $31,226.22 | 73,479.45 | 68,773.78 |
| Miro, Larisa | | 250,000.00 | 27,118.71 | - | 222,881.29 |
| Mirza, Anwar (MT)    "Madison Trust Company FBO Anwar Mirza IRA" | | 187,000.00 | 30,435.08 | - | 156,564.92 |
| Misaka, Brian | | 360,000.00 | 44,324.72 | - | 315,675.28 |
| Misaka, Brian (IRA)"Midland Trust Company as Custodian FBO Brian Misaka" | | 394,776.00 | 35,493.84 | - | 359,282.16 |
| Mishra, Minerva | | 475,000.00 | 91,569.24 | - | 383,430.76 |
| Mistry, Mahesh | | 340,019.21 | 44,059.82 | 25,119.21 | 270,840.18 |
| Mittanck, Michael L. (LLC)"Outstanding Funding LLC" | | 150,000.00 | 9,379.42 | - | 140,620.58 |
| Mixon, Candis | | 150,000.00 | 32,275.00 | - | 117,725.00 |
| Mody, Bharat (LLC)"Premier Investors LLC" | | 500,000.00 | 30,370.81 | - | 469,629.19 |
| Moffatt, Glenn & Robin (Trust)"Moffatt Family Living Trust, March 29, 1994" | | 300,000.00 | 44,530.90 | - | 255,469.10 |
| Mogalian, Jeffrey A. | | 150,000.00 | 26,989.80 | - | 123,010.20 |
| Mogerman, Dennis   "Dennis Mogerman Revocable Trust dated June 19, 1995" | | 100,000.00 | 12,257.35 | - | 87,742.65 |
| Mohal, Rajeev K. (LLC)"Leesburg Family Investments LLC" | | 150,000.00 | 24,394.56 | - | 125,605.44 |
| Mohindru, Mohit | | 200,000.00 | 19,538.86 | - | 180,461.14 |
| Molina, Alex | | 200,000.00 | 23,200.83 | - | 176,799.17 |
| Montanari, Raymond | | 100,000.00 | 5,082.20 | - | 94,917.80 |
| Moonat, Sharad | | 120,000.00 | 46,853.33 | - | 73,146.67 |
| Moore, David G. & Colette B. | | 150,000.00 | 20,328.80 | - | 129,671.20 |
| Moore, Gregory B. & Paula | | 150,000.00 | 6,743.20 | - | 143,256.80 |
| Moore, John P. | | 170,000.00 | 11,566.26 | - | 158,433.74 |
| Moore, Walter | | 700,000.00 | 48,673.76 | - | 651,326.24 |
| Mora, John M. | | 500,000.00 | 46,906.27 | - | 453,093.73 |
| Moran, Anna | Yes | 150,000.00 | 150,000.00 | - | - |
| Moreken, Michael (IRA)"Equity Trust Company Custodian FBO Michael Moreken IRA" | | 100,000.00 | 7,911.00 | - | 92,089.00 |
| Moretti, John | | 100,000.00 | 4,680.84 | - | 95,319.16 |
| Morrison, Daniel S. | | 50,000.00 | 7,180.84 | - | 42,819.16 |
| Morrison, David (IRA)"Midland Trust Company As Custodian FBO David Morrison" | | 200,000.00 | 21,995.45 | - | 178,004.55 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Morrow, Bruce R. (LLC)"Blue Chip Financial Group, LLC" | | 600,000.00 | 84,390.37 | - | 515,609.63 |
| Mort, Thomas C. | | 250,000.00 | 9,840.10 | - | 240,159.90 |
| Mortensen, Wesley S. | | 50,000.00 | 7,439.06 | - | 42,560.94 |
| Morthala, Srinivasa (LLC)"Poormans Maypearl LLC" | | 25,000.00 | 3,207.15 | - | 21,792.85 |
| Morthala, Vijay (LLC)"Texas Seven Hills  LLC" | | 25,000.00 | 3,033.07 | - | 21,966.93 |
| Mueller, William Dean | | 50,000.00 | 7,261.49 | - | 42,738.51 |
| Mukherji, Sharmila(MT)    "Madison Trust Company FBO Sharmila Mukherji" | | 50,000.00 | 10,291.65 | - | 39,708.35 |
| Mukherji, Sukumar    "Madison Trust Company FBO Sukumar Mukherji" | | 50,000.00 | 11,416.60 | - | 38,583.40 |
| Mukherji, Sukumar & Sharmila | | 50,000.00 | 4,340.42 | - | 45,659.58 |
| Mullapudi, Rajendra | | 500,000.00 | 61,358.41 | - | 438,641.59 |
| Mullin, Paul | | 700,000.00 | 75,000.05 | - | 624,999.95 |
| Murphy, Karlise, (IRA)"IRA Club FBO Karlise Murphy" | | 50,000.00 | 1,238.38 | - | 48,761.62 |
| Musti, Nagavalli (Roth IRA) "Madison Trust Company FBO Nagavalli Musti" | | 10,000.00 | 3,649.91 | - | 6,350.09 |
| Musti, Subrahmanyam | Yes | 46,287.50 | 57,534.51 | - | - |
| Musti, Subrahmanyam & Nagavalli (Personal) | | 200,000.00 | 70,888.90 | - | 129,111.10 |
| Musti, Subrahmanyam (Roth IRA)"Madison Trust Company FBO Subrahmanyam Musti" | | 20,000.00 | 8,111.81 | - | 11,888.19 |
| Musti, Subrahmanyam (Traditional IRA)"Madison Trust Company FBO Subrahmanyam Musti" | | 850,000.00 | 314,048.57 | - | 535,951.43 |
| Musulin, Michael S. | | 500,000.00 | 52,191.88 | - | 447,808.12 |
| Nagamalla, Mahesh | | 51,000.00 | 10,652.94 | - | 40,347.06 |
| Nagboth, Naresh & Pallavi (TRUST)    "The Nagboth Family Revocable Trust" | | 60,000.00 | 17,340.00 | - | 42,660.00 |
| Nagda, Vinit (LLC) "V2 Capital Parteners LLC" | | 50,000.00 | 15,370.02 | - | 34,629.98 |
| Naiden, John | | 700,000.00 | 71,401.77 | - | 628,598.23 |
| Naik, Kanchan & Sarla | | 443,428.30 | 104,762.77 | 106,028.31 | 232,637.22 |
| Naik, Ketki | | 253,439.53 | 70,941.98 | 85,789.53 | 96,708.02 |
| Naik, Sanjay | | 81,553.70 | 17,126.34 | 26,553.70 | 37,873.66 |
| Nainani, Kunal | | 80,921.10 | 14,161.14 | 19,921.10 | 46,838.86 |
| Nalamalapu, Vinod R. | | 101,000.00 | 25,509.80 | - | 75,490.20 |
| Nandipati, Kalyana C. (Trust)"Kalyana C Nandipati Trust" | | 100,000.00 | 9,591.84 | - | 90,408.16 |
| Nanjappa, Chandra Shekar | | 150,000.00 | 9,078.80 | - | 140,921.20 |
| Narang, Satpal Singh & Kaur, Manveen (JTROS) | | 75,000.00 | 18,262.50 | - | 56,737.50 |
| Nardi, Ernest J. | | 400,000.00 | 49,657.12 | - | 350,342.88 |
| Narotam, Vinay Kumar | | 200,000.00 | 19,073.06 | - | 180,926.94 |
| Narula, Seema | | 150,000.00 | 17,438.02 | - | 132,561.98 |
| Nash, Joseph & Janis | | 500,000.00 | 59,537.76 | - | 440,462.24 |
| Nat, Avtar S. & Rinkoo R. (Trust)"Nat Living Trust" | | 200,000.00 | 12,488.54 | - | 187,511.46 |
| Natarajan, Subhashini  (MT)    "Madison Trust Company FBO Subhashini Natarajan" | | 232,601.13 | 45,689.08 | - | 186,912.05 |
| Natofsky, Randi | | 100,000.00 | 16,960.40 | - | 83,039.60 |
| Nayak, Dhrupesh | | 50,000.00 | 2,439.55 | - | 47,560.45 |
| Nayak, Satish | | 50,000.00 | 14,462.50 | - | 35,537.50 |
| Nayee, Manish (LLC) "MBPAV Properties, LLC" | | 50,000.00 | 3,730.66 | - | 46,269.34 |
| Nayyar, Shilpa (Trust)"Shilpa Nayyar Revocable Trust" | | 200,000.00 | 36,315.03 | - | 163,684.97 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Nellius, Daniel | | 150,000.00 | 24,361.68 | - | 125,638.32 |
| Nelson, Stan & Carol (LLC)"Ocatillo Investments, LLC" | | 1,400,000.00 | 356,824.78 | 100,000.00 | 943,175.22 |
| Nemani, Raghunadha (MT)"Madison Trust Company FBO Raghunadha Nemani" | | 93,964.19 | 19,732.44 | 27,564.19 | 46,667.56 |
| Nepa, Ottavio (MT)"Madison Trust Company FBO Ottavio Nepa IRA" | Yes | 300,000.00 | 326,373.53 | - | - |
| Neuman, Gregory A. | | 250,000.00 | 10,759.10 | - | 239,240.90 |
| Neumann, Jeffrey W. | | 240,000.00 | 29,775.25 | - | 210,224.75 |
| Newbert, Kerry | | 150,000.00 | 19,243.20 | - | 130,756.80 |
| Newbert, Kerry (IRA)"Midland Trust Company As Custodian FBO Kerry Newbert" | | 1,334,451.00 | 148,145.00 | - | 1,186,306.00 |
| Newby, John (MT)"Madison Trust Company FBO John Newby" | | 250,000.00 | 21,997.63 | - | 228,002.37 |
| Newman, Victoria | | 50,000.00 | 4,732.38 | - | 45,267.62 |
| NG, Dixon (LLC)"SSAPT 2020 LLC" | Yes | 801,000.00 | 138,787.73 | - | 662,212.27 |
| Ni, Hai Yan  "Millennium IRA, LLC" | | 260,224.74 | 52,104.43 | - | 208,120.31 |
| Ni, Hai Yan  (Personal) | | 75,000.00 | 16,898.70 | - | 58,101.30 |
| Nicassio, Ralph | | 250,000.00 | 10,759.10 | - | 239,240.90 |
| Nicoll, Daniel J. (MT)"Madison Trust Company FBO Daniel J. Nicoll" | | 300,000.00 | 14,883.51 | - | 285,116.49 |
| Nidiffer, Jason | | 300,000.00 | 19,456.65 | - | 280,543.35 |
| Nielsen, Thomas E. & Bohn, Kathryn S. | | 700,000.00 | 132,961.89 | - | 567,038.11 |
| Niemi, Richard (IRA)"Midland Trust Company As Custodian FBO Richard Niemi" | | 200,000.00 | 11,479.35 | - | 188,520.65 |
| Nigh, Barbara J. | | 50,000.00 | 3,266.44 | - | 46,733.56 |
| Nikola, Lawrence (LLC) "Memorial Properties Forever, LLC" | | 1,500,000.00 | 331,002.76 | - | 1,168,997.24 |
| Nirnakar, Nagendra | | 50,000.00 | 14,425.00 | - | 35,575.00 |
| Noor, Asmath | | 350,000.00 | 70,986.17 | - | 279,013.83 |
| Nordvik, William G. Sr. (Tust)"William G. Nordvik Sr. Living Trust Dated Nov 3, 1996" | | 150,000.00 | 24,613.10 | - | 125,386.90 |
| Norton, Paul Jones III (LLC)"PKN CF LLC" | | 1,000,000.00 | 188,538.69 | - | 811,461.31 |
| Norton, Robert J. (Trust)"The Robert J. Norton Trust" | | 150,000.00 | 23,322.00 | - | 126,678.00 |
| Norville, Horace Scott | | 100,000.00 | 5,970.31 | - | 94,029.69 |
| NRIA EB5 Bergenline | Yes | 5,850,000.00 | - | - | 5,850,000.00 |
| Nyquist, Shoshana | | 418,820.80 | 158,769.78 | 122,365.36 | 137,685.66 |
| Ober, John R. | Yes | 50,000.00 | 50,000.00 | - | - |
| O'Brien, Jack LKKNJ LLC | | 172,512.00 | 21,390.99 | - | 151,121.01 |
| Obulareddy, Sreenivasa (LLC) "Arpisri Ventures LLC" | | 25,000.00 | 3,241.40 | - | 21,758.60 |
| Occhiogrosso, Annmarie  (Trust)"Equity Trust Co. Custodian FBO Amocchio Occhiogrosso" | Yes | 88,000.00 | 19,380.01 | - | 68,619.99 |
| Occhiogrosso, Joseph | Yes | 600,000.00 | 118,620.04 | - | 481,379.96 |
| Occhiogrosso, Joseph  (Trust)"Equity Trust Co. Custodian FBO Joseph Occhiogrosso IRA" XXX3025 | Yes | 400,000.00 | 77,165.08 | - | 322,834.92 |
| Occhiogrosso, Joseph  (Trust)"Equity Trust Co. Custodian FBO Joseph Occhiogrosso IRA" XXX5629 | Yes | 125,500.00 | 27,638.52 | - | 97,861.48 |
| O'Grady, Daniel | Yes | 116,000.00 | 166,112.00 | - | - |
| Ogrodnik, Ronald | | 200,000.00 | 19,618.78 | - | 180,381.22 |
| Oh, Susanna | Yes | 66,400.00 | 87,509.74 | - | - |
| Old House Lane LLC | | 4,468,101.70 | 1,253,958.31 | 955,201.70 | 2,258,941.69 |
| Oleckna, Kenneth | | 50,000.00 | 6,208.18 | - | 43,791.82 |
| Olin, Richard & Elizabeth | | 50,000.00 | 9,953.31 | - | 40,046.69 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Olney, George (MT)   "Madison Trust Company FBO George Olney" XXXX4053 | | 180,654.00 | 31,733.25 | - | 148,920.75 |
| Olney, George (MT)   "Madison Trust Company FBO George Olney" XXXX4054 | | 6,548.00 | 1,150.22 | - | 5,397.78 |
| Olney, Sandra (MT)   "Madison Trust Company FBO Sandra Olney" XXXX4057 | | 122,382.00 | 21,497.33 | - | 100,884.67 |
| Olney, Sandra (MT)   "Madison Trust Company FBO Sandra Olney" XXXX5001 | | 3,334.00 | 585.65 | - | 2,748.35 |
| Olsen, Alexander D. (IRA)"Equity Trust Company Custodian FBO Alexander Olsen IRA" | | 250,000.00 | 9,634.63 | - | 240,365.37 |
| Olsen, Jillene | | 880,000.00 | 80,923.99 | - | 799,076.01 |
| Onkar, Sushma Raghavendrarao | | 50,000.00 | 10,733.38 | - | 39,266.62 |
| Opferman, Robert (MT) "Madison Trust Company Custodian FBO Robert Opferman IRA" | | 300,000.00 | 39,225.99 | - | 260,774.01 |
| Oppenheim, Richard | | 1,681,723.68 | 512,759.50 | 24,723.68 | 1,144,240.50 |
| Oppenheim, Richard  (Trust) "Act Sports Enterprises Inc Employee Pension Trust" | | 1,416,997.52 | 303,449.29 | 24,997.52 | 1,088,550.71 |
| Oresman, Samuel Robert | | 100,000.00 | 8,497.70 | - | 91,502.30 |
| Osborne, Matthew | Yes | 216,797.87 | 192,328.34 | 30,641.10 | - |
| Osei-Akoto, Kwadwo | | 300,999.00 | 47,694.08 | - | 253,304.92 |
| Ostrom, Richard A. | | 200,000.00 | 22,152.13 | - | 177,847.87 |
| Oza, Kruti (MT)"Madison Trust Company FBO Kruti Oza" | | 99,000.00 | 10,583.15 | - | 88,416.85 |
| Pal, Aruna (MT) "Madison Trust Company FBO Aruna Pal" | | 450,000.00 | 60,246.58 | - | 389,753.42 |
| Pal, Ashutosh (401k)"INDUSSPARKS 401k Plan" | | 155,000.00 | 22,729.80 | - | 132,270.20 |
| Palakodati, Sunil (Corp)"Agile  Business Corporation" | | 100,000.00 | 21,688.57 | - | 78,311.43 |
| Pan, Took | | 70,000.00 | 9,659.34 | - | 60,340.66 |
| Panchal, Darshan | | 100,000.00 | 7,801.37 | - | 92,198.63 |
| Panchal, Kamal & Nita | | 1,000,000.00 | 133,105.33 | - | 866,894.67 |
| Pancholi, Ashok & Chetna | | 150,000.00 | 7,359.70 | - | 142,640.30 |
| Panchumarthi, Aruna | | 120,000.00 | 15,394.56 | - | 104,605.44 |
| Panchumarthi, Venkaiah & Vijaya Laskshmi | | 100,000.00 | 12,521.83 | - | 87,478.17 |
| Pandipati, Radha K. C. (LLC)"Srusan Systems LLC" | | 200,000.00 | 16,819.67 | - | 183,180.33 |
| Panjala, Devadas | | 100,000.00 | 7,365.35 | - | 92,634.65 |
| Pantina, Frank | Yes | 91,234.51 | 143,005.72 | - | - |
| Pappas, George N. | | 800,000.00 | 63,742.13 | - | 736,257.87 |
| Paradise, Arthur D. (IRA)"Equity Trust Company Custodian FBO Arthur Paradise IRA" | | 500,000.00 | 24,395.09 | - | 475,604.91 |
| Paranjpe, Suresh C. (LLC)"Riverwood, LLC" | | 500,000.00 | 51,643.92 | - | 448,356.08 |
| Parekh, Amit | | 25,000.00 | 1,936.62 | - | 23,063.38 |
| Parekh, Amit (MT) "Madison Trust Company Custodian FBO Amit Parekh" | | 157,000.00 | 11,947.01 | - | 145,052.99 |
| Parekh, Arati (IRA)"Strata Trust Co. FBO Arati Parekh IRA" | | 15,000.00 | 2,153.77 | - | 12,846.23 |
| Parekh, Bimal | | 300,000.00 | 54,679.85 | - | 245,320.15 |
| Parekh, Ekta (MT) "Madison Trust Company Custodian FBO Ekta Parekh" | | 336,000.00 | 25,568.20 | - | 310,431.80 |
| Parekh, Jateen and Arati | | 681,167.38 | 175,053.60 | 96,767.38 | 409,346.40 |
| Parekh, Maansi | | 75,000.00 | 17,650.00 | - | 57,350.00 |
| Parekh, Parth J. | | 130,000.00 | 18,422.07 | - | 111,577.93 |
| Parella, Matthew & Michelle | | 150,000.00 | 19,243.20 | - | 130,756.80 |
| Parella, Michelle (IRA)"Midland Trust Company as Custodian FBO Michelle Parella" | | 104,000.00 | 19,921.44 | - | 84,078.56 |
| Parikh, Bijal (LLC)"Ava Arianna Association, LLC" | | 200,000.00 | 31,698.55 | - | 168,301.45 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Parikh, Chintan | | 50,000.00 | 6,107.38 | - | 43,892.62 |
| Parikh, Girish R. | | 150,000.00 | 21,784.30 | - | 128,215.70 |
| Parikh, Mayank K. & Hiral M. | | 150,000.00 | 10,205.50 | - | 139,794.50 |
