**ICE MILLER LLP**
Louis T. DeLucia, Esq.
Alyson M. Fiedler, Esq.
1500 Broadway, Suite 2900
New York, NY 10036
Phone: (212) 835-6312
louis.delucia@icemiller.com
alyson.fiedler@icemiller.com

*Counsel to AIRN Liquidation Trust Co., LLC in its capacity as Liquidation Trustee of the AIRN Liquidation Trust*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC,<br><br>                Debtor. | Chapter 11<br><br>Case No: 22-14539-JKS |
| AIRN LIQUIDATION TRUST CO., LLC, in its capacity as Liquidation Trustee of the AIRN LIQUIDATION TRUST,<br><br>                Plaintiff,<br><br>v.<br><br>THOMAS N. SALZANO, REY E. GRABATO, II, REY GRABATO, LLC, THOMAS NICHOLAS SALZANO, LLC, OLENA BUDINSKA, JAMIE SAMUL, THOMAS J. SALZANO, YULIA KRUTOY, GEORGINETTE CLEOFE, MIABELLE SALZANO, LUCA GENTILE, and NATALIA SALZANO a/k/a NATALYA KHARITONOVA,<br><br>                Defendants. | Adv. Pro. No. 24-_____-JKS |

4853-7021-5595.4

## COMPLAINT

AIRN Liquidation Trust Co., LLC (the "Liquidation Trustee"), in its capacity as Liquidation Trustee of the AIRN Liquidation Trust established under the *First Amended Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and its Affiliated Debtors* [Dkt. No. 3256] (as amended and supplemented, the "Plan") and the order confirming same [Dkt. No. 3599] (the "Confirmation Order"), by and through its undersigned counsel, brings this complaint (the "Complaint") against Thomas N. Salzano ("Nick Salzano"), Rey E. Grabato, II ("Rey Grabato"), Rey Grabato, LLC, Thomas Nicholas Salzano, LLC, Olena Budinska ("Budinska"), Jamie Samul ("Samul"), Thomas J. Salzano ("TJ Salzano"), Yulia Krutoy ("Krutoy"), Georginette Cleofe ("Cleofe"), Miabelle Salzano ("Miabelle Salzano"), Luca Gentile ("Gentile"), and Natalia Salzano a/k/a Natalya Kharitonova ("Natalia Salzano") (collectively, the "Defendants"). The Liquidation Trustee hereby alleges as follows:

## NATURE OF THE COMPLAINT

1. The Liquidation Trustee seeks to recover millions of dollars fraudulently transferred directly or indirectly from debtors National Realty Investment Advisors, LLC ("NRIA"), NRIA Partners Portfolio Fund I LLC (the "Fund"), Guttenberg Capital 416-22 69th Street LLC ("69th Street"), and Web Marketing Associates, LLC ("Web Marketing" and with NRIA, the Fund, and 69th Street, the "Initial Transferor Debtors") to Defendants at the direction of Nick Salzano and Rey Grabato.

2. Nick Salzano was the undisclosed control person of NRIA, who, along with Rey Grabato, has been charged with allegations of federal securities violations and fraud in connection with NRIA. *See* Complaint, *SEC v. NRIA, Grabato, O'Brien, and Scuttaro*, Case No. 2:22-cv-06066 (Oct. 13, 2022), Docket No. 1; *see also* Indictment, *United States of America v. Salzano and Grabato,* Case No. 2:22-cr-00690 (Oct. 12, 2022), Docket No. 19.

4853-7021-5595.4

3. The Defendants other than Nick Salzano and Rey Grabato are all individuals with personal connections to or entities controlled by either Nick Salzano or Rey Grabato.

4. The transfers to the Defendants provided no benefit or consideration to the Debtors' estates, were fraudulent, and should be avoided and turned over to the Liquidation Trustee for the benefit of the victims of Rey Grabato's and Nick Salzano's fraud.

**JURISDICTION AND VENUE**

5. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and the *Standing Order*, dated July 23, 1984, referring all cases under the Bankruptcy Code to the bankruptcy judges for this District, as amended on September 18, 2012. Standing Order of Reference 12-1 (Simandle, C.J.).

6. The claims asserted in this adversary proceeding are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (H).

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), this adversary proceeding relates to the chapter 11 bankruptcy cases of NRIA and its affiliated Debtors (the "Debtors"), which were jointly administered under Case No. 22-14539-JKS (the "Chapter 11 Cases").[1]

9. This Court has personal jurisdiction over the Defendants consistent with the Constitution and laws of the United States, as well as Bankruptcy Rule 7004(f).

