UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with
D.N.J. LBR 9004-1(b)**

**ICE MILLER LLP**
Louis. T. DeLucia, Esq.
Alyson M. Fiedler, Esq.
Nathan D. Basalyga, Esq. (admitted *pro hac vice*)
Alexandria A. Lundberg, Esq. (*pro hac vice* forthcoming)
1500 Broadway
Suite 2900
New York, NY 10036
Phone: 212-835-6312
louis.delucia@icemiller.com
alyson.fiedler@icemiller.com
nathan.basalyga@icemiller.com
alexandria.lundberg@icemiller.com

*Counsel to AIRN Liquidation Trust Co., LLC
in its capacity as Liquidation Trustee of
the AIRN Liquidation Trust*

| | |
|---|---|
| In re:<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No: 22-14539 (JKS)<br><br>Hearing Date: **July 30, 2024, at 10:00 a.m. ET** |

### NOTICE OF HEARING ON MOTION TO (I) CLASSIFY CERTAIN CLAIMS AS CLASS 6 JVA CLAIMS IN ACCORDANCE WITH THE CONFIRMED JOINT PLAN AND (II) DISALLOW CERTAIN CLAIMS TO THE EXTENT SUCH CLAIMS ARE DUPLICATIVE

**PLEASE TAKE NOTICE** that the AIRN Liquidation Trust Co., LLC, in its capacity as Liquidation Trustee (the "Liquidation Trustee") of the AIRN Liquidation Trust (the "Liquidation Trust") established under the *First Amended Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors, LLC and its Affiliated Debtors* [Docket No. 3256] (as amended and supplemented, the "Plan") and the order confirming same [Docket No. 3599] (the "Confirmation Order"), by and through its undersigned counsel, filed on July 5, 2024, the *Motion to (I) Classify*

*Certain Claims as Class 6 JVA Claims in Accordance with the Confirmed Joint Plan and (II) Disallow Certain Claims to the Extent Such Claims are Duplicative* (the "Classification Motion").

**PLEASE TAKE FURTHER NOTICE** that oral argument is requested in the event an objection to the Classification Motion is timely filed.

**PLEASE TAKE FURTHER NOTICE** the Classification Motion sets forth the relevant factual bases upon which the relief requested should be granted. The Liquidation Trustee shall also rely upon the accompanying *Certification Louis T. DeLucia* filed concomitantly with Classification Motion. A Proposed Order granting the relief requested in the Classification Motion is attached thereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "**Hearing**") on the Classification Motion will be held on **July 30, 2024, at 10:00 a.m. (ET)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Classification Motion must be filed with the Clerk of the Court, together with proof of service thereof, and served so as to be ***actually received*** no later than **4:00 p.m. (ET) on July 23, 2024** by counsel to the Liquidation Trustee, Ice Miller LLP, 1500 Broadway, Suite 2900, New York, New York, 10036, Attn.: Louis T. DeLucia, Esq. and Alyson M. Fielder, Esq.

**PLEASE TAKE FURTHER NOTICE** that objections to the Classification Motion, if any, must: (a) be in writing; (b) comply with the Bankruptcy Rules, the Local Rules, and other case management rules or orders of this Court; and (c) state with particularity the legal and factual basis for the objection.

**PLEASE TAKE FURTHER NOTICE** that unless an objection is timely filed and served in accordance with this notice, it may not be considered by the Bankruptcy Court. In the event no objections are filed, the relief requested in the Classification Motion may be granted without a hearing.

Dated: July 8, 2024

                                              **ICE MILLER LLP**

                                              */s/ Louis T. DeLucia*
                                              Louis. T. DeLucia, Esq.
                                              Alyson M. Fiedler, Esq.
                                              Nathan D. Basalyga, Esq. (admitted *pro hac vice*)
                                              Alexandria Lundberg, Esq. (*pro hac vice* forthcoming)
                                              1500 Broadway
                                              Suite 2900
                                              New York, NY 10036
                                              Phone: 212-835-6312
                                              louis.delucia@icemiller.com
                                              alyson.fiedler@icemiller.com

nathan.basalyga@icemiller.com
alexandria.lundberg@icemiller.com

*Counsel to AIRN Liquidation Trust Co., LLC*
*in its capacity as Liquidation Trustee of*
*the AIRN Liquidation Trust*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with
D.N.J. LBR 9004-1(b)**

**ICE MILLER LLP**
Louis. T. DeLucia, Esq.
Alyson M. Fiedler, Esq.
Nathan D. Basalyga, Esq. (admitted *pro hac vice*)
Alexandria A. Lundberg, Esq. (*pro hac vice* forthcoming)
1500 Broadway
Suite 2900
New York, NY 10036
Phone: 212-835-6312
louis.delucia@icemiller.com
alyson.fiedler@icemiller.com
nathan.basalyga@icemiller.com
alexandria.lundberg@icemiller.com

*Counsel to AIRN Liquidation Trust Co., LLC
in its capacity as Liquidation Trustee of
the AIRN Liquidation Trust*

| | |
|---|---|
| In re: | Chapter 11 |
| NATIONAL REALTY INVESTMENT ADVISORS, LLC, | Case No: 22-14539 (JKS) |
| Debtor. | |

## MOTION TO (I) CLASSIFY CERTAIN CLAIMS AS CLASS 6 JVA CLAIMS IN ACCORDANCE WITH THE CONFIRMED JOINT PLAN AND (II) DISALLOW CERTAIN CLAIMS TO THE EXTENT SUCH CLAIMS ARE DUPLICATIVE

