

Okin Hollander LLC
Glenpointe Centre West, 2ⁿᵈ Floor
500 Frank W. Burr Boulevard, Suite 40
Teaneck, NJ 07666
T 201 947 7500
F 201 947 2663

Paul S. Hollander, Esq.
phollander@okinhollander.com

October 8, 2024

**VIA CM/ECF**

Honorable John K. Sherwood
United States Bankruptcy Judge
United States Bankruptcy Court,
District of New Jersey
50 Walnut Street, 3rd Floor
Courtroom 3D
Newark, New Jersey 07102

> **Re:**   *In re National Realty Investment Advisors, LLC, et al.*, 22-14539-JKS;
> **Liquidation Trustee's Motion to File Terms of Settlements <u>Included in
> Quarterly Reports Under Seal</u> [ECF Dkt. No. 4009]**

> ***Hearing Date:***          October 15, 2024 at 10:00 a.m.
> ***Objection Deadline (Extended by Agreement with Counsel to
> Liquidation Trustee):***   October 8, 2024

Dear Judge Sherwood:

We have been retained as counsel to the Liquidation Trust Advisory Board ("**<u>Advisory
Board</u>**") for the AIRN Liquidation Trust ("**<u>Liquidation Trust</u>**") that was established under
the First Amended Joint Chapter 11 Plan of Liquidation of National Realty Investment Advisors,
LLC and its Affiliated Debtors [ECF Dkt. No. 3256] ("**<u>Confirmed Plan</u>**"), which was
confirmed by Your Honor's order entered on August 10, 2023 [ECF Dkt. No. 3599] in the
above-captioned chapter 11 cases (collectively, the "**<u>Chapter 11 Cases</u>**").

We are writing on behalf of the Advisory Board with respect to the *Liquidation Trustee's
Motion to File Terms of Settlements Included in Quarterly Reports Under Seal*, dated August
12, 2024 [ECF Dkt. No. 4009] ("**<u>Motion to Seal</u>**"), which was filed by AIRN Liquidation Trust
Co., LLC, in its capacity as the Liquidation Trustee of the Liquidation Trust (the "**<u>Liquidation</u>**

okinhollander.com



**Trustee**"), and is presently scheduled to be heard on October 15, 2024, at 10:00 a.m. ("**Hearing Date**").[1]

The Advisory Board is submitting this response both to register its concerns with the relief sought in the Motion to Seal and to draw the Court's attention to persuasive authority from factually apposite cases not addressed in the Motion to Seal but which the Advisory Board believes warrant consideration by the Court when adjudicating the Motion to Seal.

## Terms of Confirmed Plan and Liquidation Trust Agreement [2] Mandating Quarterly Disclosures by Liquidation Trustee

Under the Confirmed Plan and Section 4.1(e) of the Liquidation Trust Agreement, which was approved pursuant to the Confirmed Plan, the Liquidation Trustee has discretion to litigate and/or settle Retained Causes of Action (as defined in the Confirmed Plan). Pursuant to Section 4.2.2. of the Liquidation Trust Agreement, the Liquidation Trustee must consult with and obtain the approval of the Advisory Board or, in the absence of such approval, this Court, of any settlement involving claims in excess of $500,000. The Liquidation Trustee is also *required*, pursuant to Article X.A of the Confirmed Plan and Section 4.8.1. of the Liquidation Trust Agreement, to file quarterly reports ("**Mandatory Quarterly Reports**") in the Chapter 11 Cases disclosing, *inter alia*, the "terms" of any settlement of a Retained Cause of Action in an amount exceeding $100,000 (the "**Quarterly Settlement Disclosures**"). Neither the Confirmed Plan nor the Liquidation Trust Agreement specifies what "terms" must be included

---

[1]    The Hearing Date and response deadline (the "**Original Response Deadline**") for the Motion to Seal were initially set as September 3, 2024, at 10:00 a.m. and August 27, 2024, at 4:00 p.m., respectively. In advance of the Original Response Deadline, the Advisory Board shared a prior draft of this letter with and requested that the Liquidation Trustee adjourn the Hearing Date and extend the Original Response Deadline to permit the Liquidation Trustee and the Advisory Board sufficient time to discuss the Advisory Board's concerns regarding the relief sought in the Motion to Seal.  Although the Liquidation Trustee agreed to several adjournments of the Hearing Date and Original Response Deadline, most recently to October 8, 2024, and October 15, 2024, respectively, the Advisory Board and the Liquidation Trustee have been unable to resolve the concerns addressed herein. More specifically, the Liquidation Trustee and the Advisory Board were unable to reach a global agreement regarding whether the relief requested in the Motion to Seal should be limited to the Quarterly Settlement Disclosures for Q3 2024 and matters relating thereto; whether the Court should be provided with unredacted and redacted drafts of the Q3 2024 Mandatory Quarterly Reports for consideration when rendering a determination regarding the requested relief; and the appropriate contents of the unredacted and redacted drafts of the Q3 2024 Mandatory Quarterly Reports.

