Order Filed on May 15, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: <br><br>**NATIONAL REALITY INVESTMENT ADVISORS, LLC,** *et al.*, <br><br>Debtors. | Case No.: 22-14539 <br> Chapter: 11 <br> Judge: John K. Sherwood |

## DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC

DATED: May 15, 2025

Honorable John K. Sherwood
United States Bankruptcy Court

Page 2
Debtor: National Realty Investment Advisors, LLC, *et al.*
Case No.: 22-14539
Caption: **DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC**

# INTRODUCTION

The Liquidation Trustee ("Trustee") won a $4,605,112.16 judgment against Media Effective, LLC and its owner and sole employee, Javier Torres (collectively "Claimants"), based on amounts paid to Claimants for media services that were provided to National Realty Investment Advisors and its affiliates ("NRIA"). [Adv. Pro. 23-01335]. Though the Trustee's Amended Complaint alleged nine counts against Claimants, this Court's Decision and Final Judgment against Claimants only held them liable for actual fraudulent transfers under § 548(a)(1)(A) of the Bankruptcy Code in the amount of $4,605,112.16 (plus pre- and post-judgment interest). [Adv. Pro. ECF No. 92].[1] On November 19, 2024, Claimants wired the Trustee $4,985,820.95 to satisfy the judgment. After transferring the money, Claimants filed a proof of claim for $3,147,629, a substantial portion of the judgment paid to the estate, under § 502(h) of the Bankruptcy Code. [Claim No. 539-2855]. Section 502(h) gives a party the right to assert a claim when a trustee has recovered property from that party under § 550 of the Bankruptcy Code. Since an actual fraudulent transfer claim under § 548(a)(1)(A) is recoverable under § 550, the claim under § 502(h) arises once the fraudulently transferred property is returned. Here, it is not in dispute that the Trustee was successful against Claimants for an actual fraudulent transfer under § 548(a)(1)(A). It is also not in dispute that Claimants paid the $4,985,820.95 judgment to the Trustee.

---

[1] References to the Adversary Proceeding Docket 23-01335 will be distinguished using [Adv. Pro. ECF No.]. Additional background information and findings at trial are described in detail in the Court's decision at Adv. Pro. ECF No. 92.

Page 3
Debtor:     National Realty Investment Advisors, LLC, *et al.*
Case No.:   22-14539
Caption:    **DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC**

Once the fraudulently transferred property is returned to the trustee, § 502(h) directs the Court to determine the claim "the same as if such claim had arisen before the date of the filing of the petition," and allow or disallow the claim. Under § 502(b), if an "objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim." In this case, the Trustee filed an objection to the claim on January 30, 2025 [ECF No. 4093], and the Court must determine whether it should be allowed.

"Section 502(h) is based upon the principle of fraudulent transfer law that the return of a fraudulent transfer restores the parties to the *status quo*." *In re Dreier LLP*, 2012 Bankr. LEXIS 4799, *9 (Bankr. S.D.N.Y. 2012) (citing *In re Best Prods. Co.*, 168 B.R. 35, 57-58 (Bankr. S.D.N.Y. 1994)). Therefore, § 502(h) only applies when the transferee provided consideration for the avoided transfer, and the value of the claim is determined by the value of the consideration given. *Id.* For example,

> if the recipient of a fraudulent transfer paid $10 for property worth $1,000, the recovery of the property by the bankruptcy estate under § 550 would result in a claim under § 502(h) of only $10.

*In re Solidarity Contr., LLC*, 2019 Bankr. LEXIS 3572, *8 (Bankr. S.D. Tex. 2019).

This is a good illustration of how § 502(h) should work in a constructive fraudulent transfer scenario. It makes sense that the transferee who paid $10 for the $1,000 worth of property should have a $10 claim once the property is returned. Here, the Court found that Claimants' advertising services were used to further a Ponzi scheme and Claimants should have known about the scheme as of April 2021. Does § 502(h) give the Claimants a claim for the fair value of services that provided assistance to a Ponzi scheme? How does this return the parties to the status quo?

