## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

**Order Filed on July 10, 2026
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

| | |
|---|---|
| In Re:<br><br>**NATIONAL REALTY INVESTMENT ADVISORS LLC,**<br><br><br>Debtor. | Case No.:     22-14539<br><br>Chapter:      11<br><br>Judge:        John K. Sherwood |

## DECISION AND ORDER RE: MOTION FOR APPROVAL OF UPDATED

## COMPENSATION PACKAGE

The relief set forth on the following pages numbered two (2) through fourteen (14) is

hereby **ORDERED.**

**DATED: July 10, 2026**

_____
Honorable John K. Sherwood
United States Bankruptcy Court

Page 2
Debtor:        National Realty Investment Advisors, LLC
Case No.:      22-14539
Caption:       **DECISION RE: MOTION FOR ENTRY OF ORDER APPROVING**
               **UPDATED COMPENSATION PACKAGE**

## INTRODUCTION

J. Richard Budd is the Wind-Down Chief Executive Officer of the AIRN Liquidation Trust

("Liquidation Trust") which was formed pursuant to the Chapter 11 Plan of National Realty

Investment Advisors, LLC and its affiliates ("NRIA"). The Liquidation Trust filed a Motion for

Entry of Order Approving Updated Compensation Package ("Motion")[1] seeking, among other

things, to raise Mr. Budd's compensation.[2] [ECF No. 4244]. The Movants retained an expert who

provided a report on executive compensation. Based on this report, the Liquidation Trust proposed

a compensation structure to the Advisory Board of the Liquidation Trust ("Advisory Board").

[ECF No. 4244-6]. The Advisory Board rejected the proposal.

The Advisory Board claims that it has the exclusive authority to determine Mr. Budd's

compensation according to NRIA's Chapter 11 Plan documents and Confirmation Order. [ECF

No. 4274, pp. 10-11 of 39]. Nevertheless, the Advisory Board submitted a response to the

Liquidation Trust with a compensation proposal ("Advisory Board Proposal"). [ECF No. 4302-1].

Mr. Budd responded with his own counterproposal ("Budd Counterproposal"). [ECF No. 4304].

Despite the Court's urging, the parties could not reach a resolution on their own. The Court held a

one-day evidentiary hearing on the Motion and reserved decision. [*See* Transcript, ECF No. 4310].

---

[1] Capitalized terms not otherwise defined herein have the same definitions as set forth in the Motion.
[2] The Motion sought authority to raise compensation for certain employees of the Liquidation Trust, referred to as the "Key Personnel." The "Key Personnel" are J. Richard Budd (Wind-Down Chief Executive Officer), Thomas Fierro (Chief Financial Officer), Tony Ulisse (Vice President of Construction), Kevin Lynch (Controller/Portfolio Manager), Ronny Fierro (Senior Accountant), and Jose Disla (Accounting Clerk). [ECF No. 4244]. While the Motion addresses compensation for all Key Personnel, the issue for this decision was narrowed to Mr. Budd's compensation as Wind-Down CEO.

Page 3
Debtor:     National Realty Investment Advisors, LLC
Case No.:   22-14539
Caption:    **DECISION RE: MOTION FOR ENTRY OF ORDER APPROVING
            UPDATED COMPENSATION PACKAGE**

## JURISDICTION

No party has raised lack of jurisdiction. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), 157(b)(2)(A) and (O), and the Standing Order of Reference from the United States District Court for the District of New Jersey. Pursuant to paragraph 69 of the Confirmation Order, Article IX of the Plan, and sections 4.5 and 11.14 of the Liquidation Trust Agreement, this Court retained jurisdiction over post-confirmation motions.

## FACTS AND PROCEDURAL HISTORY

The Court entered a Confirmation Order in this case on August 10, 2023. As part of the Plan, JR Budd Co., Inc., with Mr. Budd as the sole member providing services, was appointed as the Wind-Down CEO. Mr. Budd and the Liquidation Trust entered into a Wind-Down CEO Consulting Agreement ("Consulting Agreement") effective August 25, 2023. Mr. Budd's appointment was for an initial term of two years. His term automatically renews for an additional term of one fiscal quarter at a time unless a written notice of non-renewal is provided by either party. [ECF No. 4274-1].