| Parikh, Nilay | | 50,000.00 | 6,203.28 | - | 43,796.72 |
| Parikh, Nitinkumar A. | | 450,000.00 | 83,724.80 | - | 366,275.20 |
| Parikh, Trusha | | 50,000.00 | 6,203.28 | - | 43,796.72 |
| Parker, Tim | | 123,300.60 | 82,150.81 | - | 41,149.79 |
| Parnell, Albert H. | | 100,000.00 | 4,971.94 | - | 95,028.06 |
| Parrott, Paul | | 125,300.00 | 20,308.78 | - | 104,991.22 |
| Parrott, Paul (IRA)"Equity Trust Company Custodian FBO Paul Parrott  IRA" | | 268,000.00 | 49,794.04 | - | 218,205.96 |
| Pasik, Lawrence (FLP)"The Pasik, Asset Protection, Family Limited Partnership" | | 150,000.00 | 29,572.00 | - | 120,428.00 |
| Pasik, Lawrence (Trust)"Lawrence I. Pasik, Trustee UTA of Dec. 3, 1977 for Lawrence I. Pasik" | | 66,969.52 | 11,384.90 | - | 55,584.62 |
| Pasik, Lawrence    "Lawrence I. Pasik Living Trust" | | 66,038.17 | 18,970.74 | 23,779.97 | 23,287.46 |
| Pasik, Rona"Rona D. Pasik, Trustee Under Rona D. Pasik Trust Agreement Date June 18, 1997" | | 50,000.00 | 12,608.29 | - | 37,391.71 |
| Pass, Douglas A. | | 300,000.00 | 32,296.85 | - | 267,703.15 |
| Patel, Amit | | 50,000.00 | 7,138.19 | - | 42,861.81 |
| Patel, Apurva | | 500,000.00 | 78,150.83 | - | 421,849.17 |
| Patel, Ashish (LLC)"Esona, LLC" | | 300,000.00 | 51,282.32 | - | 248,717.68 |
| Patel, Atul (LLC)"Jyot Funding, LLC" | Yes | 4,616,368.45 | 1,147,100.96 | 760,029.65 | 2,709,237.84 |
| Patel, Bhupendra & Anita | | 1,300,000.00 | 205,322.87 | - | 1,094,677.13 |
| Patel, Biren (LLC)"BNP Capital Fund LLC" | Yes | 1,400,000.00 | 210,485.86 | - | 1,189,514.14 |
| Patel, Chirag | | 150,000.00 | 21,027.50 | - | 128,972.50 |
| Patel, Falguni & Dharmesh; "AARIV, LLC" | | 50,000.00 | 6,803.72 | - | 43,196.28 |
| Patel, Harit Kumar & Heena Narendra Kumar | | 1,300,000.00 | 156,000.00 | - | 1,144,000.00 |
| Patel, Indravadan | | 250,000.00 | 47,750.98 | - | 202,249.02 |
| Patel, Jagdish C. & Ramila J. | | 700,000.00 | 119,218.84 | - | 580,781.16 |
| Patel, Jayantilal | | 551,000.00 | 95,981.97 | - | 455,018.03 |
| Patel, Jayesh | | 473,226.32 | 243,738.12 | 52,270.92 | 177,217.28 |
| Patel, Jitendra | Yes | 347,066.51 | 301,871.55 | - | 45,194.96 |
| Patel, Jitendrakumar | | 50,000.00 | 9,577.74 | - | 40,422.26 |
| Patel, Jivanlal M. & Jyotiben J. | | 800,000.00 | 122,219.46 | - | 677,780.54 |
| Patel, Kokila    "Paramhans Corporation" | | 100,000.00 | 22,050.01 | - | 77,949.99 |
| Patel, Kokila (MT)"Madison Trust Company FBO Kokila Patel" | | 265,067.06 | 10,810.31 | - | 254,256.75 |
| Patel, Mahendra D. (Trust) "M & N Patel Family Trust" | | 100,000.00 | 15,141.89 | - | 84,858.11 |
| Patel, Mahendra P.(MT)    "Madison Trust Company FBO Mahendra Patel" | | 214,029.25 | 44,281.57 | 52,154.25 | 117,593.43 |
| Patel, Manher & Vaibhavi | | 150,000.00 | 35,825.00 | - | 114,175.00 |
| Patel, Manish & Karia-Patel, Roopal | | 150,000.00 | 19,202.10 | - | 130,797.90 |
| Patel, Mehulkumar | | 320,000.00 | 35,135.24 | - | 284,864.76 |
| Patel, Mulji & Kokila | | 240,603.02 | 13,802.61 | - | 226,800.41 |
| Patel, Mulji (MT) "Madison Trust Company FBO Mulji Patel" | | 407,090.74 | 23,348.52 | - | 383,742.22 |
| Patel, Naman & Chaitali | | 50,000.00 | 7,425.89 | - | 42,574.11 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Patel, Naresh (LLC) "MNP Mannar Company, LLC" | | 714,244.82 | 134,061.10 | 115,044.82 | 465,138.90 |
| Patel, Nilesh | | 100,000.00 | 14,779.48 | - | 85,220.52 |
| Patel, Nilesh (IRA)"Midland Trust Company as Custodian FBO Nilesh Patel" | | 150,000.00 | 26,123.30 | - | 123,876.70 |
| Patel, Nilesh (Trust)"Nilesh Patel Revocable Trust " | | 500,000.00 | 105,166.66 | - | 394,833.34 |
| Patel, Nita M. | | 200,000.00 | 37,314.53 | - | 162,685.47 |
| Patel, Piyush | | 75,000.00 | 6,138.75 | - | 68,861.25 |
| Patel, Prashant | | 200,000.00 | 31,643.76 | - | 168,356.24 |
| Patel, Pravin & Vaishali | | 150,000.00 | 23,570.58 | - | 126,429.42 |
| Patel, Pravin (IRA)"Midland Trust Company as Custodian FBO Pravin Patel" | | 150,000.00 | 17,623.30 | - | 132,376.70 |
| Patel, Purvi (LLC)"JIYA JHIL LLC" | | 50,000.00 | 3,804.83 | - | 46,195.17 |
| Patel, Rakesh & Varsha | | 455,119.75 | 146,519.88 | 17,243.75 | 291,356.12 |
| Patel, Ramesh V. | | 351,000.00 | 60,327.04 | - | 290,672.96 |
| Patel, Rupesh | | 300,000.00 | 37,085.04 | - | 262,914.96 |
| Patel, Shailesh | | 50,000.00 | 11,066.64 | - | 38,933.36 |
| Patel, Subhir | | 50,000.00 | - | - | 50,000.00 |
| Patel, Suketu | | 400,000.00 | 66,657.53 | - | 333,342.47 |
| Patel, Suketu (MT)"Madison Trust Company FBO Suketu Patel IRA" | | 900,000.00 | 124,380.90 | - | 775,619.10 |
| Patel, Sunil (MT) "Madison Trust Company FBO Sunil Patel" | | 200,000.00 | 23,230.16 | - | 176,769.84 |
| Patel, Suresh P. | | 250,000.00 | 35,051.71 | - | 214,948.29 |
| Patel, Tejas | | 35,000.00 | 4,607.50 | - | 30,392.50 |
| Patel, Tushar | | 150,000.00 | 9,182.76 | - | 140,817.24 |
| Patel, Uttsav (LLC)"UK Management and Investment Group" | | 1,000,000.00 | 127,232.94 | - | 872,767.06 |
| Patel, Vinod | | 50,000.00 | 12,283.32 | - | 37,716.68 |
| Patel, Vivek (LLC)"Vasa Properties LLC" | | 250,000.00 | 10,319.53 | - | 239,680.47 |
| Pathak, Nitin & Dikshit, Pallavi | | 200,000.00 | 19,183.50 | - | 180,816.50 |
| Patil, Harish (MT) "Madison Trust Company FBO Harish Patil" | | 300,000.00 | 50,739.80 | - | 249,260.20 |
| Patil, Narappagoupa (Trust)"The Patil Family Revocable Trust" | | 65,000.00 | 18,768.75 | - | 46,231.25 |
| Patil, Rajeev (MT) "Madison Trust Company Custodian FBO Rajeev Patil" | | 200,000.00 | 20,282.84 | - | 179,717.16 |
| Patil, Sangita (MT) "Madison Trust Company Custodian FBO Sangita Patil" | | 50,000.00 | 5,070.90 | - | 44,929.10 |
| Patil, Shreemanth | | 50,000.00 | 13,383.28 | - | 36,616.72 |
| Patnaik, Animesh | Yes | 204,231.66 | 293,617.99 | - | - |
| Patwardhan, Tushar | | 50,000.00 | 11,874.95 | - | 38,125.05 |
| Paul, Alok  (MT)    "Madison Trust Company FBO Alok Paul" | | 45,000.00 | 8,292.40 | - | 36,707.60 |
| Paul, Alok  (Personal) | | 105,000.00 | 23,213.40 | - | 81,786.60 |
| Paulraj, Dominic & Dominic, Flora | | 500,000.00 | 122,340.27 | - | 377,659.73 |
| Peacock, Michael J. (MT)"Madison Company FBO Michael J Peacock" | | 150,000.00 | 16,191.90 | - | 133,808.10 |
| Pedone, John P. | | 50,000.00 | 1,705.50 | - | 48,294.50 |
| Peerman, Michael (MT)"Madison Trust Company FBO Michael Peerman" | | 150,000.00 | 27,277.50 | - | 122,722.50 |
| Peesapati, Rangachari | | 100,000.00 | 15,558.96 | 30,120.71 | 54,320.33 |
| Peesapati, Rangachari"IRA Services Trust Co. CFBO: Rangachari Peesapati, IRA" | | 150,000.00 | 29,095.96 | - | 120,904.04 |
| Pehlman, Kevin | | 150,000.00 | 17,441.90 | - | 132,558.10 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Pelc, Christopher F. | | 250,000.00 | 29,509.07 | - | 220,490.93 |
| Pence, William (LLC)"B&C Assets Group, LLC" | | 150,000.00 | 7,623.30 | - | 142,376.70 |
| Peng, Eric Min-Yuan | | 300,000.00 | 69,250.00 | - | 230,750.00 |
| Peng, Liang (Trust)    "LP Investment Trust on Behalf of Liang Peng" | | 150,000.00 | 27,394.56 | - | 122,605.44 |
| Penmetcha, Vinay (IRA)"*Pacific Premier Trustas Custodian IRA FBO Vinay Penmetcha*" | | 80,000.00 | 11,039.36 | - | 68,960.64 |
| Perelman, Charles R. | | 50,000.00 | 2,631.52 | - | 47,368.48 |
| Permenter, Brian & Butvick, Bryan "B Squared, LLC" | | 200,000.00 | 43,366.63 | - | 156,633.37 |
| Permenter, Brian & Mary Catherine | | 150,000.00 | 24,443.88 | - | 125,556.12 |
| Pernal, Edward A. Jr. & Melodee L. | | 50,000.00 | 5,356.24 | - | 44,643.76 |
| Perry, John A. Jr. | | 403,855.57 | 71,577.69 | 114,734.57 | 217,543.32 |
| Perry, Peter J. (LLC)"Perry Family Farms, LLC" | | 700,000.00 | 53,643.98 | - | 646,356.02 |
| Persaud, Compton | | 100,000.00 | 13,043.24 | - | 86,956.76 |
| Persaud, Shastri | | 500,000.00 | 123,162.26 | - | 376,837.74 |
| Persaud, Sumintra (IRA)"Midland Trust Company As Custodian FBO Sumintra Persaud" | | 68,621.33 | 8,765.60 | - | 59,855.73 |
| Peters, Donna | Yes | 121,000.00 | 145,306.08 | - | - |
| Peters, Donna"Madison Trust Company Custodian FBO Donna J. Peters" | | 50,000.00 | 11,999.90 | - | 38,000.10 |
| Peterson, Scott (MT)"Madison Trust Company FBO Scott Peterson" | | 299,990.00 | 44,882.15 | - | 255,107.85 |
| Petrie, Li | | 1,250,000.00 | 202,288.71 | - | 1,047,711.29 |
| Phipps, Whitney Leigh | | 200,000.00 | 19,676.88 | - | 180,323.12 |
| Pierre-Louis, James | | 225,000.00 | 38,664.19 | - | 186,335.81 |
| Pilania, Pramod (IRA)"Strata Trust Company Custodian FBO Pramod Pilania IRA" | | 400,000.00 | 32,082.18 | - | 367,917.82 |
| Pingili, Ratnakar R. & Gunna, Harisha R. | | 50,000.00 | 4,779.48 | - | 45,220.52 |
| Pinto, Glenn | | 100,000.00 | 7,022.84 | | 92,977.16 |
| Pinto, Glenn (Trust)"Pinto Family Trust Dated November 28, 2005" | | 50,000.00 | 7,541.16 | | 42,458.84 |
| Pisarski, Gregory P. & Rita K. | | 100,000.00 | 8,239.77 | - | 91,760.23 |
| Pizzo, Anthony J. | | 50,000.00 | 3,922.62 | - | 46,077.38 |
| Poe, Philip & Slesaransky-Poe, Graciela | | 310,000.00 | 67,018.37 | - | 242,981.63 |
| Pohl, Robert K. Jr. | | 150,000.00 | 8,873.30 | - | 141,126.70 |
| Polchin, David M. | | 150,000.00 | 13,609.70 | - | 136,390.30 |
| Pollum, Richard (MT) "Madison Trust Company FBO Richard Pollum Roth IRA" | | 123,845.89 | 5,329.90 | - | 118,515.99 |
| Pollum, Richard (MT) "Madison Trust Company FBO Richard Pollum Trad IRA" | | 84,000.00 | 3,615.05 | - | 80,384.95 |
| Pomper, Stuart | Yes | 89,921.00 | 146,268.21 | - | - |
| Pond, David W. (IRA)"CamaPlan FBO David W. Pond  IRA" | | 200,000.00 | 23,460.32 | - | 176,539.68 |
| Pontecorvo, David & Barbara | | 100,000.00 | 15,230.02 | - | 84,769.98 |
| Pontecorvo-Fegley, Gina | | 25,000.00 | 3,207.15 | - | 21,792.85 |
| Pooler, Sarah L. | | 121,000.00 | 6,480.93 | - | 114,519.07 |
| Pope, Walter Scott (IRA)"Quest Trust Company FBO Walter Scott Pope" | | 150,000.00 | 15,328.80 | - | 134,671.20 |
| Pothukuchi, Srinivas & Leelavathi | | 50,000.00 | 6,899.62 | - | 43,100.38 |
| Pothukuchi, Venkateswara Prasad  &  Gangaraju, Prasanna | | 50,000.00 | 6,885.92 | - | 43,114.08 |
| Pothukuchi, Vijay | | 50,000.00 | 6,913.32 | - | 43,086.68 |
| Prakash, Renu (MT) "Madison Trust Company FBO Renu Prakash" | | 299,348.00 | 75,001.12 | - | 224,346.88 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Prasad, Elizabeth L. | | 350,000.00 | 85,045.72 | - | 264,954.28 |
| Prasad, Elizabeth L. (MT)    "Madison Trust Company FBO  Elizabeth Prasad" | | 314,490.75 | 60,042.47 | - | 254,448.28 |
| Prestandrea, Anthony | Yes | 44,275.00 | 17,425.80 | - | 26,849.20 |
| Pride, Broderick L. (LLC)"Luz Ruta, LLC" | Yes | 236,000.00 | 253,845.48 | - | - |
| Prisinzano, Joseph | | 154,986.30 | 24,797.76 | 54,986.30 | 75,202.24 |
| Priyadarshi, Anumeet | | 365,809.11 | 79,486.48 | 90,606.29 | 195,716.34 |
| Provence, Daniel (IRA)"Daniel J. Provence IRA TD Ameritrade Clearing, Custodian" | | 100,000.00 | 8,048.06 | - | 91,951.94 |
| Provence, Louise | | 150,000.00 | 13,656.44 | - | 136,343.56 |
| Pulavarthi, Venkata (LLC)"T&Y Investments LLC" | | 25,000.00 | 3,012.52 | - | 21,987.48 |
| Purdy, Douglass | | 150,000.00 | 19,037.70 | - | 130,962.30 |
| Pureti, Chakravarthi | | 500,000.00 | 48,945.12 | - | 451,054.88 |
| Qiang, Qiang | | 541,500.00 | 107,834.87 | - | 433,665.13 |
| Qin, Xiaokui"Atlantic International Investments LLC" | | 150,000.00 | 36,000.00 | - | 114,000.00 |
| Qiu, Xiaoguang Edward | Yes | 150,000.00 | 30,164.40 | - | 119,835.60 |
| Qiu, Xiaoguang Edward (MT)"Madison Trust Company FBO Xiaoguang Edward Qiu" | Yes | 50,000.00 | 10,705.58 | - | 39,294.42 |
| Quader, Syed (LLC)"Quader Holdings LLC" | | 609,826.90 | 134,800.14 | 191,226.90 | 283,799.86 |
| Quan, Benito | | 302,816.75 | 78,146.13 | 32,291.75 | 192,378.87 |
| Quigley, Edward (MT)"Madison Trust Company FBO Edward Quigley" | | 500,000.00 | 52,123.11 | - | 447,876.89 |
| Quigley, Sean | | 500,000.00 | 48,784.05 | - | 451,215.95 |
| Raasch, Shannon A. | | 180,000.00 | 13,795.92 | - | 166,204.08 |
| Rabinovich, Jason (LLC)"JJ US INVESTMENTS LLC" | | 200,000.00 | 30,109.64 | - | 169,890.36 |
| Rabinowitz, Rica | | 100,000.00 | 8,350.76 | - | 91,649.24 |
| Rachoor, Hanuman (IRA) "Gold Star Trust FBO: Hanuman IRA" | | 150,000.00 | 10,868.80 | - | 139,131.20 |
| Radhakrishan, Gurusubrahmaniyan | | 50,000.00 | 9,843.71 | - | 40,156.29 |
| Radici, Richard and Elena | Yes | 200,000.00 | 265,293.15 | - | - |
| Rahman, Abdul | | 122,000.00 | - | - | 122,000.00 |
| Rahmey, Jack  (MT)"Madison Trust Company FBO Jack Rahmey IRA" | | 680,964.36 | 116,917.23 | - | 564,047.13 |
| Raj Pandya | Yes | 176,584.60 | 247,903.60 | - | - |
| Rajakannan, Ramagowder | | 265,951.98 | 47,363.39 | 27,401.98 | 191,186.61 |
| Rajpal, Harcharan Singh | | 150,000.00 | 6,586.83 | - | 143,413.17 |
| Ramamurthy, Chandrasekar | | 25,000.00 | 2,893.24 | - | 22,106.76 |
| Raman, Suresh | | 100,000.00 | 14,714.61 | - | 85,285.39 |
| Ramchandani,Bharat | | 200,000.00 | 44,713.72 | - | 155,286.28 |
| Ramesh,  Kallambella (MT)    "Madison Trust Company FBO Kallambella Ramesh" | | 300,000.00 | 52,894.56 | - | 247,105.44 |
| Ramesh, Nirmala (MT) "Madison Trust Company FBO Nirmala Ramesh IRA" | Yes | 20,000.00 | 21,756.52 | - | - |