---

[1] All of the Chapter 11 Cases, other than that of National Realty Investment Advisors, LLC (Case No. 22-14539 (JKS)), were closed effective as of August 25, 2023 at 6:30 p.m. (EST) in accordance with the *Final Decree Closing Certain Cases and Amending Caption of Remaining Case* [Docket No. 3854] entered by this Court on December 4, 2023.

10. Also pursuant to Bankruptcy Rule 7008, the Liquidation Trustee consents to the entry of final orders or judgments by this Court, in the event it is determined that this Court cannot do so consistent with Article III of the United States Constitution absent the consent of the parties.

## BASIS FOR RELIEF REQUESTED

11. The statutory and legal bases for the relief requested in this Complaint are sections 105, 502, 510, 544, 547, 548, 550, and 551 of Title 11 of the United States Code (the "Bankruptcy Code"); section 6502 of title 26 of the United States Code; section 3306(b) of title 28 of the United States Code; New Jersey Statutes Annotated ("N.J.S.A.") § 25:2-25; and the relief requested herein is sought in compliance with Bankruptcy Rules 7001 and 7004.

## PARTIES

12. Plaintiff is the Liquidation Trustee of the AIRN Liquidation Trust appointed pursuant to the Plan and Liquidation Trust Agreement and approved by the Confirmation Order [Docket No. 3599].

13. Pursuant to Article IV.F of the Plan, the Liquidation Trustee retains all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or estates' causes of action and avoidance actions and any and all of the Contributed Claims of Contributing Investors (as those terms are defined in the Plan).

14. Rey Grabato is an individual who was NRIA's President and Chief Executive Officer until February 2022 and is one of the individuals who orchestrated the Ponzi scheme at issue in this case and the underlying bankruptcy cases. Upon information and belief, Rey Grabato is currently in the Philippines.

15. Rey Grabato, LLC is, upon information and belief, an entity created by Rey Grabato or Nick Salzano that was used in part to open a bank account to pay the personal expenses

4

of Nick Salzano. It is unclear if Rey Grabato, LLC has been formally organized under the laws of any state. Upon information and belief, Rey Grabato, LLC's last known mailing address is 123 Town Square Pl., Unit 645, Jersey City, NJ 07310-1765.

16. Thomas Nicholas Salzano, LLC is a Delaware limited liability company that, upon information and belief, was used in part to open a bank account to pay the personal expenses of Nick Salzano. Thomas Nicholas Salzano, LLC's registered agent is National Registered Agents, Inc., 1209 Orange Street, Wilmington, DE 19801.

17. Nick Salzano is one of the individuals who orchestrated the Ponzi scheme at issue in this case and the underlying bankruptcy cases. Upon information and belief, Nick Salzano currently resides at 2101 Glen Dr, Cedar Knolls, NJ 07927.

18. Budinska is an individual who, upon information and belief, is the third ex-wife of Nick Salzano. Upon information and belief, Budinska currently resides at 5289 NW 112th Way, Coral Springs, FL 33076.

19. Samul is an individual who, upon information and belief, is the first ex-wife of Nick Salzano. Upon information and belief, Samul currently resides at 6742 Southport Dr, Boynton Beach, FL 33472.

20. TJ Salzano is an individual who, upon information and belief, is the son of Nick Salzano. Upon information and belief, TJ Salzano currently resides at 31 River Ct., Apt. 1601, Jersey City, NJ 07310.

21. Krutoy is an individual who, upon information and belief, is a former girlfriend of Nick Salzano. Upon information and belief, Krutoy currently resides at 1916 Avenue X, Apt 8C, Brooklyn, NY 11235.

22. Cleofe is an individual who, upon information and belief, is the ex-wife of Rey Grabato. Upon information and belief, Cleofe currently resides at 14356 Meridian Ave N, Seattle, WA 98133.

23. Natalia Salzano is an individual who, upon information and belief, is the second ex-wife of Nick Salzano. Upon information and belief, Natalia Salzano currently resides at 1575 40th St, Brooklyn, NY 11218.

24. Miabelle Salzano is an individual who, upon information and belief, is the adopted daughter of Nick Salzano. Upon information and belief, Miabelle Salzano currently resides at 1107 Buena Vista, Apt 5, San Clemente, CA 92672.