AIRN Liquidation Trust Co., LLC (the "Liquidation Trustee"), in its capacity as

Liquidation Trustee of the AIRN Liquidation Trust ("Liquidation Trust"), established pursuant to

the *First Amended Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors,*

1

*LLC and its Affiliated Debtors* [Case No. 22-14539, Dkt. No. 3256] (as amended and supplemented, the "Plan") and the Order confirming the Plan (the "Confirmation Order"), which, as of the Effective Date, was assigned and holds the claims of Contributing Investors (as the term is defined in the Plan), by and through its undersigned counsel, hereby moves (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order") (i) classifying certain claims filed by DMR Construction Services, Inc. ("DMR"); 416 69 St. Development, Inc. ("69 St."), 6903 Adams St. Development LLC ("Adams St."), Global PM Support, LLC ("Global PM"), and North Hudson Development, LLC ("Hudson" and collectively with 69 St., Adams St., and Global PM, the "Echevarria Entities"); and U.S. Construction, Inc. (together with its successor/*alter ego* U.S. Development, LLC, "USC") are Class 6 JVA Claims under the Plan, and (ii) disallowing such claims to the extent they are duplicative of other filed claims. In support of this Motion, the Liquidation Trustee concomitantly filed the *Certification of Louis T. DeLucia in Support of Motion to (I) Classify Certain Claims as Class 6 JVA Claims in Accordance with the Confirmed Joint Plan and (II) Disallow Certain Claims to the Extent Such Claims are Duplicative of Existing Claims* (the "DeLucia Certification") and respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter per 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.), and pursuant to Article IX of the confirmed Plan.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The basis for the relief requested herein is section 105(a) of title 11 of the United States Code (the "Bankruptcy Code").

## RELIEF REQUESTED

3.      In an effort to effectuate distributions to the thousands of defrauded investors and creditors in this case, the Liquidation Trustee seeks entry of the Order (i) classifying certain claims filed by DMR, USC, and the Echevarria Entities as Class 6 JVA Claims under Article II of the Plan, and (ii) disallowing claims filed by DMR, USC, and the Echevarria Entities to the extent that they are duplicative of other filed claims.[1]

## BACKGROUND

### I.      OVERVIEW OF NRIA'S FRAUD

4.      Thomas "Nicholas" Salzano ("Salzano"), Rey E. Grabato II ("Grabato"), along with other pre-petition leadership operated National Realty Investment Advisors, LLC ("NRIA") and its affiliated entities (collectively with NRIA, the "Debtors") as a Ponzi scheme that solicited approximately $664 million in investments from unsuspecting individuals.

5.      Investors would invest in the scheme in various ways throughout NRIA's existence: (i) initially, NRIA induced Investors through guaranteed returns to purchase properties that would be renovated, developed, rented, managed, and/or sold by USC, (ii) then by investing in a series of property-specific limited liability companies sold by private placement memoranda that were purportedly intended to renovate or build specific properties and, (iii) finally, by pooling their money into a real estate investment fund managed by NRIA (the "Fund").

---

[1] Pursuant to ¶ 6 of the Confirmation Order (Dkt. No. 3599), "…The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes; (c) may not be relied on by any Holder of a Claim as representing the actual classification of such Claim under the Plan for Distribution purposes; and (d) shall not be binding on the Debtors, the Estates, or the Liquidation Trust except for voting purposes."

6.      The evolution of NRIA's investment programs were designed to induce Investors to continue investing in NRIA to prolong the scheme's inevitable collapse, all while hiding the true nature of the fraud from Investors.

7.      A more extensive description of the Ponzi scheme is included in the *Second Amended Complaint*, filed March 1, 2024, in Case No. 22-01257-JKS [Doc. No. 33] (hereinafter, the "USC Complaint")[2] and is fully incorporated herein by reference.[3]

## II.    NRIA'S BANKRUPTCY

8.      On June 7, 2022, each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

9.      On June 30, 2022, the U.S. Trustee appointed an official committee of unsecured creditors [Docket No. 94] (the "Committee"). On July 21, 2022, the U.S. Trustee amended the composition of the Committee effective July 19, 2022 [Docket No. 175].

10.     On April 11, 2023, following extensive negotiations, the Debtors and the Committee agreed to, and filed, the Plan. The Plan provides for the post-confirmation structure and governance necessary to facilitate recoveries to creditors through the establishment of the Liquidation Trust, which is responsible for, among other things, classifying claims, making distributions to creditors, and the liquidation, completion, and/or sale of the Debtors' remaining properties.

11.     Under the Plan, JVA Claims, which are designated as Class 6, means:

> [A]ny Claim or Equity Interest under any Joint Venture Agreement with respect to any specific parcel of the Debtors' property, including Claims against or Equity Interests in one or more of the Debtors that is a **General Contractor JVA Claim**,

---

[2] USC Complaint, p. 13, ¶ 28.
[3] Capitalized terms used but not defined herein or in the Plan shall have the meanings ascribed to them in the USC Complaint.

a One Dollar JVA Claim, an Operating Agreement JVA Claim, or a Lender JVA
Net Profits Claim, but excluding any Lender JVA Mortgage Claim.

*See* Plan, p. 9 (emphasis added).

12.     Under the Plan, a **Joint Venture Agreement** means "the **General Contractor
JVAs**, the Lender JVAs, the One Dollar JVAs, and the Operating Agreement JVAs." *See Id*., p. 9
(emphasis added).

13.     Additionally, **General Contractor JVA Claim** means "any Claim or Equity
Interest arising from a General Contractor JVA." *See Id*., p. 8.