[2]    An unexecuted version of the Liquidation Trust Agreement is attached as Exhibit A to the "Notice of Filing of Plan Supplement to the Joint Chapter 11 Plan of National Realty Investment Advisors, LLC," dated June 29, 2023 (ECF Dkt. No. 2732).



OKIN HOLLANDER

Hon. John K. Sherwood
United States Bankruptcy Judge
October 8, 2024
Page 3

in the Quarterly Settlement Disclosures. Accordingly, the Liquidation Trustee has some discretion to determine what terms to include, in the Quarterly Settlement Disclosures.

## Liquidation Trustee's Motion to Seal

Through the Motion to Seal, the Liquidation Trustee requests authority to file all future Quarterly Settlement Disclosures under seal and thereby effectively seeks to materially modify the reporting requirements imposed by Article X.A of the Confirmed Plan and Section 4.8.1. of the Liquidation Trust Agreement. Indeed, granting the Liquidation Trustee the requested carte blanche authority to file all future Quarterly Settlement Disclosures under seal and without consideration of the contents of such Quarterly Settlement Disclosures is effectively the same as eliminating the requirement to make such Quarterly Settlement Disclosures altogether. This is especially true given that the Liquidation Trustee has not proposed a mechanism by which beneficiaries of the Liquidation Trust or other parties in interest can, if at all, obtain access to the sealed Quarterly Settlement Disclosures. The beneficiaries of the Liquidation Trust negotiated for and are entitled to the transparency and accountability intended to be afforded by the Mandatory Quarterly Reports, including the Quarterly Settlement Disclosures. As such, the Advisory Board respectfully submits that any requested modification of such mandatory reporting requirements should, if at all, be considered and determined on a case-by-case or Quarterly Settlement Disclosure-by-Quarterly Settlement Disclosure basis and not, as the Liquidation Trustee has requested, categorically and prospectively. Further, the Advisory Board submits that any such consideration necessarily requires that the Court be provided, either *in camera* or under seal, with both the proposed redacted and unredacted forms of each of the Quarterly Settlement Disclosures that the Liquidation Trustee requests be sealed in order to determine whether the information to be redacted or sealed fits within one of the limited exceptions delineated in Bankruptcy Code Section 107(b).  The Advisory Board should also receive copies of the same prior to any further hearing on the Motion to Seal so that the Advisory Board's counsel can fully participate in an *in camera* or sealed hearing wherein the relief sought may be openly discussed between and among the Court and all appropriate parties, including the Liquidation Trustee and the Advisory Board.

## Certain Legal Authorities Not Discussed in the Motion to Seal

As an initial matter, the Advisory Board questions whether, given that the Liquidation Trustee was not a proponent of the Confirmed Plan, the Liquidation Trustee may seek to effectively modify the Confirmed Plan. *See, e.g., In re Northfield Lab'ys Inc.,* 467 B.R. 582, 588 (Bankr. D. Del. 2010) ("Bankruptcy Code section 1127 governs post-confirmation modification of a chapter 11 plan. Section 1127(b) provides that 'the proponent of a plan or a reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan....'"). Even if such effective modifications to the Confirmed Plan may be sought by someone other than a plan proponent, questions remain whether such modifications are properly sought pursuant to Bankruptcy Code Sections 105(a) and 107(a)



Hon. John K. Sherwood
United States Bankruptcy Judge
October 8, 2024
Page 4

rather than Bankruptcy Code Section 1127(b). *See, e.g., In re Ionosphere Clubs, Inc.*, 208 B.R. 812, 817 (S.D.N.Y. 1997) ("The equity power of 11 U.S.C. ¶ 105(a) cannot be used to produce a result contrary to the specific provisions of 11 U.S.C. ¶ 1127(b)."). Regardless, concerns remain with the relief sought in the Motion to Seal given the lack of evidenced legal and factual bases for the requested relief.