Page 4
Debtor:      National Realty Investment Advisors, LLC, *et al.*
Case No.:    22-14539
Caption:     **DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC**

In the Trustee's claim objection, the first contention is that the claim is not valid because Claimants provided no value to NRIA in excess of the amounts already paid. Moreover, the services that were provided to NRIA had no purpose other than perpetuating NRIA's Ponzi scheme. [ECF No. 4093, p. 15 of 18]. In response, Claimants argue that the trial in the adversary proceeding already decided the value of the claim, and any attempt by the Trustee to dispute the value is barred by collateral estoppel. [ECF No. 4103-1, p. 16; ECF No. 4111, p. 2]. Claimants also assert that claims under § 502(h) are valid even where the funds received (and then returned) were part of an actual fraudulent transfer. Claimants request an allowed claim of $3,147,629, which represents their profits between April 2021 and October 2021, even though Claimants were on inquiry notice that NRIA was a Ponzi scheme at that time. [Adv. Pro. ECF No. 91, p. 30].

The Trustee's second argument is that the equities of the case favor disallowing the claim, and even if it is allowed, the claim should be equitably subordinated under § 510(c) of the Bankruptcy Code. Claimants respond that the Trustee cannot equitably subordinate a § 502(h) claim because the Trustee has already prevailed on its actual fraudulent transfer claim under § 548(a)(1)(A), and the estate has already been provided with a remedy for the alleged wrongdoing. Claimants rely on *In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 117, 160-61 (Bankr. S.D.N.Y. 2014). In dicta, *Madoff* suggests that allowing the § 502(h) claim to be subordinated after the money is returned to the estate would serve as a second remedy for the same wrongdoing.

It is important to understand that if allowed, Claimants would have a Class 4 general unsecured claim, which would be unimpaired and paid in full under the Plan prior to defrauded

Case 22-14539-JKS    Doc 4157    Filed 05/15/25    Entered 05/15/25 15:25:34    Desc Main
Document    Page 5 of 15

Page 5
Debtor:     National Realty Investment Advisors, LLC, *et al.*
Case No.:   22-14539
Caption:    **DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC**

investor claims in Class 5. [ECF No. 3599, p. 7 of 202]. The claims held by the defrauded investors are categorized in Class 5 which is an impaired class under the Plan and are unlikely to be paid in full. [*Id.* at p. 69]. Below investor claims are Class 6 JVA Claims and Class 7 Subordinated Claims which will probably receive no recovery under the Plan. [*Id.*]. JVA Claims are impaired claims arising from a Joint Venture Agreement executed between NRIA and another claimant. [*Id.* at p. 61]. A Subordinated Claim is a non-investor general unsecured claim or investor claim that is subordinated under § 510 of the Bankruptcy Code. [*Id.* at p. 65].

## **JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey. This matter is a core proceeding pursuant 28 U.S.C. § 157(b)(2)(B). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

## **FACTS AND PROCEDURAL HISTORY**

On October 11, 2024, this Court found that Claimants were liable to the Trust for $4,605,683.84—the profits that Claimants received from NRIA from April 2021 onward, when Claimants were on inquiry notice that NRIA was a Ponzi scheme. [Adv. Pro. ECF No. 91, p. 30]. The Court also found that profits after October 2021 were not warranted because "NRIA was paying Media Effective far more than what was being disclosed by Mr. Torres." [*Id.* at 29]. On the § 548(a)(1)(A) actual fraudulent transfer claim, the Court found that the net profits that Claimants received during that period of $4,605,112.16 were an actual fraudulent transfer, but did not order

Page 6
Debtor:      National Realty Investment Advisors, LLC, *et al.*
Case No.:    22-14539
Caption:     **DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC**

Claimants to return $9,645,683.84 that Claimants paid to third parties to acquire ad space on behalf of NRIA.

The Court addressed Claimants' affirmative defense contained in § 548(c) of the Bankruptcy Code, which protects transfers that are "for value and in good faith." First addressing the "for value" component of the defense, the Court found that Claimants did not prove that the transfers were for value after October 2021 when Claimants began deceiving NRIA about its commissions. [Adv. Pro. ECF No. 91, p. 29]. As for the period before October 2021, the Court found that there was conflicting evidence presented and believed that it was inconsequential because of the good faith component of the defense. [*Id.* at 31]. On the issue of "good faith" under Claimants' § 548(c) defense, the Court determined that Claimants were on "inquiry notice of NRIA's fraud as of April 2021," and thus could not avail themselves of the defense. [*Id.* at 30]. The Court's remedy for the Claimants' lack of good faith was to take the net receipts that Claimants received from NRIA from April 2021 onward of $14,259,796, reduced by the amount that Claimants paid to third-party vendors during that period of $9,645,683.84, leaving Claimants' net profits of $4,605,112.16. [*Id.* at 30-31]. These net profits were recoverable by the Trustee under § 548(a)(1)(A) as actual fraudulent transfers.