The Consulting Agreement outlines Mr. Budd's original compensation structure which is composed of three parts: a base salary, a quarterly bonus, and a "back-end" bonus at the end of the wind-down of NRIA's real estate projects ("Wind-Down Incentive Compensation"). Mr. Budd's base salary was $860,000 per year. His quarterly bonus was 1% of the "Total Net Cash Proceeds" from the sale of real property owned by NRIA received in each quarter. [ECF No. 4274-1]. "Total Net Cash Proceeds" is defined in Exhibit A to the Consulting Agreement as "cash proceeds from asset sales, less costs to develop and sell each property, plus net rental income and interest income earned after the effective date or August 25, 2023. The costs to develop and sell each property

Page 4
Debtor:      National Realty Investment Advisors, LLC
Case No.:    22-14539
Caption:     **DECISION RE: MOTION FOR ENTRY OF ORDER APPROVING
             UPDATED COMPENSATION PACKAGE**

include but are not limited to: costs to complete construction, costs to maintain the property prior

to sale (e.g., utilities, taxes, etc.), property level debt, and broker commissions."[3] Additionally, Mr.

Budd is eligible to receive Wind-Down Incentive Compensation after all of NRIA's real estate

assets are sold and monetized if the Total Net Cash Proceeds are $173,700,001 or higher. The

bonus that Mr. Budd will receive increases based on the Total Net Cash Proceeds range by

specified percentages, as shown below:

| Total Net Cash Proceeds Range | Specified Percentage |
|---|---|
| $173,700,001 – $183,700,000 | 0.5% |
| $183,700,001 – $193,700,000 | 1.0% |
| $193,700,001 – $203,700,000 | 1.5% |
| $203,700,001 – $213,700,000 | 2.0% |
| $213,700,001 – $223,700,000 | 2.5% |
| $223,701,001 – over | 2.5% |

Finally, Mr. Budd's original Consulting Agreement provided for a cap on the Wind-Down

Incentive Compensation plus the Quarterly Incentive Compensation of $3,337,000. [ECF No.

4274-1].

On August 18, 2025, after working for the Trust for two years, the Key Personnel submitted

a proposed compensation plan to the Advisory Board. [ECF No. 4251-1]. About one year prior to

this proposal and without Advisory Board approval, Mr. Budd was granted an increase in his base

salary from $860,000 per year to $920,200 per year. [ECF Nos. 4251-1, 4274, p. 10 of 39]. In

response, the Advisory Board's counsel suggested that the Movants retain a compensation

---

[3] Exhibit A was not included in the record with the Consulting Agreement. The Court asked the parties to provide Exhibit A to aid in determining the Motion, so the Movants emailed a document titled Exhibit A to the Court. The Advisory Board states that this document was the same Exhibit A provided to them by the Movants previously but notes that it is not aware of when the document was prepared or by whom. The document is attached to this Decision as "Exhibit A."

Page 5
Debtor:       National Realty Investment Advisors, LLC
Case No.:     22-14539
Caption:      **DECISION RE: MOTION FOR ENTRY OF ORDER APPROVING
              UPDATED COMPENSATION PACKAGE**

consultant to review the proposed compensation plan and wanted to be actively involved in the process. [ECF No. 4244-5]. But without any participation of the Advisory Board, the Liquidation Trust interviewed and considered four compensation consulting firms and retained John Dempsey in October 2025. The Liquidation Trust suggested that it was "overreaching" on the part of the Advisory Board to ask to be involved in the process of selecting and working with the compensation expert. [ECF No. 4310, pp. 47-48 of 209]. But it was not. The Advisory Board had ultimate authority to approve changes to Mr. Budd's compensation. Of course, they would want to help choose and engage with the compensation expert. The Liquidation Trust's decision to exclude the Advisory Board from this process was confrontational and disrespectful.