| Ramesh, Numala (Trust)"The Nina Meagan Ramesh Irrevocable Special Needs Trust" | | 300,000.00 | 55,064.64 | - | 244,935.36 |
| Ramieri, Joseph | Yes | 641,773.54 | 744,206.82 | - | - |
| Ramieri, Terri | | 500,000.00 | 56,906.51 | - | 443,093.49 |
| Ramirez, Beatrice | | 171,585.18 | 95,994.02 | 45,915.78 | 29,675.38 |
| Rana, Kuntesh | Yes | 50,000.00 | 9,358.54 | - | 40,641.46 |
| Rana, Vishal (LLC) "PAR-VID PROPERTY LLC" | | 50,000.00 | 3,981.23 | - | 46,018.77 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Randeria, Yogesh | | 500,000.00 | 84,390.37 | - | 415,609.63 |
| Rangavajjula, Sadasivam & Girija | | 50,000.00 | 6,913.32 | - | 43,086.68 |
| Rao, Peter | | 149,955.00 | 29,610.98 | 15,927.40 | 104,416.62 |
| Rao, Umesh & Pushpa | | 200,000.00 | 23,881.28 | - | 176,118.72 |
| Rao, Umesh S. (MT)"Madison Trust Company Custodian FBO Umesh S. Rao" | | 110,135.00 | 18,522.38 | - | 91,612.62 |
| Rao, Umesh S. and Pushpa *"The Rao-Satyanarayana Family Revocable Trust"* | | 200,000.00 | 39,602.44 | - | 160,397.56 |
| Rastogi, Sanjay (LLC)"SP Square Property, LLC" | | 300,000.00 | 39,061.61 | - | 260,938.39 |
| Raval, Natvarlal N. | | 120,000.00 | 5,460.32 | - | 114,539.68 |
| Ravicz, Tanyo & Martina | | 250,000.00 | 22,927.86 | - | 227,072.14 |
| Ravilla, Rajashekar R. (Trust)"The Rajashekar R. Ravilla Living Trust" | | 500,000.00 | 27,328.85 | - | 472,671.15 |
| Ray, James (Trust)"ArgoRay Trust Dated June 11, 2015" | | 50,000.00 | 4,832.20 | - | 45,167.80 |
| Rebello, Sam | | 100,000.00 | 25,209.47 | - | 74,790.53 |
| Rebello, Sam (MT)"Madison Trust Company Custodian FBO Sam Rebello IRA" | | 624,289.10 | 117,050.68 | 157,889.10 | 349,349.32 |
| Reddy, Laxmi B. | | 50,000.00 | 8,422.62 | - | 41,577.38 |
| Reddy, Mahender  (LLC)"Reddy Family LLC" | | 1,300,000.00 | 99,826.63 | - | 1,200,173.37 |
| Reddy, Pallavi Keesara | | 300,000.00 | 22,828.76 | - | 277,171.24 |
| Reddy, Pramati | | 450,000.00 | 18,205.54 | - | 431,794.46 |
| Reddy, Sridath & Kasireddy, Aruna | | 799,400.00 | 126,562.21 | 169,400.00 | 503,437.79 |
| Reddy, Sridath (MT) "Madison Trust Co.FBO Sridath Reddy" | Yes | 60,000.00 | 8,509.64 | - | 51,490.36 |
| Reddy, Srilakshmi (Trust)"Srilakshmi Reddy Trust" | | 150,000.00 | 14,338.44 | - | 135,661.56 |
| Redican, Sean | | 1,405,431.31 | 310,667.30 | 220,112.93 | 874,651.08 |
| Reed, Timothy | | 50,000.00 | 11,066.32 | - | 38,933.68 |
| Reedy, Christian M. DDS | | 750,000.00 | 99,297.96 | - | 650,702.04 |
| Reiss, Sidney & Helen | | 250,000.00 | 12,285.52 | - | 237,714.48 |
| Remennik, Dmitriy& Tsifrina, Yulia | | 1,200,000.00 | 117,936.15 | - | 1,082,063.85 |
| Renda, Denis | | 500,000.00 | 91,603.56 | - | 408,396.44 |
| Rengasamy, Krishnamoorthy & Krishnamoorthy, Vijayalakshmi | | 250,000.00 | 40,082.82 | - | 209,917.18 |
| Reoutt, Oleg & Lydia | | 100,000.00 | 3,903.27 | - | 96,096.73 |
| Resen, David E. (IRA)"iPlan group August for custodian FBO David E. Resen SEP IRA" | | 200,000.00 | 21,995.45 | - | 178,004.55 |
| Reshamdalal, Kulin | | 100,000.00 | 10,295.92 | - | 89,704.08 |
| Resnick, Jeffrey | | 361,679.20 | 151,009.61 | 84,780.20 | 125,889.39 |
| Ressler, Shlomo | | 100,000.00 | 12,801.35 | - | 87,198.65 |
| Revuri, Surendar R. | | 180,000.00 | 11,221.63 | - | 168,778.37 |
| Rexrode, Kevin (Part 1) (Trust) "IRAR FBO M. Kevin Rexrode" | | 400,000.00 | 89,383.41 | - | 310,616.59 |
| Rice, David L. & Makayla A. | | 300,000.00 | 43,732.85 | - | 256,267.15 |
| Rice, Theodore (IRA)"Midland Trust Company As Custodian FBO Theodore Ric" | | 51,000.00 | 5,473.54 | - | 45,526.46 |
| Rick Aron | Yes | 176,584.60 | 305,680.04 | - | - |
| Rietsch, Manfred (Corp)"Rietsch Enterprises Inc" | | 1,000,000.00 | 35,525.08 | - | 964,474.92 |
| Ringer, Adam | Yes | 75,000.00 | 11,422.62 | - | 63,577.38 |
| Rios, Ramon | | 50,000.00 | 9,282.88 | - | 40,717.12 |
| Rivera, Tony | | 1,000,000.00 | 199,116.41 | - | 800,883.59 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Riviello, John | | 50,000.00 | 7,050.32 | - | 42,949.68 |
| Rizzo, John | | 2,069,360.00 | 253,064.34 | - | 1,816,295.66 |
| Roach, James | | 50,000.00 | 4,004.82 | - | 45,995.18 |
| Roberts, William L. | | 503,523.05 | 38,060.81 | - | 465,462.24 |
| Robertson, Wayne | | 150,000.00 | 23,718.54 | - | 126,281.46 |
| Robertson, Wayne  (MT)"Madison Trust Company FBO Wayne Robertson" | | 200,000.00 | 42,699.93 | - | 157,300.07 |
| Roddy, Robert E. & Bernadette C. | | 750,000.00 | 76,061.68 | - | 673,938.32 |
| Rodger, Derek & Michele M. | | 250,000.00 | 14,788.78 | - | 235,211.22 |
| Rodriguez, Eduardo (MT) "Madison Trust Co. FBO Eduardo Rodriguez" | | 1,000,000.00 | 197,145.99 | - | 802,854.01 |
| Roland, Gregory | | 150,000.00 | 18,198.70 | - | 131,801.30 |
| Roll, Eugene (IRA)"Midland Trust Company as Custodian FBO Eugene Roll" | | 54,365.00 | 7,320.12 | - | 47,044.88 |
| Roman, John (MT)    "Madison Trust Company FBO John Roman IRA" | | 150,000.00 | 27,493.20 | - | 122,506.80 |
| Roman, Lisa (MT)    "Madison Trust Company FBO Lisa Roman IRA" | | 150,000.00 | 27,493.20 | - | 122,506.80 |
| Roman, Mark | | 58,227.72 | 11,160.29 | - | 47,067.43 |
| Rominu, Mina (Trust) "ANJMMT Trust" | | 300,000.00 | 15,246.57 | - | 284,753.43 |
| Ronald Dale Ely & Kathleen Ann Ely, trustees of the Ely Family 2018 Trust, dated May 17, 2018 | | 350,000.00 | 64,200.70 | - | 285,799.30 |
| Ronty Jr., Paul (MT Part 1)"Madison Trust Company FBO Paul Ronty, Jr. IRA" | | 300,000.00 | 69,516.62 | - | 230,483.38 |
| Roper, Sherwood & Michelle (IRA)"OziDawg LLC" | | 225,000.00 | 11,100.92 | - | 213,899.08 |
| Roper, Sherwood & Michelle (Trust)"Joint Trust of Sherwood R. & Michelle H. Roper" | | 400,000.00 | 46,317.32 | - | 353,682.68 |
| Rose, Michael (Madison T.) | | 400,000.00 | 70,014.76 | 35,874.00 | 294,111.24 |
| Rose, Michael T. | | 722,287.91 | 336,402.64 | 29,486.19 | 356,399.08 |
| Rose, Peter F. & Edith L. | | 150,000.00 | 8,239.80 | - | 141,760.20 |
| Rosen, David (IRA) "Midland Trust Company as Custodian FBO  David Rosen" | | 150,000.00 | 23,733.00 | - | 126,267.00 |
| Rosenthal, Craig P. | | 200,000.00 | 38,936.10 | - | 161,063.90 |
| Rotella, John (LLC) "JAR Family Group, LLC" | | 50,000.00 | 9,758.33 | - | 40,241.67 |
| Roth, Joel ; Madison M1609041  IRA | | 413,807.42 | 98,354.32 | 98,510.67 | 216,942.43 |
| Roth, Joel A | | 103,133.58 | 27,489.33 | 26,830.58 | 48,813.67 |
| Roth, Joel A. & Jayne S. Revocable Trust | | 228,585.13 | 46,457.72 | 89,940.00 | 92,187.41 |
| Roth, Joel A. Revoc.Trust Amended 2/18/15 | | 1,077,940.00 | 184,107.90 | 55,285.13 | 838,546.97 |
| Rowan, Edward Jr. (LP)"Rowan Capital Management, LP" | | 150,000.00 | 22,193.88 | - | 127,806.12 |
| Rudich, Roger D. (Trust) "Roger D. Rudich LTD. Profit Sharing Plan" | | 400,000.00 | 65,130.46 | - | 334,869.54 |
| Ruehle, Darryl D. | | 250,000.00 | 30,993.20 | - | 219,006.80 |
| Ruffino, Jean | Yes | 63,000.00 | 94,772.71 | - | - |
| Ruffino, Raymond | Yes | 232,000.00 | 176,544.11 | 32,000.00 | 23,455.89 |
| Rush, Donna | | 100,000.00 | 6,134.71 | - | 93,865.29 |
| Russell, Clayton B. | | 50,000.00 | 3,365.08 | - | 46,634.92 |
| Russo, Martin J. | | 150,000.00 | 21,274.10 | - | 128,725.90 |
| Russo, Martin J. (IRA)    "Equity Trust Company Custodian FBO Martin J. Russo, IRA" | | 150,000.00 | 27,221.94 | - | 122,778.06 |
| Rutherford, Charles E. (Corp)"University Technologies, Inc" | | 150,000.00 | 27,045.00 | - | 122,955.00 |
| Rutherford, Charles E. MD | | 150,000.00 | 24,284.30 | - | 125,715.70 |
| Rutkowski, John (IRA)"Equity Trust Company Custodian FBO John Rutkowski" | | 850,000.00 | 77,121.06 | - | 772,878.94 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Rutkowski, John (MT)"Madison Trust Company FBO John Rutkowski" | | 305,000.00 | 39,044.21 | - | 265,955.79 |
| Rutkowski, Patricia (MT)"Madison Trust Company FBO Patricia Rutkowski IRA" | | 208,000.00 | 26,170.92 | - | 181,829.08 |
| Rutter, Stephen (MT)"Madison Trust Company FBO Stephen Rutter" | | 303,352.64 | 182,654.80 | 66,633.04 | 54,064.80 |
| Sacco, Vanessa | | 333,886.30 | 64,419.79 | 28,886.30 | 240,580.21 |
| Saccoh, Mohamed (LLC)"Paragon Management , LLC" | | 630,260.93 | 125,971.95 | 68,260.93 | 436,028.05 |
| Sachetta, Charles | | 50,000.00 | 3,422.62 | | 46,577.38 |
| Sachs, David H. | | 50,000.00 | 6,549.32 | | 43,450.68 |
| Sachs, David H."David and Kristina Sachs NRIA Investment" | | 50,000.00 | 7,291.10 | | 42,708.90 |
| Sacknowitz, Jane | | 250,000.00 | 24,875.74 | | 225,124.26 |
| Sacus, Blasé | Yes | 356,847.48 | 457,525.93 | 42,069.66 | - |
| Sadej, Paul J. Jr. | | 80,694.79 | 12,911.20 | 25,694.79 | 42,088.80 |
| Sadej, Phyllis | | 90,294.79 | 29,302.77 | 30,294.79 | 30,697.23 |
| Sadhu, Phanindar Reddy | | 100,000.00 | 9,657.60 | - | 90,342.40 |
| Sadtler, Cynthia B. & Robert A. JTWROS | | 575,000.00 | 72,180.44 | - | 502,819.56 |
| Safarian, Adrineh (MT)"Madison Trust Company FBO  Adrineh Safarian" | | 96,000.00 | 14,126.00 | - | 81,874.00 |
| Sagar, Ajay | | 350,000.00 | 48,959.82 | - | 301,040.18 |
| Salese, Thomas P. | | 375,000.00 | 59,666.24 | - | 315,333.76 |
| Salhotra, Sandeep | | 50,000.00 | 13,763.04 | - | 36,236.96 |
| Salomone, Steven | | 250,000.00 | 24,368.69 | - | 225,631.31 |
| Salyani, Mohammed & Azmina | | 150,000.00 | 26,062.88 | - | 123,937.12 |
| Sames, Witold & Frances | | 50,000.00 | 9,734.11 | - | 40,265.89 |
| Samuels, Charlene | | 150,000.00 | 19,736.40 | - | 130,263.60 |
| Samuels, Ivan | | 500,000.00 | 55,233.79 | - | 444,766.21 |
| Samuelsson, Gunilla (Corp)"L C Incorporated" | | 350,000.00 | 45,760.21 | - | 304,239.79 |
| Samwaru, Suresh | | 300,000.00 | 22,993.14 | - | 277,006.86 |
| Samyn, Jean-Luc (LLC)"Samyn Holdings LLC" | | 150,000.00 | 21,873.30 | - | 128,126.70 |
| Sanchez, Eugenio,  (Trust)"Margarita Sanchez Credit Shelter Trust, August 31, 2012" | | 350,000.00 | 44,708.95 | - | 305,291.05 |
| Sanchez, Michelle | | 100,000.00 | 17,000.00 | 27,959.73 | 55,040.27 |
| Sandhu, Jagwinder | | 50,000.00 | 8,156.18 | - | 41,843.82 |
| Sandhu, Prithpal | | 200,000.00 | 13,771.68 | - | 186,228.32 |
| Sanfilippo, Joseph | | 100,000.00 | 11,701.73 | - | 88,298.27 |
| Sankar, Sangeeta | | 300,000.00 | 61,631.43 | - | 238,368.57 |
| Sankaran, Sankara N. (IRA)"Midland Trust Company As Custodian FBO Sankara N. Sankaran" | | 50,000.00 | 3,258.22 | - | 46,741.78 |
| Santayana, Stacy | | 150,000.00 | 5,986.40 | - | 144,013.60 |
| Santee, David (LLC);"My True North, LLC" | | 150,000.00 | 17,400.80 | - | 132,599.20 |
| Sasson, Isaac (MT) "Madison Trust Company FBO Isaac Sasson" | | 50,000.00 | 7,927.44 | - | 42,072.56 |
| Satherlie, Andrew (MT)"Madison Trust Company FBO Andrew Satherlie" | | 100,000.00 | 12,945.27 | - | 87,054.73 |
| Sattar, Arif | | 231,318.22 | 112,208.35 | 19,268.22 | 99,841.65 |
| Satyanarayana, Vijay & Rastogi, Shalu | | 200,000.00 | 29,933.82 | - | 170,066.18 |
| Saulino, Theodore  (MT)"Madison Trust Company Custodian FBO Theodore Saulino" | | 592,500.00 | 144,134.50 | - | 448,365.50 |
| Saulino, Theodore  (Personal) | | 1,964,200.93 | 63,013.90 | 326,699.91 | 1,574,487.12 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Savage, Steven (MT) "Madison Trust Company FBO Steven Savage" | | 250,000.00 | 18,955.44 | - | 231,044.56 |
| Savage, Tammy L (MT) "Madison Trust Company FBO Tammy L Savage" | | 450,000.00 | 59,578.83 | - | 390,421.17 |
| Scarola, John D. | | 150,000.00 | 23,648.44 | - | 126,351.56 |
| Schaaf, James A. (Trust) "Schaaf Family Trust, UDA 2/16/2015" | | 300,000.00 | 15,254.57 | - | 284,745.43 |
| Schaffer, Grace | Yes | 390,506.04 | 251,662.52 | 142,700.40 | - |
| Schaltenbrand, Brett (Trust) "EPG Halo Trust" | | 500,000.00 | 62,032.11 | - | 437,967.89 |
| Schapira, Steven | | 150,000.00 | 8,980.16 | - | 141,019.84 |
| Schechter, Asher & Rachel "JTWRO" | | 200,000.00 | 33,953.52 | - | 166,046.48 |
| Schechter, Asher (Corp) "Congregation OHR Moshe, Inc." | | 288,048.66 | 43,687.28 | 88,848.66 | 155,512.72 |
| Scheinfeld, Meir | | 260,738.88 | 79,278.84 | 77,140.88 | 104,319.16 |
| Schirm, Charles D. | | 900,000.00 | 99,764.50 | - | 800,235.50 |
| Schlegel, Leonard D. | | 200,000.00 | 24,429.18 | - | 175,570.82 |
| Schlossberg, Robert (LLC) "KIS Associates LLC" | | 50,000.00 | 2,930.39 | - | 47,069.61 |
| Schlossberg, Robert (Trust) "Robert Schlossberg Retirement Plan" | | 100,000.00 | 6,315.55 | - | 93,684.45 |
| Scholl, Hal (IRA) "Midland Trust Company as Custodian FBO Hal Scholl IRA" | | 150,000.00 | 23,791.10 | - | 126,208.90 |
| Schoonmaker, Neill | | 50,000.00 | 8,180.84 | - | 41,819.16 |
| Schrandt, John (Trust) "The John A. Schrandt Living Trust" | | 50,000.00 | 4,930.84 | - | 45,069.16 |
| Schumaker, Bryan (Trust) "The Bryan and Lori Schumaker Revocable Living Trust Agreement March 4, 2016" | | 457,624.02 | 113,061.47 | 204,806.80 | 139,755.75 |
| Schuster, Richard | | 145,734.48 | 18,071.10 | - | 127,663.38 |
| Schwartz, Arthur | | 116,455.44 | 22,320.58 | - | 94,134.86 |
| Scotto, Thomas   "Mainstar Trust, Custodian FBO Thomas Scotto, IRA" | | 50,000.00 | 12,833.25 | - | 37,166.75 |
| Scotto, Thomas   "For the Benefit of Melanie Scott, Daughter" | | 158,846.34 | 30,038.39 | 34,943.52 | 93,864.43 |
| Sems, Richard | Yes | 101,964.30 | 27,846.96 | 71,111.97 | 3,005.37 |