25. Gentile is an individual who, upon information and belief, is an associate of Nick Salzano. Upon information and belief, Gentile currently resides at 1520 Joseph St, North Brunswick, NJ 08902.

## BACKGROUND AND FACTS[2]

### NRIA's Business Structure

26. NRIA is a Delaware limited liability company that was formed on November 27, 2006, by Nick Salzano and Rey Grabato.

27. NRIA's principal place of business was located at 1 Harmon Plaza, Floor 9, Secaucus, New Jersey 07094.

28. Rey Grabato, Nick Salzano, and others operated the Debtors as a massive Ponzi scheme, soliciting over $600 million from unsuspecting investors.[3]

---

[2] The allegations in this Complaint are based upon the documents and information available to Plaintiff at the time of this filing and expressly remain subject to amendment as further documents and information are discovered.

[3] On February 27, 2024, Nick Salzano pleaded guilty to securities fraud, conspiracy to commit wire fraud, and conspiracy to defraud the United States in *United States of America v. Thomas Nicholas Salzano*, No. 2:22-cr-00690–EP-1 (D.N.J.). In his plea agreement and allocution, Nick

6

29. NRIA claimed to operate as a real estate investment, management, and development firm that, since its inception, had developed dozens of luxury properties in Florida, New York, New Jersey, and Pennsylvania. NRIA also claimed that it would pay extraordinarily high guaranteed returns to its investors, and that its investors would be paid their return of capital first. In reality, NRIA operated like a Ponzi scheme, using investors' own contributions to pay other investors' distributions, orchestrate an extensive marketing effort to attract new investors, and divert funds and pay the personal expenses of Nick Salzano, Rey Grabato, their family members, and others. Any actual profits were not allocated in full to investor returns as promised, but instead went to Nick Salzano, Rey Grabato, their family members, and countless other individuals and entities.

30. Since its inception, NRIA offered investors interests in a series of limited liability companies ("LLCs") as investments in developing real estate properties. Each LLC purportedly held a single investment property, and NRIA represented to each investor which property the investors were investing in and from which property the investors would purportedly receive profits. This opportunity was marketed to investors as securities exempt from registration under applicable securities laws.

31. On February 5, 2018, Nick Salzano and Rey Grabato, with the assistance, participation and in collaboration with others, formed the Fund. Since its inception, NRIA has served as manager of the Fund and its investments. The primary goal of the Fund was to "roll up" pre-existing investors in individual property LLCs into one pooled fund, and to solicit investments from additional investors. The creation of the Fund made it more difficult for investors to track the

---

Salzano admitted to operating the Debtors as a Ponzi scheme by admitting under oath to each of the elements of a Ponzi scheme. *See* Plea Agreement, Case No. 22-cr-00690 [Dkt. No. 86]; Plea H'rg Tr. at 39:9–21.

progress on any particular property in which they were invested and the profits supposedly flowing therefrom.

32. The Fund was purportedly managed and operated by Nick Salzano, Arthur S. Scuttaro a/k/a Arthur Scutaro ("Scuttaro"), D. Coley O'Brien ("O'Brien"), and Rey Grabato. Rey Grabato participated in management as a signatory, and his name was used extensively. However, it appears that Rey Grabato permitted Nick Salzano full license to use his name and signature stamp to handle NRIA's affairs.

33. According to its Private Placement Memoranda and amendments thereto, for all relevant time periods, Rey Grabato was president of the Fund, and the Fund was managed by NRIA. NRIA was owned by Rey Grabato and NRIA Capital Partners, Inc. ("NRIA Capital"). O'Brien, who served as Managing Director of the Fund, wholly owned NRIA Capital.

34. Shortly before the bankruptcy filing, Rey Grabato stepped down as Manager, President, and CEO of NRIA, and, upon information and belief, has fled the country.

**Pre-Petition Transfers to the Insider Initial Transferees**

35. Prior to the Petition Date and at the times relevant to this Complaint, Rey Grabato and/or Nick Salzano caused the Initial Transferor Debtors to transfer debtor funds to Rey Grabato or various entities controlled by Nick Salzano, Rey Grabato, or their associates, including the following:

   a. Thomas Nicholas Salzano LLC
   b. Rey Grabato LLC
   c. Rey Grabato
   d. Double Your Volume LLC
   e. Web Marketing LLC
   f. Referral Marketing LLC

(collectively the "Insider Initial Transferees").