14.     A **General Contractor JVA** is defined under the Plan as:

[A] joint venture agreement, **profit sharing agreement**, or the legal and financial
equivalent thereof executed by one or more of the Debtors whereby the non-debtor
counterparty was the general contractor for the project under development.

*See Id*., p. 8 (emphasis added).

15.     The Court entered the Confirmation Order on August 10, 2023.  The Confirmation
Order provided:

The classification of Claims and Equity Interests under the Plan is proper under the
Bankruptcy Code . . . Valid business, factual, and legal reasons exist for separately
classifying the various Classes of Claims and Equity Interests created under the
Plan, and such Classes do not unfairly discriminate between Holders of Claims and
Equity Interests. Thus, the Plan satisfies Bankruptcy Code sections 1122 and
1123(a)(1).

*See* Confirmation Order, p. 6-7.

## **BASIS FOR RELIEF**

16.     The Liquidation Trustee and its professionals have been examining more than 4,000
filed proofs of claims to determine when and how distributions may commence to investors and
creditors holding Allowed Claims under the Plan. DMR, the Echevarria Entities, and USC each
filed numerous claims against the Debtors, which are properly classified as Class 6 JVA Claims.

5

The Liquidation Trustee merely seeks entry of an Order classifying those claims for distribution purposes.

17.    The claims filed by DMR, and identified in the chart below, are based on various Joint Venture Agreements between DMR and: (i) Gulfstream Views, LLC dated September 3, 2018; (ii) Hanover Road Capital 2, LLC dated September 3, 2018; (iii) Bergenline Capital 4901, LLC dated September 3, 2018; and (iv) Manhattan Avenue Capital 1300 LLC (collectively, the "DMR JVA Claims"), which were filed in an "UNKNOWN" amount.

18.    The claims filed by the Echevarria Entities, and identified in the chart below, are based on various Joint Venture Agreements between an Echevarria Entity, and: (i) National Realty Investment Advisors, LLC; (ii) NRIA Partners Portfolio Fund I, LLC; (iii) North Bergen Capital 8709 LLC; (iv) NRIA NJ Manager 8709 LLC; (v) NRIA North Bergen 8709 Member, LLC; (vi) Adams St Capital 6903 LLC; (vii) Adams St Capital 6903 Manager, LLC; (viii) Adams St Capital 6903 Member, LLC; (ix)  Guttenberg Capital 416-22 69th St. LLC; (x) NRIA Guttenberg Capital 416-22 69th St Manager, LLC; and (xi) NRIA Guttenberg Capital 416-22 69th St Member, LLC (collectively, the "Echevarria JVA Claims"), which were filed in a "Contingent/Unliquidated" amount.

19.    The claims filed by USC, and identified in the chart below, are based on various Joint Venture Agreements between USC and: (i) Wright by the Sea 1901, LLC, dated March 29, 2018; and (ii) South Christopher Columbus Capital 1499 LLC, dated July 20, 2021. These claims are identified below as the ODR Claim for $11,500,000.00; Wright Claim for $13,887,582.00; and Columbus Claim for $29,694,573.00 (collectively, the "USC JVA Claims").

20.    These DMR JVA Claims, Echevarria JVA Claims, and USC JVA Claims, each based upon various Joint Venture Agreements, are identified in the below chart:

| Claimholder | Claim No. | Case No. | Amount | Duplicate Claim |
|---|---|---|---|---|
| DMR Construction Services., Inc. | 1999 | 22-14539 | Unknown | All DMR JVA Claims |
| DMR Construction Services., Inc. | 3 | 22-14635 | Unknown | Claim 5; 22-14575 |
| DMR Construction Services., Inc. | 3 | 22-14645 | Unknown | Claim 6; 22-14582 |
| DMR Construction Services., Inc. | 7 | 22-14596 | Unknown | Claim 7; 22-14653 |
| DMR Construction Services., Inc. | 12 | 22-14568 | Unknown | Claim 14; 22-14619 |
| 416 69 St. Development LLC | 1875 | 22-14539 | Unliquidated | All 69 St. JVA Claims |
| 6903 Adams St. Development, LLC | 1877 | 22-14539 | Unliquidated | All Adams St. JVA Claims |
| Global PM Support, LLC | 1879 | 22-14539 | Unliquidated | All Global PM Claims |
| North Hudson Development LLC | 2318 | 22-14539 | Unliquidated | All Hudson JVA Claims |
| U.S. Construction, Inc. | 2575 | 22-14539 | $11,500,000.00 | Claim 2573; 22-14539 |
| U.S. Construction, Inc. | 27 | 22-14672 | $13,887,582.00 | Claim 28; 22-14672 |
| U.S. Construction, Inc. | 2572 | 22-14539 | $29,694,573.00 | Claim 2578; 22-14539 |

21.    The Liquidation Trustee seeks entry of the Order (i) classifying the DMR JVA Claims, Echevarria JVA Claims, and USC JVA Claims as Class 6 JVA Claims for distribution purposes under the Plan; and (ii) disallowing the DMR JVA Claims, Echevarria JVA Claims, and USC JVA Claims to the extent they are duplicative of other claims filed.

I.    **DMR JVA Claims**

22.    Each DMR JVA Claim identifies various "Joint Venture Agreements" between DMR and one or more of the Debtors as the basis for the claim, and is unliquidated, asserting an "UNKNOWN" claim amount.[4]

23.    In addition to the specific JVA Claims identified herein, DMR filed Claim No. 1999 as a "comprehensive" JVA Claim in the main case, Case No. 22-14539. This claim states:

> The basis of liability are the obligations of one or more of the Debtors to DMR pursuant to various **Joint Venture Agreements** between the parties[], the course of conduct between the parties and/or principles of unjust enrichment relative to services performed by DMR under various agreements with affiliates of NRIA. DMR has filed proofs of claim against each of these individual entities for the sums due and owing under the specified **Joint Venture Agreements**, which claims are incorporated by reference herein. (Emphasis added).