As recognized in the Motion to Seal, pursuant to Bankruptcy Code Section 107(a), Congress codified the public's right to access filings in bankruptcy proceedings and the strong presumption favoring public access to all court records. *See, e.g., In re One Jet, Inc.*, 630 B.R. 761, 764 (Bankr. W.D. Pa. 2021) ("Unlike the common law, which permits a court to exercise its 'supervisory power' and seal documents 'when justice so requires,' section 107 expressly limits the circumstances under which the Court may restrict public access."). The limited exceptions to the general rule that all records and filings in bankruptcy proceedings must be publicly available are codified in Section 107(b), which provides, in relevant part:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may – (1) protect an entity with respect to a **trade secret** or **confidential research, development, or commercial information**.

11 U.S.C. § 107(b) (emphasis added).

A party moving to seal a filing in a bankruptcy proceeding has the burden of establishing *through evidence* that the information it requests be sealed squarely falls within one of the limited exceptions delineated in Bankruptcy Code Section 107(b). *See, e.g., In re One Jet,* 630 BR at 764 ("The moving party must establish through evidence that the information to be sealed falls within one of these categories.") (*citing In re Wells Fargo Bank, N.A.*, 2019 WL 642850 (Bankr. W.D. Pa. Feb. 14, 2019)). Absent such evidence, any restriction on public access to a filing in a bankruptcy proceeding should not be authorized.

In the Motion to Seal, the Liquidation Trustee has not identified any specific Quarterly Settlement Disclosures that include information that falls within the limited scope of the exceptions delineated in Bankruptcy Code Section 107(b) (*i.e.,* any Quarterly Settlement Disclosures which include a "trade secret" or "confidential research, development, or commercial information"). The Liquidation Trustee is requesting that the Court adjudicate the Motion to Seal in the abstract making it impossible for the Court to determine whether the information to be redacted or sealed falls within the limited scope of Bankruptcy Code Section 107(b). Indeed, at present, the Motion to Seal is based on nothing more than anecdotal representations that actual or potential defendants have informed the Liquidation Trustee that they cannot or will not settle if the Liquidation Trustee includes the terms of such settlements in the Quarterly Settlement Disclosures. *See, e.g.,* Motion to Seal at ¶ 14 ("certain counterparties have expressed reluctance, or inability, to consummate favorable settlements



Hon. John K. Sherwood
United States Bankruptcy Judge
October 8, 2024
Page 5

with the Liquidation Trustee if the terms of such settlements, which can include confidential, sensitive, and/or commercial information, are made public and disclosed"); and ¶ 22 ("Certain persons or entities that the Liquidation Trustee has engaged in extensive, good-faith negotiations with will not, or cannot, agree to finalize settlements due to potential disclosure and/or publication of certain settlement terms in the Liquidation Trustee's Quarterly Reports").

Even if a settling party has represented that it is unwilling or unable to settle with the Liquidation Trustee if the Liquidation Trustee, in compliance with the terms of the Confirmed Plan and Liquidation Trust Agreement, publicly discloses any of the terms of a settlement agreement in the mandatory Quarterly Settlement Disclosures, it does not necessarily follow that the Court can or should, on that basis alone, enter an order permitting the Liquidation Trustee to file such Quarterly Settlement Disclosures under seal, let alone that the Court can or should enter an order permitting the Liquidation Trustee to file *all* future Quarterly Settlement Disclosures under seal.[3]   Courts have been clear in holding that the inclusion of provisions in a settlement agreement requiring that it be filed under seal (colloquially referred to as "no seal, no deal" provisions), is not, alone, a sufficient basis for the court to enter an order pursuant to Bankruptcy Code Section 107(b) permitting the filing of such settlement agreement under seal.  *See, e.g., Togut v. Deutsche Bank AG (In re Anthracite Capital, Inc.),* 492 B.R. 162, 172 (Bankr. S.D.N.Y. 2013) ("The Movants['] argument that the 'no seal, no deal' condition is reason enough for sealing a document under § 107 is not only wrong under the law, it is also illogical. If that were the standard for sealing, every settlement in a bankruptcy case would be sealed whenever a party insisted that a document be sealed. Such a test would remove the need for analysis under § 107 and would directly conflict with the statute, the common law, and the legislative history of § 107"); *see also, In re Wells Fargo Bank, N.A.,* 2019 WL 642850, at *2 ("there appears to be unanimous agreement among courts that the terms of a settlement agreement, including the amount of any settlement payments, are not 'commercial information' and, therefore, should not be restricted from public view.") (citing *Geltzer v. Andersen Worldwide, S.C.,* 2007 WL 273526, at *4 (S.D.N.Y. Jan. 30, 2007) ("There is no discernable public interest, or interest of the bankruptcy estates, in preserving [a defendant's] 'leverage' as against other parties who have sued it. Nor has the movant indicated any authority to support its implicit proposition that protecting the bargaining position of the defendant in other, unrelated cases, is even a proper consideration of a court being asked to approve a settlement in a given case."); *In re Thomas*, 583 B.R. 385, 392 (Bankr. E.D. Ky. 2018) ("courts across the country have held that settlement terms (including settlement amount) are not confidential 'commercial information' that is subject to seal under § 107(b)(1)."); *In re Gibbs*, 2017 WL