The Court also briefly addressed the Trustee's constructive fraud claim under § 548(a)(1)(B). While the Court did find that the agreement between NRIA and Claimants prior to October 2021 was a "fee for service" agreement and that the Trustee "did not prove by a preponderance of the evidence that the amounts paid by NRIA for advertisements placed by Media Effective were more than market rate," it did not make an explicit determination of value. [*Id.* at

Case 22-14539-JKS    Doc 4157    Filed 05/15/25    Entered 05/15/25 15:25:34    Desc Main
Document    Page 7 of 15

Page 7
Debtor:     National Realty Investment Advisors, LLC, *et al.*
Case No.:   22-14539
Caption:    **DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC**

31]. Instead, the Court determined that "[s]ince [the Trustee's] damages based on constructive fraud would be less than (and included within) the damages on the actual fraudulent conveyance claim ($4,605,112.16), there [wa]s no need to conduct further analysis." [*Id.* at 32].

Claimants now allege that they are entitled to an unsecured claim of $3,147,629 under § 502(h), which is the amount of their profits from April 2021 onward, less any profits received after October 16, 2021, when the Court determined that Claimants were receiving far greater profits than what was being disclosed to NRIA. [ECF No. 4103-1, p. 12]. Claimants have filed the claim for $3,147,629 under § 502(h) and point out that, though the Trustee tried in the adversary proceeding, it did not prove that Claimants' services exceeded market value during the April—October 2021 period. The Trustee believes that it still has the right to object to Claimants' § 502(h) claim on the basis of value. Finally, The Trustee contends that even if value was provided and the claim is allowed, the claim can still be equitably subordinated. Claimants assert that equitable subordination cannot be applied where money is recovered under § 548(a)(1)(A) and paid back to the estate.

## LEGAL ANALYSIS

### I.      Whether Litigating the Value of the Claim is Collaterally Estopped

The Trustee argues that the Claimants did not provide $3.1 million of value to NRIA entitling them to a claim. Claimants say that the Trustee failed in the adversary proceeding to prove that Claimants were charging excessive rates for advertising before October 2021. Thus, its objection to the claim, to the extent it is based on value, is barred by collateral estoppel. "Issue preclusion, or collateral estoppel, bars re-litigation of issues previously adjudicated in a separate

Page 8
Debtor:     National Realty Investment Advisors, LLC, *et al.*
Case No.:   22-14539
Caption:    **DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC**

action. Issue preclusion applies when four conditions are satisfied: '(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment.'" *Brown v. Nash*, 247 Fed. Appx. 406, 408 (3d Cir. 2007) (quoting *Burlington N. R.R. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995)).

The Court disagrees with Claimants' argument that the value of the services provided to NRIA was determined by a final and valid judgment and that it was essential to the prior decision. As stated above, value was discussed in two contexts within the Decision, (1) Claimants' good faith and for value defense under § 548(c), and (2) under the Trustee's § 548(a)(1)(B) constructive fraud claim. Analyzing the value under the affirmative defense (Claimants' burden), the Court held that, "the evidence was inconclusive as to market value of the advertising purchased by NRIA from Media Effective," but "if a standard commission for an advertising agency is 15%, then Media Effective was being overpaid." [Adv. Pro. ECF No. 91, p. 25]. Nonetheless, the Court did not make an explicit finding on the "for value" component of the defense prior to October 2021, because Claimants did not meet their burden under the "good faith" component and therefore "the consequences of the Court's 'for value' determination [were] less important." [Adv. Pro. ECF No. 91, p. 30].