To compile his report ("Dempsey Report"), Mr. Dempsey reviewed Mr. Budd's initial proposed plan, other existing compensation programs both in and out of bankruptcy, and observations on the market competitiveness of the current compensation program. [ECF No. 4251-3]. Based on the Dempsey Report, Mr. Budd made a proposal to the Advisory Board in December 2025. This proposal replaced the quarterly bonus with an annual bonus and requested a base salary and annual bonus totaling $1,523,851, increasing his total annual compensation by $603,651. [ECF No. 4251, ¶¶ 41-43]. The Liquidation Trust approved the Dempsey Report and Mr. Budd's recommendations. [ECF No. 4251, ¶¶ 45-49].

The Movants and the Advisory Board were unable to reach a resolution over a new compensation package for Mr. Budd, so on January 6, 2026, the Motion was filed with the Dempsey Report attached. The Advisory Board submitted Opposition [ECF No. 4274] and Supplemental Opposition. [ECF No. 4289]. The Advisory Board correctly argues that pursuant to the Plan documents and Confirmation Order, it has exclusive authority over any changes to Mr.

Page 6
Debtor:      National Realty Investment Advisors, LLC
Case No.:    22-14539
Caption:     **DECISION RE: MOTION FOR ENTRY OF ORDER APPROVING**
             **UPDATED COMPENSATION PACKAGE**

Budd's base compensation and incentive compensation. [ECF No. 4274, pp. 10-11 of 39]. Also, under the Plan Supplement, the Advisory Board is under no mandatory obligation to authorize or approve any adjustments to Mr. Budd's compensation. [ECF No. 4274, pp. 12-13 of 39]. Further, the Advisory Board argues the Liquidation Trust improperly selected and directed the independent consultant, leaving the Advisory Board out of the process. [ECF No. 4274, pp. 19-21 of 39].

On April 4, 2026, the Advisory Board submitted the Advisory Board Proposal that addressed each of the three aspects of Mr. Budd's compensation: base salary, quarterly bonus and Wind-Down Incentive Compensation. [ECF No. 4302]. The Advisory Board proposed:

- Term: An initial two-year term and up to three automatic one-year renewals.

- Base Compensation: Raising Mr. Budd's base compensation to $950,000 for the period of August 26, 2025 through August 25, 2026. Thereafter, the base salary would increase annually by 3.5%, effective as of August 26th of each year that Mr. Budd is the Wind-Down CEO.

- Quarterly Incentive Compensation: Mr. Budd will continue to receive 1% of Total Net Cash Proceeds from the monetization or disposition of Wind-Down Entity real estate assets, to be paid within thirty days of the end of each quarter. But the Advisory Board amended the definition of "Total Net Cash Proceeds" so that "all administrative and operational costs relating to the development and monetization of the real estate assets are deducted from gross proceeds."

- Wind-Down Incentive Compensation: Expanding the incentive tiers to increase gradually from 0.5% to a maximum of 5.5% and eliminating the $3,337,000 cap on total incentive compensation payments.

Page 7
Debtor:       National Realty Investment Advisors, LLC
Case No.:     22-14539
Caption:      **DECISION RE: MOTION FOR ENTRY OF ORDER APPROVING
              UPDATED COMPENSATION PACKAGE**

[ECF No. 4302].

The proposed revised incentive tiers are as follows:

| Total Net Cash Proceeds Range | Specified Percentage |
|---|---|
| $173,700,001 – $183,700,000 | 0.5% |
| $183,700,001 – $193,700,000 | 1.0% |
| $193,700,001 – $203,700,000 | 1.5% |
| $203,700,001 – $213,700,000 | 2.0% |
| $213,700,001 – $223,700,000 | 2.5% |
| $223,700,001 – $233,700,000 | 3.0% |
| $233,700,001 – $243,700,000 | 3.5% |
| $243,700,001 – $253,700,000 | 4.0% |
| $253,700,001 – $263,700,000 | 4.5% |
| $263,700,001 – $273,700,000 | 5.0% |
| $273,700,001 – over | 5.5% |

[ECF No. 4302-1].