| Sems, Richard (401K) "Hiltruat Brigite 401K Plan" | Yes | 105,950.67 | 18,011.67 | - | 87,939.00 |
| Sender, Wolf | | 200,000.00 | 11,831.06 | - | 188,168.94 |
| Sengupta, Chandan | | 450,000.00 | 75,147.96 | - | 374,852.04 |
| Setton, Charlotte (LLC) "HJS Equities LLC" | | 60,000.00 | 8,873.52 | - | 51,126.48 |
| Setty, Kantharaju V. | | 450,000.00 | 49,037.67 | - | 400,962.33 |
| Sgobbo, Michael J. | | 50,000.00 | 2,156.18 | - | 47,843.82 |
| Shafer, Chas | Yes | 104,600.00 | 135,481.36 | - | - |
| Shah, Akik | Yes | 200,000.00 | 20,986.25 | - | 179,013.75 |
| Shah, Akik (MT) "Madison Trust Company FBO Akik Shah" | Yes | 200,000.00 | 30,328.75 | - | 169,671.25 |
| Shah, Ankit R. & Rajni K. (JTWROS) | | 200,000.00 | 20,117.90 | - | 179,882.10 |
| Shah, Ankur | | 639,763.58 | 197,293.93 | 266,969.14 | 175,500.51 |
| Shah, Ankur (LLC)    "Orion Equity, LLC" | | 530,000.00 | 88,321.20 | - | 441,678.80 |
| Shah, Ankur & Sejal et al. "Smart Capital, LLC" | | 600,000.00 | 133,966.69 | - | 466,033.31 |
| Shah, Ankur (IRA) "Equity Trust Company Custodian FBO Ankur Shah IRA" | | 106,847.66 | 17,095.68 | - | 89,751.98 |
| Shah, Apurva | | 200,000.00 | 26,320.90 | - | 173,679.10 |
| Shah, Bela | | 488,326.87 | 149,023.27 | 43,300.87 | 296,002.73 |
| Shah, Bhavikkumar Upendra | | 75,000.00 | 10,472.65 | - | 64,527.35 |
| Shah, Chandresh | | 690,440.25 | 116,723.08 | 193,440.25 | 380,276.92 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Shah, Chetna | | 581,000.00 | 152,510.85 | - | 428,489.15 |
| Shah, Chirag N. | | 100,000.00 | 14,411.00 | - | 85,589.00 |
| Shah, Dharmesh | Yes | 55,000.00 | 79,790.68 | - | - |
| Shah, Dhaval    "Anekant Group, LLC" | | 500,000.00 | 106,249.95 | - | 393,750.05 |
| Shah, Dhawal | | 50,000.00 | 6,107.38 | - | 43,892.62 |
| Shah, Dipen | | 100,000.00 | 10,460.32 | - | 89,539.68 |
| Shah, Dipen (MT)"Madison Trust Company FBO Dipen Shah IRA" | | 150,000.00 | 22,993.20 | - | 127,006.80 |
| Shah, Gira (MT) "Madison Trust Co.FBO Gira Shah" | | 99,500.00 | 14,057.26 | - | 85,442.74 |
| Shah, Hiten | | 255,267.51 | 194,910.78 | - | 60,356.73 |
| Shah, Jagat | | 25,000.00 | 3,394.93 | - | 21,605.07 |
| Shah, Jatin M. & Kailas J. | | 350,000.00 | 38,024.19 | - | 311,975.81 |
| Shah, Jigar | | 100,000.00 | 14,577.61 | - | 85,422.39 |
| Shah, KamleshWROS: Sonal Shah | | 450,000.00 | 57,232.48 | - | 392,767.52 |
| Shah, Kanubhai H. | | 100,000.00 | 16,381.27 | - | 83,618.73 |
| Shah, Kavita | | 1,050,000.00 | 137,669.92 | - | 912,330.08 |
| Shah, Kiran | | 150,000.00 | 29,037.70 | - | 120,962.30 |
| Shah, Mehul & DevangiJTWROS | | 199,384.66 | 43,843.38 | 36,384.66 | 119,156.62 |
| Shah, Nayana (MT)"Madison Trust Company FBO Nayana Shah" | | 50,003.19 | 4,878.39 | - | 45,124.80 |
| Shah, Nayanesh & Reena | | 200,000.00 | 29,591.84 | - | 170,408.16 |
| Shah, Nimisha | | 50,000.00 | 5,929.28 | - | 44,070.72 |
| Shah, Nirali | | 10,000.00 | 1,888.06 | - | 8,111.94 |
| Shah, Parimal  (MT/Rollover)    "Madison Trust Company FBO Parimal Shah" | | 550,921.76 | 202,629.13 | 119,521.39 | 228,771.24 |
| Shah, Parimal (Trust)"Parimal K. Shah Living Trust Dated 12/15/16" | | 287,322.76 | 70,949.49 | - | 216,373.27 |
| Shah, Parul V. | | 1,000,000.00 | 131,418.83 | - | 868,581.17 |
| Shah, Prashant  (MT)"Madison Trust Company FBO Prashant Shah" Roth | Yes | 416,000.00 | 100,595.98 | - | 315,404.02 |
| Shah, Prashant  (MT)"Madison Trust Company FBO Prashant Shah" Traditional | Yes | $118,589.57 | 32,128.00 | 8,089.57 | 78,372.00 |
| Shah, Prashant  (Personal) | Yes | 954,091.68 | 227,488.13 | 23,256.68 | 703,346.87 |
| Shah, Rajesh | | 50,000.00 | 6,189.58 | - | 43,810.42 |
| Shah, Rajni & Shobhana (JTWROS) | | 400,000.00 | 49,652.67 | - | 350,347.33 |
| Shah, Rupal | | 150,000.00 | 17,483.00 | - | 132,517.00 |
| Shah, Sanjay M. | | 50,000.00 | 6,189.58 | - | 43,810.42 |
| Shah, Santosh | | 50,000.00 | 6,881.52 | - | 43,118.48 |
| Shah, Shailesh (IRA)"Midland Trust Company as Custodian FBO Shailesh Shah" | | 50,000.00 | 2,172.62 | - | 47,827.38 |
| Shah, Sovrin M.JTWROS with Ami M. Desai | | 100,000.00 | 14,295.92 | - | 85,704.08 |
| Shah, Sudhir A. | | 600,000.00 | 71,669.84 | - | 528,330.16 |
| Shah, Sushant | | 50,000.00 | 6,203.28 | - | 43,796.72 |
| Shah, Vinay | | 1,444,285.15 | 283,744.92 | 148,733.23 | 1,011,807.00 |
| Shakhnovsky, Steven | | 250,000.00 | 32,893.71 | - | 217,106.29 |
| Shalaby, Ehab | | 1,500,001.00 | 183,844.79 | - | 1,316,156.21 |
| Shapiro, Alexander & Kogan, Bella | | 360,000.00 | 38,277.61 | - | 321,722.39 |
| Shapiro, Barry | | 163,000.00 | 116,961.52 | - | 46,038.48 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Shapiro, Denis (LLC)"SIH Core Income 1 LLC" | | 25,000.00 | 3,456.58 | - | 21,543.42 |
| Shapiro, Vladimir & Lyudmila | | 250,000.00 | 21,723.67 | - | 228,276.33 |
| Sharma, Amitabh & Meenu | | 750,000.00 | 29,657.58 | - | 720,342.42 |
| Sharma, Ram Karan | | 150,000.00 | 33,034.30 | - | 116,965.70 |
| Sharma, Ram Karan (MT)"Madison Trust Company FBO Ram Sharman IRA" | | 149,928.00 | 30,848.28 | - | 119,079.72 |
| Sharma, Ramesh | | 150,000.00 | 25,616.50 | - | 124,383.50 |
| Sharma, Rejee | | 50,000.00 | 5,342.54 | | 44,657.46 |
| Sharma, Rejee (Trust)"RSS Holdings Trust" | | 50,000.00 | 3,906.18 | | 46,093.82 |
| Sharma, Suresht Paul | | 400,000.00 | 59,757.99 | - | 340,242.01 |
| Sharma, Vineet | | 460,000.00 | 78,911.77 | - | 381,088.23 |
| Sharma, Vineet (MT) "Madison Trust Company FBO Vineet Sharma IRA" | | 180,000.00 | 32,289.12 | - | 147,710.88 |
| Shashidhar, Ramohalli & Rekha | | 120,000.00 | 20,723.36 | - | 99,276.64 |
| Shashidhar, Ramohalli (IRA)"Equity Trust Company Custodian FBO Ramohalli Shashidhar ROTH IRA" | | 100,000.00 | 19,632.39 | - | 80,367.61 |
| Shashidhar, Ramohalli (IRA)"Equity Trust Company Custodian FBO Ramohalli Shashidhar Traditional IRA" | | 100,000.00 | 19,440.59 | - | 80,559.41 |
| Shaw, Bruce P. (Trust)"The Bruce P. Shaw Trust" | | 300,000.00 | 23,404.09 | - | 276,595.91 |
| Shaw, John L. & Joanna M. (Trust) "The Shaw Trust dated 4-7-92" | | 150,000.00 | 25,095.24 | - | 124,904.76 |
| Shay, Steve (Trust)"Young & Shay Trust" | | 600,640.30 | 239,459.78 | 182,151.74 | 179,028.78 |
| Shaylor, Gordon | | 300,000.00 | 20,427.54 | - | 279,572.46 |
| Shehebar, Isaac (Trust)    "Isaac Shehebar 2008 AIJJ Grantor Retained Annuity Trust" | | 3,000,000.00 | 818,388.06 | - | 2,181,611.94 |
| Shekhadiya, Rajiv | | 75,000.00 | 5,686.65 | - | 69,313.35 |
| Sheng, Huaibao "Cheryl" (MT Part 1)    "Madison Trust Company FBO Huaibao Sheng" | | 300,308.00 | 67,210.16 | - | 233,097.84 |
| Shenoy, Juthika | Yes | 116,000.00 | 190,392.55 | - | - |
| Shenoy, Prashanth (401K)"Marrina INC Defined Benefit Plan" | | 500,000.00 | 64,280.92 | - | 435,719.08 |
| Sheth, Bhavin & Hetal | | 380,000.00 | 54,797.47 | - | 325,202.53 |
| Sheth, Hemal & Parul | | 120,000.00 | 21,986.40 | - | 98,013.60 |
| Sheth, Vaishali | Yes | 300,000.00 | 59,817.18 | - | 240,182.82 |
| Sheth, Vaishali (MT) "Madison Trust Co.FBO Vaishali Sheth" | Yes | 70,151.50 | 10,053.52 | - | 60,097.98 |
| Shields, Michael (MT)"Madison Trust Company FBO Michael Shield" | | 50,000.00 | 3,791.10 | - | 46,208.90 |
| Shifrin, Gregory (LLC)"Annan Water Investment LLC" | | 550,000.00 | 82,510.18 | - | 467,489.82 |
| Shifrin, Gregory (LLC)"Benjik, LLC" | | 750,000.00 | 97,859.60 | - | 652,140.40 |
| Shine, Richard | | 50,000.00 | 7,165.59 | - | 42,834.41 |
| Shipman, Michael D. & Glenna K. | | 150,000.00 | 17,236.40 | - | 132,763.60 |
| Shirzad, Abdul A. | | 900,000.00 | 74,273.88 | - | 825,726.12 |
| Shochat, Barry | | 600,000.00 | 84,883.51 | - | 515,116.49 |
| Shriver, Frank | | 50,000.00 | 3,123.30 | - | 46,876.70 |
| Shulman, Yale | | 200,000.00 | 32,394.90 | - | 167,605.10 |
| Siaw, Caleb (MT)"Madison Trust Company FBO Caleb Siaw Roth IRA" | | 150,000.00 | 18,239.80 | - | 131,760.20 |
| Siaw, Caleb (MT)"Madison Trust Company FBO Caleb Siaw Trad IRA" | | 150,000.00 | 18,075.40 | - | 131,924.60 |
| Sibbison, John H. III (Profit Sharing Plan)"John H. Sibbison III Profit & Pension Sharing Plan" | | 50,000.00 | 1,639.74 | - | 48,360.26 |
| Siddharth Nitin Sheth | | 500,000.00 | - | - | 500,000.00 |
| Siegel, H. Jeffrey | | 92,803.32 | 30,631.89 | 29,803.32 | 32,368.11 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Siegel, Phyllis (Trust)"Phyllis Siegel Trust DTD 8/19/08" | | 592,500.00 | 93,966.77 | - | 498,533.23 |
| Siegel, Saul (Trust)"Saul Siegel Trust DTD 8/19/08" | | 683,961.00 | 109,540.72 | 25,061.00 | 549,359.28 |
| Sikdar, Kabir | | 150,000.00 | 14,611.59 | - | 135,388.41 |
| Simha, Shuba | | 100,000.00 | 11,748.82 | - | 88,251.18 |
| Simon, Jay | | 1,030,497.49 | 253,592.74 | 168,898.49 | 608,006.26 |
| Simon, Joseph P. & Abe-Simon, Yukiko (Trust)"Joseph & Yukiko Simon Trust" | | 50,000.00 | 5,820.05 | - | 44,179.95 |
| Simon, Theodore | | 50,000.00 | 1,766.44 | - | 48,233.56 |
| Singh, Harvinder | | 60,000.00 | 7,997.20 | - | 52,002.80 |
| Singh, Jaspreet | | 50,000.00 | 5,381.52 | - | 44,618.48 |
| Singh, Jaspreet & Kaur, Avneet | | 500,000.00 | 187,137.87 | - | 312,862.13 |
| Singh, Pritraj | | 100,000.00 | 18,598.64 | - | 81,401.36 |
| Singh, Rakesh | | 100,000.00 | 13,212.35 | - | 86,787.65 |
| Singireddy, Srinivasa R. | | 100,000.00 | 7,351.65 | - | 92,648.35 |
| Singletary, Don & Stacie | | 150,000.00 | 21,537.70 | - | 128,462.30 |
| Sinha, Kumar G. | | 200,000.00 | 33,986.40 | - | 166,013.60 |
| Sinha, Rajnish R. & Smita | | 100,000.00 | 20,816.73 | - | 79,183.27 |
| Siouffi, Samer | | 100,000.00 | 12,345.24 | - | 87,654.76 |
| Siriani, Anthony (IRA) (Part1)"NuView Trust Company FBO Anthony Siriani" | | 300,000.00 | 56,509.59 | - | 243,490.41 |
| Sirsikar, Rajindra & Vaishali | | 50,000.00 | 9,758.29 | - | 40,241.71 |
| Sirsikar, Rajindra V. | | 50,000.00 | 1,968.08 | - | 48,031.92 |
| Sirsikar, Vaishali R. | | 50,000.00 | 5,301.44 | - | 44,698.56 |
| Sisk, J. Anthony   "TSCS Retirement LLC" | | 50,000.00 | 11,924.93 | - | 38,075.07 |
| Skinner, B. Leon | | 2,000,000.00 | 299,611.68 | - | 1,700,388.32 |
| Sliwinski, Wallace F. (ROTH IRA)"Equity Trust custodian fbo Wallace F. Sliwinski Roth IRA" | | 150,000.00 | 28,131.52 | - | 121,868.48 |
| Sloane, Michael (MT)"Madison Trust Company FBO Michael Sloane" | | 200,000.00 | 23,146.04 | - | 176,853.96 |
| Smith, Fred P. (Trust)"The Fred & Marlene Smith Family Trust" | | 500,000.00 | 68,995.55 | - | 431,004.45 |
| Smith, Kris (401K) "North East Systems Group INC 401K PSP" | | 359,030.21 | 73,894.78 | - | 285,135.44 |
| Smith, Kris and Rose | | 698,395.35 | 133,198.19 | 41,122.96 | 524,074.20 |
| Smith, Lynne | | 150,000.00 | 15,411.00 | - | 134,589.00 |
| Snoops, Craig A. | | 100,000.00 | 15,704.49 | - | 84,295.51 |
| Snyder, Collin Van Zile (MT) "Madison Trust Company FBO  Collin Van Zile Snyder" | | 150,000.00 | 6,743.20 | - | 143,256.80 |
| Sohani, Sudhir | | 50,000.00 | 8,721.38 | - | 41,278.62 |
| Solanki, Mahesh | | 100,000.00 | 19,248.79 | - | 80,751.21 |
| Somareddy, Snehalatha (MT)"Madison Trust Company FBO Snehalatha Somareddy" | | 250,000.00 | 56,934.81 | - | 193,065.19 |
| Somareddy, Vinod | | 800,000.00 | 180,657.63 | - | 619,342.37 |
| Somareddy, Yallapa JTWROS Snehalatha Y. Somareddy & Anand Somareddy | | 150,000.00 | 29,736.40 | - | 120,263.60 |
| Somers, George F. (Corp)"AMC Holdings, Inc" | | 150,000.00 | 12,925.16 | - | 137,074.84 |
| Song, Yuan | | 150,000.00 | 9,654.20 | - | 140,345.80 |
| Sood, Sumit | | 100,000.00 | 13,184.95 | - | 86,815.05 |
| Sosankin, Michael | | 200,000.00 | 43,366.63 | - | 156,633.37 |
| Souid, Salim | | 51,240.00 | 5,523.34 | - | 45,716.66 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Spada, Andrew | Yes | 161,459.77 | 259,498.27 | - | - |
| Spaldo, Frank | Yes | 380,893.23 | 172,844.31 | - | 208,048.92 |
| Spanos, George (LLC)  "SFFC LLC" | | 500,000.00 | 110,055.65 | - | 389,944.35 |
| Spataro, Peter | | 900,000.00 | 148,858.48 | - | 751,141.52 |
| Spataro, Peter (LLC)"Newport Bay Investments, LLC" | | 500,000.00 | 40,972.74 | - | 459,027.26 |
| Spath, Kristen (IRA)"Midland Trust Company as Custodian FBO Kristen Spath beneficiary of Kristen Spath" | | 100,000.00 | 6,614.28 | - | 93,385.72 |
| Sperduto, James | | 240,582.67 | 63,877.51 | 34,054.35 | 142,650.81 |
| Spero, Daniel (MT)"Madison Trust Company FBO Daniel Spero" | | 500,000.00 | 60,010.29 | - | 439,989.71 |
| Spiegel, Jacqueline | | 150,000.00 | 26,702.10 | - | 123,297.90 |
| Spooner, Rebecca (LLC) "One North Services LLC" | | 250,000.00 | 10,045.57 | - | 239,954.43 |
| Sporn, Israel & Shoshana | | 500,000.00 | 75,558.34 | - | 424,441.66 |
| Springhorn, John | | 550,000.00 | 87,320.44 | - | 462,679.56 |
| Sra, Kanwalden & Avneet | Yes | 470,000.00 | 68,629.74 | - | 401,370.26 |
| Srinivasan, Kirubakaran | | 205,418.53 | 58,461.84 | 65,918.53 | 81,038.16 |
| Srinivasan,Thandi D. (IRA LLC)"SAAS Realty, LLC" | | 50,000.00 | 9,407.31 | - | 40,592.69 |
| Sripuram, Neeraj (LLC)"Swane LLC" | | 25,000.00 | 3,241.40 | - | 21,758.60 |
| Stach, Edgar | | 300,000.00 | 50,683.68 | - | 249,316.32 |
| Staple, Thomas Weinberg (Trust)"Staple Living Bypass Trust" | | 150,000.00 | 6,784.30 | - | 143,215.70 |