8

4853-7021-5595.4

**Pre-Petition Transfers to the Defendants**

36. Prior to the Petition Date, Rey Grabato and/or Nick Salzano caused the Initial Transferor Debtors to transfer funds to the Defendants, either directly or through Insider Initial Transferees.

37. Rey Grabato received $3,888,804.14 in direct transfers of debtor funds from debtors NRIA and the Fund (collectively the "Grabato Transfers"). An accounting of the Grabato Transfers is attached as **Exhibit A**.

38. Rey Grabato, LLC received $796,500.00 in direct transfers of debtor funds from debtor NRIA (the "RG LLC Transfers"). An accounting of the RG LLC Transfers is attached as **Exhibit B**.

39. Thomas Nick Salzano, LLC received $446,457.00 in direct transfers of debtor funds from NRIA (the "TNS LLC Transfers"). An accounting of the TNS LLC Transfers is attached as **Exhibit C**.

40. The RG LLC Transfers and the TNS LLC Transfers were made for the benefit of Nick Salzano and, upon information and belief, certain other transfers to the Defendants were made for the benefit of Nick Salzano to, among other things, pay taxes on behalf of Salzano and covertly transfer funds to Salzano (collectively the "Nick Salzano Transfers").

41. Budinska received $1,326,000.00 in direct transfers of debtor funds from NRIA and is a subsequent transferee of $831,200.00 of debtor funds funneled through Insider Initial Transferees (collectively the "Budinska Transfers"). An accounting of the Budinska Transfers is attached as **Exhibit D**.

9

42. Samul is a subsequent transferee of $1,132,954.13 of debtor funds funneled through Insider Initial Transferees (collectively the "Samul Transfers"). An accounting of the Samul Transfers is attached as **Exhibit E**.

43. TJ Salzano received $50,000.00 in direct transfers of debtor funds from debtor NRIA (the "TJS Transfers"). An accounting of the TJS Transfers is attached as **Exhibit F**.

44. Krutoy is a subsequent transferee of $254,750.00 of debtor funds funneled through Insider Initial Transferees (collectively the "Krutoy Transfers"). An accounting of the Krutoy Transfers is attached as **Exhibit G**.

45. Cleofe is a subsequent transferee of $142,504.52 of debtor funds funneled through Insider Initial Transferees (collectively the "Cleofe Transfers"). An accounting of the Cleofe Transfers is attached as **Exhibit H**.

46. Miabelle Salzano is a subsequent transferee of $84,871.00 of debtor funds funneled through Insider Initial Transferees (collectively the "Miabelle Transfers"). An accounting of the Miabelle Transfers is attached as **Exhibit I**.

47. Gentile is a subsequent transferee of $30,000 of debtor funds funneled through Insider Initial Transferees (collectively the "Gentile Transfers"). An accounting of the Gentile Transfers is attached as **Exhibit J**.

48. Natalia is a subsequent transferee of $16,700.00 of debtor funds funneled through Insider Initial Transferees (collectively the "Natalia Transfers" and with the Grabato Transfers, the RG LLC Transfers, the TNS LLC Transfers, the Nick Salzano Transfers, the Budinska Transfers, the Samul Transfers, the TJ Salzano Transfers, the Krutoy Transfers, the Cleofe Transfers, the Miabelle Transfers, and the Gentile Transfers, the "Fraudulent Transfers"). An accounting of the Natalia Transfers is attached as **Exhibit K**.

49. A summary of the Fraudulent Transfers organized by Defendant is attached as **Exhibit L**. A summary showing the flow of funds to each Defendant organized by transferor is attached as **Exhibit M**.

50. Upon information and belief, transfers to Rey Grabato were allegedly on account antecedent debts purportedly owed to Rey Grabato, including compensation for his work at NRIA. In the year prior to the Petition Date, Rey Grabato received a total of $1,985,756.77 from debtors NRIA and the Fund (the "Grabato Preferential Transfers").

51. Upon information and belief, transfers to Budinska were allegedly on account of antecedent debts purportedly owed to Budinska, including compensation for a no-show job she held at debtor NRIA. In the year prior to the Petition Date, Budinska received a total of $195,000 from debtor NRIA (the "Budinska Preferential Transfers" and with the Grabato Preferential Transfers, the "Preferential Transfers").