---

[4] On June 6, 2024, the Liquidation Trustee filed a complaint against DMR in this Court at Case No. 24-01447-JKS, Doc. No. 1, objecting to any and all claims of DMR against the Debtors under section 502(b) of the Bankruptcy Code.

24.    A copy of this Claim No. 1999 is attached to the DeLucia Certification as <u>Exhibit</u> <u>A</u> thereto and incorporated fully herein. This proof of claim generally identifies the Joint Venture Agreements and related Claims discussed below and is a Class 6 JVA claim which should also be disallowed as being duplicative of all other DMR JVA Claims.

**A.    Gulf Stream Views Joint Venture Claims**

25.    On September 3, 2018, DMR and Gulfstream Views, LLC entered a Joint Venture Agreement (the "<u>Gulf Stream JVA</u>"). The Gulf Stream JVA related to the project located at 28-36 Briny Breezes Blvd. and South Ocean Blvd., Boynton Beach, FL 33435 (the "<u>Gulf Stream</u> <u>Property</u>"). NRIA controlled the Gulf Stream Property through its special purpose assignee Gulfstream Views, LLC.

26.    Under the terms of the Gulf Stream JVA, DMR was to act as the Joint Venturer General Contractor to perform all building and material delivery services at the project site. NRIA and DMR were contracted to jointly develop the Gulf Stream Property and would share profits from the venture.

27.    The profit-sharing arrangement between NRIA and DMR in the Gulf Stream JVA was outlined as follows:

> **PROFIT SHARING:** Net profits for the venture contemplated herein are estimated to be over $4,500,000 for the project as described and planned for in its Business and Capitalization Plan [Attached hereto as <u>Exhibit C</u>].
>
> It is agreed therefore that for the benefit of the Joint Venture and the Venturers' herein, after payment of all expenses aforementioned:
>
> <u>NRIA shall be entitled to 60% of the net profits of the project</u>
>
> <u>and the JVGC to 40% of said net profits in this Joint Venture.</u>

28.    DMR filed two proofs of claim relating to the Gulf Stream JVA: (i) Claim 3, Case No. 22-14635; and (ii) a duplicate Claim 5, Case No. 22-14575 (collectively, the "<u>Gulf Stream</u>

Claims"). A copy of Claim 3, Case No. 22-14635 is attached to the DeLucia Certification as Exhibit B thereto and incorporated fully herein.

29.      As provided in the Gulf Stream Claims, each of these Claims is based on the Gulf Stream JVA, which is a Joint Venture Agreement under the Plan. As such, each of the Gulf Stream Claims should be classified as Class 6 JVA Claims. Moreover, Claim 5, Case No. 22-14575 of the Gulf Stream Claims should be disallowed as being duplicative of Claim 3, Case No. 22-14635.

### B.    Hanover Road Capital 2 Joint Venture Claims

30.      On September 3, 2018, DMR and Hanover Road Capital 2, LLC entered a Joint Venture Agreement (the "Hanover JVA"). The Hanover JVA related to the project at 2-4 Hanover Road, Florham Park, NJ 07932 (the "Hanover Property"). NRIA controlled the Hanover Property via Hanover Road Capital 2, LLC.

31.      Under the Hanover JVA, DMR was to act as the Joint Venturer General Contractor to perform all actual building and material delivery services at the project site. NRIA and DMR were contracted to jointly develop the Hanover Property and would share profits from the venture.

32.      The profit-sharing arrangement between NRIA and DMR in the Hanover JVA was outlined as follows:

> **PROFIT SHARING:** Net profits for the venture contemplated herein are estimated to be over $1,5`00,000 for the project as described and planned for in its Business and Capitalization Plan [Attached hereto as <u>Exhibit C</u>].
>
> It is agreed therefore that for the benefit of the Joint Venture and the Venturers' herein, after payment of all expenses aforementioned:
>
> NRIA shall be entitled to 50% of the net profits of the project
>
> and the JVGC to 50% of said net profits in this Joint Venture.

33.      DMR filed two proofs of claim relating to the Hanover JVA: (i) Claim 3, Case No. 22-14645; and (ii) and a duplicate Claim 6, Case No. 22-14582 (collectively, the "Hanover

9

Claims"). A copy of Claim 3, Case No. 22-14645 is attached to the DeLucia Certification as Exhibit C thereto and incorporated fully herein.

34.    As provided in the Hanover Claims, each of these Claims is based on the Hanover JVA, which is a Joint Venture Agreement under the Plan. As such, each of the Hanover Claims should be classified as Class 6 JVA Claims under the Plan. Moreover, Claim 6, Case No. 22-14582 of the Hanover Claims should be disallowed as duplicative of Claim 3, Case No. 22-14645.

**C.    Bergenline Capital 4901 Joint Venture Claims**

35.    On September 3, 2018, DMR and Bergenline Capital 4901, LLC entered a Joint Venture Agreement (the "Bergenline JVA"). The Bergenline JVA related to the project located at 4901 Bergenline Ave. West New York, NJ 07093 (the "Bergenline Property"). NRIA controlled the Bergenline Property through its special purpose assignee Bergenline Capital 4901, LLC.