---

[3]    In the discussions referenced in footnote 1, *supra*, we informed counsel to the Liquidation Trustee that, although the Advisory Board does not believe the sweeping relief requested in the Motion to Seal is, under applicable law, warranted on the existing evidentiary record, a request to redact or seal, in whole or part, the Q3 2024 Quarterly Settlement Disclosures may be justified but would require that the Liquidation Trustee amend or supplement the Motion to Seal to include more specific facts evidencing its entitlement to the more-appropriately tailored relief.



Hon. John K. Sherwood
United States Bankruptcy Judge
October 8, 2024
Page 6

6506324, at *2 (Bankr. D. Haw. Dec. 19, 2017) ("The filings make clear that BANA is not really concerned about its competitors. Rather, it worries that, if the settlement amount in this case is disclosed, other parties claiming that BANA engaged in wrongful foreclosure conduct will demand similar amounts."); *In re Chitwood*, 2015 WL 7180624, at *2 (Bankr. M.D. Fla. July 23, 2015) (finding settlement agreement does not fall within the ambit of 11 U.S.C. § 107(b) ); *In re Blake*, 452 B.R. 1, 13 (Bankr. D. Mass. 2011) (finding "that confidentiality of the settlement amount was inconsistent with the Court's responsibility to maintain the integrity of the bankruptcy system."); *In re Quigley Co., Inc.*, 437 B.R. 102 (Bankr. S.D.N.Y. 2010) (the amounts for which the Chapter 11 debtor's parent settled asbestos personal injury claims was not "commercial information" entitled to protection from disclosure); *In re Alterra Healthcare Corp.*, 353 B.R. 66, 76 (Bankr. D. Del. 2006) ("The Court concludes that the information in the settlements is not confidential commercial information. It does not relate to the Reorganized Debtor's commercial operations nor does it unfairly advantage competitors.")).

Granting the Liquidation Trustee the sweeping, prospective relief sought in the Motion to Seal solely because counterparties to settlement agreements have or may insist upon the inclusion of "no seal, no deal" provisions in such agreements will create a perverse incentive for all settling parties to demand non-disclosure provisions in settlement agreements with the Liquidation Trustee.  Similar concerns were echoed by several of the courts in the cases cited above. *See, e.g., Togut v. Deutsche Bank AG (In re Anthracite Capital, Inc.),* 492 B.R. at 172. To the extent that there are bases other than the inclusion of "no-seal, no-deal" provisions in a settlement agreement that may justify a request by the Liquidation Trustee to redact, in full or part, the terms of a settlement in the Q3 2024 Mandatory Quarterly Reports, the Advisory Board made clear to the Liquidation Trustee that it should amend the Motion to Seal to delineate such alternative bases. Regardless, the Advisory Board believes that the Liquidation Trustee must submit to the Court, whether under seal or in camera, redacted and unredacted versions of the Q3 2024 Mandatory Quarterly Reports that it requests authorization to redact or file under seal. Absent the provision of such documents, the Court cannot determine whether there are legal and factual bases warranting the requested relief.

In closing, the Advisory Board wants to be clear that, although it has concerns with the scope and legal and factual underpinnings of the Motion to Seal, it is committed to continuing to work constructively with the Liquidation Trustee and its professionals and to support the Liquidation Trustee's efforts to expediently liquidate the assets of and maximize recoveries to the beneficiaries of the Liquidation Trust. In doing so, the Advisory Board remains mindful of the fiduciary duties owed to the beneficiaries of the Liquidation Trust, and the continuing obligations to provide the beneficiaries of the Liquidation Trust with the transparency and accountability for which they negotiated and to which they are entitled.



Hon. John K. Sherwood
United States Bankruptcy Judge
October 8, 2024
Page 7

Should Your Honor have any questions or desire any further information from the Advisory Board, I will make myself available at the Court's convenience.

Respectfully,

OKIN HOLLANDER LLC

By:  /s/ Paul S. Hollander
        Paul S. Hollander

cc:   All Parties Requesting Notice Through CM/ECF
        Liquidation Trust Advisory Board Members