Similarly, when discussing the value component of the Trustee's constructive fraud claim (the Trustee's burden), the Court found that the evidence suggested "NRIA was being overcharged—by a lot." [Adv. Pro. ECF No. 91, p. 32]. The Court did not make a finding of value for the constructive fraud claim because it believed that the damages it awarded under the actual fraud count were sufficient. Thus, while the issue of value was actually litigated, it was not decided

Case 22-14539-JKS    Doc 4157    Filed 05/15/25    Entered 05/15/25 15:25:34    Desc Main
Document    Page 9 of 15

Page 9
Debtor:     National Realty Investment Advisors, LLC, *et al.*
Case No.:   22-14539
Caption:    **DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC**

by the Court, and it was not essential to the prior judgment. The Court is therefore not precluded by collateral estoppel from determining the value of Claimants' services to NRIA.

A subsequent hearing to determine the value of the claim may be necessary. The Court notes that there is divergent authority discussing whether a party can ever provide value to a Ponzi scheme.[2] But a hearing on the value of the claim might never come to pass based on the Court's determination below that equitable subordination applies to Claimants' claim.

## II. Whether the Trustee Can Equitably Subordinate the Claim

The Trustee also asserts that even if the Court denies its objection to Claimants' claim, it should be equitably subordinated. In opposition to the Trustee's equitable subordination arguments, Claimants directed the Court's attention to *In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 117, 160-61 (Bankr. S.D.N.Y. 2014). This case involved a liquidation trustee's complaint against defendants that were feeder funds that invested in a Ponzi scheme. *Id.* at 124. The liquidation trustee's complaint sought to recover fraudulent transfers to the funds and to disallow and/or subordinate defendants' claims. In response to the liquidation trustee's equitable subordination claims, the defendants argued that if the trustee recovered on the fraudulent transfer claims, they would be entitled to assert a claim under § 502(h) of the Bankruptcy Code, and the

---

[2] *See In re Randy*, 189 B.R. 425, 441 (Bankr. N.D. Ill. 1995) (analyzing whether defendant brokers that received commissions for bringing new investors into a Ponzi scheme could have those commissions taken as a constructive fraudulent transfer because value was not provided to the estate. The Court found that the brokers did not provide value to the estate because enforcing the commission contract with a Ponzi scheme "would only exacerbate the harm to the debtor's creditors"); *but see In re First Commer. Mgmt. Group*, 279 B.R. 230, 239 (Bankr. N.D. Ill. 2002) (rejecting *In re Randy* and finding that the proper inquiry for "reasonably equivalent value exists by focusing on the consideration exchanges between the debtor and defendant, rather than focusing on the conduct of the debtor's management").

Case 22-14539-JKS    Doc 4157    Filed 05/15/25    Entered 05/15/25 15:25:34    Desc Main
Document    Page 10 of 15

Page 10
Debtor:     National Realty Investment Advisors, LLC, *et al.*
Case No.:   22-14539
Caption:    **DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC**

liquidation trustee should not be entitled to the additional remedy of equitable subordination with respect to that claim. *Id.* at 138. The *Madoff* court seemed to agree, stating: "[i]t would seem that the Trustee should not be able to equitably subordinate the § 502(h) claim," because the return of the avoided transfer "would compensate the estate for the injury caused by the fraudulent transfer." *Id.* at 161 (emphasis added). The Court did not dismiss or decide the equitable subordination count because the liquidation trustee had not yet prevailed on the fraudulent transfer claim and recovered the transferred funds.

*Madoff* is distinguishable due to the unique facts of this case. The New York Bankruptcy Court dealt with equitable subordination in the hypothetical. At that point in the litigation, the fraudulent transfer claims had not been decided and the transfer had not been returned. Here, the Court is presented with an actual § 502(h) claim that under NRIA's Plan, would be a general unsecured claim which would be paid in full before any recovery flows to the investors who were the victims of Claimants' conduct. The Court's fraudulent transfer judgment was based on its view that Claimants' massive profits after April 2021 should be returned from the benefit of the investors. The practical effect of allowing Claimants' § 502(h) claim would be to void a large part of the fraudulent transfer judgment. The *Madoff* court may have seen these as reasons to allow equitable subordination in a case where the defendants returned the fraudulently transferred funds.

*In re DVI, Inc.*, 326 B.R. 301, 310 (Bankr. D. Del. 2005) supports the idea that an estate representative can pursue fraudulent conveyance/preference actions together with equitable subordination. Though this case did not involve a § 502(h) claim (like *Madoff* above), the Delaware

Case 22-14539-JKS    Doc 4157    Filed 05/15/25    Entered 05/15/25 15:25:34    Desc Main
Document    Page 11 of 15

Page 11
Debtor:      National Realty Investment Advisors, LLC, *et al.*
Case No.:    22-14539
Caption:     **DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC**

Bankruptcy Court recognized that it had "broad equitable powers to subordinate a claim on equitable grounds" under § 510(c).