Mr. Budd responded to the Advisory Board Proposal with the April 7, 2026 Budd Counterproposal as follows:

- Base Compensation: Mr. Budd agrees with the Advisory Board's Proposal of a $950,000 base compensation subject to an annual increase of 3.5% effective August 26th of each year that Mr. Budd is the Wind-Down CEO.

- Quarterly Incentive Compensation: Mr. Budd agrees to a quarterly incentive bonus. He does not agree to the Advisory Board's amended definition of Total Net Cash Proceeds and instead proposed maintaining the definition from Exhibit A of the Consulting Agreement. Also, Mr. Budd proposes that the quarterly incentive compensation be increased to 2%.

Page 8
Debtor:      National Realty Investment Advisors, LLC
Case No.:    22-14539
Caption:     **DECISION RE: MOTION FOR ENTRY OF ORDER APPROVING
UPDATED COMPENSATION PACKAGE**

- <u>Wind-Down Incentive Compensation</u>: Mr. Budd also proposes an amended tiered structure for the Wind-Down Incentive Compensation without a cap. In contrast to the Advisory Board's Proposal, Mr. Budd would receive a payout of $2 million upon reaching $173,700,000 plus an earned payout based on a percentage of the monetization of the assets on a tiered basis as follows:

| Total Net Cash Proceeds Range | Percentage | Earned Payout |
| --- | --- | --- |
| $173,700,001 – $183,700,000 | 2.5% | $250,000 |
| $183,700,001 – $193,700,000 | 3.0% | $300,000 |
| $193,700,001 – $203,700,000 | 3.5% | $350,000 |
| $203,700,001 – $213,700,000 | 4.0% | $400,000 |
| $213,700,001 – $223,700,000 | 5.0% | $500,000 |
| $223,700,001 – $233,700,000 | 5.5% | $550,000 |
| $233,700,001 – $243,700,000 | 6.0% | $600,000 |
| $243,700,001 – $253,700,000 | 6.5% | $650,000 |
| $253,700,001 – $263,700,000 | 7.0% | $700,000 |
| $263,700,001 – $270,660,210 | 7.0% | $487,215 |
| $270,660,211 – over | 7.0% | TBD |

[ECF No 4304].

On April 10, 2026, the Court held an evidentiary hearing on the Motion. [*See* Transcript, ECF No. 4310]. The Movants presented testimony from Mr. Budd and John Dempsey of JB Dempsey & Company. The Advisory Board cross-examined both witnesses. After the Hearing, the Movants and the Advisory Board submitted written closing arguments. [ECF Nos. 4314, 4315]. Various Investors submitted letters to the Court or spoke during the hearing opposing the Motion expressing concern about the rising professional costs and seeking distributions. [ECF Nos. 4293, 4311, 4312, 4313]. This argument has been drawn-out and costly to the detriment of Investors.

Page 9
Debtor:       National Realty Investment Advisors, LLC
Case No.:     22-14539
Caption:      **DECISION RE: MOTION FOR ENTRY OF ORDER APPROVING
              UPDATED COMPENSATION PACKAGE**

## ANALYSIS

Before addressing the merits of Mr. Budd's compensation, the Court is gravely concerned about the level of acrimony between the Liquidation Trust and the Advisory Board. Both entities are supposed to be working collaboratively for the benefit of the Investors. Instead, massive amounts of Investors' funds are being spent on professional fees on both sides while they fight with one another. While the Liquidation Trustee and Advisory Board are quick to criticize the other's ridiculously high attorneys' fees, they both seem indifferent about their own. Because this compensation issue is not the only area of dispute between the Liquidation Trustee and the Advisory Board—there is at least one other matter that is even more costly and contentious— global peace must be restored soon. Otherwise, the Court would seriously consider removal of the Liquidation Trustee and/or members of the Advisory Board. [ECF No. 2732-1, ¶¶ 3.2, 8.2]. For avoidance of doubt, this concern should not be construed as criticism of the Key Personnel.