| Stark, David"DKSJR Investments LLC" | | 213,000.00 | 131,309.92 | - | 81,690.08 |
| Stave,Todd | | 100,000.00 | 20,858.19 | - | 79,141.81 |
| Steed, Dennis (IRA)"Equity Trust Company Custodian FBO Dennis Steed " | | 200,000.00 | 24,100.44 | - | 175,899.56 |
| Steed, Dennis (Part 2)(Trust)"Dennis Steed Living Trust, dated 6-14-13" | | 200,000.00 | 22,543.35 | - | 177,456.65 |
| Steed, Mary Lou (IRA)"Equity Trust Company Custodian FBO Mary Lou Steed IRA " | | 150,000.00 | 12,869.90 | - | 137,130.10 |
| Steel, William A. | | 150,000.00 | 25,287.70 | - | 124,712.30 |
| Steneck, Michael | | 150,000.00 | 12,285.92 | - | 137,714.08 |
| Stenton, Kenneth L. | | 360,000.00 | 13,873.97 | - | 346,126.03 |
| Stephen Levine | Yes | 88,292.30 | 122,054.39 | - | - |
| Stephens, Fred (MT)"Madison Trust Company FBO Fred Stephens" | | 150,000.00 | 21,702.10 | - | 128,297.90 |
| Stephens, Martha | | 350,000.00 | 61,483.00 | - | 288,517.00 |
| Stephens, Martha "CAMAPLAN FBO IRA Martha Stephens" | | 243,605.92 | 66,286.96 | 30,605.92 | 146,713.04 |
| Sterling, Gail H. (MT)"Madison Trust Company FBO Gail H.Sterling IRA" | | 1,000,000.00 | 169,354.85 | - | 830,645.15 |
| Stevenson, David  "David M. Stevenson Trust" | | 100,000.00 | 16,230.76 | - | 83,769.24 |
| Stevenson, David M. | | 50,000.00 | 10,306.46 | - | 39,693.54 |
| Stew Levine | Yes | 44,214.00 | 44214 | 131,285.86 | - |
| Stewart Levine - Levine S.D. Funding LLC | Yes | 70,406.29 | 22,404.62 | - | 48,001.67 |
| Stewart Levine - Philly Funding LLC | Yes | 1,419,800.87 | 569,700.02 | 468,593.00 | 381,507.85 |
| Stram, Paul | | 150,000.00 | 8,440.95 | - | 141,559.05 |
| Stramandi, Nicholas & Georgia | | 500,000.00 | 82,619.67 | - | 417,380.33 |
| Stresemann, Dennis C. | | 500,000.00 | 28,287.78 | - | 471,712.22 |
| Stricker, Robert (IRA) "Pacific Premier Trust Custodian FBO Robert Stricker IRA" | | 250,000.00 | 45,462.18 | - | 204,537.82 |
| Studinger, Karl H. & Sharron A. | | 300,000.00 | 17,746.57 | - | 282,253.43 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Suasin, Trinidad P. | | 50,000.00 | 1,406.18 | - | 48,593.82 |
| Subbacharya, Madhu (MT) "Madison Trust Company Custodian FBO Madhu Subbacharya" | | 200,000.00 | 27,931.56 | - | 172,068.44 |
| Subhas, Gokul & Madhu | | 200,000.00 | 18,854.75 | - | 181,145.25 |
| Subramanian, Ramakrishnan & Ramakrishnan, Chandrika | | 250,000.00 | 93,541.40 | - | 156,458.60 |
| Sued, Isaac | | 1,100,000.00 | 171,395.03 | - | 928,604.97 |
| Suede, Charles (MT)     "Madison Trust Company FBO Charles Suede" | | 440,000.00 | 117,130.86 | - | 322,869.14 |
| Suede, Marilyn (Trust) "Marilyn Suede Family Trust" | | 750,000.00 | 143,030.25 | - | 606,969.75 |
| Suede, Maurice | | 100,000.00 | 14,460.32 | - | 85,539.68 |
| Sugarman, Steve | | 150,000.00 | 36,175.00 | - | 113,825.00 |
| Sullivan, Ludwika (MT)"Madison Trust Company FBO Ludwika Sullivan" | | 95,332.22 | 20,549.02 | 49,937.21 | 24,845.99 |
| Sullivan, Michael & Ludwika "Lucy" | | 986,917.78 | 240,485.00 | 82,094.94 | 664,337.84 |
| Sullivan, Michael & Ludwika "Lucy" "43 BRR, LLC" | | 135,898.79 | 42,263.34 | 39,580.23 | 54,055.22 |
| Sullivan, Michael (MT)"Madison Trust Company FBO Michael Sullivan" | | 373,791.25 | 103,451.24 | 187,026.77 | 83,313.24 |
| Sumer N Mathur and Kavita Mathur | | 495,746.61 | 103,084.64 | | 392,661.97 |
| Sun, Dong | | 50,000.00 | 7,328.73 | - | 42,671.27 |
| Sunkara, Gangadhar | | 120,000.00 | 21,789.12 | - | 98,210.88 |
| Sunkara, Nagalakshmi | | 60,000.00 | 8,565.76 | - | 51,434.24 |
| Sunog, Thomas | | 800,000.00 | 134,867.66 | - | 665,132.34 |
| Suozzo, Anthony | | 800,000.00 | 121,153.04 | - | 678,846.96 |
| Suozzo, Anthony (MT)"Madison Trust Company FBO  Anthony Suozzo" | | 200,000.00 | 31,369.81 | - | 168,630.19 |
| Sure, Venkata | | 450,000.00 | 67,888.37 | - | 382,111.63 |
| Sussman, Harold I. | | 80,000.00 | 6,474.91 | - | 73,525.09 |
| Sutcliffe, James E. & Dorne, Bernadette | | 217,000.00 | 25,731.93 | - | 191,268.07 |
| Sutcliffe, James E. (IRA)"Camaplan Custodian FBO James E. Sutcliffe IRA" | | 220,250.00 | 29,545.83 | - | 190,704.17 |
| Sutton, Marc (MT)     "Madison Trust Company Custodian FBO Marc Sutton" | | 150,000.00 | 38,609.70 | - | 111,390.30 |
| Swaminarayan, Daksh; DAXABEN | | 15,000.00 | | | 15,000.00 |
| Swearingen, Robert K. (Trust) "Robert K. Swearnigen Revocable Trust" | | 100,000.00 | 15,288.22 | - | 84,711.78 |
| Sweet, Dennis | | 127,958.73 | 32,009.90 | 31,640.17 | 64,308.66 |
| Sweet, Dennis  "IRA R FBO Dennis A Sweet" | | 150,000.00 | 36,275.00 | - | 113,725.00 |
| Sweet, Yvone  "IRA R FBO Yvone Sweet" | | 25,000.00 | 6,045.87 | - | 18,954.13 |
| Synovec, Mark | | 300,000.00 | 43,121.32 | - | 256,878.68 |
| Szurlej, Richard A. | | 150,000.00 | 7,952.10 | - | 142,047.90 |
| Tab Financial Group | Yes | 500,000.00 | 624,849.32 | | - |
| Taggart, Timothy L. (Trust)"The BLT Trust" | | 200,000.00 | 17,762.50 | - | 182,237.50 |
| Tang, Jian | | 541,956.28 | 187,784.64 | 107,703.19 | 246,468.45 |
| Tang, Jian  (IRA/ Rollover)"IRA Services Trust Company, CFBO Jiang Tang" | | 219,619.31 | 59,407.41 | - | 160,211.90 |
| Tarabocchia, Albino | | 493,766.42 | 91,083.23 | 45,936.86 | 356,746.33 |
| Tarantelli, John M. | | 150,000.00 | 23,422.62 | - | 126,577.38 |
| Tarapore, Farokh | | 50,000.00 | 11,658.27 | - | 38,341.73 |
| Taromina, Michael | | 250,000.00 | 12,910.92 | - | 237,089.08 |
| Tarr, Walter R.  (MT) "Madison Trust Company FBO Walter R. Tarr" | | 750,000.00 | 124,129.85 | - | 625,870.15 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Tavor, Ziv | | 111,878.86 | 25,678.70 | 21,651.14 | 64,549.02 |
| Tawil, Abraham | | 624,162.71 | 123,431.14 | 97,500.46 | 403,231.11 |
| Taylor, Alysha (IRA)"Quest Trust Co FBO Alysha Taylor IRA" | | 61,000.00 | 3,180.94 | - | 57,819.06 |
| Taylor, Caroline & Molos, Kenneth | Yes | 170,000.00 | 26,944.04 | 170,000.00 | - |
| Taylor, Mark (MT/Rollover)    "Madison Trust Company FBO Mark Taylor IRA" | | 53,572.75 | 9,112.49 | 9,297.75 | 35,162.51 |
| Taylor, Robert B. | | 100,000.00 | 6,131.52 | - | 93,868.48 |
| Taylor, Wayne J. & Lisa M. | | 100,000.00 | 8,184.97 | - | 91,815.03 |
| Taylor, Zakari (IRA)"Quest Trust Co FBO Zakari Taylor IRA" | | 33,000.00 | 1,720.75 | - | 31,279.25 |
| Taylor, Zakari M. | | 20,000.00 | 1,055.95 | - | 18,944.05 |
| Terzi, Kenneth | | 450,000.00 | 117,571.72 | - | 332,428.28 |
| Tetreault, Daniel & Melissa | | 99,973.00 | 6,065.79 | - | 93,907.21 |
| Tetro, Erik & Jennifer | | 200,000.00 | 25,383.58 | - | 174,616.42 |
| Thabet, John F. | | 200,000.00 | 25,547.95 | - | 174,452.05 |
| Thakker, Jatin M. | | 150,000.00 | 20,154.20 | - | 129,845.80 |
| Thakker, Promila | | 300,000.00 | 40,217.79 | - | 259,782.21 |
| Thakker, Sanjeev | | 250,000.00 | 33,590.18 | - | 216,409.82 |
| Thayi, Ram | | 200,000.00 | 33,953.52 | - | 166,046.48 |
| The Jayvant Ramjee Heera Revocable Living Trust | | 1,391,424.99 | 305,162.00 | - | 1,086,262.99 |
| The Pandya Family Trust | | 1,663,542.60 | 355,196.16 | 480,444.36 | 827,902.08 |
| The Rajindra V. Sirsikar Revocable Trust | | 150,000.00 | 9,366.50 | - | 140,633.50 |
| Thomas, Duane Elias | | 1,100,000.00 | 99,700.74 | - | 1,000,299.26 |
| Thomas, Kaithamangalath (IRA) "Midland Trust Company As Custodian FBO KC Thomas" | | 226,300.00 | 806.00 | - | 225,494.00 |
| Thomas, Kaithamangalath C. | | 1,000,000.00 | 143,452.08 | - | 856,547.92 |
| Thomas, Kenneth P. & Jeana D. JTWROS: Thomas 2003 Family Trust | | 50,000.00 | 5,496.60 | - | 44,503.40 |
| Thomas, Neal | | 50,000.00 | 4,139.74 | - | 45,860.26 |
| Thompson, Christopher | | 124,200.00 | 83,753.00 | - | 40,447.00 |
| Thorne, Beverly | Yes | 76,303.00 | 121,031.67 | - | - |
| Thornton, Matthew | | 25,000.00 | 3,504.53 | - | 21,495.47 |
| Thuerbach, Thomas (IRA)"Provident Trust Group LLC FBO Thomas Thuerbach IRA" | | 300,000.00 | 52,828.76 | - | 247,171.24 |
| Thuerbach, Thomas P. | | 200,000.00 | 17,269.39 | - | 182,730.61 |
| Tilton, Wesley (Trust)"The Wesley and Yuko Family Trust" | | 150,000.00 | 26,578.80 | - | 123,421.20 |
| Tinari, Frank    "IRA Financial Trust Co. FBO Frank Tinari" | Yes | 189,000.00 | 270,896.55 | - | - |
| Tippets, Jared & Nicole | | 50,000.00 | 7,348.64 | - | 42,651.36 |
| Tippets, Todd R. | | 300,000.00 | 42,223.36 | - | 257,776.64 |
| Tirella, Robert | | 63,000.00 | 26,005.00 | - | 36,995.00 |
| Tirella, Robert (MT)    "Madison Trust Company Custodian FBO Robert Tirella IRA" | | 50,000.00 | 10,324.97 | - | 39,675.03 |
| Tirnati, Vamsi (MT)"Madison Trust Company FBO Vamsi Tirnati" | | 50,000.00 | 9,358.54 | - | 40,641.46 |
| Tirumalai, Venu & Bargavi | | 50,000.00 | 11,052.62 | - | 38,947.38 |
| Titus, Timothy (401k)"T & C Family Trust (Timothy Titus Solo 401k Plan)" | | 150,000.00 | 18,486.40 | - | 131,513.60 |
| Tobias, Neil (LLC)"ALNeil Associates LLC" | | 300,000.00 | 45,690.41 | - | 254,309.59 |
| Tolbert, Paul D. | | 150,000.00 | 13,691.90 | - | 136,308.10 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Toler, John (IRA)"Midland Trust Company as Custodian FBO John Toler" | | 50,000.00 | 8,703.30 | - | 41,296.70 |
| Tom Winfough | | 100,000.00 | - | - | 100,000.00 |
| Toups, Roger P. | | 1,500,000.00 | 286,109.91 | - | 1,213,890.09 |
| Toups, Roger P. (LLC)"R and R Paradise Investments LLC" | | 500,000.00 | 53,150.81 | - | 446,849.19 |
| Townsend, Patrick G. | | 50,000.00 | 1,471.94 | - | 48,528.06 |
| Traver, Carol Sue | | 400,000.00 | 21,722.78 | - | 378,277.22 |
| Tripathi, Manoj | | 150,000.00 | 24,161.00 | - | 125,839.00 |
| Trovato, Louis | | 113,681.46 | 30,849.00 | 37,378.46 | 45,454.00 |
| Trovato, Louis *Trovato Living Trust* | | 750,000.00 | 26,643.84 | - | 723,356.16 |
| Tsaroya, Yakov | | 700,000.00 | 168,933.36 | - | 531,066.64 |
| Tse, Tsui | | 57,502.82 | 5,545.78 | - | 51,957.04 |
| Tsiakilos, Nicholas & Vera | | 50,000.00 | 2,766.44 | - | 47,233.56 |
| Tsipursky, Michael | | 75,000.00 | 17,750.00 | - | 57,250.00 |
| Tulchinsky, Stuart | | 150,000.00 | 26,948.70 | - | 123,051.30 |
| Tulchinsky, Stuart (IRA)"Midland Trust Company as Custodian FBO Stuart Tulchinksy" | | 150,000.00 | 26,578.80 | - | 123,421.20 |
| Turner, Ivel | Yes | 100,000.00 | 5,635.91 | - | 94,364.09 |
| Turns, Barbara (Trust)"Turns Family Trust" | | 150,000.00 | 20,082.20 | - | 129,917.80 |
| Unchalipongse, Teerawee | | 362,719.69 | 120,635.73 | 153,614.09 | 88,469.87 |
| Unnikrishnan, Anil | | 200,000.00 | 72,611.33 | - | 127,388.67 |
| Uppuluri, Dinesh Kumar | | 50,000.00 | 1,881.52 | - | 48,118.48 |
| Uram, Martin | | 1,000,000.00 | 98,548.02 | - | 901,451.98 |
| Ursini, John | | 1,206,189.44 | 448,773.11 | 336,661.70 | 420,754.63 |
| Uttara, Aparna | | 100,000.00 | 19,330.99 | - | 80,669.01 |
| Vachhani, Pradipkumar | | 200,000.00 | 33,912.82 | - | 166,087.18 |
| Vadalia, Malay R. (IRA)"IRA Services Trust Company, CFBO Malay R. Vadalia" | | 100,000.00 | 19,066.68 | - | 80,933.32 |
| Vadurro, Anthony Jr. | | 100,000.00 | 19,045.66 | - | 80,954.34 |
| Vaghani, Nileshkumar | | 150,000.00 | 18,322.00 | - | 131,678.00 |
| Vaidyanathan, Srini (MT)    "Madison Trust Company FBO Srini Vaidyanathan" | | 274,000.00 | 49,502.68 | - | 224,497.32 |
| Vaishnav, Vaibhav (LLC)"Sudatta LLC" | | 75,000.00 | 10,472.65 | - | 64,527.35 |
| Vaizman, Konstantin | | 50,000.00 | 1,496.60 | - | 48,503.40 |
| Vajani, Keval | | 177,994.18 | 59,902.16 | 13,719.18 | 104,372.84 |
| Vajinepalli, Sreedhar & Sridevi | | 840,000.00 | 95,101.66 | - | 744,898.34 |
| Vakharia, Harish & Chokshi, Vaishali | | 50,000.00 | 7,527.46 | - | 42,472.54 |
| Vakharia, Niravkumar & Dipali | | 50,000.00 | 5,929.28 | - | 44,070.72 |
| Vakharia, Rikta & Davang | | 150,000.00 | 18,322.00 | - | 131,678.00 |
| Vakharia, Saurabh & Neha | | 150,000.00 | 17,911.00 | - | 132,089.00 |
| Vakharia, Tushar & Kinnari | | 125,000.00 | 15,508.13 | - | 109,491.87 |
| Vakser, Diana (IRA)    "Equity Trust Company Custodian FBO Diana Vakser, IRA " | | 100,000.00 | 21,033.34 | 5,176.08 | 73,790.58 |
| Vakser, Victoria (IRA)    "Cama Plan IRA FBO Victoria Vakser " | | 10,000.00 | 1,821.32 | - | 8,178.68 |
| Valane, Donald R. | | 100,000.00 | 23,993.82 | 32,490.52 | 43,515.66 |
| Valentine, Denis | | 150,000.00 | 7,441.90 | - | 142,558.10 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Valentine, Sophia & Denis | | 300,000.00 | 33,815.04 | | 266,184.96 |
| Valentine, Sophia (Part 2)(Trust)"The Sophia Valentine Living Trust" | | 300,000.00 | 18,075.33 | | 281,924.67 |
| Vallamkondu, Naveen (MT)    "Madison Trust Company FBO Naveen Vallamkondu IRA" | | 70,000.00 | 20,141.50 | - | 49,858.50 |
| Van Loan, Steve (IRA)"Midland Trust Company as Custodian FBO Steve Van Loan" | | 400,000.00 | 36,369.82 | - | 363,630.18 |
| Van Paepeghem, James B. (IRA)"Equity Trust Company Custodian FBO James B. Van Paepeghem IRA" | | 150,000.00 | 21,743.20 | - | 128,256.80 |
| Van Zanten, Charles C. | | 150,000.00 | 19,530.90 | - | 130,469.10 |
| Vanam, Ravindar (LLC)"Million Runs LLC" | | 25,000.00 | 3,241.40 | - | 21,758.60 |
| Vandevelde, Dennis | | 250,000.00 | 9,977.08 | - | 240,022.92 |
| VanHoorn, Frank | Yes | 89,921.00 | 135,980.26 | - | - |
| Vankineni, Naga  (LLC)    "B4 Investments LLC" | | 404,614.50 | 206,543.28 | 22,767.16 | 175,304.06 |