**The Bankruptcy Filing**

52. On June 7, 2022 (the "Petition Date"), NRIA along with the Fund and over 130 affiliated Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

53. The Chapter 11 Cases were jointly administered pursuant to the *Order (A) Directing Joint Administration of Chapter 11 Cases and (B) Granting Related Relief* [Dkt. No. 27], entered on June 9, 2022.

**Plan Confirmation**

54. The Plan was filed on July 25, 2023, and subsequently confirmed by this Court on August 10, 2023. The Plan became effective on August 25, 2023 at 6:30 p.m. (EST).

55. As discussed above, the Plan provides that the Liquidation Trustee retains all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release,

11

waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or estates' causes of action and avoidance actions and any and all of the Contributed Claims of Contributing Investors (as those terms are defined in the Plan). Plan at IV.F; *see also* Exhibit D of the *Plan Supplement to the Joint Chapter 11 Plan of National Realty Investment Advisors*, *LLC* [Dkt. No. 2732] (expressly preserving all avoidance actions).

## COUNT I

### AVOIDANCE OF PREPETITION TRANSFERS AS ACTUAL FRAUDULENT TRANSFERS PURSANT TO 11 U.S.C § 544(b), N.J.S.A 25:2-25(a)(1), AND 11 U.S.C. § 548(a)(1)(A) AND RECOVERY AND PRESERVATION OF SAME UNDER 11 U.S.C §§ 550 AND 551
### (as to all Defendants)

56. The Liquidation Trustee repeats and realleges each of the preceding paragraphs, which are incorporated by reference as if set forth fully herein.

57. Pursuant to Article IV.F of the Plan, the Liquidation Trustee retains all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or estates' causes of action and avoidance actions and any and all of the Contributed Claims of Contributing Investors (as those terms are defined in the Plan). Thus, the Liquidation Trustee has standing to assert any and all causes of action the Debtors and the Contributing Investors have against the Defendants.

58. As set forth above, Rey Grabato, Nick Salzano, and others, using the Debtors, fraudulently operated a Ponzi scheme through which millions of dollars in funds were obtained and transferred from innocent investors to NRIA and its affiliates, including the Fund, in furtherance of the Ponzi scheme.

59. The Fraudulent Transfers constitute transfers of property of the Initial Transferor Debtors, which were obtained through fraud from the investors.

4853-7021-5595.4

60. The Fraudulent Transfers were made to or for the benefit of each recipient Insider Initial Transferee and/or Defendant.

61. Each Defendant is either the initial transferee or a subsequent transferee of the Fraudulent Transfers as set forth herein or the entity for whose benefit such Fraudulent Transfers were made.

62. The Fraudulent Transfers were made with actual intent to hinder, delay, or defraud creditors because, among other things, they were made in furtherance of and perpetuated the Ponzi scheme and fraudulently diverted assets for the benefit of Rey Grabato, Nick Salzano, and Defendants.

63. In the context of a Ponzi scheme, intent to defraud is presumed from the nature of the scheme itself.

64. NRIA had at least one creditor with an allowable unsecured claim that remained unsatisfied as of the Petition Date, including the Internal Revenue Service, which filed two unsecured proofs of claim (Claim Nos. 692 and 658).

65. Accordingly, the Liquidation Trustee is entitled to judgment (1) avoiding the Fraudulent Transfers under sections 548(a)(1)(A) and 544(b) of the Bankruptcy Code and New Jersey Revised Statute 2:2-25(a)(1); and (2) recovering and preserving the Fraudulent Transfers for the benefit of the estate under sections 550 and 551 of the Bankruptcy Code.

## COUNT II

**AVOIDANCE OF PREPETITION TRANSFERS AS CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C § 544(b), N.J.S.A. 25:2-25(a)(2) AND 25:2-27(a), AND 11 U.S.C § 548(a)(1)(B) AND RECOVERY AND PRESERVATION OF SAME UNDER 11 U.S.C §§ 550 AND 551
(as to all Defendants)**

66. The Liquidation Trustee repeats and realleges each of the preceding paragraphs, which are incorporated by reference as if set forth fully herein.

67. Pursuant to Article IV.F of the Plan, the Liquidation Trustee retains all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or estates' causes of action and avoidance actions and any and all of the Contributed Claims of Contributing Investors (as those terms are defined in the Plan). The Liquidation Trustee has standing to assert any and all causes of action the Debtors have against the Defendants.