36.    Under the Bergenline JVA, DMR was to act as Joint Venturer General Contractor to perform all actual building and material delivery services at the project site. NRIA and DMR were contracted to jointly develop the Bergenline Property and to share profits from the venture.

37.    The profit-sharing arrangement between NRIA and DMR in the Bergenline JVA was outlined as follows:

> **PROFIT SHARING**: Net profits for the venture contemplated herein are estimated to be over $14,000,000 for the project as described and planned for in its Business and Capitalization Plan [Attached hereto as **Exhibit C**].
>
> It is agreed therefore that for the benefit of the Joint Venture and the Venturers' herein, after payment of all expenses aforementioned:
>
> NRIA shall be entitled to 60% of the net profits of the project
>
> and the JVGC to 40% of said net profits in this Joint Venture.

38.    DMR filed two proofs of claim relating to the Bergenline JVA: (i) Claim 12, Case No. 22-14568; and (ii) a duplicate Claim 14, Case. No. 22-14619 (collectively, the "Bergenline

Claims"). A copy of Claim 12, Case No. 22-14568, as redacted, is attached to the DeLucia

Certification as Exhibit D thereto and incorporated fully herein.

39.    As provided in the Bergenline Claims, each of these Claims is based on the

Bergenline JVA, which is a Joint Venture Agreement under the Plan. As such, each of the

Bergenline Claims should be classified as Class 6 JVA Claims under the Plan. Moreover, Claim

14, Case. No. 22-14619 of the Bergenline Claims should be disallowed as being duplicative of

Claim 12, Case No. 22-14568.

**D.    Manhattan Avenue Capital 1300 LLC Joint Venture Claims**

40.    DMR and Manhattan Avenue Capital 1300 LLC entered a Joint Venture Agreement

(the "Manhattan JVA"). The Manhattan JVA related to the project located at 1300 Manhattan

Avenue, Union City, NJ 07087 (the "Manhattan Property"). NRIA controlled the Manhattan

Property via Manhattan Avenue Capital 1300 LLC.

41.    Under the terms of the Manhattan JVA, DMR was to act as the Joint Venturer

General Contractor to perform all actual building and material delivery services at the project site.

NRIA and DMR were contracted to jointly develop the Manhattan Property and would share

profits from the venture.

42.    DMR filed two proofs of claim relating to the Manhattan JVA: (i) Claim 7, Case

No. 22-14596; and (ii) a duplicate Claim No. 7, Case No. 22-14653 (collectively, the "Manhattan

Claims"). A copy of Claim 7, Case No. 22-14596 is attached to the DeLucia Certification as

Exhibit E thereto and incorporated fully herein.

43.    As provided in the Manhattan Claims, each of these Claims is based on the

Manhattan JVA, which is a Joint Venture Agreement under the Plan. As such, each of the

Manhattan Claims should be classified as Class 6 JVA Claims under the Plan. Moreover, Claim

No. 7, Case No. 22-14653 of the Manhattan Claims should be disallowed as being duplicative of Claim 7, Case No. 22-14596.

44.     Based on the foregoing, the DMR JVA Claims should each be classified as Class 6 JVA Claims under the Plan, and disallowed to the extent they are redundant and duplicative of other such claims filed by DMR.

**II.     The Echevarria JVA Claims**

45.     Each Echevarria JVA Claim states, on its face, that it is based on a Joint Venture Agreement, and identifies various "Joint Venture Agreements" between the Echevarria Entities and one or more of the Debtors as the basis for the claim. Each Claim is unliquidated, asserting an "Unliquidated/Contingent" claim amount.

**A.  69 Street JVA Claims**

46.     On or about August 14, 2020, 69 Street and NRIA entered a Joint Venture Agreement (the "69 Street JVA") related to the project located at 419 69th Street, Guttenberg, New Jersey 07093 (the "69 Street Property"). NRIA controlled the 69 Street Property through its special purpose entities NRIA Guttenberg Capital 416-22 69th St Manager, LLC and NRIA Guttenberg Capital 416-22 69th St Member, LLC.

47.     69 Street filed five (5) proofs of claim relating to the 69 Street JVA: (i) Claim 6, Case No. 22-14637; (ii) Claim 6, Case No. 22-14578; (iii) Claim 8, Case No. 22-14639; (iv) Claim 1781, Case No. 22-14540; and (v) Claim No. 1875, Case No. 22-14539 (collectively, the "69 Street Claims"). A copy of Claim 1875, Case No. 22-14539 is attached to the DeLucia Certification as Exhibit F thereto and incorporated fully herein.

48.     As provided in the 69 Street JVA Claims, each of these individual Claims is based on the 69 Street JVA, which is a Joint Venture Agreement under the Plan. As such, each of the 69

12

Street JVA Claims should be classified as Class 6 JVA Claims under the Plan. Moreover, the

following Claims should be disallowed as being duplicative of Claim No. 1875, Case No. 22-

14539, based on the Debtors' substantive consolidation: (i) Claim 6, Case No. 22-14637; (ii) Claim

6, Case No. 22-14578; (iii) Claim 8, Case No. 22-14639; (iv) Claim 1781, Case No. 22-14540.

49.     Based on the foregoing, the 69 Street JVA Claims should each be classified as Class

6 JVA Claims under the Plan, and disallowed to the extent they are redundant and duplicative of

other such claims filed by 69 Street.