> There is no Bankruptcy Code provision or binding case law that would preclude the Committee from pursuing equitable subordination of the defendants' claims <u>in order to obtain complete relief on its preference and fraudulent transfer claims</u>. . . . "If a complete remedy is to be provided for creditors harmed (beyond the loss resulting from the preference) by the preferred creditor's fraudulent or inequitable conduct, the guilty creditor's remaining unsecured claim also must be subject to subordination under section 510(c)."

*Id.* at 310-311 (emphasis added); (quoting Ponoroff & Snyder, *Commercial Bankruptcy Litigation*, § 10:46 (2004) (noting that "equitable subordination may operate in tandem with the trustee's power to set aside fraudulent transfers in situations where the court determines that the creditor should be deprived of any remedy against the estate"); then citing *In re Missionary Baptist Found. of Am.*, 818 F.2d 1135, 1147 (5th Cir. 1987)) (finding that some courts have ordered subordination even though a claim was voidable as a preference or a fraudulent conveyance); *see In re Clark Pipe & Supply Co.*, 870 F.2d 1022, 1031 (5th Cir. 1989) (holding that setting aside a preference and equitably subordinating a claim are not duplicative remedies and can be used in concert to achieve a complete remedy for fraudulent or inequitable conduct).[3] The Court agrees that nothing in the Code precludes it from considering equitable subordination with respect to a claim under § 502(h) to provide a complete remedy to the investors in this case.

---

[3] This decision was withdrawn and substituted by *In re Clark Pipe & Supply Co.*, 893 F.2d 693, 702-03 (5th Cir. 1990), because there was no evidence the creditor engaged in inequitable conduct that would justify equitable subordination. The substituted decision did not readdress the question of whether avoiding a transfer and equitable subordination are duplicative or complementary remedies.

Case 22-14539-JKS    Doc 4157    Filed 05/15/25    Entered 05/15/25 15:25:34    Desc Main
Document    Page 12 of 15

Page 12
Debtor:     National Realty Investment Advisors, LLC, *et al.*
Case No.:   22-14539
Caption:    **DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC**

Equitable subordination requires the Court to consider three elements: "(1) the claimant must have engaged in some type of inequitable conduct, (2) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, and (3) equitable subordination of the claim must not be inconsistent with the provisions of the bankruptcy code." *Citicorp Venture Capital v. Committee of Creditors Holding Unsecured Claims*, 160 F.3d 982, 986-987 (3d Cir. 1998).

Assessing the three factors, the Court finds that Claimants did engage in inequitable conduct by turning a blind eye to NRIA's fraud and receiving millions of dollars in fees for services that ultimately perpetuated the Ponzi scheme by securing additional investors. The Court found "no evidence in the record that Mr. Torres ever confronted Mr. Salzano (NRIA's principal) on the guaranteed return rates or did his own investigation on how NRIA could guarantee a rate of return when he knew that no one does that," and that it was Mr. Torres' duty "to do more than bury his head in the sand when legitimate concerns were raised about the content of NRIA's ads" by the media outlets. [Adv. Pro. ECF No. 91, p. 15]. As early as November 2019, the Court found that when media outlets expressed concern during their screening process over the content of NRIA's ads, Mr. Torres reassured Mr. Salzano that "there [wa]s a way to go around th[e] screening and it[ was] to buy by markets instead of nationally." [Adv. Pro. ECF No. 91, p. 11 of 39]. The Court provided other examples where Mr. Torres was suggesting workarounds to media outlet concerns about NRIA's guaranteed returns in its ads so that they could be aired to induce additional investors. [*Id.*]. Moreover, in finding that Claimants were on inquiry notice of NRIA's fraud, the Court observed that "[h]ad Mr. Torres performed a novice investigation in April 2021, [he] would have seen news articles concerning Nick Salzano's arrest and the SEC investigation," but "he did

Case 22-14539-JKS    Doc 4157    Filed 05/15/25    Entered 05/15/25 15:25:34    Desc Main
Document    Page 13 of 15

Page 13
Debtor: National Realty Investment Advisors, LLC, *et al.*
Case No.: 22-14539
Caption: **DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC**

not bother to do an investigation." [*Id.* at 16]. Also, after October 2021, Mr. Torres was asked to disclose his commission to NRIA and stated he split a 5-15% commission with the volume buyers that he was purchasing ads space from. [Adv. Pro. ECF No. 91, p. 23]. In reality, Mr. Torres was misrepresenting his commission which was approximately 36%, on top of the 15% charged by his suppliers, far exceeding the industry standard. [*Id.* at 24].