*********

The Confirmation Order states that Mr. Budd "shall be compensated in the manner set forth in and consistent with the Plan Supplement." [ECF No. 3599, ¶ 24]. Pursuant to the Plan Supplement, Mr. Budd's annual compensation is "subject to adjustment by the Liquidation Trust Advisory Board after two years of employment, plus such additional incentive compensation as the Liquidation Trust Advisory Board considers appropriate." [ECF No. 2732, Ex. F]. As of August 2025, Mr. Budd had been employed by the Liquidation Trust for two years and his compensation became eligible for adjustment if the Advisory Board chose to do so. There is no dispute that pursuant to the Plan, Liquidating Trust Agreement, and/or Wind-Down Entity

Page 10
Debtor:        National Realty Investment Advisors, LLC
Case No.:      22-14539
Caption:       **DECISION RE: MOTION FOR ENTRY OF ORDER APPROVING
               UPDATED COMPENSATION PACKAGE**

Operating Agreements, the Advisory Board must approve Mr. Budd's compensation. Mr. Budd

agreed to this provision when he joined the Liquidating Trust as Wind-Down CEO.

The Liquidation Trust argues that the Court should give deference to its business judgment.

The Advisory Board's business judgment should also be considered because it must approve Mr.

Budd's compensation after the initial two-year term. The Advisory Board has rejected the Budd

Counterproposal. Apparently, they are willing to face the consequences if he decides to leave. But

the Advisory Board probably realizes that these consequences may be harmful to the Investors as

Mr. Budd and the other Key Personnel are producing good results with less people. [ECF No.

4251, ¶¶ 15-29]. If Mr. Budd decides to leave, his replacement may be a professional consultant

paid on an hourly basis with a steep learning curve—and with rates of more than $1,000/hour.

[ECF No. 4314, pp. 8-9 of 9].

Four key issues arose from the conflict over Mr. Budd's compensation: (1) base salary, (2)

the definition of "Total Net Cash Proceeds" as it pertains to both interim and back-end incentive

compensation, (3) interim incentives, and (4) Wind-Down Incentive Compensation. The

Liquidation Trust's expert, Mr. Dempsey, spoke about these issues. His testimony was credible

and helpful in some areas. As set forth above, the Dempsey Report would have carried more weight

if the Advisory Board had some input into his selection and the Report's preparation. Therefore,

the Court will focus more on the differences between the Advisory Board Proposal and the Budd

Counterproposal.

First, the parties agree that Mr. Budd's base salary will increase to $950,000 subject to an

annual increase of 3.5% effective August 26th of each year that Mr. Budd is the Wind-Down CEO.

The Advisory Board proposed an appointment for an initial two-year term with up to three

Page 11
Debtor:        National Realty Investment Advisors, LLC
Case No.:     22-14539
Caption:      **DECISION RE: MOTION FOR ENTRY OF ORDER APPROVING
                 UPDATED COMPENSATION PACKAGE**

automatic one-year renewals for the agreed upon base salary and annual increases. Since this seems

acceptable to Mr. Budd, the Court will not interfere.

Second, there is a dispute over the definition of "Total Net Cash Proceeds." This definition

is critical because it relates to both the interim bonus and the Wind-Down Incentive Compensation.

The Advisory Board's definition adds administrative and operational costs, including salary and

bonus costs for Mr. Budd and the other Key Personnel of the Wind-Down Trust. Those amounts

would be deducted from the net total, resulting in less funds to bonus against and thus a lower

bonus. While the Movants' proposed compensation for Key Personnel other than Mr. Budd is not

the subject of this Decision, it is important in calculating the total cost of running the Wind-Down

Trust. In 2025, $2 million in base payroll went to the Key Personnel. [ECF No. 4251-1, p. 6 of

17]. The annual cash compensation proposed in the Dempsey Report, which includes assumed

salary and the proposed bonus target, is a total of $3,122,791 per year for all Key Personnel. [ECF

No. 4251-3, p. 9 of 38]. Based on already granted increases to Mr. Budd and Key Personnel, salary

and bonus costs for five years exceed $10 million. Thus, although the Advisory Board's new

definition of Total Net Cash Proceeds is a new wrinkle, so too are the increased salary and bonuses

over the next five years.