| Vankineni, Naga & Koneru, Nando | | 71,372.55 | 11,771.42 | 29,819.89 | 29,781.24 |
| Vanolst, Thomas W. & Phyllis R. | | 600,000.00 | 71,808.21 | - | 528,191.79 |
| Varga, Daniel | | 200,000.00 | 22,598.14 | - | 177,401.86 |
| Varga, Daniel (MT)"Madison Trust Company FBO Daniel Varga" | | 300,000.00 | 38,404.09 | - | 261,595.91 |
| Varga, Hunor | | 251,707.00 | 164,515.94 | - | 87,191.06 |
| Varma, Jainendra & Anjali | | 100,000.00 | 9,902.78 | - | 90,097.22 |
| Varma, Jitendra & Purnima (Trust)"The Varma Family Trust Dated 11/5/1993 As Amended" | | 150,000.00 | 19,489.80 | - | 130,510.20 |
| Varshney, Anita  (IRA) "Midland Trust Company as Custodian FBO Anita Varshney" | | 50,000.00 | 8,053.73 | - | 41,946.27 |
| Varshney, Anita  (LLC) "Namn, LLC" | | 150,000.00 | 28,221.29 | - | 121,778.71 |
| Veerachandran, Vijay "Hudson Strategy, LLC" | | 250,000.00 | 57,713.72 | - | 192,286.28 |
| Vejju, Ramesh & Miriyala, Renuka (LLC)"R3 Tech LLC" | | 500,000.00 | 47,794.46 | - | 452,205.54 |
| Velagandula, Jayadev | | 25,000.00 | 7,231.25 | - | 17,768.75 |
| Velagandula, Jayadev (IRA)"Midland Trust Company as Custodian FBO Jayadev Velagandula" | | 55,000.00 | 11,530.41 | - | 43,469.59 |
| Velez, Louis Duane (LLC)"Louis Duane Velez, LLC" | | 50,000.00 | 2,689.06 | - | 47,310.94 |
| Veltkamp, Trevor | | 1,000,000.00 | 162,032.19 | - | 837,967.81 |
| Vemula, Chakrapani | | 101,000.00 | 24,927.94 | - | 76,072.06 |
| Vemula, Rohini   (MT)    "Madison Trust Company Custodian FBO Rohini Vemula" | | 100,000.00 | 18,854.78 | - | 81,145.22 |
| Vemula, Rohini  (Personal) | | 200,000.00 | 44,033.27 | - | 155,966.73 |
| Venkatapathy, Sathya | | 100,000.00 | 16,828.80 | | 83,171.20 |
| Venkatapathy, Sathya & Narayan, Gayatri (Part 2) | | 50,000.00 | 6,107.38 | | 43,892.62 |
| Venkatesh, Chetana (LLC)"Starbrite Investments LLC" | | 50,000.00 | 6,025.18 | - | 43,974.82 |
| Venu Avula | | 100,000.00 | 144,000.00 | - | - |
| Venu Martha | Yes | 500,000.00 | - | - | 500,000.00 |
| Verma, Atul | | 25,000.00 | 3,309.90 | | 21,690.10 |
| Verma, Rajesh & Smeeta | | 400,000.00 | 38,283.07 | - | 361,716.93 |
| Vermette, Louis | | 600,000.00 | 76,944.45 | - | 523,055.55 |
| Viner, Jesse | | 250,000.00 | 27,288.76 | | 222,711.24 |
| Viner, Jesse *"Jesse Viner Declaration of Trust"* | | 250,000.00 | 21,312.73 | | 228,687.27 |
| Vira, Jayesh | | 100,000.00 | 12,406.42 | - | 87,593.58 |
| Virani, Avani | | 50,000.00 | 11,833.30 | - | 38,166.70 |
| Virani, Bhavin | | 50,000.00 | 11,833.30 | - | 38,166.70 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Virani, Kumarpal | | 50,000.00 | 11,833.30 | - | 38,166.70 |
| Virk, Bhupander (MT) "Madison Trust Company FBO Bhupander Virk IRA" | | 500,000.00 | 34,832.16 | - | 465,167.84 |
| Visweswaran, Gowri | | 50,000.00 | 5,315.14 | - | 44,684.86 |
| Visweswaran, Gowri (MT)"Madison Trust Company FBO Gowri Visweswaran" | | 52,618.68 | 5,636.80 | - | 46,981.88 |
| Viviani, Carl J. | | 718,341.00 | 52,173.17 | - | 666,167.83 |
| Vladimir, Vakser (IRA/Rollover)    "Equity Trust Company Custodian FBO Vladimir Vakser, IRA" | | 30,176.08 | 5,132.80 | 5,176.08 | 19,867.20 |
| Vodapalli, Madhu S. | | 12,000.00 | 1,716.45 | - | 10,283.55 |
| Vodapalli, Madhu S. (MT) "Madison Trust Co.FBO Madhu S Vodapalli" | | 48,000.00 | 6,813.15 | - | 41,186.85 |
| Vogel, David L. | | 200,000.00 | 9,593.52 | - | 190,406.48 |
| Vootkuri, Naveen | | 50,000.00 | 2,343.65 | - | 47,656.35 |
| Vudathala, Gopi | | 700,000.00 | 106,596.59 | - | 593,403.41 |
| Vudathala, Gopi (MT)"Madison Trust Company FBO Gopi Vudathala" | | 300,000.00 | 58,650.66 | - | 241,349.34 |
| Vuppala, Shiva P. | | 60,000.00 | 17,340.00 | - | 42,660.00 |
| Vyas, Hemalkumar | | 370,000.00 | 65,469.16 | - | 304,530.84 |
| Vyas, Hemalkumar (IRA)"Midland Trust Company as Custodian FBO Hemalkumar Vyas" | | 100,000.00 | 19,276.19 | - | 80,723.81 |
| Vyasa, Hrishikesh | | 300,000.00 | 36,993.20 | - | 263,006.80 |
| Vyasa, Jayesh (MT) Madison Trust Company Roth IRA | | 55,000.00 | 9,030.86 | - | 45,969.14 |
| Vyasa, Jayesh (MT) Madison Trust Company Traditional IRA | | 62,500.00 | 10,088.57 | - | 52,411.43 |
| Vyasa, Shilpa (MT) Madison Trust Company Roth IRA | | 25,000.00 | 4,067.87 | - | 20,932.13 |
| Vyasa, Shilpa (MT) Madison Trust Company Traditional IRA | | 533,500.00 | 83,738.28 | - | 449,761.72 |
| Wachs, Joel R. & Joane D. | | 100,000.00 | 18,157.53 | - | 81,842.47 |
| Wade, Daniel  (MT)    "Madison Trust Company FBO Daniel Wade IRA" | | 150,000.00 | 28,530.35 | - | 121,469.65 |
| Wagman Marc | Yes | 1,000.00 | 1,000.00 | | - |
| Wahi, Ashok (Corp) "Trutek Corp" | | 3,000,000.00 | 766,479.45 | - | 2,233,520.55 |
| Wahi, Ashok (LLC) "Princeton Kanaw LLC" | | 2,000,000.00 | 455,123.19 | - | 1,544,876.81 |
| Wahi, Raj & Neena | | 150,000.00 | 24,654.20 | - | 125,345.80 |
| Walia, Arvind (LLC)"AJJK Healthtek LLC" | | 3,000,000.00 | 505,643.80 | - | 2,494,356.20 |
| Walsh, Michael | | 50,000.00 | 6,863.88 | - | 43,136.12 |
| Walter, Ronald J. | | 100,000.00 | 4,131.52 | - | 95,868.48 |
| Walter, Samuel | | 150,000.00 | 11,896.17 | - | 138,103.83 |
| Walters, David W. (GP)"D & J Properties" | | 250,000.00 | 10,485.14 | - | 239,514.86 |
| Waltzer, David | | 500,000.00 | 64,417.91 | - | 435,582.09 |
| Wang, Aidong | | 615,320.55 | 106,387.44 | 15,320.55 | 493,612.56 |
| Wang, Hongli | | 150,000.00 | 18,527.50 | - | 131,472.50 |
| Wang, Jade | | 150,000.00 | 27,369.90 | - | 122,630.10 |
| Wang, Pengyu (Corp)"Coast to Coast Investments, Inc" | | 150,050.99 | 78,431.42 | 34,381.59 | 37,237.98 |
| Wang, Tao (401K Trust)"Tsunami 401K Trust" | | 500,000.00 | 75,822.00 | - | 424,178.00 |
| Ward, Paul | | 1,745,374.78 | 256,358.84 | 122,947.06 | 1,366,068.88 |
| Warshauer, Larry | | 190,000.00 | 15,280.92 | - | 174,719.08 |
| Washburn, Alan | | 150,000.00 | 15,493.20 | - | 134,506.80 |
| Washburn, Michael D. | | 100,000.00 | 3,213.72 | - | 96,786.28 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Waskey, David S. (LLC)"DSW IRA LLC" | | 200,000.00 | 35,552.56 | - | 164,447.44 |
| Wason Family Revocable Trust | | 2,800,000.00 | 471,036.42 | - | 2,328,963.58 |
| Wason, Sarwan (IRA)"Provident Trust Goup LLC FBO Sarwan K. Wason IRA" | | 80,000.00 | 9,723.59 | - | 70,276.41 |
| Watson, Barbara (LLC)"Salco, LLC" | | 200,000.00 | 21,315.00 | - | 178,685.00 |
| Waynick, James Mark | | 300,000.00 | 22,993.14 | - | 277,006.86 |
| Webb, Robert F. | | 300,000.00 | 55,082.19 | - | 244,917.81 |
| Weinberg, Jeffrey & Regina | Yes | 141,482.19 | 35,510.26 | 41,482.19 | 64,489.74 |
| Weinstein, Robert "Robert Weinstein Trust" | | 300,000.00 | 70,394.63 | - | 229,605.37 |
| Weinstein, Ronald M. | | 200,000.00 | 11,150.61 | - | 188,849.39 |
| Weiss, Max & Melody Zhou | Yes | 299,705.88 | 57,443.65 | 266,503.30 | - |
| Weiss, Max (MT)"Madison Trust Company FBO Max Weiss " | Yes | 482,797.42 | 95,282.85 | - | 387,514.57 |
| Welch, Sherri | | 150,999.00 | 19,371.39 | - | 131,627.61 |
| Wellerstein, Elisha | Yes | 669,570.79 | 968,178.86 | - | - |
| Welling, Richard B. | | 250,000.00 | 10,456.51 | - | 239,543.49 |
| Wells, Joe | | 1,000,000.00 | 109,716.82 | - | 890,283.18 |
| Wells, Marion J. (Trust) "Marion J. Wells Living Trust" | | 150,000.00 | 16,907.60 | - | 133,092.40 |
| Wells, Robert (IRA) "Pacific Premier Trust Custodian FBO Robert Wells IRA" | | 130,000.00 | 25,767.96 | - | 104,232.04 |
| Wells, Robert D. & Eileen L. | | 150,000.00 | 9,448.70 | - | 140,551.30 |
| Wenger, Heather    "New Direction IRA, Inc. FBO Heather N. Wenger Roth IRA" | | 50,000.00 | 10,558.31 | - | 39,441.69 |
| Werlin, Jerald D. | | 420,000.00 | 63,598.53 | - | 356,401.47 |
| Westerback, Steven | | 303,677.41 | 131,038.27 | 56,253.59 | 116,385.55 |
| Wettenstein, Peter | | 200,000.00 | 31,776.31 | - | 168,223.69 |
| Wetzel, Lewis W. & Veronica | | 200,000.00 | 17,050.23 | - | 182,949.77 |
| Wheeles, Glenn S. | | 100,000.00 | 16,326.66 | - | 83,673.34 |
| Whitaker, Crest B. Sr. | | 50,000.00 | 2,455.50 | - | 47,544.50 |
| Whitaker, David (IRA)"Midland Trust Company As Custodian FBO David Whitaker" | | 250,000.00 | 32,551.26 | - | 217,448.74 |
| White, Craig F. | | 50,000.00 | 2,406.18 | - | 47,593.82 |
| White, Steve | | 643,011.72 | 144,723.33 | 211,211.72 | 287,076.67 |
| White, Timothy  (IRA)"Midland Trust Co. As Custodian FBO Timothy White" | | 100,000.00 | 24,366.74 | - | 75,633.26 |
| White, Timothy  (LLC)     "TAW Company, LLC" | | 200,000.00 | 37,319.49 | - | 162,680.51 |
| Whitehead, John | | 957,149.23 | 229,904.28 | 310,312.11 | 416,932.84 |
| Whitlow, Richard A. | | 300,000.00 | 24,632.38 | - | 275,367.62 |
| Whitman, Jack | | 218,662.72 | 61,225.64 | 61,762.72 | 95,674.36 |
| Wierzbowski, Edward | | 150,000.00 | 6,784.30 | - | 143,215.70 |
| Wiesenfeld, Cynthia and Jeffrey   JTWROS | | 199,116.67 | 120,820.25 | 12,866.67 | 65,429.75 |
| Wigo, Charles H. III (Trust)"Charles H. Wigo Jr. Trust" | Yes | 250,000.00 | 250,833.33 | - | - |
| Wilcox, Lynn F. | | 425,000.00 | 55,156.49 | - | 369,843.51 |
| Wilcox, Lynn F. (IRA) "Equity Trust Company Custodian FBO Lynn F.  Wilcox IRA" | | 175,000.00 | 24,066.37 | - | 150,933.63 |
| Wilder, David K. (& Demitra A.) | | 50,000.00 | 3,791.10 | - | 46,208.90 |
| Wilhelm, Amos (Trust)"Wilhelm Family Revocable Trust" | | 600,000.00 | 66,133.80 | - | 533,866.20 |
| Wilkison, Gregory S. & Jean E. | | 150,000.00 | 11,989.80 | - | 138,010.20 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:
[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.
[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor
[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| William and Maureen Diehl Trust | | 1,650,530.46 | 521,043.74 | 394,381.64 | 735,105.08 |
| Williams, Carey (LLC)"Rothman Capital Investments, LLC" | | 1,000,000.00 | 165,169.01 | - | 834,830.99 |
| Wilson, Joseph Steven | | 50,000.00 | 7,234.09 | - | 42,765.91 |
| Wilsynski, Michael J. | | 50,000.00 | 7,828.86 | - | 42,171.14 |
| Wimpfheimer, Michael | | 273,949.47 | 73,880.36 | 65,750.47 | 134,318.64 |
| Winfough, Thomas | | 332,955.56 | 49,137.46 | - | 283,818.10 |
| Wingo, Robert P. (Trust) "Wingo Family Trust dated 06/09/15" | | 200,000.00 | 17,488.55 | - | 182,511.45 |
| Winkler, Fred (LTD)"Winkler Family Partnership, LTD" | | 200,000.00 | 30,929.63 | - | 169,070.37 |
| Wise, Stuart (Trust)"Wise Family Realty Trust" | | 150,000.00 | 18,034.30 | - | 131,965.70 |
| Witter, Dean III | | 150,000.00 | 25,820.58 | - | 124,179.42 |
| Witter, Rebekah Ferran | | 150,000.00 | 25,919.22 | - | 124,080.78 |
| Woffindin, David B. (IRA)*Pacific Premier Trust Custodian FBO David B.Woffindin Trad. IRA"* | | 100,000.00 | 3,793.67 | | 96,206.33 |
| Wolfe, Fereshteh D. | | 300,000.00 | 40,152.93 | - | 259,847.07 |
| Wolfe, Paul D. | | 250,000.00 | 17,077.58 | - | 232,922.42 |
| Wolfson, Elliot | | 950,000.00 | 179,256.16 | - | 770,743.84 |
| Wolfson, Gerald | | 100,000.00 | 17,566.36 | - | 82,433.64 |
| Wolinsky, Steven | Yes | 184,798.60 | 262,444.54 | - | - |
| Wong, Lin (MT)"Madison Trust Company FBO Lin Wong" | | 115,035.49 | 31,306.94 | 34,142.26 | 49,586.29 |
| Wood, Roger (MT)"Madison Trust Company FBO Roger Wood" | | 300,000.00 | 49,407.60 | - | 250,592.40 |
| Woodcox, Laura"Madison Trust Company FBO Laura Woodcox" | | 150,000.00 | 34,600.00 | - | 115,400.00 |
| Woolf, Carl & Susan | | 127,169.25 | 25,015.46 | 20,294.25 | 81,859.54 |
| Wulff, Kai-Uwe | | 599,985.59 | 276,088.45 | 122,337.19 | 201,559.95 |
| Xi, Zhigang (Sherman) | | 132,800.00 | - | - | 132,800.00 |
| Xu, Jack"UTMA Account" | | 78,000.00 | 15,818.83 | - | 62,181.17 |
| Xu, Jing (Lu, Canghai)  (MT) "Madison Trust Company FBO Jing Xu" | | 150,000.00 | 34,825.00 | - | 115,175.00 |
| Xu, Min | | 695,578.66 | 202,328.55 | 167,675.66 | 325,574.45 |
| Xu, Terry  (Yumei Yin's son) | | 191,800.00 | 35,464.36 | - | 156,335.64 |
| Yakkala, Sailaja (IRA) "Midland Trust Company as Custodian FBO Sailaja Pabbisetti" | | 75,000.00 | 15,431.55 | - | 59,568.45 |
| Yakkala, Sailaja (Trust) "The Yakkala Family Trust" | | 50,000.00 | 14,475.00 | - | 35,525.00 |
| Yalamanchi, Prasad (Corp)"Yuva Inc" | | 250,000.00 | 12,334.37 | - | 237,665.63 |
| Yalamanchi, Ravi (IRA)*Pacific Premier Trustas Custodian IRA FBO Ravi Yalamanchi"* | | 150,000.00 | 25,863.10 | | 124,136.90 |
| Yalamanchi, Ravi (Part 2)(IRA)*Pacific Premier Trustas Custodian IRA FBO Ravi Yalamanchi"* | | 85,000.00 | 12,763.60 | | 72,236.40 |
| Yaliwal, Chetan | | 50,000.00 | 14,475.00 | - | 35,525.00 |
| Yanan, John | | 300,000.00 | 48,451.54 | - | 251,548.46 |
| Yanan, John (Corp)"Atlantic Roofing Corp" | | 200,000.00 | 23,881.28 | - | 176,118.72 |
| Yasgur, Jacob | | 50,000.00 | 9,481.84 | - | 40,518.16 |
| Yee, Matthew (IRA)"Equity Trust Company Custodian FBO Matthew J Yee Sr BENE Roth John Yee DCD" | | 220,000.00 | 47,907.81 | - | 172,092.19 |
| Yee, Matthew J. Sr. & Kimberly A.  (Trust Part 1)     "Matthew J. Sr. & Kimberly Ann Yee Revocable Trust, u/a/d October 28, 2011" | | 1,040,000.00 | 129,724.63 | - | 910,275.37 |
| Yessa, Sue Ellen (Trust)"Sue Ellen Yessa Revocable Trust, 12/12/2018" | | 286,359.43 | 11,428.12 | - | 274,931.31 |
| Yi, Peter | | 1,000,000.00 | 179,109.48 | | 820,890.52 |
| Yi, Peter *"Peter M. Yi Trust"* | | 1,000,000.00 | 180,589.13 | | 819,410.87 |