68. The Fraudulent Transfers constitute transfers of property of the Initial Transferor Debtors, which were obtained through fraud from the investors.

69. The Fraudulent Transfers were made to or for the benefit of each recipient Insider Initial Transferees and/or Defendant.

70. Each Defendant is either the initial transferee or a subsequent transferee of the Fraudulent Transfers as set forth herein and in the exhibits hereto or the entity for whose benefit such Fraudulent Transfers were made.

71. The Initial Transferor Debtors did not receive reasonably equivalent value in exchange for the Fraudulent Transfers in that they were, among other things, not obligated to make payments to the Defendants, such payments were in furtherance of the fraud, or such payments were in excess of the value of services rendered.

72. The Initial Transferor Debtors had at least one creditor with an allowable unsecured claim that remained unsatisfied as of the Petition Date, including the Internal Revenue Service, which filed two unsecured proofs of claim (Claim Nos. 692 and 658).

73. On the dates that each of the Fraudulent Transfers was made, each of the Initial Transferor Debtors was (1) insolvent or became insolvent as a result of such transfer; (2) engaged in a business or a transaction, or was about to engage in a business or transaction, for which any

Document    Page 15 of 19

property remaining was an unreasonably small capital; and/or (3) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

74. Accordingly, the Liquidation Trustee is entitled to a judgment (1) avoiding the Fraudulent Transfers under sections 548(a)(1)(B) and 544(b) of the Bankruptcy Code and New Jersey Revised Statues §§ 25:2-25(a)(1) and 25:2-27(a); and (2) recovering and preserving the Fraudulent Transfers for the benefit of the estate under sections 550 and 551 of the Bankruptcy Code.

## COUNT III

**AVOIDANCE OF PREPETITION TRANSFERS AS PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C § 544(b), N.J.S.A. § 25:2-27(b), AND 11 U.S.C § 547 AND RECOVERY AND PRESERVATION OF SAME UNDER 11 U.S.C §§ 550 AND 551
(as to Rey Grabato and Budinska)**

75. The Liquidation Trustee repeats and realleges each of the preceding paragraphs, which are incorporated by reference as if set forth fully herein.

76. Pursuant to Article IV.F of the Plan, the Liquidation Trustee retains all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or estates' causes of action and avoidance actions and any and all of the Contributed Claims of Contributing Investors (as those terms are defined in the Plan). The Liquidation Trustee has standing to assert any and all causes of action the Debtors have against the Defendants.

77. The Preferential Transfers constitute transfers of property of NRIA and the Fund, which were obtained through fraud from investors.

78. The Preferential Transfers were made to or for the benefit of each of Rey Grabato and Budinska.

79. Each of the Preferential Transfers was on account of an antecedent debt.

15

80. Rey Grabato and Budinska are each "insiders" as that term is defined in 11 U.S.C. § 101(31) and N.J.S.A. § 25:2-22.

81. NRIA had at least one creditor with an allowable unsecured claim that remained unsatisfied as of the Petition Date.

82. On the dates that each of the Preferential Transfers was made, NRIA and the Fund were each insolvent.

83. Each of the Preferential Transfers was made within one year of the Petition Date.

84. Each of Rey Grabato and Budinska received more on account of the Preferential Transfers than they would have been entitled to receive in a hypothetical Chapter 7 liquidation.

85. The Liquidation Trustee has undertaken reasonable due diligence and taken account of reasonably knowable affirmative defenses in bringing these claims, including examining the Debtors' books and records.

86. Accordingly, the Liquidation Trustee is entitled to a judgment (1) avoiding the Preferential Transfers under sections 547 and 544(b) of the Bankruptcy Code and New Jersey Revised Statues § 25:2-27(b); and (2) recovering and preserving the Preferential Transfers for the benefit of the estate under sections 550 and 551 of the Bankruptcy Code.

## COUNT IV

**DISALLOWANCE OF ALL CLAIMS PURSUANT TO
SECTION 502(d) OF THE BANKRUPTCY CODE
(Against All Defendants)**

87. The Liquidation Trustee repeats and realleges each of the preceding paragraphs, which are incorporated by reference as if set forth fully herein.

88. Pursuant to section 502(d) of the Bankruptcy Code, the Liquidation Trustee objects to the allowance of any claim filed by or scheduled on behalf of any Defendants.