**B. Adams St. JVA Claims**

50.     On August 14, 2020, Adams St. and NRIA entered a Joint Venture Agreement (the

"Adams St. JVA") related to the project located at 6903 Adams Street, Guttenberg, New Jersey,

07093, related to the project (the "Adams St. Property"). NRIA controlled the Adams St. Property

through its special purpose entities Adam St Capital 6903 Manager, LLC and Adam St Capital

6903 Member, LLC.

51.     Under the Adams St. JVA, Adams St. was to act as the Joint Venturer General

Contractor at the project site.

52.     69 Street filed five (5) proofs of claim relating to the Adams St. JVA: (i) Claim 2,

Case No. 22-14561; (ii) Claim 3, Case No. 22-14563; (iii) Claim 4, Case No. 22-14560; (iv) Claim

1784, Case No. 22-14540; and (v) Claim No. 1877, Case No. 22-14539 (collectively, the "Adams

St. JVA Claims"). A copy of Claim 1877, Case No. 22-14539 is attached to the DeLucia

Certification as Exhibit G thereto and incorporated fully herein.

53.     As provided in the Adams St. JVA Claims, each of these Claims is based on the

Adams St. JVA, which is a Joint Venture Agreement under the Plan. As such, each of the Adams

St. JVA Claims should be classified as Class 6 JVA Claims under the Plan. Moreover, the

13

following Claims should be disallowed as being duplicative of Claim No. 1877, Case No. 22-14539, based on the Debtors' substantive consolidation: (i) Claim 2, Case No. 22-14561; (ii) Claim 3, Case No. 22-14563; (iii) Claim 4, Case No. 22-14560; (iv) Claim 1784, Case No. 22-14540.

54.    Based on the foregoing, the Adams St. JVA Claims should each be classified as Class 6 JVA Claims under the Plan, and disallowed to the extent they are redundant and duplicative of other such claims filed by the Adams St.

### C.  Hudson JVA Claims

55.    On September 18, 2019, Hudson and NRIA entered a Joint Venture Agreement (the "Hudson JVA") related to the project located at related to the project located at 8701-8707, 8709, and 8719 River Road North Bergen, New Jersey, 07047 (the "Hudson Property"). NRIA controlled the Hudson Property through its special purpose assignee North Bergen Capital 8709, LLC, and NJ River Road Manager 8719, LLC was to manage development of the Hudson Property.

56.    Under the Hudson JVA, Hudson was to perform construction services at the Hudson Property through its company, Global PM. As stated below, Global PM also filed several proofs of claim—identical in form to the Hudson JVA Claims—based on the Hudson JVA.

57.    Hudson filed five (5) proofs of claim relating to the Hudson JVA: (i) Claim 5, Case No. 22-14649; (ii) Claim 6, Case No. 22-14654; (iii) Claim 8, Case No. 22-14610; (iv) Claim 2198, Case No. 22-14540; and (v) Claim No. 2318, Case No. 22-14539 (collectively, the "Hudson JVA Claims"). A copy of Claim 2318, Case No. 22-14539 is attached to the DeLucia Certification as Exhibit H thereto and incorporated fully herein.

58.    As provided in the Hudson JVA Claims, each of these Claims is based on the Hudson JVA, which is a Joint Venture Agreement under the Plan. As such, each of the Hudson JVA Claims should be classified as Class 6 JVA Claims under the Plan. Moreover, the following

Claims should be disallowed as being duplicative of Claim No. 2318, Case No. 22-14539, based on the Debtors' substantive consolidation: (i) Claim 5, Case No. 22-14649; (ii) Claim 6, Case No. 22-14654; (iii) Claim 8, Case No. 22-14610; and (iv) Claim 2198, Case No. 22-14540.

59.     Based on the foregoing, the Hudson JVA Claims should each be classified as Class 6 JVA Claims under the Plan, and disallowed to the extent they are redundant and duplicative of other such claims filed by Hudson.

### D.  Global PM JVA Claims

60.     As stated above, on September 18, 2019, Hudson and NRIA entered the Hudson JVA.

61.     Global PM filed five (5) proofs of claim relating to the Hudson JVA: (i) Claim 2, Case No. 22-14649; (ii) Claim 3, Case No. 22-14654; (iii) Claim 3, Case No. 22-14610; (iv) Claim 1786, Case No. 22-14540; and (v) Claim No. 1879, Case No. 22-14539 (collectively, the "Global PM JVA Claims"). A copy of Claim 1879, Case No. 22-14539 is attached to the DeLucia Certification as Exhibit I thereto and incorporated fully herein.

62.     As provided in the Global PM JVA Claims, each of these Claims is based on the Hudson JVA, which is a Joint Venture Agreement under the Plan. As such, each of the Global PM JVA Claims should be classified as Class 6 JVA Claims under the Plan. Moreover, the following Claims should be disallowed as being duplicative of Claim No. 1879, Case No. 22-14539, based on the Debtors' substantive consolidation: (i) Claim 2, Case No. 22-14649; (ii) Claim 3, Case No. 22-14654; (iii) Claim 3, Case No. 22-14610; and (iv) Claim 1786, Case No. 22-14540.

63.     Based on the foregoing, the Global PM JVA Claims should each be classified as Class 6 JVA Claims under the Plan, and disallowed to the extent they are redundant and duplicative of other such claims filed by Global PM.

15

### III.    USC JVA Claims

64.    The USC JVA Claims are comprised of the ODR Claim, Wright Claim, and
Columbus Claim, each based on a joint venture or profit-sharing agreement between USC and the
Debtors.[5] As such, the Liquidation Trustee respectfully requests that the Court classify each USC
Claim as a Class 6 JVA Claim.