As for the services provided by Claimants, their role was "simply that of a middleman" [*Id.* at 3], for which they received an average of 36% commission between 2016 and 2022. [*Id.* at 19]. Claimants' conduct and large profits undoubtably resulted in injury to other creditors because Claimants were being paid with money that, because of the nature of the Ponzi scheme, was investor money, and which plunged NRIA deeper into insolvency. Further, Claimants' services helped to perpetuate the Ponzi scheme by attracting additional investors with the advertising space that Claimants secured for NRIA. NRIA was Media Effective's only client from 2012 to 2022 and transferred approximately $36 million to Claimants for media services. [Adv. Pro. ECF No. 91, p. 7]. The profits retained by Claimants on account of these transfers were substantial, as indicated by Claimants' own statement that when Javier Torres paid the $4,985,820.95 judgment, it was equal to nearly half of Mr. Torres' entire net worth. [ECF No. 4103, p. 12]. This means that Mr. Torres' current net worth is approximately $5 million, substantially all of which is due to his dealings with NRIA. Equitable subordination is not inconsistent with any provision of the Code because as stated above, equitable subordination can be used in conjunction with recovery in a fraudulent transfer action to provide a "complete remedy." *See In re DVI, Inc.*, 326 B.R. at 310-11.

Page 14
Debtor:      National Realty Investment Advisors, LLC, *et al.*
Case No.:    22-14539
Caption:     **DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC**

While some cases hold that a hearing on equitable subordination must proceed in the form of an adversary proceeding, the Court does not believe that anything in the Code or the Rules prohibits the Court from deciding equitable subordination, as long as the parties are given notice, a hearing, and adequate procedural protections. *In re French Quarter, Inc.*, No. 3:11-CV-00560-ECR, 2012 WL 1079564, at *8 (D. Nev. Mar. 30, 2012) (citing *In re Graves*, 279 B.R. 266, 274 (B.A.P. 9th Cir. 2002)). Given the extensive record here, the Court stated at the March 4, 2025 hearing that it might decide equitable subordination based on the supplemental briefs that the parties submitted and neither party objected. [ECF No. 4118, p. 27 of 29]. The Court is satisfied that the requirement for notice and a hearing in § 510(c) was provided.

The Court finds it appropriate to subordinate Claimants to Class 7 under the Plan, as intended by the Trustee. [ECF No. 4093, p. 16, n. 6]. As stated previously, allowing Claimants the full value of their claim under Class 4 would mean that Claimants would be paid in full prior to the defrauded investors. Also important to these considerations is the fact that the Court's decision in the adversary proceeding attempted to effectuate justice by stripping Claimants of $4,605,683.84, equal to the profits that Claimants received from NRIA from April 2021 onward, at which point Claimants were on inquiry notice that NRIA was a Ponzi scheme. [Adv. Pro. ECF No. 91, p. 30]. Allowing Claimants to be paid these <u>profits</u> in full prior to the investors receiving a return of the <u>principal</u> invested in the Ponzi scheme under Class 5 would be unjust. [ECF No. 2556, p. 19].

## CONCLUSION

For the reasons set forth above, the Court will equitably subordinate Claimants' claim to Class 7 under NRIA's Plan. Claimants' right to a hearing on the value of their claim in Class 7

Page 15
Debtor:     National Realty Investment Advisors, LLC, *et al.*
Case No.:   22-14539
Caption:    **DECISION RE: LIQUIDATION TRUSTEE'S OBJECTION TO CLAIM OF JAVIER TORRES AND MEDIA EFFECTIVE, LLC**

and the Trustee's objections are preserved based on the Court's determination that this issue is

not barred by collateral estoppel.