The original definition of Total Net Cash Proceeds as sought by Mr. Budd results in a

higher bonus because salary and bonus deductions for the Key Personnel are not applied against

the total. If the definition remains unchanged, Mr. Budd would receive a bonus percentage of a

higher number which translates to a larger bonus. But, the exclusion of Key Personnel salaries and

bonuses from the definition of Total Net Cash Proceeds makes it harder to determine what is going

Page 12
Debtor:        National Realty Investment Advisors, LLC
Case No.:      22-14539
Caption:       **DECISION RE: MOTION FOR ENTRY OF ORDER APPROVING
               UPDATED COMPENSATION PACKAGE**

to Investors at the end. And it is logical to include the salary and bonus amounts with the other administrative costs of the Wind-Down Trust to arrive at Total Net Cash Proceeds.

The fact that the Liquidation Trust is probably going to be in the real estate business for 5 more years is another twist. The NRIA Disclosure Statement projected that all the NRIA properties would be liquidated by 2025. [ECF No. 2229, p. 48 of 105]. The Liquidation Trust is betting that the continued development and management of NRIA's real estate projects will bring enhanced value that exceeds the continued administrative and other development costs. Though the Court is not questioning this business decision, it is something that the Advisory Board should consider when it is asked to approve increased salaries and bonuses.

With all of this in mind, the Court reaches the following conclusions:

- The definition of Total Net Cash Proceeds should not be changed retroactively. This might create some accounting issues going forward but the original deal did not include salaries and bonuses as an offset. This should not change.

- From August 2025 forward, the definition of Total Net Cash Proceeds should be modified to include 75% of the salary and bonuses of the Key Personnel. The Court concludes that these individuals spend at least three quarters of their time on efforts to maintain and liquidate NRIA's real estate portfolio and it makes sense that these costs should be included when considering "total net" to the Investors. As set forth below, this adjustment should be offset by increasing the interim and back-end bonus percentages.

Page 13
Debtor:       National Realty Investment Advisors, LLC
Case No.:     22-14539
Caption:      **DECISION RE: MOTION FOR ENTRY OF ORDER APPROVING
              UPDATED COMPENSATION PACKAGE**

The third point is Mr. Budd's short-term incentives. The Movants argue for a quarterly bonus of 2% while the Advisory Board argues for a quarterly bonus of 1%. Operating under the adjusted definition of Total Net Cash Proceeds, a quarterly bonus of 1.5% is appropriate.

Lastly, the Wind-Down Incentive Compensation should be adjusted. The parties agree that the Wind-Down Incentive Compensation will not have a cap, and Mr. Budd will not participate in the Long-Term Incentive Plan proposed for the other Key Personnel. The quarterly bonus and Wind-Down Incentive Compensation must be considered in relation to each other. It is unclear from the papers whether either of the parties intend to credit the quarterly bonus against the back-end bonus. If Mr. Budd is paid a quarterly bonus based on the Total Net Cash Proceeds, that bonus should be deducted from the Total Net Cash Proceeds at the end of the wind-down. Otherwise, Mr. Budd would be bonused on the same results twice.

In addition to a back-end bonus determined by a percentage of the Total Net Cash Proceeds, Mr. Budd proposes receiving $2 million for reaching the $173.7 million goal. The Advisory Board does not support this bonus, and neither does the Court. Under the original deal, Mr. Budd would have received $883,000 upon reaching the goal (approximately 0.5% of $173.7 million). He should not get $2 million for reaching the same goal 5 years later. The justification for extending the life of the Wind-Down Trust is the expectation that real estate recoveries will exceed projections by almost $100 million. [ECF No. 4310 pp. 27-28 of 209]. If that happens, the Investors should be compensated for the cost of waiting for their distributions and then Mr. Budd should get a more significant share of the excess. To implement this concept, the Court suggests a modification of the percentages, as follows:

Page 14
Debtor:      National Realty Investment Advisors, LLC
Case No.:    22-14539
Caption:     **DECISION RE: MOTION FOR ENTRY OF ORDER APPROVING
             UPDATED COMPENSATION PACKAGE**

| Total Net Cash Proceeds Range | Specified Percentage |
|---|---|
| $173,700,001 – $183,700,000 | 0.5% |
| $183,700,001 – $193,700,000 | 3.0% |
| $193,700,001 – $203,700,000 | 3.5% |
| $203,700,001 – $213,700,000 | 4.0% |
| $213,700,001 – $223,700,000 | 4.5% |
| $223,700,001 – $233,700,000 | 5.0% |
| $233,700,001 – $243,700,000 | 5.5% |
| $243,700,001 – $253,700,000 | 6.0% |
| $253,700,001 – $263,700,000 | 6.5% |
| $263,700,001 – $273,700,000 | 7.0% |
| $273,700,001 – over | TBD |

As the above (hopefully) illustrates, Mr. Budd's Wind-Down Incentive Compensation does not materially increase until the Investors get $10 million over the original $173.7 million threshold. Then, he gets the percentages that he requested in the Budd Counterproposal. Though it will be harder to reach the Total Net Cash Proceeds ranges due to the modification of the definition as set forth above, with $100 million of projected excess, Mr. Budd should have a strong chance of reaching the higher percentages.

The Court recognizes the importance of this back-end bonus as incentive to keep Mr. Budd and his team engaged through the end of the process. This Decision is an attempt to bridge the gap between Mr. Budd and the Advisory Board.

## CONCLUSION

**IT IS ORDERED** that the Motion is granted in part and denied in part for the reasons set forth above. The parties are directed to prepare an agreement for Mr. Budd consistent with this Decision. Obviously, the Court would not be opposed to any modifications of the above terms to the extent the parties agree.

**AIRN**
**Exhibit A: Wind Down Bonus Threshold**
Time Period: August 25, 2023 - until each real estate asset has been monetized

| Active Construction Properties | | Net Cash Proceeds |
|---|---|---|
| 4901 Bergenline Ave, West New York, NJ | $ | 11.8 |
| 1062-1070 Del Harbour (Estates at Delray), Delray Beach, FL | | 16.3 |
| 508 51st Street, West New York, NJ | | 37.9 |
| 506 Henry Street, Brooklyn NY | | 1.2 |
| **Total Net Cash Proceeds for Active Construction Properties** | $ | **67.2** |
| | | |
| **Owned / Various Stages of Pre-Development Properties** | | |
| 1300 Manhattan Ave, Union City NJ | $ | 0.9 |
| 511-513 52nd Street, West New York NJ | | 9.4 |
| 2044 W First St, Fort Myers FL | | 19.6 |
| 1499 SCC Blvd., Philadelphia PA | | 23.6 |
| 200-210 NE 3rd St, Fort Lauderdale FL | | 13.6 |
| 511-521 Newark Ave, Hoboken NJ | | 6.6 |
| 931 Madison St, Hoboken, NJ | | 7.0 |
| 8709 River Rd, North Bergen NJ | | 3.3 |
| 301 SE 1st St, Delray Beach, FL | | 4.3 |
| 6903-6909 Adams St, Guttenberg NJ | | 2.6 |
| 416-422 69th St, Guttenberg NJ | | 2.1 |
| 203-215 NE 3rd St, Fort Lauderdale FL | | 10.5 |
| 494 7th Street, Brooklyn NY | | 1.4 |
| 113-27 N 23rd Street, Philadelphia PA | | 1.6 |
| **Total Net Cash Proceeds for Owned / Various Stages of Pre-Development Properties** | $ | **106.5** |
| | | |
| **Under Contract Properties** | | |
| 360 Main St, Hackensack NJ | | **-** |
| **Total Net Cash Proceeds for Under Contract Properties** | | |
| | | |
| **[1] Total Net Cash Proceeds** | $ | **173.7** |

**Notes:**
[1] Total Net Cash Proceeds is defined as cash proceeds from asset sales, less costs to develop and sell each property, plus net rental income and interest income earned after the effective date or August 25, 2023. The costs to develop and sell each property include but are not limited to: costs to complete construction, costs to maintain the property prior to sale (e.g., utilities, taxes, etc.), property level debt, and broker commissions.