**Joint Chapter 11 Plan of Liquidation of**
**National Realty Investment Advisors, LLC and Its Affiliated Debtors**
**Investor Schedule**

Notes:

[2] "Prepetition Distributions" includes return of capital and redemptions to an Investor prior to June 7, 2022.

[3] "Additional Reductions" includes unpaid guaranteed returns to investors, non-cash incentives, "rollover bonuses," or other incentives provided to Investors in exchange for "rolling" their investment(s) from a non-Fund Debtor

[4] "Excluded Party" is a Person or Entity listed on Exhibit 2 to the Plan.

| Full Name | Excluded Party [4] | Total Outstanding Principal Amount [1] | Prepetition Distributions [2] | Additional Reductions [3] | Net Investor Claims Amount [1] minus [2] minus [3] |
|---|---|---|---|---|---|
| Yin, Yumei | | 491,189.36 | 87,546.31 | - | 403,643.05 |
| Yin, Yumei  (DB Plan) "Fashion Plus (NY) Inc. defined benefit plan" | | 130,410.00 | 27,118.92 | - | 103,291.08 |
| Yin, Yumei (IRA) "Midland Trust Company as Custodian FBO Yumei Yin" | | 224,510.64 | 40,642.54 | - | 183,868.10 |
| Younas, Muhammad & Shahana | | 1,500,000.00 | 127,755.66 | - | 1,372,244.34 |
| Young, Frederick | | 160,000.00 | 22,664.13 | - | 137,335.87 |
| Young, James K. | | 200,000.00 | 16,479.36 | - | 183,520.64 |
| Young, Michael & Jo Ellen | | 300,000.00 | 31,890.37 | - | 268,109.63 |
| Young, Robert | | 150,000.00 | 18,198.70 | - | 131,801.30 |
| Young, Timothy L. & Saylor, Haley J.T.W.R.O.S. | | 800,000.00 | 228,212.25 | - | 571,787.75 |
| Younger, David Lillard | | 350,000.00 | 24,004.59 | - | 325,995.41 |
| Younger, Phillip  JTWROS Tracy R Younger, Shelle R. Vance, Valarie A Miller | | 450,000.00 | 52,043.29 | - | 397,956.71 |
| Yousef, Faisal | | 150,000.00 | 11,702.10 | - | 138,297.90 |
| Zakharia, Alex (Corp) "Southeastern Investment Group Corp" | | 300,000.00 | 36,619.90 | - | 263,380.10 |
| Zalzala, Sajad | | 250,000.00 | 35,485.10 | - | 214,514.90 |
| Zalzala, Sajad (LLC) "HAAN Holdings LLC" | | 500,000.00 | 33,647.10 | - | 466,352.90 |
| Zamzok, Jonathan (Corp) "JDZ Enterprises, INC" | | 157,002.47 | 25,352.02 | 24,002.47 | 107,647.98 |
| Zannelli, Joseph | | 100,000.00 | 9,127.90 | - | 90,872.10 |
| Zase, Martin | | 50,000.00 | 7,508.22 | - | 42,491.78 |
| Zayon, Myron & Pearl (Trust)      "The Mayer & Pearl Zayon Revocable Trust" | | 150,000.00 | 30,675.00 | - | 119,325.00 |
| Zeitouni, David | | 50,000.00 | 7,565.76 | - | 42,434.24 |
| Zeitouni, Gabriel | | 100,000.00 | 15,131.52 | - | 84,868.48 |
| Zemble, Robert | | 150,000.00 | 15,698.70 | - | 134,301.30 |
| Zeng, Zheng "Jennifer" | | 320,000.00 | 46,892.65 | - | 273,107.35 |
| Zhong, Lan | | 171,772.71 | 100,130.70 | 38,972.71 | 32,669.30 |
| Zia, Muhammad | Yes | 180,000.00 | 212,429.59 | - | - |
| Zito, Christopher | | 439,780.82 | 62,379.27 | 115,780.82 | 261,620.73 |
| Zito, Marie | Yes | 234,769.02 | 209,304.71 | - | 25,464.31 |
| Zlatic, John W. | | 50,000.00 | 1,422.62 | - | 48,577.38 |
| Zukowski, Robert  (Personal Part 1)      "Schwab One Brokerage Joint Tennant Account" | | 600,000.00 | 121,700.00 | - | 478,300.00 |

## __EXHIBIT B__

**Form of Toorak Consent Judgment**

9775935

At an IAS Part __ of the Supreme Court of the State of New York held in and for the County of KINGS. located at 360 Adams Street, Brooklyn, NY 11201, on the _ day of _____, 202_

SUPREME COURT: KINGS COUNTY

-----------------------------------------------------------------------x

TOORAK CAPITAL PARTNERS LLC,

                          Plaintiff,

        -against-

HENRY STREET CAPITAL 506, LLC;

                       Defendants.