89. Pursuant to section 502(d) of the Bankruptcy Code, to the extent property is recoverable from any Defendant under sections 544(b), 547, or 548 of the Bankruptcy Code, any and all claims of such Defendants and/or their assignee against the Debtors must be disallowed until such time as the applicable Defendant pays the Liquidation Trustee the amounts and/or returned the property subject to avoidance. To the extent any Defendant asserts any right to payment from the AIRN Liquidation Trust, such claim must be disallowed until such time as any avoidable transfers are repaid.

90. Based upon the foregoing, the Liquidation Trustee is entitled to a judgment disallowing any and all claims that Defendants may assert in these Chapter 11 Cases.

## COUNT V

### EQUITABLE SUBORDINATION
**(Against All Defendants)**

91. The Liquidation Trustee repeats and realleges all prior applicable allegations as if fully set forth herein.

92. To the extent any Defendant has filed one or more Proofs of Claim or may otherwise assert a claim in any manner against the Debtors or the AIRN Liquidation Trust, such claims should be equitably subordinated to the claims of the Debtors' general unsecured creditors and Investors.

93. As set forth herein, each of the Defendants engaged in and/or benefitted from a pattern of misconduct and inequitable conduct at the expense of the Debtors, their estates, and the Investors and creditors, thereby harming Investors.

94. Under the principles of equitable subordination, any claims scheduled in favor of or filed by any of the Defendants are subject to subordination pursuant to section 510(c) of the Bankruptcy Code.

95. Accordingly, the Liquidation Trustee is entitled to a judgment finding that any claim of a Defendant is subject to equitable subordination.

## PRAYER FOR RELIEF

**WHEREFORE,** the Liquidation Trustee respectfully requests the entry of a final judgment in its favor against each of the Defendants as follows:

a. On Count I, a judgment against each Defendant (1) avoiding the Fraudulent Transfers to that Defendant under sections 548(a)(1)(A) and 544(b) of the Bankruptcy Code, New Jersey Revised Statute 2:2-25(a)(1), 26 U.S.C. § 6502, and 28 U.S.C. § 3306(b); and (2) recovering and preserving the Fraudulent Transfers from each such Defendant under sections 550 and 551 of the Bankruptcy Code;

b. On Count II, judgment against each Defendant (1) avoiding the Fraudulent Transfers to that Defendant under sections 548(a)(1)(B) and 544(b) of the Bankruptcy Code, New Jersey Revised Statues §§ 25:2-25(a)(1) and 25:2-27(a), 26 U.S.C. § 6502, and 28 U.S.C. § 3306(b); and (2) recovering and preserving the Fraudulent Transfers under sections 550 and 551 of the Bankruptcy Code;

c. On Count III, judgment against each of Rey Grabato and Budinska (1) avoiding the Preferential Transfers to that Defendant under sections 547 and 544(b) of the Bankruptcy Code and New Jersey Revised Statues § 25:2-27(b); and (2) recovering and preserving the Preferential Transfers under sections 550 and 551 of the Bankruptcy Code;

d. On Count IV, a judgment against all Defendants disallowing all claims filed by or scheduled on behalf of any Defendant as set forth herein;

e. On Count V, a judgment against all Defendants equitably subordinating any claims filed or that may be asserted by any Defendant as set forth herein;

4853-7021-5595.4

f. Awarding the Liquidation Trustee interest on all sums awarded at the applicable judgment rate, plus the costs of suit; and

g. Awarding such other and further relief as the Court may deem just and proper.

Dated: June 7, 2024

**ICE MILLER LLP**

 */s/ Louis T. DeLucia*
Louis T. DeLucia, Esq.
Alyson M. Fiedler, Esq.
Ryan Hibbard, Esq. (admitted *pro hac vice*)
1500 Broadway, Suite 2900
New York, NY 10036
Phone: (212) 835-6312
louis.delucia@icemiller.com
alyson.fiedler@icemiller.com
ryan.hibbard@icemiller.com

John C. Cannizzaro (admitted *pro hac vice*)
250 West Street, Suite 700
Columbus, OH 43215
Phone: (614) 462-2700
john.cannizzaro@icemiller.com

*Counsel to the AIRN Liquidation Trust Co., LLC in its capacity as Liquidation Trustee of the AIRN Liquidation Trust*

4853-7021-5595.4