65.    Moreover, and as described below, the ODR Claim and Wright Claim are based on
the *same* profit-sharing agreement, and the same estimated profit-share. The total amounts asserted
in the ODR Claim are included and repeated in the Wright Claim. The first thirty-four pages of the
Wright Claim and ODR Claim are identical and include same basis for estimating alleged profit
sharing under the Joint Venture Agreement. In that regard, there is significant duplication between
the two claims, with USC failing to identify how the proofs of claim are distinct.

66.    Accordingly, to the extent that the claims are redundant, the Liquidation Trustee
respectfully requests that the Court disallow the ODR Claim, because the amounts asserted in such
claim are reasserted and duplicated by the Wright Claim. *See Nuveen Mun. Trust ex rel. Nuveen
High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 282, 295 (3rd Cir. 2012) ("a
creditor cannot collect more, in total, than the amount it is owed."); *In re Sims*, 358 B.R. 217, n. 2
(Bankr. E.D. Pa. 2006) (disallowing a proof of claim that is duplicative of a previously filed proof
of claim); *In re Motels of America, Inc.*, 146 B.R. 544, 546 (Bankr. D. Del 1992) (finding that the
creditor had not articulated a basis as to why two claims were distinct and disallowing the duplicate
claim).

---

[5] The Liquidation Trustee commenced its adversary proceeding *AIRN Liquidation Trust v. US Construction, Inc., et al.,* in which the Liquidation Trustee, objects to and seeks disallowance and equitable subordination—among other forms of relief—with respect to all claims filed by USC.

## A. Ocean Delray Development

67.     On March 29, 2018, USC and NRIA entered into a Joint Venture Agreement (the "ODR Agreement"). The ODR Agreement is a General Contractor JVA Agreement, as defined under the Plan, related to the project located at 1901 S. Ocean Blvd., Delray Beach, Florida (the "ODR Property"). Except to the extent the condominium units were sold to purchasers, the ODR Property was owned by Debtor Wright by the Sea 1901, LLC.

68.     USC asserts that under the terms of the ODR Agreement, once development of the ODR Property was completed, USC would then receive a construction contract to construct and manage the condominium phase, and to build out the single-family homes. The profit-sharing terms of the ODR Agreement were established by a January 15, 2020, amendment between USC and NRIA (the "ODR JVA Amendment") (the ODR JVA Amendment, together with the Joint Venture Agreement dated March 18, 2018, are hereinafter the "ODR JVA").

69.     USC filed two separate claims relating to the ODR Property based on allegations of entitlement to profit sharing for general contracting services performed at on the ODR project. The first, the ODR Claim, and second, the Wright Claim (as discussed below), both relate to the ODR JVA and the ODR Agreement. On December 20, 2022, USC filed a proof of claim in NRIA's main bankruptcy case at Claim No. 2575 (a duplicate claim was filed at Claim No. 2573) (the "ODR Claim"). A copy of the ODR Claim is attached to the DeLucia Certification as Exhibit J thereto and incorporated fully herein.

70.     In the ODR Claim, USC identifies the basis of the claim as being "[b]reach of agreement, equitable, and quasi-contract claims for **profit sharing** on Ocean Delray

17

development." (Emphasis added). USC estimated the ODR Claim in the amount of $11,500,000.00, and, in support, includes:

> **NOTE**
>
> The next four sheets serve as the basis for the <u>estimated</u> claim of $11,500,000.00. The first three sheets show cost, revenue, and profit projections as currently understood by Creditor. The exact profit due Creditor based on those projections has not yet been calculated. The fourth sheet is a calculated estimation of profits due creditor under earlier cost, revenue, and profit projections.

71.    USC then includes four pages worth of estimated net profits that, contingent upon completion of the underlying project, purportedly would have resulted in profit sharing with USC based on projected profit sharing under the ODR JVA.

72.    As provided in the ODR Claim, the ODR Claim is based on the ODR JVA, which is a Joint Venture Agreement under the Plan. As such, the ODR Claim should be classified as a Class 6 JVA Claim under the Plan. Moreover, to the extent that they are duplicative of one another, at least one of the ODR Claim and Wright Claim (as defined herein) should be disallowed.

**B. Wright by the Sea 1901**

73.    On December 20, 2022, USC filed a proof of claim in the Wright by the Sea 1901 LLC matter, Case No. 22-14672, at Claim No. 27 (a duplicate claim was filed at Claim No. 28)

> **NOTE**
>
> The next four sheets serve as the basis for the <u>estimated</u> claim of $11,500,000.00. The first three sheets show cost, revenue, and profit projections as currently understood by Creditor. The exact profit due Creditor based on those projections has not yet been calculated. The fourth sheet is a calculated estimation of profits due creditor under earlier cost, revenue, and profit projections.

(the "<u>Wright Claim</u>"). The Wright Claim amount totals $13,887,582.00. A copy of the Wright Claim is attached to the DeLucia Certification as <u>Exhibit K</u> thereto and incorporated fully herein.

74.    The Wright Claim is based on the same ODR JVA, which is a Joint Venture Agreement under the Plan. Like the ODR Claim, the basis of the Wright Claim is "[g]eneral construction services and goods sold and breach of agreement, equitable, and quasi-contract claims for profit sharing on Ocean Delray development." Like the ODR Claim, USC estimated the Wright Claim, and in support includes:

75.    As provided in the Wright Claim, the Wright Claim is based on the ODR JVA, which is a Joint Venture Agreement under the Plan. As such, the Wright Claim should be classified as a Class 6 JVA Claim under the Plan.

76.    To the extent the ODR Claim and Wright Claim are duplicative and redundant, such claim should be disallowed as duplicative.