-----------------------------------------------------------------------x

Index No.

**CONSENT JUDGMENT OF FORECLOSURE AND SALE**

UPON the Summons, Verified Complaint and Notice of Pendency duly filed in this action on the _____ day of _____, 20__, the exhibits thereto, and all pleading thereon, and upon the motion dated _____ (the "**Motion**") filed by plaintiff TOORAK CAPITAL PARTNERS LLC ("**Plaintiff**") seeking (i) entry of this Consent Judgment of Foreclosure and Sale entered into between Plaintiff and Defendant HENRY STREET CAPITAL 506, LLC ("**Borrower**") on _____ ___, 2023 (the "**Consent Judgment**"), (ii) default judgment against all non-appearing parties, (iii) amendment of the caption, and (iv) for other related relief set forth in the Motion and requested in the Verified Complaint, and on reading the Attorney's Statement of _____, dated _____, in support of the Motion, from which it appears that each of the defendants herein have been duly served with the Summons and Verified Complaint in this action; and that the Verified Complaint herein and Notice of Pendency containing all the particulars required to be stated therein was duly filed in the Office of the Clerk

1

of the County of Kings on the _____ day of _____, 20__, and has not been amended to add

new parties—or to embrace real property not described in the original Verified Complaint—and

Borrower having consented to this Consent Judgment as to the amounts due under the

Consolidated, Amended and Restated Commercial Promissory Note dated December 29, 2020 (the

"**Note**") and Consolidated, Extended, Modified, Amended and Restated, Open-End Commercial

Mortgage, Security Agreement and Fixture Filing dated December 29, 2020 (the "**Mortgage**") set

forth in the Verified Complaint, and that the mortgaged premises commonly known as 506 Henry

Street, Brooklyn, NY 11231 (the "**Premises**") given as a security for the Mortgage can be sold in

one parcel,

NOW, upon proof of due notice of this application upon all parties who had not waived the

same, and upon proof of service of the Order as provided therein,

ON MOTION of _____, attorneys of record for Plaintiff, it is

ORDERED that the Motion is granted; and it is further

ORDERED, ADJUDGED AND DECREED, that the Premises, or such part thereof as may

be sufficient to discharge the mortgage debt, the expenses of the sale and the costs of this action

as provided by the Real Property Actions and Proceedings Law be sold, in one parcel, at public

auction            at            _____,            located            at

_____,   on   a   _____(day)   at

_____:_____ A.M/P.M., by and under the direction of _____, who is

hereby appointed Referee for that purpose; provided that said Referee shall conduct the sale of the

Property; that the said Referee shall set the date of sale and give public notice of the time and place

of sale in accordance with RPAPL 231 and applicable law, as well as the practice of this Court, in

_____(publication); and it is further

2

ORDERED, ADJUDGED AND DECREED that said Referee shall accept at such sale the highest bid offered by a bidder, who shall be identified upon the court record, and shall require that such successful bidder immediately pay to the Referee in cash or certified or bank check payable to such Referee, ten percent of the sum bid and shall execute Terms of Sale for the purchase of the Property, unless such successful bidder is the Plaintiff herein (or a subsidiary of Plaintiff), in which case, no deposit against the purchase price shall be required; and it is further

ORDERED, ADJUDGED AND DECREED that in the event that the first successful bidder fails to immediately pay the ten percent deposit as provided herein or fails to execute the Terms of Sale immediately following the bidding upon the Property, the Property shall thereafter immediately, on the same day, be reoffered at auction; and it is further

ORDERED, ADJUDGED AND DECREED that the closing of title shall take place at the office of the Referee, or at such other location as the Referee shall determine, within forty-five (45) days after such sale unless otherwise stipulated by all parties. The Referee shall transfer title to the successful bidder at the auction, or its nominee. Any delay or adjournment of the closing date beyond forty-five (45) days may be stipulated among the parties, with the Referee's consent, up to ninety (90) days from the date of sale, but any adjournment beyond ninety (90) days may be set only with the approval of this Court; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee deposit all funds received pursuant to this Order in his own name as Referee, in the Referee's I.O.L.A. account maintained for legal clients at a bank within the State of New York or in an FDIC-insured bank of the Referee's choice within the State of New York or in _____ Bank; and it is further

ORDERED, ADJUDGED AND DECREED that said Referee on receiving the proceeds of such sale shall forthwith pay therefrom:

3

FIRST: The statutory fees and commissions of said Referee pursuant to CPLR §8003(b) which shall not exceed $500.00 unless the sale price (the amount of the accepted bid) exceeds $50,000.00. In the event the sale price exceeds fifty thousand dollars and additional compensation (including commissions) in excess of $500.00 is sought pursuant to CPLR §8003(b), and if no surplus monies are produced by the sale, the parties may present a stipulation, signed by the Referee and all parties appearing, agreeing to a stated sum, to be so ordered by the Court. Where surplus monies will be available following distribution of sums as provided herein, or where the parties are unable to agree to the Referee's proper compensation under CPLR §8003(b), application shall me made to this Court on notice to all parties known to be entitled to claim against any surplus monies, including the defaulting owner of the equity of redemption. Such application shall be promptly submitted to the Court within five (5) days of the transfer of the deed and prior to filing the Report of Sale. The five (5) day period for payment of surplus money into Court as set forth in RPAPL §1354(4), and the thirty (30) day period set forth in RPAPL §1355 for the filing of the Report of Sale shall be deemed extended pending the decision of the Court regarding such application. In the event a scheduled sale is canceled or postponed, pursuant to CPLR § 8003(a), Plaintiff shall compensate the Referee in the sum of $250.00 for each adjournment or cancellation unless the Referee has requested the delay. Such compensation may be recouped from the proceeds of sale as a cost to Plaintiff. This Order shall constitute the necessary prior authorization for compensation as set forth herein. No compensation in excess of $750.00, including compensation authorized pursuant to CPLR § 8003(a) for computation of the sum due to Plaintiff, may be accepted by the Referee without Court approval and compliance with the filing provisions of Section 36.4 of the Rules of the Chief Judge.

SECOND: The expenses of the sale, including the cost of advertising as shown on the bills presented and certified by said Referee to be correct, copies of which shall be annexed to the Report of Sale.

THIRD: In Plaintiff's sole and absolute discretion, pursuant to Real Property Actions and Proceedings Law §1354, in accordance with their priority according to law: taxes, assessments, sewer rents, water rates and any charges placed upon the Property by a city agency which have priority over the foreclosed Mortgages, which are liens on the Property at the time of sale with such interest or penalties which may have lawfully accrued thereon to the date of payment.

FOURTH: Said Referee shall then pay to Plaintiff or its attorney the sum of $_____ for legal fees incurred as of the date of the execution of this Consent Judgment, plus the additional sum of $_____ for costs and disbursements in this action, for a total amount of $_____ to be taxed by the Clerk and inserted herein, with interest from the date hereof, together with an additional allowance of $_____ hereby awarded to Plaintiff in addition to costs with interest thereon from the date thereof, and also the sum of $_____, said amount due and owing to Plaintiff under the Note and Mortgage as stipulated by Borrower Defendants, which includes unpaid principal balance on the Note in the amount of $_____, interest ~~and default~~ calculated at the total amount of 11.5% in the amount of $_____ as of _____, together with additional interest accruing thereafter at the *per diem* rate of $_____ pursuant to the terms of the Note and Mortgage until the indebtedness is paid in full, or so much thereof as the purchase money of the Property will pay of the same, plus other fees and costs in the amount of $_____ together with above amount awarded to Plaintiff as reasonable legal fees, together with any additional advances as provided for in the Note and Mortgage which Plaintiff may have made for taxes, insurance,

5

principal and interest and any other charges due to prior mortgages or to maintain the Property

pending consummation of this foreclosure sale, not previously included in the computation, upon

presentation to the Referee of receipts for said expenditures, all together with interest thereon

pursuant to the Note and Mortgage as above provided. Copies of such receipts for additional said

advances shall be annexed to the Referee's Report of Sale. Plaintiff shall timely move to confirm

the Referee's Report of Sale pursuant to RPAPL § 1355; and it is further

ORDERED, ADJUDGED AND DECREED that in the case the Plaintiff be the purchaser

of said Property at said sale, said Referee shall not require Plaintiff to pay in cash the entire amount

bid at said sale, but shall execute and deliver only to Plaintiff a deed of the Property sold upon the

payment to said Referee of the sum awarded to him or her under the above provisions marked

"FIRST", "SECOND", and "THIRD" if such expenses were paid by the Referee, or in lieu of the

payment of said last mentioned amounts, upon filing with said Referee receipts of the proper

municipal authorities showing payment thereof, as applicable. The balance of the amount bid, after

deducting therefrom the aforementioned payments to the Referee for compensation and expenses,

advertising expenses, taxes, assessments, sewer rents, water rates, and priority liens of a city

agency, shall be allowed to Plaintiff and applied by said Referee upon the amounts due to Plaintiff

as specified in item marked "FOURTH." If upon so applying the balance of the amount bid, there

shall be a surplus over and above the said amounts due to Plaintiff, Plaintiff shall pay to the said

Referee, upon delivery to Plaintiff of said Referee's deed, the amount of such surplus which shall

be applied by the Referee, upon motion made pursuant to RPAPL § 1351(3) and proof satisfactory

to the Referee of the sums due thereon, to any subordinate mortgage duly recorded against the

Property, pursuant to RPAPL § 1354(3), which payment shall be reported in the Referee's Report

of Sale. Any surplus remaining after all payments as herein provided shall be deposited into Court

6

4880-9755-3780.2
9821796 v1

in accordance with RPAPL § 1354(4) and the Referee shall immediately give notice of such surplus to the owner of the Property as identified by Plaintiff at the time of the sale; and it is further

ORDERED, ADJUDGED AND DECREED that said Referee take the receipt of Plaintiff or Plaintiff's attorney for the amounts paid as hereinbefore directed in item marked "FOURTH", and file it with her Report of Sale, that she deposit the surplus monies, if any, with the Kings County Clerk within five (5) days after the same shall be received unless such period be deemed extended by the filing of an application for additional compensation as set forth herein, to the credit of this action, to be withdrawn only upon order of the Court, signed by a Justice of the Court; that said Referee make her Report of such Sale under oath showing the disposition of the proceeds of the sale, accompanied by the vouchers of the persons to whom payment was made, and file it with the Kings County Clerk within thirty (30) days after completing the sale and executing the proper conveyance to the purchaser or within thirty (30) days of the decision of the court with respect to any application for additional compensation; and it is further

ORDERED, ADJUDGED AND DECREED, that if the proceeds of such sale be insufficient to pay the amount reported due to Plaintiff with interest and costs as aforesaid, then any deficiency shall be determined and treated in accordance with and subject to the terms of the Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and its Affiliated Debtors, as amended and confirmed by the United States Bankruptcy Court for the District of New Jersey in *IN RE NATIONAL REALTY INVESTMENT ADVISORS, LLC, et al.*, Bankr. D.N.J. (the "**Bankruptcy Court**") Case No. 22-14539 (JKS) (the "**Confirmed Plan**") and the Bankruptcy Court's order confirming same (the "**Confirmation Order**"); and it is further

ORDERED, ADJUDGED AND DECREED, that pursuant to the terms of the Confirmed Plan and the Confirmation Order, this judgment shall not take effect and shall be void and without

7

4880-9755-3780.2
9821796 v1

effect unless (1) the Challenge Period (as that term is defined in the Confirmation Order) has expired and (2) no challenge or objection described thereunder has been commenced; *provided, however,* that if a challenge and/or objection to claim as described therein is commenced, over which the Bankruptcy Court shall have exclusive jurisdiction, then this judgment shall remain ineffective for so long as that challenge or objection to claim is pending and shall be fully subject to the outcome of such challenge or objection to claim by way of agreement or a final order or judgment ; and it is further

ORDERED, ADJUDGED AND DECREED, that the purchaser or purchasers at such sale be let into possession on production of the Referee's deed or deeds; and it is further

ORDERED, ADJUDGED AND DECREED, that each and all of the defendants in this action, and all persons claiming under any of them after the filing of such Notice of Pendency of this action, be and they are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said Property and each and every part thereof; and it is further

ORDERED, ADJUDGED AND DECREED, that said Property is to be sold in one parcel in "as is" physical order and condition on the day of sale, subject to any state of facts that an inspection of the Property would disclose, any state of facts that an accurate survey of the Property would show, any covenants, restrictions, declarations, reservations, easements, right of way and public utility agreements of record, any building and zoning ordinances of the municipality in which the Property is located and possible violations of same, any rights of tenants or persons in possession of the subject Property, prior liens of record, if any, except those liens addressed in section 1354 of the Real Property Actions and Proceedings law, and any equity of redemption of

8

the United States of America to redeem the Property within 120 days from the date of sale. Risk of loss shall not pass to purchaser until closing of title; and it is further

ORDERED that in absence of the Referee, the Court may designate a Substitute Referee forthwith; and it is further

ORDERED that the Referee appointed herein is subject to the requirements of Rule 36.2(c) of the Chief Judge, and if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall notify the Appointing Judge forthwith; and it is further

ORDERED that a copy of this Judgment with Notice of Entry shall be served upon the designated Referee, the owner of the equity of redemption as of the date of this Order, any tenants named in this action and any other party entitled to notice within twenty (20) days of entry and no less than thirty (30) days prior to sale. A description of the Property is annexed hereto as Schedule A and made a part hereof; and it is further

ORDER that the provisions of RPAPL §1351(1) directing that the mortgaged premises be sold within ninety (90) days of the date of judgment is not applicable to this Consent Judgment, which has been entered into as part of the Confirmed Plan and Confirmation Order.


ENTER:

_____
J.S.C.

Consented to by:

[SIGNATURES ON NEXT PAGE]

9

**BORROWER:**

HENRY STREET CAPITAL 506, LLC
a New York limited liability company

By:_____

Title:_____

STATE OF _____)
                                                    ) ss.
COUNTY OF _____)

     The foregoing instrument was acknowledged before me this _____ day of _____, 202_, by _____ to me personally known, who, being by me duly sworn, did say that he is a _____ of Henry Street Capital 506, LLC, a New York limited liability company, and that the Agreement was signed on behalf of the limited liability company upon proper limited liability company authority acknowledged said instrument to be the free act and deed of the limited liability company.

     In testimony whereof, I have hereunto set my hand and seal on the day and year first above written.

_____
     Notary Public

_____
     Printed Name of Notary
My Commission Expires:

_____

[SEAL]

4880-9755-3780.2
9821796 v1

## SCHEDULE A
## PROPERTY DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN **KINGS** COUNTY, STATE OF **NEW YORK**, AND IS DESCRIBED AS FOLLOWS:

BEGINNING at a point on the northwesterly side of Henry Street, distant 50 feet southwesterly from the corner formed by the intersection of the northwesterly side of Henry Street with the southwesterly side of Sackett Street;

Running thence northwesterly parallel with Sackett Street, and part of the distance through a party wall, 96 feet;

Thence southwesterly parallel with Henry Street, 25 feet;

Thence southeasterly parallel with Sackett Street, and part of the distance through a party wall, 96 feet to the northwesterly side of Henry Street; and

Thence northeasterly along the northwesterly side of Henry Street, 25 feet to the point or place of beginning.

**Property commonly known as: 506 Henry Street, Brooklyn, NY 11231.**

4871-0128-0112, v. 1

11

4880-9755-3780.2
9821796 v1