**C. 1401/1499 Columbus Blvd.**

77.    On July 20, 2021, USC and NRIA entered a Joint Venture Agreement (the "<u>Columbus JVA</u>"). USC asserts that the Columbus JVA contemplated a three-phase development plan to be followed by physical construction of the project located at 1401 S. Christopher Columbus Boulevard, Philadelphia, PA, and 1401R S. Christopher Columbus Boulevard, Philadelphia, PA (collectively, the "<u>Columbus Property</u>"). Under the Columbus JVA, USC would act as a **general contractor** to design and program 179 townhomes and re-design and program a multi-unit, multi-purpose development containing 370 units at the Columbus Property.

78.    USC asserts that, under the terms of the Columbus JVA, USC would receive 3.75% of the final construction cost as a general contractor's fee. USC would also receive 4% of the final construction cost as "General Conditions." USC claims that the terms of the Columbus JVA

allowed for fixed development fees to USC totaling $2,850,000.00 across the three phases, and

15% of net income as profit sharing at the completion of each phase of the project.

79.    On December 20, 2022, USC filed a proof of claim in NRIA's main bankruptcy

case at 22-14539 at Claim No. 2572 (a duplicate claim was filed at Claim No. 2578) (the

"Columbus Claim"). In its proof of claim, USC states that the basis for this claim amount is "breach

of agreement, equitable, and quasi-contract claims regarding development and general contracting

services terminated 1401/1499 Columbus Blvd." The Columbus Claim totals $29,694,573.00. A

copy of the ODR Claim is attached to the DeLucia Certification as Exhibit L thereto and

incorporated fully herein.

80.    In the attachments to the Columbus Claim, USC asserts it is entitled to the

remaining flat fee payments totaling $780,000.00; reimbursable expenses totaling $1,180,068.00;

and the net income, general contractor, and general conditions fees totaling $27,734,505.00—

amounting to the total Columbus Claim. The Columbus Claim is largely estimated, based on

projected **profit sharing** under the Columbus JVA.

81.    The Columbus JVA is, by its own terms, a **"[p]rofit share agreement** between

NRIA and US Construction Inc. for development project located at 1499 Columbus Blvd, Phases

I, II and III." (Claim No. 2572, Terms of Agreement, p. 4) (emphasis added). The Columbus Claim

is based on profit sharing terms within in the Columbus JVA, which expressly states:

> Additionally, US Construction will receive **15%** of net income* at the end of the
> completion of each phase of the project. *Net Income is calculated as Total building
> re-sale price less selling expenses less total development cost related solely to each
> phase of 1499 Columbus Blvd; including payback first of all lender principal and
> interest owed, plus payback of investor/NRIA portfolio Fund Principal amount
> invested in the project, with an 18.5% preferred return.*

(emphasis in original).

20

82.    The Columbus Claim is based on the Columbus JVA which explicitly incorporates, and is premised, on end-of-project profit sharing terms—which is a Joint Venture Agreement under the Plan. As such, the Columbus Claim should be classified as a Class 6 JVA Claim.

## RESERVATION OF RIGHTS

83.    Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity of any particular claim; (b) a waiver of the Liquidation Trustee's rights to dispute any of the claims referenced herein on any grounds; (c) a promise or requirement to pay any particular claim; (d) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver or limitation of the Liquidations Trustee's rights under the Bankruptcy Code, asserted in any pending adversary proceeding or any other applicable law. This Motion seeks relief limited to the classification of the claims identified herein, pursuant to the Plan, with all other rights and remedies reserved and retained by the Liquidation Trustee.

## SEPARATE CONTESTED MATTER

84.    The relief sought herein by the Liquidation Trustee regarding each of the DMR JVA Claims, Echevarria JVA Claims, and USC JVA Claims constitutes a separate contested matter pursuant to Bankruptcy Rule 9014. The Liquidation Trustee respectfully requests that any order entered by the Court with respect to a DMR JVA Claim, Echevarria JVA Claim, or USC JVA Claim described in this Motion be deemed a separate order with respect to each of the claims.

## WAIVER OF MEMORANDUM OF LAW

85.    The Liquidation Trustee respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis

21

upon which the Liquidation Trustee relies is set forth herein and the Motion does not raise any novel issues of law.

## CONCLUSION

86.     The DMR JVA Claims, Echevarria JVA Claims, and USC JVA Claims are properly classified as Class 6 JVA Claims under the Plan. Additionally, as identified in paragraph 19 and discussed *supra*, all duplicative and/ or redundant DMR JVA Claims, Echevarria JVA Claims, and USC JVA Claims must be disallowed, as creditors cannot recover twice on the same claim.

**WHEREFORE**, the Liquidation Trustee respectfully requests entry of the Proposed Order attached hereto as **Exhibit A** granting the relief requested herein and all other and further relief as the Court may deem just and appropriate.

Dated: July 8, 2024

**ICE MILLER LLP**

*/s/ Louis T. DeLucia*
Louis. T. DeLucia, Esq.
Alyson M. Fiedler, Esq.
Nathan D. Basalyga, Esq. (admitted *pro hac vice*)
Alexandria Lundberg, Esq. (*pro hac vice* forthcoming)
1500 Broadway
Suite 2900
New York, NY 10036
Phone: 212-835-6312
louis.delucia@icemiller.com
alyson.fiedler@icemiller.com
nathan.basalyga@icemiller.com
alexandria.lundberg@icemiller.com

*Counsel to AIRN Liquidation Trust Co., LLC*
*in its capacity as Liquidation Trustee of*
*the AIRN Liquidation Trust*